**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| Jonathan R., minor, by Next Friend, Sarah DIXON, et al., | ) ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 3:19-cv-00710 |
| | ) | |
| Jim JUSTICE, et al., | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF MOTION TO STAY DISCOVERY**

As Defendants have informed Plaintiffs' counsel, they have no objection to voluntarily producing, while the motion to dismiss is pending, their policies and procedures (and have already produced over 3,000 pages of them) or the case files of named Plaintiffs to individuals authorized to receive those materials. Nor do Defendants object to voluntarily producing the numerous state and federal audits and reports of West Virginia's child welfare system. But the Plaintiffs' extensive electronic discovery requests (including of e-mails); anticipated depositions (which Plaintiffs have indicated will be well in excess of those permitted under the Federal Rules of Civil Procedure); and requests for reams of historic information and data will place a tremendous burden on the Department of Health and Human Resources ("DHHR"). Until this Court decides whether it has jurisdiction to hear the case, and whether the Plaintiffs have pled sufficient facts to survive a motion to dismiss on each of their claims, there is no need to draw DHHR's resources and attention away from its day-to-day mission of protecting and caring for thousands of children who have been abused and neglected, especially at a time when DHHR is in the process of implementing significant reforms to that system.

The Plaintiffs' newfound interest in "timely resolution of this matter" is belied by the litigation schedule they proposed, which provides for 11 months of discovery and gives them over 7 months to move for class certification. And any modest delay caused by temporarily staying

discovery is far outweighed by the cost of forcing the DHHR and the other Defendants to move forward with discovery that Plaintiffs acknowledge will be "voluminous," when the Court's decision on the motion to dismiss may make all or some of that discovery unnecessary.

## ARGUMENT

### I.    The Plaintiffs Apply an Incorrect Legal Standard to the Motion to Stay.

Throughout their opposition to the motion to stay, the Plaintiffs repeatedly argue that the Defendants have failed to show moving forward with discovery gives rise to "an undue burden" or "unreasonable expense."  Pl. Resp. at 2; *see also id.* at 10-11.

Neither "undue burden" nor "unreasonable expense" is the standard for staying discovery pending a decision on a dispositive motion.  Rather, courts decide such a motion based on "[a] number of factors, none wholly dispositive":

> (1) the type of motion, (2) whether the motion is a legal challenge or dispute over the sufficiency of allegations, (3) the nature and complexity of the action, (4) whether counterclaims and/or cross-claims have been interposed, (5) whether other parties agree to the stay, (6) the posture or stage of the litigation, [(7)] the expected extent of discovery in light of the number of parties and complexity of the issues in the case, [(8)] and any other relevant circumstances.

*Citynet, LLC v. Frontier West Virginia Inc.*, 2016 WL 6133844, at *1 (S.D. W. Va. Oct. 19, 2016) (internal quotations omitted) (unpublished).  As Plaintiffs acknowledge, courts have also applied a three-factor analysis in considering whether to stay discovery pending a decision on a dispositive motion: "'(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party.'"  *See* Pl. Resp. at 5 (quoting *White v. Ally Fin., Inc.*, 969 F. Supp. 2d 451, 462 (S.D. W. Va. 2013)).

These legal tests do not require the moving party to show "undue burden" or "unreasonable expense" for the court to *temporarily* stay discovery while a motion to dismiss is pending.

In addition, the Plaintiffs incorrectly suggest that the likelihood of success on the motion to dismiss is a key inquiry in deciding whether to stay discovery. *See* Pl. Resp. at 5-7. While the Defendants strongly disagree with Plaintiffs' characterization of the merits of the motion to dismiss, neither the 8-factor test nor the 3-factor test require the court to address those issues right now. And there are good reasons the Court should not do so: the motion to dismiss has not been fully briefed, and resolution of it requires a decision on complex legal issues.

The Plaintiffs assert that "Defendants fail to cite even a single case granting a motion to stay pending a motion to dismiss under the *Rooker-Feldman* doctrine or *Younger* abstention." Pl. Resp. at 8. Not true. The Defendants' memorandum (pages 6-9) cited and discussed *Ashley W. v. Holcomb*, 19-cv-00129 (S.D. Ind. Oct. 31, 2019) (attached as Exhibit 1), where a federal court stayed discovery in a similar class action (brought by many of the same lawyers who brought this case) pending a decision on a motion to dismiss that included jurisdictional arguments under *Rooker-Feldman* and *Younger*. That court stayed discovery in part because "the potential exists that this Court may not have jurisdiction to consider this litigation" and a decision on the motion to dismiss "may be dispositive . . . or may narrow the claims moving forward, which could greatly narrow what has already shown to be expansive discovery requests." *Id.* Plaintiffs' opposition to the motion to stay discovery simply ignores *Ashley W.*, although their counsel is certainly familiar with the case.

II.     **The Plaintiffs Seek Extensive, Burdensome Discovery that May Prove Unnecessary if the Motion to Dismiss Is Granted in Full or in Part.**

The Plaintiffs argue that the Defendants do not and cannot show that the discovery the Plaintiffs seek would impose a significant burden on the Defendants. Pl. Resp. at 2, 9, 10 and 11. They assert that Defendants cannot point to "specific facts" to support staying discovery and instead rely on "conclusory statements." *Id.* at 10-11.

This is not correct.  Two documents signed by Plaintiffs' counsel – the Report of the Parties

Planning Meeting (Doc. 24) and Plaintiffs' First Request for Production (attached as Exhibit 2) –

show that the discovery Plaintiffs seek would impose significant burdens on DHHR.  For example:

1.      Depositions.  The Plaintiffs seek 100 hours of depositions, 30 percent more than

provided for under the Federal Rules of Civil Procedure, and ask the Court to specifically order

that they may seek more than 100 hours of depositions "upon a showing of good cause."  Doc. 24

at 4.  Plaintiffs' counsel has informed Defendants' counsel that the Plaintiffs: (1) do not want a

limit on deposition number, only on total deposition hours; and (2) plan to depose individuals

throughout DHHR, not merely individuals in DHHR leadership and management.  Accordingly,

it appears that Plaintiffs plan to depose at least a dozen DHHR employees throughout the State,

including possibly case workers who provide services directly to children.  DHHR counsel

estimates that each deposition will require 20-25 hours of work from DHHR counsel and the

DHHR employee being deposed, including the actual deposition time.

2.      Documents and e-mails relating to various DHHR operations.  In their First Request

for Production, the Plaintiffs request all documents, including all e-mails, relating to:

- a) "prior audits and reports on the West Virginia Department of Health and Human Resources Bureau for Children and Families, including but not limited to, any comments or memoranda concerning the reports and audits for the past five years beginning on July 01, 2014 to the present."
- b) "All communications, memorandum, and emails written with regard to the March 2019 'Kinship Care Strengths Assessment' report and the corresponding study issued by A Second Chance, Inc."
- c) "West Virginia's two most recent Adoption and Foster Care Analysis Reports (the 'AFCARS reports')."

*See* Ex. 2.

While Defendants have no objection to providing the actual audits and reports, producing

"all documents" including e-mails related to these reports will require, at a minimum: DHHR

counsel to develop search terms; coordinate with the West Virginia Department of Administration

("DOA"), which is the state agency responsible for e-mail searches, but is separate and apart from

DHHR; use of DOA staff and resources to conduct the searches and gather the e-mails; and DHHR

counsel to review thousands of e-mails (possibly tens of thousands) for privilege issues.

Accordingly, based on preliminary internal inquiries, counsel for the Defendants expects

responding to these requests will require at least 50 hours of work by DHHR counsel, DHHR staff,

and DOA staff.

        3.       <u>All DHHR policies, procedures and directives relating to the child welfare system</u>.

The Plaintiffs First Request for Production seeks "[a]ll policies and procedures, internal operating

procedures, and/or directives" relating to:

    a)   "DHHR's compliance with Sec. 103(a)(E) of Pub. L. No. 105-89, 111 Stat. 2115 (1997) . . . including but not limited to DHHR's practices for freeing children for adoption, and for filing termination of parental rights petitions."
    b)   "caseworker caseload distribution and type of case."
    c)   "caseworkers employed by DHHR, or child placing agencies, with direct or oversight responsibility for Foster Children in the physical and legal custody of DHHR, including policies and procedures relating to recruitment, qualifications, training, employment, retention, and casework practice standards."
    d)   "compliance with the national standards measured by the Child and Family Services Reviews."
    e)   "any limitations or restrictions on placement of children in a home, including but not limited to, limitations or restrictions based on the age of the child, the specific type of foster care placement, and the number of children (both foster and biological) in the placement including any procedures specified for exceeding these limitations."
    f)   "visitation of Foster Children in the physical and legal custody of DHHR, with their biological parents, siblings, or other family members."
    g)   "caseworker contact with Foster Children in the physical and legal custody of DHHR including requirements to visit the child face to face in general, face to face in the placement, and any other required contact."
    h)   "assignment of children in the physical and legal custody of DHHR to institutional placements."
    i)   "preparation and review of case plans."
    j)   "service providers, including Your selection of and contracting with service providers and supervision, oversight, and evaluation of service providers,

> including but not limited to clinical reviews, contract reviews, and financial reviews."
>
> k) "the administration of psychotropic medications to Foster Children in the physical and legal custody of DHHR, including but not limited to, approval and oversight of the administration of psychotropic medications to children and the prescription and administration of psychotropic medications to children."
>
> l) "concerning the process around placement and approval of placement of Foster Children in the custody of DHHR into non-certified kinship homes including but not limited to (1) the home inspection, (2) required background checks, (3) training, (4) required ongoing casework and supervision, and (5) required visits by the caseworker to the child."
>
> m) "the process around placement and approval of placement of Foster Children in the custody of DHHR into certified kinship homes including but not limited to (1) the home inspections, (2) required background checks, (3) training, (4) required ongoing casework and supervision, and (5) required visits by the caseworker to the child."

*See* Ex. 2.

While DHHR has already produced over 3,000 pages of current and some archived policies and procedure, identifying and locating all previous policies, procedures and "directives" (up to five years previously), requires, at a minimum: DHHR counsel working with DHHR staff to identify responsive documents; DHHR staff searching electronic files, paper records in DHHR central office, and DHHR regional offices to find responsive, archived documents; and DHHR counsel to review potentially responsive documents for privilege issues. Based on preliminary internal inquiries, Defendants' counsel estimates that producing documents responsive to these requests to require up to 50 hours of time from DHHR counsel and DHHR staff.

4.     <u>All documents relating to named Plaintiffs</u>.  The Plaintiffs seek "[a]ll documents, including but not limited to current Case Files, Case Files related to any prior CPS cases, CA/N reports, and Information and Referral reports concerning each named Plaintiff child for the entire duration of any and all periods of time during which each named Plaintiff child has been in the

physical and legal custody of DHHR including abuse and neglect reports and any other reports prior to entering legal and physical custody of the State." *See* Ex. 2.[1]

Producing these documents – many of which are 10-15 years old – will be time-intensive, because of the breadth of the request and because of the limitations of DHHR's FACTS system, which cannot automatically download electronic case file documents.  (DHHR is in the process of replacing the FACTS system.)   To respond to this request, DHHR counsel and/or staff must, among other things: conduct multiple searches of the FACTS system to ensure all case files are located for the named Plaintiff, including documents that were input with typos in the child's name or with variations on the child's name; manually open each file (of which there will be dozens or maybe even hundreds for each named Plaintiff) in the named Plaintiff's FACTS system case file; manually download each of these files into a PDF or other format; search paper records, including in DHHR regional offices, for any old documents that are not in FACTS; and review the documents to ensure there is no confidential information about individuals other than the named Plaintiffs disclosed.  Based on preliminary internal inquiries, DHHR counsel estimates that it will take approximately 10 hours of work from DHHR counsel and/or staff to gather and produce the files for each named Plaintiff (a total of 120 hours of work).

While it is time-intensive and burdensome, Defendants' counsel has informed Plaintiffs' counsel that Defendants are willing to produce the named Plaintiffs' case files as soon as practicable *even if the motion to stay discovery is granted*.  DHHR began gathering these documents for the named Plaintiffs whose next friends are their guardians ad litem once Plaintiffs' counsel provided DHHR with the names of those named Plaintiffs (Plaintiffs provided Defendants with the names on December 16, 2019).  DHHR will do the same for the remaining named

---

[1] The requests quoted in this brief represent only 18 of the Plaintiffs' 36 requests in their First Request for Production.

Plaintiffs, once the Plaintiffs move for their next friends to be appointed as such and the Court approves that appointment.[2]

In sum, the Plaintiffs have made clear they are seeking over a dozen of depositions spanning at least 100 hours, as well as an enormous number of documents, which Defendants' counsel estimates will require *hundreds of hours* of work from Defendants and their counsel.  Even "Plaintiffs' acknowledge that discovery in this matter is likely to be voluminous due to the complex nature of the case," Pl. Resp. at 9.  Requiring the Defendants to proceed with this extensive and burdensome discovery, before the Court has decided which of the Plaintiffs' claims (if any) survive a motion to dismiss, presents a "hardship" and is inequitable to the Defendants, *see Blankenship,* 2019 WL 617350, at *3.

The Plaintiffs' counsel's effort to minimize the burden of their discovery on DHHR is inconsistent with their purported concern, as set out in the Complaint and their opposition to the motion to dismiss, about resources available to DHHR to serve foster children in West Virginia. DHHR and its caseworkers have the critical and challenging task of protecting some of the most vulnerable West Virginians: children who have been abused and neglected and do not have a safe, permanent home.  And it is undisputed that West Virginia's child welfare system has been stretched thin by the number of children who have entered the system because of the opioid crisis. This Court should not allow the Plaintiffs to distract DHHR from its mission of serving West

---

[2] As the Defendants have informed Plaintiffs' counsel, the Defendants do not object to Plaintiffs being represented by a next friend, including a next friend who is not the Plaintiffs' parent, guardian, or guardian ad litem.  However, under West Virginia law, DHHR cannot release information to a next friend (or to an attorney retained by a next friend), and under the Federal Rules of Civil Procedure a next friend cannot represent a child, unless either (1) the next friend has a preexisting legal relationship with the child (e.g., parent, guardian, guardian ad litem) or (2) a court has determined that the individual seeking to serve as a next friend is an appropriate representative of the child and appoints the individual as a next friend.  *See* W.V. Code § 49-5-101; Fed. R. Civ. P. 17(c).  However, Plaintiffs have yet to file such a motion, and any delay in having such next friends appointed will delay the production of case files, regardless of whether or not the stay is granted.

Virginia's children with extensive, burdensome discovery until the Court has had an opportunity to decide whether it has jurisdiction to hear this case and/or the extent to which, if at all, the Plaintiffs have pled sufficient facts to proceed to discovery.

**III.     Staying Discovery Advances Judicial Economy and Does Not Unduly Prejudice the Plaintiffs.**

Staying discovery would eliminate the need for the Court to oversee discovery, including resolve discovery disputes, while the motion to dismiss is pending.  Some or all of this discovery, including any potential disputes, will turn out to be unnecessary if the Court grants the Defendants' motion to dismiss either in its entirety or in part (which would narrow the issues in dispute).

The Plaintiffs argue that staying discovery "would hamper the interests of judicial economy and impede the court's ability to ensure that litigation proceeds expeditiously."  Pl. Resp. at 10. The Plaintiffs also assert that "staying discovery in this matter would unduly prejudice the Plaintiffs" because "Plaintiffs require a timely resolution of this matter."  Pl. Response at 12.

The Plaintiffs' newfound interest in "timely resolution of this matter" is belied by the schedule they have proposed.  For example, the Plaintiffs ask for 11 months of discovery, Doc. 24, at 5-6, far in excess of the time generally approved in this court even for complex cases, *see* L.R. Civ. P. 16.1 Form, Worksheet (06/08/2017) (advising that discovery should end "3 to 7 months" after the date of the Defendant's appearance), and the Plaintiffs seek to wait over 7 months after the Complaint was filed to even move for class certification, Doc. 24, at 5.

In fact, the motion to stay need not delay the litigation at all beyond the timeline requested by the Plaintiffs.  If the Court decides the motion to dismiss at any time within the next few months, and accepts the Defendants' proposal for 6 months of discovery (as opposed to the Plaintiffs' proposal for 11 months), there will be *no delay* in the litigation compared to the schedule proposed by the Plaintiffs.

In any event, any modest delay caused by the stay is far outweighed by the burden to the Defendants and West Virginia's child welfare system of moving forward with potentially unnecessary, extensive discovery. *Cf. Ashley W. v. Holcomb*, 19-cv-00129 (holding that staying discovery will not unduly prejudice Plaintiffs because they "do not seek preliminary injunctive relief"; "have not shown, through particularized argument or demonstrable evidence, how they will be unduly prejudiced by a partial stay"; and Defendants have already "produced substantial discovery").

The Plaintiffs also assert that they "are at risk of losing the engagement of subject-matter specific experts" who they plan to use to support class certification. Pl. Resp. at 12. But the Plaintiffs do not explain what "at risk of losing" means; they do not specify why their experts will not be available if the case is delayed; and they do not include any affidavit or other support from these "experts" explaining their conflict, even though the Plaintiffs criticize the Defendants for not filing affidavits in support of their position about the burdens of the discover requests. Further, the Plaintiffs do not assert (let alone explain) why the expert(s) they have retained are the only experts available for the purpose for which the Plaintiffs plan to use them; presumably, there are other qualified experts on these issues.

In any event, the Defendants are amenable to reasonable changes to the deadline for moving for class certification to allow for the participation of the Plaintiffs' expert(s). For example, even if the motion to stay discovery is granted, the deadline for moving for class certification could remain June 1, 2020, as proposed by the Plaintiffs, which presumably would ensure their expert(s) is available. This would mean the motion to class certification would be filed while the court is considering the motion to dismiss, or shortly after a decision has been rendered, which is common in class actions.

## CONCLUSION

For the foregoing reasons, the Defendants' motion to stay discovery should be granted.

Respectfully submitted,

December 29, 2019

/s/ Philip J. Peisch
Philip J. Peisch
Caroline M. Brown
Rebecca E. Smith
Brown & Peisch PLLC
1233 20th Street NW, Suite 505
Washington, DC 20001

/s/ Steven R. Compton
Steven R. Compton (WVSB #6562)
West Virginia Attorney General's Office
812 Quarrier Street, 2nd Floor
Charleston, WV 25301

11

**CERTIFICATE OF SERVICE**

I, Philip J. Peisch, hereby certify that I caused a true and correct copy of Defendants' Reply

in Support of Motion to Stay Discovery to be delivered to the following via ECF notification:


Marcia Robinson Lowry
Dawn J. Post
Allison Mahoney
Valerie McLaughlin
A Better Childhood
355 Lexington Ave. Floor 16
New York, NY 10017

Richard W. Walters
J. Alexander Meade
Brian L. Ooten
Shaffer & Schaffer, PLLC
2116 Kanawha Blvd East
P.O. Box 3973
Charleston, WV 25304

Jeremiah Underhill
Erin Snyder
Lori Waller
Disability Rights of West Virginia
1207 Quarrier Street, Suite 400
Charleston, WV 25301

December 29, 2019

*/s/* Philip J. Peisch
Philip J. Peisch
Caroline M. Brown
Rebecca E. Smith
Brown & Peisch PLLC
1233 20th Street NW, Suite 505
Washington, DC 20001


*/s/* Steven R. Compton
Steven R. Compton (WVSB #6562)
West Virginia Attorney General's Office
812 Quarrier Street, 2nd Floor
Charleston, WV 25301

12