**UNITED STATES DISTRICT COURT`**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Jonathan R., minor, by Next | ) | |
| Friend Sarah DIXON, *et. al.* | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:19-cv-00710-TEJ |
| | ) | |
| Jim JUSTICE, in his official capacity as the | ) | |
| Governor of West Virginia, *et. al.* | ) | |
| Defendants. | ) | |

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT DEPARTMENT OF HEALTH AND HUMAN RESOURCES

Plaintiffs hereby request, pursuant to Federal Rules of Civil Procedure 26 and 34, that Defendants produce all of the documents requested below in their possession, custody, or control at the offices of Shaffer & Shaffer PLLP, 330 State Street, Madison, West Virginia 25130, within thirty days (30) after service of this First Request for Production of Documents.

### DEFINITIONS

1.      "Case Files" means any documentation or record of DHHR activities relating to specific children, including but not limited to any child abuse and neglect reports, intake assessments, information on placements, services, health care, education, family visitations, court appearances, and the notes from Multidisciplinary Team Meetings.

2.      "Child Placing Agency" means any person, association, or corporation in West Virginia that places or finds homes for children, places or assists in placing children in homes of persons other than relatives, or causes or assists in causing the placement of children for adoption or in another planned permanent living arrangement.

1

3.      "Communication" includes but is not limited to, any transmission, conveyance, or exchange of a word, statement, fact, thing, idea, Document, instruction, information, demand, or question by any medium, whether written, oral, or other means (including, but not limited to, electronic communications and electronic mail).

4.      "Complaint" refers to the Class Action Complaint for Injunctive Relief dated September 30, 2019 (Dkt. 3:19-cv-00710), which is the operative complaint in this action.

5.      "Concurrent Planning" means the establishment and implementation of a case plan with concurrent permanency goals, and supports intensifying and expediting efforts to achieve permanence for a child within one (1) year as provided in Section 4.5 of West Virginia's Foster Care Policy, Section 4.11 of West Virginia's Adoption Policy, and required by West Virginia Code Chapter 49, Article 4, Part VI and The Adoption and Safe Families Act of 1997. P.L. 105-89 (1997) (providing that "reasonable efforts to place a child for adoption or with a legal guardian may be made concurrently with reasonable efforts to preserve and reunify families").

6.      "Defendant" means any or all of the Defendants to this Action, including Governor Jim Justice, DHHR Cabinet Secretary Bill Crouch, Deputy Secretary Jeremiah Samples, Commissioner of The Bureau for Children and Families Linda Watts, and DHHR.

7.      "Department of Health and Human Resources" or "DHHR" means individually and collectively, Defendant Department of Health and Human Resources, and each of its affiliates, executives, employees, attorneys, representatives, agents, and assigns.

8.      "Disability" means any child that has been diagnosed with any physical, cognitive, developmental, or intellectual disability or any mental illness, and includes but is not limited to children receiving psychotropic or other medications for their disabilities.

2

9.     "Documents" means any document or electronically stored information as defined in Federal Rule of Civil Procedure 34.

10.    "Foster Children in the physical and legal custody of DHHR" means any child with an open abuse and neglect case to whom the DHHR has committed to its care for custody or guardianship. This does not include children who are adjudicated delinquents in accordance with W.Va. Code § 49-2-101.

11.    "Foster Care Placement" means any licensed foster home or facility.

12.    "Including" means including and but not limited to.

13.    "Kinship Care Placement" means any licensed or unlicensed relative home or home of fictive kin.

14.    "Overnight Stays" means a child shall be considered to have stayed overnight in any particular placement if the child was at that placement at 12:01 am on any given day regardless of the length of stay.

15.    "CA/N Report" means any report of child abuse or neglect, including any report made through the West Virginia Centralized Intake for Abuse and Neglect Hotline, in person at a DHHR office, or through any other method of reporting.

16.    "Plaintiffs" means any and all of the named Plaintiff children in this action: Jonathan R., Anastasia M., Serena S., Theo S., Garrett M., Gretchen C., Dennis R., Chris K., Calvin K., Carolina K., Karter W., and Ace L.

17.     "Service Provider" means any person, association, or corporation that provides any services for children in the care or custody of DHHR.

18.    "Therapeutic Foster Home" means any licensed foster home that has a current therapeutic certificate.

3

19.     "Transitional Living Programs and/or Facilities" refers to any program or residential facility specifically designed to prepare Transition Age youth, with skills including but not limited to life, vocational, and financial skills, which are necessary for independent living.

20.     "Transition Age" refers to any youth between the ages of 14 and 21.

21.     "You," "Your," and "Defendants" means Defendant DHHR.

## <u>INSTRUCTIONS</u>

1.     You shall produce all Documents within Your custody or control.

2.     The use of the singular shall be deemed to include the plural, and the use of masculine, feminine, or neutral genders shall include each gender, as appropriate in context.

3.     You shall construe each request herein independently and not with reference to any other request for the purposes of limitation.

4.     The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

5.     The terms "all," "any," "each," and "every" shall be construed as both "each" and "every" to bring within the scope of the request all responses which might otherwise be construed to be outside of its scope.

6.     The terms "reflect," "reflecting," "related to," "refer to," "relating to," and "referring to," mean relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

7.     To the extent a request seeks information regarding any of the Defendants' Communications, it excludes Communications between Defendants' counsel and Plaintiffs' counsel regarding this litigation.

8.     Documents should be produced pursuant agreements, stiuplations or orders regarding the Collection and Production of Documents and Electronically Stored Information to be entered in this Action.

9.     If You believe that any person or entity might have custody or control of any Document that is not within Your custody or control but is otherwise responsive to any part of this request, You shall state so and shall identify the person or entity that You believe might have custody or control of that Document.

10.     You shall specifically identify the source(s) or derivation(s) of each Document.

11.     You shall produce each Document in its entirety, without abbreviation or redaction.

12.     You shall produce all Documents in the order and manner that they are kept in the usual course of business.  You shall produce all Documents in their original folders, binders, covers, or containers (or You shall provide properly sequenced photocopies thereof).

13.     You shall produce as a separate Document any Document that contains any notation, addition, insertion, or marking of any kind that renders it not entirely identical to a version of that Document without such marks.

14.     If any portion of any Document is responsive to any of these requests, You shall produce the entire Document including, but not limited to, all cover sheets, appendices, or attachments.

15.     If You contend that part of a request is objectionable, You shall state the basis for Your objection with specificity, and You shall respond to that part of the request that You do not contend is objectionable.

16.     If  You contend that You do not understand the definition of any term or phrase used in a request, You shall explain in detail what it is that You do not understand about the term or phrase at issue, and You shall respond to that part of the request that You do understand.

17.     If You contend that any part of a request is overbroad, You shall explain in detail why it is that You consider that part of the request to be overbroad, and You shall respond to the remainder of the request that You do not consider to be overbroad.

18.     If no Document exists which is responsive to a particular request, You shall state so.

19.     If, after responding to these requests, You obtain or become aware of any additional Documents that are directly or indirectly responsive to any part of any of these requests, You shall promptly produce any additional responsive Documents.  If, after answering these requests for production, You learn that any part of any answer or objection to any of these requests is incomplete, incorrect, or improper, You shall promptly provide a supplementary written answer and shall produce any additional responsive Documents.

20.     If any Document covered by these requests is withheld by reasons of a claim of privilege, a log is to be furnished identifying any such Document for which the privilege is claimed by providing the information required by law.

## **TIME PERIOD**

Unless otherwise stated, these Requests cover the period from July 01, 2014 to the present.

6

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     All documents, including but not limited to current Case Files, Case Files related to any prior CPS cases, CA/N reports, and Information and Referral reports concerning each named Plaintiff child for the entire duration of any and all periods of time during which each named Plaintiff child has been in the physical and legal custody of DHHR including abuse and neglect reports and any other reports prior to entering legal and physical custody of the State. This Request includes, but is not limited to, Documents located in FACTS, and FACTS Plus DHHR's Statewide Automated Child Welfare Information System.

2.     Documents sufficient to show (1) the number of Foster Children in the physical and legal custody of DHHR, and (2) each placement type, including but not limited to, the number of children placed in (a) residential treatment facilities (BCF-RCC), (b) temporary shelters, (c) group residential facilities, (d) intermediate care facilities for individuals with intellectual disabilities (e) psychiatric residential treatment facilities, (f) stranger foster homes, (g) therapeutic foster homes, (h) certified kinship homes, or (i) uncertified kinship homes, including any homes that were certified by a Child Placing Agency or directly by DHHR, as of June 30, 2019.

3.     Documents sufficient to show (1) the number of Foster Children in the physical and legal custody of DHHR who have been placed in an out-of-state residential facility, (2) the name of the facility, (3) the name of the facility's umbrella organization or parent company, (4) the length of the child's stay in that residential facility, and (5) the residential facility's complete daily per child rate (including the cost of medical, residential, educational, and other services paid for by the State of West Virginia), for the past two years beginning July 01, 2017, up to and including June 30, 2019. For any Foster Child who has experienced more than one placement into an out-of-state facility, please include any documents sufficient to show the number of placements.

4.      Documents sufficient to show the number of Foster Children in the physical and legal custody of DHHR who have been categorized as having a Disability sufficient to qualify for treatment under the ADA, as of June 30, 2019.

5.      Documents sufficient to show (1) the number of Foster Children in the physical and legal custody of DHHR who have been legally freed for adoption, (2) the length of time each child has been in the custody of the state generally, as well as (3)  the length of time each child was in the custody of the state prior to becoming legally freed for adoption, as of June 30, 2019.

6.      Any and all policies and procedures, internal operating procedures and/or directives concerning DHHR's compliance with Sec. 103(a)(E) of  Pub. L. No. 105-89, 111 Stat. 2115 (1997) (the "15/22" provision of the Adoption and Safe Families Act (ASFA)) including but not limited to DHHR's practices for  freeing children for adoption, and for filing termination of parental rights petitions.

7.      Documents sufficient to show the distribution of cases carried by individual caseworkers and the number of cases carried by each caseworker employed by DHHR, including any worker who exercises direct or oversight responsibility for at least one Foster Child in the legal and physical custody of the DHHR, as of June 30, 2019. (i.e. the number of caseworkers who carry one case, the number of caseworkers who carry two cases, etc.). For each, specify the type of case and any other responsibilities the worker has.

8.      A copy of any and all policies and procedures, internal operating procedures, and/or directives concerning caseworker caseload distribution and type of case.

9.      A copy of any and all policies and procedures, internal operating procedures, and/or directives concerning caseworkers employed by DHHR, or child placing agencies, with direct or oversight responsibility for Foster Children in the physical and legal custody of DHHR, including

8

policies and procedures relating to recruitment, qualifications, training, employment, retention, and casework practice standards. Specify the time periods within which such training must be provided, and all steps taken by DHHR to ensure that such training takes place in accordance with the applicable directives.

10.     All documents and communications concerning prior audits and reports on the West Virginia Department of Health and Human Resources Bureau for Children and Families, including but not limited to, any comments or memoranda concerning the reports and audits for the past five years beginning on July 01, 2014 to the present. This includes but is not limited to (1) legislative foster care reports, (2) the audits conducted by the Performance Evaluation & Research Division of the West Virginia Legislatures Office, and (3) DHHR's semi-annual progress reports.

11.     All communications, memorandum, and emails written with regard to the March 2019 "Kinship Care Strengths Assessment" report and the corresponding study issued by A Second Chance, Inc.

12.     Any and all policies and procedures, internal operating procedures, and/or directives concerning compliance with the national standards measured by the Child and Family Services Reviews.

13.     Any and all policies and procedures, internal operating procedures, and/or directives concerning any limitations or restrictions on placement of children in a home, including but not limited to, limitations or restrictions based on the age of the child, the specific type of foster care placement, and the number of children (both foster and biological) in the placement including any procedures specified for exceeding these limitations.

14.     Documents sufficient to show (1) the number of Foster Children in the physical and legal custody of DHHR who had been placed into a temporary shelter at any time during their

custodial period, (2) the number of temporary shelters each child had been placed into, and (3) the length of time they remained in each shelter, for the past two years beginning July 01, 2017, up to and including June 30, 2019.

15.     Documents sufficient to show the number of Foster Children in the physical and legal custody of DHHR who had been placed into an emergency short-term placement including, but not limited to, (1) Overnight Stays in hotels, and (2) Overnight Stays at DHHR offices, broken down by county for the past year beginning July 01, 2018, up to and including June 30, 2019.

16.     Documents sufficient to show the number Foster Children in the physical and legal custody of DHHR who had been placed into a detention center for any amount of time who were not there as a direct result of juvenile delinquency charges pending against them and the age of each child, for the past five years beginning July 01, 2014, up to and including June 30, 2019.

17.     West Virginia's two most recent Adoption and Foster Care Analysis Reports (the "AFCARS reports") and all related communications and memoranda.

18.     Any and all policies and procedures, internal operating procedures, and/or directives concerning visitation of Foster Children in the physical and legal custody of DHHR, with their biological parents, siblings, or other family members.

19.     Any and all policies and procedures, internal operating procedures, and/or directives concerning caseworker contact with Foster Children in the physical and legal custody of DHHR including requirements to visit the child face to face in general, face to face in the placement, and any other required contact.

20.     Any and all policies and procedures, internal operating procedures, and/or directives concerning assignment of children in the physical and legal custody of DHHR to institutional placements, including but not limited to (a) residential treatment facilities (BCF-

RCC), (b) temporary shelters, (c) group residential facilities, (d) intermediate care facilities for individuals with intellectual disabilities (e) psychiatric residential treatment facilities, and (f) out-of-state residential facilities.

21.     All contracts and other agreements entered into between DHHR and the Child Placing Agencies that were in effect as of the date of the filing of the complaint in this Action.

22.     Documents sufficient to show, the number of licensed (a) foster homes, (b) therapeutic foster homes, (c) certified kinship homes, (d) non-certified kinship homes with approved placements, and (e) pre-adoptive homes, including any homes that were certified by a Child Placing Agency or directly by DHHR and the respective capacity for each placement type, as of June 30, 2019.

23.     Documents sufficient to show the number of licensed homes, including kinship and foster homes, that received their license from a Child Placing Agency and the number of licensed homes that received their license directly from DHHR, as of June 30, 2019.

24.     Documents, agreements, and internal memoranda sufficient to show the difference between a certified foster home and a Tier I therapeutic foster home, including but not limited to differences in (1) restrictions, (2) requirements, (3) support, (4) training, and (5) casework.

25.     Any and all policies and procedures, internal operating procedures, and/or directives concerning preparation and review of case plans.

26.     Any and all policies and procedures, internal operating procedures, and/or directives concerning service providers, including Your selection of and contracting with service providers and supervision, oversight, and evaluation of service providers, including but not limited to clinical reviews, contract reviews, and financial reviews.

27.     Any and all policies and procedures, internal operating procedures, and/or directives concerning the administration of psychotropic medications to Foster Children in the physical and legal custody of DHHR, including but not limited to, approval and oversight of the administration of psychotropic medications to children and the prescription and administration of psychotropic medications to children,.

28.     Documents sufficient to show the number of Foster Children in the physical and legal custody of DHHR who are prescribed psychotropic mediations, each child's age, and the number of different medications prescribed to each child for the past two years beginning July 01, 2017, up to and including June 30, 2019.

29.     A copy of any and all policies and procedures, internal operating procedures, and/or directives concerning the process around placement and approval of placement of Foster Children in the custody of DHHR into non-certified kinship homes including but not limited to (1) the home inspection, (2) required background checks, (3) training, (4) required ongoing casework and supervision, and (5) required visits by the caseworker to the child.

30.     A copy of any and all policies and procedures, internal operating procedures, and/or directives concerning the process around placement and approval of placement of Foster Children in the custody of DHHR into certified kinship homes including but not limited to (1) the home inspetions, (2) required background checks, (3) training, (4) required ongoing casework and supervision, and (5) required visits by the caseworker to the child.

31.     Documents sufficient to show the number of Foster Children in the physical and legal custody of DHHR who have been placed into either a certified or non-certified kinship home subject to a waiver by a DHHR supervisor related to any aspect of the placement including but not

12

limited to the (1) home inspection, (2) training, or (3) background checks of any adult occupant of the home.

32.     As of January 1, 2019, list the names of all Transitional Living Programs and/or Facilities in the state of West Virginia and the capacity of each facility.

33.     Documents sufficient to show (1) the number of all Transition-Age Foster Youth in the physical and legal custody of DHHR who exited care, (2) the manner in which they exited care (i.e. emancipation, adoption, reunification, guardianship, other),  and (3) the permanency plan indicated in the case file of each child prior to exiting care, for each of the years ending June 30, 2018, and June 30, 2019.

34.     Documents sufficient to show (1) the number of Foster Children in the physical and legal custody of DHHR that have a founded or substantiated report of maltreatment while in the State's custody; (2) the identity of the alleged perpetrator, including his or her relationship to the child; and (3) the number which occurred while the child was placed in (a) a foster home, (b) a kinship home (c) a group or other residential facility in West Virginia, and (d) a group or other residential facility outside of the state of West Virginia.

35.     Documents sufficient to show the number of placements experienced by each Foster Child in the physical and legal custody of DHHR, as of June 30, 2019.

36.     Documents sufficient to show the number of Foster Children in the physical and legal custody of DHHR that came into the State's custody as part of a sibling group and the number of children placed with their siblings as of June 30, 2019.

/s/*Jeremiah Underhill*
Disability Rights of West Virginia
Jeremiah Underhill, WVSB #13094
junderhill@drofwv.org
Erin Snyder, WVSB #13094
esnyder@drofwv.org
Lori Waller, WVSB #11303
lwaller@drofwv.org
1207 Quarrier Street, Suite 400
Charleston, WV 25301
Tel: (304) 346-0847
Fax: (304) 346-0687


/s/*Marcia Robinson Lowry*
Marica Lowry, *admitted pro hac vice*
Allison Mahoney, *admitted pro hac vice*
A Better Childhood
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel.: (646) 795-4456
Fax: (212) 692-0415
mlowry@abetterchildhood.org
abenedetto@abetterchildhood.org


/s/*Richard W. Walters*
Shaffer & Shaffer, PLLC
Richard W. Walters, WVSB #6809
rwalters@shafferlaw.net
J. Alexander Meade, WVSB #13021
ameade@shafferlaw.net
Brian L. Ooten, WVSB #9358
booten@shafferlaw.net
330 State Street
P.O. Box 38

14