UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | |
|---|---|
| **Jonathan R., minor, by Next Friend, Sarah DIXON,** *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) Class Action ) 3:19-cv-00710 |
| v. | ) ) |
| **Jim JUSTICE, in his official capacity as the Governor of West Virginia,** *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

Plaintiff Children submit this Sur-Reply to address the additional arguments Defendants improperly include in their Reply in Support of the Motion to Dismiss. Defendants grossly mischaracterize Plaintiffs' claims by (1) reducing Plaintiffs' claims to challenges to individual placement decisions and (2) suggesting child welfare class actions are "chaotic, wide-ranging and of questionable relevance to the facts". Defendants, in an attempt to elude responsibility, set forth a false narrative in which West Virginia circuit courts are bad actors, ordering foster children into inappropriate placements. But in reality, West Virginia's Department of Health and Human Resources ("DHHR"), not the judiciary, is responsible for not only these poor placements but also the other systemic deficiencies Plaintiffs allege. And it is the unconstitutional implementation of the state's policies, not the content of those policies, that creates this illegal situation.

Yes, the Named Plaintiffs, like many other foster children in West Virginia, have "distressing" stories regarding their experiences while in DHHR's custody. This is to be expected in a state that leads the nation in removals, where well over a third of its caseworker positions remain vacant, where 71 percent of youth between the ages of 12 and 17 are institutionalized, and where over 300 children are shipped to out-of-state facilities, many of which that have been subject to criminal and licensure investigations. To be clear, any chaos stems from West Virginia's dysfunctional system—not Plaintiff Children's Complaint.

Plaintiffs' claims are clearly spelled out:

- They allege deprivations of their substantive due process rights, including, *inter alia*, the right to protection from unnecessary intrusions into their emotional well-being, the right to services to prevent unreasonable risk of harm, the right to not be maintained in custody longer than is necessary, and the right to services in the least-restrictive, most family-like setting. Moreover, the three subclasses make claims of substantive due process deprivations specific to those subclasses. (*See* ECF No. 1 at ¶¶ 373-74.)

- They allege deprivation of their right to a family and permanent home under First, Ninth, and Fourteenth Amendments. (*See id.* at ¶¶ 376-78.)

- They allege violations of the Adoption Assistance and Child Welfare Act of 1980 ("AACWA"), including, *inter alia*, the right to a case review system and a written case plan that includes a plan to provide safe, appropriate, and stable placements as well as services. (*See id.* at ¶¶ 382-83.)

- They allege violations of Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, which require placement in the most integrated setting. (*See id.* at ¶¶ 392-94.)

Plaintiffs seek system-wide relief because that is what is necessary to stop Defendants from further violating their federal constitutional and statutory rights. They do not seek review of orders made in the individual circuit court proceedings levied against their parents or guardians.

Plaintiffs stand on solid legal footing in asserting their claims, citing over half a dozen cases where federal courts have found inadequate child welfare systems implicate the

2

constitutional and federal statutory rights of foster children.[1] As such, Defendants' Motion to Dismiss should be denied in its entirety.

## ARGUMENT

### I. This Court has Subject Matter Jurisdiction to Hear Plaintiff Children's Claims.

#### A. West Virginia circuit courts, like other state courts, do not hear federal claims like those alleged by Plaintiffs and do not grant system-wide relief.

Defendants' make two fatal errors in arguing Plaintiffs' claims related to placement type and placement instability directly implicate current and ongoing orders of state courts. First, contrary to Defendants' beliefs, Plaintiffs' claims do not challenge individual placement decisions. Plaintiffs seek system-wide relief; they in no way seek review of any individual orders issued in their individual circuit court proceedings. Second, while West Virginia circuit courts, like other state courts, review agency placement decisions, the state circuit courts do not identify placements or place children in specific foster care settings.

Defendants rely upon Section 49-4-606(a) of the West Virginia Code, a statutory provision addressing the modification of dispositional orders, in an attempt to posit that circuit courts are responsible for all foster care placement decisions. In doing so, Defendants ignore a host of provisions stating otherwise.[2]

---

[1] *See, e.g., M.D. v. Abbott*, 152 F. Supp. 3d 684 (S.D. Tex. 2015) (explaining foster children have the constitutional right to "personal security and reasonably safe living conditions" and the right to be free from unreasonable risk of harm), *aff'd in part*, 907 F.3d 237 (5th Cir. 2018); *Connor B. v. Patrick*, 771 F. Supp. 2d 142, 161 (D. Mass. 2011); *Olivia Y. v. Barbour*, 351 F. Supp. 2d 543, 556 (S.D. Miss. 2004) ("plaintiffs' pleading is sufficient to allege a violation of their substantive due process right to adequate care and treatment while in state custody"); *Brian A. by Brooks v. Sundquist*, 149 F. Supp. 2d 941, 954 (M.D. Tenn. 2000); *Kenny A. v. Perdue*, 218 F.R.D. 277, 297 (N.D. Ga. 2003) (plaintiffs "state a viable claim by alleging that State Defendants have systematically failed to facilitate their prompt reunification with their families whenever safe and appropriate"); *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 675, 685 (S.D.N.Y. 1996) (finding "custodial plaintiffs have a substantive due process right to be free from unreasonable and unnecessary intrusions into their emotional well-being", and denying defendants' motion to dismiss plaintiffs' ADA and Rehabilitation Act claims); *B.H. v. Johnson*, 715 F. Supp. 1387, 1395 (N.D. Ill. 1989) ("[W]e adopt [the] holding that a child who is in the state's custody has a substantive due process right to be free from unreasonable and unnecessary intrusions on both its physical and emotional well-being.").

[2] *See, e.g.*, W.Va. Code § 49-4-111(a) (DHHR has authority to remove foster children from a dangerous foster home and "schedule an emergency team meeting to address placement options"); W.Va. Code § 49-4-111(b)(6) (a court can

3

While West Virginia circuit courts might approve case plans and placement recommendations, DHHR, like child welfare agencies in other states, is responsible for developing necessary placement and service arrays, recommending appropriate placement settings and placing children in those settings, developing case plans, providing services and supports necessary to maintain those placements, and engaging in casework to ensure children are progressing toward their permanency goals while in those placements. *See* W.Va. Code § 49-4-604 (DHHR must develop a child's case plan, which must include a "description of the type of home or institution in which the child is to be placed, including . . . the appropriateness of the placement and how the agency . . . plans to assure that the child receives proper care and that services are provided to the parents, child, and foster parents . . ."). In conjunction with this, Defendants, not West Virginia circuit courts, are responsible for developing and retaining an adequate caseworker workforce to carry out those important responsibilities. *See* W.Va. Code § 49-4-408 (DHHR must establish programs to develop and train professionals " in the fields of medicine, law, social works and other relevant fields who are engaged in . . . the field of prevention, identification and treatment of child abuse and neglect . . .").

Here, Plaintiffs assert, for instance, Defendants lack an appropriate placement array, engage in thoughtless placement matching, fail to properly screen placements and ensure they are

---

terminate a placement "upon a finding that [DHHR] has developed a more suitable long-term placement for the child upon hearing evidence in a proceeding brought by [DHHR] . . ."); W.Va. Code § 49-4-111(c)("the department may terminate the foster care arrangement if another, more beneficial, long-term placement of the child is developed"); W.Va. Code § 49-4-111(e) (1) ("[DHHR] shall, upon a determination of the fitness of the persons and household seeking to enter into a foster care arrangement . . . which would unite or reunite siblings, and if termination and new placement are in the best interests of the children, terminate the foster care arrangement and place the child" with siblings); W.Va. Code § 49-4-111(f) ("Where two or more siblings have been placed in separate foster care arrangements and the foster parents of the siblings have made application to [DHHR] to enter into a foster care arrangement regarding the sibling or siblings not in their home . . . [DHHR's] determination as to placing the child in a foster care arrangement . . . shall be based solely upon the best interests of the siblings."); W.Va. Code § 49-4-202(b) (DHHR "shall assume the care, control and custody" of a relinquished child "and may contract with private child care agency for the care and placement of the child"); W.Va. Code § 49-4-302 (describing DHHR's authority to temporarily place children with, *inter alia*, relatives or in an shelter facility)

safe, and fail to provide services necessary to keep children in the least restrictive placements. (*See* ECF No. 1 at ¶¶ 228-255, 261-62, 318-327.) These represent failures on the part of the executive branch, not the judiciary. Indeed, circuit courts cannot place a child in placements that do not exist nor can circuit courts approve placements in settings that are not first presented to the court.

Defendants fixate on individual placements, because the rest of their arguments hinge on the incorrect theory that circuit courts order placements and this case is about those placement orders. It is a distraction technique.

This case is not about individual placement decisions—it is about systemic flaws and federal constitutional and statutory violations, which Defendants attempt to gloss over. Indeed, Defendants casually mention, "[t]heir other claims, to the extent they can be discerned, are inextricably intertwined . . . ." (ECF No. 35 at pg. 2.) This is the first time Defendants argue Plaintiffs' claims are challenging to discern—presumably a Hail Mary inspired by language in the University of Pennsylvania Journal of Law and Social Change article to which they cite in their Reply. (*See id.* at pg. 1.)

Defendants, for instance, ignore Plaintiffs' allegations regarding the causes of placement instability, including the state's inadequate placement array, failure to engage in proper placement matching, and failure to develop an adequate service array—and for good reason. These responsibilities rest squarely with West Virginia's executive branch, not the state's circuit courts.

The child welfare cases Plaintiffs cite in their Opposition to Defendants' Motion to Dismiss support the conclusion that this Court has jurisdiction to hear Plaintiffs' claims. *See*, *e.g.*, *Kenny A.*, 218 F.R.D. at 289 (holding *Rooker*-*Feldman* did not deprive the court of jurisdiction to hear plaintiff children's claims regarding systemic foster care deficiencies); *LaShawn A. v. Kelly*, 990 F.2d 1319 (D.C. Cir. 1993) (neglect and abuse proceedings "are not suitable arenas in which to

grapple with broad issues external to the parent-child relationship . . ."). Similarly, Plaintiffs do not seek federal review of state-court decisions.

Further, Defendants now make the circular argument that the Named Plaintiffs only have standing to pursue systemic claims on behalf of a class if they allege injuries stemming from state court decisions. (*See* ECF No. 35 at pg. 6.) Defendants then argue this Court must abstain from reviewing claims alleging injuries from state court decisions, thereby depriving Named Plaintiffs of standing. (*See id.*) The convoluted nature of this argument only highlights Defendants' misinterpretation of Plaintiffs' claims. Plaintiffs allege violations of their federal constitutional and statutory rights. Plaintiff do not challenge placement decisions, which in any event, are made by DHHR within the limited options of what is available.

Tellingly, Defendants fail to cite a single case involving class-wide, systemic challenges to support their theory, instead relying upon distinguishable, individual actions like *Tacza v. Martin*, No. 2:18-cv-01330, 2019 U.S. Dist. LEXIS 139909, at * (S.D. W. Va. Aug. 19, 2019) (dismissing action brought by grandmother alleging defendants improperly placed her grandchild with a foster family). In doing so, Defendants ignore federal authority from around the country in which courts deciding analogous claims brought by foster children have rejected similar attempts by defendants to deny jurisdiction.[3]

For the forgoing reasons, and the reasons cited in Plaintiffs' Opposition to Defendants' Motion to Dismiss, this Court has subject matter jurisdiction to hear Plaintiffs' claims.

### B. *Younger* abstention inapplicable.

---

[3] *See S.W. v. City of New York*, 46 F.Supp.3d 176, 201-03 (E.D.N.Y. 2014) (holding *Rooker-Feldman* did not bar plaintiff children's claims); *A v. Nutter*, 737 F.Supp.2d 341, 360 (E.D. Pa. 2010) (holding *Rooker-Feldman* did not bar plaintiff children and their parents' claims that defendants violated their Fourteenth Amendment rights due to their unsafe child welfare policies); *Kenny v. Perdue*, 218 F.R.D. at 289 (holding *Rooker-Feldman* did not deprive the court jurisdiction to hear plaintiff children's claims regarding systemic foster care deficiencies) (N.D. Ga. 2003); *Bonnie v. Bush*, No. 00-2116, 2001 U.S. Dist. LEXIS 23600, at *37-38 (S.D. Fla. Apr. 20, 2001) (holding *Rooker-Feldman* and abstention did not bar plaintiff foster children's federal claims against executive branch state officials).

Defendants also claim the Supreme Court's decision in *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69 (2013), has no bearing on this case, because "[s]tate court child welfare decisions fit neatly within the 'civil enforcement' category that *Sprint* . . . recognize[s] as a category appropriate for *Younger* abstention." (ECF No. 35 at pg. 9.) Defendants misapply the *Sprint* decision.

*Sprint* explained, "decisions applying *Younger* to instances of civil enforcement have generally concerned state proceeding akin to a criminal prosecution in important respects." 571 U.S. at 79. Critically, "[s]uch enforcement actions are characteristically initiated **to sanction the federal plaintiff**, *i.e.*, the party challenging the state action, for some wrongful act." *Id.* (emphasis added). Any enforcement action in West Virginia circuit courts is brought against the parents or guardians, not the children. Here, the Named Plaintiffs are foster children, not respondents in the state-court child welfare proceedings. As such, this case does not fit into one of the three categories of cases in which the Supreme Court has abstained under *Younger*.

### C. West Virginia circuit courts are inappropriate fora in which to raise Plaintiffs' federal constitutional and statutory claims.

Further, Defendants now claim West Virginia circuit courts commonly address systemic issues in child abuse and neglect cases that implicate federal rights. This is false.

The cases to which Defendants cite in support of their claim do not address any of the systemic issues raised in Plaintiffs' Complaint. *See In Edward B.*, 558 S.E.2d 620, 624 (W. Va. 2001) (finding DHHR did not follow state law procedural requirements when terminating petitioner mother's parental rights); *State ex rel. S.C. v. Chafin,* 444 S.E.2d 62, 65-67 (W. Va. 1994) (addressing alleged violation of state law where petitioner child was held in a secure facility in excess of 60 days without counsel); *State v. Michael M.,* 504 S.E.2d 177, 185 (W. Va. 1998) (applying state law and holding adoptive home was the preferred permanent out-of-home placement for three children); *In re Jonathan G.,* 482 S.E.2d 893 (W. Va. 1996) (applying state

7

law and finding that a child has a right to continued association with individuals with whom he has formed a bond); *In the Interest of Carlita B.,* 408 S.E.2d 365, 369 (W. Va. 1991) (affirming decision to terminate biological mother's parental rights pursuant state statutory provisions). Notably, besides *Chafin,* in which the petitioner was a late adolescent, none of the other petitioners in these cases were children. Rather, they included DHHR, former foster parents, and biological parents—all grossly dissimilar to Named Plaintiffs, foster children in the custody of DHHR.

Moreover, the only state court action cited by Defendants that touches upon systemic issues is *Chafin*, a case in which the West Virginia Supreme Court of Appeals appointed an existing committee to conduct a statewide analysis of children who had been in foster care for more than one year. 444 S.E.2d 62 at 74. The purpose of the committee was to develop and recommend guidelines and rules of procedure. *See id.* The court did not mandate systemic change. Indeed, this case was decided in 1994, and tellingly the state still struggles with permanency issues.

Further, Defendants incorrectly assert West Virginia courts hear claims exactly like Plaintiffs'. (*See* ECF No. 35 at pg. 11.) For instance, Defendants claim West Virginia's highest court addressed federal law in the context of child abuse and neglect cases in *Kristopher O. v. Mazzone*, 706 S.E.2d 381 (W. Va. 2011). But *Kristopher O.* merely found DHHR's internal policy, which provided that the "state shall consider giving preference to an adult relative over a non-relative caregiver", was fashioned after the requirements set forth under 42 U.S.C.A. 671(a)(19); claims arising under the federal statute were not litigated. *Id.* at 390.

Defendants also cite *State ex rel. Silver v. Wilkes*, 213 W. Va. 692 (2003), asserting that because West Virginia circuit courts are courts of general jurisdiction, they hear claims exactly like Plaintiffs' federal claims. (*See* ECF No. 35 at pg. 11.) But the *Silver* court did not contemplate claims arising under federal laws or the United States Constitution.

8

Finally, Defendants suggest that due to the sheer volume of individual child abuse and neglect cases filed in West Virginia circuit courts, those courts necessarily address system-wide issues. This makes no sense—the circuit courts hear and decide individual cases. They do not look at the system as a whole, regardless of how many individual cases are pending. Additionally, the very case to which Defendants cite in support of their proposition details the "immense" issues that West Virginia's foster care system faces. *See State ex rel. W. Va. Dep't of Health & Human Res. V. Dyer*, No. 19-0331, 2019 W. Va. LEXIS 613, at *19 ("Many of these [abuse and neglect] cases are replete with failures of the DHHR to live up to their responsibilities, not only to protect children who are abused and/or neglected, but to address these children's individualized special needs which are often related to or the result of the abuse and/or neglect.") In *Dyer*, DHHR and the children's guardian ad litem sought an order prohibiting a circuit court from granting a post-adjudicatory improvement period to the respondent parents in an individual child welfare case. *Dyer*, therefore, while noting systemic issues plaguing West Virginia's child welfare system, did not issue orders aimed at remedying those issues. If anything, *Dyer* further highlights the importance of this Court hearing Plaintiffs' federal claims.

**II.      Plaintiffs Have Sufficiently Pled Their Constitutional and Statutory Claims.**

**A.      Plaintiffs Have Sufficiently Alleged Violations of Their Substantive Due Process Rights.**

Defendants ask this Court to hold Plaintiffs to a higher burden than is required at this stage in the pleadings. "[T]o survive a motion to dismiss under Rule 12(b)(6), a complaint need only allege facts which, if true, state a claim to relief that is *plausible* on its face." *Owens v. Balt. City State's Attys. Office*, 767 F.3d 379, 403 (4th Cir. 2014).

The Fourth Circuit has held that when a child is placed in foster care, the protections of the Due Process Clause are triggered. *See Doe v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 175 (4th Cir.

9

2010). In such situations, "where it is alleged and the proof shows that the state officials were deliberately indifferent to the welfare of the child, liability may be imposed." *Doe*, 597 F.3d at 175. Plaintiffs have met their burden in alleging violations of their substantive due process rights, as detailed in their Opposition to Defendants' Motion to Dismiss. (See ECF No. 35 at pgs. 17-24.)

Yet Defendants argue Plaintiffs' claims do not fit within the scope of the Substantive Due Process Clause's protections, essentially asking this Court to make premature factual determinations regarding whether certain factual assertions amount to deliberate indifference to the welfare of children. Federal courts have held otherwise, denying motions to dismiss similar claims. *See M.D. v. Abbott*, 907 F.3d 237, 264 (5th Cir. 2018) (finding defendants violated foster children's "substantive right to personal security and reasonably safe living conditions"); *see also Olivia Y.*, 351 F. Supp. 2d 543, 556 (S.D. Miss. 2004) (denying motion to dismiss constitutional claims because plaintiffs had sufficiently alleged "a violation of their substantive due process right to adequate care and treatment while in state custody"). This Court should similarly deny Defendants' Motion to Dismiss Plaintiffs' claims.

### B. Plaintiffs Have Sufficiently Alleged Violations of Their Familial Association Rights and Do Not Seek Novel Rights.

Additionally, Defendants now assert that Plaintiffs' claim the state has a constitutional duty to develop "new" familial associations with a "new" family. (*See* ECF No. 35 at pg. 16.) This is not true, as indicated by the plain language in Plaintiffs' Complaint: Defendants must make "reasonable efforts towards fostering familial association and securing a permanent home and family". (*Id.*; ECF No. 1 at ¶ 379.) Plaintiffs do not narrow the protections afforded them under the First, Ninth, and Fourteenth Amendments to "new" familial associations and "new" families.

Plaintiffs have sufficiently alleged violations of their constitutional familial association rights. Federal courts have found that "once the state has removed a child from his or her family,

10

it cannot deliberately and without justification deny that child the services necessary to facilitate reunification with his or her family, when safe and appropriate, without violating the child's right to family integrity". *Kenny A.*, 218 F.R.D. at 297 (N.D. Ga. 2003); *see also Brian A. by Brooks v. Sundquist*, 149 F. Supp. 2d 941, 956 (M.D. Tenn. 2000) (refusing to dismiss foster children's claim "that Defendants' systematic actions and inactions have violated their rights under the First and Ninth Amendments not to be deprived of family relationships").

### C. Plaintiffs Have a Private Right of Action Under the AACWA.

Defendants' argue Plaintiffs provide no support for their position that there is a private right of action under the AACWA provisions upon which Plaintiffs' claims rest. (*See* ECF No. 35 at pg. 17). But, Plaintiffs provide a detailed analysis under each prong of the *Blessing* test in their Opposition to Defendants' Motion to Dismiss.[4] (*See* ECF No. 29 at pg. 27-34.)

Moreover, since *Suter v. Artist M.*, 503 U.S. 347 (1992), the Fourth Circuit has never directly ruled upon whether a private cause of action exists under 42 U.S.C.S. §671(a)(16) and even Defendants acknowledge that this circuit's caselaw prior to *Suter*, which recognizes a private right of action under §671(a)(16), "had not been directly overruled by *Suter*". (ECF No. 18 at pg. 28); *see also L.J. v. Wilbon,* 633 F.3d 297, 309 (4th 2011). In *Wilbon,* that decision came under review and the Fourth Circuit upheld their prior ruling under "the law of the case" doctrine. The law of the case will not stand in the face of "new precedent by controlling authority." *Ryan v. Mike-Ron Corp.,* 259 Cal. App. 2d 91, 96-97 (4th Cir. 1968). Clearly, *Suter, Blessing,* and *Gonzaga* qualify as "new precedent by controlling authority" and were considered in *Wilbon*, yet the Fourth

---

[4] In determining whether a statutory provision gives rise to a private right of action, courts consider whether: (1) Congress intended that the provision benefits the plaintiff; (2) the plaintiff demonstrates that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence; and (3) the statute unambiguously imposes a binding obligation on the States. *See Blessing v. Freestone,* 520 U.S. 329 (1997).

11

Circuit held that *Suter* does not void their prior holding that rights asserted by plaintiffs under §671(a)(16) are privately enforceable under 42 U.S.C. §1983. *See Wilbon,* 633 F.3d at 309-10.[5]

For these reasons, and the reasons set forth in Plaintiffs' Opposition to Defendants' Motion to Dismiss, this Court should deny Defendants' Motion to Dismiss Plaintiffs' AACWA claims.

      **D.    Because *Olmstead* Applies to Foster Children, Plaintiffs Have Sufficiently Alleged Violations of Their Rights Under the ADA and Rehabilitation Act.**

Defendants argue they are not required to place foster children in the most integrated setting and, if additional services are necessary to support foster children in those settings, to provide those services. (*See* ECF No. 35 at pg. 18.) Yet, Defendants also tout the Memorandum of Understanding ("MOU") West Virginia entered into with the U.S. Department of Justice ("DOJ") after it found West Virginia was in violation of the ADA, as interpreted in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), which "require[s] that individuals with disabilities, including children with mental illness, receive supports and services in the most integrated setting appropriate to their needs." Letter from Dep't of Justice, Civil Rights Div., to Office of the Governor, State of West Virginia (June 1, 2015). Among the DOJ's specific findings was that "[c]hildren who depend on [DHHR] for mental health services experience high rates of placement in segregated residential treatment facilities, including out-of-state placement, because DHHR has not developed a sufficient array of in-home and community-based services." *Id.*

Plaintiffs in the ADA Subclass, foster children in the custody of DHHR, certainly depend on DHHR for mental health services, among other services. It is nonsensical to believe that

---

[5] The fact that *Suter* found no private right of action under § 671(a)(15) and § 671(a)(9) does not void the holding in *L.J. II* that the rights asserted by plaintiffs under § 671(a)(16) are privately enforceable under 42 U.S.C. § 1983. *See L.J. II*, 838 F.2d at 123.

12

*Olmstead* applies to all children who depend on DHHR for mental health services, with the exception of foster children, whom are likely the most vulnerable of them all.

*Marisol A. by Forbes v. Giuliani*, which addresses similar systemic claims arising under the ADA, is directly on point. 929 F. Supp. at 685 (denying defendants' motion to dismiss plaintiff's ADA and Rehabilitation Act claims because "a disabled individual is entitled to meaningful access to the benefits and services provided by a public agency or an agency receiving federal funds", and "the agency's failure to provide meaningful access to child welfare services is evident"). Here too, the Court should deny Defendants' Motion to Dismiss Plaintiff Children's ADA and Rehabilitation Act claims.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Plaintiffs' Opposition to Defendants' Motion to Dismiss (ECF No. 17), Defendants' Motion to Dismiss should be denied in its entirety

Respectfully submitted,

/s/ *Marcia Lowry*_____
Marcia Lowry, *admitted pro hac vice*
Allison Mahoney, *admitted pro hac vice*
Dawn Post, *admitted pro hac vice*
Valerie McLaughlin, *admitted pro hac vice*
A Better Childhood
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel.: (646) 795-4456
Fax: (212) 692-0415
mlowry@abetterchildhood.org
amahoney@abetterchildhood.org
dpost@abetterchildhood.org
vmclaughlin@abetterchildhood.org

*/s/ Richard Walters*_____
Shaffer & Shaffer, PLLC
Richard W. Walters, WVSB #6809
rwalters@shafferlaw.net
J. Alexander Meade, WVSB #13021
ameade@shafferlaw.net
Brian L. Ooten, WVSB #9358
booten@shafferlaw.net
SHAFFER & SHAFFER, PLLC
2116 Kanawha Boulevard, East
P.O. Box 3973
Charleston, West Virginia 25339
Telephone: (304) 344-8716

/s/ *Jeremiah Underhill*_____
Disability Rights of West Virginia
Jeremiah Underhill, WVSB #13094
junderhill@drofwv.org
Erin Snyder, WVSB #13094
esnyder@drofwv.org
Lori Waller, WVSB #11303
lwaller@drofwv.org
1207 Quarrier Street, Suite 400
Charleston, WV 25301
Tel: (304) 346-0847
Fax: (304) 346-0687