```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT CHARLESTON

_____x
                              :
JONATHAN R., et al.,          :    Civil Action
                              :
          Plaintiffs,         :    No.  3:19-cv-00710
                              :
v.                            :
                              :    Date:  January 9, 2023
JIM JUSTICE, et al.,          :
                              :
          Defendants.         :
_____x


         TRANSCRIPT OF TELEPHONIC CONFERENCE HELD
    BEFORE THE HONORABLE THOMAS E. JOHNSTON, CHIEF JUDGE
              UNITED STATES DISTRICT COURT
              IN CHARLESTON, WEST VIRGINIA

APPEARANCES:

For the Plaintiffs:        JULIA TEBOR
                           A Better Childhood
                           16th Floor
                           355 Lexington Avenue
                           New York, NY 10017


                           RICHARD W. WALTERS
                           JAMES A. MEADE
                           Shaffer & Shaffer
                           P. O. Box 3973
                           Charleston, WV 25539-3973


                           LORI (PETERS) WALLER
                           Disability Rights of West
                           Virginia
                           4th Floor
                           1207 Quarrier Street
                           Charleston, WV 25301

For the Defendants:        PHILIP J. PEISCH
                           JULIA M. SIEGENBERG
                           CAROLINE M. BROWN
                           Brown & Peisch
```

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

Case 3:19-cv-00710   Document 299   Filed 01/10/23   Page 2 of 13 PageID #: 12991

2

(Appearances continued)

```
                              Suite 505
                              1233 20th Street, NW
                              Washington, DC 20036

                              STEVEN RAY COMPTON
                              Attorney General's Office
                              1200 Quarrier Street
                              Second Floor
                              Charleston, WV 25301
```

Court Reporter:          Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography; transcript produced by computer.

1    PROCEEDINGS had before The Honorable Thomas E.
2 Johnston, Chief Judge, United States District Court,
3 Southern District of West Virginia, in Charleston, West
4 Virginia, on January 9, 2023, at 9:30 a.m., as follows:
5        THE COURT:  Good morning.  This is Judge Johnston.
6 This is a telephonic status conference in Jonathan R. v.
7 Justice, civil action number 3:19-cv-00710.
8      I have on the line my law clerk, Adam Wilson; my
9 courtroom deputy, Staci Wilson; and my court reporter, Ayme
10 Cochran.
11     We are on the record.
12     Will counsel please note their appearances?
13        MR. WALTERS:  Richard Walters and Alex Meade for
14 Shaffer & Shaffer on behalf of the plaintiffs.
15        MS. WALLER:  Lori Waller, Disability Rights of
16 West Virginia, on behalf of plaintiffs.
17        MS. TEBOR:  Julia Tebor, A Better Childhood, on
18 behalf of the plaintiffs.
19        MR. PEISCH:  Phillip Peisch and Julia Siegenberg
20 at Brown & Peisch for the defendants.
21        MR. COMPTON:  Steven Compton, Deputy Attorney
22 General, for the defendants.
23     (Cross-talk)
24        MS. BROWN:  Sorry.  Caroline Brown, Brown &
25 Peisch, for the defendants.

1     THE COURT: Wow. That's a small crowd for one of
2 these calls.
3     Well, I appreciate you all joining me. I will ask that
4 when you're not speaking that you mute your phone and that
5 when you are speaking you identify yourself for the benefit
6 of myself and the court reporter.
7      To use a trite in opening, I suppose you all are
8 wondering why I've called you here today, and I will tell
9 you the reason.
10     First of all, a -- in case you're wondering, and I'm
11 sure you are, an opinion on the motion to dismiss is
12 imminent. It's not ready to go. It probably won't come out
13 today, but it is imminent and, suffice it to say, as the old
14 saying goes, you're going to win some and you're going to
15 lose some. So -- and I'm not going to get any more specific
16 than that. So, that isn't really why I called the telephone
17 conference, but I wanted to address that at the outset.
18     The reason I really tried to -- or I really set up the
19 telephone conference is that for all of us in West Virginia
20 it's pretty obvious that the hottest topic of this
21 legislative session which is about to begin is the DHHR and
22 its troubles and it -- the idea occurred to me that now
23 might be time that -- the time that the iron is hottest to
24 strike and get the people who are real decision-makers in
25 all of this into this process and try to find a resolution

1    that's satisfactory to everybody.
2         I'm a little disappointed Ms. Lowry is not on the call
3    today because she seems to be calling the shots for the
4    plaintiffs, for the most part.
5              MR. WALTERS:  Your Honor, if I may, Ms. Lowry
6    contacted me on Friday.  She unfortunately has COVID and
7    asked me to take lead in the hearing this morning and that's
8    why she's not available.
9              COURT REPORTER:  I'm sorry.  Who was that
10   speaking, please?
11             THE COURT:  I'm sorry --
12             MR. WALTERS:  I forgot to identify myself.  This
13   is Rich Walters of Shaffer & Shaffer.
14             THE COURT:  Okay.  Well, I suppose, Mr. Walters,
15   in some ways it's good because, you know, the news of the
16   issues with DHHR probably haven't -- isn't quite as readily
17   available in New York City as it is here in Southern West
18   Virginia.  I'm sure you're aware of it.
19        And I think that the -- there is a greater and greater
20   awareness within the legislature, within the media, and
21   within the public that there are serious problems with DHHR
22   and the legislature appears poised to focus very much on
23   DHHR and its issues in this session.
24        That strikes me as a great opportunity to find a real
25   resolution to this case.  And so, this is what I propose

1 that we do.
2 　　I propose that you all give me the authority to reach
3 out and it would probably be first to Speaker Hanshaw and
4 get the legislators who are the leaders on this issue
5 involved in this process so that we can find a resolution to
6 this case.
7 　　And my suggestion is that, you know, the Speaker and
8 the Senate President are going to be involved in everything,
9 but they're also -- so, they'll be involved in this, but
10 they're also involved in everything.
11 　　I also think that, based on my days in politics, which
12 have long since passed, that not a lot gets done the first
13 few weeks of the legislature and a lot gets done in the last
14 few weeks and they get very busy.  So, the beginning of the
15 session, or right before the beginning of the session, may
16 be the very best time for us to put this case on their radar
17 and say, look, we need to find a solution to the issues
18 being raised in this case.
19 　　So, and I -- I would propose that we try to bring
20 everybody that has any authority on this to resolve the
21 issues in this case, get them into a room, and figure it
22 out.  I know we tried this once before with Mr. Crouch
23 representing DHHR in those negotiations.  I was pretty
24 under-whelmed with that whole process.  He's now gone.  The
25 agency has new temporary leadership and I presume will be

1   getting new permanent leadership soon but, in the meantime,
2   it's under a microscope and what is being seen under that
3   microscope isn't pretty.  So, I suggest that now is the time
4   to get all of those folks involved and try to find an
5   appropriate resolution to this case.
6          And, again, my proposal is that you give me the
7   authority to reach out to individual legislators to -- to
8   get them to agree to participate in a settlement negotiation
9   on this case starting with Speaker Hanshaw.
10         I will hear from the plaintiffs first about their
11  thoughts on this.
12             MR. WALTERS:  Your Honor, you may recall, we kind
13  of crossed this bridge a little bit a few years ago when the
14  case got off and we were hesitant at that time to get the
15  legislature involved mainly -- I mean, yes, there are a lot
16  of things the legislature needs to do and, hopefully, they
17  will go down the right path, but I'm not sure that they have
18  the control or are in the position to do some of the things
19  that you can do to get DHHR to comply with the current rules
20  and regs.
21         So, from the get-go, our position has never been that
22  we need to go in and change anything.  We just need to get
23  them to comply with what's already in place.  And that's
24  what they have done, failed to do, and that's what's being
25  -- the light is being shown on now.

1    So, I don't want to say no. I'm hesitant. Anything to
2 get the matter resolved, of course, we are always in favor
3 of, but what I would like to do and what I would ask the
4 Court's indulgence on is for us to get together and talk
5 about this and report back in a day or two and give you our
6 thoughts on it. As you might expect, this is not what I was
7 expecting from the status call today. And so, I've kind of
8 got -- I'm torn on it, Your Honor. I like the idea of
9 getting it resolved, of getting these issues fixed because
10 they need to be fixed, and that's for all the reasons we've
11 seen throughout the press, as well as what we've discovered
12 in discovery, and just from general knowledge, but if I
13 could just have a short pause to consult Ms. Lowry and the
14 other members of our team and discuss it.
15    THE COURT: Well, as you discuss it, I want to
16 suggest just a couple of thoughts for you. One is that I
17 know you want me to appoint a monitor and essentially take
18 over the oversight, if not the running of the foster care
19 program in West Virginia. That doesn't mean you're going to
20 get it. And we probably have years of litigation ahead of
21 us, not the least of which will probably be you all or the
22 other side running off to the Fourth Circuit to complain
23 about my rulings again. So, that's going to take a long
24 time.
25    I'm offering you a potential opportunity to do some

1   good for these kids in the very near term.
2           MR. WALTERS: I -- right. I understand that and
3   that's why -- that's why, Your Honor, and I do appreciate
4   the fact that the legislature, this is their hot topic. And
5   so, I absolutely understand where you're coming from and I
6   think there's obviously a lot of merit to it.
7       I would just like to -- and will certainly convey that
8   to Ms. Lowry and discuss it. And then we'll certainly take
9   your -- yes, we'll certainly take that into consideration.
10          THE COURT: All right. Well, I want to hear back
11  by Wednesday and, if Ms. Lowry's answer is no, then I'm
12  going to want to talk to Ms. Lowry. And you can tell her
13  that.
14          MR. WALTERS: Understood, Your Honor. Yes, sir.
15          THE COURT: All right. Mr. Peisch?
16          MR. PEISCH: Your Honor, Phil Peisch for the
17  defendants. Just as -- just as was the case a few years
18  ago, we do not have any opposition to engaging the
19  legislature on this. DHHR views its legislative partners as
20  critical to any and all improvements in reform in the child
21  welfare system, and works closely with them, and would be
22  happy to sit down with them and have the Court engage them
23  as part of this process.
24      I would -- you know, I don't think this is the proper
25  forum or the time to litigate these issues, but I would be

1   remiss if I didn't mention that, although there is a lot of
2   press attention and criticism of DHHR, that is true, and it
3   is certainly not -- you know, there are a lot of
4   improvements to be made.  DHHR -- and the record in this
5   case shows that DHHR has worked very closely with the
6   legislature over the last five years to improve the system.
7   And great improvements have been made.  And I would just
8   urge the parties to wait for the -- and the Court to wait
9   for the actual record on that because I think the press
10  coverage has not been entirely complete on the situation
11  with child welfare in West Virginia.
12          THE COURT:  Well, I appreciate your willingness to
13  indulge my suggestion.  And I would point out to you, you
14  know, sort of the other side of the coin, and that is that
15  in spite of the claims of improvement, I think it's pretty
16  well known throughout the state that the foster care system
17  does not work like it should.
18      And I'll give you an example of that.  The church that
19  I attend makes foster care one of its primary ministries and
20  encourages people to be foster parents because of the
21  difficulty in finding good foster parents.  The pastor
22  himself has had a number of foster kids in the last couple
23  of -- couple, three years, and they've now started a new
24  ministry for those who -- who don't have foster children to
25  do other things to support those who do have foster

1    children.  And, no doubt, part of the reason for that is
2    that the system is perceived to be a mess.
3         So, you know, there's a lot of reasons, I think, for
4    both sides to take me up on my suggestion that we find a
5    solution to this.  And the ultimate reason is for the
6    benefit of -- regardless of the legal outcomes, of all the
7    legal issues that may be litigated in this case both here
8    and at the appellate court, and the merits of those issues
9    which, you know, you're about to get an opinion on, in any
10   event, this is about these foster kids.
11        And I -- I initially didn't think this was the
12   appropriate forum.  The Fourth Circuit felt otherwise.  And
13   so, I look at this case, and I look at the current situation
14   in the state, and in the legislature, and I say if there was
15   ever a time to try to find a solution to this case through a
16   settlement, now is the time.
17             MR. PEISCH:  Your Honor, this is Phil Peisch for
18   the defendants.  Thank you for that.  And I -- I do want to
19   make clear, and this has been our position from the very
20   beginning of the case, DHHR is all ears in terms of
21   proposals that can improve the system and make it better.
22   So, convening the parties, and the critical parties like
23   you've suggested to help advance that process is something
24   we -- we certainly support and will engage in fully and work
25   hard to advance.

1    THE COURT: Well, I appreciate that. And I assume
2 then I have your consent for me to reach out to the various
3 legislators, including Speaker Hanshaw?
4    MR. PEISCH: Yes, Your Honor, you do.
5    THE COURT: Very well.
6    And I will await to hear from the plaintiffs here in
7 the next couple of days.
8    MR. WALTERS: Thank you, Your Honor. We'll make
9 sure we get to you hopefully tomorrow; if not, Wednesday at
10 the latest.
11    THE COURT: All right. That sounds good.
12    Anything else we can take up today?
13    The motions are under advisement but, like I say, an
14 opinion on the motion to dismiss is imminent. And I don't
15 usually give any previews of opinions, but this one, I think
16 it would be hardly a surprise to anybody in this case to say
17 you're going to win some and you're going to lose some. And
18 you might say, well, are you saying that to me, Judge? And
19 the answer is yes.
20    So, that's -- is there anything else other than that we
21 need to take up in this case today?
22    MR. WALTERS: No, Your Honor. Not for the
23 plaintiffs.
24    MR. PEISCH: No, Your Honor. Not from the
25 defendants.

```
1            THE COURT:  All right.  Have a good day.
2            MR. WALTERS:  Thank you, Your Honor.
3            MR. PEISCH:  Thank you.
4       (Proceedings concluded at 9:50 a.m., January 9, 2023.)
5
6
7  CERTIFICATION:
8       I, Ayme A. Cochran, Official Court Reporter, certify
9  that the foregoing is a correct transcript from the record
10 of proceedings in the matter of Jonathan R., et al.,
11 Plaintiffs v. Jim Justice, et al., Defendants, Civil Action
12 No. 3:19-cv-00710, as reported on January 9, 2023.
13
14 s/Ayme A. Cochran, RMR, CRR                 January 9, 2023
15 Ayme A. Cochran, RMR, CRR                             DATE
```