## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| JONATHAN R., *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| v. | ) | |
| | ) | |
| JIM JUSTICE, in his official capacity as | ) | Case No. 3:19-cv-00710 |
| Governor of West Virginia, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

### ANSWER TO PLAINTIFFS' CLASS ACTION COMPLAINT

Defendants by and through their undersigned counsel, hereby answers the Plaintiffs' Class Action Complaint and asserts Affirmative Defenses as follows:

### ADMISSIONS AND DENIALS

Defendants generally deny all of Plaintiffs' allegations as set for in Plaintiffs' Class Action Complaint, except for those that are specifically admitted below, *see* Fed. R. Civ. P. 8(b)(3).

### Preliminary Statement

### Introduction

1.    Defendants deny the allegations in this paragraph.

2.    Defendants deny the allegations in this paragraph.

3.    Defendants admit that, according to federal reports, in 2017 the rate of child fatalities related to abuse and neglect per 100,000 children in West Virginia was more than double the national average.  Defendants admit that in 2017 the rate of child abuse and neglect investigations or assessments per 100,000 children was more than triple the national average. Defendants lack knowledge or information sufficient to form a belief as to the truth of the claim that the rate of referrals to DHHR for abuse and neglect was over one-and-a-half times the national average in 2017.  Defendants otherwise deny the allegations in this paragraph.

1

4.      Defendants admit that the foster care population in West Virginia grew by 67 percent between 2013 and 2017, and that the national average increase was 11 percent during the same years.  Defendants admit that the growth in foster care cases was caused in part by the opioid crisis, and that West Virginia was disproportionately impacted compared to other States.  Defendants otherwise deny the allegations in this paragraph.

5.      Defendants admit that in the most recent year for which data is available West Virginia had the highest age-adjusted rate of drug overdose deaths in the country.  Defendants admit that parental and caregiver substance abuse is a major factor leading to removal of a child from their home.

6.      Defendants admit that in 2017, the rate of foster care entries for youth ages 14 to 17 was 14.2 per 1,000 children, as compared to the national average of 2.8 per 1,000 children.  Defendants admit that in 2018, West Virginia had the highest number of entries into foster care in the country.  Defendants otherwise deny the allegations in this paragraph.

7.      Defendants admit that as of June 2019, there were 327 foster children in out-of-state residential treatment programs and psychiatric hospitals; 588 foster children in in-state group residential care; and 83 foster children in in-state psychiatric facilities.  Defendants otherwise deny the allegations in this paragraph.

8.      Defendants deny the allegations in this paragraph.

9.      Defendants admit that in 2018 West Virginia had 791 reported runaways from foster care.   Defendants otherwise deny the allegations in this paragraph, including all subparagraphs.

10.    The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

## Parties

### I.  Plaintiffs

11.    Defendants admit that Jonathan R. appears through Sarah Dixon.  Defendants otherwise deny the allegations in this paragraph.

12.    Defendants deny that Anastasia M. is in DHHR custody.  Defendants admit that Anastasia M. has been in foster care twice.  Defendants admit that Anastasia M. appears through Cheryl Ord.  Defendants otherwise deny the allegations in this paragraph.

13.    Defendants admit that Serena S. had multiple placements.  Defendants admit that Serena S. was separated from her sibling.  Defendants admit that Serena S. appears through Sarah Dixon.  Defendants otherwise deny the allegations in this paragraph.

14.    Defendants admit that Theo S. is in DHHR custody.  Defendants admit that Theo S. is able to be adopted.  Defendants admit that Theo S. has had multiple foster home placements.  Defendants admit that Theo S. appears through L. Scott Briscoe.  Defendants otherwise deny the allegations in this paragraph.

15.    Defendants admit that Garrett M. appears through L. Scott Briscoe.  Defendants otherwise deny the allegations in this paragraph.

16.    Defendants admit that Gretchen C. has experienced multiple placements.  Defendants admit that Gretchen C. appears through April Flowers.  Defendants otherwise deny the allegations in this paragraph.

17.     Defendants deny that Dennis R. is in DHHR custody.  Defendants admit that Dennis R. has experienced multiple placements.  Defendants admit that Dennis R. appears through Debbie Stone.  Defendants otherwise deny the allegations in this paragraph.

18.     Defendants admit that Chris K., Calvin K., and Caroline K. are siblings. Defendants otherwise deny the allegations in this paragraph.

19.     Defendants admit that Karter W. is in DHHR custody.  Defendants admit that Karter W. is able to be adopted.  Defendants admit that Karter W. has had multiple placements, including in residential treatment programs in West Virginia and other States.  Defendants admit that Karter W. appears through L. Scott Briscoe.  Defendants otherwise deny the allegations in this paragraph.

20.     Defendants admit that Ace L. is in DHHR custody. Defendants admit that Ace L. has experienced multiple placements, including in residential treatment programs and hospital settings.  Defendants admit Ace L. appears through Isabelle Santillion.  Defendants otherwise deny the allegations in this paragraph.

## II. Defendants

21.     Defendants admit that Defendant Jim Justice is the Governor of West Virginia and appoints the Secretary of DHHR, who serves in Governor Justice's cabinet.  The remainder of the allegations contained in this paragraph constitute legal conclusions to which no response is necessary.

22.     Defendants admit only the allegations in the first two sentences.  The allegation that "[i]t is authorized by law to maintain and has ultimate responsible [sic] for maintaining the overall Department" is vague and constitutes a legal conclusion to which no response is necessary. Defendants otherwise deny the allegations in this paragraph.

23.     Defendants admit that Bill Crouch was formerly the Secretary of DHHR. Defendants otherwise deny the allegations in this paragraph.

24.     Defendants admit that Jeremiah Samples was formerly the Deputy Secretary of DHHR.  Defendants otherwise deny the allegations in this paragraph.

25.     Defendants admit that Linda Watts was formerly the Commissioner of the Bureau for Children and Families ("BCF").  Defendants otherwise deny the allegations in this paragraph.

## Jurisdiction and Venue

26.     The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

27.     The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

28.     The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

## Class Action Allegations

29.     The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

30.     This paragraph sets forth Plaintiffs' characterization of this action and legal conclusions to which no response is necessary.  To the extent this Court deems a response necessary, Defendants deny the allegations in this paragraph, including in all subparagraphs.

31.     This paragraph sets forth Plaintiffs' characterization of this action and legal conclusions to which no response is necessary.   To the extent this Court deems a response necessary, Defendants deny the allegations in this paragraph.

32.     This paragraph sets forth Plaintiffs' characterization of this action and legal conclusions to which no response is necessary.   To the extent this Court deems a response necessary, Defendants deny the allegations in this paragraph.

33.     Defendants admit that DHHR provides or arranges for the provision of certain services to Theo S., Kenneth W., and Ace L. Defendants otherwise deny the allegations in this paragraph.

34.     Defendants deny the allegations in this paragraph.

35.     This paragraph sets forth Plaintiffs' characterization of this action and legal conclusions to which no response is necessary.   To the extent this Court deems a response necessary, Defendants deny the allegations in this paragraph.

36.     This paragraph sets forth Plaintiffs' characterization of this action and legal conclusions to which no response is necessary.   To the extent this Court deems a response necessary, Defendants deny the allegations in this paragraph.

37.     Defendants deny the allegations in this paragraph.

38.     Defendants deny the allegations in this paragraph.

39.     Defendants deny the allegations in this paragraph.

40.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

41.     Defendants admit only that named Plaintiffs are represented by A Better Childhood, Inc.; Marcia Robinson Lowry; Shaffer and Shaffer, PLLC; Richard W. Walters; Alexander Meade;

Disability Rights of West Virginia; and Lori Waller.  Defendants deny that Dawn J. Post, Allison Mahoney, Valerie McLoughlin, Brian Ooten, Jeremiah Underhill, or Erin Snyder represent the named plaintiffs.   Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

**Facts**

I.      **The Plaintiff Children**

Jonathan R.

42.      Defendants deny that Jonathan R. is 15 years old.  Defendants deny that Jonathan R. has "spent most of the last seven years in institutional care."  Defendants deny that Jonathan R. is a member of any class or subclass.  Defendants admit that Jonathan R. appears though Sarah Dixon.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

43.      Defendants admit that DHHR received a referral and opened an investigation related to Jonathan R.'s biological parents.  Defendants deny that DHHR's investigation of the referral was incomplete or that DHHR never verified the suitability of the adoptive parents. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

44.      Defendants deny that DHHR "never provided Jonathan or his caregivers with supportive services."  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

45.      Defendants deny that DHHR never opened a formal investigation into Jonathan R.'s adoptive home.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

46.     Defendants admit that DHHR received a referral in March of 2015, which included a report that Jonathan R.'s adoptive mother hit him with a broom handle.  Defendants deny that Jonathan R. was 11 years old.  Defendants deny that DHHR failed to open an investigation. Defendants admit that Jonathan R. remained in the adoptive home.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

47.     Defendants admit that in January 2016, a referral was made alleging physical and emotional abuse.  Defendants deny that DHHR failed to open an investigation into the referral. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

48.     Defendants admit that in or around May 2016, Jonathan R.'s adoptive parents refused to allow him to remain in their home.  Defendants deny the allegation that in May 2016, Jonathan R.'s adoptive parents had him admitted to Highland Psychiatric Hospital due to allegations that he had sexual contact with another child.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

49.     Defendants admit that Jonathan R. entered DHHR custody in May 2016. Defendants admit that Jonathan R. was placed at Coastal Harbor Treatment Center.  Defendants otherwise deny the allegations in this paragraph.

50.     Defendants admits that Jonathan R. has never been adjudicated to be a sex offender. Defendants otherwise deny the allegations in this paragraph.

51.     Defendants admit that Jonathan R. was placed at Stepping Stones, which is a residential treatment facility.  Defendants otherwise deny the allegations in this paragraph.

52.     Defendants admit that Jonathan R. was placed with his biological grandmother. Defendants otherwise deny the allegations in this paragraph.

53.     Defendants admit the allegations in this paragraph.

54.     Defendants deny the allegations in this paragraph.

Anastasia M.

55.     Defendants deny that Anastasia M. is 11 years old.  Defendants admit that Anastasia M. has been in DHHR custody twice.  Defendants admit that Anastasia M. appears through Cheryl Ord.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

56.     Defendants admit that Anastasia M. entered foster care when she was four years old, was adopted, and reentered foster care at ten years old.  Defendants otherwise deny the allegations in this paragraph.

57.     Defendants admit that Anastasia M. and her brother were placed with a foster mother, AM, who, at the time, was a single mother of five, including four adopted children.  Defendants deny that Anastasia M. lived with AM for 18 months.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

58.     Defendants deny that "CPS opened an internal investigation on AM after her son, who . . . had behavioral issues, made a report to CPS."  Defendants otherwise admit the allegations in this paragraph.

59.     Defendants admit that Anastasia M. and her brother were placed in four foster homes while in DHHR custody.  Defendants admit that Anastasia M. and her brother were placed back in the care of AM, and seven months later, were adopted by AM.  Defendants admit that Anastasia M. was in out-of-home care for 31 months.  Defendants otherwise deny the allegations in this paragraph.

60.     Defendants admit that the adoption disrupted and DHHR removed Anastasia M. and she was placed back in foster care.  Defendants deny Plaintiffs' characterization of the adoption as a "placement."  Defendants admit that Anastasia M. was admitted to Highland Psychiatric Hospital and was in a six-month program at ChildHelp while in AM's care.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

61.     Defendants admit that Anastasia M. was placed in an emergency shelter in Clarksburg.  Defendants admit that approximately 60 days later, she was placed in a shelter in Cabell County.  Defendants admit that she was discharged from the Cabell County shelter after she sprayed Lysol on a staff member.  Defendants admit that just before her 11th birthday, she was sent to the Robert L. Shell Juvenile Detention Center.  Defendants deny that "Anna was charged with assault."  Defendants deny that Anastasia M. remained in the Robert L. Shell Juvenile Detention Center for over three months.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

62.     Defendants deny the allegations in this paragraph.

63.     Defendants deny that Anastasia M. is placed at the Lighthouse Care Center of Augusta in Augusta, Georgia, a residential treatment facility for children and teens with psychiatric issues.  Defendants admit that there has been news coverage of alleged incidents of wrongdoing at Lighthouse Care Center.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

64.     Defendants admit that Anastasia M. is "exceptionally bright and has an IQ of 130." Defendants admit that Anastasia M. has psychological diagnoses.  Defendants otherwise deny the allegations in this paragraph.

65.     Defendants deny the allegations in this paragraph.

<u>Serena S.</u>

66.     Defendants deny that Serena S. is 11 years old.  Defendants admit that Serena S. has Down Syndrome.  Defendants admit that Serena S. appears through her next friend Sarah Dixon.  Defendants deny that Sarah Dixon is Serena's guardian ad litem.  Defendants deny that Serena S. is a member of any class or subclass.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

67.     Defendants deny that Serena S. entered foster care in December 2018 because she had missed an excessive amount of school.  Defendants deny that Serena S. was the subject of "several child protective referrals based on educational neglect" prior to entering foster care. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

68.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

69.     Defendants admit that DHHR filed an abuse or neglect petition.  Defendants otherwise deny the allegations in this paragraph.

70.     Defendants deny the allegations in this paragraph.

71.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that "Serena was distraught over the separation from her little brother." Defendants admit that there was a lack of sibling visits for three months.  Defendants otherwise deny the allegations in this paragraph.

72.     Defendants admit that in April 2019, Serena S. was placed in a non-kinship home without her brother.  Defendants otherwise deny the allegations in this paragraph.

73.     Defendants deny that "the Potomac Center is marked by a low staff-to-resident ratio, poor training and oversight of their staff, and abuse and neglect from staff towards the residents."  Defendants lack knowledge or information sufficient to form a belief about the truth of the other allegations in this paragraph.

74.     Defendants deny the allegations in this paragraph.

75.     Defendants deny the allegations in this paragraph.

Theo S.

76.     Defendants deny that Theo S. is seven years old.  Defendants deny that Theo S. is currently placed in an out-of-state institution.  Defendants admit that Theo S. appears through his next friend, L. Scott Briscoe.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

77.     Defendants admit that Theo S. first came to DHHR's attention on June 14, 2012, three days after his birth.  Defendants admit that Theo S. was suffering from withdrawal. Defendants admit that DHHR declined to open a case at that time.  Defendants lack knowledge or information sufficient to form a belief about the truth of the other allegations in this paragraph.

78.     Defendants admit the allegations in this paragraph.

79.     Defendants admit that Theo S. was placed with his maternal aunt who agreed to have no contact with Theo's mother.  Defendants deny Plaintiffs' characterization that the placement was intended to last "until DHHR put a protective plan in place."  Defendants admit the remaining allegations in this paragraph, except Defendants deny Plaintiffs' characterization that Theo S.'s mother missed "many" drug screens.

80.     Defendants admit the allegations in this paragraph.

81.     Defendants admit the allegations in this paragraph.

82.     Defendants admit that DHHR filed a petition for abuse and neglect on February 5, 2016.  Defendants otherwise deny the allegations in this paragraph.

83.     Defendants admit the allegations in this paragraph.

84.     Defendants admit that Theo S.'s father did not participate or appear in court. Defendants otherwise deny the allegations in this paragraph.

85.     Defendants deny the allegations in this paragraph.

86.     Defendants deny the allegations in this paragraph.

87.     Defendants deny the allegations in this paragraph.

88.     Defendants deny the allegations in this paragraph.

89.     Defendants admit that Theo S. was placed in a non-kinship foster home on January 22, 2018.  Defendants admit that the foster home asked DHHR to remove Theo S.  Defendants deny the remaining allegations in this paragraph.

90.     Defendants deny the allegations in this paragraph.

91.     Defendants deny the allegations in this paragraph.

92.     Defendants admit that Theo S. was placed in four non-kinship placements between February 2018 and June 2018.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

93.     Defendants admit that Theo S. spent a week at Ohio Valley Medical Center. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

94.     Defendants deny the allegations in this paragraph.

95. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that Theo S. "was at an early kindergarten level when assessed educationally." Defendants admit the remaining allegations in this paragraph.

96. Defendants admit that Guanfacine, Clonidine, Focalin XR, and Risperdal were listed on Theo S.'s initial plan of care. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that the medications "have seemingly conflicting side-effects." Defendants otherwise deny the allegations in this paragraph.

97. Defendants admit the allegations in this paragraph.

98. Defendants admit that reports indicate that Theo S. sustained minor injuries as a result of peer-to-peer altercations. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

99. Defendants admit that Theo S. exhibited symptoms of depression while at ChildHelp. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

100. Defendants deny the allegations in this paragraph.

101. Defendants deny the allegations in this paragraph.

Garrett M.

102. Defendants deny that Garrett M. is 17 years old. Defendants deny that Garret M. has been in DHHR custody since 2012. Defendants deny that Garret M. is a member of any class or subclass. Defendants admit that Garrett M. appears through his next friend, L. Scott Briscoe. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

14

103.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

104.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

105.    Defendants admit that DHHR removed the children and placed them in a non-kinship foster home.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

106.    Defendants admit that Garrett was accused of inappropriately touching his sisters. Defendants admit that formal charges were not brought against Garrett M.  Defendants admit that Garrett M. alleged that he was sexually abused by his older brother when he was young. Defendants admit that DHHR considered the allegations that Garrett M. had inappropriate contact with his sisters in deciding what services Garrett M. should receive and where to recommend Garrett M. be placed.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

107.    Defendants admit that in September 2015, the court granted a separation of siblings request.  Defendants deny that the court entered a no-contact order.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

108.    Defendants deny the allegations in this paragraph.

109.    Defendants admit that after his discharge from Hillcrest Psychiatric Hospital, he was placed in a temporary shelter in which there were older residents, including children who attended off-site public school and visit family.  Defendants otherwise deny the allegations in this paragraph.

110.    Defendants lack knowledge or information sufficient to form a belief about whether Garrett M.'s attorney described Garrett M. as alleged.  Defendants otherwise deny the allegations in this paragraph.

111.    Defendants admit that Garrett M. was placed in a residential treatment program for sexually reactive and sexually abusive adolescent youth at Cedar Grove in Tennessee, but Defendants deny Plaintiffs' characterization of the circumstances and timing of the placement. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

112.    Defendants admit that Garrett M. talked to his case worker about being uncomfortable at Cedar Grove.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that Garrett M. told his case worker that he was not a sex offender.  Defendants deny that "DHHR left Garrett in Tennessee for 18 months."

113.    Defendants deny the allegations in this paragraph.

114.    Defendants admit that Garrett M. admitted to the charge of "terroristic threats" and was sentenced to probation during a 2018 juvenile delinquency proceeding.  Defendants admit that Garrett M. was placed at the Donald R. Kuhn Detention Center.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

115.    Defendants deny that "Garrett's caseworker placed Garrett into another residential program for sex offenders at River Park Psychiatric Hospital" in late 2018.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

116.    Defendants deny the allegations in this paragraph.

117.    Defendants admit that in May 2019, Garrett M. was placed in a residential facility offering transitional living skills and vocational training.  Defendants otherwise deny the allegation in this paragraph.

118.    Defendants deny the allegations in this paragraph.

119.    Defendants deny the allegation that "DHHR has failed to provide [Garrett M.] with any type of vocational training or other life skills."  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

120.    Defendants deny the allegations in this paragraph.

Gretchen C.

121.Defendant lacks knowledge sufficient to admit or deny Ms. Flowers identity, family composition, and commitment to serving Gretchen C.'s best interests. Defendants otherwise deny the allegations in this paragraph.

122.  Defendants admit that DHHR had received several reports about domestic disturbances in the home before removing Gretchen. Defendants otherwise deny the allegations in this paragraph.

123.  Defendants deny the allegations in this paragraph.

124.  Defendants deny that Gretchen currently resides in an out-of-state residential treatment program. Defendants otherwise admit the allegations in this paragraph.

125. Defendants admit that Gretchen was placed at Helinski Child Shelter, then Burlington United Methodist Family Services Residential Program. Defendants otherwise deny the allegations in this paragraph.

126. Defendants admit that Gretchen entered care over four years ago, and that her paternal grandmother has asked to care for Gretchen. Defendants otherwise deny the allegations in this paragraph.

127. Defendants admit that in September 2018, Gretchen was placed in the Children's Center of Ohio, a residential treatment center for boys and girls. Defendants otherwise deny the allegations in this paragraph.

128. Defendants admit that Gretchen has been diagnosed with attention-deficit/hyperactivity disorder, anxiety, and depression, and that she has been prescribed Trazadone. Defendants otherwise deny the allegations in this paragraph.

129. Defendants deny that the Children's Center engages in "peer shaming." Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

130. Defendants lack sufficient knowledge to form a belief about the truth of the other allegations in this paragraph.

131. Defendants admit that Gretchen attended five different schools over a four- year period, including online classes at a university.  Defendants otherwise lack sufficient knowledge to form a belief about the truth of the allegations in this paragraph.

132. Defendants lack sufficient knowledge to form a belief about the truth of the allegations in this paragraph.

133. Defendants lack sufficient knowledge to form a belief about the truth of the allegations in this paragraph.

134. Defendants lack sufficient knowledge to form a belief about Gretchen's feelings about the Children's Center's staff. Defendants otherwise deny the allegations in this paragraph.

18

135. Defendants deny the allegations in the first sentence of this paragraph. Defendants lack sufficient knowledge to form a belief about the other allegations in this paragraph.

136. Defendants deny the allegations in this paragraph.

Dennis C.

137. Defendants admit that Dennis C. came into the custody of DHHR when he was 11, and that Debbie Short is his grandmother. Defendants deny that Dennis C. is a member of any general class or subclass and that Dennis C is 16 years old.  Defendants lack sufficient knowledge to form a belief about the last sentence in this paragraph.

138. Defendants admit that Dennis is diagnosed with cerebral palsy. Defendants admit that school staff reportedly bathed Dennis and gave him clean clothes. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

139. Defendants deny the allegations in this paragraph.

140. Defendants admit the allegations in this paragraph.

141. Defendants admit that DHHR originally placed Dennis in a foster home with his brother, and that Dennis was removed from the home while his brother remained. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

142. Defendants admit that Dennis has specialized needs. Defendants otherwise deny the allegations in this paragraph.

143. Defendants deny the allegations in this paragraph.

144. Defendants admit that at the time of his original removal, Dennis's step-grandmother went to the Roane County DHHR office to request that Dennis be placed with her. Defendants

admit that after foster parent training, DHHR approved her for placement. Defendants otherwise deny the allegations in this paragraph.

145. Defendants admit that when Dennis began threatening to harm himself, Ms. Short reported this to his caseworker. Defendants admit that Dennis was sent to Highland-Clarksburg Hospital for short-term mental health support. Defendants admit that DHHR removed Dennis from Ms. Short's home and placed him in a shelter in Morgantown. Defendants otherwise deny the allegations in this paragraph.

146. Defendants admit that Dennis C. has had to attend different schools due to his multiple placements. Defendants otherwise deny the allegations in this paragraph.

147. Defendants deny the allegations in this paragraph.

148. Defendants admit that the Potomac Center runs a youth program as well as an adult program. Defendants otherwise deny the allegations in this paragraph.

149. Defendants lack sufficient knowledge or information to form a belief about the truth of whether Dennis dreams of graduating high school, getting a driver's license, living with his step-grandmother, getting a job, saving enough money to secure his own apartment, and ultimately living independently. Defendants otherwise deny the allegations in this paragraph.

150. Defendants deny the characterization of "[w]orse still". Defendants admit that Potomac Center served children and adults with disabilities and that the facility lost its license in 2014 following the allegations that staff sexually and emotionally abused several children in its case. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

151. Defendants deny the allegations in this paragraph.

Calvin D., Chris D., and Caroline D.

20

152.    Defendants admit that Calvin D. entered foster care when he was 14 months old due to his parents' drug addiction and related neglect and that his siblings, Chris D. and Caroline D., entered foster care at birth. Defendants deny that Calvin D., Chris D. and Caroline D. are members of any class or subclass and deny that they are ages four, three, and two, respectively. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations.

153.    Defendants admit that the siblings' parents' rights were terminated, and they were freed for adoption. Defendants otherwise deny the allegations in this paragraph.

154.    Defendants admit that the foster parents relocated out of state. Defendants otherwise deny the allegations in this paragraph.

155.    Defendants admit that RK taught classes for new foster parents. Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph because the terms "struggled" and "eventually" are vague and ambiguous.

156.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations about DHHR "frequently turning to her for assistance" because that language is vague and ambiguous.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

157.    Defendants admit that Caroline and Calvin were placed with RK in July 2017. Defendants admit that in 2018, RK and her husband applied to adopt the siblings. Defendants otherwise deny the allegations in this paragraph.

158.    Defendants admit that on October 4, 2018, a DHHR employee visited the home to check on the children. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

159.    Defendants admit that DHHR removed Calvin, Chris, and Caroline from RK's home in October 2018. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

160.    Defendants admit that RK requested that DHHR return the siblings. Defendants otherwise deny the allegations in this paragraph.

161.    Defendants deny the allegations in this paragraph.

162.    Defendants deny the allegations in this paragraph.

163.    Defendants deny the allegations in this paragraph.

Karter W.

164.Defendants admit that Karter came into the care and custody of DHHR in 2016 and appears in this case through his next friend, Mr. Briscoe. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations relating to Mr. Briscoe. Defendants otherwise deny the allegations in this paragraph.

165. Defendants deny that Karter was nine years old when Karter's teacher reported to CPS suspected child abuse in Karter's home. Defendants otherwise admit the allegations in this paragraph.

166. Defendants admit the allegations in this paragraph.

167. Defendants deny that Karter's two older siblings were initially placed with their biological father and that Karter was initially placed in a non-kinship foster home. Defendants

admit that DHHR was unable to locate Karter's estranged biological father, and the court eventually terminated his paternal rights.

168. Defendants deny the allegations in this paragraph.

169. Defendants deny the allegations in this paragraph.

170. Defendants admit that DHHR removed Karter from the placement but did not revoke the foster mother's license. Defendants admit that Karter was placed in a temporary shelter where he remained for four months. Defendants lack sufficient knowledge or information to form a belief about whether "Karter believed he would be returned to his mother as soon as she was drug-free." Defendants otherwise deny the allegations in this paragraph.

171. Defendants lack sufficient knowledge or information to form a belief about Karter's emotions relating to his mother voluntarily relinquishing her parental rights. Defendants otherwise deny the allegations in this paragraph.

172. Defendants admit that Karter's non-kinship foster home was his only community placement since entering foster care. Defendants otherwise deny the allegations in this paragraph.

173. Defendants admit the allegations in this paragraph.

174. Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in this paragraph.

175. Defendants admit that Karter is diagnosed with disruptive mood dysregulation disorder and attention-deficit/hyperactivity disorder, and that he struggles with depression and self-harming behaviors. Defendants otherwise deny the allegations in this paragraph.

176. Defendants admit that Karter was placed at Highland Hospital and River Park Hospital, and that he was prescribed psychotropic medication. Defendants otherwise deny the allegations in this paragraph.

177. Defendants deny that Karter is currently placed at ChildHelp and deny that ChildHelp requires Karter to obtain permission every time he wants to go outside. Defendants otherwise admit the allegations in this paragraph.

178. Defendants admit that Karter has engaged in self-harming behaviors twice at ChildHelp. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

179. Defendants admit that Karter learned that his grandfather had a terminal illness and was about to pass away. Defendants admit that ChildHelp attempted to contact the caseworker. Defendants admit that the court granted Karter's request for a new case worker, and that the caseworker is still employed by DHHR. Defendants otherwise deny the allegations in this paragraph.

180. Defendants deny the allegations in this paragraph.

181. Defendants lack knowledge or information sufficient to form a belief about the truth of whether Karter has stated: "I want a loving home, I want to attend a normal school. I want to be able to go outside without needing to ask permission every time, and I want to know friends and school kids my age." Defendants otherwise deny the allegations in this paragraph.

182. Defendants deny the allegations in this paragraph.

Ace L.

183. Defendants admit that Ace was in the care and custody of DHHR beginning 2016 and it was his second episode in foster care. Defendants lack knowledge or information sufficient to form a belief about the relationship and contact between Ace L. and Isabelle Santillan.  Defendants otherwise deny the allegations in this paragraph.

24

184. Defendants admit that Ace L. and his family have had multiple interactions with DHHR over the course of his life, resulting in two removals and placements into foster care. Defendants admit that DHHR placed the siblings together in a foster home, where they remained for 18 months. Defendants otherwise deny the allegations in this paragraph.

185. Defendants admit that Ace suffers from encopresis. Defendants otherwise deny the allegations in this paragraph.

186. Defendants admit the allegations in this paragraph.

187. Defendants admit the allegations in this paragraph.

188. Defendants admit that in 2016, DHHR again removed nine-year-old Ace and his sister. Defendants otherwise deny the allegations in this paragraph.

189. Defendants admit that during Ace's second episode in foster care, his mother relinquished her parental rights to him. Defendants otherwise deny the allegations in this paragraph.

190. Defendants admit that Ace L.'s placement disrupted and in the following years he had multiple placements. Defendants deny the allegation that DHHR "bounced" him from placement to placement. Defendants admit that at least one of Ace L.'s placements disrupted in part due to the encopresis. Defendants admit that some foster parents have indicated that they are unwilling to deal with Ace L.'s "hygiene issues."  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

191. Defendants admit that Ace suffers from depression and anxiety. Defendants admit that DHHR placed Ace at Highland Psychiatric Hospital in their ""Bound for Success" program. Defendants otherwise deny the allegations in this paragraph.

192. Defendants deny the allegations in this paragraph.

193. Defendants admit that Ace L. has been placed in Greenbrier Valley Children's Home, Highland's Bound for Success program, Child Help East, Inc., and New River Ranch.  Defendants otherwise deny the allegations in this paragraph.

194. Defendants admit that after Ace's stay at Highland Hospital, he lived with his 20-year-old sister Isabelle. Defendants lack knowledge or information sufficient to form a belief about whether Ace L.'s sister "struggled to provide the care Ace needed when she was also parenting an infant."  Defendants otherwise deny the allegations in this paragraph.

195. Defendants admit that Ace L. left his sister's home. Defendants otherwise deny the allegations in this paragraph.

196. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

197. Defendants lack knowledge or information sufficient to form a belief about the truth of Ace's belief about his future.  Defendants otherwise deny the allegations in this paragraph.

198. Defendants deny the allegations in this paragraph.

## Federal and State Requirements for Child Protection Systems

### I.    The United States Constitution and Federal Law Impose Certain Requirements for the West Virginia Child Welfare System.

199.    The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants admit that "when a state involuntarily removes a child from her home, thereby taking the child into its custody and care," the protections of the Due Process Clause impose "some responsibility for [the child's] safety and general well-being," including "a duty not to make a foster care placement that is deliberately indifferent to the child's right to personal safety and security."  *Doe v. South*

*Carolina Dep't of Health & Human Services,* 597 F.3d 163, 171 (4th Cir. 2010).  Defendants otherwise deny the allegations contained in this paragraph, including those in the subparagraphs.

200.    Plaintiffs' allegations regarding the requirements of 42 U.S.C. § 671 and § 675, inclusive of subparagraphs (a) through (h), relate to a claim that has been dismissed pursuant to the Court's Order in ECF No. 300 and therefore Defendants are not required to respond.  Fed. R. Civ. P. 8(b)(6).  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

201.    The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

**II.     West Virginia's Law Also Impose Requirements on the Child Welfare System.**

202.    Defendants deny that the quoted language appears in the statute cited. Defendants otherwise deny the allegations in this paragraph.

203.    The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph. Furthermore, Defendants note that the statute cited was recodified in 2015, and Plaintiffs' citation is outdated.

204.    Defendants admit that DHHR is charged with advising, assisting, and supervising child welfare agencies which care for neglected children.  Defendants admit that DHHR contains different bureaus responsible for specific programs and services related to public health and wellbeing. Defendants otherwise deny the allegations in this paragraph.

205.    Defendants deny the allegations in this paragraph.

206.    Defendants deny the allegations in this paragraph.

207.     Defendants admit that the Centralized Intake Unite operates 24 hours per day, seven days per week. Defendants admit that an intake supervisor determines whether there is reasonable cause to believe that child abuse or neglect exists. Defendants admit that a CPS worker will investigate allegations if the intake supervisor decides to accept the initial referral. Defendants otherwise deny the allegations in this paragraph.

208.     Defendants deny the allegations in this paragraph.

209.     Defendants deny the allegations in this paragraph. An emergency removal may occur prior to filing a petition if the child would be in imminent physical danger if left in the home *and* the child welfare worker has probable cause to believe the child will suffer additional abuse or neglect or leave the county before the non-emergency removal process can occur.

210.     Defendants admit that the caseworker must conduct a diligent search for relatives and that an initial "HealthCheck" appointment is required when a child enters placement. Defendants otherwise deny the allegations in this paragraph.

211.     Defendants admit that the purpose of West Virginia's child welfare system includes involving the child and the child's family or caregiver in planning and delivery of programs and services. Defendants otherwise deny the allegations in this paragraph.

212.     The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants admit the allegations in this paragraph. However, Defendants note that the statute cited was recodified in 2015, and Plaintiffs' citation is outdated.

213.     The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants admit the allegations in this paragraph.

28

214.    Defendants admit that the cited statute and policy provide for functions of the Multidisciplinary Treatment Team ("MDT"), which plans for treatment, placement, and permanency and advises the court regarding the same. Defendants admit that the MDTs are important and that DHHR Foster Care Policy § 4.1 states that the MDTs are the "Central Point for decision making during the life of a case." Defendants otherwise deny the allegations in this paragraph.

215.    The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants admit that children must receive monthly face-to-face visits with caseworkers to ensure the placement meets the child's needs. Otherwise, Defendants generally deny the allegations in this paragraph.

216.    Defendants admit that the West Virginia legislature created the Commission to Study Residential Placement of Children. Defendants admit that the Commission would study practices including the placement of children, staffing, oversight of MDT meetings, availability of community-based alternatives to residential placements, methods to reduce out-of-state placements, and other components of the child welfare system. Defendants otherwise deny the allegations and characterizations in this paragraph.

217.    Defendants admit that a Senate Bill was passed in 2010 to reconstitute the Commission. Defendants otherwise deny the allegations in this paragraph.

**Systemic Deficiencies Plague West Virginia's Child Welfare System**

**I.    Child and Family Service Reviews & State Audit**

218.    Defendants admit the allegations in this paragraph.

219.    Defendants admit that CFSRs evaluate seven outcomes and seven systemic factors. Defendants otherwise deny the allegations in this paragraph.

220.    Defendants admit that the 2002 CFSR stated that West Virginia was not in substantial conformity with outcomes related to permanency, safety, and wellbeing. Defendants admit that West Virginia was in compliance with six of seven systemic factors in 2002. Defendants admit that the 2009 CFSR stated that West Virginia was not substantially compliant with seven outcomes and three systemic factors. Defendants otherwise deny the allegations in this paragraph.

221.    Defendants admit that the 2017 CFSR found that West Virginia was not in substantial conformity with outcomes related to permanency, safety, and wellbeing. Defendants admit that West Virginia was in compliance with three of seven systemic factors in the 2017 CFSR. Defendants admit that the Children's Bureau conducted a review of 65 cases to determine substantial conformity with outcomes related to safety, permanency and well-being. Defendants admit that West Virginia substantially achieved the Safety outcome "children are, first and foremost, protected from abuse and neglect," in 56 percent of the applicable cases reviewed. Defendants admit that West Virginia substantially achieved the Permanency outcome "children have permanency and stability in their living situations," in 20 percent of the applicable cases reviewed. Defendants admit that West Virginia substantially achieved the Well-being outcome "families have enhanced capacity to provide for their children's needs," in 26 percent of the applicable cases reviewed. Defendants otherwise deny the allegations in this paragraph.

222.    Defendants admit that West Virginia was not in substantial conformity with the systemic factor of Case Review System in the 2017 CSFR. Defendants admit that the 2017 CFSR Final Report includes the following quoted language: "information in the statewide assessment and collected during interviews with stakeholders shows that case plans are generally not

developed jointly with parents;" and "some stakeholders felt that although the intent is to involve parents in case planning in large counties, large backlogs interfere with this." Defendants otherwise deny the allegations in this paragraph.

223.    Defendants admit that West Virginia was not in substantial conformity with the systemic factor of Service Array and Resource Development in the 2017 CFSR. Defendants admit that the 2017 CFSR Final Report includes the following quoted language: "stakeholders consistently reported that the two areas of greatest need for which services and resources are lacking are substance abuse treatment and the availability of foster homes;" and "other necessary services for children and families that were also noted as lacking included mental health services for children, … kinship family support services, and housing." Defendants otherwise deny the allegations in this paragraph.

224.    Defendants admit that "Diligent Recruitment of Foster and Adoptive Homes" as an area for improvement in the 2017 CFSR Final Report. Defendants otherwise deny the allegations in this paragraph.

225.    Defendants admit that reviews conducted by the West Virginia Legislative Auditor's Office have identified areas of the child welfare system that the auditors believe should be improved.  Defendants otherwise deny the allegations in this paragraph.

226.    Defendants admit that a February 2013 Legislative Audit Report contains the statistics cited. Defendants otherwise deny the allegations in this paragraph.

227.    Defendants deny the allegations in this paragraph.

**II.    West Virginia Has an Inadequate Array of Appropriate Foster Placements**

31

228.    Defendants admit that they believe it would be helpful to have more foster homes and kinship placement options available in West Virginia.   Defendants otherwise deny the allegations in this paragraph.

229.    Defendants deny the allegations in this paragraph.

230.    Defendants deny the allegations in this paragraph.

231.    Defendants admit that DHHR contracts with private foster care agencies, called Child Placing Agencies, who train, license, monitor, inspect and recruit foster homes and foster parents. Defendants otherwise deny the allegations in this paragraph.

232.    Defendants deny the allegations in this paragraph.

233.    Defendants admit that the following placement types are among the types of placements available to children in foster care: licensed kinship care, unlicensed kinship care, group residential care, residential treatment facilities, and psychiatric residential treatment facilities. Defendants otherwise deny the allegations in this paragraph.

234.    Defendants deny the allegations in this paragraph.

235.    Defendants admit that as of August 2019, DHHR reported that 246 children were placed in foster care in an agency foster home. Defendants otherwise deny the allegations in this paragraph.

236.    Defendants admit that as of August 2019, DHHR reported that nearly 20 percent of children were placed in unlicensed kinship care, approximately 30 percent were placed in licensed kinship care, and that of those children placed in residential treatment programs, nearly 30 percent were placed out of state. Defendants otherwise deny the allegations in this paragraph.

237.    Defendants deny the allegations in this paragraph.

238.     The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

239.     Defendants deny the allegations in this paragraph.

240.     Defendants deny the allegations in this paragraph.

241.     Defendants admit that that in 2018 West Virginia had 791 reported runaways from foster care. Defendants admit that as of September 2019, West Virginia had reported 651 runaways from foster care. Defendants admit that DHHR report that most of these runaways were boys between the ages of 13 and 17 who had been placed in group homes or emergency shelters. Defendants otherwise deny the allegations in this paragraph.

242.     Defendants admit the allegations in this paragraph.

243.     The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

**III.     Placement Instability Harms Children.**

244.     Defendants deny the allegations in this paragraph.

245.     Defendants deny the allegations in this paragraph.

246.     Defendants deny that Theo S. is seven years old. Defendants admit that Theo S. has been placed in at least a dozen foster care placements. Defendants deny the characterization that "DHHR shuffled" Karter W. among placements. Defendants admit that Karter W. has been placed in at least three temporary shelters and residential facilities, as well as two psychiatric residential treatment facilities. Defendants admit that Gretchen was placed in multiple temporary shelters, and

an out of state residential treatment program. Defendants deny that Gretchen has been placed in four group homes.

247.    Defendants admit that the *Study of Kinship Care Families* published in October 2019 and conducted by A Second Chance Inc. at the request of DHHR includes the following quoted language: "it is not unusual that a relative/kinship caregiver will not see a caseworker after the original placement." Defendants otherwise deny the allegations in this paragraph.

248.    Defendants lack knowledge and information sufficient to form a belief about the truth of the allegations in this paragraph.

249.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

250.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

251.    Defendants admit that in *In re R.J.M.,* 164 W.Va. 496 (1980), Chief Justice Neely stated that "numerous placements may severely retard the child's ability to form lasting attachments." Defendants otherwise deny the allegations in this paragraph.

252.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

253.    Defendants admit that DHHR's Foster Care Policy § 1.1 includes the following quoted language: "frequent moves to new placements left many children with little sense of stability or continuity in their lives." Defendants otherwise deny the allegations in this paragraph.

254.    Defendants admit that the 2017 CFSR Final Report includes the following quoted language: "The needs of foster parents are not consistently assessed and services provided as appropriate, potentially adversely affecting a child's placement stability." Defendants admit that

34

the 2017 CFSR Final Report states that for "substantially achieved" the outcome "Children have permanency and stability in their living situations" in 20 percent of the 40 applicable cases reviewed. Defendants otherwise deny the allegations in this paragraph.

255.    The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

**IV.    Defendants Fail to Properly Support Foster Children in Kinship Placements, Putting Them at Increased Risk of Harm.**

256.    Defendants deny the allegations in this paragraph.

257.    The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

258.    Defendants admit that kinship caregivers are a critical component of West Virginia's foster care system. Defendants otherwise deny the allegations in this paragraph.

259.    Defendants admit that as of August 31, 2019, West Virginia reported that 6,796 children were in foster care, and that of these 3,347 were placed in a kinship home. Defendants admit that as of June 2014, West Virginia reported that 663 children were placed in kinship homes out of a total of 4,299 foster children. Defendants otherwise deny the allegations in this paragraph.

260.    Defendants admit that West Virginia does not require kinship or relative placements to be certified. Defendants otherwise deny the allegations in this paragraph.

261.    Defendants deny the allegations in this paragraph.

262.    Defendants admit that under DHHR's Home Finding Policy, before a child is placed in a home, DHHR must complete background checks for all adult occupants in the home. Defendants otherwise deny the allegations in this paragraph.

263.     Defendants deny the allegations in this paragraph.

264.     Defendants deny the allegations in this paragraph.

265.     Defendants admit that financial assistance available to uncertified kinship placements through the Temporary Aid for Needy Families "Child Only" grants is lower than the foster care maintenance payment provided to certified placements. Defendants otherwise deny the allegations in this paragraph.

266.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

267.     Defendants admit that DHHR's Foster Care Policy § 5.2.1 contains the following quoted language: "This includes, but is not limited to, placements in foster family homes of relatives, group homes, emergency shelters, residential facilities, childcare institutions, and pre-adoptive homes." Defendants otherwise deny the allegations in this paragraph.

268.     Defendants admit the allegations in this paragraph.

269.     Defendants deny the allegations in this paragraph.

270.     Defendants deny the allegations in this paragraph.

271.     Defendants deny the allegations in this paragraph.

272.     Defendants admit that in March 2019, A Second Chance, Inc., a nationally-recognized kinship care agency, released an assessment of West Virginia's kinship care program. Defendants otherwise deny the allegations in this paragraph.

273.     Defendants admit that the *Study of Kinship Care Families* published in October 2019 and conducted by A Second Chance, Inc. at the request of DHHR includes the following quoted language: "it is not unusual that a relative/kinship caregiver will not see a caseworker after the original placement." Defendants otherwise deny the allegations in this paragraph.

274.    Defendants deny the allegations in this paragraph.

**V.    Defendants are Overly Reliant on Institutional Placements, both in West Virginia and Other States.**

275.    Defendants admit that as of August 31, 2019, DHHR reported that 314 children were placed in an out of state congregate care settings, 245 of which were in group residential care and 69 were in long-term psychiatric facilities. Defendants admit that as of August 31, 2019, DHHR reported that 640 children were placed in in-state congregate care settings, 573 of which were in group residential care and 57 of which were in long-term psychiatric facilities. Defendants otherwise deny the allegations in this paragraph.

276.    Defendants deny that Theo S. is seven years old. Defendants admit that Theo S. was placed in a residential treatment program in Virginia. Defendants admit the allegations in this paragraph as to Karter W. and Gretchen C.

277.    Defendants deny the allegations in this paragraph.

278.    Defendants deny the allegations in this paragraph.

279.    Defendants deny the allegations in this paragraph.

280.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

281.    Defendants deny the allegations in this paragraph.

282.    The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

**VI.    West Virginia Fails to Employ and Retain a Sufficient Number of Properly Trained Caseworkers and its Caseworkers Carry Unreasonably High Caseloads.**

283.    Defendants deny the allegations in this paragraph.

284.     Defendants admit the allegations in this paragraph.

285.     Defendants admit the allegations in this paragraph.

286.     Defendants admit that the August 2013 PERD Audit contains the following quoted language: "BCF does not display a sense of urgency in its management of the CPS workforce;" and "BCF lacks a clear picture of the CPS workforce;" and "BCF struggled in responding to the Office of the Legislative Auditor's request for the total number of allocated CPS positions statewide and by region." Defendants otherwise deny the allegations in this paragraph.

287.     Defendants admit the allegations in this paragraph.

288.     Defendants admit that in 2014, DHHR employees picketed outside the agency's Fayette County. Defendants admit that the picketing employees stated that the employees at the area district office had caseloads that were two or three times larger than the recommended standard.  Defendants otherwise deny the allegations in this paragraph.

289.     Defendants admit that in January 2015, PERD audited BCF. Defendants otherwise deny the allegations in this paragraph.

290.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

291.     Defendants admit that in May 2019, then-Commissioner Watts explained during a child welfare collaborative meeting that recruitment and retention efforts are ongoing, including that an in-person exit interview process was being developed to better identify reasons why caseworkers chose to leave. Defendants admit that the 2013 PERD audit included recommendations related to using exit interviews. Defendants otherwise deny the allegations in this paragraph.

292.     Defendants admit that 48 new positions were added in March 2018 to increase retention rates by reducing caseloads. Defendants admit that as of May 2018, 108 of 472 child welfare positions across the state were vacant. Defendants admit that in January 2019, 213 positions were vacant. Defendants otherwise deny the allegations in this paragraph.

293.     Defendants deny the allegations in this paragraph.

294.     Defendants admit that in 2018 a CPS employee, Dustin Kinser was arrested and charged with contributing to the delinquency of a minor. Defendants otherwise deny the allegations in this paragraph.

295.     Defendants deny the allegations in this paragraph.

296.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

297.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

298.     Defendants deny the allegations in this paragraph.

299.     Defendants admit that in 2005, West Virginia Code § 9-2-6a was passed. Defendants admit that West Virginia Code § 9-2-6a states that: "The commissioner shall develop caseload standards based on the actual duties of employees in each program area of the department and may take into account existing professional caseload standards. Standards shall be reasonable and achievable." Defendants otherwise deny the allegations in this paragraph.

300.     Defendants deny the allegations in this paragraph.

301.     Defendants deny the allegations in this paragraph.

302.     Defendants deny the allegations in this paragraph.

303.     Defendants admit the allegations in this paragraph.

304.    Defendants deny the allegations in this paragraph.

305.    Defendants admit that the 2017 CFSR Final Report noted that DHHR was experiencing higher caseloads and greater demand on limited resources. Defendants admit that the 2017 CFSR Final Report includes the following quoted language: "The state has experienced limited success in its efforts to recruit and retain DHHR staff. This continues to adversely affect outcomes for children and families served by the agency and the delivery of services." Defendants otherwise deny the allegations in this paragraph.

306.    Defendants admit that in 2018, then-Secretary Crouch said in an interview that child protective caseworkers should handle no more than 15 cases at a time. Defendants admit that in 2018, then-Secretary Crouch said in an interview that in some areas of the State, caseloads were as high as 25 to 30 cases per case worker. Defendants otherwise deny the allegations in this paragraph.

307.    The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary. To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

**VII.    DHHR Performs Inadequate Assessments and Case Planning**

308.    Defendants deny the allegations in this paragraph.

309.    Defendants deny the allegations in this paragraph.

310.    Defendants admit that the 2017 CFSR Final Report includes the following quoted language: "The agency is not consistently completing quality comprehensive assessments of the needs of children and parents." Defendants otherwise deny the allegations in this paragraph.

311.    Defendants admit that the 2017 CFSR Final Report includes the following quoted language: "appropriate services are not consistently provided to address the identified need." Defendants otherwise deny the allegations in this paragraph.

312.    Defendants admit that the 2017 CFSR Final Report includes the following quoted language: "The needs of foster parents are not consistently assessed and services provided as appropriate, potentially adversely affecting a child's placement stability." Defendants otherwise deny the allegations in this paragraph.

313.    Defendants admit that the 2017 CFSR Final Report includes the following quoted language: "visits often occurred during a court hearing or multi-disciplinary team meeting, which may not facilitate quality engagement with parents.  It was also found that children and parents are not consistently involved in the case planning process. In a number of cases reviewed, a case plan had not been developed." Defendants otherwise deny the allegations in this paragraph.

314.    Defendants repeat and re-assert their responses to paragraph 213 by reference. Defendants otherwise deny the allegations in this paragraph.

315.    Defendants admit that "during MDTs, the group is supposed to assess the child's safety, wellbeing, and permanency. MDT members monitor the progress of adult respondents as well and ensure they are on track to successfully satisfy the terms of their improvement period if reunification is the permanency plan." Defendants otherwise deny the allegations in this paragraph.

316.    Defendants deny the allegations in this paragraph.

317.    The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

**VIII.  DHHR Routinely Fails to Obtain Timely Mental Health Assessments and Services and Fails to Ensure that There is an Adequate Array of Mental Health Services Available to Foster Children**

318.    Defendants deny the allegations in this paragraph.

319.    Defendants admit that the 2017 CFSR Final Report includes the following quoted language: "[s]takeholders consistently reported that the two areas of greatest need for which services and resources are lacking are substance abuse treatment and the availability of foster homes. Other necessary services for children and families that were also noted as lacking included mental health services for children, sex offender treatment, batterer offender treatment, autism support services, postadoption services, kinship family support services, and housing."

320.    Defendants deny the allegations in this paragraph.

321.    Defendants deny the allegations in this paragraph.

322.    Defendants admit that in 2012 the Bureau of Business and Economic Research College of Business and Economics at West Virginia University provided a report to the West Virginia Legislature entitled *Identifying and Meeting Children's Behavioral Health Needs: Current Policies, Perspectives, and Opportunities*. Defendants admit that the report concluded that timely identification and effective treatment to meet mental and behavioral health needs of foster children was critical. Defendants admit that the report provided a series of recommendations, including the implementation of a state-wide treatment-focused foster care model, development of a state-wide plan to meet the behavioral needs of West Virginia children and families, allocation of resources to prevention and early intervention services, and reduction of barriers to accessing necessary services in the communities.   Defendants otherwise deny the allegations in this paragraph.

323.    Defendants admit that the Department of Justice ("DOJ") conducted an investigation and issued findings in 2015. Defendants otherwise deny the allegations in this paragraph.

324.    Defendants admit that the 2017 CFSR Final Report includes the following quoted language: "the lack of available and accessible quality services statewide precludes the individualization of services." Defendants otherwise deny the allegations in this paragraph.

325.    Defendants deny the allegations in this paragraph.

326.    Defendants deny the allegations in this paragraph.

327.    The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

## IX.    DHHR Has Inadequate Permanency Planning for Youth in Foster Care

328.    Defendants deny the allegations in this paragraph.

329.    Defendants deny the allegations in this paragraph.

330.    Defendants deny the allegations in this paragraph.

331.    Defendants deny the allegations in this paragraph.

332.    Defendants deny the allegations in this paragraph.

333.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the last sentence of this paragraph. Defendants otherwise admit the allegations in this paragraph.

334.    Defendants deny the allegations in this paragraph.

335.    Defendants deny the allegations in this paragraph.

336.    Defendants deny the allegations in this paragraph.

337.     Defendants deny the allegations in this paragraph.

338.     Defendants deny the allegations in this paragraph.

339.     The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

**X.    Defendants Fail to Engage in Transition Planning and Thoughtful Discharge from Foster Care**

340.     Defendants deny the allegations in this paragraph.

341.     The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

342.     Defendants deny the allegations in this paragraph.

343.     Defendants deny the allegations in this paragraph.

344.     Defendants admit that the 2017 CFSR Final Report includes the following quoted language: "the agency did not make concerted efforts to place youth with a goal of another planned permanent living arrangement in a permanent arrangement in applicable cases." Defendants otherwise deny the allegations in this paragraph.

345.     Defendants deny the allegations in this paragraph.

346.     Defendants admit that in 2017, the rate of foster care entries for youth ages 14 to 17 was 14.2 per 1,000 children, as compared to the national average of 2.8 per 1,000 children. Defendants admit that in 2018, West Virginia had the highest number of entries into foster care in the country.  Defendants otherwise deny the allegations in this paragraph.

347.     Defendants deny the allegations in this paragraph.

348. Defendants admit that a study of national data showed that over 20 percent of youth who age out of foster care will become homeless, 71 percent of women who age out of foster care will become pregnant by age 21, 50 percent of youth who age out of foster care will remain unemployed by the age of 24, less than three percent of youth who age out of foster care will have completed college and 25 percent of youth who age out of foster care will suffer from post-traumatic stress disorder. Defendants otherwise deny the allegations in this paragraph.

349. Defendants deny the allegations in this paragraph.

XI. **Defendants' Failure to Keep Children Safe has Resulted in Action by Federal Regulators and the State Legislature**

A. **The United States Department of Justice has Found West Virginia in Violation of the ADA with Regard to how the State Cares for Children in Need of Mental Health Services.**

351. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that the DOJ found that West Virginia caused "psychological, developmental, and other harm to children by unnecessarily placing them into segregated residential treatment." Defendants otherwise admit the remaining allegations in this paragraph.

352. Defendants admit that the DOJ's June 1, 2015, letter stated that: the "default service in West Virginia is institutionalization." Defendants admit that some residential facilities provide regimented programs. Defendants admit that the DOJ's letter states that some placements may include the use of seclusion and chemical and manual restraints. Defendants otherwise deny the allegations in this paragraph.

353. Defendants admit that the DOJ's letter stated that West Virginia "needlessly segregated thousands of children far from family and other people important in their lives." Defendants otherwise deny the allegations in this paragraph.

45

354. Defendants admit that West Virginia released plans to enhance community-based services for children and that DHHR licensed new in-state facilities and increased bed capacity at existing facilities after 2005, and that some providers use program levels. Defendants otherwise deny the allegations in this paragraph.

355. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

356. Defendants admit that the DOJ's letter states that some program goals "can be very difficult to achieve due to the combined effect of their disabilities."  Defendants otherwise deny the allegations in this paragraph.

357. Defendants admit that the DOJ report relays the estimated costs as Plaintiffs allege. Defendants otherwise deny the allegations in this paragraph.

358. Defendants admit that West Virginia signed a Memorandum of Understanding ("MOU") with the DOJ in May 2019. Defendants admit that the MOU covers children under the age of 21 who have a serious emotional or behavioral disturbance that results in a functional impairment, and (i) who are placed in a residential mental health treatment facility or (ii) who reasonably may be expected to be placed therein and have their mental health services provided or paid for by DHHR. Defendants otherwise deny the allegations in this paragraph.

359. Defendants admit the allegations in this paragraph.

360. Defendants admit the allegations in this paragraph.

361. Defendants deny the allegations in this paragraph.

**B. The West Virginia Legislature Recently Enacted a Bill to Improve One Aspect of the Foster Care System, but it Fails to Address the Major Components of the System that are Dysfunctional and Cause Harm to Plaintiffs**

362. Defendants deny the allegations in this paragraph.

363.    Defendants admit that the Governor of West Virginia approved House Bill 2010 relating to foster care in March 2019. Defendants otherwise deny the allegations in this paragraph.

364.    Defendants admit that the bill transitioned health care for foster children from a fee-for-service model to a managed care model. Defendants otherwise deny the allegations in this paragraph.

365.    Defendants admit that some estimates of the managed care contract projected it would cost about $200 million. Defendants otherwise deny the allegations in this paragraph.

366.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations regarding Jeremiah Samples' quoted statement. Defendants otherwise deny the allegations in this paragraph.

367.    This paragraph sets forth Plaintiffs' characterization of this action and legal conclusions to which no response is necessary.  To the extent this Court deems a response necessary, Defendants deny the allegations in this paragraph.

## Causes of Action

## First Cause of Action

### Substantive Due Process under the U.S. Constitution

### (On Behalf of the General Class and All Subclasses Against All Defendants)

368. Defendants repeat and re-assert their responses to paragraphs 1 through 367 by reference.

369. The allegations contained within this paragraph constitute a legal conclusion to which no response is necessary.  To the extent the Court deems a response necessary, Defendants admit that "when a state involuntarily removes a child from her home, thereby taking the child into its custody and care," the protections of the Due Process Clause impose "some responsibility for [the

child's] safety and general well-being," including "a duty not to make a foster care placement that is deliberately indifferent to the child's right to personal safety and security." *Doe v. South Carolina Dep't of Health & Human Services,* 597 F.3d 163, 171 (4th Cir. 2010). Defendants otherwise deny the allegations contained in this paragraph.

370. Defendants deny the allegations contained in this paragraph.

371. Defendants deny the allegations contained in this paragraph.

372. The allegations contained in this paragraph constitute a legal conclusion as to which no response is necessary. To the extent the Court deems a response necessary, Defendants deny the allegations contained in this paragraph.

373. The allegations contained in this paragraph, inclusive of subparagraphs (a) through (g), constitute legal conclusions to which no response is necessary. To the extent the Court deems a response necessary, Defendants respond as follows:

(a)-(f) Defendants admit that "when a state involuntarily removes a child from her home, thereby taking the child into its custody and care," the protections of the Due Process Clause impose "some responsibility for [the child's] safety and general well-being," including "a duty not to make a foster care placement that is deliberately indifferent to the child's right to personal safety and security." *Doe v. South Carolina Dep't of Health & Human Services,* 597 F.3d 163, 171 (4th Cir. 2010). Defendants otherwise deny the allegations contained in this paragraph.

(g) This claim has been dismissed pursuant to the Court's Order in ECF No. 300 and therefore Defendants are not required to respond. Fed. R. Civ. P. 8(b)(6). To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

374. The allegations contained in this paragraph constitute a legal conclusion as to which no response is necessary.  To the extent the Court deems a response necessary, Defendants respond as follows:

(a)  Defendants deny the allegations contained in this paragraph, inclusive of parts (i)-(iii), to the extent this claim has not already been dismissed pursuant to the Court's Order in ECF No. 300.  To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

(b) This claim has been dismissed pursuant to the Court's Order in ECF No. 300 and therefore Defendants are not required to respond.  Fed. R. Civ. P. 8(b)(6). To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

(c)  This claim has been dismissed pursuant to the Court's Order in ECF No. 300 and therefore Defendants are not required to respond.  Fed. R. Civ. P. 8(b)(6). To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

## <u>Second Cause of Action</u>

**First, Ninth and Fourteenth Amendments to the U.S. Constitution**

**(On Behalf of the General Class and All Subclasses Against All Defendants)**

375. Defendants repeat and re-assert their responses to paragraphs 1 through 367 by reference.

376. Defendants admit that Theo S., Karter W., and Ace L. are in Defendants' custody. Defendants otherwise deny the allegations contained in this paragraph.

377. This claim has been dismissed pursuant to the Court's Order in ECF No. 300 and therefore Defendants are not required to respond.  Fed. R. Civ. P. 8(b)(6). To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

378. This claim has been dismissed pursuant to the Court's Order in ECF No. 300 and therefore Defendants are not required to respond. Fed. R. Civ. P. 8(b)(6). To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

379. This claim has been dismissed pursuant to the Court's Order in ECF No. 300 and therefore Defendants are not required to respond. Fed. R. Civ. P. 8(b)(6). To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

380. This claim has been dismissed pursuant to the Court's Order in ECF No. 300 and therefore Defendants are not required to respond. Fed. R. Civ. P. 8(b)(6). To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

### Third Cause of Action

**The Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 670 *et seq*.**

**(On Behalf of the General Class and All Subclasses Against All Defendants)**

381. Defendants repeat and re-assert their responses to paragraphs 1 through 367 by reference.

382. This claim has been dismissed pursuant to the Court's Order in ECF No. 300 and therefore Defendants are not required to respond. Fed. R. Civ. P. 8(b)(6). To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

383. This claim has been dismissed pursuant to the Court's Order in ECF No. 300 and therefore Defendants are not required to respond. Fed. R. Civ. P. 8(b)(6). To the extent the Court deems a response necessary, Defendants deny the allegations in this paragraph.

### Fourth Cause of Action

**Americans with Disabilities Act**

**(On Behalf of the ADA Subclass Against All Defendants)**

50

384. Defendants repeat and re-assert their responses to paragraphs 1 through 367 by reference.

385. The allegations contained in this paragraph constitute a legal conclusion as to which no response is necessary. To the extent the Court deems a response necessary, Defendants admit that Title II of the ADA and its enabling regulations provide that no qualified individual with a disability shall, by reason of such disability, be subjected to discrimination by a public entity. Defendants otherwise deny the allegations contained in this paragraph.

386. The allegations contained in this paragraph constitute a legal conclusion as to which no response is necessary. To the extent the Court deems a response necessary, Defendants admit that a member of the putative ADA subclass meets the definition of a qualified individual with a disability under 42 U.S.C. § 12131(2). Defendants otherwise deny the allegations contained in this paragraph.

387. The allegations contained in this paragraph constitute a legal conclusion as to which no response is necessary. To the extent the Court deems a response necessary, Defendants admit that DHHR is a public entity within the definition of 42 U.S.C. § 12131(1)(A). Defendants otherwise deny the allegations contained in this paragraph.

388. The allegations contained in this paragraph constitute a legal conclusion as to which no response is necessary. To the extent the Court deems a response necessary, Defendants admit that Title II of the ADA and its enabling regulations provide that no qualified individual with a disability shall, by reason of such disability, be subjected to discrimination by a public entity. Defendants otherwise deny the allegations contained in this paragraph.

389. Defendants admit that 28 C.F.R. § 35.130(b)(1)(iii) states that a public entity may not, on the basis of disability, "[p]rovide a qualified individual with a disability with an aid, benefit, or

service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others[.]" Defendants otherwise deny the allegations contained in this paragraph.

390. The allegations contained in this paragraph constitute a legal conclusion as to which no response is necessary. To the extent the Court deems a response necessary, Defendants lack knowledge or information sufficient to form a belief about the meaning of the phrase "equal opportunity to access foster care services."

391. Defendants admit that 28 C.F.R. § 35.130(b)(7) states that a public entity shall "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). Defendants otherwise deny the allegations contained in this paragraph.

392. The allegations contained in this paragraph constitute a legal conclusion as to which no response is necessary. To the extent the Court deems a response necessary, Defendants deny the allegations contained in this paragraph.

393. The allegations contained in this paragraph constitute a legal conclusion as to which no response is necessary. To the extent the Court deems a response necessary, Defendants deny the allegations contained in this paragraph.

394. The allegations contained in this paragraph constitute a legal conclusion as to which no response is necessary. To the extent the Court deems a response necessary, Defendants deny the allegations contained in this paragraph.

**Fifth Cause of Action**

**Rehabilitation Act**

**(On Behalf of the ADA Subclass Against All Defendants)**

395. Defendants repeat and re-assert their responses to paragraphs 1 through 367 by reference.

396. The allegations contained in this paragraph constitute a legal conclusion as to which no response is necessary. To the extent the Court deems a response necessary, Defendants admit that a member of the putative ADA subclass meets the definition of a qualified individual with a disability under 29 U.S.C. § 705. Defendants otherwise deny the allegations contained in this paragraph.

397. Defendants admit that DHHR receives federal funding that helps support its child welfare operations and that this constitutes federal financial assistance for purposes of application of the Rehabilitation Act. Defendants otherwise deny the allegations contained in this paragraph.

398. The allegations contained in this paragraph constitute a legal conclusion as to which no response is necessary. To the extent the Court deems a response necessary, Defendants admit that the Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits or, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Defendants otherwise deny the allegations contained in this paragraph.

399. The allegations contained in this paragraph constitute a legal conclusion as to which no response is necessary. To the extent the Court deems a response necessary, Defendants deny that the cited regulations of the U.S. Department of Education apply to West Virginia's child welfare program.

400. The allegations contained in this paragraph constitute a legal conclusion as to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny that the cited regulations of the U.S. Department of Education apply to West Virginia's child welfare program.

401. The allegations contained in this paragraph constitute a legal conclusion as to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations contained in this paragraph.

402. The allegations contained in this paragraph constitute a legal conclusion as to which no response is necessary.  To the extent the Court deems a response necessary, Defendants deny the allegations contained in this paragraph.

## Prayer for Relief

**WHEREFORE**, Defendants request that this Court deny the relief requested in Paragraphs 403-408.

## AFFIRMATIVE DEFENSES

In asserting the following affirmative defenses to Plaintiffs' claims, Defendants do not concede that the assertion of such defenses imposes any burden of proof on Defendants with respect thereto:

1. The Complaint fails to state a claim for which relief can be granted.

2. Because state circuit courts have already adjudicated or will adjudicate the claims and/or issues raised in Plaintiffs' Complaint, Plaintiffs' Substantive Due Process, ADA, and Rehabilitation claims are barred, in whole or in part, by *Younger* abstention doctrine, *O'Shea* abstention doctrine, and *Rooker-Feldman* abstention doctrine.

54

3.      Because state circuit courts have already adjudicated the claims and/or issues raised in Plaintiffs' Complaint, Plaintiffs' Substantive Due Process, ADA, and Rehabilitation claims are barred, in whole or in part, by res judicata, collateral estoppel, claim preclusion, and/or issue preclusion.

4.      Principles of comity preclude the relief Plaintiffs seek to the extent it would interfere with ongoing or future state court proceedings.

5.      Plaintiffs' Substantive Due Process claims are barred because Defendants have not deprived Plaintiffs of a cognizable constitutional right.

6.      Plaintiffs' Substantive Due Process claims are barred because Defendants have not taken any actions with respect to Plaintiffs that "shock the conscience" or constitute "deliberate indifference."

7.      Plaintiffs' ADA and Rehabilitation Act claims are barred because Plaintiffs' parents or, in the case of Plaintiffs with parents whose parental rights have been terminated, the persons or entities with responsibility for making health care decisions for Plaintiffs, did not chose for Plaintiffs to remain in a community setting when the Plaintiffs were placed in a residential treatment program.

8.      Plaintiffs' ADA and Rehabilitation Act claims are barred because the State's treatment professionals and state circuit courts have concluded that placement in a residential treatment program is appropriate for any Plaintiff placed in such a program.

9.      Plaintiffs' ADA and Rehabilitation Act claims are barred because Defendants have a comprehensive, effectively working plan to provide alternatives to the institutionalization for foster children with disabilities.

10.     Plaintiffs' ADA and Rehabilitation Act claims are barred because Plaintiffs have not sought reasonable modifications or accommodations, and because Plaintiffs seek modifications to Defendants' programs that would fundamentally alter those programs.

11.     Plaintiffs' ADA and Rehabilitation Act claims are barred because the DOJ policies and regulations on which Plaintiffs rely are *ultra vires*.

12.     Plaintiffs' ADA and Rehabilitation Act claims are barred because Defendants have abided by the Memorandum of Understanding signed with the DOJ, which the DOJ determined would resolve its ADA concerns.

13.     Plaintiffs' claims are moot, in whole or in part, because most Plaintiffs are no longer in DHHR custody and because of changes to Defendants' programs made since the Complaint was filed.

14.     Plaintiffs' claims are barred in part by the doctrine of sovereign immunity and under the Eleventh Amendment.

15.     This Court lacks the authority to issue an injunction with the relief sought by Plaintiffs.

16.     Plaintiffs' action does not meet the requirements for a class action in Federal Rule of Civil Procedure 23.

WHEREFORE, Defendants request judgement dismissing Plaintiffs' Class Action Complaint and denying any and all relief sought by Plaintiffs.


Respectfully submitted,


April 24, 2023                              */s/* Philip J. Peisch
                                           Philip J. Peisch (WV Bar #24403)
                                           Caroline M. Brown

Julia M. Siegenberg
Kendra Doty
Brown & Peisch PLLC
1233 20th Street NW, Suite 505
Washington, DC 20036

/s/ Steven R. Compton
Steven R. Compton (WVSB #6562)
West Virginia Attorney General's Office
812 Quarrier Street, 2nd Floor
Charleston, WV 25301

## CERTIFICATE OF SERVICE

I, Philip J. Peisch, hereby certify that I caused a true and correct copy of the foregoing to

be delivered to the following via ECF notification:

Marcia Robinson Lowry
Julia Tebor
Tavi Unger
A Better Childhood
355 Lexington Ave. Floor 16
New York, NY 10017

Richard W. Walters
J. Alexander Meade
Brian L. Ooten
Shaffer & Schaffer, PLLC
2116 Kanawha Blvd East
P.O. Box 3973
Charleston, WV 25304

Lori Waller
Disability Rights of West Virginia
1207 Quarrier Street, Suite 400
Charleston, WV 25301

April 24, 2023

/s/ Philip J. Peisch
Philip J. Peisch (WV Bar #24403)
Caroline M. Brown
Kendra Doty
Julia M. Siegenberg
Brown & Peisch PLLC
1233 20th Street NW, Suite 505
Washington, DC 20036

/s/ Steven R. Compton
Steven R. Compton (WVSB #6562)
West Virginia Attorney General's Office
812 Quarrier Street, 2nd Floor
Charleston, WV 25301