IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JONATHAN R., et al.,

          Plaintiffs,

v.                                    CIVIL ACTION NO.  3:19-cv-00710

JIM JUSTICE, et al.,

          Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants' Motion to Disqualify Next Friends. [ECF No. 341]. Plaintiffs have responded in opposition. [ECF No. 359]. For the reasons stated herein, the motion is **DENIED**.

In this action, a class of current and former foster children challenge several key aspects of West Virginia's child welfare system. Given the nature of the class, the Named Plaintiffs are largely minor children who must each be represented by a competent adult.

Under the Federal Rules of Civil Procedure, a "general guardian" or "like fiduciary" may "sue or defend on behalf of a minor." Fed. R. Civ. P. 17(c)(1). A child who does not have a guardian or other "duly appointed representative may sue by a next friend or by a guardian ad litem." Fed. R. Civ. P. 17(c)(2). Rule 17(c) thus distinguishes between a guardian or other "duly appointed representative, on the one

hand—in other words, a *general* representative—and a guardian ad litem or a next friend,[1] on the other hand—a special representative." *T.W. by Enk v. Brophy*, 124 F.3d 893, 895 (7th Cir. 1997). A special representative is appropriate only where the minor lacks a conflict-free general representative who is willing and able to litigate on their behalf. *See Genesco, Inc. v. Cone Mills Corp.*, 604 F.2d 281, 285 (4th Cir. 1979) (interpreting Rule 17 to provide that a minor "who lacks a general guardian" may "bring suit by his next friend"); *Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 88 (1st Cir. 2010) (describing "general guardians" as those "who could preclude a Next Friend appointment or whose consent may be needed to file suit in federal court"). A minor's special representative is often "a close relative" but may include "a professional who has worked with the child, or, in desperate circumstances, a stranger whom the court finds to be especially suitable to represent the child's interests in the litigation." *T.W. by Enk*, 124 F.3d at 897.

In this case, five of the twelve Named Plaintiffs—Jonathan R., Serena S., Theo S., Garrett M., and Karter W.—are represented by next friends who are guardians ad

---

[1] The terms "next friend" and "guardian ad litem" are "essentially interchangeable, but 'next friend' is normally used when the child is the plaintiff, and 'guardian ad litem' when the child is the defendant." *T.W. by Enk v. Brophy*, 124 F.3d 893, 895 (7th Cir. 1997). To add to the confusion, however, "when the child does have a general representative, the representative will usually be designated as the child's 'next friend,' despite the wording of Rule 17(c)." *Id.* In contrast to a guardian ad litem, a next friend often is not appointed by the court. Rather, it is the next friend who has taken the initiative in suing on the child's behalf. "When someone hauls a child into court as a defendant, the court has to appoint a representative for the child, because of the child's legal incapacity to litigate, and that is the guardian ad litem. Occasionally, for the 'friendless' child who might have a legal claim, or if the next friend has a conflict of interest, the court will appoint a next friend or guardian ad litem to represent the child plaintiff in the litigation." *Id.* (citing *Ad Hoc Comm. of Concerned Teachers v. Greenburgh #11 Union Free Sch. Dist.*, 873 F.2d 25, 30–31 (2d Cir. 1989)). But whether "appointed or not," both a next friend and a guardian ad litem can be challenged over the suitability of their representation. *Id.* (citing *Garrick v. Weaver*, 888 F.2d 687, 693 (10th Cir. 1989)).

2

litem appointed to the minors in state court. [ECF No. 46, at 1]. The other seven Named Plaintiffs—Anastasia M., Gretchen C., Dennis R., Chris K., Calvin K., Carolina K., and Ace L.—are represented by next friends who are relatives or have other relationships with the children. *Id.* at 1–2. In the instant motion, Defendants seek to disqualify Katherine Huffman as next friend to Chris K., Calvin K., and Carolina K., and Sarah Dixon as next friend to Serena S. [ECF No. 341]. Defendants argue that because these Named Plaintiffs have now been adopted, Ms. Huffman and Ms. Dixon are unauthorized to litigate on their behalf absent evidence that the adoptive parents are incapable of representing their children's interests. [ECF No. 342].

Defendants previously raised their concerns about these representations in their motions to dismiss Chris K., Calvin K., Carolina K.,[2] and Serena S. as parties to this lawsuit. [ECF Nos. 55, 167]. Defendants argued, and this court agreed, that the children's recent adoptions mooted their claims by removing them from state custody and, therefore, from the putative class. [ECF No. 258]. Having dismissed the claims, the court did not then consider Defendants' arguments about next friends. On appeal, the Fourth Circuit reversed this court's dismissal, holding "the class-action specific 'relation back'" exception to mootness was applicable. *Jonathan R. by Dixon*

---

[2] The record indicates that Chris K., Calvin K., and Carolina K. are siblings who were adopted together. [ECF No. 343-1]. The Complaint sometimes refers to these children as having a last name beginning with "D" instead of "K." *See* [ECF No. 1, ¶ 152]. The court uses "K" for consistency with the case caption.

3

*v. Justice*, 41 F.4th 316, 325 (4th Cir. 2022) (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 76 (2013)).

Defendants now renew their arguments in a motion specifically seeking disqualification of the adopted minors' next friends. [ECF No. 341]. In support of their contention that the minors' adoptions undermined their proposed representatives' authority, Defendants cite the principle that "[u]nless . . . the court finds the child's general representative inadequate, it should not allow the general representative to be bypassed by appointing a special representative to litigate on behalf of his ward." *T.W. by Enk*, 124 F.3d at 895–96 ("As a general rule, a federal court cannot appoint a guardian ad litem in an action in which the infant or incompetent already is represented by someone who is considered appropriate under the law of the forum state." (quoting 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1570 (2d ed. 1990))). Because the minors' adoptive parents became their general guardians, Defendants assert that special representatives may not litigate this case on behalf of the adopted children. Defendants' position is twofold: first, that Ms. Huffman and Ms. Dixon were *never* authorized to bring this suit; and second, that they no longer possess the requisite authority, even if they may have previously.

The first component of Defendants' argument rests on the erroneous belief that the court must formally appoint the plaintiffs' next friends. Based on that belief, Defendants initially "refused to produce documents for any Named Plaintiff Children

4

unless the child's next friend (1) is a guardian ad litem or someone who has another preexisting legal relationship with the child, or (2) has been appointed by this Court." [ECF No. 46, at 2]. "[I]n the interest of moving the case forward," *id.*, Plaintiffs filed an Uncontested Motion for an Order Appointing Next Friends, which the court granted on January 29, 2020, [ECF No. 51]. Because Chris K., Calvin, K., and Carolina K. were adopted before the filing and granting of that motion,[3] Defendants argue that next friends should not have been appointed without the court first considering the adoptive parents and finding them inadequate representatives. Plaintiffs, on the other hand, have maintained their position that Rule 17 "does not require the court to appoint next friends." [ECF No. 46, at 2]. I agree.

"By its terms, the second sentence of Rule 17(c) permits [a minor] who lacks a general guardian to bring suit by his next friend, and no special appointment process for the next friend is required." *Genesco, Inc.*, 604 F.2d at 285 (citing *Russick v. Hicks*, 85 F. Supp. 281, 283 (W.D. Mich. 1949)) ("The federal district court may, of course, appoint a guardian Ad litem in its discretion, and it must do so (or take other equivalent protective action) when it appears that the next friend will not adequately protect the [minor]'s interests."). As Defendants acknowledge, both adoptions occurred *after* Plaintiffs filed their Complaint on September 30, 2019. [ECF No. 343, at 2–3 (stating that Chris K., Calvin K., and Carolina K. were adopted on December

---

[3] With respect to Serena S., who was adopted several months *after* the court granted Plaintiffs' motion to appoint next friends, Defendants presumably argue that even if Ms. Dixon was authorized to represent Serena at the time she was appointed, the adoption has since invalidated her appointment. That argument is addressed later in this opinion.

5

10, 2019, and Serena S. was adopted on September 3, 2020)]. Thus, at the time of filing, the minors were in state custody and did not have general guardians to sue on their behalf. *See Sam M. ex rel. Elliott*, 608 F.3d at 89 n.3 ("[Because] Plaintiffs have been placed under the legal custody and/or guardianship of the state . . . , it is reasonable to conclude that the children lack general guardians or representatives to pursue the present suit."). Without general guardians, the plaintiffs were permitted under the Federal Rules to commence this lawsuit by next friends, who became their representatives at the time they filed the Complaint on the minors' behalf. *See Genesco, Inc.*, 604 F.2d at 285 (explaining that representative had "invoked" the "federal procedure" set forth in Rule 17 "when she brought suit on [minor]'s behalf . . . [w]ithout any prior appointment or other formal judicial procedure").

Such a "self-appointed 'next friend' who files a complaint on behalf of another" must still meet "at least two firmly rooted prerequisites for 'next friend' standing." *Carson P. ex rel. Foreman v. Heineman*, 240 F.R.D. 456, 516 (D. Neb. 2007) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990)). These requirements have been articulated as follows:

> First, a 'next friend' must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a 'next friend' must have some significant relationship with the real party in interest.

6

*Hamdi v. Rumsfeld*, 294 F.3d 598, 603 (4th Cir. 2002) (quoting *Whitmore*, 495 U.S. at 163–64). The court is satisfied the prerequisites are met in this case. *See, e.g.*, [ECF No. 1, ¶ 66 (indicating that Serena S. is a disabled minor and "Ms. Dixon has been Serena's guardian ad litem for over a year, visits her regularly, remains in regular communication with her, and is truly dedicated to Serena's best interests), ¶ 152 (indicating that Calvin K., Chris K., and Carolina K. are all young children, that Ms. Huffman has known them most of their lives, and that "[s]he had regular contact with them during their almost two-year placement in Barbour County and, as a former foster mother herself, . . . is committed to representing their best interests in this case")]. *See generally Sam M. ex rel. Elliott*, 608 F.3d at 92 ("Evidence that the proposed Next Friend has met the child [s]he seeks to represent certainly enhances the individual's suitability as a Next Friend."); *Carson P. ex rel. Foreman*, 240 F.R.D. at 521 (distinguishing "persons having only an ideological stake in the child's case," who are "never eligible," from those who, although partially "motivated by ideological goals," have some preexisting relationship with the minor, the "mere existence" of which "creates some indicia that the [plaintiff]'s best interests were considered before filing the suit" (citing *T.W. by Enk*, 124 F.3d at 897)).

Notably, Defendants do not appear to dispute that Ms. Dixon and Ms. Huffman meet the underlying requirements for next friend standing. *See* [ECF No. 342, at 2 (explaining that Defendants "did not contest the appointment" of next friends until learning about the adoptions)]. Defendants instead rely on the principle that the

7

existence of a minor's general guardian precludes the minor's representation by an otherwise qualified next friend unless and until the general guardian is found inadequate as a representative. *Id.* at 3. Certainly, this principle could well be dispositive had the minors been adopted prior to commencing this litigation, or, perhaps, if the adoptive parents themselves were to seek substitution as their children's representatives. But Defendants cite no authority for the proposition that the post-filing emergence of a general guardian—who has not indicated their willingness or ability to litigate this case—undermines the authority of an existing, properly established representative.[4]

---

[4] The cases primarily relied upon by Defendants are inapposite.

They first cite *T.W. by Enk*, in which the Seventh Circuit stated that representation by a non-familial next friend is appropriate only "if a close relative is unavailable and the child has no conflict-free general representative." 124 F.3d at 897. In that case, however, the defendants did not argue that the minors had any general representative; instead, they challenged the basic qualifications of "a self-described, and so far as it relates to this case self-appointed, children's advocate" to represent minors to whom he was more or less a complete stranger, given that the minors had an aunt with whom they resided. *Id.* at 896. And even so, the Seventh Circuit would have given the stranger a chance to prove his capacity to represent the plaintiffs were there not "an independent ground on which the suit must be dismissed." *Id.* at 897–98 ("There is, as we have said, no absolute prohibition against the district judge's permitting a stranger, like Enk, to serve as the children's next friend."). Here, there is no dispute as to the next friends' underlying qualifications; Defendants appear to agree that Ms. Huffman and Ms. Dixon, neither of whom is a stranger to the plaintiff(s) she represents, would be appropriate next friends in the absence of general guardians. Moreover, *T.W. by Enk* involved a challenge to an individual's representative capacity *at the time of filing*; nowhere in that opinion did the Seventh Circuit address the impact of a newly established guardian who arises mid-litigation and may not have previously qualified as a general representative.

For similar reasons, *Dev. Disabilities Advoc. Ctr., Inc. v. Melton*, 689 F.2d 281 (1st Cir. 1982), does not compel the outcome urged by Defendants. In *Melton*, the First Circuit affirmed the district court's determination that "no suit by a next friend was authorized" because the plaintiff was already represented by his natural mother, who had no conflict of interest but "expressly disapproved" of the lawsuit. *Id.* at 285–86. Like *T.W. by Enk*, *Melton* addressed the standing of a supposed representative *at the time of filing*. Furthermore, the *Melton* court was "particularly concerned that [the next friend] had proceeded in this action 'without receiving authority from the purported client.'" *Id.* at 284; *cf. S.M. by King*, 2023 WL 2691454, at *6 (distinguishing the "cases cited by [defendant]" where "unlike here, the general guardian (the infant person's family member) opposed the lawsuit, while the non-parent next friend would have facilitated the litigation against the true guardian's wishes").

In sum, neither *T.W. by Enk* nor *Melton* examined post-filing developments, and both cases

To the contrary, it is well established that "[t]he question of next friend standing . . . is jurisdictional," *Hamdi*, 294 F.3d at 607, and "is evaluated based on the facts at the time of filing," *Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 293 n.4 (4th Cir. 2022). Particularly in a class action, post-filing developments affecting individual plaintiffs' claims often do not affect the claims of the class as a whole.[5] *See*

---

involved special considerations not present here.

[5] The proper timing of the jurisdictional analysis is distinctly significant in *this* class action, where the Fourth Circuit has expressly preserved the ostensibly moot claims of Named Plaintiffs who, since the time of filing, have left the foster care system due to age, adoption, or completion of juvenile rehabilitation. *See Jonathan R. by Dixon*, 41 F.4th at 325–26. Although the mootness exception applied by the Fourth Circuit does not directly govern the issues now raised by Defendants, the appellate court's reasoning remains relevant and militates against granting the defendants' motion.

In holding that the class "certification will 'relate back to the filing of the complaint,'" the court described the "inherently transitory" nature of the claims given that "the lifespan of state guardianship 'cannot be ascertained at the outset.'" *Id.* at 325 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)). Consequently, it was "by no means certain that any given individual, named as plaintiff, would be in custody long enough for a district judge to certify the class." *Id.* at 325–26. Importantly, however, "the constant existence of a class of persons suffering the deprivation is certain." *Id.* at 326. Just as the transitory nature of the class could have unreasonably impeded certification, that uncertainty could likewise derail this litigation if frequent substitutions of next friends were required. Such a requirement would be especially undesirable where, as here, the current representatives have been involved since the beginning of this litigation and are deeply familiar with Plaintiffs' claims and with the West Virginia foster care system in general. *See* [ECF No. 359, at 4 ("At the time the complaint was filed, Named Plaintiffs were and had been in [state] custody. It is their experiences while in custody that are relevant to this case and representative of those of the class members, and it is precisely those experiences that Plaintiffs' Next Friends are familiar with.")]; *see generally Sam M. ex rel. Elliott*, 608 F.3d at 92 (suggesting that courts "consider the individual's familiarity with the litigation, the reasons that move her to pursue the litigation, and her ability to pursue the case on the child's behalf").

The Fourth Circuit also noted that the "relation back" exception to mootness is "particularly fitting when *defendants* create 'a significant possibility that any single named plaintiff would be [dismissed] prior to certification.'" *Jonathan R. by Dixon*, 41 F.4th at 326 (quoting *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010)). As the court explained, "the duration of Plaintiffs' claims remains largely at the discretion of the State," in that "West Virginia can push through adoption and family reunification." *Id.* (quoting *Olson*, 594 F.3d at 583) (internal markings omitted). Because "unsuitable adoptions or premature reunification with parents unprepared to take on the responsibility can devastate entire childhoods," the court "decline[d] to create such perverse incentives for the States." *Id.* Although the class has now been certified, granting the instant motion could similarly incentivize Defendants to prolong and undermine this lawsuit by moving Named Plaintiffs out of state custody and into the hands of a general guardian who may be far less suited to pursue the minors' claims. *See generally Carson P. ex rel. Foreman*, 240 F.R.D. at 521 ("[T]he court's ultimate responsibility is providing access to the courts and justice."); *Sam M. ex rel. Elliott*, 608 F.3d at 89 ("[C]ourts have tailored the Next Friend analysis to the realities of foster care children and to the general principle

*generally Sosna v. Iowa*, 419 U.S. 393, 401–02 (1975) (holding named plaintiff as to whom "the controversy is no longer alive" retained a "personal stake in the litigation . . . throughout the entirety of the litigation" because she had successfully sought to certify a class which "acquired a legal status separate from the interest asserted by [the individual named plaintiff]"). As explained above, when Ms. Huffman and Ms. Dixon initiated this suit as next friends, they plainly had standing to do so. And even when federal courts do reconsider next friend standing at later stages of litigation, they generally decline to interfere with a valid, existing representation absent some showing of impropriety. *See, e.g.*, *Garrick*, 888 F.2d at 693 (finding mother lacked standing to represent her children after guardian ad litem had already been appointed pursuant to Rule 17(c)); *Doe v. City of Waterbury*, Nos. 302CV2298, 303CV571, 2004 WL 726899, at *6 (D. Conn. Mar. 31, 2004) ("Rule 17(c) . . . does not *require* substitution of a legal guardian once a lawsuit has already been filed by a suitable next friend."); *S.M. by King*, 2023 WL 2691454, at *6 (permitting non-familial representation to continue despite newly-available natural father, where "substituting [plaintiff]'s next friend with their general guardian would be costly, impose delays, and could result in a diminished quality of representation"). This is especially so where a minor's parent or other general guardian has not attempted to assume control of the litigation nor indicated any interest in doing so. *See, e.g.*, *S.M. by King*, 2023 WL 2691454, at *3 ("[T]he mere existence of relatives of a minor child

---

that litigants should be afforded access to federal courts in pursuit of their constitutional and statutory rights.").

10

does not preclude a federal court from appointing other individuals as next friends to represent the minor children . . . when the relatives did not move to represent them in federal court and there was no showing that the relatives were willing or able to represent them." (quoting 6A C.A. Wright & A. Miller, Federal Practice and Procedure § 1570 n.4 (2022 ed.)) (internal markings omitted)); *Sam M. ex rel. Elliott*, 608 F.3d at 88–89 (holding Rule 17(c) authorized appointment of Next Friend to represent minor plaintiffs whose "relatives have not moved to represent them in federal court" and where "there [was] no indication that they are willing or able to represent them"). Such interference is similarly disfavored where the general guardian does not oppose the litigation. *Compare Melton*, 689 F.2d at 285–86 (finding "next friend" lacked standing to sue where minor plaintiff's "mother disagreed with [the purported friend] over the wisdom of the present suit, and there [was] no indication in the record that she abused her trust in doing so"), *with S.M. by King*, 2023 WL 2691454, at *6 (distinguishing cases where "unlike here, the general guardian . . . opposed the lawsuit" and noting "this distinction was a sufficient ground on which to rest next friend standing without reaching the issue of conflicts"), *and von Bulow by Auersperg v. von Bulow*, 634 F. Supp. 1284, 1296 (S.D.N.Y. 1986) (recognizing that by receiving notice of the litigation and opting not to represent the disabled party, the plaintiff's general guardian had in fact "acted in her best interests" by finding "a proxy to vigorously prosecute an action it supports and from which its ward can . . . benefit").

11

Here, the Named Plaintiffs' new general guardians "have not moved to represent them in federal court," nor given any "indication that they are willing or able to represent them." *Sam M. ex rel. Elliott*, 608 F.3d at 88. Likewise, in the three or four years since the adoptions were finalized, the plaintiffs' adoptive parents have not expressed any disapproval of this lawsuit or of the next friends. Under these circumstances, the court will not disturb the Named Plaintiffs' existing representations by qualified next friends who are truly dedicated to the minors' best interests and who are, particularly at this stage in the litigation, uniquely capable of serving those interests.

For the foregoing reasons, Defendants' Motion to Disqualify Next Friends [ECF No. 341] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: August 25, 2023

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE