UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | | |
|---|---|---|
| Jonathan R., minor, by Next Friend, Sarah DIXON, *et al.,* | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Class Action |
| | ) | 3:19-cv-00710 |
| v. | ) | |
| | ) | |
| Jim JUSTICE, in his official capacity as the Governor of West Virginia, *et al.,* | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION TO COMPEL

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37.1(c), Plaintiffs move to compel discovery sought in Plaintiffs' Eighth and Ninth Requests for Production ("RFP"). The parties have conferred pursuant to Local Rule 37.1(b) and are unable to come to an agreement on seven of Plaintiffs' discovery requests.

Accordingly, Plaintiffs respectfully request that the Court compel Defendants to produce the outstanding discovery detailed below no later than November 17, 2023.

## BACKGROUND

Plaintiffs served their Eighth RFP on July 20, 2023. *See* Ex. 1.[1] Defendants responded on August 18, 2023, objecting to all requests and stating that they would provide documents responsive to only twenty-two of Plaintiffs' seventy requests. *See* Ex. 2. Plaintiffs served their Ninth RFP on August 7, 2023. *See* Ex. 3. Defendants responded on September 6, 2023, objecting

---

[1] Exhibits are attached to the Declaration of Marcia Lowry dated October 13, 2023.

Case 3:19-cv-00710   Document 374   Filed 10/13/23   Page 2 of 22 PageID #: 14668

to all requests and stating that they would provide documents responsive to only nineteen of Plaintiffs' fifty-eight requests. *See* Ex. 4.

Since Defendants' initial responses and objections, the parties have been actively negotiating their discovery disputes. By way of background, the parties met and conferred on the Seventh RFP on August 23 and August 29, 2023. During those meetings, Plaintiffs agreed to review all Plaintiffs' prior RFPs for requests that involved data and consolidate the data requests into one document to be provided to Defendants and addressed separately. In the spirit of compromise, Plaintiffs opted not to include thirty-two previously served data requests in the new, consolidated request. In total, Plaintiffs sought data in response to fifty-one requests, all of which were initially included in the Seventh, Eighth, or Ninth RFPs. *See* Ex. 5.[2]

Defendants provided a response to Plaintiffs' consolidated data requests on September 8, 2023 and Plaintiffs responded on September 14. *See* Ex. 6. In their response, Plaintiffs requested additional information about how Defendants maintain data to try to negotiate a compromise that would limit Defendants' burden. The parties conferred on this issue on September 18. Defendants provided Plaintiffs with an update on September 25, and Plaintiffs responded on September 27. *See* Ex. 6.

Also on September 27, Plaintiffs sent Defendants a letter challenging the sufficiency of Defendants' objections to several of Plaintiffs' non-data discovery requests contained in the Seventh, Eighth, and Ninth RFPs. *See* Ex. 7. Defendants responded to the letter on October 2. *See* Ex. 8.

---

[2] Exhibit 5 contains forty-nine data requests that Plaintiffs sent to Defendants as part of the consolidated data request. The parties agreed to add two additional data requests during their subsequent conferral.

On October 2, the parties conferred again, and Defendants provided Plaintiffs with additional information on how certain data is stored. The parties were able to reach an agreement on many of the data requests.

On October 11, Plaintiffs sent Defendants a letter stating their intent to file a motion to compel with respect to seven discovery requests (five data requests and two document requests) that the parties were unable to resolve and outlining their arguments for each request. *See* Ex. 9. Pursuant to Local Rule 37.1(c), the parties previously filed stipulations to extend Plaintiffs' deadline to file a motion to compel regarding the Eighth and Ninth RFPs to October 13, 2023. *See* ECF Nos. 367, 372.

## LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Relevancy under [Rule 26] has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Mays v. Cabell Cnty. Bd. of Educ.*, No. 22-cv-85, 2023 U.S. Dist. LEXIS 51618, at *8 (S.D. W. Va. Mar. 27, 2023) (quoting *Becton, Dickinson & Co. v. Biomedics, Inc.*, No. 5:20-cv-536, 2021 U.S. Dist. LEXIS 163471, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted)).

"A party dissatisfied with a discovery response or lack of response can move for an order compelling disclosure or discovery after attempting to confer with the party that submitted the response or failed to respond." *Id.* at *8. The party opposing a motion to compel "bears

the burden of showing why it should not be granted." *Tucker v. Momentive Performance Materials USA, Inc.*, No. 2:13-cv-4480, 2016 U.S. Dist. LEXIS 187413, at *9 (S.D. W. Va. Nov. 23, 2016).

Pursuant to Local Rule 37.1(c), Plaintiffs set forth "verbatim each discovery request or disclosure requirement and any response thereto to which an exception is taken." S.D. W. Va. Loc. R. 37.1(c). Objections that have been resolved are omitted.

## ARGUMENT

Defendants refuse to produce highly relevant documents in response to several requests, including requests concerning Caseworkers' caseloads, maltreatment in Congregate Care Facilities, the completion of case plans, and the time between when a child enters foster care and when the child exits to permanency. Defendants' objections on relevancy or burden grounds are without support and Plaintiffs respectfully request that the Court compel production of these documents. Moreover, since the Court has set a trial date of June 25, 2024, *see* ECF No. 329, Plaintiffs request that all discovery referenced in this letter be produced no later than November 17, 2023. Plaintiffs set forth information regarding the specific RFPs at issue below.

### I.  Plaintiffs' Eighth Request for Production: Request Numbers 8.8 and 8.10

Request Number 8.8 seeks:

Documents sufficient to show the distribution of cases and the number of cases carried by individual Caseworkers, including but not limited to foster care Caseworkers and Caseworker supervisors (i.e. the number of caseworkers who carry one case, the number of caseworkers who carry two cases, etc.), in six-month increments from July 1, 2019 to Present.

Ex. 1 at 9.

Request Number 8.10 seeks:

Documents sufficient to show (1) the number of Caseworkers that carried caseloads above, at, and below any caseload standards and (2) regarding Caseworkers who carried caseloads above any caseload standard, the number of cases by which each

Caseworker exceeded the caseload standard, in six-month increments for the period of July 1, 2019 to Present.

*Id.*

On August 18, 2023, Defendants objected to both requests, stating:

To the extent that this Request would require Defendants to create new document(s) or report(s), it would require Defendants to devote hundreds of staff and/or contract hours to develop new reliable computer code able to create such new document(s) or report(s) from FACTS and PATH, or to manually review thousands of case files of children in foster care and retrieve the information requested. As a result, to the extent this Request would require Defendants to create new document(s) or report(s), Defendants object on the grounds that this Request is overly broad, not proportional to the needs of the case, and unduly burdensome. To the extent that this Request requires Defendants to produce information in a form in which it is not usually maintained, Defendants object on the grounds that it is overly broad, not proportional to the needs of the case, and unduly burdensome and beyond the requirements of the Federal Rules, *see* Fed. R. Civ. P. 34(b)(2)(E).

Ex. 2 at 11-13.

Despite their objections, Defendants informed Plaintiffs that they are willing to produce certain data in response to these requests. The data that they would produce, however, reflects DHHR's practice of defining a "case" as an entire family, rather than a single child. On September 25, Defendants clarified that the data that DHHR has "shows worker workload history sorted by region for assessments, cases and providers; workload counts are broken out by status such as balance at the beginning of the month, new assignments during the month, closed assignments during the month and balance at the end of the month." They further stated that "cases are reported as the State defines them, meaning that prior to [termination of parental rights ("TPR")], all children in the family are counted as one case, and after TPR each child is one case."

As Defendants are aware, DHHR's definition of "case" is at the crux of this discovery dispute. As such, on September 27, Plaintiffs informed Defendants that it was "imperative that Plaintiffs understand the number of cases per caseworker as defined by each child—not by family,"

and requested that Defendants produce that information. Throughout this litigation, Plaintiffs have voiced concern over DHHR's practice of defining a case as a family rather than a child.

Defendants have responded that they will produce various documents from which they believe Plaintiffs could calculate the caseload of each Caseworker. These documents, however, are insufficient and do not provide Plaintiffs with information necessary to calculate Caseworker caseloads on a "per child" basis. For example, the documents to which Defendants have pointed provide no information about the Caseworker and therefore, Plaintiffs are unable to understand whether the Caseworker is new and can take on only a smaller caseload or whether the Caseworker has a different, additional role in addition to managing a caseload, such as a homefinding role.

Defendants object to producing data on a per child basis and claim that it would be overly burdensome to create new reports based on the data that they maintain. But while a party cannot be compelled to create new documents solely for discovery production, "there is a distinct difference between requiring a party to create new data that does not currently exist and requiring a party to produce already existing data in a reasonably usable form." *Frasier Healthcare Consulting, Inc. v. Grant Mem. Hosp. Reg'l Healthcare Ctr.*, No. 2:12-cv-87, 2014 U.S. Dist. LEXIS 200079, at *13-14 (N.D. W. Va. Jan. 9, 2014); *see, e.g.*, *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 244 (N.D. Ohio 2017) (requiring that defendant "either write the program that would produce" the data sought by plaintiff or "produce the relevant portions of its database to [p]laintiff so that her expert . . . can write the program and conduct the query himself"); *Mervyn v. Atlas Van Lines, Inc.*, No. 13-cv-3587, 2015 U.S. Dist. LEXIS 144376, at *21 (N.D. Ill. Oct. 23, 2015) ("[R]equiring a party to query an existing database to produce reports for opposing parties is *not* the same as requiring the creation of a new document[,]" and "requiring the creation

of new code does not necessarily create an undue technical burden." (emphasis in original)). Defendants' objection does not justify their refusal to produce the requested information.

The Court's decision in *Frasier* is instructive. There, the Court granted the plaintiff's motion to compel, finding that the plaintiff's request for production did not require the defendant to create new data, but "simply . . . to access its existing database in order to produce the information requested by Plaintiff." 2014 U.S. Dist. LEXIS 200079, at *16. In reaching its decision, the Court relied on several cases where courts similarly required defendants to produce already existent data in a reasonable format. *See, e.g.*, *Columbia Pictures Indus. v. Bunnell*, No. 06-cv-1093, 2007 U.S. Dist. LEXIS 46364 (C.D. Cal. 2007); *Jinks-Umstead v. England*, 227 F.R.D. 143, 147-48 (D.D.C. 2005); *Burkybile v. Mitsubishi Motors Corp.*, No. 04-c-4932, 2006 U.S. Dist. LEXIS 84864, at *5 (N.D. Ill. Oct. 17, 2006).

These discovery requests do not require Defendants to obtain data that they do not already have. DHHR already maintains data showing the names of each individual child assigned to each caseworker, and presumably, important information on their caseworkers, including their titles, how long they have been employed, and any workload restrictions that they have. Plaintiffs' discovery requests merely ask that Defendants collect this information and produce it in a useable format responsive to the requests.

Defendants fail to describe with specificity the burden associated with compiling and producing the requested data. *See, e.g.*, *Jones v. Bank of Am., N.A.*, No. 3:14-cv-11531, 2015 U.S. Dist. LEXIS 52214, at *5 (S.D. W. Va. Apr. 21, 2015) ("[A] party resisting discovery on the grounds of burdensomeness and oppression must do more to carry its burden than make conclusory and unsubstantiated allegations."). The party resisting discovery "must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome, [and] . . . claims

of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome." *Philips N. Am. LLC v. Probo Med. LLC*, No. 2:21-cv-00298, 2022 U.S. Dist. LEXIS 227748, at *7 (S.D. W. Va. Dec. 19, 2022) (alteration in original) (citation omitted). Defendants provide information on how DHHR stores its data, but there is no indication that they have attempted to produce the requested information and determined, for example, the number of hours or people required to produce the discovery.

Moreover, even if Defendants had sufficiently shown that producing the requested information would be burdensome, they have not established that any such burden outweighs Plaintiffs' need for the information. That DHHR has a policy and practice of maintaining unreasonably high caseloads is central to Plaintiffs' substantive due process claims. *See, e.g.*, Compl. ¶¶ 288, 290, 292-93, 297-307, 367, ECF No. 1; Pl. Mem. of Law in Support of Their Renewed Motion for Class Certification at 12-14, ECF No. 319; Memorandum Opinion and Order ("Opinion on Class Cert.") at 2, 20-24, ECF No. 351. High caseloads prevent Caseworkers from having the time and resources necessary to ensure that each child is receiving the services that he or she needs, is in a safe environment, is being appropriately visited, and is moving toward permanency. Data on the number of families that each Caseworker is responsible for is meaningless because Caseworkers could be responsible for multiple children in one family, all with differing needs and placements. Any burden that Defendants may face if compelled to query their existing databases and produce the requested information pales in comparison to the significance of this information to Plaintiffs' case.

Accordingly, Plaintiffs respectfully request that the Court compel Defendants to produce this discovery.

## II.  Plaintiffs' Ninth RFP

8

**A. *Request Number 9.24***

Request Number 9.24 seeks:

Documents sufficient to show all safety assessments and on-site reviews of out-of-state Congregate Care Facilities or of children in those facilities, including assessments conducted by the West Virginia Interagency Consolidated Out-of-State Monitoring Team and the Out-of-State Review and Regional Clinical Review Teams, from July 1, 2019 to Present.

Ex. 3 at 11.

On September 6, 2023, Defendants responded:

Defendants object to this Request as not relevant to the subject matter of this case and Plaintiffs' claims in light of the Court's Order denying class certification on the question of placement of youth with disabilities into institutional settings, Doc. 351, at 26-28. Documents relating to the placement of children in residential treatment programs are not relevant to the common questions certified by the court for the ADA subclass, *i.e.*, whether Defendants provision of community based mental health services is deficient, and if so, whether the deficiency places foster children with disabilities at risk of unnecessary institutionalization. *Id*. at 33.

To the extent this Request seeks documents going back before October 2, 2020, Defendants object to this Request as unreasonably cumulative and duplicative of Request No. 23 in Plaintiffs' Third Request for Production. Defendants incorporate their objections and responses to Request No. 23 in Plaintiffs' Third Request for Production into their response to this Request.

Ex. 4 at 21-22.

As Plaintiffs stated in their letter to Defendants dated September 27, contrary to Defendants' assertion, the Court's decision not to certify one of the common questions of the ADA Subclass has no bearing on the relevancy of the discovery requested because the General Class and ADA Subclass were certified on other common questions. *See* Opinion on Class Cert. at 24, 33. Members of the General Class may be placed in Congregate Care Facilities, for example, and whether those placements are safe is highly relevant to whether foster children face a substantial risk of harm to their physical and emotional wellbeing. Additionally, facility safety assessments

and reviews are relevant to proving that Defendants were deliberately indifferent to harms that existed.

Defendants also object that this request is "unreasonably cumulative and duplicative" of Request Number 3.23. While Request Number 3.23 also sought production of documents created by the West Virginia Interagency Consolidated Out-of-State Monitoring Team and on-site reviews of Congregate Care Facilities, Defendants production in response to that request was deficient, which Plaintiffs informed Defendants of in letters dated July 27, 2021 and October 7, 2022. Even if Defendants' production was not deficient, Defendants' argument does not excuse their failure to produce discovery created after October 2, 2020. Moreover, objections to discovery requests on the basis that they are cumulative or duplicative are improper unless the request is "unreasonably" cumulative or duplicative. *See* Fed. R. Civ. P. 26(b)(2)(C). While Defendants claim that the request is "unreasonably" cumulative or duplicative, they fail to meet their burden of showing why that is so.

Accordingly, Plaintiffs request that the Court compel Defendants to produce responsive discovery.

### B.  Request Number 9.25

Request Number 9.25 seeks:

Documents sufficient to show all licensing reviews of Congregate Care Facilities conducted by DHHR, including (1) reports issued following announced and unannounced inspections, (2) reports issued following the completion of inspections conducted prior to license expiration, (3) reports issued following investigations into a complaint alleging violations of laws or rules, (4) reports concerning staffing, discipline, or any other actions related to the well-being of children, and (5) corrective action plans submitted to DHHR, including documents related to the approval, modifications, or rejection of such plans, immediate corrections to an area of non-compliance that risks the health or safety of a child, and the Secretary's determinations if corrections have been made. (*See* W. VA. C.S.R. §§ 78-3-4.5.1; 78-3-4.5.5-5.6; 78-3-4.6.4-6.5; 78-3-4.7; 78-3-4.8; 78-3-4.10; *see also* D162573 – D162873).

Ex. 3 at 11.

On September 6, 2023, Defendants responded:

Defendants object to this Request as not relevant to the subject matter of this case and Plaintiffs' claims in light of the Court's Order denying class certification on the question of placement of youth with disabilities into institutional settings, Doc. 351, at 26-28. Documents relating to the placement of children in residential treatment programs are not relevant to the common questions certified by the court for the ADA subclass, *i.e.*, whether Defendants provision of community based mental health services is deficient, and if so, whether the deficiency places foster children with disabilities at risk of unnecessary institutionalization. *Id*. at 33.

To the extent this Request seeks documents going back before October 2, 2020, Defendants object to this Request as unreasonably cumulative and duplicative of Supplemental Request No. 26 in Plaintiffs' Third Request for Production. Defendants incorporate their objections and responses to Supplemental Request No. 26 in Plaintiffs' Third Request for Production into their response to this Request.

Ex. 4 at 22-23.

Defendants make the same relevancy objection as they did in response to Request Number 9.24, and it is meritless for the reasons described above. *See supra* Part II.A.

Defendants do not explain how the information sought is duplicative and cumulative of that previously requested. Request Number 3.26 sought "[a]ll Documents showing the staff-to-child ratio at each Congregate Care Facility, including both in-state and out-of-state Congregate Care Facilities." Not only did Defendants fail to sufficiently respond to that request, producing documents that did not show the staff-to-child ratio at any facility, but Request Number 9.25 seeks licensing reviews and other reports that contain much more information than simply a facility's staff-to-child ratio.[3] Defendants' objection also does not explain their refusal to produce discovery created after October 2, 2020.

---

[3] In connection with the parties' negotiations regarding data, on September 25, 2023, Defendants stated that they would provide licensing reviews for Congregate Care Facilities. *See* Ex. 6. In their letter dated October 2, 2023, however, Defendants confirmed that they were maintaining their objections to producing documents responsive to Request Number 9.25. *See* Ex. 8. at 4. While Plaintiffs understand that Defendants

3c03f6d80c7fd9b1

Accordingly, Plaintiffs request that the Court compel Defendants to produce responsive discovery.

### C. Request Number 9.37

Request Number 9.37 seeks:

Documents sufficient to show (1) the number of investigations into reports of maltreatment conducted by Congregate Care Facilities where the IIU has indicated that there shall be no IIU investigation; (2) the number of instances where a report for such an investigation was not created and reviewed within five working days of the occurrence of the incident or within five days of notification by the IIU that it would not investigate; and (3) the number of investigations into a pattern of non-critical incidents conducted by Congregate Care Facilities, from July 1, 2019 to Present. (*See* W. VA. C.S.R. §§ 78-3-16.1 – 16.2 (2020); Miller Dep. 77:22 – 78:17, 80:17 – 25, Nov. 17, 2020).

Ex. 3 at 13.

On September 6, 2023, Defendants responded:

Defendants object to this request to the extent it requires Defendants to break-down data or other information based on whether the child is in residential treatment or in a family home, because data broken down in that manner is not relevant to the questions the Court identified are capable of classwide resolution, *see* Doc. 351.

To the extent that this Request would require Defendants to create new document(s) or report(s), it would require Defendants to devote hundreds of staff and/or contractor hours to develop new reliable computer code able to create such new document(s) or report(s) from DHHR's legacy FACTS system and DHHR's new system, PATH, or to manually review thousands of case files of children in foster care and retrieve the information requested. As a result, to the extent this Request would require Defendants to create new document(s) or report(s), Defendants object on the grounds that this Request is overly broad, not proportional to the needs of the case, and unduly burdensome. To the extent that this Request requires Defendants to produce information in a form in which it is not usually maintained, Defendants object on the grounds that it is overly broad, not proportional to the needs of the case, and unduly burdensome and beyond the requirements of the Federal Rules, *see* Fed. R. Civ. P. 34(b)(2)(E).

To the extent this Request seeks documents created before December 14, 2020,

_____

may have produced or will produce some documents responsive to this RFP, to the extent that Defendants are withholding documents relevant to this request, Plaintiffs ask that Defendants be compelled to produce those documents.

> Defendants object to this Request as unreasonably cumulative and duplicative of Request No. 29 in Plaintiffs' Fourth Request for Production. Defendants incorporate their objections and responses to Request No. 29 in Plaintiffs' Fourth Request for Production into their response to this Request.
>
> Defendants have already produced documents responsive to this request, *see* D219631 – D219632.

Ex. 4 at 31-32.

After Defendants' initial objections, the parties engaged in negotiations regarding this data. On September 25, Defendants stated that other than information contained in DHHR's regular licensing reviews of Congregate Care Facilities, which Defendants agreed to produce, Defendants did not have the requested data and asserted that "it would be unduly burdensome and not proportional to the needs of the case for Defendants to gather this information from the residential treatment programs, particularly since Plaintiffs are free to subpoena the residential treatment programs." This request, however, pertains to reports created by the Congregate Care Facilities when there is actual or alleged maltreatment. Defendants continue to refuse to obtain the requested information from the Congregate Care Facilities with whom they contract and where they place children.

Under Title 78 of the West Virginia Code, Congregate Care Facilities are required to investigate allegations of abuse and neglect where IIU declines to investigate. W. VA. C.S.R. § 78-3-16.1.c ("If the Institutional Investigative Unit indicates that there shall be no Institutional Investigative Unit investigation the allegation shall be downgraded to a critical incident and the [Congregate Care Facility] shall proceed with a full investigation."). West Virginia law further requires that "[a]ny investigations completed by the [Congregate Care Facility] shall be maintained in a central file and made available to the state regulatory agency." W. VA. C.S.R. § 78-3-16.1.f. Incidents that are classified as "critical" "shall be documented, then investigated by a designated

member of the [Congregate Care Facility's] safety committee, or similar committee. The investigation shall result in a report that will be reviewed by the administrator or his or her designee within five working days of the occurrence of the incident or within five days of notification by the Institutional Investigative Unit that it will not investigate." W. VA. C.S.R. § 78-3-16.2.c; *see also* § 78-3-16.2.g. Additionally, "[i]f a pattern of non-critical incidents is identified, the [Congregate Care Facility] shall refer to the quality assurance team for a thorough investigation of incidents typical of the pattern . . . [and] shall keep a central administrative file of all incident reports and any ensuing investigations." W. VA. C.S.R. §§ 78-3-16.2.e; 2.f.

As Plaintiffs informed Defendants on September 14, the data requested is highly relevant to common questions on which the classes have been certified. *See* Ex. 6. For example, data demonstrating that these facilities are not properly investigating maltreatment, that Defendants do not exercise sufficient oversight over the facilities where they place children, or that maltreatment rates are high, supports Plaintiffs' claims that Defendants' policies and practices put foster children at risk of harm in violation of their substantive due process rights. *See, e.g.*, Order on Motion to Dismiss at 13, ECF No. 300 ("Plaintiffs' Complaint adequately alleges that Defendants have placed Plaintiffs in placements known to be dangerous.").

Defendants' second objection, that producing the requested data is unduly burdensome, is likewise meritless because Defendants are required to obtain this information from the Congregate Care Facilities if they do not already have it themselves. Rule 34 explicitly permits requests to produce documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "The term 'control' is liberally construed, and 'the applicable test under Rule 34 is whether the litigant has the ability to obtain documents upon reasonable request, either as a matter of law or as a matter of practical fact.'" *Frasier*, 2014 U.S. Dist. LEXIS 200079, at *12 (citation

14

omitted); *see, e.g.*, *Mays*, 2023 U.S. Dist. LEXIS 51618, at *15 ("Rule 34 'control' does not require a party to have legal ownership or actual physical possession of any [of the] documents at issue." (alteration in original) (citation omitted)); *Poole v. Textron, Inc.*, 192 F.R.D. 494, 501 (D. Md. 2000) ("As long as the party has the legal right or ability to obtain the documents from another source on demand, that party is deemed to have 'control.'"). "The requirement that a party must produce responsive documents within its control means that sometimes the responding party will need to obtain documents from third parties to comply with its discovery obligations." *Williams v. AT&T Mobility*, No. 5:19-cv-00475-BO, 2021 U.S. Dist. LEXIS 71657, at *4 (E.D.N.C. Apr. 13, 2021); *see, e.g.*, *Kariuki v. N.C. Dep't of Ins.*, No. 5:18-cv-00341, 2021 U.S. Dist. LEXIS 84641, at *8 (E.D.N.C. Apr. 23, 2021); *Neal v. E. Carolina Univ.*, No. 5:17-cv-00186, 2019 U.S. Dist. LEXIS 73103, at *2-3 (E.D.N.C. Apr. 29, 2019).

As discussed above, the Congregate Care Facilities are required to maintain reports on investigations into maltreatment that they conduct after IIU determines there will be no IIU investigation, including investigations into patterns of non-critical incidents. *See* W. VA. C.S.R. §§ 78-3-16.2.c; 2.e; 2.f. Documents that are in the possession of Congregate Care Facilities that DHHR licenses, contracts with, and where DHHR places children are in DHHR's possession, custody, and control for purposes of discovery. It would be concerning if Defendants were not able to readily access this information without burden if they continue to place children in these facilities.

Accordingly, Plaintiffs request that the Court compel Defendants to produce responsive discovery.

### D.  Request Number. 9.46

15

Request Number 9.46 seeks: "Documents sufficient to show (1) the number of case plans completed within 60 days, and (2) the number of case plans due but not completed within 60 days, each month from July 1, 2019 to Present." Ex. 3 at 15.

On September 6, 2023, Defendants responded:

> Defendants object to this Request as not relevant to the subject matter of this case and Plaintiffs' remaining claims in light of the Court's Order dismissing Plaintiffs' case planning, placement stability, and familial association claims, and significantly narrowing Plaintiffs' Substantive Due Process claims, Doc. 300. Documents related to timely completion of case plans are not relevant to Plaintiffs' remaining Substantive Due Process claims *i.e.*, whether Defendants deprived foster children in the custody of DHHR of the rights to: freedom from maltreatment and unnecessary intrusions into emotional wellbeing; services to prevent an unreasonable risk of harm; and conditions of, duration of, and treatment in foster care reasonably related to the purpose of custody. *See id*. at 12-17.

> To the extent that this Request would require Defendants to create new document(s) or report(s), it would require Defendants to devote hundreds of staff and/or contractor hours to develop new reliable computer code able to create such new document(s) or report(s) from DHHR's legacy FACTS system and DHHR's new system, PATH, or to manually review thousands of case files of children in foster care and retrieve the information requested. As a result, to the extent this Request would require Defendants to create new document(s) or report(s), Defendants object on the grounds that this Request is overly broad, not proportional to the needs of the case, and unduly burdensome. To the extent that this Request requires Defendants to produce information in a form in which it is not usually maintained, Defendants object on the grounds that it is overly broad, not proportional to the needs of the case, and unduly burdensome and beyond the requirements of the Federal Rules, *see* Fed. R. Civ. P. 34(b)(2)(E).

Ex. 4 at 40-41.

Plaintiffs responded to Defendants' relevancy objection on September 14, stating that "[d]ata regarding written case plans is highly relevant to Plaintiffs' claims including because the Court found that 'common questions exist regarding whether the deficiencies in case planning subject the proposed General Class to an unreasonable risk of harm.'" *See Jonathan R. v. Justice*, No. 3:19-cv-2023, 2023 U.S. Dist. LEXIS 144308, at *25 (S.D.W.V. Aug. 17, 2023).

16

On October 2, Defendants responded that they "maintain data that shows the date of when a case plan is completed" but that "producing this data, including breaking it down in the manner requested by Plaintiffs, would require an 'ad hoc' data report, which would require hundreds of hours from DHHR staff and contractors. As a result, producing this data would be unduly burdensome and not proportional to the needs of the case, and Defendants are not willing to produce it." Plaintiffs understand based on Defendants' statements during the parties' conferral that the data requested appears in individual children's case files on their computer system, but Defendants cannot pull the information into an aggregate report.[4] *See* Ex. 9.

Defendants should be compelled to collect this information and produce it in a useable format. As stated *supra*, discovery requests that would require Defendants to query existing data systems are not the same as those that would require the collection of new data. *See, e.g.*, *Meredith*, 319 F.R.D. at 244; *Mervyn*, 2015 U.S. Dist. LEXIS 144376, at *21. The former, of which Request Number 9.46 is included, are not on their face overly burdensome, and Defendants fail to sufficiently articulate the undue burden associated with this request. Defendants repeat the same, boilerplate objection in response to several requests, further indicating that they have not determined the steps necessary to produce the information. Fourth Circuit caselaw has firmly rejected the use of such boilerplate objections. *E.g.*, *Jones*, 2015 U.S. Dist. LEXIS 52214, at *10-11 (collecting cases and noting that there is clear Fourth Circuit "case law holding that such [boilerplate] objections are improper").

Moreover, federal law requires that any state receiving foster care maintenance payments under Title IV-E must ensure that a child's case plan is "developed within a reasonable period, to be established by the title IV-E agency, but in no event later than 60 days from the child's removal

---

[4] Defendants' inability to aggregate the data is further concerning as it illustrates that Defendants have no way of understanding whether case plans are generally being completed in a timely manner.

from the home . . . ." 45 CFR §1356.21(g)(2). DHHR, therefore, should already be collecting this information and reporting it to the federal government.

Any burden that Defendants will incur in collecting and producing the requested data is outweighed by the information's importance. The General Class was certified in part on the common question of whether Defendants maintain a practice of inadequate case planning. *See* Opinion on Class Cert. at 17-20. To prove this practice exists, Plaintiffs require data on whether DHHR is timely developing and completing foster children's case plans.

Accordingly, Plaintiffs request that the Court compel Defendants to produce responsive discovery.

### E.  Request Number 9.54

Request Number 9.54 seeks:

Documents sufficient to show the median length of time between a permanency plan change to adoption and exit to finalized adoption for all Foster Children in the physical and legal custody of DHHR (1) exiting foster care during the year 2019 to a finalized adoption; (2) exiting foster care during the year 2020 to a finalized adoption; (3) exiting foster care during the year 2021 to a finalized adoption; (4) exiting foster care during the year 2022 to a finalized adoption; and (5) exiting foster care during the year 2023 to a finalized adoption.

Ex. 3 at 16.

On September 6, 2023, Defendants responded:

Defendants object to this Request as not relevant to the subject matter of this case; documents related to the length of time between permanency planning and adoption are not relevant to Plaintiffs' remaining Substantive Due Process claims *i.e.*, whether Defendants deprived foster children in the custody of DHHR of the rights to: freedom from maltreatment and unnecessary intrusions into emotional wellbeing; services to prevent an unreasonable risk of harm; and conditions of, duration of, and treatment in foster care reasonably related to the purpose of custody. *See* Doc. 300 at 12-17.

To the extent that this Request would require Defendants to create new document(s) or report(s), it would require Defendants to devote hundreds of staff and/or contractor hours to develop new reliable computer code able to create such new

document(s) or report(s) from DHHR's legacy FACTS system and DHHR's new system, PATH, or to manually review thousands of case files of children in foster care and retrieve the information requested.  As a result, to the extent this Request would require Defendants to create new document(s) or report(s), Defendants object on the grounds that this Request is overly broad, not proportional to the needs of the case, and unduly burdensome.  To the extent that this Request requires Defendants to produce information in a form in which it is not usually maintained, Defendants object on the grounds that it is overly broad, not proportional to the needs of the case, and unduly burdensome and beyond the requirements of the Federal Rules, *see* Fed. R. Civ. P. 34(b)(2)(E).

Ex. 4 at 47.

On September 14, Plaintiffs requested more information on "how Defendants record the timing between the permanency plan change to adoption and the exit to finalized adoption." On September 25, Defendants responded that they "maintain data that shows the date of when a permanency plan was established; what that permanency plan is; and the reason why a child exits foster care," but that "producing this data would require a case-by-case review or an 'ad hoc' data report, which would require hundreds of hours from DHHR staff and contractors." Plaintiffs understand from the parties' conferrals that similar to Request Number 9.46, they have the data in their system for each case, but do not have a report that aggregates the data. *See* Ex. 9.

First, the data requested is highly relevant to Plaintiffs' remaining substantive due process claims, including that Defendants have deprived plaintiffs of their right to conditions and duration of care that are reasonably related to the purpose of government custody and the right not to be in custody longer than necessary to accomplish the purpose that custody is meant to serve, among others. *See* Order on Motion to Dismiss at 15. Evidence that children are languishing in DHHR's custody despite having a permanency plan of adoption supports Plaintiffs' claim that they are being deprived of their right to a duration of care that is reasonably related to the purpose of government custody.

19

Second, Defendants' burden objection is meritless for the same reasons described with respect to Request Number 9.46. Defendants maintain the responsive data in individual children's case files and should be compelled to produce it to Plaintiffs. Defendants do not explain why any burden they may endure outweighs Plaintiffs' need for this information. Plaintiffs have no other way of obtaining the requested data, which is integral to Plaintiffs' claims that Defendants have violated Plaintiffs' substantive due process rights related to the duration and conditions of care.

Accordingly, Plaintiffs request that the Court compel Defendants to produce responsive discovery.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court compel Defendants to produce the outstanding discovery sought in Plaintiffs' Eighth and Ninth Requests for Production and to produce it no later than November 17, 2023.

Respectfully submitted,

/s/ *Marcia Robinson Lowry*
Marcia R. Lowry, *admitted pro hac vice*
Julia Tebor, *admitted pro hac vice*
Jonathan Borle, *admitted pro hac vice*
Lindsay Gus, *admitted pro hac vice*
A Better Childhood
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel.: (646) 795-4456
Fax: (212) 692-0415
mlowry@abetterchildhood.org
jtebor@abetterchildhood.org
jborle@abetterchildhood.org
lgus@abetterchildhood.org

/s/ *Richard W. Walters*
Shaffer & Shaffer, PLLC
Richard W. Walters, WVSB #6809
rwalters@shafferlaw.net

J. Alexander Meade, WVSB #13021
ameade@shafferlaw.net
2116 Kanawha Boulevard, East
P.O. Box 3973
Charleston, WV 25339
Tel: (304) 244-8716
Fax: (304) 344-1481

/s/ *J. Marty Mazezka*_____
Disability Rights of West Virginia
J. Marty Mazezka, WVSB #4572
jmazezka@drofwv.org
5088 Washington St. W., Suite 300
Charleston, WV 25301
Tel: (304) 346-0847
Fax: (304) 346-0687

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | | |
|---|---|---|
| Jonathan R., minor by Next | ) | |
| Friend Sarah DIXON, *et al.,* | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| v. | ) | Case No. 3:19-cv-00710 |
| | ) | |
| Jim JUSTICE, in his official capacity as | ) | |
| the Governor of West Virginia, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

## CERTIFICATE OF SERVICE

I, J. Alexander Meade, counsel for Plaintiffs, hereby certify that I have this 13th day of October, 2023, electronically filed "**Plaintiffs' Motion to Compel**" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Philip J. Peisch, Esquire
Caroline M. Brown, Esquire
Julia Siegenberg, Esquire
Brown & Peisch PLLC
1233 20th Street NW, Suite 505
Washington, DC 20001

Steven R. Compton, Esquire
West Virginia Attorney General's Office
812 Quarrier Street, 2nd Floor
Charleston, WV 25301

*/s/ J. Alexander Meade*
J. Alexander Meade (WVSB #13021)