# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

| | | |
|---|---|---|
| Jonathan R., minor, by Next | ) | |
| Friend Sarah DIXON, *et al.* | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:19-cv-00710 |
| | ) | |
| Jim JUSTICE, in his official capacity as the | ) | |
| Governor of West Virginia, *et al.* | ) | |
| Defendants. | ) | |

**PLAINTIFFS' EIGHTH REQUEST FOR**
**PRODUCTION OF DOCUMENTS TO DEFENDANTS**

Plaintiffs hereby request, pursuant to Federal Rules of Civil Procedure 26 and 34, that Defendants produce all the Documents requested below in their possession, custody, or control at the offices of Shaffer & Shaffer PLLC, 330 State Street, Madison, West Virginia 25130, and A Better Childhood, 355 Lexington Avenue, Floor 16, New York, New York 10017, within thirty days (30) after service of this Eighth Request for Production of Documents.

**DEFINITIONS**

1.     "Bureau for Children and Families" or "BCF" means individually and collectively, Bureau for Children and Families, the Bureau for Family Assistance, or the Bureau for Social Services and each of their affiliates, executives, employees, attorneys, representatives, agents, and assigns.

2.     "Caseworker" means a DHHR employee with child protective services, youth services, case management, and/or permanency planning responsibilities that may include but are not limited to (1) investigating reports of child abuse or neglect, (2) assessing threats to children's safety, (3) securing the safety of children and justifying the need for child protective services

1

intervention, (4) completing family functioning assessments, (5) engaging in safety planning, (6) developing and managing in-home and out-of-home case and safety plans for Foster Children in the legal custody of DHHR, (7) facilitating the use of agency and community services to assist Foster Children in the physical and legal custody of DHHR as well as their families, (8) ensuring that services provided to Foster Children in the physical and legal custody of DHHR and their families are in coordination with each child's permanency plan, and (9) completing Concurrent Planning for Foster Children in the physical and legal custody of DHHR.

3.      "Child Placing Agency" means any person, association, or corporation in West Virginia that places or finds homes for children, places or assists in placing children in homes of persons other than relatives, or causes or assists in causing the placement of children for adoption or in another planned permanent living arrangement.

4.      "Communications" includes, but is not limited to, any transmission, conveyance, or exchange of a word, statement, fact, thing, idea, Document, instruction, information, demand, or question by any medium, whether written, oral, or other means (including, but not limited to, electronic communications and electronic mail).

5.      "Concurrent Planning" means the establishment and implementation of a case plan with concurrent permanency goals and supports intensifying and expediting efforts to achieve permanence for a child within one (1) year as provided in DHHR's Foster Care Policy § 4.5, DHHR's Adoption Policy § 4.11, and required by West Virginia Code Chapter 49, Article 4, Part VI and The Adoption and Safe Families Act of 1997. P.L. 105-89 (1997) (providing that "reasonable efforts to place a child for adoption or with a legal guardian may be made concurrently with reasonable efforts to preserve and reunify families").

6.      "Congregate Care Facility" means any group residential home or shelter, residential treatment facility, short- or long-term psychiatric residential treatment facility, or other childcare

institution in which DHHR places Foster Children in the physical and legal custody of DHHR or with which DHHR contracts as an option for placement of Foster Children in the physical and legal custody of DHHR.

7.    "You," "Your," and "Defendants" means any or all the Defendants to this Action, including Governor Jim Justice, Former DHHR Secretary Bill Crouch, Former DHHR Interim Secretary Jeff Coben, DHHR Interim Secretary Sherri Young, Former DHHR Deputy Secretary Jeremiah Samples, DHHR Deputy Secretary Russell Crane, Former Commissioner of the Bureau for Children and Families Linda Watts, Incoming Secretary of the Department of Human Services Cynthia Persily, Commissioner of the Bureau for Social Services Jeffrey Pack, Commissioner of the Bureau for Family Assistance Janie Cole, DHHR, and any later-created entities arising from DHHR's anticipated split, effective January 1, 2024, including the Department of Health, the Department of Human Services, and the Department of Health Facilities.

8.    "Department of Health and Human Resources" or "DHHR" means individually and collectively, Defendant Department of Health and Human Resources, and each of its affiliates, executives, employees, attorneys, representatives, agents, assigns, and any contracting entities, including any Child Placing Agency, Foster Care Placement, or Congregate Care Facility, which are obligated to allow DHHR access to books, documents, papers or other records in order for DHHR to audit, examine, transcribe and copy said documents, and any later-created entities arising from DHHR's anticipated split, effective January 1, 2024, including the Department of Health, the Department of Human Services, and the Department of Health Facilities.

9.    "Disability" means any child that has been diagnosed with any physical, cognitive, developmental, or intellectual disability or any other mental illness, and includes but is not limited to children receiving psychotropic or other medications for their disabilities.

10.    "Documents" means any document or electronically stored information as defined

in Federal Rule of Civil Procedure 34.

11.    "Foster Children in the physical and legal custody of DHHR" means any child in the legal and physical custody of DHHR and in foster care, as defined in the DHHR Foster Care Policy § 1.8.

12.    "Foster Care Placement" means any Foster Family Home, certified or uncertified Kinship Care Placement, Short-Term Emergency Placement, Congregate Care Facility, or any other place where Defendants place Foster Children in the physical and legal custody of DHHR.

13.    "Foster Family Home" means a private residence which is used for the care on a residential basis of no more than six children who are unrelated by blood, marriage, or adoption to any adult member of the household, as defined in the DHHR Foster Care Policy § 1.6.

14.    "Including" means including and but not limited to.

15.    "Kinship Care Placement" means any relative home or home of fictive kin.

16.    "Present" means the present-day, not the date that these requests are served. For example, if a request asks for documents to be produced "in six-month increments from July 1, 2019 to Present" then Defendants should continue to produce supplemental documents every six months for the duration of this litigation.

17.    "Short-Term Emergency Placement" refers to any placement that provides temporary service twenty-four (24) hours a day for not more than thirty (30) consecutive days to any Foster Children in the physical and legal custody of DHHR.

18.    "Therapeutic Foster Home" means any licensed foster home that has a current therapeutic certificate.

## **INSTRUCTIONS**

1.    You shall produce all Documents within Your custody or control.

2.     The use of the singular shall be deemed to include the plural, and the use of masculine, feminine, or neutral genders shall include each gender, as appropriate in context.

3.     You shall construe each request herein independently and not with reference to any other request for the purposes of limitation.

4.     The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

5.     The terms "all," "any," "each," and "every" shall be construed as both "each" and "every" to bring within the scope of the request all responses which might otherwise be construed to be outside of its scope.

6.     The terms "reflect," "reflecting," "related to," "refer to," "relating to," and "referring to," mean relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

7.     To the extent a request seeks information regarding any of the Defendants' Communications, it excludes Communications between Defendants' counsel and Plaintiffs' counsel regarding this litigation.

8.     Documents should be produced pursuant to agreements, stipulations or orders regarding the Collection and Production of Documents and Electronically Stored Information to be entered in this Action.

9.     If You believe that any person or entity might have custody or control of any Document that is not within Your custody or control but is otherwise responsive to any part of this request, You shall state so and shall identify the person or entity that You believe might have custody or control of that Document.

10.     You shall specifically identify the source(s) or derivation(s) of each Document.

11.     You shall produce each Document in its entirety, without abbreviation or redaction.

12.     You shall produce all Documents in the order and manner that they are kept in the usual course of business.  You shall produce all Documents in their original folders, binders, covers, or containers (or You shall provide properly sequenced photocopies thereof).

13.     You shall produce as a separate Document any Document that contains any notation, addition, insertion, or marking of any kind that renders it not entirely identical to a version of that Document without such marks.

14.     If any portion of any Document is responsive to any of these requests, You shall produce the entire Document including, but not limited to, all cover sheets, appendices, or attachments.

15.     If You contend that part of a request is objectionable, You shall state the basis for Your objection with specificity, and You shall respond to that part of the request that You do not contend is objectionable.

16.     If You contend that You do not understand the definition of any term or phrase used in a request, You shall explain in detail what it is that You do not understand about the term or phrase at issue, and You shall respond to that part of the request that You do understand.

17.     If You contend that any part of a request is overbroad, You shall explain in detail why it is that You consider that part of the request to be overbroad, and You shall respond to the remainder of the request that You do not consider to be overbroad.

18.     If no Document exists which is responsive to a particular request, You shall state so.

19.     If, after responding to these requests, You obtain or become aware of any additional Documents that are directly or indirectly responsive to any part of any of these requests, You shall promptly produce any additional responsive Documents.  If, after answering these requests for

production, You learn that any part of any answer or objection to any of these requests is incomplete, incorrect, or improper, You shall promptly provide a supplementary written answer and shall produce any additional responsive Documents.

20.    If any Document covered by these requests is withheld by reasons of a claim of privilege, a log is to be furnished identifying any such Document for which the privilege is claimed by providing the information required by law.

## **TIME PERIOD**

Unless otherwise stated, these Requests cover the period from July 1, 2019 to the Present. Your responses should indicate separately the answer for each year from 2019 through the Present. When a request seeks data in six-month increments, please provide data from a uniform date at the end of each period requested.

## **REQUEST FOR THE PRODUCTION OF DOCUMENTS**

1.    All Documents, including but not limited to current Case Files, Case Files related to any prior CPS cases, CA/N reports, and Information and Referral reports concerning each named Plaintiff child for the entire duration of any and all periods of time during which each named Plaintiff child has been in the physical and legal custody of DHHR including abuse and neglect reports and any other reports prior to entering legal and physical custody of the State. This Request includes, but is not limited to, Documents located in FACTS, and FACTS Plus DHHR's Statewide Automated Child Welfare Information System. This Request includes Case Files for Plaintiffs Chris K., Calvin K., and Caroline K. Indeed, if Plaintiffs prevail in obtaining class certification, then "the certification 'will relate back to the filing of the complaint,' preserving [these] Plaintiffs' class claims." *Jonathan R. v. Justice*, 41 F.4th 316, 326 (4th Cir. 2022).

2.    Documents sufficient to show (1) the number of Foster Children in the physical and legal custody of DHHR, and (2) their placement type, including separately but not limited to, the number

of children placed in (a) temporary shelters, (b) hotels, (c) Defendants' offices, (d) residential treatment facilities, (e) group residential facilities, (f) intermediate care facilities for individuals with intellectual disabilities, (g) psychiatric residential treatment facilities, (h) Foster Family Homes, (i) Therapeutic Foster Homes, (j) certified Kinship Care Placements, and (k) uncertified Kinship Care Placements, in six-month increments from July 1, 2019 to Present.

3.    Documents sufficient to show (1) the number of Foster Children in the physical and legal custody of DHHR who have been placed in an out-of-state Congregate Care Facility, (2) the name of the facility, and (3) the length of the child's stay in that residential facility, in six-month increments from July 1, 2019 to Present.

4.    Documents sufficient to show (1) the number of Foster Children in the physical and legal custody of DHHR who have been legally freed for adoption (as distinguished from the number of children who have been adopted), (2) the length of time those Foster Children had been in the custody of the State before being legally freed for adoption, and (3) the length of time those Foster Children have remained in the custody of the State since being legally freed for adoption, in six-month increments from July 1, 2019 to Present.

5.    All policies and procedures, as of July 17, 2023, concerning Defendants' compliance with Sec. 103(a)(E) of Pub. L. No. 105-89, 111 Stat. 2115 (1997) (the "15/22" provision of the Adoption and Safe Families Act (ASFA)) including but not limited to Defendants' practices for freeing children for adoption, and for filing termination of parental rights petitions.

6.    All policies and procedures, as of July 17, 2023, concerning Caseworker caseload distribution and caseload standards, including caseload standards for each type of Caseworker employee position, which includes but is not limited to foster care Caseworkers, child protective services Caseworkers, and Caseworker supervisors, and caseload standards related to pre-custodial cases and custodial cases.

8

7.      All Communications concerning caseload distribution, caseload standards, and Caseworkers carrying caseloads above any caseload standards, from July 1, 2019 to Present.

8.      Documents sufficient to show the distribution of cases and the number of cases carried by individual Caseworkers, including but not limited to foster care Caseworkers and Caseworker supervisors (i.e. the number of caseworkers who carry one case, the number of caseworkers who carry two cases, etc.), in six-month increments from July 1, 2019 to Present.

9.      Documents sufficient to show what constitutes a "case" for purposes of calculating caseloads, including whether cases are calculated on a per-family basis, per-child basis, or some other metric for both pre-custodial and in-custody children.

10.     Documents sufficient to show (1) the number of Caseworkers that carried caseloads above, at, and below any caseload standards and (2) regarding Caseworkers who carried caseloads above any caseload standard, the number of cases by which each Caseworker exceeded the caseload standard, in six-month increments for the period of July 1, 2019 to Present.

11.     All policies and procedures, as of July 17, 2023, concerning Defendants' training requirements for Caseworkers and supervisors, including any training that is required before Caseworkers are assigned a caseload. This Request also seeks policies and procedures detailing the length of time for any required training.

12.     All Documents and Communications concerning prior audits and reports related to the West Virginia child welfare system, including but not limited to, any comments or memoranda concerning the reports and audits from July 1, 2019 to Present. This Request includes but is not limited to (1) legislative foster care and child welfare reports, (2) the audits conducted by the Performance Evaluation & Research Division of the West Virginia Legislatures Office, and (3) DHHR's semi-annual progress reports relating to foster care and child welfare reports.

13.     Documents sufficient to show the number of Foster Children in the physical and legal

custody of DHHR that have a founded or substantiated report of maltreatment, broken down by placement type, including but not limited to (1) a Foster Family Home, (2) a certified Kinship Care Placement, (3) an uncertified Kinship Care Placement, (4) a group or other residential facility in West Virginia, and (5) a group or other residential facility outside of the State of West Virginia, in six-month increments from July 1, 2019 to Present.

14.    All Communications concerning Foster Children in the physical and legal custody of DHHR that have a founded or substantiated report of maltreatment, from July 1, 2019 to Present.

15.    Documents sufficient to show the number of Foster Children in the physical and legal custody of DHHR that have an unfounded or unsubstantiated report of maltreatment, broken down by placement type, including but not limited to (1) a Foster Family Home, (2) a certified Kinship Care Placement, (3) an uncertified Kinship Care Placement, (4) a group or other residential facility in West Virginia, and (5) a group or other residential facility outside of the state of West Virginia, in six-month increments from July 1, 2019 to Present.

16.    All Communications concerning Foster Children in the physical and legal custody of DHHR that have an unfounded or unsubstantiated report of maltreatment, from July 1, 2019 to Present.

17.    All Documents and Communications concerning compliance with the national standards measured by the Child and Family Services Reviews, from July 1, 2019 to Present.

18.    All policies and procedures, as of July 17, 2023, concerning any limitations or restrictions on the placement of children in a Foster Care Placement, including but not limited to, limitations or restrictions based on the age of the child, the specific type of Foster Care Placement, the number of children (both foster and biological) in the placement, and the steps that are taken when a placement exceeds or does not comply with such limitations or restrictions.

19.    Documents sufficient to show the number of Foster Care Placements that were not compliant with Defendants' policies and procedures regarding restriction or limitations on Foster Care

10

Placements, including but not limited to restrictions or limitations based on the child's age, or the maximum number of children that may reside in a Foster Care Placement, or the type of children who may reside in a specific Foster Care Placement, in six-month increments from July 1, 2019 to Present.

20.     Documents sufficient to show (1) the number of Foster Children in the physical and legal custody of DHHR who had been placed into a Short-Term Emergency Placement at any time during their custodial period, (2) the number of Short-Term Emergency Placements that they had been placed in, and (3) the length of time that they remained in each placement, in six-month increments from July 1, 2019 to Present.

21.     Documents sufficient to show the number of Foster Children in the physical and legal custody of DHHR who were placed in each type of Short-Term Emergency Placement, including but not limited to (1) temporary shelters, (2) hotels, and (3) DHHR offices, in six-month increments from July 1, 2019 to Present.

22.     All Communications concerning West Virginia's Adoption and Foster Care Analysis and Reporting System reports (the "AFCARS reports") from July 1, 2019 to Present.

23.     All Documents and Communications concerning any of West Virginia's AFCARS Frequency Reports, including copies of those reports, from July 1, 2019 to Present.

24.     All policies and procedures, as of July 17, 2023, concerning the visitation of Foster Children in the physical and legal custody of DHHR with their biological parents, siblings, other family members, or close friends.

25.     All policies and procedures, as of July 17, 2023, concerning the placement of children in the physical and legal custody of DHHR in Congregate Care Facilities, including but not limited to (1) residential treatment facilities, (2) group residential facilities, (3) intermediate care facilities for individuals with intellectual disabilities, (4) psychiatric residential treatment facilities, and (5) out-of-state residential facilities.

11

26.     All policies and procedures, as of July 17, 2023, concerning the placement of children in the physical and legal custody of DHHR in Short-Term Emergency Placements, including but not limited to (1) temporary shelters, (2) hotels, and (3) Defendants' offices.

27.     Documents sufficient to show the number of licensed homes, including Kinship Care Placements and Family Foster Homes, that received their license from a Child Placing Agency and the number of licensed homes that received their license directly from DHHR, in six-month increments from July 1, 2019 to Present.

28.     All policies and procedures, as of July 17, 2023, concerning Defendants' preparation and review of case plans including but not limited to those for (1) Foster Children and (2) Foster Children's biological parents.

29.     All Documents and Communications concerning Defendants' preparation and review of case plans including but not limited to those for (1) Foster Children and (2) Foster Children's biological parents, from July 1, 2019 to Present.

30.     All policies and procedures, as of July 17, 2023, concerning the administration of psychotropic medications to Foster Children in the physical and legal custody of DHHR, including but not limited to, approval and oversight of the administration of psychotropic medications to children, the process for obtaining consent to administer psychotropic medications to children, and the prescription and administration of psychotropic medications to children.

31.     Documents sufficient to show the number of Foster Children in the physical and legal custody of DHHR who are prescribed psychotropic medications, broken down by (1) ages 0-6, (2) ages 6-10, (3) ages 10-14, and (4) ages 14-21, in six-month increments from July 1, 2019 to Present.

32.     Documents sufficient to show the number of Foster Children in the physical and legal custody of DHHR who are prescribed (1) 0-2 psychotropic mediations, (2) 2-4 psychotropic mediations, and (3) more than 4 psychotropic mediations, in six-month increments from July 1, 2019

to Present.

33.    All Communications concerning the administration of psychotropic medications to Foster Children in the physical and legal custody of DHHR, from July 1, 2019 to Present.

34.    All policies and procedures, as of July 17, 2023, concerning the process around the placement and approval of such placement of Foster Children in the physical and legal custody of DHHR into uncertified Kinship Care Placements, including but not limited to any (1) home inspection, (2) required background checks, (3) training, (4) required ongoing casework and supervision, and (5) required Caseworker visits to the child.

35.    All Communications concerning the process around placement and approval of such placement of Foster Children in physical and legal custody of DHHR into uncertified Kinship Care homes including but not limited to any (1) home inspection, (2) required background checks, (3) training, (4) required ongoing casework and supervision, and (5) required Caseworker visits to the child, from July 1, 2019 to present.

36.    All policies and procedures, as of July 17, 2023, concerning the process around placement and approval of placement of Foster Children in the custody of DHHR into certified Kinship Care homes including but not limited to (1) the home inspections, (2) required background checks, (3) training, (4) required ongoing casework and supervision, and (5) required visits by the caseworker to the child.

37.    All Communications concerning the process around placement and approval of placement of Foster Children in the custody of DHHR into either certified Kinship Care Placements or uncertified Kinship Care Placements, including but not limited to (1) the home inspections, (2) required background checks, (3) training, (4) required ongoing casework and supervision, and (5) required visits by the caseworker to the child, from July 1, 2019 to Present.

38.    Documents sufficient to show the number of Foster Children in the physical and legal

custody of DHHR who have been placed into either a certified or uncertified Kinship Care Placement subject to a waiver by a DHHR supervisor related to any aspect of the placement, including but not limited to, the (1) home inspection, (2) training, or (3) background checks of any adult occupant of the home, in six-month increments from July 1, 2019 to Present.

39.    All Communications concerning Foster Children in the physical and legal custody of DHHR who have been placed into either a certified or uncertified Kinship Care Placement subject to a waiver by a DHHR supervisor related to any aspect of the placement, including but not limited to, the (1) home inspection, (2) training, or (3) background checks of any adult occupant of the home.

40.    Documents sufficient to show the total number of placements for each Foster Child in the physical and legal custody of DHHR, as of July 17, 2023, who has been in custody for 0-12 months, broken down by those who have had (1) one placement, (2) two placements, (3) three placements, and (4) four or more placements.

41.    Documents sufficient to show the total number of placements for each Foster Child in the physical and legal custody of DHHR, as of July 17, 2023, who has been in custody for 12-24 months, broken down by those who have had (1) one placement, (2) two placements, (3) three placements, and (4) four or more placements.

42.    Documents sufficient to show the total number of placements for each Foster Child in the physical and legal custody of DHHR, as of July 17, 2023, who has been in custody for 24-36 months, broken down by those who have had (1) one placement, (2) two placements, (3) three placements, and (4) four or more placements.

43.    Documents sufficient to show the total number of placements for each Foster Child in the physical and legal custody of DHHR, as of July 17, 2023, who has been in custody for over 36 months, broken down by those who have had (1) one placement, (2) two placements, (3) three placements, and (4) four or more placements.

44.    All Documents developed by the BCF Division of Planning and Quality Improvement ("DPQI"), or under its auspices, related to DPQI's district-level reviews in all jurisdictions in the State, from January 1, 2019 to Present.

45.    Documents sufficient to identify all Foster Children in the physical and legal custody of DHHR that are placed in an in-state Congregate Care Facility including the (1) name of the corresponding facility, (2) level of the facility, and (3) length of the child's stay in that facility, in six-month increments from July 1, 2019 to Present.

46.    Documents sufficient to identify all Foster Children in the physical and legal custody of DHHR that are placed in an out-of-state Congregate Care Facility including the (1) name of the corresponding facility, (2) length of the child's stay in that facility, and (3) the facility's complete daily per child rate (including the cost of medical, residential, educational, and other services paid for by the State of West Virginia),  in six-month increments from July 1, 2019 to Present.

47.    Documents sufficient to identify all Foster Children in the physical and legal custody of DHHR that have been placed in an in-state Congregate Care Facility for a period of (1) 0 to 6 months, (2) 6 months to 12 months, (3) 12 months to 18 months, (4) 18 months to 24 months, and (5) over 24 months, including the name and type of the corresponding facility, in six-month increments from July 1, 2019 to Present.

48.    Documents sufficient to identify all Foster Children in the physical and legal custody of DHHR that have been placed in an out-of-state Congregate Care Facility for a period of (1) 0 to 6 months, (2) 6 months to 12 months, (3) 12 months to 18 months, (4) 18 months to 24 months, and (5) over 24 months, including the name and type of the corresponding facility, in six-month increments from July 1, 2019 to Present.

49.    All Communications concerning Foster Children in the physical and legal custody of DHHR that have been placed in an in-state Congregate Care Facility or an out-of-state Congregate

15

Care Facility, from July 1, 2019 to Present.

50.    All policies and procedures, as of July 17, 2023, concerning ratios of Caseworkers to their supervisors, by type of Caseworker employee position, including but not limited to Foster Care Caseworkers and child protective services Caseworkers.

51.    Documents sufficient to show the number of supervisors of Caseworkers who supervise more Caseworkers than allowed, including the number of supervisors who exceed the Caseworker to supervisor ratio, if one exists, (1) by 1 case, (2) by 2 cases, (3) by 3 cases, (4) by 4 cases, (5) by 5 cases, and (6) by more than 5 cases, in six-month increments from July 1, 2019 to Present.

52.    All policies and procedures, as of July 17, 2023, concerning caseworker contact with Foster Children in the physical and legal custody of DHHR including requirements to visit the child face-to-face (in person) in general, face-to-face in the placement, and any other required contact.

53.    Documents sufficient to show, and all Communications concerning, the frequency of monthly face-to-face Caseworker visits with individual Foster Children in the physical and legal custody of DHHR who were placed in an in-state Foster Family Placement, in six-month increments from July 1, 2019 to Present.

54.    Documents sufficient to show, and all Communications concerning, the frequency of monthly face-to-face Caseworker visits with individual Foster Children in the physical and legal custody of DHHR who are or were placed in an in-state certified Kinship Care Placement, in six-month increments from July 1, 2019 to Present.

55.    Documents sufficient to show, and all Communications concerning, the frequency of monthly face-to-face Caseworker visits with individual Foster Children in the physical and legal custody of DHHR who are or were placed in an in-state uncertified Kinship Care Placement, in six-month increments from July 1, 2019 to Present.

16

56.    Documents sufficient to show, and all Communications concerning, the frequency of monthly face-to-face Caseworker visits with individual Foster Children in the physical and legal custody of DHHR who are or were placed in an in-state Congregate Care Facility, in six-month increments from July 1, 2019 to Present.

57.    Documents sufficient to show, and all Communications concerning, the frequency of monthly face-to-face Caseworker visits with individual Foster Children in the physical and legal custody of DHHR who are or were placed in Short-Term Emergency Placement, in six-month increments from July 1, 2019 to Present.

58.    Documents sufficient to show, and all Communications concerning, the frequency of monthly face-to-face Caseworker visits with individual Foster Children in the physical and legal custody of DHHR who are or were placed in an out-of-state Congregate Care Facility and the percentage of time (1) the Caseworker was employed by DHHR and was the child's primary Caseworker, (2) the Caseworker was employed by DHHR, but was not the child's primary Caseworker, (3) the Caseworker was not a full-time DHHR employee but rather contracted with DHHR to provide out-of-state services, and (4) the Caseworker was an out-of-state Caseworker, in six-month increments from July 1, 2019 to Present

59.    Documents sufficient to show the frequency of family visits facilitated by DHHR of Foster Children in the physical and legal custody of DHHR who are or were placed in an out-of-state Congregate Care Facility, in six-month increments from July 1, 2019 to Present.

60.    Documents sufficient to show the frequency of face-to-face Caseworker contact with the biological parents or other legal guardians (from whom the Foster Children were removed), whose children are Foster Children in the physical and legal custody of DHHR, in six-month increments from July 1, 2019 to Present.

61.    Documents sufficient to show the number of investigations of maltreatment in licensed

Foster Care Placements, including whether the investigations of maltreatment resulted in any findings, home closings, or removals, broken down by placement type including, but not limited to (1) Foster Family Homes, (2) certified Kinship Care Placements, (3) uncertified Kinship Care Placements, (4) in-state Congregate Care Placements, (5) Short-Term Emergency Placements, and (6) out-of-state Congregate Care Placements, in six-month increments from July 1, 2019 to Present.

62.    All Communications concerning investigations of maltreatment in any Foster Care Placement, including Communications regarding any findings, home closings, or removals of children from those placements, from July 1, 2019 to Present.

63.    Documents sufficient to show the number of Foster Children in the physical and legal custody of DHHR receiving services or treatment for a Disability, including but not limited to the number of Foster Children (1) placed in a Therapeutic Foster Home, including designation of the specific Therapeutic Foster Home tier, (2) receiving regular medical services, including but not limited to physical or occupational therapy, (3) receiving mental health services, including but not limited to counseling services, and (4) receiving psychotropic medication(s), in six-month increments from July 1, 2019 to Present.

64.    All policies  and  procedures, as of July 17, 2023, concerning the assignment and matching of Foster Children in the physical and legal custody of DHHR to Foster Care Placements or to adoptive placements, including any supervisory oversight and/or documentation required to ensure that the matching directives have been followed.

65.    All policies  and  procedures, as of July 17, 2023, concerning required Caseworker contact during a trial discharge (also known as a "trial home visit") of a child after that child is returned to the caregiver from whom the child was removed pursuant to a reunification plan, including (1) the frequency of required contact, (2) whether the Caseworker must make face-to-face contact with the child, the caregiver, or both, and (3) the length of time the child remains on trial discharge or is

otherwise subject to continued oversight.

66.    Documents sufficient to show the number of children who re-entered foster care after having been on a trial discharge, in six-month increments from July 1, 2019 to Present.

67.    Documents sufficient to show the frequency of face-to-face Caseworker contacts with caregivers and children who were on a trial discharge or were subject to continued oversight, (1) for the first 30 days, (2) for the first 60 days, (3) for the first 90 days, and (4) for any period of time beyond 90 days following reunification of the child with the caregiver from whom the child was removed, from July 1, 2019 to Present.

68.    All Communications concerning face-to-face Caseworker contacts with caregivers and children who were on trial discharge or were subject to continued oversight, from July 1, 2019 to Present.

69.    All Communications concerning Foster Children who re-entered foster care after having been on a trial discharge, from July 1, 2019 to Present.

70.    All responses to and/or Communications concerning the West Virginia legislature's January 2, 2023 letter to Former DHHR Interim Secretary Jeff Coben.


Dated: July 20, 2023

/s/ Marcia Robinson Lowry
Marcia Robinson Lowry, *admitted pro hac vice*
Julia K. Tebor, *admitted pro hac vice*
Jonathan Borle, *pro hac vice pending*
Lindsay Gus, *pro hac vice pending*
A Better Childhood
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel.: (646) 795-4456
Fax: (212) 692-0415
mlowry@abetterchildhood.org
jtebor@abetterchildhood.org

jborle@abetterchildhood.org
lgus@abetterchildhood.org


*/s/ Richard W. Walters*
Shaffer & Shaffer, PLLC
Richard W. Walters, WVSB #6809
rwalters@shafferlaw.net
J. Alexander Meade, WVSB #13021
ameade@shafferlaw.net
2116 Kanawha Boulevard, East
P.O. Box 3973
Charleston, WV 25339
Tel: (304) 344-8716
Fax: (304) 344-1481

*/s/ J. Marty Mazezka*
Disability Rights of West Virginia
J. Marty Mazezka, WVSB #4572
jmazezka@drofwv.org
1207 Quarrier Street, Suite 400
Charleston, WV 25301
Tel: (304) 346-0847
Fax: (304) 346-0687