# EXHIBIT 7

October 13, 2023

**Via Email**

Philip J. Peisch
Brown & Peisch, PLLC
1233 20th Street NW
Suite # 505
Washington, DC 20036

`                Re:     *Jonathan R., et al., v. Justice, et al.,* No. 3:19-cv-00710
                             Plaintiffs' Response to Defendants' ESI Proposal and
                             Spoliation of Evidence

Counsel:

       Plaintiffs write to address Defendants' letter dated October 6, 2023 (the "October 6 Letter"). In their October 6 Letter, Defendants proposed a compromise regarding the production of ESI and informed Plaintiffs of the spoliation of significant evidence.[1]

       Plaintiffs have serious concerns about the spoliated ESI, particularly as it concerns several custodians who had received a litigation hold notice (and whom had also been subject to prior document discovery), including two named defendants, one of whom was the head of DHHR. And while Plaintiffs appreciate that Defendants are willing to produce a large volume of documents, Plaintiffs are concerned that the timing of that production does not allow Plaintiffs to comply with the current Court-ordered schedule. Moreover, Plaintiffs require Governor Justice's emails, even if monitored by staff, as he is a named defendant and cannot escape discovery obligations merely because he has others to assist in monitoring emails. We also have questions about whether he uses another, perhaps personal email or one kept in someone else's name to conduct his duties as governor.

**I.     Defendants' Spoliated ESI**

       Plaintiffs are deeply concerned that Defendants deleted PST files for 12 custodians. Especially since six of those custodians had been identified as custodians in prior searches, five of those custodians were subject to a litigation hold, and two of the custodians (Bill Crouch and Linda Watts) are named defendants in this lawsuit and were both responsible for significant aspects of the child welfare system, particularly those relating to how the child welfare agency was run. Moreover, Defendants also appear to have deleted PST files for Jeff Coben during his time as interim Secretary, when there may well have been planning activities with regard to how the child welfare agency would deal with the many challenges confronting it.

---

[1] Defendants' letter responds to Plaintiffs proposed ESI search terms, along with a list of 40 custodians, which Plaintiff provided to enable Defendants to produce documents responsive to Plaintiffs' 7th, 8th, and 9th Requests for Production.




Defendants have not adequately explained how such a mishap occurred—particularly since it concerns several high-ranking officials within DHHR. And the fact that Defendants have preserved partial PST files for some of these individuals does little to mitigate the issue. Indeed, the most recent ESI in these partial PST files is more than three years old.

Plaintiffs are severely prejudiced because of this spoliation. Particularly since this issue involves arguably the most important custodians in this lawsuit, including, two former DHHR secretaries (Crouch and Coben) and a BCF commissioner (Watts). Reviewing these custodians' ESI is essential to Plaintiff being able to prove (among other things) deliberate indifference.

To remedy this, the Plaintiffs intend to file a Motion for Sanctions, seeking relief including but not limited to a court order precluding any defense that these officials <u>did not</u> act with deliberate indifference to the violations of foster children's substantive due process rights.

## II.     Governor Justice's ESI

Defendants state in the October 6 Letter that they will not produce emails for Governor Justice, a named defendants because he "does not use email." As an initial matter, Plaintiffs find it hard to believe that the Governor does not use or read emails and Defendants should provide more information regarding how the Governor is informed of important information regarding West Virginia. Moreover, Defendants acknowledge that the Governor's office utilizes an email address that is monitored by his constituent services staff. Since Governor Justice is able to read these emails and they are monitored by his employees who presumably relay the information therein to Governor Justice, they remain relevant to this lawsuit and to whether Governor Justice acted with deliberate indifference.

Moreover, the Governor's constituent services staff members have their own individual email addresses, which may also be relevant to the issues in this case to the extent they reflect the Governor's personal knowledge and decision-making with respect to the relevant issues in this case.

In light of this, Plaintiffs request that Defendants produce ESI from the Governor's office email address, as well as from certain individual email addresses of his constituent services staff members. In addition, we have questions about how the Governor performed his job without the use of any emails, whether he relied on other emails to which his name was not affixed, and whether there were other emails that he used that were known to be a way of reaching him. Plaintiffs are willing to have a discussion on how to appropriately narrow this request as it pertains to individual staff members and, perhaps to other email addresses.

## III.    Production of Defendants' "Compromise Proposal for ESI"

Plaintiffs appreciate Defendants' willingness to search the terms and the majority of custodians requested by Plaintiffs. Plaintiffs also agree with Defendants that it is more time-efficient for Defendants to review these documents using "predictive coding" (*i.e.,* "technology assisted review" or "TAR").

  

To that end, Plaintiffs have reviewed Defendants' proposed Second Amended Protective Order as well as the proposed Amended Order Governing the Inadvertent Disclosure of Documents or Other Material Under Rule 502(b). Plaintiffs agree to the edits proposed by Defendants.

However, as addressed above, Plaintiffs are concerned regarding the timing of Defendants' production. Given the February 12, 2024, discovery cut-off, Plaintiffs are concerned that there will not be enough time to review this discovery in time for use in depositions.[2] To keep pace with the rapidly approaching Court-ordered case deadlines, Plaintiffs believe it is paramount that Defendants complete the substantial production of these documents by **November 17, 2023**.

Since Defendants intend to review these documents using "predictive coding," Plaintiffs do not understand why Defendants would need until December 1, 2023 for a substantial production. Even so, Plaintiffs are open to a discussion on how to limit discovery (*e.g.,* by narrowing search terms or custodians) if it would shorten Defendants' current production timeline.

IV.    **Production of Sample Case Files in Response to Plaintiffs' 10th RFP**

In Plaintiffs' 10th Request for the Production of Documents, they asked for a sampling of certain case files, which Defendants agreed to produce. Defendants have not yet produced these documents or provided any information about the timing of such a production. Defendants should begin producing these case files immediately and complete production by no later than **November 17, 2023.**

Sincerely,

Marcia Robinson Lowry
A Better Childhood
355 Lexington Avenue, Fl. 16
New York, NY 10017
Tel.: (646) 795-4456
Fax: (212) 692-0415
mlowry@abetterchildhood.org

Cc:    Caroline M. Brown
       Rebecca E. Smith
       Julia Siegenberg
       Brown & Peisch PLLC

---

[2] Plaintiffs remain concerned even if the parties negotiate an amended discovery schedule.





Steven R. Compton
West Virginia Attorney General's Office

*Attorneys for Defendants*

