UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | | |
|---|---|---|
| **Jonathan R., minor, by Next Friend, Sarah DIXON, *et al.*,** | ) ) ) ) | |
| Plaintiffs, | ) ) | Class Action 3:19-cv-00710 |
| v. | ) ) | |
| **Jim JUSTICE, in his official capacity as the Governor of West Virginia, *et al.*,** | ) ) ) ) | |
| Defendants. | ) | |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS

In response to Plaintiffs' recent discovery requests for electronically-stored information ("ESI"), Defendants informed Plaintiffs that the Department of Health and Human Resources ("DHHR") destroyed approximately three years' worth of emails belonging to twelve former DHHR employees, including two named Defendants—former DHHR Cabinet Secretary Bill Crouch and former Commissioner of DHHR's Bureau for Children and Families Linda Watts— that were sent or received after September 2020. With respect to seven of these custodians, Defendants also failed to preserve any emails sent or received before September 2020.

Defendants' destruction of crucial evidence has severely prejudiced Plaintiffs' ability to prove the deliberate indifference element of their substantive due process claims. To cure this prejudice, Plaintiffs respectfully request that the Court issue appropriate sanctions, including that the Court: (1) declare that Plaintiffs have established the deliberate indifference element of their substantive due process claims against DHHR and the named DHHR Defendants and their

1

successors (hereinafter "DHHR Defendants"); (2) preclude Defendants from moving for summary judgment on the deliberate indifference element of Plaintiffs' substantive due process claims with respect to the DHHR Defendants; and (3) preclude Defendants from arguing that the deleted ESI would have shown that the DHHR Defendants did not act with deliberate indifference.

## BACKGROUND

Plaintiffs filed the Complaint on September 30, 2019, naming in relevant part, DHHR, DHHR Cabinet Secretary Bill Crouch, Commissioner of DHHR Bureau for Children and Families Linda Watts, and DHHR Deputy Secretary Jeramiah Samples. *See* Compl., ECF No. 1. All named Defendants were sued in their official capacities.[1] *Id.*

On December 3, 2019, Plaintiffs served Defendants with their First Request for Production ("RFP"). On January 14, 2020, Defendants identified custodians and search terms that would be responsive to Plaintiffs' requests for ESI. *See* Ex. 1. In addition to named Defendants Bill Crouch, Linda Watts, and Jeremiah Samples, Defendants identified Susan Richards, Amy Hymes, Tanny O'Connell, Tina Mitchell, Janie Cole, and Kevin Henson as relevant custodians. *See id.* Plaintiffs responded on January 17, 2020 and proposed adding four more custodians. *See id.*

---

[1] Defendant Crouch left his position on December 31, 2022. *See* Letter from Bill Crouch, to Jim Justice, State of W. Va. Dep't of Health & Human Resources (Dec. 12, 2022), https://www.documentcloud.org/documents/23438198-dhhr-secretary-crouch-retirement-letter. He was replaced by Jeff Coben, who served as Interim DHHR Secretary until July 5, 2023. Press Release, W. Va. Dep't of Health & Human Resources, Gov. Justice thanks Dr. Jeff Coben for his service; announces progress on transition to three departments (June 29, 2023). Sherri Young replaced Coben on July 5, 2023. *Id.* Defendant Watts left her position on July 15, 2021 and was replaced by Cammie Chapman. Press Release, W. Va. Dep't of Health & Human Resources, Cammie Chapman Named Interim Commissioner for DHHR's Bureau for Children and Families (July 16, 2021). Jeffrey Pack replaced Chapman effective August 2, 2021. Press Release, W. Va. Dep't of Health & Human Resources, Jeffrey Pack Named Commissioner for DHHR Bureau for Social Services (July 22, 2021). Defendant Samples left DHHR in April 2022. Steven Allen Adams, *Longtime West Virginia DHHR official Jeremiah Samples fired*, THE PARKERSBURG NEWS AND SENTINEL (Apr. 9, 2022), https://www.newsandsentinel.com/news/local-news/2022/04/longtime-west-virginia-dhhr-official-jeremiah-samples-fired/.

On February 20, 2020, Plaintiffs served Defendants with their Second RFP. The parties communicated about the ESI requests contained in Plaintiffs' Second RPF, and on September 17, 2020, Plaintiffs emailed Defendants with a list of custodians for Defendants' ESI production. The custodians included, in relevant part, Bill Crouch, Linda Watts, Tanny O'Connell, Kevin Henson, and Laura Barno. *See* Ex. 2.

In response to Plaintiffs' First and Second RFPs, Defendants produced emails containing the agreed-upon search terms from various DHHR employees' email accounts, including emails from the accounts of Crouch, Watts, O'Connell, Henson, and Barno. *See* Decl. of Marcia Robinson Lowry at 1.

In July and August of 2023, Plaintiffs served their Seventh, Eighth, and Ninth RFPs on Defendants. Plaintiffs sent Defendants a list of search terms and custodians for ESI requests in the Seventh and Eighth RFPs on September 5, 2023, *see* Ex. 3, and for ESI requests in the Ninth RFP on September 6, 2023, *see* Ex. 4. In total, Plaintiffs requested ESI from forty custodians. Among these custodians were named Defendants Bill Crouch and Linda Watts; Jeff Coben; Kevin Henson; Laura Barno; Tanny O'Connell; Jane McCallister; Bea Bailey; Jolynn Marra; Mischelle Williams; Pam Holt; and Warren Keefer.[2]

On October 6, 2023, Defendants sent Plaintiffs a letter stating:

> Unfortunately, in retrieving emails for the custodians requested by Plaintiffs, Defendants' counsel discovered that the West Virginia Office of Technology ("OT") did not preserve PST files for several custodians formerly employed by DHHR. Instead, they were automatically deleted 30 days after the termination of employment, which is OT's standard and automated practice for individuals

---

[2] According to DHHR's October 25, 2019 organizational chart, Kevin Henson was the Assistant Commissioner of the Office of Planning, Research & Evaluation; Laura Barno was the Director of Family First; Tanny O'Connell was the Deputy Commissioner of the Office of Field Operations North; Jane McCallister was the Director of Planning & Quality Improvement; Bea Bailey was the DHHR Executive Secretary; Jolynn Marra was the Interim Inspector General; Mischelle Williams was the Director of Human Resources Management; Pam Holt was the Director of Human Resources; and Warren Keefer was the Chief Operating Officer. *See* Ex. 5.

leaving state employment. Some of these custodians were subject to a litigation hold, and Defendants are still attempting to determine why these files were not preserved.

Ex. 6 at 2. Defendants stated that all emails tied to the accounts of Jeff Coben, Jane McCallister, Bea Bailey, Jolynn Marra, Mischelle Williams, Pam Holt, and Warren Keefer had been deleted. Of these custodians, Jane McCallister was subject to a litigation hold. *Id.* While Jeff Coben, who replaced named Defendant Bill Crouch, should have been subject to a litigation hold, Defendants stated that he "was not substituted as a custodian for Bill Crouch when he was appointed." *Id.*

Additionally, DHHR failed to preserve emails tied to the accounts of Bill Crouch, Linda Watts, Kevin Henson, Laura Barno, and Tanny O'Connell that post-dated September 2020, which is when Defendants initially produced emails from these individuals' accounts pursuant to the terms and custodians discussed in January and September 2020. According to Defendants, all these custodians except Laura Barno were subject to a litigation hold. *Id.*

In response to Defendants' shocking revelation, Plaintiffs sent Defendants a letter on October 13, 2023 stating their intent to seek sanctions due to Defendants' spoliation of significant evidence. *See* Ex. 7 at 1-2.

## LEGAL STANDARD

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. GMC*, 271 F.3d 583, 590 (4th Cir. 2001) (citation omitted).

The Court's authority to levy sanctions on a spoliator derives primarily from (1) "the 'court's inherent power to control the judicial process and litigation, a power that is necessary to redress conduct which abuses the judicial process'" and (2) Rule 37(e) of the Federal Rules of Civil Procedure, which governs spoliation of ESI. *GMS Indus. Supply, Inc. v. G&S Supply, LLC*,

4

No. 2:19-cv-324 (RCY), 2022 U.S. Dist. LEXIS 51658, at *10 (E.D. Va. Mar. 22, 2022) (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 505 (D. Md. 2009) (citation omitted)); *see, e.g.*, *Silvestri*, 271 F.3d at 590 ("The policy underlying this inherent power of the courts is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth.").

Under Rule 37(e), "[m]ovants must establish four threshold requirements 'before a court decides if any spoliation sanction is appropriate: (1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery.'" *GMS Indus.*, 2022 U.S. Dist. LEXIS 51658, at *10 (quoting *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 103 (E.D. Va. 2018) (citation omitted)). Plaintiffs bear the burden of establishing Defendants' spoliation of evidence. *See, e.g.*, *Eller v. Prince George's Cnty. Pub. Sch.*, No. TDC-18-3649, 2020 U.S. Dist. LEXIS 234367, at *19 (D. Md. Dec. 11, 2020).

If all four requirements have been satisfied, the Court may issue sanctions pursuant to either Rule 37(e)(1) or (2). *See* Fed. R. Civ. P. 37(e). A court has broad discretion in choosing the sanctions to impose, which can "rang[e] from dismissal or judgment by default, preclusion of evidence, imposition of an adverse inference, or assessment of attorney's fees and costs." *GMS Indus.*, 2022 U.S. Dist. LEXIS 51658, at *11 (quoting *Goodman*, 632 F. Supp. at 505 (citation omitted)). "While a district court has broad discretion in choosing an appropriate sanction for spoliation, 'the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.'" *Silvestri*, 271 F.3d at 590 (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). "[A]n important goal of any sanction should be 'to level "the evidentiary playing field."'" *Butler v. Kroger Ltd. P'ship I*, No.

5

2:19-cv-673, 2020 U.S. Dist. LEXIS 241307, at *25 (E.D. Va. Nov. 30, 2020) (quoting *Silvestri*, 271 F.3d at 590) (citations omitted).

Pursuant to Rule 37(e)(1), the Court, "upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). "Spoliation of evidence causes prejudice when, as a result of the spoliation, the party claiming spoliation cannot present 'evidence essential to its underlying claim.'" *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532 (D. Md. 2010) (citation omitted). "The court considers prejudice to the party and 'prejudice to the judicial system.'" *Id.* (citation omitted).

For the Court to issue sanctions under Rule 37(e)(2), it must find "that the party acted with the intent to deprive another party of the [spoliated] information's use in the litigation." Fed. R. Civ. P. 37(e)(2). If the Court finds that the spoliator acted intentionally, it may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2). "The Fourth Circuit has not spoken about the level of intent that a court must find to impose a sanction under Rule 37(e)(2)." *GMS Indus.*, 2022 U.S. Dist. LEXIS 51658, at *19-20 (quoting *Steves*, 327 F.R.D. at 110 (citation omitted)). "However, cases preceding the 2015 amendments to Rule 37 indicate that the spoliating party's conduct does not need to be in bad faith to qualify as intentional." *Id.* at *20 (citations omitted); *see, e.g.*, *Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008) ("[T]he district court appears to have committed an error of law by equating the intentional conduct necessary for such an [adverse inference] instruction with bad faith, thereby deeming non-bad faith conduct to be negligent conduct."); *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) ("While a finding of bad faith suffices to permit such an inference, it is not always necessary."). "At bottom, there simply needs

to be a showing that the party's 'intentional conduct contribute[d] to the loss or destruction of [the] evidence.'" *United States v. Johnson*, 996 F.3d 200, 2017 (4th Cir. 2021) (citation and quotation marks omitted).

## ARGUMENT

According to Defendants, Bill Crouch, Linda Watts, Kevin Henson, Tanny O'Connell, and Jane McCallister were subject to a litigation hold. Nonetheless, Defendants deleted these individuals' emails once they left DHHR. Defendants state that Laura Barno was not subject to a litigation hold despite their awareness of her importance to Plaintiffs' case and that Defendants previously produced some of her emails. Additionally, Defendants failed to place a hold on Jeff Coben's emails when he replaced Bill Crouch as interim head of DHHR on December 31, 2022. Defendants cannot, and do not, claim, however, that they were unaware of Coben's importance to this case. Plaintiffs motion for sanctions is limited to the spoliation of evidence with respect to these seven individuals.[3]

### I. Spoliation of ESI Has Occurred Pursuant to Rule 37(e)

Defendants' failure to preserve Bill Crouch, Linda Watts, Jeff Coben, Kevin Henson, Laura Barno, Tanny O'Connell, and Jane McCallister's emails amounts to an egregious and inexcusable spoliation of singularly valuable evidence. All elements necessary for the Court to find spoliation of ESI as to these seven individuals are easily met: the ESI should have been preserved, the ESI

---

[3] While Plaintiffs maintain that Defendants should have preserved ESI for Bea Bailey, Jolynn Marra, Mischelle Williams, Pam Holt, and Warren Keefer, all of whom held senior positions within DHHR, Plaintiffs did not include these individuals as custodians in their request for ESI in 2020 and Defendants assert that "these five individuals had limited or no involvement in system-wide child welfare policy or practice and were not identified as potential custodians by Plaintiffs in the first four years of this litigation." Ex. 6 at 4. Accordingly, Plaintiffs choose not to seek sanctions with respect to Defendants' spoliation of evidence pertaining to these five individuals.

was destroyed, Defendants failed to take reasonable steps to prevent the destruction of the ESI, and the destroyed ESI cannot be adequately replaced.

### A. The ESI Should Have Been Preserved

"The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591. "[A]t the latest," this duty exists "when the defendant is served with the complaint." *Victor Stanley*, 269 F.R.D. at 522. It "includes an obligation to identify, locate, and maintain, information that is relevant to specific, predictable, and identifiable litigation." *Id.* (citation omitted).

Defendants had a duty to preserve these individuals' emails beginning, at a minimum, on September 30, 2019. The Complaint alleges systemic deficiencies within DHHR and on the part of its leaders and specifically alleges that Defendants were deliberately indifferent to the harms that DHHR's policies and practices caused. *See, e.g.*, Compl. ¶ 34 ("Defendants' long-standing and well-documented actions and inactions substantially depart from accepted professional judgment and constitute deliberate indifference to the harm, risk of harm, and violations of legal rights suffered by the named Plaintiffs and the class and subclasses they represent."). Based on these allegations, Defendants had an obligation to preserve ESI that they could reasonably anticipate would be relevant to the litigation, *see Victor Stanley*, 269 F.R.D. at 522, which included emails maintained by high-ranking DHHR employees. These emails are one of the only ways for Plaintiffs to establish that DHHR and its employees were aware of and deliberately indifferent to the substantial risks of harm that DHHR's policies and practices created.

Defendants acknowledged the importance of, and their duty to preserve, ESI in the email accounts of Crouch, Watts, Henson, McCallister, and O'Connell by subjecting these individuals

8

to a litigation hold. *See* Ex. 6 at 2. The relevance of these individuals' emails is self-evident considering Crouch and Watts are named Defendants and Henson, McCallister, and O'Connell held leadership positions within DHHR.

Additionally, Defendants should have anticipated the relevance of Jeff Coben and Laura Barno's emails. From January to July of 2023, Coben was in charge of DHHR. He was the highest ranking person in the agency and replaced a named Defendant in this lawsuit—Defendant Crouch. Barno was the Director of Family First and according to DHHR's October 2019 organizational chart, was one of DHHR's most-senior employees. *See id.* Thus, the relevance of her emails to Plaintiffs' lawsuit is self-evident. Moreover, Plaintiffs included Barno in the list of custodians sent to Defendants on September 17, 2020 and Defendants subsequently produced some of Barno's emails, further indicating that Defendants recognized the materiality of Barno's emails to Plaintiffs' case. There can be no dispute, therefore, that email communications sent and received by these individuals are material and should have been preserved.

### B. The ESI Has Been Lost

"Information is lost if it is irretrievable from another source." *Modern Remodeling, Inc. v. Tripod Holdings, LLC*, No. CCB-19-1397, 2021 U.S. Dist. LEXIS 163228, at *26 (D. Md. Aug. 27, 2021). For spoliation purposes, ESI is considered "lost" even if a portion of the deleted information may be replaceable. *See, e.g.*, *Gov't Employees Health Ass'n v. Actelion Pharms. Ltd.*, 343 F.R.D. 474, 486 (D. Md. 2023) ("While some of the lost data was partially replaced . . . , there is little doubt given just the amount of lost data from the two at-issue custodians for whom such information is known, that a meaningful amount of relevant information was destroyed, and those custodians were not peripheral to the central issues in the case, even if not uniquely integral to them."); *Sines v. Kessler*, No. 3:17-cv-72, 2021 U.S. Dist. LEXIS 204142, at *36-37 (W.D. Va.

9

Oct. 22, 2021) ("[Plaintiffs] obtained some of this ESI from other Defendants and third-party providers, but they do not have a 'complete record of [Heimbach's] written communications from' Heimbach himself. This is sufficient to show that ESI stored on the two cell phones and three social-media accounts is both lost and irreplaceable." (alteration in original) (citation omitted)); *Modern Remodeling*, 2021 U.S. Dist. LEXIS 163228, at *26 (finding that emails and text messages were lost for spoliation purposes despite that some of the lost communications were available from other custodians).

Defendants admit that all emails created after September 2020 in the accounts of Crouch, Watts, Henson, Barno, and O'Connell have been destroyed. All emails from Coben and McCallister's accounts have been destroyed. That Plaintiffs may be able to obtain a small portion of the deleted information from other custodians' email accounts does little to cure the prejudice that Defendants' dereliction of duty has imposed on Plaintiffs.[4]

Courts in this Circuit have repeatedly acknowledged that when a significant portion of ESI has been destroyed, it is immaterial that a party may be able to access some of the deleted information from other sources. *See, e.g.*, *Gov't Employees*, 343 F.R.D. at 483 n. 13 (finding ESI lost where, "although approximately 33,800 documents associated with the at-issue custodians were recovered from other custodians, Plaintiff reasonably estimates that more than 83,000 documents were lost from just the two at-issue custodians for whom the amount of lost data can be reconstructed"); *Sines*, 2021 U.S. Dist. LEXIS 204142, at *36-37; *Modern Remodeling*, 2021 U.S. Dist. LEXIS 163228, at *26. In *Modern Remodeling*, for example, although one defendant's text messages had been deleted, that defendant's communications with a co-defendant were

---

[4] Defendants specifically state that emails to or from Crouch, Watts, Henson, Barno, O'Connell, or Coben with current DHHR employees are retrievable through those still-employed custodians' email accounts. Ex. 6 at 2. Defendants do not explain why emails to or from McCallister would not be similarly available.

available through the co-defendant's phone. 2021 U.S. Dist. LEXIS 163228, at *27. Communications between the defendant and other co-defendants or non-parties, however, were not recoverable. *Id.* at *27. As a result, the Court found that there was sufficient evidence that the defendant's messages had been lost because there was no way for plaintiffs to obtain any of his messages that did not include the co-defendant. *Id.* at *27-28.

The same is true here. While Plaintiffs have access to communications between these custodians and people who are still employed at DHHR, assuming that those people's emails have been preserved, such communications undoubtedly represent a tiny fraction of the relevant, destroyed ESI. Defendants do not suggest that the email accounts of these custodians are retrievable, only that they are "still attempting to determine why these files were not preserved." Ex. 6 at 2. As such, Plaintiffs will never have access to email communications between named Defendants Crouch and Watts. Additionally, Plaintiffs will never have access to email communications amongst any of these custodians, between these custodians and any DHHR employee who has since left the agency, and between these custodians and anyone outside of DHHR.

Emails to and from Watts, Crouch, and Coben are of special importance as these individuals are named Defendants (or successors) and held the highest positions within DHHR. Messages sent in Crouch, Watts, or Coben's own words that discuss any issue related to child welfare would have been Plaintiffs' best evidence of those individuals' states of mind at the time they held office. In addition to the unparalleled qualitative value of the destroyed emails, the breadth of relevant communications that have been lost is also significant. Because of these individuals' positions within DHHR, it is likely that they most often communicated with each other and with others in supervisory positions. There is likely a large quantity of emails, therefore,

11

amongst the most senior officials within DHHR that Plaintiffs will never have access to and will be unable to obtain from other custodians' email accounts.

### C. Defendants Failed to Take Reasonable Steps to Preserve the ESI

"It generally is recognized that when a company or organization has a document retention or destruction policy, it 'is obligated to suspend' that policy and 'implement a "litigation hold" to ensure the preservation of relevant documents' once the preservation duty has been triggered." *Victor Stanley*, 269 F.R.D. at 524 (quoting *Goodman*, 632 F. Supp. 2d at 511); *see, e.g.*, *Sines*, 2021 U.S. Dist. LEXIS 204142, at *13 ("'[T]he "standard reasonableness framework" require[s] a party to suspend its routine' practices 'and put in place a "litigation hold" to ensure the preservation of relevant documents' and information." (citation omitted)). "A party breaches its duty to preserve relevant evidence if it fails to act reasonably by taking 'positive action to preserve material evidence.'" *Victor Stanley*, 269 F.R.D. at 525 (citation omitted). In determining whether a party's preservation efforts were reasonable, the Court may consider the party's sophistication and litigation experience. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

Despite Defendants' claim that a litigation hold was placed on Crouch, Watts, Henson, McCallister, and O'Connell, it appears that it was placed in name only. Defendants fail to explain the process that was used to subject these individuals to a litigation hold, why a hold was never actually implemented, and who was tasked with overseeing and ensuring compliance with the litigation hold. Defendants' failure to ensure—at any point over the course of four years—that the emails of top-ranking DHHR employees were being preserved, including those of two named Defendants, is patently unreasonable. Moreover, DHHR is a large and sophisticated state agency with the technological support of the West Virginia Office of Technology. Defendants do not

assert any burden associated with preserving this information or any reasonable explanation for their failure to do so.

Inexplicably, Defendants failed to subject Coben and Barno to a litigation hold.

Defendants state that they did not "substitute[]" Coben "as a custodian for Bill Crouch." Ex. 6 at 2. Fourth Circuit case law makes clear that it is Defendants' duty to identify and preserve material evidence. *See, e.g.*, *Silvestri*, 271 F.3d at 591. There can be no dispute that email communications sent and received by Coben are material. In failing to preserve this ESI, Defendants breached their duty to take reasonable action to prevent the deletion of material evidence. *See Victor Stanley*, 269 F.R.D. at 525. Not only were Defendants' actions unreasonable, but they were non-existent. Defendants did nothing to ensure that this vital information would be preserved when Coben left his position.

Defendants acted further unreasonably in failing to take a single step to preserve Barno's emails despite having actual knowledge of their relevance. Defendants provide no explanation for failing to place a litigation hold on Barno's emails at the start of this litigation, or, at the very latest, in September 2020 when Plaintiffs identified her as a relevant ESI custodian.

### D. The ESI Cannot Be Restored or Replaced

Defendants do not state that it is possible to restore the deleted ESI, and the emails at issue cannot be replaced. Additionally, as described above, no sufficient alternative exists for Plaintiffs to obtain the vast majority of ESI that was destroyed. *See Gov't Employees*, 343 F.R.D. at 483 ("It is also clear that, although some of this data was located with other custodians, a meaningful amount of the deleted data could not be restored or replaced through additional discovery.").

\* \* \*

Accordingly, Plaintiffs have established that spoliation of significant and vital ESI, namely, email accounts belonging to Bill Crouch, Linda Watts, Jeff Coben, Kevin Henson, Laura Barno, Tanny O'Connell, and Jane McCallister, has occurred.

## II. Sanctions Are Necessary

"[F]or the court to issue sanctions, the absence of the evidence must be prejudicial to the party alleging spoliation of evidence." *Victor Stanley*, 269 F.R.D. at 531. "[U]pon finding prejudice to another party from loss of the information, [the Court] may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

### A. *Plaintiffs Have Been Prejudiced By Defendants' Spoliation of ESI*

"Spoliation of evidence causes prejudice when, as a result of the spoliation, the party claiming spoliation cannot present 'evidence essential to its underlying claim.'" *Victor Stanley*, 269 F.R.D. at 532 (citation omitted). The Court has "discretion to determine how best to assess prejudice," as "placing the burden of proving prejudice on the party that did not lose the information may be unfair." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

Defendants would be hard-pressed to argue that the destruction of all emails sent to and from seven high-level DHHR employees, including named Defendants, over the course of more than three years has not caused nearly insurmountable prejudice to Plaintiffs' case. As stated above, Plaintiffs are required to prove that Defendants acted with deliberate indifference, meaning, "that the [defendant] subjectively recognized a substantial risk of harm and that his actions were inappropriate in light of the risk." *Washington v. Hous. Auth. of City of Columbia*, 58 F.4th 170, 179 (4th Cir. 2023) (citation omitted). The primary way for Plaintiffs to prove this element of their substantive due process claims is through the emails of high-ranking DHHR officials, which were destroyed. The destruction of named Defendants' emails severely hampers Plaintiffs ability

14

to prove that those individuals were deliberately indifferent. And while Plaintiffs could use circumstantial evidence to establish Defendants' subjective knowledge, *see id.*, much of that evidence would have consisted of the emails of other high-ranking DHHR officials, which have also been deleted. Plaintiffs should not be compelled to rely solely on the fraction of deleted emails that are retrievable from other custodians to prove deliberate indifference. *See Silvestri*, 271 F.3d at 594 ("To require [a party] to rely on the evidence collected by [the opposing party] . . . in lieu of what it could have collected" had the property not been destroyed, "would result in irreparable prejudice.").

Finally, that Defendants, like Plaintiffs, have copies of five of these individuals' emails that were sent or received during the first year of this now-four-year litigation, does nothing to mitigate the prejudice that Defendants' spoliation of evidence has caused. To prove that Defendants were deliberately indifferent to the harms DHHR's policies, procedures, and practices created, some of which were modified and may not have even existed until after September 2020, Plaintiffs require ESI communications to and from these key DHHR players that span the duration of their time in office.

### B. The Court Should Impose Sanctions Under Rule 37(e)(1)

This Court has broad discretion to craft sanctions that are appropriate and no greater than necessary to cure the prejudice to Plaintiffs.[5] *See Silvestri*, 271 F.3d at 590; *see also* Fed. R. Civ.

---

[5] Defendants state that they are "still attempting to determine why these files were not preserved." Ex. 6 at 2. The Fourth Circuit has noted that "the mere failure . . . to produce evidence that naturally would have elucidated a fact at issue permits an inference that the party fears to produce the evidence." *Keyes v. Napoli Bern Ripka Shkolnik, LLP*, 2022 U.S. App. LEXIS 21573, at *30 (4th Cir. Aug. 4, 2022) (citation omitted); *see also GMS Indus.*, 2022 U.S. Dist. LEXIS 51658, at *21 ("[A] party's 'conscious dereliction of a known duty to preserve electronic data—whether passive or active—is both necessary and sufficient to find that the party acted with the intent to deprive another party of the information's use under Rule 37(e)(2).'" (quoting *Sines*, 2021 U.S. Dist. LEXIS 204142, at *10 (citation omitted) (quotation marks omitted))). Thus, Plaintiffs believe that there is evidence that Defendants acted with intent to deprive Plaintiffs of this information, and that sanctions under Rule 37(e)(2) are also justified. However, if the Court finds that

P. 37(e)(1). In doing so, the Court should consider "the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine," *Silvestri*, 271 F.3d at 590 (citation omitted); and "should fashion a remedy that provides some deterrence as future litigants consider their obligations." *Gov't Employees*, 343 F.R.D. at 487. "In addition, an important goal of any sanction should be 'to level "the evidentiary playing field."'" *Butler*, 2020 U.S. Dist. LEXIS 241307, at *25 (citations omitted).

The 2015 advisory committee's note to Rule 37 provides a non-exhaustive list of examples of sanctions that may be appropriate under Rule 37(e)(1), including "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, [] giving the jury instructions to assist in its evaluation of such evidence or argument[,]" or "exclud[ing] a specific item of evidence to offset prejudice caused by failure to preserve other evidence that might contradict the excluded item of evidence." Plaintiffs are mindful that this will be a bench trial, and therefore, that some of the more traditional sanctions may not be appropriate. *See, e.g.*, *Thompson v. United States HUD*, 219 F.R.D. 93, 105 (D. Md. 2003) (imposing sanctions for spoliation of evidence but finding "[a]n adverse inference instruction . . . was not appropriate for the simple fact that this is a bench trial").

Accordingly, Plaintiffs request that the Court impose the following sanctions, which are required and no greater than necessary to "level the evidentiary playing field" and comport with the considerations underlying the spoliation doctrine.

---

Defendants' conduct was not willful, Plaintiffs still respectfully request that the Court sanction Defendants under Rule 37(e)(1).

1.  **Plaintiffs Have Established Deliberate Indifference**

Plaintiffs request that the Court declare that Plaintiffs have established the deliberate indifference element of their substantive due process claims against DHHR and the named DHHR Defendants and their successors. Such a declaration is necessary because Defendants have destroyed the evidence that Plaintiffs needed to prove this element, and the Court should not require Plaintiffs to attempt to prove deliberate indifference without it. *See Silvestri*, 271 F.3d at 594.

"[T]he expansion of sanctions for the inadvertent loss of evidence recognizes that such physical evidence often is the most eloquent impartial 'witness' to what really occurred, and further recognizes the resulting unfairness inherent in allowing a party to destroy evidence and then to benefit from that conduct or omission." *Id.* at 593 (citation omitted). Emails that named Defendants and other high-ranking DHHR officials sent and received over the past four years are the best evidence of what those individuals knew at the time. Any later-created discovery, like these custodians' deposition or witness testimony, is incomparable as it will inevitably be tainted by hindsight bias and the existence of this litigation.

In seeking sanctions no greater than necessary, Plaintiffs do not ask the Court to rule that any of Plaintiffs' causes of action have been established. Plaintiffs will still have to present evidence at trial sufficient to establish each and every element of their claims, with the exception of a single element that is present with respect to only some claims—specifically, the deliberate indifference element of Plaintiffs' substantive due process claims against the DHHR Defendants. And as to those claims, Plaintiffs will still have to prove that DHHR maintained specific policies

and practices and that those policies and practices caused a deprivation of Plaintiffs' substantive due process rights.[6]

### 2. Defendants Should Be Precluded from Moving for Summary Judgment on Deliberate Indifference

If Defendants choose to file a motion for summary judgment, they should be precluded from arguing that Plaintiffs failed to establish a genuine dispute as to whether the DHHR Defendants were deliberately indifferent. This type of sanction has been granted within the Fourth Circuit. *See Butler*, 2020 U.S. Dist. LEXIS 241307, at *27 ("[I]t was [defendant] who lost the video, and it should not be able to profit by securing summary judgment after depriving [plaintiff] of her best evidence that could have supported her claims and rebutted [defendant]'s defenses."). Defendants should be precluded from arguing that Plaintiffs have failed to prove this element when Defendants destroyed the very evidence that Plaintiffs would have needed to rebut this argument.

### 3. Defendants Should Be Precluded from Challenging Deliberate Indifference

If the Court does not issue Plaintiffs' requested sanction declaring that Plaintiffs have established deliberate indifference, Plaintiffs request that the Court preclude Defendants from arguing that the deleted ESI would have shown that the DHHR Defendants did not act with deliberate indifference. Courts have issued similar sanctions when valuable evidence has been destroyed. *See, e.g.*, *Butler*, 2020 U.S. Dist. LEXIS 241307, at *28-29 (finding spoliation sanction

---

[6] While Plaintiffs are not seeking an adverse inference, the Court of Appeals' discussion of the appropriateness, and in some circumstances, necessity of an adverse inference instruction in *United States v. Johnson*, 996 F.3d 200 (4th Cir. 2021) applies with equal force to Plaintiffs' requested sanction. The Court noted that while it is within the trial court's discretion to give an adverse inference instruction, "the court abuses its discretion in disallowing an adverse inference instruction where the instruction is 'correct,' is 'not substantially covered by the charge' given to the jury, and 'involve[s] some point so important that the failure to give the instruction seriously impair[s] the defendant's defense.'" *Id.* at 217 (quoting *United States v. Barko*, 728 F.3d 327, 343 (4th Cir. 2013)). Similarly, failure to declare that Plaintiffs have established deliberate indifference with respect to the DHHR Defendants would seriously impair Plaintiffs' ability to prove their substantive due process claims against these Defendants.

that precluded defendant from eliciting testimony that the video that defendant had lost would have shown evidence favorable to defendant was appropriate); *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334, 343 (D. Ct. 2009) (imposing sanction of preclusion of evidence during bench trial in response to spoliation); *see also* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (An appropriate sanction may be "forbidding the party that failed to preserve information from putting on certain evidence.").

As is true of Plaintiffs' other proposed sanctions, this measure would ensure that Defendants do not profit from their destruction of evidence. Defendants should not be permitted to argue that there are no emails demonstrating that the DHHR Defendants acted with deliberate indifference when Defendants are responsible for the absence of any such emails.

## CONCLUSION

Pursuant to the reasons set forth above, Plaintiffs respectfully request that the Court issue the following sanctions, and any additional sanctions that this Court sees fit, in response to Defendants' spoliation of evidence: (1) declare that Plaintiffs have established the deliberate indifference element of their substantive due process claims against the DHHR Defendants; (2) preclude Defendants from moving for summary judgment on the deliberate indifference element of Plaintiffs' substantive due process claims with respect to the DHHR Defendants; and (3) preclude Defendants from arguing that the deleted ESI would have shown that the DHHR Defendants did not act with deliberate indifference.

Respectfully submitted,

/s/ *Marcia Robinson Lowry*
Marcia R. Lowry, *admitted pro hac vice*
Julia Tebor, *admitted pro hac vice*

Jonathan Borle, *admitted pro hac vice*
Lindsay Gus, *admitted pro hac vice*
A Better Childhood
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel.: (646) 795-4456
Fax: (212) 692-0415
mlowry@abetterchildhood.org
jtebor@abetterchildhood.org
jborle@abetterchildhood.org
lgus@abetterchildhood.org

*/s/ Richard W. Walters*_____
Shaffer & Shaffer, PLLC
Richard W. Walters, WVSB #6809
rwalters@shafferlaw.net
J. Alexander Meade, WVSB #13021
ameade@shafferlaw.net
2116 Kanawha Boulevard, East
P.O. Box 3973
Charleston, WV 25339
Tel: (304) 244-8716
Fax: (304) 344-1481

/s/ *J. Marty Mazezka*_____
Disability Rights of West Virginia
J. Marty Mazezka, WVSB #4572
jmazezka@drofwv.org
5088 Washington St. W., Suite 300
Charleston, WV 25301
Tel: (304) 346-0847
Fax: (304) 346-0687