## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| JONATHAN R., *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| v. | ) | |
| | ) | |
| JIM JUSTICE, *et al.*, | ) | Case No. 3:19-cv-00710 |
| | ) | |
| *Defendants.*[1] | ) | |

### DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Defendants served Plaintiffs with several document requests that sought the mental health records, educational records, and court records of the 11 Named Plaintiffs.  In response, Plaintiffs did *not* dispute that there were responsive and relevant documents in their "custody" or "control," and Plaintiffs did *not* object to the requests as unduly burdensome.  Ex. 1 (Defendants' Third Request for Production of Documents). Nevertheless, Plaintiffs refused to produce any documents responsive to these requests, except for limited records relating to one of the 11 Named Plaintiffs. Plaintiffs' primary objection to these requests was that they sought documents that were not Plaintiffs' actual "possession," and therefore would require Plaintiffs to gather such documents from their medical providers, schools, and lawyers.

However, as Plaintiffs' themselves pointed out in their recent Motion to Compel, federal rules require a party to gather and produce documents in their "custody" and "control," even if those documents are not in the party's actual possession, unless doing so would be unduly burdensome or not proportional to the needs of the case.

---

[1] The initial Complaint was filed against, among others, then-Secretary Bill Crouch, then Deputy Secretary Jeremiah Samples, and then Commissioner Linda Watts, all in their official capacities.  Those officials have been replaced by Interim Secretary Sherri Young, Deputy Secretary Cammie Chapman, and Commissioner Jeff Pack, and the case caption should be changed accordingly.  *See* Fed. R. Civ. P. 25(d).

Plaintiffs' refusal to gather and produce the most basic documents about the Named Plaintiffs is particularly inappropriate given the extraordinary discovery demands they have made of Defendants.  Plaintiffs have served Defendants with hundreds of document requests and, in response, Defendants have produced tens of thousands of pages of records for all 11 Named Plaintiffs; all placement and Medicaid data for over 10,000 foster children; and all of the relevant policies, memoranda, and reports of the Department of Health and Human Resources' ("DHHR"), going back at least for five years.  *See e.g.*, Ex. 2 (Plaintiffs' Seventh, Eighth and Nineth Requests for Production of Documents).   In addition, Plaintiffs have requested, and Defendants are producing, tens of thousands of pages of case file documents for 95 additional foster children, as well hundreds of thousands of DHHR e-mails for dozens of custodians.  *See* Ex. 3 (Defendants' Written Responses and Objections to Plaintiffs' Tenth Request for Production of Documents). Plaintiffs cannot have it both ways, demanding that Defendants produce reams of information about thousands of foster children, while refusing to provide Defendants with the medical, educational, and records of their 11 clients.

Accordingly, pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37.1(c), Defendants respectfully request that this Court order Plaintiffs to conduct a diligent search for and produce documents responsive to Request Numbers 1, 2, 4, 5, and 7 in Defendants' Third Set of Requests for Production.  Ex. 1.

## BACKGROUND

On August 30, 2023, Defendants served Plaintiffs with Defendants' Third Set of Requests for Production ("Requests for Production"),[2] which contained 15 document requests, including

---

[2] Defendants' first two sets of requests were served before the case was dismissed in 2021.

five requests (1-2, 4-5, and 7) that sought the medical records, educational records, and court records for the 11 Named Plaintiffs.

Plaintiffs responded to the Requests for Production on September 29, 2023, but refused to provide any documents responsive to these six requests, except for limited documents relating to one of the 11 Named Plaintiffs.  Ex. 4.  Plaintiffs objected to almost all of these requests on the grounds that they sought "documents which are in Defendants' possession or are readily obtainable by Defendants, and are not currently in Plaintiffs' possession, and, therefore, cannot be produced," and "seek[] production of documents concerning services provided at times in which any of the Named Plaintiffs were not in the legal custody of DHHR on the grounds that discovery of this nature is overly broad, not proportional to the needs of the case, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence."  Ex. 4.

On October 4, 2023, the parties held a meet-and-confer to attempt to resolve their dispute about Plaintiffs' refusal to produce documents responsive to Request Numbers 1-2, 4-5, and 7 (as well as others in the Requests for Production).  During that meet-and-confer, Defendants' counsel made a good faith effort to resolve the dispute, including by suggesting a compromise proposal and indicating that Defendants were open to additional compromise proposals that Plaintiffs may propose.  For example, Defendants offered to limit the medical records document request to certain types of health care providers.

On October 5, 2023, Plaintiffs' counsel sent Defendants' counsel an e-mail rejecting Defendants' compromise proposal.  Ex. 5.  Plaintiffs' counsel did not offer any alternative compromise proposal.  *Id*.

On October 6, Defendants e-mailed Plaintiffs with an alternative compromise proposal, under which the Plaintiffs would not be required gather or produce documents responsive to the

documents seeking the Named Plaintiffs' medical, educational, and court records that were not in Plaintiffs' actual possession, and Defendants would not be required to further supplement the production of the Named Plaintiffs' case files or produce any documents in the possession of third parties. *Id.* Plaintiffs rejected this compromise proposal as well, and again declined to propose an alternative compromise. *Id.*

## ARGUMENT

The Federal Rules of Civil Procedure generally require a party to produce any nonprivileged documents "relevant to any party's claim or defense," unless the discovery sought is not "proportional to the needs of the case" or the documents are not in the "responding party's possession, custody, or control." Fed. R. Civ. P. 26(b)(1); *see also*, Fed. R. Civ. P. 33(a)(1).

In this case, Request Numbers 1-2, 4-5, and 7 in the Requests for Production seek relevant information; are "proportional to the needs of the case"; and responsive documents are in Plaintiffs' possession, custody, or control. Accordingly, Plaintiffs are required to search for and produce nonprivileged documents that are responsive to those requests.

## I.     DEFENDANTS ARE ENTITLED TO DOCUMENTS RESPONSIVE TO REQUEST NUMBERS 1 AND 2.

Request Numbers 1 and 2, and Plaintiffs' response to those requests, read as follows:

> **Request for Production No. 1**: All communications between any of the Named Plaintiffs or their Next Friends and any provider of services (including, but not limited to, medical services, psychiatric services, behavioral health services, educational services, socially necessary services, foster care services, residential services or educational services) to any of the Named Plaintiffs.

> **Plaintiffs' Response No. 1:**
> Plaintiffs object to this request because it requests the production of documents which are in Defendants' possession or are readily obtainable by Defendants, and are not currently in Plaintiffs' possession, and, therefore, cannot be produced. *See, e.g.*, *Bleecker*, 130 F. Supp. 2d at 738 ("Discovery is not required when documents are in the possession of or readily obtainable

4

by the party seeking a motion to compel."); *see also Shaffer*, 2018 U.S. Dist. LEXIS 230858 at *15 ("Court have long held that the rules of discovery, specifically Federal Rule of Civil Procedure 34, do not require parties to produce records that are accessible to all parties."); *Dushkin Pub. Grp., Inc.*, 136 F.R.D. at 335 (D.C.D.C. 1991) ("It is well established that discovery need not be required of documents of public record which are equally accessible to all parties." (internal quotation marks omitted)).

Plaintiffs also object to the extent Defendants seek interview memoranda, notes, or written communications by Plaintiffs' guardians ad litem as such documents are protected from discovery by the work product doctrine. *See* Fed. R. Civ. P. 26(b)(3); *see also Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (stating that the work product of a lawyer includes interviews, memoranda, correspondence, briefs, and mental impressions, among other materials).

Notwithstanding the foregoing objections, Plaintiffs produce the following documents:

- P00962 - P01228

**Request for Production No. 2**: All documents concerning any medical services, psychiatric services, behavioral health services or mental health services received by any of the Named Plaintiffs, *including the Named Plaintiffs' medical records*.

**Plaintiffs' Response No. 2:**
Plaintiffs object to this request because it requests the production of documents which are in Defendants' possession or are readily obtainable by Defendants, and are not currently in Plaintiffs' possession, and, therefore, cannot be produced. *See supra*, Plaintiffs' Resp. No. 1. During all periods of time in which Named Plaintiffs were in the care and custody of the DHHR, these services would have been arranged by DHHR.

Plaintiffs also object to the extent Defendants seek interview memoranda, notes, or written communications by Plaintiffs' *guardians ad litem* as such documents are protected from discovery by the work product doctrine. *See supra*, Plaintiffs' Resp. No.1.

Plaintiffs further object to the extent that this request seeks production of documents concerning services provided at times in which any of the Named Plaintiffs were not in the legal

custody of DHHR on the grounds that discovery of this nature is overly broad, not proportional to the needs of the case, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.

Notwithstanding the foregoing objections, Plaintiffs produce the following documents:

- P00962 - P01228

Ex. 4, at 3 and 4. (emphasis added).

Request Numbers 1 and 2 are likely to yield relevant documents. Plaintiffs allege that Defendants have violated the Named Plaintiffs' Substantive Due Process rights by causing physical and/or emotional harm to the 11 Named Plaintiffs, and Plaintiffs' Complaint is replete with allegations about that harm. *See generally* Compl. Named Plaintiffs' medical records will show the extent to which, if at all, the Named Plaintiffs suffered the physical or psychological harm that Plaintiffs allege, as well as the extent to which services arranged and paid for by Defendants ameliorated any physical or psychological injury. For example, if Named Plaintiffs' medical records show that a Named Plaintiff's psychological or physical needs were thoroughly addressed and his or her functioning substantially improved while receiving services arranged for and paid by DHHR, that information would rebut Plaintiffs' allegations that Defendants are "deliberately indifferent" to the well-being of the Named Plaintiff. Similarly, the Named Plaintiffs' medical records are highly relevant to their ADA claim. To prevail on their ADA claim, Plaintiffs must prove that the Named Plaintiffs were subject to "unjustified institutional isolation." *See, e.g.*, *Olmstead v. L.C.*, 527 U.S. 581, 600 (1999). Whether institutionalization is "unjustified" depends on the youth's diagnoses, needs, and behaviors, information about all of which would be found in medical records, particularly the records of a primary care provider, psychiatrist, psychologist, or other therapist.

Further, Request Numbers 1 and 2 are "proportional to the needs of the case." In determining whether a document request is "proportional to the needs of the case," courts consider, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see Watkins v. Lincare, Inc.*, No. 3:22-CV-00109, 2023 WL 6129517, at *4 (S.D.W. Va. Sept. 19, 2023) (unpublished). Documents responsive to the requests at issue are highly relevant, *see supra*, and it would not be unduly burdensome for Plaintiffs to gather and produce these documents:[3] Plaintiffs' counsel will simply need to ask their clients (or clients' parents) for a list of medical providers they have seen in the last five years; ask their clients to sign HIPAA release forms; transmit HIPAA release forms to the relevant medical providers, provider, *see* 45 C.F.R. §§ 164.502(g), 164.524(a)(1) (patients have a right to their medical records); and then produce the documents to Defendants once Plaintiffs have obtained them from the medical providers.

Plaintiffs objected to Request Numbers 1 and 2 on the ground that "documents concerning services provided at times in which any of the Named Plaintiffs were not in the legal custody of DHHR . . . seeks information that is not reasonably calculated to lead to the discovery of admissible evidence." Ex. 4. This objection is without merit for two reasons. First, Defendants are not just seeking records for "services provided at times in which any of the Named Plaintiffs were not in the legal custody of DHHR"; Defendants are seeking all of the Named Plaintiffs'

_____

[3] While Plaintiffs' counsel raised concerns about the burden of production with Defendants' counsel over e-mail, Ex. 5, Plaintiffs did not object Request Numbers 1 and 2 as unduly burdensome, *see* Ex. 4, at 3 and 4, let alone provide any explanation as to why gathering and producing such documents would be unduly burdensome. Accordingly, an argument that these requests are unduly burdensome has been waived. *See Atkins v. AT&T Mobility Servs., LLC*, No. 2:18-CV-00599, 2019 WL 8017851, at *8 (S.D.W. Va. Apr. 25, 2019) (unpublished) ("[F]ailure to adhere to [Rule 34(b)(2)'s] requirements may result in waiver of the objection"); *Acosta v. Team Env't, LLC*, No. 2:16-CV-03491, 2017 WL 10765289, at *2 (S.D.W. Va. Dec. 22, 2017) (same).

medical records for the last five years, including records that DHHR does not possess that were created during times when Named Plaintiffs were in DHHR's custody.  There is no dispute that these documents are relevant.  Second, medical records relating to services or events after a Named Plaintiff left custody are relevant to Plaintiffs' claims.  For example, if a Named Plaintiffs experienced a serious psychiatric event after the Named Plaintiffs was discharged from a residential treatment program into his biological family's custody, that would be probative of whether the residential treatment placement was "unjustified."  Similarly, if medical records showed a Named Plaintiff was healthy and emotionally thriving after release from DHHR custody, that would rebut Defendants' allegations that DHHR's was deliberatively indifferent with respect to the case planning services it provided to the Named Plaintiff.

Plaintiffs also argue that documents responsive to Request Numbers 1 and 2 "are in Defendants' possession or are readily obtainable by Defendants, and are not currently in Plaintiffs' possession, and, therefore, cannot be produced."  Ex. 4.  This objection is also meritless.  These documents are *not* "in Defendants' possession."  DHHR generally does not collect the medical records of children in its custody, except when specifically needed for some child welfare purpose. Accordingly, DHHR does not possess the medical records of the Named Plaintiffs, with some limited exceptions.  Second, the documents are *not* "readily obtainable by Defendants."  Eight of the 11 Named Plaintiffs are no longer in DHHR custody, and therefore DHHR has no authority to request their medical records and, under federal Health Insurance Portability and Accountability Act ("HIPAA") regulations governing the privacy of medical records, providers could not release those records without authorization from an authorized adult, *see* § 164.502.  Further, even for the three Named Plaintiffs still in DHHR custody, Plaintiffs have not cited any legal authority that supports the proposition that DHHR has the right to obtain these medical records *for litigation*

*purposes*.  Defendants could subpoena these documents from the medical providers, but that is likely to be met with resistance from the providers, given the privacy concerns surrounding individual identifying medical information, whereas Plaintiffs have a legal right to obtain these documents by simply sending the providers a HIPAA authorization form, *supra*.

As Plaintiffs' themselves recently argued to this Court, "Rule 34 explicitly permits requests to produce documents in the responding party's possession, custody, or control" and, "[a]s long as the party has the legal right or ability to obtain the documents from another source on demand, that party is deemed to have control."  Doc. 374, at 14-15 (internal citations and marks omitted); *see, e.g.*, *Mays v. Cabell Cnty. Bd. of Educ.*, No. 3:22-CV-00085, 2023 WL 2656760, at *5 (S.D.W. Va.  Mar. 27, 2023) (unpublished).  While a party may object to gathering documents from third parties on burden grounds, as Defendants did in response to several of Plaintiffs' document requests, Plaintiffs did not properly raise a burden objection here, and in any event such an objection would be meritless for the reasons explained above, *supra*.

Finally, putting aside the issue of collecting documents from third parties, it is not clear whether Plaintiffs' counsel conducted a diligent search for responsive documents in their own clients' actual possession.  While Plaintiffs' counsel represented to Defendants' counsel that they are not withholding any responsive documents in their clients' or the Next Friends' actual possession, Ex. 5, Plaintiffs did not produce (or log in a privilege log) a single responsive document for 10 of the 11 Named Plaintiffs.  It is not plausible that 10 of the 11 Named Plaintiffs do not have a single document relating to their medical care, and it is not clear if Plaintiffs' counsel even asked the Named Plaintiffs' or their parents or legal guardians whether they had any responsive documents in their possession.

## II.   DEFENDANTS ARE ENTITLED TO DOCUMENTS RESPONSIVE TO REQUEST NUMBERS 4 AND 5.

Request Numbers 4 and 5, and Plaintiffs' response to those requests, read as follows:

**Request for Production No. 4**: All documents concerning any of the educational services any of the Named Plaintiffs received while they have been in the legal custody of DHHR.

**Plaintiffs' Response No. 4**:
Plaintiffs object to this request because it requests the production of documents which are in Defendants' possession or are readily obtainable by Defendants, and are not currently in Plaintiffs' possession, and, therefore, cannot be produced. See supra, Plaintiffs' Resp. No. 1. Indeed, these services would have been arranged by DHHR, the legal custodian of the named Plaintiffs.

Plaintiffs also object to the extent Defendants seek interview memoranda, notes, or written communications by Plaintiffs' guardians ad litem as such documents are protected from discovery by the work product doctrine. See supra, Plaintiffs' Resp. No.1.

Notwithstanding the foregoing objections, Plaintiffs produce the following documents:

- P00962 - P01228

**Request for Production No. 5**: All communications between and of the Named Plaintiffs or their Next Friends and any school attended by the Named Plaintiff.

**Plaintiffs Response No. 5**:
Plaintiffs object to this request because it requests the production of documents which are in Defendants' possession or are readily obtainable by Defendants, and are not currently in Plaintiffs' possession, and, therefore, cannot be produced. See supra, Plaintiffs' Resp. No. 1.

Plaintiffs also object to the extent Defendants seek interview memoranda, notes, or written communications by Plaintiffs' *guardians ad litem* as such documents are protected from discovery by the work product doctrine. *See supra*, Plaintiffs' Resp. No. 1.

Plaintiffs further object to the extent that this request seeks production of documents concerning communications by Named Plaintiffs at times in which any of the Named Plaintiffs

10

were not in the legal custody of DHHR on the grounds that discovery of this nature is overly broad, not proportional to the needs of the case, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.

Notwithstanding the foregoing objections, Plaintiffs produce the following documents:

- P00962 - P01228

Ex. 4, at 4 and 5.

Request Numbers 4 and 5 are likely to yield documents highly relevant to Plaintiffs' claims and Defendants' defenses. For example, educational records showing that a Named Plaintiff was thriving in school would rebut Plaintiffs' allegations of harm to the child. Similarly, educational records showing behavioral and disciplinary history would be probative of whether placement in residential treatment was "unjustified." In addition, Request Numbers 4 and 5 are "proportional to the needs of the case," as it would not be unduly burdensome for Plaintiffs to gather and produce these documents:[4] Plaintiffs' counsel will simply need to ask their clients (or clients' parents) for a list of schools they have attended in the last five years; ask their clients (or their parents) to sign document release authorization forms; transmit those authorization forms to the relevant schools;[5] and then produce the documents to Defendants once Plaintiffs have obtained them from the schools.

---

[4] Again, while Plaintiffs' counsel raised the burden issue with Defendants' counsel over email, Ex. 5, Plaintiffs did not object to Request Numbers 4 and 5 as unduly burdensome, *see* Ex. 4, let alone explain why gathering these documents would be unduly burdensome. Accordingly, any burden argument is waived. *See supra* note 3.

[5] *See* W. Va. Code § 18-2-5h(g) ("Parents have the right to inspect and review their child's education record maintained by the school and to request student data specific to their child's educational record. School districts must provide parents or guardians with a copy of their child's educational record upon request. Whenever possible, an electronic copy of the educational record must be provided if requested and the identity of the person requesting the information is verified as the parent or guardian.").

Plaintiffs objected to Request Number 5 on the ground that "documents concerning communications by Named Plaintiffs at times in which any of the Named Plaintiffs were not in the legal custody of DHHR . . . is overly broad, not proportional to the needs of the case, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence." Ex. 4, at 5.   Not true.   Communication with schools after a Named Plaintiff left custody is relevant to Plaintiffs' claims.   For example, a communication from a teacher to a Named Plaintiffs showing that the Named Plaintiff is thriving in school six months after release from DHHR custody would rebut Defendants' allegations that DHHR's actions caused harm to the Named Plaintiffs.

Plaintiffs argue that documents responsive to Request Numbers 4 and 5 "are in Defendants' possession or are readily obtainable by Defendants, and are not currently in Plaintiffs' possession, and, therefore, cannot be produced." Ex. 4.   This argument is without merit.   DHHR generally does not collect the educational records of children in its custody, except when specifically needed for some child welfare purpose, and thus the overwhelming majority of responsive documents are not in DHHR's possession.   Further, eight of the 11 Named Plaintiffs are no longer in DHHR custody, and therefore DHHR has no authority to request any records relating to any of them from any educational institution, and federal law prohibits the release of those records absent consent from an authorized adult, *see* 20 U.S.C. § 1232g; 34 C.F.R. Part 99.   Even for the three Named Plaintiffs still in DHHR custody, Plaintiffs have not cited any legal authority that supports the proposition that DHHR has any right to obtain these documents *for litigation purposes*. Defendants could subpoena these documents, but that is likely to be met with resistance from the schools, given the privacy concerns surrounding school records of children, whereas Plaintiffs or their guardians have a clear legal right to obtain these documents with by simply sending the entities a signed authorization form, *see supra* note 5.   Finally, as explained above, documents to

which Plaintiffs have a legal right to obtain, such as the Named Plaintiffs' educational records, *see supra* note 5, are in Plaintiffs' "custody" and "control," even if they are not in Plaintiffs' actual possession.

Again, putting aside the gathering of documents from schools, it is not clear whether Plaintiffs' counsel conducted a diligent search even for responsive documents in their own clients' possession.   While Plaintiffs' counsel represented to Defendants' counsel that they are not withholding any responsive documents in their clients' or the Next Friends' actual possession, Ex. 5, Plaintiffs did not produce a single educational record for 10 of the 11 Named Plaintiffs.  It is not plausible that 10 of the 11 Named Plaintiffs do not have a single document relating to their schooling (*e.g.*, e-mail communication, report card, disciplinary notice), and it is not clear if Plaintiffs' counsel even communicated the Named Plaintiffs' themselves or their parents or legal guardians to inquire about whether the Named Plaintiffs (or their legal guardians) had any responsive documents in their possession.

## III.   DEFENDANTS ARE ENTITLED TO DOCUMENTS RESPONSIVE TO REQUEST NUMBER 7.

Request Number 7, and Plaintiffs' response to thereto, read as follows:

> **Request for Production No. 7**: All documents filed in any court concerning any of the Named Plaintiffs (excluding documents filed in this lawsuit).

> **Plaintiffs' Response No. 7**:
> Plaintiffs object to this request because it requests the production of documents which are in Defendants' possession or are readily obtainable by Defendants, and are not currently in Plaintiffs' possession, and, therefore, cannot be produced. See supra, Plaintiffs' Resp. No. 1. Indeed, at all times in which Named Plaintiffs were in the legal custody of DHHR, DHHR would have either been a party to court proceedings or had access to documents filed in court proceedings as the legal custodian of Named Plaintiffs.

Plaintiffs further object to the extent that this request seeks production of documents concerning interaction with the judicial system at times in which any of the Named Plaintiffs were not in the legal custody of DHHR on the grounds that discovery of this nature is overly broad, not proportional to the needs of the case, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.

Notwithstanding the foregoing objections, Plaintiffs produce the following documents:

- P00962 - P01228

Ex. 4, at 6.

Request Number 7 is likely to yield documents highly relevant to Plaintiffs' claims and Defendants' defenses. For example, court records in the Named Plaintiffs' child welfare, family court, juvenile justice or criminal proceedings will reveal details about the child's life experiences, behaviors, and time in foster care, among many other things. This material may confirm the accuracy of the information in DHHR's case records, or paint a different picture. In addition, Request Number 7 is "proportional to the needs of the case," as it would not be unduly burdensome for Plaintiffs to gather these records in their possession and/or work with their counsel in other court proceedings to gather those documents. Indeed, Plaintiffs did not object Request Numbers 7 as unduly burdensome, *see* Ex. 4, let alone explain why it would be, and thus any such argument is waived, *see supra* note 3.

Plaintiffs objected to Request Number 7 and on the ground that "documents concerning interaction with the judicial system at times in which any of the Named Plaintiffs were not in the legal custody of DHHR . . . is overly broad, not proportional to the needs of the case, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence." Ex. 4. This objection is without merit, for the same reason it is without merit with respect to the document requests seeking medical records. Defendants are not just seeking court records for

"times in which any of the Named Plaintiffs were not in the legal custody of DHHR"; Defendants are seeking court records for the last five years, including when Named Plaintiffs were in DHHR custody.  Further, court records from time periods after a Named Plaintiff left custody is relevant to Plaintiffs' claims.  For example, a criminal court record showing that a Named Plaintiff who is now an adult was charged with a crime would be probative of whether the Named Plaintiffs' recent placement in residential treatment was "unjustified."

Plaintiffs argue that documents responsive to Request Number 7 "are in Defendants' possession or are readily obtainable by Defendants, and are not currently in Plaintiffs' possession, and, therefore, cannot be produced."  Ex. 4.  Not so.  While *some* abuse-and-neglect or juvenile justice court records may be in DHHR's possession, custody, or control, DHHR generally does not collect all court records of children in its custody, and thus many responsive documents are not in DHHR's possession.   Further, eight of the 11 Named Plaintiffs are no longer in DHHR custody, and therefore DHHR has no authority to request any of their court records in juvenile justice or abuse-and-neglect proceedings, which are sealed and protected from public disclosure, *see* W. Va. Code § 49-5-103 (confidentiality of juvenile records); § 49-5-104 (confidentiality of juvenile records for children who become of age while a ward of the state or who have been transferred to adult criminal jurisdiction).  Even for the three Named Plaintiffs still in DHHR custody, Plaintiffs have not cited any legal authority that supports the proposition that DHHR has any right to obtain these sealed documents *for litigation purposes*.  While other civil and criminal proceedings are generally not sealed, Defendants do not know if any of the Named Plaintiffs who are now adults (and not in DHHR custody) have been subject to any such proceedings and, if they have, in what court(s) and in what states, and Plaintiffs would have ready access to any documents filed in any such proceedings.

Finally, it is not clear whether Plaintiffs' counsel conducted a diligent search even for responsive court records in their own clients' possession. While Plaintiffs' counsel represented to Defendants' counsel that they are not withholding any responsive documents in their clients' or the Next Friends' actual possession, Ex. 5, Plaintiffs did not produce a single court document for 10 of the 11 Named Plaintiffs. It is not plausible that 10 of the 11 Named Plaintiffs (or their current or former lawyers) do not have a single court record, given their years of participation in abuse-and-neglect and/or juvenile justice proceedings. Indeed, it is not clear if Plaintiffs' counsel even asked the Named Plaintiffs' themselves or their parents or legal guardians whether they had any court records in their possession.

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel should be granted.

Respectfully submitted,

/s/ Philip J. Peisch
Philip J. Peisch (WVSB #24403)
Caroline M. Brown
Julia M. Siegenberg
Brown & Peisch PLLC
1225 19th Street NW, Suite 700
Washington, DC 20036

/s/ Steven R. Compton
Steven R. Compton (WVSB #6562)
West Virginia Attorney General's Office
812 Quarrier Street, 6th Floor
Charleston, WV 25301

October 27, 2023

## CERTIFICATE OF SERVICE

I, Philip J. Peisch, hereby certify that I caused a true and correct copy of Defendants'

Motion to Compel be delivered to the following via ECF notification:

Marcia Robinson Lowry
Julia Tebor
Jonathan Borle
A Better Childhood
355 Lexington Ave. Floor 16
New York, NY 10017

Richard W. Walters
J. Alexander Meade
Shaffer & Schaffer, PLLC
2116 Kanawha Blvd East
P.O. Box 3973
Charleston, WV 25304

John Mazezka
Disability Rights of West Virginia
1207 Quarrier Street, Suite 400
Charleston, WV 25301


October 27, 2023                       /s/ Philip J. Peisch
                                       Philip J. Peisch (WVSB #24403)
                                       Caroline M. Brown
                                       Julia M. Siegenberg
                                       Brown & Peisch PLLC
                                       1233 20th Street NW, Suite 505
                                       Washington, DC 20036

                                       /s/ Steven R. Compton
                                       Steven R. Compton (WVSB #6562)
                                       West Virginia Attorney General's Office
                                       812 Quarrier Street, 6th Floor
                                       Charleston, WV 25301