UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | |
|---|---|
| **Jonathan R.**, minor, by Next Friend, Sarah **DIXON**, *et al.*, | )<br>)<br>)<br>) |
| Plaintiffs, | ) Class Action<br>) 3:19-cv-00710 |
| v. | )<br>) |
| **Jim JUSTICE**, in his official capacity as the Governor of West Virginia, *et al.*, | )<br>)<br>)<br>) |
| Defendants. | ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Defendants ask this Court to compel Plaintiffs to obtain HIPAA releases from the Named Plaintiff children and to identify, subpoena, and produce every service, medical, educational, and court record created in the last five years for each child, based on an entirely speculative theory of relevance. Not only are Defendants' requests incredibly overbroad, unduly burdensome, and not tailored to the time period relevant to this litigation, but Defendants fail to articulate why even a narrow subset of these records would be relevant to any of the claims or defenses at issue in this case.

Defendants' arguments ignore that two classes have been certified and that Plaintiffs' claims focus on systemic violations of *all* West Virginia foster children's substantive due process and federal statutory rights. Defendants failed to request these records prior to the parties' briefing on class certification and this Court's decision on the same, and they cannot now seek these records in an effort to relitigate class certification. Additionally, records pertaining to the individual

1

Named Plaintiffs that do not appear in their DHHR casefiles have little relevance, if any. The burden of requiring the Named Plaintiffs—current and former foster children who have already suffered trauma—to perform extensive work to collect these documents, therefore, is wholly disproportionate.

Accordingly, the Court should deny Defendants' Motion to Compel and preclude Defendants from subpoenaing the requested records.

## LEGAL STANDARD

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, parties may only obtain discovery regarding a matter that is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Court must also consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Thus, "discovery, 'like all matters of procedure, has ultimate and necessary boundaries.'" *Ceresini v. Gonzales*, No. 3:21-cv-40 (GROH), 2022 U.S. Dist. LEXIS 37958, at *9 (N.D. W. Va. Mar. 3, 2022) (quoting *Gilmore v. Jones*, No. 3:18-cv-17, 2021 U.S. Dist. LEXIS 4382, at *3 (W.D. Va. Jan. 8, 2021)). Discovery must be limited if "(i) [it] is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Additionally, although "relevancy under the federal rules is very broadly defined . . . it is not unlimited, and may not unnecessarily intrude into the private matters of the parties." *Proa v.*

*Nrt Mid Atl.*, No. AMD-05-2157, 2009 U.S. Dist. LEXIS 154515, at *7 (D. Md. Feb. 13, 2009) (quoting *Avianca v. Corriea*, 705 F. Supp. 666, 667 (D.D.C. 1989)). Discovery requests seeking information of dubious relevance should be denied. *See, e.g.*, *Cohn v. Bond*, 953 F.2d 154, 159 (4th Cir. 1991) ("Discovery should not become a 'fishing expedition.'" (quoting *Sandcrest Outpatient Servs. v. Cumebrland City*, 853 F.2d 1139, 1147 (4th Cir. 1988))).

Requests for discovery production must "describe with reasonable particularity each item or category of items to be produced." *Causey v. Palmer*, No. 4:20-1724 (JD)(TER), 2021 U.S. Dist. LEXIS 22339, at *10 (D. S.C. Feb 5. 2021) (citing Fed. R. Civ. P. 34(b)(1)(A)). Courts may deny requests to compel discovery that are not described with sufficient particularity. *See, e.g.*, *id.* (denying plaintiff's motion to compel "dispositions on all lawsuits filed on the named defendants" as "overly broad as [the request] contains no date restriction, subject matter restriction, and fails to set forth any parameters"); *York v. Capers*, No. 1:19-2885 (RMG)(SVH), 2020 U.S. Dist. LEXIS 8582, at *3 (D.S.C. Jan. 17, 2020) (finding defendant's request for all plaintiff's records from the Florence County Detention Center lacked requisite reasonable particularity, was overbroad and did not demonstrate relevance or necessity of the documents).

## ARGUMENT

### I. Defendants' Requests for Records and Communications From Every Service Provider of the Named Plaintiffs Should Be Denied (Request Numbers 1 and 2)

Request Numbers 1 and 2 are not described with reasonable particularity, seeking communications with "any provider of services" and "[a]ll documents concerning any medical services, psychiatric services, behavioral health services or mental health services received by any of the Named Plaintiffs" over the last five years. *See* Def. Motion to Compel at 4-5, ECF No. 380; Fed. R. Civ. P. 34(b)(1)(A). Producing the requested information would impose a significant

3

burden on the Named Plaintiff children, which substantially outweighs the importance of the information to this case.[1]  *See* Fed. R. Civ. P. 26(b)(1).

To comply with Defendants' discovery requests, the Named Plaintiffs, eight of whom are under eighteen years old,[2] would have to determine every service provider that they visited over the last five years—information that DHHR deemed not relevant enough to include in the children's case files—and would then have to sign tens if not hundreds of medical releases.  These children have been in many different settings, with different caretakers over the last five years, and do not necessarily have any way in which to identify all the service providers with whom they have come into contact.  Any list of service providers that they might come up with—if they could come up with any—would likely be incomplete, at best.

Defendants recognize that the Plaintiff children would need to sign HIPAA releases to obtain their records but cite no authority supporting their request that the Court compel Plaintiffs to do so.  *See* Def. Motion to Compel at 7.  Courts in the Fourth Circuit have held that they are without power to compel individuals to execute medical release forms.  *See, e.g.*, *Stokes v. IKEA US Retail, LLC*, No. 22-cv-01377-JMC, 2023 U.S. Dist. LEXIS 24800, at *16 (D. Md. Feb. 13, 2023) ("[T]he Court recognizes that Defendant has not provided the Court with a citation to any authority indicating that this Court holds such a power of compulsion regarding medical releases.  To the contrary, courts in the Fourth Circuit have found that courts are without such power . . . .");

---

[1] Defendants argue that Plaintiffs waived their objection that these discovery requests are unduly burdensome by virtue of not including it in their initial written response to Defendants' Third Request for Production ("RFP").  Def. Motion to Compel at 7 n.3.  Plaintiffs, however, raised burdensomeness concerns with Defendants via email and during the parties' conferral, and objected in their initial written response that Request Number 2 was, among other things, overbroad and not proportional to the needs of the case. *See* Ex. 4 to Def. Motion to Compel at 5, ECF No. 380-4.

[2] Of the eight children under age eighteen, half are currently under twelve.  For some of these children, they are being asked to recall every service provider that they visited since they were toddlers.

*Johnson v. W. Va. Univ. Bd. of Governors*, No. 2:21-cv-00380, 2022 U.S. Dist. LEXIS 240000, at *11 (S.D. W. Va. Apr. 28, 2022) ("[G]enerally, courts do not order a plaintiff to execute medical releases."). Moreover, medical records are not in the patient's possession, custody, or control for discovery purposes. *See Ayers v. Cont'l Cas. Co.*, No. 5:05-cv-95, 2007 U.S. Dist. LEXIS 54389, at *15-16 (N.D. W. Va. June 25, 2007) ("While a patient may be able to request medical records from a physician, the records are not sufficiently within the patient's control to qualify under Rule 34.").

If the children were nonetheless compelled to execute HIPAA releases for the service providers that they remember, Plaintiffs would then have to send the releases to tens if not hundreds of doctors' offices, dentist's offices, clinics, hospitals, specialists, therapists, and institutions. And upon receipt of what would surely be thousands of pages of records, Plaintiffs would need to conduct a privilege review to determine whether any information needed to be redacted. The substantial time, effort, and resources required to comply with these requests are grossly disproportional to the negligeable value that the sought after discovery would bring to this case.[3]

Records and communications that post-date the children's time in DHHR's custody have no value to this litigation and would not affect any claim or defense. Nonetheless, Defendants seek information "from the last five years" for all children, regardless of their age, whether they are still in DHHR's custody, or how long they have been out of DHHR's custody.[4] This case,

---

[3] Additionally, while Plaintiffs request that the Court preclude Defendants from subpoenaing these records on the grounds that they are irrelevant to this litigation, Defendants have the ability to obtain the requested information through a subpoena and court order, which would be less burdensome and perhaps more reliable than the process that Plaintiffs would have to undergo to obtain the information. *See, e.g.*, Fed. R. Civ. P. 45; *Fields v. Lemmon*, 264 F.R.D. 260 (S.D. W. Va. 2010).

[4] While Defendants assert in their Motion to Compel that they seek these records "for the last five years," Def. Motion to Compel at 8, Defendants' Third Request for Production seeks records dating back to July

however, is about whether Defendants' policies and practices place current foster children *who are in DHHR's custody* at a substantial risk of harm *while in custody.* Moreover, the relevance of the post-custodial experiences of individual Named Plaintiffs is further diminished now that the Court has granted class certification.

In an effort to explain why records created after a child left custody might be relevant, Defendants argue that if the child "experienced a serious psychiatric event after [he or she] was discharged from a residential treatment program . . . [it] would be probative of whether the residential placement was 'unjustified.'" Def. Motion to Compel at 8. This argument reflects a fundamental misunderstanding of Plaintiffs' claims. And Defendants' reasoning is illogical. It is simply incorrect to state that DHHR's decision to institutionalize a child could be justified by a psychiatric event that followed his or her institutionalization. In deciding to place a child in an institution, the child's caseworker would have relied on the evidence available to him or her at the time, which does not include a psychiatric episode that had not yet occurred. Moreover, records demonstrating that a particular child suffered a serious psychiatric event after leaving foster care have no bearing on whether the certified class of all foster children are at *risk* of improper placement and harm. Whether a particular child's institutionalization was justified is irrelevant to the analysis of *risk* of harm.

Records created while the Named Plaintiffs were in DHHR's custody that are not contained in their case files are also irrelevant for the same reason; namely, they document only a few individual children's treatment while Plaintiffs' claims pertain to a certified class of all foster children. Nonetheless, Defendants assert that these records are relevant to Plaintiffs' substantive

---

1, 2019. *See* Ex. 1 to Def. Motion to Compel at 3, ECF No. 380-1. The discrepancy further underscores the arbitrary nature of Defendants' requested timeframe.

due process claims because they might show that a Named Plaintiff improved after receiving treatment, which would "rebut Plaintiffs' allegations that Defendants are 'deliberately indifferent.'" *See* Def. Motion to Compel at 6. Defendants' argument reveals a misunderstanding of what is required to prove deliberate indifference. Plaintiffs must show that Defendants are deliberately indifferent to the substantial risk of harm that DHHR's policies and practices create. Evidence that a single child received helpful medical treatment on one occasion has no bearing on whether Defendants ignore systemic deficiencies that place all foster children at risk. Moreover, evidence that a child was successfully treated does not disprove that even *that* child faced a substantial risk of harm.

Defendants' argument with respect to Plaintiffs' ADA claims reflects a similar misunderstanding. Defendants argue that Plaintiffs need to prove that children in the ADA Subclass were "subject to 'unjustified institutional isolation,'" and diagnoses in their medical or psychiatric records could justify their institutionalization. Def. Motion to Compel at 6. In fact, Plaintiffs do not need to prove that a single child was unnecessarily institutionalized, only that all children in the ADA Subclass are at *risk* of it. *See* Opinion on Class Cert. at 29-32, 33 ("Common questions therefore exist regarding whether Defendants' provision of services is in fact deficient, and if so, whether the deficiency places foster children with disabilities at risk of unnecessary institutionalization."). Whether any given child has diagnoses that require institutionalization is not relevant to whether DHHR has a sufficient number of community-based services available or whether the ADA Subclass is at risk of unnecessary institutionalization. Moreover, because the records that Defendants seek are not contained in the child's DHHR case file, it is not possible that DHHR relied on information in them when deciding where to place the child or what services he

7

or she needed. Defendants cannot go on a fishing expedition for records in an attempt to justify their decision-making after the fact. *See Cohn*, 953 F.2d at 159.

For these reasons, Plaintiffs rejected Defendants' October 6 compromise proposal by which Defendants would not be required to supplement the named Plaintiffs' case files or produce any documents in possession of third parties. Def. Motion to Compel at 4. Unlike the records that Defendants now seek, which were never contained in the named Plaintiffs' case files, the records that DHHR obtained and presumably relied on for case planning while the children were in custody, are anecdotally relevant to Plaintiffs' claims. Such records were used by DHHR in making decisions about the Named Plaintiffs. Whereas records that DHHR was never aware of and deemed irrelevant to any child welfare purpose, *see, e.g.*, Def. Motion to Compel at 8 ("DHHR generally does not collect the medical records of children in its custody, except when specifically needed for some child welfare purpose"), have no bearing on Defendants' policies, practices, decision making, or state of mind. Additionally, supplementing the children's case files merely requires that Defendants produce any new documents that have been added to the case files, which are already in DHHR's actual possession, custody, and control. And given that eight of the Named Plaintiffs are no longer in DHHR's custody, there should be no new information in their case files.

Accordingly, the Court should deny Defendants' Motion to Compel discovery in response to Request Numbers 1 and 2 on the grounds that the discovery sought is unduly burdensome, overbroad, and irrelevant.

## II. Defendants' Requests for Educational Records and Communications Should Be Denied (Request Numbers 4 and 5)

It would be unduly burdensome for Plaintiffs to identify and obtain "[a]ll documents concerning any education services" that the Named Plaintiffs received "while they have been in the legal custody of DHHR" and "[a]ll communications" between the Named Plaintiffs, their next

friends, and "any school attended" by the Named Plaintiffs. *See* Def. Motion to Compel at 10. Obtaining these irrelevant documents would require the Named Plaintiff children and their legal guardians to do an extensive amount of work and would require Plaintiffs to conduct an extensive privilege review. Moreover, Plaintiffs would need to track down every one of the Named Plaintiffs' former teachers, guidance counselors, and other school staff to determine whether any of these people have saved communications with a Named Plaintiff or his or her next friend that do not appear in the child's school records.

The incredible burden that complying with these discovery requests would place on the Named Plaintiff children significantly outweighs the benefit of the information to Defendants. Defendants provide only speculative and illogical scenarios in an attempt to argue that the requested information is relevant. They argue that "educational records that show that a Named Plaintiff was thriving in school would rebut Plaintiffs' allegations of harm to the child" and "education records showing behavior and disciplinary history would be probative of whether placement in residential treatment was 'unjustified.'" Def. Motion to Compel at 11. Again, Defendants misunderstand Plaintiffs' claims. Whether any given child was harmed or justifiably institutionalized has no bearing on this certified class action lawsuit, in which Plaintiffs allege that all foster children are at risk of harm due to Defendants' policies and practices. Moreover, Defendants' reasoning is unsound, as a child's academic performance reveals nothing about whether that child was at risk of harm. And educational records that show a child's disciplinary history cannot be probative of whether DHHR's placement of that child was justified when DHHR did not have access to the information in those records when it placed the child.

Defendants argue that the communications sought are relevant because if there are communications between a teacher and a Named Plaintiff that indicate that the child is thriving in

school after leaving DHHR's custody, such communications would rebut Plaintiffs' claims that the child was harmed while in custody. Def. Motion to Compel at 12. Not only is Defendants' relevancy explanation entirely hypothetical, but it once again ignores that Plaintiffs' claims are based on systemic issues that create a substantial *risk* of harm to a *certified class* of all foster children and a certified subclass of disabled foster children.

Additionally, as with Request Numbers 1 and 2, Request Numbers 4 and 5 should be denied on the grounds that they are overbroad and lack the requisite reasonable particularity. *See* Fed. R. Civ. P. 34(b)(1)(A). Defendants arbitrarily seek communications for all Named Plaintiffs and their next friends from the last five years, regardless of the children's ages or whether they are still in DHHR's custody. Moreover, Defendants' request for all documents concerning any educational services that the Named Plaintiffs received while in DHHR's custody is not limited by subject matter and would require Plaintiffs to obtain and review an impossibly vast array of records, including the children's report cards, homework, school assignments, exams, class notes, lesson plans, enrollment information, and payment information, among other documents. *See, e.g.*, *Causey*, 2021 U.S. Dist. LEXIS 22339, at *10.

Accordingly, the Court should deny Defendants' Motion to Compel discovery in response to Request Numbers 4 and 5 on the grounds that the discovery sought is overly burdensome, overbroad, and irrelevant.

### III. Defendants' Request for Named Plaintiffs' Court Records Should Be Denied (Request Number 7)

Defendants' request for "[a]ll documents filed in any court concerning any of the Named Plaintiffs" should be denied as unduly burdensome. To comply with this request, the Named Plaintiff children would have to determine every court appearance that they have had, some of which they may not have even attended, over the last five years, including the name of the court,

10

the date of the proceeding, and the type of proceeding, all of which would be necessary for Plaintiffs to obtain the records. Court records that are critical to the children's abuse and neglect cases should already be in their DHHR case files. This request, therefore, expects the children to not only recall all their court appearances, but to decipher which of those appearances were related to their abuse and neglect cases and which were related to some other issue that DHHR may not have been involved in. At best, these recollections will be incomplete.

For children who are now nineteen years old or older or for whom juvenile jurisdiction has been terminated, their juvenile records are sealed. Rule 50(a) W. Va. Judiciary Rules of Juvenile Procedure. "Once the record of a juvenile is sealed, it may only be opened by order of the circuit court." Rule 50(c) W. Va. Judiciary Rules of Juvenile Procedure. Defendants' request, therefore, requires Plaintiffs to determine whether any child has a sealed juvenile court record and petition the circuit court to unseal the record. This process would require Plaintiffs to submit a formal request and accompanying affidavits justifying their need for the sealed information, could require a hearing, and would undoubtedly cause significant delay to the discovery process.

As to court records that are not sealed, Defendants fail to explain why they are unable to obtain these publicly available documents. It would be less burdensome for Defendants to obtain information about these children's court appearances from the adult DHHR caseworkers who should have been aware of them than for Plaintiffs to attempt to obtain this information from the children themselves. Defendants' request to compel this discovery should be rejected as Defendants could obtain it "from some other source that is more convenient, less burdensome, [and] less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

In addition to being unduly burdensome, Defendants' request is not particularly described, and courts in the Fourth Circuit have declined to compel production of similarly overbroad

11

discovery requests for legal documents. *See, e.g.*, *Causey*, 2021 U.S. Dist. LEXIS 22339, at *10 (denying plaintiff's motion to compel "dispositions on all lawsuits filed on the named defendants" as "overly broad as [the request] contains no date restriction, subject matter restriction, and fails to set forth any parameters."); *York*, 2020 U.S. Dist. LEXIS 8582, at *3.

Additionally, for the same reasons that an individual Plaintiff's medical and educational records are irrelevant, his or her court records are immaterial to any claim or defense in this case. Defendants argue that if the records show that a Plaintiff was charged with a crime after leaving DHHR's custody, that "would be probative of whether the Named Plaintiffs' [sic] recent placement in residential treatment was 'unjustified.'" Def. Motion to Compel at 15. Even if this reasoning made sense, whether a particular child's placement was justified is not at issue in this case. *See supra* Part I. And if the appropriateness of a particular child's placement was at issue, it would not be impacted by an arrest that post-dated the placement.

Accordingly, the Court should deny Defendants' Motion to Compel discovery in response to Request Number 7 on the grounds that the discovery sought is overly burdensome, overbroad, and irrelevant.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Compel in its entirety and preclude Defendants from subpoenaing the requested records.

Respectfully submitted,

/s/ *Marcia Robinson Lowry*
Marcia R. Lowry, *admitted pro hac vice*
Julia Tebor, *admitted pro hac vice*
Jonathan Borle, *admitted pro hac vice*
Lindsay Gus, *admitted pro hac vice*
A Better Childhood
355 Lexington Avenue, Floor 16

New York, NY 10017
Tel.: (646) 795-4456
Fax: (212) 692-0415
mlowry@abetterchildhood.org
jtebor@abetterchildhood.org
jborle@abetterchildhood.org
lgus@abetterchildhood.org

*/s/ Richard W. Walters*_____
Shaffer & Shaffer, PLLC
Richard W. Walters, WVSB #6809
rwalters@shafferlaw.net
J. Alexander Meade, WVSB #13021
ameade@shafferlaw.net
2116 Kanawha Boulevard, East
P.O. Box 3973
Charleston, WV 25339
Tel: (304) 244-8716
Fax: (304) 344-1481

/s/ *J. Marty Mazezka*_____
Disability Rights of West Virginia
J. Marty Mazezka, WVSB #4572
jmazezka@drofwv.org
5088 Washington St. W., Suite 300
Charleston, WV 25301
Tel: (304) 346-0847
Fax: (304) 346-0687

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | |
|---|---|
| Jonathan R., minor by Next Friend Sarah DIXON, *et al.*, | ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) Case No. 3:19-cv-00710 |
| Jim JUSTICE, in his official capacity as the Governor of West Virginia, *et al.*, | ) ) ) ) |
| *Defendants*. | ) |

**CERTIFICATE OF SERVICE**

I, J. Alexander Meade, counsel for Plaintiffs, hereby certify that I have this 9th day of November, 2023, electronically filed "**Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Compel Production of Documents**" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Philip J. Peisch, Esquire
Caroline M. Brown, Esquire
Julia Siegenberg, Esquire
Rebecca Wolfe, Esquire
Brown & Peisch PLLC
1233 20th Street NW, Suite 505
Washington, DC 20001

Steven R. Compton, Esquire
West Virginia Attorney General's Office
812 Quarrier Street, 2nd Floor
Charleston, WV 25301

*/s/ J. Alexander Meade*
J. Alexander Meade (WVSB #13021)