## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| JONATHAN R., *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
|     v. ) | |
| ) | Case No. 3:19-cv-00710 |
| JIM JUSTICE, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

  The West Virginia Department of Health and Human Resources ("DHHR") and other Defendants deeply regret – and apologize to Plaintiffs and the Court – that certain electronically stored information ("ESI") potentially relevant to this litigation was not preserved despite Defendants' reasonable efforts to do so.  Defendants stand ready to provide such additional discovery as may be necessary in light of the unavailability of that information, and Defendants will accede to Plaintiffs' request that Defendants not argue that the deleted ESI would have shown that the DHHR Defendants did not act with deliberate indifference, *see* Doc. 378, at 2.

  However, Defendants strongly oppose Plaintiffs' alternative requested sanctions that the Court declare that "Plaintiffs have established the deliberate indifference element of their substance due process claims" or that the Court "preclude Defendants from moving for summary judgment on the deliberate indifference element of Plaintiffs' substantive due process claims" with respect to the DHHR Defendants.  *Id.* at 1, 2.  Both of these requested sanctions are excessive, and neither meets the standard for sanctions set forth in Federal Rule of Civil Procedure 37(e).

  To prove their Substantive Due Process claims in this case, Plaintiffs must prove, among other things, that DHHR's practices create an ongoing, substantial, and unreasonable risk of harm to the State's foster children, both currently and in the future, such that prospective, injunctive relief is required.  By contrast, the emails that were not preserved are **between individuals no**

1

**longer employed by** DHHR or the State of West Virginia, or emails between those individuals no longer employed by DHHR and non-state employees. Further, DHHR has produced nearly 900,000 pages of documents in this case, and has produced or will produce **all** of the responsive emails of the current Commissioner of the Bureau for Social Services ("BSS") (responsible for child welfare), who has served in that role since 2021, and many of his predecessor's; **all** of the responsive emails of the current Deputy Secretary overseeing child welfare since she began this role, and **all** of those of her predecessor; **all** of the emails of the current interim Secretary of DHHR and many of those of her predecessors; as well as **all** of those of the incoming Secretary of the Department of Human Services ("DHS"). [1]

While Defendants acknowledge that some emails between former officials (or between those officials and non-state employees) may have contained relevant information and should have been preserved, they are far from "essential" to Plaintiffs' claims for prospective relief, which is the standard for establishing prejudice, and there was no "intent to deprive" Plaintiffs of this evidence, which is the standard for levying the type of severe sanctions that Plaintiffs seek here.

## BACKGROUND

This case was initiated on September 30, 2019 against Governor Justice, DHHR, then-Secretary Bill Crouch, then-Deputy Secretary Jeremiah Samples, and then-Commissioner of DHHR's Bureau for Children and Families ("BCF") Linda Watts, in their official capacities. Shortly thereafter, on December 4, 2019, April Robertson, the General Counsel of DHHR, sent a "litigation hold" to the named individual DHHR Defendants, as well as to the three Deputy Commissioners of BCF with policy-making and field oversight responsibilities, the BCF

---

[1] Effective January 1, 2024, DHHR will be split into three separate cabinet agencies of the State, one of which will be DHS. DHS will include BSS, which oversees the child welfare program.

Administrative Services Manager, and the DHHR Chief Information Officer. Ex. 1, ¶ 3. A copy of the Litigation Hold was also sent to the WV Office of Technology ("WVOT"), which is a separate government agency within the WV Department of Administration charged with operating and administering the email system of state agencies, including DHHR. *See id.*, ¶ 3; Ex. 2, ¶ 2.

The Litigation Hold followed the same template that DHHR had previously used for preserving documents and ESI in other litigation. Ex. 1, ¶ 4. It instructed the recipients "and the employees and contractors" under their supervision to "preserve and maintain . . . all documents regarding DHHRS's management of the foster care program," and noted that "the duty to preserve" extended to "electronically stored information" including "email and attachments" as well as "all paper information." *See id*, ¶ 5. The Litigation Hold states, in bold lettering, "**[if] there is a formal or informal document retention policy, destruction policy, or other business practice regarding the destruction of information, you are directed to SUSPEND any and all policies until the litigation has concluded.**" *See id.*, ¶ 6. As Ms. Robertson states in her Declaration, she had every expectation that the Litigation Hold was sufficient to preserve the ESI of the named recipients, including in the email accounts maintained by WVOT. Ex. 1, ¶ 10.

Throughout 2020, DHHR and WVOT worked together to search the email accounts of 10 custodians identified by Plaintiffs (including Secretary Crouch, Commissioner Watts, Kevin Henson, Tanny O'Connell, and Laura Barno), and produced thousands of ESI documents to Plaintiffs.

In late September 2023, in the course of conducting a new set of searches for 40 custodians identified by Plaintiffs, DHHR learned for the first time that the accounts of 11 of the 40 custodians had been deleted 30 days after termination of their employment, which is WVOT's standard and automated practice for individuals leaving state government. Ex 2, ¶ 3. WVOT later confirmed

3

that the emails of the individuals listed in Ms. Robertson's Litigation Hold who had left DHHR employment had not been preserved. However, WVOT also determined that it could still retrieve all emails that any of the 11 custodians sent to or received from (including cc's) any current BSS employee. *See* Ex. 2, ¶ 10.

On October 6, 2023, Defendants informed Plaintiffs that many of the emails for these 11 custodians had not been preserved. DHHR also immediately worked with WVOT to search the emails of all current BSS employees to retrieve emails that were sent to or from (including cc's) the three custodians who were included in the Litigation Hold (Crouch, Watts, and O'Connell);[2] Jeff Coben, who served for six months as Interim Secretary of DHHR after Bill Crouch's departure; Jane McCallister; and Laura Barno.[3] *See* Ex. 3, ¶ 3. Defendants also searched over 50,000 emails that had been pulled in 2020 from Secretary Crouch, Commissioner Watts, Ms. Barno, Ms. O'Connell, and Mr. Henson, but which had not been responsive to Plaintiffs' prior requests. *See id.*, ¶¶ 3-5.

In total, Defendants were able to retrieve hundreds of thousands of emails to, from, or copying the following seven individuals:

---

[2] Defendants did not do a similar search for Kevin Henson, who retired just one month after his emails with search terms negotiated by the parties were pulled, and responsive documents were produced to Plaintiffs. However, Defendants are willing to do an additional search of the files of other BSS employees for emails from, to, or copying Kevin Henson if the Court finds it necessary.

[3] In the letter from Defendants' counsel to Plaintiffs' counsel dated October 6, 2023, and attached as Exhibit 7 to Plaintiffs' Motion for Sanction, Doc. 377, counsel erred in stating that Jane McCallister and Kevin Henson had also been included in the Litigation Hold. *See* Doc. 377-7, at 2. Ms. McCallister and Mr. Henson were not included in the Litigation Hold.

4

| Name | Total emails to, from, or cc | Total emails and attachments |
|---|---:|---:|
| Bill Crouch | 34,582 | 60,465 |
| Linda Watts | 118,973 | 214,043 |
| Jeffrey Coben | 3,128 | 4,050 |
| Laura Barno | 86,136 | 139,478 |
| Jane McCallister | 72,388 | 132,676 |
| Tanny O'Connell | 149,469 | 256,674 |
| Kevin Henson | 50,942 | 104,774 |

*Id*, ¶ 5.

Plaintiffs subsequently moved for sanctions based on Defendants' non-preservation of the email accounts of seven custodians: Crouch, Samples, Watts, O'Connell, McCallister, Barno, and Coben. *See* ECF No. 378 n.7.

## LEGAL STANDARD

Rule 37(e) of the Federal Rules of Civil Procedure governs the failure to preserve ESI. Since 2015, that rule has provided:

> **Failure to Preserve Electronically Stored Information**. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the

> information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

Although Plaintiffs state that their motion is also brought under the Court's inherent authority, Doc. 378, at 4, the Advisory Committee's notes to the 2015 amendment explain that the rule "forecloses reliance on inherent authority or state law to determine when certain measures would be used." Fed. R. Civ. P. 37(e) Advisory Committee Notes to 2015 amendment; *Gov't Employees Health Ass'n v. Actelion,* 343 F.R.D. 474, 482 (D. Md. 2023); *Johns v. Gwinn*, 503 F. Supp. 3d 452, 461 (W.D. Va. 2020). The amended version of Rule 37(e) "significantly limits a court's discretion to impose sanctions for the loss or destruction of ESI[.]" *Gov't Employees Health Ass'n*, 343 F.R.D. at 482; *see Jenkins v. Woody*, No. 3:15-CV-355, 2017 WL 362475, *12 (E.D. Va. Jan. 21, 2017).

The burden of proof is on the party seeking sanctions, and "the general approach of courts in the Fourth Circuit has been to apply the clear and convincing evidence standard, especially where a relatively harsh sanction like an adverse inference is sought." *See Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104-05 (E.D. Va. 2018) (collecting cases); *Gov't Emps. Health Ass'n,.*, 343 F.R.D. at 482; *Paul v. W. Express, Inc.*, No. 6:20-CV-00051, 2022 WL 838121, *3 (W.D. Va. Mar. 21, 2022).

While a court cannot impose sanctions unless the elements of Rule 37(e) have been met, the decision to impose sanctions if those elements are satisfied still lies within the broad discretion of the district court. *See Knight v. Boehringer Ingelheim Pharms., Inc.*, 323 F. Supp. 3d 837, 844 (S.D. W. Va. 2018).

## ARGUMENT

As this Court has previously held, certain "threshold elements" must be established if sanctions are to be considered under Rule 37(e): (1) the information should have been preserved,

(2) the information was lost, (3) the loss occurred because a party failed to take reasonable steps to preserve it, and (4) the information cannot be restored or recovered through additional discovery. *In re: Ethicon, Inc.*, *Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2:12-CV-00497, 2016 WL 5869448, *3 (S.D.W. Va. Oct. 6, 2016) (Goodwin, J.). If these elements are satisfied:

> Rule 37(e) next establishes two different avenues parties can take to demonstrate that sanctions are warranted—each having its own final elements that must be established. The first avenue, Rule 37(e)(1), requires a court to make a finding of prejudice before sanctions may be warranted. The second avenue, Rule 37(e)(2), requires a court to make a finding that a party acted with the *intent* to deprive the opposing party of the relevant information before certain severe sanctions are warranted.

*Id.*(emphasis in original); *see also Gov't Employees Health Ass'n*, 343 F.R.D. at 481.

In this case, Plaintiffs have not established the threshold elements for sanctions to be considered; they have not established prejudice that would warrant a sanction under Rule 37(e)(1); and they have not shown that Defendants acted with the intent to deprive them of relevant information as required by Rule 37(e)(2) for the severe sanction of an adverse finding.

**I.   Plaintiffs Have Not Established the Threshold Requirements of Rule 37.**

Defendants do not dispute that the email accounts of the seven custodians identified in Plaintiff's Motion should have been preserved as containing potentially relevant information. However, Defendants dispute that any of the three remaining elements of Rule 37 have been satisfied.

First, much of the information in the non-preserved accounts was not lost. As the 2015 Advisory Committee Note recognizes, ESI "often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere." DHHR, working together with WVOT, has retrieved documents from, to, or copying six of the seven custodians at issue from the accounts of current DHHR employees. This process has retrieved hundreds of

7

thousands of emails and attachments, of which approximately 45,900 have been produced as responsive to Plaintiffs' discovery requests (in addition to more than 150,000 emails and attachments from other custodians). While the retrieved documents would not include emails solely between the former DHHR employees or other individuals no longer employed by DHHR, Plaintiffs have not shown that these emails between former DHHR employees are relevant in a case seeking to prove a *current* Substantive Due Process violation and enjoin DHHR's *current* practices and policies.

Second, DHHR took reasonable steps to preserve the information of three of the seven custodians at issue by including them in the Litigation Hold sent to them and to WVOT (Crouch, Watts, and O'Connell). WVOT's apparent misunderstanding as to the scope of Ms. Robertson's request should not be ascribed to DHHR, and Plaintiffs have cited no cases in which a sanction was imposed where the ESI was purged by a non-party such as WVOT. (Instead, Plaintiffs repeatedly and erroneously state that DHHR or Defendants "destroyed" the ESI). In issuing the Litigation Hold, Ms. Robertson followed the procedures that the agency had long used and had no reason to question.

With respect to the other four custodians at issue, Defendants acknowledge that Jeff Coben should have been added to the Litigation Hold for the six months in which he served as Interim Secretary, but Defendants dispute that they were required to add Jane McCallister, Kevin Henson, or Laura Barno to the Litigation Hold, as Plaintiffs aver. Although Plaintiffs had previously sought information from each of them, none were in policy-making positions or overseeing field operations, and Plaintiffs' Complaint is addressed to "policies and practices" of DHHR. To the extent any of them produced relevant reports in the course of their duties, those reports are preserved and have been (or can be) produced.

Third, Plaintiffs have not established that the information cannot be restored or recovered through additional discovery. As set forth above, much of the lost ESI can and has been restored by searching the accounts of current BSS employees. Further, Plaintiffs have not established by clear and convincing evidence why the information that has not been restored through this process—*i.e.*, emails solely between former employees, or between former employees and individuals outside BSS—cannot be replaced through other discovery, including audits and reports produced by Defendants, *see* Section II, *supra*; depositions; interrogatories; requests for admission; or even stipulations. For example, to the extent Plaintiffs' believe it is important to know what former DHHR employees knew about certain subjects in 2021 or 2022 (which Defendants dispute is relevant, *see* Section II, *supra*) and that e-mails between former DHHR employees may shed some light on those questions, Plaintiffs can depose those former employees and ask them questions about their knowledge of those subjects in 2021 and 2022.

**I.  Plaintiffs Have Not Established Prejudice That Would Support Sanctions Under Rule 37(e)(1).**

Even if Plaintiffs have satisfied all of the threshold elements of Rule 37(e), in order for the Court to impose any sanction other than an adverse inference or adverse finding (for which a higher standard is required), Plaintiffs must establish prejudice. *In re: Ethicon, Inc.*, 2016 WL 5869448, at *3; *see also Gov't Employees Health Ass'n,* 343 F.R.D. at 481.

Prejudice arises from spoliation only when the moving party proves it has prevented the party from presenting "evidence essential to its underlying claim." *Knight*, 323 F. Supp. 3d, at 845 (cleaned up); *Gov't Employees Health Ass'n,* 343 F.R.D. at 481-2 ("The kind of prejudice sufficient to trigger Rule 37(e)(1)" occurs "when, as a result of the spoliation, the party claiming spoliation cannot present evidence essential to its underlying claim.") (cleaned up); *Al-Sabah v. Agbodjogbe*, No. CV ELH-17-730, 2019 WL 4447235, *5 (D. Md. Sept. 17, 2019) (prejudice only if the

9

evidence is "essential" to claim). Determining whether prejudice exists thus "necessarily [requires] an evaluation of the information's importance in the litigation." *Knight,* 323 F. Supp. 3d at 845; *see also* Advisory Note to 2015 Amendment to Rule 37(e). Mere "speculation" that the lost evidence "would have been helpful" is not enough to establish prejudice. *Simon v. City of New York*, No. 14-CV-8391 (JMF), 2017 WL 57860, *7 (S.D.N.Y. Jan. 5, 2017).

Plaintiffs assert that the non-preserved emails are essential to proving the deliberate indifference element of their Substantive Due Process claims, which require them to establish that Defendants were aware of and failed to act with respect to: (1) an allegedly inadequate array of appropriate placements; (2) an alleged lack of appropriate case planning; and (3) allegedly high caseloads and chronic understaffing. Doc. 351, at 17, 20, 21. As the Fourth Circuit has explained, in cases involving foster children, establishing deliberate indifference requires Plaintiffs to prove "at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice." *Doe ex rel. Johnson v. South Carolina Dept. of Soc. Servs.*, 597 F.3d 163, 175 (2010); *White by White v. Chambliss*, 112 F.3d 731, 737 (1997).

Plaintiffs claim that the non-preserved emails themselves are "essential" to establishing that the DHHR defendants were on notice of the deficiencies they allege. However, that claim cannot be supported in light of the numerous public documents, external reports and self-audits reviewing foster care placements, DHHR's case planning, and/or caseworker staffing issues, many of which are cited in Plaintiffs' Complaint and transparently discuss the same subject matter that is the subject of Plaintiffs' ESI discovery requests. These include federal reports (Child and Family Service Reviews ("CFSR"), the Adoption and Foster Care Analysis and Reporting System ("AFCARS"), and the National Child Abuse and Neglect Data System ("NCANDS")); West Virginia legislative audit reports; DHHR's legislative foster care data reports; DHHR's Child

10

and Family Services Plan; DHHR's Child Welfare Dashboard, which includes monthly updates on children in care, child placements, and workforce; the State's Memorandum of Understanding with the Department of Justice ("DOJ") regarding community placement and access to behavioral health services for adolescents; DHHR's biannual reports regarding its implementation of the DOJ agreement; DHHR's internal quality case review and monitoring from the Division of Planning and Quality Improvements, which produces several reports annually; and frequent testimony from DHHR officials to the legislature on its operations and challenges.

To the extent that Plaintiffs believe that the emails are necessary to establish that DHHR officials were aware of the contents of these and other reports, that information can be obtained through deposition, interrogatory, requests for admission, or even stipulation, which would cure any potential prejudice. *See, e.g., Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 526 (D. Md. 2010) (finding "no prejudice [if] the evidence destroyed was . . . merely cumulative to readily available evidence, or [if] the same evidence could be obtained from other sources"); *Wilson v. S.C. Dep't of Corr.*, No. CV 1:17-3032-RMG, 2020 WL 5627148 (D.S.C. Sept. 21, 2020) (no prejudice from the loss of missing documents reviewed in preparation of expert report when plaintiff had opportunity to depose the expert about his report, conclusions and data collected for it); *Fowler v. Tenth Planet, Inc.*, No. 1:21-CV-02430-JRR, 2023 WL 3569816, *2 (D. Md. May 19, 2023) (holding that "the missing text messages are not the only potential evidence on this issue" and "[a]ccordingly, the Court cannot conclude that they are "essential to [a party's] underlying claim"); *Sempowich v. Tactile Sys. Tech., Inc.*, No. 5:18-CV-488-D, 2020 WL 6265076, *10 (E.D.N.C. Oct. 23, 2020) (holding that there were "numerous other ways exist to accomplish the precise end [plaintiff] purports to pursue other than examining data sets she believes once existed on [defendant's] servers"), *vacated and remanded on other grounds*, 19 F.4th

11

643 (4th Cir. 2021); *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 2483800, *5 (E.D.N.C. June 7, 2017) (finding that "while the internet browser search information was automatically deleted and cannot be restored, other avenues of discovery are likely to reveal information about the searches performed in advance of the investor presentation," including through deposition testimony); *cf. In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 523 (S.D. W. Va. 2014) ("prejudice is less acute when there are sources from which at least some of the allegedly spoliated evidence can be obtained ... [and] when the party seeking discovery can obtain extrinsic evidence of the content of at least some of the deleted information from other documents, deposition testimony, or circumstantial evidence").

Unlike private corporations and even some governmental agencies, DHHR's BSS is an open book with respect to its performance and challenges, in part because of the litany of public reports and audits cited above. For example, to the extent Plaintiffs claim they need additional emails to establish that the DHHR Defendants were aware of the caseworker staffing and caseload issues, DHHR and BSS leadership have repeatedly and publicly acknowledged that they are aware of these challenges,[4] as they sought additional funding and explained the steps DHHR was taking to address them. Plaintiffs do not need former Commissioner Watts' or former Secretary Crouch's old emails to prove that Defendants were aware of the caseworker shortage.

They key issues in dispute for Plaintiffs' Substantive Due Process Claims are not whether DHHR leadership knows about the relevant challenges facing the child welfare system, but rather

---

[4] *See, e.g.,* "*Child Protective Services at 'Breaking Point' director says,*" The Weirton Daily News (Nov. 17, 2021) (reporting testimony of Commissioner Pack); "*State officials provide updates to child services and treatment during joint health committee meeting,*" WVMetro News (Aug. 13, 2023) (reporting testimony of Deputy Secretary Chapman and Commissioner Pack).

12

whether the *actions* DHHR has and is taking to address those challenges are so inadequate that they amount to "deliberate indifference." The emails are in no way relevant to this question.

Moreover, unlike most cases addressing alleged spoliation, which involve specific past events for which damages are sought, this case seeks prospective, injunctive relief. Under Supreme Court precedent, in order to prevail, Plaintiffs must be able to show that Defendants were "at the time suit was filed, ***and are at the time of summary judgment***, knowingly and unreasonably disregarding an objectively intolerable risk of harm, ***and that they will continue to do so.***" *Farmer v. Brennan*, 511 U.S. 825, 846 (1994) (emphasis added) (construing deliberate indifference standard). To that end, Defendants "***current*** attitudes and conduct" are paramount. *Id.,* at 827 (emphasis added). Because "[t]he sole function of an action for injunction is to forestall future violations," "an examination of 'a great amount of archeology'" with respect to past actions "is justified only when it illuminates or explains the present and predicts the shape of things to come." *See United States v. Oregon State Med. Soc.,* 343 U.S. 326, 333 (1952) (emphasis added); *see also D.G. by Stricklin v. Henry*, No. 08-CV-074-GKF-FHM, 2011 WL 13192864 (N.D. Okla. Aug. 3, 2011) (holding that a "liability cut-off date" in child welfare class action was inconsistent with proving an ongoing constitutional violation because the court "must take into account conditions existing at the time of trial in evaluating defendants' conduct and the risk of harm to plaintiffs").

The emails that are the subject of Plaintiffs' sanctions motions are part of a "great amount of archaeology," and they are relevant to Plaintiff's claims only to the extent that they "predict the shape of things to come." While it is conceivable that an email sent to or from a former official may have *some* minimal import on DHHR's "current" conduct, Plaintiffs have not made a showing that such emails are in fact relevant to their claims, and in any event, it is far from the "essential" and irreplaceable import that Plaintiffs ascribe to them.

13

Finally, even if Plaintiffs are able to establish prejudice, Rule 37(e)(1) provides that the court "may order measures no greater than necessary to cure the prejudice." Plaintiffs' request that Defendants be precluded from moving for summary judgment on the deliberate indifference standard of their Substantive Due Process claims is unwarranted and far exceeds any prejudice caused by the non-preserved emails. To establish deliberate indifference, Plaintiffs must establish both that "defendants were plainly placed on notice of a danger" *and* that they "chose to ignore the danger notwithstanding the notice." *Doe ex rel. Johnson*, 597 F.3d, at 175; *see also M.D. by Stukenberg v. Abbott,* 907 F.3d 237, 252 (5th Cir. 2018 ) (holding that State "is not deliberately indifferent to a substantial risk of serious harm if . . . it "respond[s] reasonably . . . even if the harm ultimately was not averted"); *id.* at 267 (applying test that officials must both be "aware of systemic deficiencies" and fail to take "reasonable steps to cure the problem").

Plaintiffs have not given any reason or explanation for why it would be appropriate to prevent Defendants from introducing evidence to rebut Plaintiffs' claims that they "ignore[d] the danger" caused by the challenges facing the child welfare program. Nor could they, as there is no justification for precluding Defendants from introducing evidence that they have taken reasonable steps to address systemic deficiencies, including, for example, DHHR's initiatives to increase the number of case workers, reduce caseloads, reduce staff turnover, increase the number of foster family and kinship placements, and improve community-based behavioral health and other services to keep children safe at home and reduce the number of disrupted placements.

The slip-and-fall case Plaintiffs cite in support of their requested sanction is wholly distinguishable. Doc. 378, at 18. The court in *Butler* did not preclude the defendant in that case from moving for summary judgment or from introducing evidence in support of its motion. Rather, the court denied the motion because there were material facts in dispute as to what had caused the

14

plaintiff to fall in the defendant's store. Because the store had failed to preserve the video of the plaintiff's fall – "the best evidence of what actually happened" – the court rejected the testimony of a store employee as to what he recalled from watching the video and concluded that the issue should be decided by a jury with an adverse inference instruction. *See Butler v. Kroger Ltd. P'ship I*, No. 2:19CV673, 2020 WL 7483447 (E.D. Va. Nov. 30, 2020), *report and recommendation adopted*, No. 2:19CV673, 2020 WL 7482186 (E.D. Va. Dec. 18, 2020).

## II. Plaintiffs Have Not Established That Defendants Intended to Deprive Them of Relevant Information, As Required for the Severe Sanctions Plaintiffs Seek Under Rule 37(e)(2).

Plaintiffs have also asked the Court to "declare that Plaintiffs have established the deliberate indifference element of their substantive due process claims against DHHR and the named DHHR Defendants and their successors."[5] Doc. 378, at 1-2. This is among the most severe sanctions that can be imposed and is subject to Rule 37(e)(2)'s instruction that an adverse inference or adverse judgment may be imposed "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).

In this case, the evidence does not support a finding that Defendants acted with the intent to deprive Plaintiffs of the emails of departed agency officials. As recounted above, the General Counsel of the DHHR issued what she believed to be a proper Litigation Hold within a few weeks

---

[5] As a formal matter, Defendants note that no deliberate indifference finding can ever be made against DHHR itself. DHHR is a state entity and therefore immune from suit under the Eleventh Amendment to the Constitution, including for injunctive relief. *See Edelman v. Jordan*, 415 U.S. 651 (1974). Defendants have not moved to dismiss DHHR because the Complaint includes claims under the Americans with Disabilities Act ("ADA"); Congress has abrogated the states' Eleventh Amendment immunity for claims brought under the ADA, 42 U.S.C. § 12202; and the Fourth Circuit has concluded that the abrogation was valid with respect to Title II of the ADA. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005). While DHHR may be a proper Defendant for purposes of Plaintiffs' ADA claim, it is immune from suit with respect to Plaintiffs' Substantive Due Process claims.

15

of receiving the Complaint; the ESI was nonetheless deleted by WVOT, a non-party, as a routine matter after individuals left state employment; and immediately upon discovery, DHHR worked with WVOT to retrieve and search for emails from the identified custodians through an alternate source (the accounts of current BSS employees).

These facts – the implementation of a litigation hold; the routine destruction of emails upon an employee's departure; and the effort to identify relevant emails in the accounts of other custodians – have all been found by other courts to rebut a conclusion that a party had an "intent to deprive" another party of relevant information, *see infra* at 17-19, and they distinguish this case from those in which courts have found the "intent to deprive" standard to have been met. For example, in *GMS Industries Supply v. G&S Supply*, which Plaintiffs cite, the court found the standard to have been met when a party, "[d]espite the clear instructions to preserve potentially relevant documents and information," "proceeded to download File Shredder onto his desktop and destroyed all of the user-created files." *LLC*, No. 2:19-CV-324 (RCY), 2022 WL 853626, *7 (E.D. Va. Mar. 22, 2022). No such allegations have been, or could be, made here.

Doubtless, Plaintiffs will contend that additional steps should have been taken with respect to the original Litigation Hold, such as specifically adding other custodians. But the failure to take these additional steps is at worst a negligent oversight, not evidence that DHHR intended for relevant information to be destroyed. As the 2015 Advisory Note to Rule 37(e) makes clear, the rule was "designed to provide a uniform standard in federal court for use of these serious measures when addressing failure to preserve electronically stored information" and was intended to specifically reject prior cases in which "a finding of negligence or gross negligence" was a sufficient basis for imposing severe sanctions such as an adverse inference. As the Committee noted, "[a]dverse-inference instructions were developed on the premise that a party's intentional

16

loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence," but "[n]egligent or even grossly negligent behavior does not logically support that inference."

Since 2015, courts applying the Rule 37(e) "intent to deprive" test are unanimous that negligent or even grossly negligent actions, including in inadequate implementation of a litigation hold, are insufficient to trigger its provisions. *See, e.g.*, *In re Ethicon, Inc.*, 299 F.R.D. at 521 (finding that failure to monitor litigation hold may have been "negligent, and perhaps grossly negligent in some cases" but did not support a finding that the party "acted willfully or intentionally to delete, discard, or hide evidence . . . specifically for the purpose of preventing its disclosure in this litigation"); *Jennings v. Frostburg State Univ.*, No. CV ELH-21-656, 2023 WL 4567976 (D. Md. June 27, 2023) (finding no "intent to deprive" based on "failure to implement a proper litigation hold, rather than intentional destruction of evidence"); *Gov't Employees Health Ass'n*, 343 F.R.D. at 484 ("[N]either negligence nor even gross negligence satisfies the 'intent to deprive' standard."); *Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*, No. SAG-18-3403, 2020 WL 1809191, *4 (D. Md. Apr. 9, 2020) ("[n]egligent or even grossly negligent behavior" does not suffice for purposes of sanctions under Rule 37(e)(2)). Therefore, even if the Litigation Hold should have been modified as the case progressed, this would not be enough to satisfy the Rule 37(e)(2) standard for sanctions.

Moreover, even if the actions of WVOT in deleting the email accounts can be attributable to DHHR (and Plaintiffs have nowhere established why that should be the case), courts in this Circuit and elsewhere have routinely concluded that the "intent to deprive" standard of Rule 37(e)(2) is not met when email accounts of departing employees are deleted as a matter of course. For example, in *Packrite, LLC v. Graphic Packaging International, LLC*, the Court found no "bad-

17

faith mens rea" of intent to deprive when an employee's account was deleted "consistent with [Defendant's] standard policy of deleting departing employees' e-mail folders." No. 1:17CV1019, 2020 WL 7133806, *8 (M.D.N.C. Dec. 4, 2020), *report and recommendation adopted*, No. 1:17CV1019, 2021 WL 9681472 (M.D.N.C. Jan. 6, 2021); *see also Brittney Gobble Photography, LLC*, 2020 WL 1809191, at *9 (finding no intent to deprive when emails "were purged as a matter of course pursuant to the company's routine document retention policy;" these actions were "at most grossly negligent"); *Grant v. Gusman*, Civ. No. 17-2797, 2020 WL 1864857, *12 (E.D. La. Apr. 13, 2020) ("[B]ecause Plaintiff failed to present any evidence that Defendants did anything more than a negligent continuation of its routine policy, the most severe measures under Rule 37(e)(2) . . . are not permissible." (cleaned up)); *Stovall v. Brykan Legends, LLC*, No. 17-2412, 2019 WL 480559, *4 (D. Kan. Feb. 7, 2019) ("The court is not convinced that [the] defendant's negligence – even recklessness – in allowing the normal [deletion] policy . . . to proceed unimpeded rises to the stringent 'intent' requirement" of Rule 37(e))." (cleaned up)).

Courts have also found no "intent to deprive" when the party that failed to preserve ESI has sought to reconstitute some of the lost information by searching for and providing emails from the accounts of other custodians, as is the case here. For example, in *Government Employees Health Association*, the court found that the Rule 37(e)(2) standard was not met even though counsel "neglected" to put a litigation hold on certain custodians who were known to have relevant information, because the party against whom sanctions were sought "has produced hundreds of thousands of other ESI 'documents,' . . . including from other . . . custodians—and ultimately produced more than 33,000 documents that were associated with the at-issue custodians." 343 F.R.D. at 483-84. In the court's view, "[t]his belies an intentional plan to deprive Plaintiff of relevant ESI in this litigation." *Id.*; *see also Knight*, 323 F. Supp. 3d, at 861 (no sanctions were

18

warranted when emails for three employees were inadvertently lost but many of them were "caught within the litigation hold upon parties who were copied on, or received, the emails, and subsequently produced to Plaintiffs").

### III. This Case Stands in Stark Contrast to the Recent Report and Recommendation of the Magistrate Judge Involving the WV Department of Homeland Security.

Shortly after Plaintiffs filed their Motion for Sanctions, Magistrate Judge Aboulhosn issued an Order and Proposed Findings and Recommendation in a motion for sanctions involving the West Virginia Department of Homeland Security, in which the court recommended the "extraordinary" sanction of a default judgment. *See Rose v. Sandy,* Civ. No. 5:22-cv-00405, Doc. 774 (S.D. W. Va. Oct. 2, 2023) (hereinafter "Rose Proposed Order").

Undersigned counsel is unfamiliar with the circumstances in *Rose v. Sandy* beyond what is in the decision, but on its face, there are numerous material distinctions between *Rose* and this case. In *Rose,* the Magistrate Judge concluded that defendants never attempted to put in place a litigation hold; video evidence specifically requested by plaintiffs' counsel was subsequently destroyed, *id.* at 4-5; Defendants never contacted WVOT about the preservation of ESI, *id.* at 13; and Defendants had consistently fallen short on their discovery obligations, forcing plaintiffs to file numerous motions to compel. In contrast, in this case, the General Counsel of DHHR promptly issued the Litigation Hold, which was received by WVOT; there was no destruction of evidence after a specific request from Plaintiffs; Defendants have complied fully with their discovery obligations, including by producing over 890,000 pages of documents (215,246 of which are emails and related ESI) and sitting for nearly 60 hours of depositions. Although this case has been pending for almost five years, Plaintiffs only recently filed their first motion to compel, which is still pending. *See* Doc. 374. In addition, in *Rose,* the Magistrate Judge "hosted numerous video conferences and hearings" regarding the production of ESI, *id.* at 2, and was deeply troubled that

19

Defendants had never disclosed that certain email accounts had been purged, *id.* at 26, whereas DHHR informed Plaintiffs promptly once DHHR became aware of the issue. Finally, in *Rose*, the Magistrate Judge found that "numerous files predating 2022 have disappeared without any explanation," which he concluded meant that they had been "intentionally destroyed," *id.,* at 29, whereas there is no such allegation here.

Certainly, this case and *Rose* highlight the need for better communication and protocols between WVOT and the state agencies that rely on it for administration and operation of their email accounts, [6] but that is where the similarities between the two cases stop.

## CONCLUSION

Defendants apologize to Plaintiffs and the Court for the inadvertent purging of the emails in question, but respectfully submit that sanctions are unwarranted under Rule 37(e).

Respectfully submitted,

/s/ Philip J. Peisch
Philip J. Peisch (WVSB #13731)
Caroline M. Brown
Julia M. Siegenberg
Brown & Peisch PLLC
1225 19th Street NW, Suite 700
Washington, DC 20036

/s/ Steven R. Compton
Steven R. Compton (WVSB #6562)
West Virginia Attorney General's Office
812 Quarrier Street, 6th Floor
Charleston, WV 2530

November 17, 2023

---

[6] DHHR, the Governor's Office, and WVOT have been working in close collaboration to review and update policies and processes to ensure that this situation is avoided in the future.