# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### HUNTINGTON DIVISION

| | | |
|---|---|---|
| **Jonathan R., minor, by Next Friend, Sarah DIXON, *et al.,*** | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff*s, | ) | Class Action |
| | ) | 3:19-cv-00710 |
| v. | ) | |
| | ) | |
| **Jim JUSTICE, in his official capacity as the Governor of West Virginia, *et al.,*** | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

Defendants concede that the destroyed ESI contained "potentially relevant information" and should have been preserved but argue, quite incredibly, that sanctions are not necessary because they took reasonable steps to preserve it. Defendants' "reasonable steps" were limited to sending a single email that included a form litigation hold letter that failed to specify whose accounts were to be preserved, was never followed up on, and was ultimately ignored. Moreover, this deficient effort was made with respect to only three of the twelve at-issue custodians.[1] As to the other nine custodians, Defendants did not even *attempt* to preserve their ESI.

Perhaps recognizing the gravity of their discovery violation, Defendants agree that one of Plaintiffs' requested sanctions is warranted.[2] All three of Plaintiffs' requested sanctions are in fact

---

[1] Defendants' Opposition mistakenly states that the ESI of "eleven custodians" was destroyed. *See* Defendants' Opposition to Plaintiffs' Motion for Sanctions ("Def. Opp.") at 3, ECF No. 399. In their October 6, 2023 letter, Defendants stated twelve custodians' ESI has been lost. *See* Ex. 6 to Plaintiffs' Motion for Sanctions ("Pl. Motion") at 4, ECF No. 377-7.

[2] Defendants agree to Plaintiffs' third requested sanction: that "the Court preclude Defendants from arguing that the deleted ESI would have shown that the DHHR Defendants did not act with deliberate indifference." Plaintiffs' Memorandum of Law in Support of Pl. Motion ("Pl. Mem. of Law") at 2, ECF No. 378; Def. Opp. at 1.

necessary given the irreparable prejudice that Plaintiffs now face.  And while Plaintiffs seek sanctions under only Rule 37(e)(1), harsher sanctions pursuant to Rule 37(e)(2) are also appropriate given the prejudice to Plaintiffs and the intentionality of Defendants' conduct.

**ARGUMENT**

**I.   Plaintiffs Have Established Spoliation of Evidence**

Defendants concede that ESI is destroyed that should have been preserved.  But they argue, nevertheless, that three of the threshold elements of Rule 37(e) have not been met: (1) the information is lost; (2) the loss occurred because Defendants failed to take reasonable steps to preserve it; and (3) the information cannot be restored or recovered through additional discovery. Def. Opp. at 7.  Plaintiffs sufficiently refuted each of these arguments in their Motion for Sanctions ("the Motion"), however, and the case for sanctions is even more evident from information contained in Defendants' Opposition and the deposition testimony of April Robertson.

**A.   *The Destroyed ESI Is Lost***

Despite conceding that the relevant ESI has been destroyed, Defendants argue that the information is not "lost" because they were able to locate some emails "from, to, or copying six of the seven custodians" in the email accounts of current DHHR employees.  *See* Def. Opp. at 7. Defendants cite no authority for this proposition and other courts have rejected it.  ESI may be considered lost even if a portion of it may be found in the accounts of other individuals.  *See, e.g.*, *Sines v. Kessler*, No. 3:17-cv-72, 2021 U.S. Dist. LEXIS 204142, at *36-37 (W.D. Va. Oct. 22, 2021) ("[Plaintiffs] obtained some of this ESI from other Defendants and third-party providers, but they do not have a 'complete record of [Heimbach's] written communications from' Heimbach himself. This is sufficient to show that ESI . . . is both lost and irreplaceable." (alteration in original) (citation omitted)); *Modern Remodeling, Inc. v. Tripod Holdings, LLC*, No. CCB-19-

2

1397, 2021 U.S. Dist. LEXIS 163228, at *26 (D. Md. Apr. 27, 2021) (finding that emails and text messages were lost under Rule 37(e) despite that some of the deleted communications were available from other custodians).  Additionally, as described in the Motion, emails retrievable from current employees' accounts likely represent a fraction of those that have been destroyed, and do not include communications between the named Defendants, which are of particular importance to Plaintiffs' claims.  *See* Pl. Mem. of Law at 11.  Nor do they include communications between the affected custodians and external parties or other former DHHR employees.  Moreover, the number of recovered emails that Defendants cite include emails that Defendants already produced to Plaintiffs in 2020.[3]

In any event, the onus is not on Plaintiffs to establish the precise number of emails that have been deleted or the details of their content.  *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 803 F. Supp. 2d 469, 498-99 (E.D. Va. 2011) ("Of course, a party moving for sanctions based on spoliation 'cannot be expected to[] demonstrate with certainty the content of destroyed documents.' Rather, that responsibility falls on the shoulders of the adverse party." (alteration in original) (citation omitted)); *Modern Remodeling*, 2021 U.S. Dist. LEXIS 163228, at *35 (same). Nonetheless, common sense dictates that the volume of emails sent and received by seven, high-ranking DHHR employees over several years is enormous, and that given the number of DHHR officials who have left the agency within the last few years, a significant portion of those communications were with individuals who are no longer employed by DHHR.  Critically, all email communications between any combination of these seven individuals (as well as the other five custodians) are irrecoverable.  Emails between any of these people and anyone outside of

---

[3] Plaintiffs note that of the "hundreds of thousands" of emails from these seven custodians that Defendants have now located, they produced less than ten percent of them as responsive to Plaintiffs' discovery requests.  *See* Def. Opp. at 7-8.  Plaintiffs cannot know how many of the deleted emails would also have been responsive to Plaintiffs' requests.

DHHR are also irrecoverable.  It is, therefore, of no consequence that some of the deleted emails may be found in current employees' accounts when the majority of communications, and those with the most significance to Plaintiffs' case, have been destroyed.  *See* Pl. Mem. of Law at 11-12; *see, e.g.*, *Gov't Employees Health Ass'n v. Actelion Pharms. Ltd.*, 343 F.R.D. 474, 486 (D. Md. 2023) ("While some of the lost data was partially replaced . . . , there is little doubt given just the amount of lost data from the two at-issue custodians for whom such information is known, that a meaningful amount of relevant information was destroyed . . . .").

### B.  *Defendants Failed to Take Reasonable Steps to Preserve the ESI*

To the extent Defendants took any steps to preserve the ESI, they were grossly deficient, incomplete, and unreasonable.  Defendants point to a so-called litigation hold that DHHR's General Counsel, April Robertson, issued on December 4, 2019.  *See* Ex. 1 to Def. Opp. at 9, ECF No. 399-1.  Characterizing Ms. Robertson's memorandum as a litigation hold is overly generous and misleading.  It was sent to one West Virginia Office of Technology ("WVOT") analyst, who never acknowledged receipt or confirmed that the requested steps were taken.  *See id.*; Robertson Tr. 24:9-12, 30:1-13, Ex. 1 to Decl. of Richard W. Walters.[4]  Indeed, as admitted by Robertson, the memorandum did not explicitly list the employees whose emails were to be preserved and WVOT, a third-party government agency that was not a part of this litigation, was expected to know whose emails to preserve.  *See* Robertson Tr. 43:20-44:6, 45:1-46:7, 56:1-17.  In fact, not a single DHHR employee contacted WVOT after Robertson sent the initial memorandum to confirm that it was received, clarify whose ESI should be preserved, ensure that a hold was placed, or continuously update it by adding individuals as their relevance to this action became apparent. *See, e.g.*, Robertson Tr. 17:17-18:1, 25:6-10, 56:18-24, 72:2-73:3.  Additionally, the litigation hold

---

[4] Exhibits are attached to the Declaration of Richard W. Walters, dated November 27, 2023.

memorandum itself requested that recipients respond via email that they had received it and would abide by its terms, which not all of them did. *See* Ex. 1 to Def. Opp. at 9; Robertson Tr. 22:21-24, 23:17-24:12. No one from WVOT responded. Robertson Tr. 24:9-12. And Robertson did not follow up to ensure that any DHHR employee who received the memorandum spoke with their direct reports about the importance of preserving their ESI. *See* Robertson Tr. 25:6-10, 71:20-72:11. Nor was Robertson aware of anyone else at DHHR following up with any DHHR employee who received the litigation hold. Robertson Tr. 32:3-13, 44:7-24. Robertson's failure to seek confirmation from the people who did not acknowledge receipt of the memorandum is so baffling that it can only be understood as deliberate.

Despite all these failures, Defendants nonetheless maintain that DHHR's efforts were reasonable and attempt to place the blame on WVOT, claiming the error was due to "WVOT's apparent misunderstanding as to the scope of Ms. Robertson's request . . . ." Def. Opp. at 8. The declaration of WVOT's Chief Information Security Officer Danielle Cox does not, however, describe any misunderstanding regarding the scope of Robertson's request. Rather, it reveals that Robertson's "Litigation Hold memorandum," which was received by Chris Avis, "one of the analysts in the security office," "was insufficient to preserve email accounts," and that Robertson inexplicably did not know this and never followed up. *See* Ex. 3 to Def. Opp. ¶¶ 5, 8, ECF No. 399-3. Cox does not explain why the memorandum was insufficient, but its failure to specify whose ESI needed to be preserved could certainly be a factor.

It was DHHR's responsibility, not WVOT's, to take whatever measures were necessary to ensure that relevant ESI was preserved. DHHR and its officials failed to take any reasonable steps to ensure that WVOT had the information that it needed to preserve the lost ESI; liability for the spoliation, therefore, rests squarely with DHHR. Moreover, even if WVOT were also at fault,

Defendants would still be liable as "a party may be held responsible for the spoliation of relevant evidence by its agents." *GMS Indus. Supply, Inc. v. G&S Supply, LLC*, No. 2:19-cv-324, 2022 U.S. Dist. LEXIS 51658, at *25-26 (E.D. Va. Mar. 22, 2022) ("A party to a law suit, and its agents, have an affirmative responsibility to preserve relevant evidence. A [party] . . . is not relieved of this responsibility merely because the [party] did not itself act in bad faith and a third party to whom [the party] entrusted the evidence was the one who discarded or lost it." (quoting *Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494, 522 n.16 (D. Md. 2009)) (citation omitted)). Furthermore, WVOT is not a completely independent third party. Both DHHR and WVOT are state agencies that work hand-in-hand to execute state policies.

April Robertson, DHHR's General Counsel, who has served as General Counsel or Assistant General Counsel in some capacity since September 2017, claims that she was unaware of how to effectively place a litigation hold. Ex. 1 to Def. Opp. ¶ 1. Robertson further claims that she was unaware of WVOT's policy of deleting employee email accounts thirty days after an agency has deprovisioned the employee's access to email and other agency information—a policy that dates back to 2013.[5] Ex. 2 to Def. Opp. ¶ 3. Nor was she aware that "DHHR could request administrative access from WVOT to preserve emails by downloading an employee's account upon separation." Ex. 1 to Def. Opp. ¶ 10. As this is far from the only lawsuit that DHHR has faced in the last six years,[6] it strains credulity that DHHR's General Counsel was, until September 2023, unaware of these long-standing policies and of how to place an effective litigation hold. *See* Robertson Tr. 18:12-19:2. Regardless, Ms. Robertson's—and DHHR's—actions were wholly

---

[5] "Deprovisioning is the process of revoking access to State computer systems, turning off software licenses, providing email and file access to designated personnel (usually managers and supervisors), and closing email accounts." Ex. 2 to Def. Opp. ¶ 2, ECF No. 399-2.

[6] A Lexis Nexis search for all cases filed against DHHR since September 1, 2017 indicates that 127 lawsuits and 10 appeals have been filed. *See also* Robertson Tr. 41:3-6 ("I have issued approximately 20 [holds], maybe more over the last several years. Obviously, DHHR has many more pending cases and settles cases in those same years.").

inadequate and unreasonable. DHHR's dereliction of duty in this matter is egregious and tantamount to intentionally destroying the data. With the exception of Robertson's insufficient litigation hold memorandum, Defendants have not pointed to any steps that they took over the last four years to ensure that WVOT preserved the ESI of relevant DHHR employees aside from those steps taken *after* WVOT had already destroyed the ESI at issue.

Still worse, DHHR did not attempt to seek a litigation hold for Coben, Henson, Barno, McCallister, and five other individuals who are the subject of the Motion. No litigation hold memorandum was ever sent with respect to these individuals, and no one communicated with them or WVOT about preserving their information.[7] *See* Robertson Tr. 38:18-39:6, 41:18-42:5. Defendants acknowledge that the lost ESI should have been preserved, but also assert, contradictorily, that they had no obligation to preserve the ESI of McCallister, Henson, or Barno because they were not "in policy-making positions or overseeing field operations." Def. Opp. at 8. This is entirely beside the point given that there is no requirement that an individual be in a policy-making position for his or her ESI to be relevant, and Defendants are obliged to "identify, locate, and maintain, information that is relevant to specific, predictable, and identifiable litigation." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 522 (D. Md. 2010) (citation omitted). Indeed, Defendants' own December 2019 litigation hold does not specify that ESI only be preserved for those individuals in policy-making positions or those overseeing field operations. *See* Ex. 1 to Def. Opp. at 9. Defendants' argument further falls flat as they are the ones who, in January 2020, proposed McCallister and Henson as custodians who would have ESI responsive to Plaintiffs' First Request for Production. *See* Ex. 1 to Pl. Motion at 3, ECF No. 377-2. ESI from

---

[7] Plaintiffs' arguments are based on the information that Defendants have provided and that Plaintiffs have learned from the deposition of April Robertson regarding the circumstances surrounding the spoliation of evidence. Discovery into this matter is ongoing, but Plaintiffs expect that if there were evidence that any DHHR official communicated with these individuals about the need to preserve their ESI that Defendants would have provided it to Plaintiffs.

Barno was produced in response to Plaintiffs' Second Request for Production. *See* Ex. 2 to Pl. Motion at 1, ECF No. 3773-3.

### C. There is No Substitute for the Destroyed ESI

While acknowledging that some of the information is irretrievably lost, Defendants assert that Plaintiffs should be able to obtain the information contained in the destroyed emails from "depositions; interrogatories; requests for admission; or even stipulations," and that Plaintiffs can learn what these former DHHR employees were thinking in 2021 and 2022 by deposing them. Def. Opp. at 9. As Plaintiffs explained in the Motion, there is no alternative for the information that has been destroyed. *See* Pl. Mem. of Law at 11, 13, 17. Even if the parties' discovery schedule allowed for Plaintiffs to depose all the former employees whose ESI has been destroyed, it is absurd to suggest that a witness's recollection about thousands of emails that he or she wrote or received years ago is a sufficient replacement for the emails themselves.

Unlike deposition testimony, emails do not change over time, are not impacted by waning memory, and are not influenced by ongoing litigation and looming liability. The Fourth Circuit has recognized that "physical evidence often is the most eloquent impartial 'witness' to what really occurred," and "the expansion of sanctions for the inadvertent loss of [such] evidence recognizes . . . the resulting unfairness inherent in allowing a party to destroy evidence and then to benefit from that conduct or omission." *Silvestri v. GMC*, 271 F.3d 583, 593 (4th Cir. 2001). In addition to the superiority of the evidence that has been destroyed, it contained information that Plaintiffs will never have access to and would therefore, not know to inquire about in a deposition.

Accordingly, as more fully described in the Motion, Plaintiffs have sufficiently established that the lost ESI is irreplaceable and that all Rule 37(e)'s requirements have been met.

8

## II.  Sanctions Are Justified Under Rule 37(e)(1) and (e)(2)

Defendants assert that even if Plaintiffs have established that spoliation of evidence has occurred, the Court should not issue Plaintiffs' requested sanctions because Plaintiffs fail to establish either prejudice or "intent to deprive," which Defendants claim, "is the standard for levying the type of severe sanctions that Plaintiffs seek here."  Def. Opp. at 2.  Defendants' arguments do not hold up.  The sanctions that Plaintiffs seek fit comfortably within the umbrella of Rule 37(e)(1), which does not require a showing of intent.  *See* Fed. R. Civ. P. 37(e)(1).  Further, Plaintiffs' requested sanctions are available under Rule 37(e)(2).  The record demonstrates that Defendants' failures were intentional, a finding that is bolstered by information contained in Defendants' Opposition and the deposition of April Robertson.

### A.  *Plaintiffs' Requested Sanctions Are Necessary and Appropriate Under Rule 37(e)(1)*

For the Court to issue sanctions under Rule 37(e)(1), it need only find that Plaintiffs have been prejudiced by the loss of the information.  Fed. R. Civ. P. 37(e)(1).

#### 1.  <u>Plaintiffs Have Established Prejudice</u>

Plaintiffs are required to prove that Defendants acted with deliberate indifference, meaning, "that the [defendant] subjectively recognized a substantial risk of harm and that his actions were inappropriate in light of the risk."  *Washington v. Hous. Auth. of City of Columbia*, 58 F.4th 170, 179 (4th Cir. 2023) (citation omitted).[8]  Emails sent to and from the named Defendants are the best evidence of whether they subjectively recognized the risks that DHHR's policies and practices created and whether the responsive actions they took—or did not take—were appropriate.

---

[8] In a footnote, Defendants argue that DHHR is immune from any substantive due process claims.  *See* Def. Opp. at 15 n.5.  Raising this argument in a footnote in an opposition to a motion for sanctions without any briefing or further support is wholly inadequate and procedurally improper, and this Court should disregard it.

9

Defendants argue, however, that Plaintiffs are not prejudiced by the loss of these emails because Plaintiffs should be able to prove deliberate indifference through deposition testimony or publicly available statements and reports.  As described *supra* and in the Motion, deposition testimony is no substitute for contemporaneous communications in proving both subjective awareness of and disregard for the risks to the children under Defendants' care.  And while publicly available statements and reports are helpful to Plaintiffs' case, they also are not adequate substitutes for contemporaneous communications spanning years.

Moreover, as Judge Aboulhosn noted when addressing a similar spoliation issue in *Rose v. Sandy*, No. 5:22-cv-405 (S.D. W. Va. filed Sept. 21, 2022), the Court should not equate an individual's statements to the media with evidence to be presented at trial.  *See* "J. Aboulhosn R&R" at 33 n.28, ECF No. 774 filed on Oct. 30, 2023 in *Rose*, No. 5:22-cv-405 ("The Court is not going to equate the Plaintiffs' counsel's posturing to news media with what is to be presented during trial, and the Defendants' invitation that the Court even make such a comparison that is so obviously incomparable is incomprehensible.").

Perhaps recognizing that Plaintiffs need the deleted ESI to establish Defendants' state of mind, Defendants argue in the alternative that Plaintiffs do not even need to prove subjective awareness because it is not disputed.  *See* Def. Opp. at 12 ("The key issues in dispute for Plaintiffs' Substantive Due Process Claims are not whether DHHR leadership knows about the relevant challenges facing the child welfare system . . . .").  While this is a significant and rather stunning admission, it does not disprove the significance of the emails that Defendants destroyed.  Critically, the emails would demonstrate what actions, if any, Defendants undertook in light of their knowledge of the risks.  There is no better evidence to prove this element of deliberate indifference.

10

Defendants' contrary argument, that the ESI is "in no way relevant" to whether Defendants took action to address the shortcomings of the child welfare system, is baseless.  Bill Crouch's response, or lack of response, for example, to any email alerting him to a problem within the child welfare system would have been critical evidence of whether he took appropriate action in response to the failure that he was made aware of.  The extent of lost emails containing valuable information like this is immeasurable, and Plaintiffs have been severely prejudiced as a result.

Finally, Defendants' argument that Plaintiffs have not been prejudiced because they seek prospective relief while the lost ESI relates to officials who are no longer employed by DHHR is meritless.

First, Defendants would have the Court believe that the deleted ESI pertains to former DHHR officials who have not worked for the agency in decades, when in reality, the deleted emails are from the accounts of individuals who led DHHR as recently as this year.  Coben, for example, served as Interim DHHR Secretary until July 5, 2023.  *See* Pl. Mem. of Law at 2 n.1.  Crouch left his position with DHHR on December 30, 2022.  *Id.*

Second, Defendants' argument suggests that there is a deadline that arises during litigation whereby evidence created before that deadline becomes irrelevant, but the cases that Defendants cite firmly reject that idea.  In *Farmer v. Brennan*, for example, the Supreme Court found that "the subjective factor, deliberate indifference, 'should be determined in light of the [] authorities' current attitudes and conduct,' their attitudes and conduct at the time suit is brought and persisting thereafter."  511 U.S. 825, 830 (1994) (citation omitted).  In *D.G. v. Henry*, No. 08-cv-074, 2011 U.S. Dist. LEXIS 85789 (N.D. Okla. Aug. 3, 2011), the court rejected the plaintiffs' request for a cut-off date after which evidence of deliberate indifference would not be considered.  The court, citing *Farmer*, noted that "to survive summary judgment, [the plaintiff] must come forward with

evidence from which it can be inferred that the defendant-officials were, at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an intolerable risk of harm, and that they will continue to do so . . . ." *Id.* at *9 (quoting *Farmer*, 511 U.S. at 845-46 (citation omitted)); *see also Perry v. Clarke*, No. 3:21-cv-447, 2023 U.S. Dist. LEXIS 20348, at *25 (E.D. Va. Feb. 6, 2023) (same).  Plaintiffs have been severely hamstrung in their ability to show that Defendants "were at the time suit was filed . . . unreasonably disregarding an intolerable risk of harm" because Defendants have failed to preserve ESI belonging to the people who led DHHR when this suit was filed.[9]

### 2.  <u>Sanctions Are No Greater Than Necessary</u>

Defendants assert that even if Plaintiffs have been prejudiced by Defendants' spoliation of evidence, Plaintiffs' requested sanctions are too harsh.  To the contrary, Plaintiffs' requested sanctions are relatively benign compared to those that this Court has issued when presented with similarly egregious cases of spoliation of evidence.  *See* J. Aboulhosn R&R at 33-37.

In *Rose v. Sandy*, for example, as a result of the West Virginia Division of Corrections and Rehabilitation's ("WVDCR") failure to preserve emails and other video and documentary evidence, Judge Aboulhosn recommended that default judgment be entered.  J. Aboulhosn R&R at 34.  In the alternative, Judge Aboulhosn recommended that the defendants be prohibited from introducing evidence disputing specific testimony by the plaintiffs, including on deliberate indifference, and that an adverse inference be given.  *Id.* at 34-35.  Judge Aboulhosn also referred the matter to the United States Attorney to consider whether further investigation was warranted.

---

[9] Moreover, Plaintiffs expect that Defendants will make arguments in connection with summary judgment and trial—similar to the those made in connection with prior motions—that they are not deliberately indifferent because they are making efforts to rectify problems.  Discovery showing that Defendants are and were aware that similar past efforts failed is integral to showing deliberate indifference.  *See* ECF No. 319 at 13 n.59 (discussing that Defendants touted their efforts to decrease caseloads in 2020 but that caseloads had only increased as of 2023).

*Id.* at 39.  In *Rose*, WVDCR officials testified that after receiving an evidence preservation letter from the plaintiffs, the only action that they took to ensure that emails were preserved was to send the letter up and down the chain of command.  *Id.* at 8.

DHHR did even less.  Robertson sent a single email with a form litigation hold memorandum to a few DHHR officials and one analyst from WVOT and simply assumed that WVOT would be able to deduce whose accounts needed to be preserved, which Robertson testified included individuals whose names did not appear in the memorandum.  *See* Robertson Tr. 43:16-44:6, 45:1-5, 56:1-17, 71:1-13.  Based on the evidence that has thus far been provided to Plaintiffs, Robertson's email was not sent up or down the chain of command, was never forwarded to anyone, was never supplemented, and was never followed up on.  Moreover, as to Coben, Henson, McCallister, and Barno, not even an email was sent.  DHHR did absolutely nothing to preserve these individuals' ESI.

Defendants contend that Plaintiffs' requested summary judgment sanction is too harsh because it would not allow Defendants to introduce evidence of the steps taken to address systemic deficiencies.  *See* Def. Opp. at 14.  But that is precisely the point, at least to the extent that Defendants intend to introduce this evidence to argue that there is no genuine dispute of material fact as to whether the DHHR Defendants were deliberately indifferent.  If Defendants were permitted to make these arguments, Plaintiffs would be severely disadvantaged in their ability to respond.  While Plaintiffs do not doubt that DHHR has produced publicly available information that paints its efforts to improve the child welfare system in a positive light, information necessary to combat that portrayal is much less likely to have been made public.  Common sense dictates that for that type of information, Plaintiffs would need to have access to the Defendants' private communications, which Defendants have destroyed.  Accordingly, precluding Defendants from

arguing on summary judgment that there is no genuine dispute as to their deliberate indifference is necessary to "level the evidentiary playing field." *Butler v. Kroger Ltd. P'ship I*, No. 2:19-cv-673, 2020 U.S. Dist. LEXIS 241307, at *25 (E.D. Va. Nov. 30, 2020) (citation omitted).

Plaintiffs final requested sanction—that the Court declare that Plaintiffs have established deliberate indifference with respect to the DHHR Defendants—is appropriate and necessary under Rule 37(e)(1), given how seriously Plaintiffs have been prejudiced. *See* Fed. R. Civ. P. 37(e)(1). Under Rule 37(e)(1), the range of measures that the Court may employ to cure the prejudice "is quite broad if they are necessary for this purpose. There is no all-purpose hierarchy of the severity of various measures; the severity of given measures must be calibrated in terms of their effect on the particular case." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

The Advisory Committee's note to the 2015 amendment to Rule 37 provides examples of Rule 37(e)(1) sanctions, noting that "[i]n an appropriate case, it may be that serious measures are necessary to cure prejudice found by the court, such as forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument . . . ." *Id.* Many of these sanctions, however, are inapplicable to a bench trial. *See id.* Plaintiffs, therefore, propose a sanction that is no more severe than necessary but that will sufficiently mitigate the damaging effects of Defendants' spoliation of evidence in this particular case. Plaintiffs' proposed sanction does not rise to the level of an adverse inference or request for default judgment but still manages to ensure that the "prophylactic, punitive, and remedial rationales underlying the spoliation doctrine" will be met. *See Silvestri*, 271 F.3d at 590 (citation omitted). This sanction does not eliminate Plaintiffs' obligation to prove all other elements of their claims; it only relieves them of having to establish the one element that Defendants' spoliation most significantly affected. *See* Pl. Mem. of Law at 17-18.

14

**B.** *Sanctions Pursuant to Rule 37(e)(2) Are Justified Because Defendants' Conduct Was Intentional*

While Plaintiffs maintain that all their requested sanctions fall under the purview of Rule 37(e)(1), sanctions pursuant to Rule 37(e)(2) are also appropriate, particularly in light of the new information that Defendants provided in their Opposition, and that Plaintiffs have learned through April Robertson's November 21st deposition.[10]

Defendants' arguments that Rule 37(e)(2)'s standard has not been met ignore that evidence of bad faith is not necessary for conduct to qualify as intentional. *See, e.g.*, *Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008) ("[T]he district court appears to have committed an error of law by equating the intentional conduct necessary for such an [adverse inference] instruction with bad faith, thereby deeming non-bad faith conduct to be negligent conduct."); *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) ("While a finding of bad faith suffices to permit such an inference, it is not always necessary."). For Rule 37(e)(2) sanctions to be warranted, "there simply needs to be a showing that the party's 'intentional conduct contribute[d] to the loss or destruction of [the] evidence.'" *United States v. Johnson*, 996 F.3d 200, 2017 (4th Cir. 2021) (citation and quotation marks omitted). To justify the harsh sanctions permissible under this Rule, "the district court must consider both the spoliator's conduct and the prejudice caused and be able to conclude either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim [or defense], or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the [opposing party] the ability to [prove] the claim." *Silvestri*, 271 F.3d at 593.

---

[10] Discovery related to Defendants' spoliation of evidence is ongoing and Plaintiffs have noticed the deposition of a witness from WVOT and requested additional documentary evidence from Defendants. *See* ECF Nos. 397, 401. Due to the discovery and briefing schedules already in place, however, Plaintiffs opted not to seek an extension of their deadline to submit this Reply Memorandum. If Plaintiffs obtain additional, pertinent information through discovery, Plaintiffs will request leave from the Court to supplement their Motion for Sanctions with that information.

Defendants' failure to even attempt to preserve the ESI of Coben, Henson, Barno, McCallister, and the five other custodians who were never subject to a litigation hold is so astounding that it can only be understood as intentional. *See Sines*, 2021 U.S. Dist. LEXIS 204142, at *42-43 (finding defendant's failure to take any "steps at all to protect ESI . . . [and] 'repeated failure over a period of years to confirm that the data had been properly preserved' . . . 'is so stunningly derelict as to evince intentionality.'" (citations omitted)). Such a flagrant disregard for one's discovery obligations amounts to conduct "so egregious" as to justify a forfeiture of Defendants' ability to defend against deliberate indifference. *See Silvestri*, 271 F.3d at 593. The Court should not be fooled by Defendants' attempt to frame their actions as merely the "inadequate implementation of a litigation hold." Def. Opp. at 17. As to these nine custodians, there was no litigation hold, inadequate or otherwise. Robertson testified that to her knowledge, no one from DHHR ever added anyone to the litigation hold after she sent the 2019 memorandum (which, in any case, failed to preserve anyone's ESI). *See* Robertson Tr. 72:22-73:4. None of these nine people were included there, and no one from DHHR ever informed WVOT or these individuals of the need to preserve their ESI.

Robertson's testimony reveals that DHHR knew that individuals other than those mentioned in the litigation hold memorandum needed to have their ESI preserved but failed to take any steps to make that happen. *See, e.g.*, Robertson Tr. 38:18-39:7, 46:20-47:11. When asked how WVOT could possibly have known whose ESI to preserve when their names were not included in the memorandum, Robertson stated that "[i]t would come up organically during the discovery process." Robertson Tr. 45:17-23. Defendants also state that Coben's ESI should have been preserved but when Robertson was asked why it had not been, she stated "it frankly did not occur to us to put him on pre-existing litigation holds." Robertson Tr. 39:20. As Judge Aboulhosn

found in *Rose*, "the *de minimis* actions taken by these Defendants indicate that *they* had reason to believe that the evidence was relevant to the Plaintiffs' claims."   J. Aboulhosn R&R at 26 (emphasis in original).   And even if Defendants did not act in bad faith, DHHR's recognition that there were other employees whose ESI needed to be preserved and its conscious decision not to take any steps to preserve the data satisfies the intentionality requirement of Rule 37(e)(2).  *See, e.g.*, *GMS Indus.*, 2022 U.S. Dist. LEXIS 51658, at *21 ("[A] party's 'conscious dereliction of a known duty to preserve electronic data—whether passive or active—is both necessary and sufficient to find that the party acted with the intent to deprive another party of the information's use under Rule 37(e)(2).'" (quoting *Sines*, 2021 U.S. Dist. LEXIS 204142, at *10 (citation omitted) (quotation marks omitted))).

Additionally, DHHR's efforts surrounding the litigation hold memorandum that was sent on December 4, 2019 were so lacking as to further support an inference that their failure to preserve ESI was intentional.   Robertson's assumption that WVOT would be able to glean from the memorandum whose ESI needed to be preserved was unreasonable in light of the document's failure to make clear whose accounts should be preserved or to include their email addresses, phone numbers, device IDs, or any other information that may have provided WVOT with guidance as to what Robertson intended in sending the memorandum.   That DHHR understood its original litigation hold to be deficient is clear in light of the more recent litigation hold sent directly to WVOT on October 10, 2023, which listed all individuals whose emails were to be preserved.  *See* Ex. 1 to Def. Opp. at 15.   To the best of Robertson's knowledge, no one from DHHR followed up with WVOT—at any point over the course of four years—to discuss these issues and no one followed up with the DHHR employees listed in the memorandum's "to" field to see whether they understood their obligations to preserve ESI.  *See, e.g.*, Robertson Tr. 25:6-10, 25:23-26:5, 29:1-6.

Courts within the Fourth Circuit have found that a defendant's failure to make more than a minimal effort to preserve relevant discovery warrants sanctions pursuant to Rule 37(e)(2). *See, e.g.*, *Sines*, 2021 U.S. Dist. LEXIS 204142, at *42 (issuing Rule 37(e)(2) sanctions where defendant made "minimal" effort to preserve ESI and noting that "'[a]t the very least, [the defendant] should have made additional efforts to ensure the preservation of [those] materials,' once Plaintiffs served their discovery requests and preservation instructions on him" (citations omitted)); *GMS Indus.*, 2022 U.S. Dist. LEXIS 51658, at *28 (imposing Rule 37(e)(2) sanctions and finding defendant's "blatant and intentional disregard for his obligation to preserve ESI . . . warrants an adverse inference instruction").

In addition to sending a deficient litigation hold memorandum, neither Robertson nor anyone in her office ensured that the recipients of the memorandum sent back an acknowledgment that it had received it, per instructions in the memorandum itself.  *See* Robertson Tr. 22:21-24, 25:6-10; Ex. 1 to Def. Opp. at 9.  Robertson received no response from WVOT acknowledging that they had received and understood the request.  *See* Robertson Tr. 24:9-12, 29:7-13. Nonetheless, Robertson maintains that she had no reason to believe that a litigation hold was not being placed, and that she did not follow up to confirm "[b]ecause the sent email went through. And [WVOT] are in charge of email."  Robertson Tr. 29:1-6.  When asked whether she followed up with the DHHR employees who did not send the acknowledgment form back, she stated that she did not, and that her paralegal would have collected those forms.  *See* Robertson Tr. 25:6-10, 25:23-26:5.  When asked who supervises her paralegal, she stated that she did.  Robertson Tr. 26:5-7.

Robertson's testimony further calls into question DHHR's genuine desire to preserve the ESI.  She testified that she was never trained in discovery preservation and was unaware of an

agency-wide policy on that topic.  Robertson Tr. 9:18-23.  Additionally, it is incomprehensible that Robertson, who served as General Counsel or Assistant General Counsel for DHHR since September 2017 and has sent WVOT over 20 litigation hold letters during her tenure, was unaware of WVOT's policy, which had been in effect for a decade, of deleting employee email accounts 30 days after they left the agency.  *See* Robertson Tr. 7:15-18, 18:20-19:7.  If ignorance of such an important discovery preservation policy could justify Defendants' failure to preserve ESI, "the Defendants . . . could never be sanctioned for failing to comply with any duty to preserve evidence — they could just turn a blind eye, or worse, purposely destroy evidence, and argue their actions were simply not intentional . . . ."  J. Aboulhosn R&R at 30.

Finally, Defendants go to great lengths to argue that this case is different from *Rose*. Plaintiffs agree that the facts of the two cases are not identical, and Plaintiffs have not sought the most severe sanction of default judgment that was recommended in *Rose*.  In both circumstances, however, West Virginia agencies similarly failed to preserve the email accounts of employees who had left the agency.  In both cases, defendants failed to effectively communicate with WVOT about preserving the emails at issue, and in both, defendants provided inadequate rationales for their failures to preserve critical evidence.  Moreover, Judge Aboulhosn's response to learning that emails were not automatically preserved applies with full force to this case:  "[T]he Court is [] perplexed that *preserving* government email accounts . . . is *not* the default, but that active steps must be taken to ensure its preservation. The fact that publicly funded agencies can lose (and in this case, *has* lost) critical information as to how these agencies are administered, funded, or even governed is beyond the pale.  Especially when that information concerns the well-being of individuals who have been placed in WVDCR custody and control."  J. Aboulhosn R&R at 27-28

(emphasis in original).  The same is true in this case, where DHHR is responsible for the care of all of West Virginia's foster children.

Accordingly, many of the Court's conclusions in *Rose* about the spoliation of evidence and corresponding sanctions are equally applicable here.  The circumstances surrounding Defendants' spoliation of evidence are sufficiently egregious to warrant imposition of all the sanctions that Plaintiffs have requested as well as any additional sanctions that this Court sees fit to impose.

## CONCLUSION

Pursuant to the reasons set forth above and in Plaintiffs' Motion for Sanctions, Plaintiffs respectfully request that the Court issue the following sanctions, and any additional sanctions that this Court sees fit, pursuant to Rules 37(e)(1) and (e)(2) of the Federal Rules of Civil Procedure: (1) declare that Plaintiffs have established the deliberate indifference element of their substantive due process claims against the DHHR Defendants; and (2) preclude Defendants from moving for summary judgment on the deliberate indifference element of Plaintiffs' substantive due process claims against the DHHR Defendants.[11]

Respectfully submitted,

/s/ *Marcia Robinson Lowry*
Marcia R. Lowry, *admitted pro hac vice*
Julia Tebor, *admitted pro hac vice*
Jonathan Borle, *admitted pro hac vice*
Lindsay Gus, *admitted pro hac vice*

---

[11] As stated above, Defendants agree not to argue that deleted ESI would have shown that the DHHR Defendants did not act with deliberate indifference.  To the extent that the Court is concerned that Plaintiffs are asking it to "assume control of a state agency and direct how that agency manages its program and allocates its funds," Plaintiffs assure the Court that they are not.  *See* Memorandum Opinion and Order at 2 n.1, ECF No. 351.  Plaintiffs respectfully direct the Court to resolutions of cases where a state agency retained control of the child welfare system while complying with measures to ensure that foster children are protected.  *See, e.g.*, Exit Plan and Agreement, ECF No. 373, June 21, 2022, filed in *Charlie H. v. Murphy*, No. 2:99-cv-03678 (D. N.J. filed Aug. 4, 1999); Order Approving Class Action Settlement and Approving Dismissal, ECF No. 386, filed in *Charlie H.*, No. 2:99-cv-03678; Compromise and Settlement Agreement, ECF No. 770-1, Jan. 9, 2012, filed in *D.G. v. Henry*, No. 4:08-cv-74 (N.D. Okla. filed Feb. 13, 2008); Final Order Approving Compromise and Settlement Agreement, ECF No. 778, filed in *D.G.*, No. 4:08-cv-74; Apr. 2017 Modified Settlement Agreement and Exit Plan, ECF No. 588, July 17, 2017, filed in *A. Brian v. Bredesen*, No. 3:00-cv-445 (M.D. Tenn. filed May 10, 2000); Order, ECF No. 606, filed in *M.D. v. Abbott*, No. 2:11-cv-84 (S.D. Tex. filed Mar. 29, 2011).

A Better Childhood
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel.: (646) 795-4456
Fax: (212) 692-0415
mlowry@abetterchildhood.org
jtebor@abetterchildhood.org
jborle@abetterchildhood.org
lgus@abetterchildhood.org

*/s/ Richard W. Walters*
Shaffer & Shaffer, PLLC
Richard W. Walters, WVSB #6809
rwalters@shafferlaw.net
J. Alexander Meade, WVSB #13021
ameade@shafferlaw.net
2116 Kanawha Boulevard, East
P.O. Box 3973
Charleston, WV 25339
Tel: (304) 244-8716
Fax: (304) 344-1481

*/s/ J. Marty Mazezka*
Disability Rights of West Virginia
J. Marty Mazezka, WVSB #4572
jmazezka@drofwv.org
5088 Washington St. W., Suite 300
Charleston, WV 25301
Tel: (304) 346-0847
Fax: (304) 346-0687