**In the Matter of:**

Jonathan R., et al.,

vs

JIM JUSTICE, et al.

APRIL ROBERTSON

*November 21, 2023*



5010 Dempsey Drive
Cross Lanes WV 25313
304-415-1122

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON


JONATHAN R., et al.,

       Plaintiffs,


 -vs-    Case No. 3:19-cv-00710


JIM JUSTICE, in his official capacity as
Governor of West Virginia, et al.,

       Defendants.



DEPOSITION OF APRIL ROBERTSON
_____

    The deposition of April Robertson was
taken on November 21, 2023, at 9:00 a.m.,
at 2116 Kanawha Boulevard, East, Charleston,
West Virginia.
_____




ELITE COURT REPORTING, LLC
5010 Dempsey Drive
Cross Lanes, West Virginia  25313
(304) 415-1122


Tara Arthur, CCR

```
 1              A P P E A R A N C E S

 2    Richard W. Walters
      J. Alexander Meade
 3    Attorneys at Law
      Shaffer & Shaffer, PLLC
 4    P.O. Box 3973
      Charleston, West Virginia  25339-3973
 5
      Julia Tebor
 6    Lindsay Gus
      Attorneys at Law
 7    A Better Childhood
      355 Lexington Avenue, Floor 16
 8    New York, New York  10017
      (Participated via Zoom)
 9
      Marty Mazezka
10    Attorney at Law
      Disability Rights of West Virginia
11    1207 Quarrier Street, Suite 400
      Charleston, West Virginia  25301
12
      Caroline M. Brown
13    Rebecca Wolfe
      Attorneys at Law
14    Brown & Piesch, PLLC
      1233 20th Street NW, Suite 505
15    Washington, DC  20001

16    Steven R. Compton
      Attorney at Law
17    West Virginia Attorney General's Office
      812 Quarrier Street, Second Floor
18    Charleston, West Virginia  25301
      (Participated via Zoom)
19
      Also Present via Zoom:  Laura Welikson
20

21

22

23

24
```

Elite Court Reporting, LLC
APRIL ROBERTSON, 11/21/2023

Page 3

```
 1                    I  N  D  E  X

 2          WITNESS

 3               April Robertson

 4          EXAMINATION

 5               by Mr. Meade      Page 04

 6          EXHIBITS

 7               None

 8

 9

10

11

12

13

14

15

16

17    Reporter's Certificate:       Page 74
      Errata Sheet/Signature Page:   Enclosed
18

19

20

21

22

23

24
```

Page 4

```
 1                    APRIL ROBERTSON,

 2    called as a witness, first being duly sworn

 3    by the Court Reporter/Notary Public,

 4    testified as follows, to wit:

 5                    EXAMINATION

 6    BY MR. MEADE:

 7          Q.  Ms. Robertson, to start things off,

 8    would you please state your full name for

 9    the record?

10          A.  April Lynn Robertson.

11          Q.  Have you ever been deposed before?

12          A.  No.

13          Q.  Have you ever been involved in a

14    deposition before?

15          A.  Yes.

16          Q.  In what capacity?

17          A.  Yours.

18          Q.  So as counsel?

19          A.  Yes.

20          Q.  So you already know the rules.  You

21    know how these things work.  But just for

22    the sake of the record, I will go through a

23    couple of basic things.

24                  Obviously, the answers to questions
```

1    need to be audible.  The court reporter

2    can't really take down nods and hand

3    gestures and things like that.  If you don't

4    understand anything that I ask, feel free to

5    just ask me to repeat myself or to go into a

6    little more detail.

7              As we go through this, if you need

8    to take a break, just ask for it.  That's

9    fine.  We can take as many breaks as you

10   would like.

11             If your attorney at any point

12   during this objects to something, that's for

13   the purposes of admission or admissibility

14   down the road.  Continue to answer the

15   question.  If there needs to be any sort of

16   break or conversation, we can handle that at

17   that point.

18             Other than that, would you care to

19   go into some detail -- what is your current

20   title at the Department of Health and Human

21   Resources?

22        A.  General counsel.

23        Q.  Okay.  How long have you been in

24   that role?

Page 6

1          A.  Since May of 2019.

2          Q.  So then you have been general

3    counsel at the DHHR for the entirety of the

4    pendency of this litigation?

5          A.  Yes.

6          Q.  Were you affiliated with the

7    Department of Health and Human Resources

8    prior to May of 2019?

9          A.  Yes.

10         Q.  What role were you in prior to

11   that?

12         A.  Interim general counsel and

13   assistant general counsel and general

14   counsel for the Office of Inspector General.

15         Q.  So, in totality, how long have you

16   been involved in some aspect with the

17   Department of Health and Human Resources?

18         A.  Just about 12 years.

19         Q.  So have you been involved in your

20   capacity as either general counsel or

21   assistant general counsel or interim general

22   counsel -- from now on, I will just say

23   general counsel -- with any prior litigation

24   against the Department of Health and Human

1    Resources?

2          A.   What do you mean by involved?

3          Q.   Have you been involved in

4    specifically the discovery process or

5    production of documents?

6          A.   No.

7          Q.   Have you ever had to have contact

8    with the West Virginia Office of Technology

9    in your role as general counsel other than

10   in this suit?

11         A.   Yes.

12         Q.   Can you give me some detail exactly

13   about what that prior involvement was?

14         A.   Sending litigation holds to them.

15         Q.   Do you have any idea about how many

16   times that you have sent a litigation hold

17   to the Office of Technology?

18         A.   Over 20 times.

19         Q.   And is that fairly frequent, or is

20   that 20 times sparsed out between the decade

21   or so that you have been employed with the

22   department?

23         A.   Sparsed out since 2017.

24         Q.   So you did not ever issue a

1    litigation hold prior to 2017?

2         A.   Correct.

3         Q.   Does the Office of General Counsel

4    have a typical procedure that is followed

5    when it comes to issuing a litigation hold?

6         A.   Yes.

7         Q.   What is that policy?

8         A.   I follow the litigation hold

9    template that I inherited from my

10   predecessors and alter it slightly depending

11   on the case at issue and discuss with

12   leadership in the department and the

13   affected Bureau to determine who needs to be

14   on the litigation hold.

15        Q.   Once a hold is issued, do you have

16   any ongoing involvement in the discovery

17   process or the production of documentation?

18        A.   No.

19        Q.   In your experience, since you have

20   begun issuing litigation holds - so back in

21   2017 - have there ever been any issues

22   regarding the production of electronically

23   stored information from the West Virginia

24   Office of Technology?

1       A.  Not to my knowledge.

2       Q.  Now, you just stated a moment ago

3   you are not really involved in the discovery

4   process; is that correct?

5       A.  Correct.

6       Q.  So unless there were an issue that

7   rose to a significant level, would you be

8   aware of any problems with the production of

9   ESI?

10      A.  Probably not.

11      Q.  As general counsel, or maybe even

12  more specifically as incoming assistant

13  general counsel, did you receive any

14  specific type of training on the

15  preservation of electronically stored

16  information?

17      A.  No.

18      Q.  To the best of your knowledge, is

19  there any policy or procedure that is

20  distributed within the department at large

21  regarding the preservation of electronically

22  stored information?

23      A.  Not to my knowledge.

24      Q.  If such a policy were to exist,

Page 10

```
 1   would that be the province of the General
 2   Counsel's Office?
 3        A.  Yes.
 4        Q.  So would it stand to reason if such
 5   a policy existed, you would likely know of
 6   it?
 7        A.  Yes.
 8        Q.  On November 17th of this year, I
 9   believe you signed an affidavit regarding
10   your involvement with the preservation of
11   ESI in this case; is that correct?
12        A.  Yes.
13        Q.  Within that affidavit, you discuss
14   something that is called deprovisioning of
15   employees.  Do you recall that?
16        A.  Yes.
17        Q.  Are you familiar with that process?
18        A.  Yes.
19        Q.  So within your affidavit, you note
20   that the cabinet secretary in particular
21   authorizes the deprovisioning of stored
22   information or email accounts or what have
23   you with outgoing personnel; is that
24   correct?
```

1         A.  Not exactly.

2         Q.  Could you explain what exactly

3  about that is not correct?

4         A.  It's staff in the office of the

5  cabinet secretary that deprovisions certain

6  departing employees.

7         Q.  Who determines which departing

8  employees are deprovisioned?

9         A.  I am only familiar with that

10  process in the office of the cabinet

11  secretary because that's where I am.  And it

12  would involve employees from our office.

13         Q.  So General Counsel's Office is

14  involved in the deprovisioning process?

15         A.  Not exactly.

16         Q.  So what role then does general

17  counsel have in deprovisioning?

18         A.  None.

19         Q.  So have you yourself been involved

20  in any of the discussions or decisions with

21  -- involving the deprovisioning of outgoing

22  staff who are named defendants in this

23  action?

24         A.  Yes.

Page 12

1          Q.  To what extent were you involved in

2    those discussions or decisions?

3          A.  Looking at the online fillable form

4    with the secretary -- administrative

5    secretary in the office who fills that

6    out -- and there's -- to see what the

7    questions are and to ask her how she

8    typically answers them.

9          Q.  What are the questions surrounding

10   deprovisioning just as a general rule, if

11   there are any typical questions?

12         A.  It's an online fillable form

13   provided by the West Virginia Office of

14   Technology, what we refer to as OT.  And

15   it's primarily the employee's name, the date

16   of their departure, when we want them to be

17   deprovisioned.  And that means have all of

18   their access cut off to their accounts,

19   their access cards to buildings.

20   Deprovisioning is an act of taking away

21   someone's access.

22         Q.  This form that you are talking

23   about, is that form used in all

24   deprovisioning?

Page 13

1          A.  I believe so.  It's not our form.

2     It's OT's.

3          Q.  So with regard to staff who were

4     subject to a litigation hold in this matter

5     who have since exited their roles at the

6     department, would the deprovisioning form

7     for those members still be in existence?

8          A.  You would have to ask OT.

9          Q.  And it's your testimony here today

10    that that deprovisioning form is generated

11    from the office of the cabinet secretary; is

12    that correct?

13         A.  It's filled in by the

14    administrative secretary and submitted to

15    OT, but just for the highly placed employees

16    who work in the cabinet secretary's office.

17         Q.  Okay.  Highly placed employees,

18    would that be individuals like deputy

19    secretaries or the directors of the various

20    agencies within the department?

21         A.  Deputy secretary, yes.  Bureau

22    commissioners, probably.  Lower than that, I

23    couldn't say.

24         Q.  Okay.  So then just for example,

Page 14

```
1   the former commissioner for what was the

2   Bureau for Children and Families, Linda

3   Watts -- when she exited that role, if her

4   account -- or there was authorization for

5   her deprovisioning, if that occurred, that

6   would have been filled in and sent to the

7   Office of Technology by the administrative

8   secretary and the cabinet secretary's

9   office; is that correct?

10        A.  That would be speculation on my

11  part.

12        Q.  Well -- and again, if she were

13  deprovisioned, is that how that process

14  would work?

15        A.  I don't know if someone at the

16  Bureau for Children and Families would have

17  taken care of that at that time.

18        Q.  To the best of your knowledge, were

19  any of the named defendants in this matter

20  authorized for deprovisioning since this

21  case has been pending?

22        A.  As soon as someone leaves, their

23  access to their state accounts is

24  terminated.
```

1        Q.  Who at the Office of Technology

2   receives the authorization for

3   deprovisioning?

4        A.  Her first name is Ruby.  I don't

5   know her last name.

6        Q.  Is that a specific position within

7   the Office of Technology?

8        A.  You would have to ask OT.

9        Q.  So you are just not aware?

10       A.  No.

11       Q.  Are the authorizations, these

12   fillable forms for deprovision, are those

13   something that are also kept by the

14   department, or are those purged after they

15   are sent to the Office of Technology?

16       A.  I don't believe it is something

17   that can be downloaded and printed or saved

18   in any way.

19       Q.  What do you mean by that?  You said

20   it was a fillable form; is that right?

21       A.  Yes.  You fill it in and hit send.

22   I have not participated in the process

23   myself.

24       Q.  So you don't know whether or not

1    there is, for example, a PDF of that

2    completed form that is preserved by the

3    department?

4          A.  I don't know.

5          Q.  Have you actually read one of these

6    fillable forms for deprovisioning?

7          A.  I have looked over the shoulder of

8    the administrative secretary and read the

9    fields that she must fill in when

10   deprovisioning someone -- excuse me --

11   requesting that someone be deprovisioned.

12         Q.  Does the Office of Technology ever

13   refuse to deprovision someone who has been

14   authorized for deprovisioning?

15         A.  You would have to ask them.

16         Q.  Are you aware of that ever

17   occurring?

18              MR. BROWN:  This is sort of

19   an objection.  Because I think you need

20   to define the term "deprovisioning" for

21   the questions that you are asking and the

22   answers that you are getting.

23              MR. MEADE:  Well, and I

24   think we can do that just for the sake of

1    --

2         Q.  As you have been answering these

3    questions regarding deprovisioning, what are

4    you taking that word to mean?

5         A.  Cutting off a departing employee's

6    access to the state system.

7         Q.  Okay.  And then I think we can use

8    that definition.  That's fine.  That's my

9    understanding of it.

10              MR. BROWN:  Okay.

11        Q.  But within this fillable form for

12   deprovisioning, is there anything which

13   addresses the possibility of pending

14   litigation holds with regard to outgoing

15   staff?

16        A.  There is not.

17        Q.  After any of the named defendants

18   or individuals within this matter that were

19   subject to a litigation hold -- after they

20   departed employment by the department, did

21   the General Counsel's Office follow up with

22   the Office of Technology to ensure that

23   their electronically stored information was

24   being preserved?

Page 18

```
 1        A.   No.

 2        Q.   Why?

 3        A.   I had no reason to assume that

 4   there would be any problem.

 5        Q.   Ms. Robertson, did you read the

 6   affidavit that was provided by the chief

 7   information officer for the Office of

 8   Technology that was submitted as an exhibit

 9   to the Defendants' Response to our Motion

10   for Sanctions in this case?

11        A.   Yes.

12        Q.   Are you aware then that the Office

13   of Technology's policy for deleting emails

14   and things of that nature after 30 days has

15   been in place for at least a decade?

16        A.   I am now.

17        Q.   You were not previously aware of

18   that policy; is that your statement?

19        A.   Define "previously."

20        Q.   Prior to let's say September of

21   this year, were you aware of the Office of

22   Technology's policy regarding deletion or

23   purging of electronically stored information

24   with regard to staff who has separated from
```

1    state employment?

2         A.   I was not.

3         Q.   Despite that policy having been in

4    place the entire time that you have served

5    as general counsel, you were not aware of

6    that?

7         A.   Correct.

8         Q.   Is it your practice upon sending a

9    litigation hold to have any follow-up

10   communication with the Office of Technology?

11        A.   No.

12        Q.   In your affidavit, which was I

13   believe -- I think Exhibit A to the

14   Defendants' Response and Opposition to our

15   Motion for Sanctions, you stated that you

16   submitted or sent a litigation hold in

17   December of 2019; is that right?

18        A.   Yes.

19        Q.   Were you asked to do that?

20        A.   I don't remember exactly.  But I

21   assume that we had some discussions with

22   leadership and policy folks who worked with

23   the subject matter of this litigation and

24   possibly outside counsel.

Page 20

1        Q.   Is the West Virginia Attorney

2   General's Office ever involved in

3   discussions regarding litigation holds?

4        A.   Not with me.

5        Q.   Okay.  So the Attorney General's

6   Office did not contact you with regard to a

7   litigation hold in this case?

8        A.   I don't remember.

9        Q.   If you have communication with the

10  Attorney General's Office, is that typically

11  conducted through email or by some other

12  means?

13       A.   Various means.

14       Q.   Would that be by phone or anything

15  else besides by phone?

16       A.   In person.

17       Q.   Is there any sort of I guess

18  interoffice communication besides email,

19  such as -- I don't know if you are familiar

20  with Slack or an online chat or something

21  like that?

22       A.   Our wv.gov network that OT provides

23  to state executive branch agencies -- we are

24  now on Google.  And there is a chat feature,

1    what we use to refer to as instant message.

2         Q.  Okay.  And who has access to that

3    system?

4         A.  State employees.

5         Q.  Is that all state employees?

6         A.  Who are on the Google system.

7         Q.  All right.  Is there any specific

8    designation that determines who is given

9    access to the Google system?

10        A.  The decision was made a few years

11   ago to the transition executive branch

12   agencies from the Microsoft Office suite of

13   products over to the Google suite of

14   products.

15        Q.  Do you know whether or not the

16   cabinet secretary for the Department of

17   Health and Human Resources has access to

18   that system?

19             MR. BROWN:  Objection.  Vague.

20        A.  I have no reason to doubt that the

21   cabinet secretaries do have access to that.

22        Q.  Have you ever had communication

23   with a cabinet secretary through that

24   system?

Page 22

```
 1                MR. BROWN:  Objection.  Vague.
 2          A.  I don't think so.  You are talking
 3     about the chat feature?
 4          Q.  The chat feature specifically.
 5          A.  No.
 6          Q.  When this litigation hold was sent
 7     in 2019, was it sent by email?  By regular
 8     mail?  In-person delivery?  How was it sent
 9     to its intended recipients?
10          A.  Email.
11          Q.  Was that email -- was it just a
12     group email?  Was it individual emails to
13     each person intended to be included?
14          A.  Group.
15          Q.  Did you receive any responses to
16     that email?
17          A.  Yes.
18          Q.  Do you still have those email
19     responses?
20          A.  Yes.
21          Q.  Did you receive a response from
22     each of the individuals that were sent that
23     litigation hold?
24          A.  No.
```

Page 23

1          Q.  Do you recall which individuals you

2    received a response from?

3          A.  I do have a list of those.  I would

4    have to refer to the list to refresh my

5    recollection.

6          Q.  Do you know whether or not the

7    response emails to your litigation hold have

8    been produced at all in response to this

9    discovery issue that we are currently

10   conducting a deposition over?

11         A.  I don't know the answer to that

12   question.

13         Q.  Have you provided those response

14   emails to the Attorney General's Office or

15   outside counsel?

16         A.  I believe outside counsel has them.

17         Q.  Okay.  The litigation hold that you

18   provided as a -- we will call it an exhibit

19   to your affidavit, specifically the document

20   which is numbered 3991 in the docket entries

21   for the pending federal case -- there is a

22   final page which says Acknowledgement.  Do

23   you know what page I am referring to?

24         A.  Yes.

Page 24

1        Q.  What is the purpose of that
2    acknowledgement?
3        A.  To make sure people received the
4    litigation hold.
5        Q.  Did you receive any signed
6    acknowledgements from the individuals who
7    were subject to this litigation hold?
8        A.  Yes.
9        Q.  Did you receive a signed
10   acknowledgement from anyone at the West
11   Virginia Office of Technology?
12       A.  No.
13       Q.  If you did not receive an
14   acknowledgement, how are you certain that
15   the Office of Technology actually reviewed
16   this hold?
17       A.  I can't speak to what they may read
18   or not read in their inboxes.
19       Q.  Isn't the purpose of this
20   acknowledgement to determine whether or not
21   they read it?
22       A.  The purpose in my mind is primarily
23   to make sure our DHHR folks are seeing it
24   and making sure that they understand.

Page 25

```
1            Q.  So did you receive a signed
2    acknowledgement to the litigation hold from
3    all of the individuals within the DHHR who
4    received a copy of it?
5            A.  No.
6            Q.  Did you have any follow-up
7    conversations with any of the individuals
8    that you sent the litigation hold to but did
9    not provide a signed acknowledgement?
10           A.  I did not.
11           Q.  Why?
12           A.  Because the Bureau attorney who
13   monitors any sort of litigation affecting
14   their Bureau takes over monitoring cases at
15   that point.  And my role really at that
16   point is done.
17           Q.  Who is the attorney who is
18   monitoring -- who is the Bureau attorney who
19   is monitoring this action?
20           A.  Then?
21           Q.  Then and now.
22           A.  Well, then it was Cammie Chapman.
23           Q.  If an acknowledgment was signed and
24   returned, would it have been sent to Cammie
```

```
 1    Chapman, or would it have been sent to you?
 2          A.  Neither.
 3          Q.  Who would receive these return
 4    acknowledgements?
 5          A.  Our paralegal.
 6          Q.  And who supervises your paralegal?
 7          A.  Me.
 8          Q.  You mentioned that you have
 9    submitted litigation holds since -- well,
10    about 20 since 2017; is that right?
11          A.  Give or take.
12          Q.  Is this acknowledgement included on
13    all of the form litigation holds that you
14    send?
15          A.  Yes.
16          Q.  Do you know whether or not these
17    acknowledgements are typically signed and
18    returned?
19          A.  We do not get a 100 percent return
20    rate typically.
21          Q.  Who within the Department of Health
22    and Human Resources is responsible for
23    ensuring that discoverable documentation is
24    preserved in the pendency of litigation?
```

1         A.  Can you define discoverable

2    documentation?

3         Q.  Any documentation -- so, for

4    example, in our current lawsuit -- this case

5    involves the management of the foster care

6    system as a whole.  Any documentation which

7    would pertain to the management or operation

8    of the foster care system, at least it would

9    be our contention, would be subject

10   potentially to discovery in this matter and

11   the purpose of this litigation hold.

12             When a litigation hold is issued,

13   who within the department is responsible for

14   ensuring that that litigation hold is

15   actually carried out and is actually

16   enforced?

17        A.  It is up to each individual

18   receiving the litigation hold to manage

19   their own documents, be they paper documents

20   or documents on their computers.  And OT

21   manages the email preservation.

22        Q.  So would it be your position then

23   that follow-up with the Office of

24   Technology, if it were required, would be

Page 28

```
1    the responsibility of the individuals

2    subject to the litigation hold and not your

3    office?

4         A.  I'm sorry.  Can you ask that again?

5         Q.  Yes.  So if follow-up with the

6    Office of Technology regarding a litigation

7    hold were needed, would that be the

8    responsibility of the individual that was

9    subject to that litigation hold, or would

10   that be the responsibility of General

11   Counsel's Office?

12        A.  What do you mean by follow-up?

13        Q.  Determining whether or not a

14   litigation hold was in fact in place at the

15   Office of Technology?

16        A.  I had no reason to believe that the

17   litigation holds weren't in place at OT.  So

18   it didn't -- why would follow-up be

19   necessary?

20        Q.  Well, you just stated a moment ago

21   that you did not receive any signed

22   acknowledgements from the West Virginia

23   Office of Technology; is that right?

24        A.  Correct.
```

Case 3:19-cv-00710   Document 402-2   Filed 11/27/23   Page 30 of 88 PageID #: 15384

1      Q.  So if you didn't receive an

2  acknowledgement, or to the best of your

3  knowledge, no one did, why would you assume

4  that that litigation hold was put in place?

5      A.  Because the sent email went

6  through.  And they are in charge of email.

7      Q.  But you don't know today whether or

8  not you received any confirmation from the

9  Office of Technology that these litigation

10 holds were received and implemented?

11     A.  That's not true.  I do know that OT

12 did not provide confirmation, those forms

13 you are pointing to there.

14     Q.  And is it also your testimony today

15 that the Office of Technology did not

16 respond or confirm via email regarding their

17 receipt of a litigation hold?

18          MR. BROWN:  Objection.  Are you

19 asking what she knew at the time or what she

20 knows now?

21          MR. MEADE:  I am asking what she

22 knew at the time.

23     A.  Can you ask it again?

24     Q.  I can.

1            So at the time -- or within 60 days

2  of these litigation holds being sent to the

3  Office of Technology, did you receive any

4  confirmation email or other communication

5  from the Office of Technology regarding

6  receipt of the hold?

7       A.  I did not.

8       Q.  Is it your testimony today that

9  prior to September of this year, you did not

10  know whether or not these litigation holds

11  were put in place by the Office of

12  Technology?

13       A.  That is correct.  I assumed they

14  were in place.  I had been sending them

15  since 2017.  And whoever was heading up OT

16  in each of those years never reached back to

17  say, hey, these memos are deficient in any

18  way.

19       Q.  When these litigation holds are

20  sent - whether in this case or in other

21  cases where you have sent them - who

22  typically at the Office of Technology

23  receives them?

24       A.  Whoever is the head of that agency

1   at the time.

2          Q.  So would it be the chief

3   information officer that receives them?

4          A.  I don't know what their exact

5   working title is.

6          Q.  Okay.  Now, are there any other

7   individuals within -- let me rephrase that.

8              Is there any other specific

9   position in the staff at the Office of

10  Technology that would be a recipient

11  directly from your office of a litigation

12  hold?

13         A.  Now there is.

14         Q.  Would that have been the case in

15  2019?

16         A.  No.

17         Q.  To the best of your knowledge, did

18  anyone at the Department of Health and Human

19  Resources follow up with the West Virginia

20  Office of Technology when named defendants

21  in this action, or other staff that were

22  subject to your litigation hold, departed

23  the agency, they left?

24         A.  I believe it was discovered in

```
 1    September that there was a problem with the
 2    emails of those who had departed.
 3         Q.  But at the time of those particular
 4    members of staff, employees of the
 5    department -- at the time of their exit, to
 6    the best of your knowledge, did anyone reach
 7    out to the Office of Technology regarding
 8    these litigation holds?
 9         A.  Not to my knowledge.
10         Q.  Did anyone from your office in
11    particular reach out to the Office of
12    Technology regarding these litigation holds?
13         A.  Not to my knowledge.
14         Q.  Are you aware that in 2021, this
15    particular litigation was dismissed by the
16    District Court?
17         A.  I will take your word for it.
18         Q.  Well, were you aware in 2021 that
19    that occurred?
20         A.  I probably was.
21         Q.  All right.  At the time of that
22    dismissal by the District Court, did anyone
23    from your office reach out to the Office of
24    Technology regarding the ongoing
```

1    enforceability of these litigation holds?

2         A.  No.

3         Q.  To the best of your knowledge, did

4    anyone at the Department of Health and Human

5    Resources reach out to the Office of

6    Technology regarding litigation holds for

7    this case?

8         A.  No.

9         Q.  Do you have any reason -- or can

10   you explain why that would be, why no one

11   would follow up with the Office of

12   Technology?

13             MR. BROWN:  Objection.  Can you

14   clarify what time frame you are talking

15   about?

16        Q.  Specifically at the time of this

17   matter's dismissal by the District Court

18   judge, why would no one from your office

19   have reached out to the Office of Technology

20   to discuss these litigation holds?

21        A.  Probably because dismissal at the

22   District Court level is not necessarily the

23   end of the litigation, as evidenced by the

24   fact that we are still here.

Page 34

1          Q.   Is that something that you would
2    expect employees at the Office of Technology
3    to be aware of?
4          A.   No.   Other than outside counsel has
5    been working throughout the pendency of this
6    matter on -- with folks from OT on
7    voluminous amounts of discovery.
8          Q.   In your role as general counsel,
9    following your production and distribution
10   of this litigation hold, did you have any
11   discussions with any of the individuals
12   subject to the hold regarding their own
13   efforts to preserve electronically stored
14   information?
15         A.   I did not.
16         Q.   Are you capable of testifying here
17   today whether or not any of the named
18   individuals on your litigation hold took
19   independent action to preserve their own
20   electronically stored information?
21         A.   I cannot.
22         Q.   I am trying to think of the best
23   way to say this.   Are individuals who are in
24   charge of the management of the department

1    or any of its various agencies issued cell

2    phones by the State of West Virginia?

3         A.  Yes.

4         Q.  Do any of the cell phones that were

5    issued to staff at the department who were

6    subject to this litigation hold -- do any of

7    those state-issued cell phones still exist?

8         A.  I am not the person who retains

9    custody and control of state-issued

10   equipment.

11        Q.  Who would be the person that

12   maintains custody and control of that

13   equipment?

14        A.  It is my understanding that OT is

15   responsible for state-issued equipment in

16   terms of accessing what is on pieces of

17   equipment.  But our Office of Management

18   Information Services I believe can take care

19   of those different devices.

20        Q.  So you say that they can take care

21   of them.  But is it that particular office

22   -- I think you said it was management -- I'm

23   sorry.  I've lost it already.  Management of

24   information -- I apologize.  Do you mind

Page 36

```
 1    repeating what the name of that entity was?
 2          A.  Office of Management Information
 3    Services.
 4          Q.  Office of Management Information
 5    Services.  Does that office maintain devices
 6    that are distributed to state employees?
 7          A.  I believe so.  But even they need
 8    to be granted administrator access from OT
 9    in order to log on, if you will, to do any
10    searching.
11          Q.  Was that office, specifically of
12    Management Information Services, provided
13    with a litigation hold for this case?
14          A.  Yes.
15          Q.  They were.  Do you know who
16    specifically at that office was provided
17    with a litigation hold?
18          A.  Yes.
19          Q.  Would that have been Shawn Charles?
20          A.  Yes.
21          Q.  Do you know whether or not any
22    device that was issued to a state employee
23    who was subject to this litigation hold has
24    been preserved?
```

Page 37

```
 1        A.  I don't know.
 2        Q.  Since discovering the issues
 3   regarding purged emails by the Office of
 4   Technology, has your office attempted to
 5   reach out to the Management Information
 6   Services or the Office of Technology
 7   regarding preservation of devices such as
 8   cell phones or laptops?
 9        A.  Yes.
10        Q.  Based upon those conversations, can
11   you state whether or not any of those
12   devices have been preserved?
13        A.  I believe there is at least one
14   computer that was maintained following an
15   employee's departure.
16        Q.  Do you know which employee that
17   laptop belonged to?
18        A.  Bill Crouch.
19        Q.  Do you know whether or not Bill
20   Crouch had a state-issued cell phone?
21        A.  Yes.
22        Q.  Do you know whether or not that
23   state-issued cell phone has been preserved?
24        A.  I do not know.
```

Page 38

1           Q.  When you say you don't know, are
2    you stating that the Office of Technology
3    or the Office of Information Services has
4    not affirmatively told you that they were
5    preserved?
6           A.  Yes.
7           Q.  Have they indicated to you that
8    they were not preserved?
9           A.  They have not told me that either.
10          Q.  Since this lawsuit has been
11   pending, there have been some change ups in
12   the administration at DHHR, specifically
13   with the exit of Secretary Crouch and Deputy
14   Secretary Jeremiah Samples, as well as other
15   individuals who were listed on your
16   litigation hold; is that correct?
17          A.  Yes.
18          Q.  When incoming replacement staff,
19   let's say, such as Jeff Coben, took their
20   positions, were they provided with a
21   litigation hold?
22          A.  Is your question solely about Jeff
23   Coben?
24          Q.  It has to do with any incoming or

Page 39

```
 1  replacement supplemental staff that have
 2  come in to fill the positions previously
 3  held by individuals subject or at least
 4  included within your litigation hold.
 5       A.  They were not given a litigation
 6  hold for this matter.
 7       Q.  Why is that?
 8            MR. BROWN:  Are you asking about
 9  any individual specifically?
10       Q.  Just in particular, we can talk
11  about Jeff Coben.  Why was Jeff Coben not
12  given a litigation hold with regard to this
13  matter?
14       A.  His tenure with us was intended to
15  be temporarily -- temporary and brief.  And
16  every week we talked to him about when his
17  departure date would be, and it was unknown.
18  And his involvement in minute details of
19  every pending case was extremely limited.
20  So it frankly did not occur to us to put him
21  on pre-existing litigation holds.  As the
22  interim cabinet secretary at the time,
23  however, any new litigation holds that were
24  coming in, the cabinet secretary is always
```

Page 40

1    included.  So his name is on at least one.

2         Q.  Just to clarify though.  It is your

3    testimony here today that no one who has

4    come in to a position that was formerly

5    subject or is subject to this litigation

6    hold was sent with an updated litigation

7    hold upon taking those positions?

8         A.  Not upon their taking those

9    positions.

10        Q.  Prior to September of this year,

11   were any supplemental or replacement or

12   incoming staff taking the positions of

13   individuals who were subject to this

14   litigation hold sent a litigation hold?

15        A.  No.  For this case, no.

16        Q.  So is it your testimony then today

17   that no supplementary litigation holds were

18   sent to anyone until the issue regarding ESI

19   preservation by the Office of Technology

20   became apparent?

21        A.  Correct.

22        Q.  Why did your office not send

23   litigation holds to non-temporary --

24   non-interim incoming staff?

Page 41

1          A.  The decision as to whether a

2   litigation hold is even issued in the first

3   place -- as I said earlier, I have issued

4   approximately 20, maybe a few more over the

5   last several years.  Obviously, DHHR has

6   many more pending cases and settled cases in

7   those same years.  A litigation hold isn't

8   issued for every case.  That's a decision

9   that is made after discussion with

10  leadership and our outside defense counsel

11  and sometimes at the request of plaintiffs'

12  counsel.

13          Q.  But it's your testimony that that

14  discussion regarding the necessity of the

15  litigation hold was had with regard to this

16  matter; is that correct?

17          A.  In 2019.

18          Q.  And upon the departure of

19  individuals who were subject to that

20  litigation hold, was there no additional

21  discussion about implementing that hold with

22  regard to incoming employees?

23          A.  No.

24          Q.  So is it your testimony here today

Page 42

```
 1    then that no one asked your office to issue
 2    additional litigation holds to incoming
 3    employees of the Department of Health and
 4    Human Resources?
 5         A.  That's correct.
 6         Q.  How was the decision made regarding
 7    which individuals would be subject to a
 8    litigation hold and which would not?
 9         A.  As I recall, in this particular
10    case, there was a discussion with leadership
11    and perhaps outside counsel at the time, I
12    don't really remember, about including those
13    individuals with policy-making functions
14    over the Bureau for Children and Families
15    and/or supervisory roles with the field
16    operations.  And that's how the individuals
17    on the 2019 litigation hold were determined.
18         Q.  When individuals who were subject
19    to that litigation hold exited their
20    positions with the Department of Health and
21    Human Resources, to the best of your
22    knowledge, was there any sort of debrief
23    with them regarding preservation of their
24    electronically stored information?
```

Elite Court Reporting, LLC
APRIL ROBERTSON, 11/21/2023

Page 43

```
1          A.  I don't know.

2          Q.  Do you know why individuals --

3   well, let me start over there.  If I

4   indicated to you that electronically stored

5   information for Jane McCallister was at some

6   point produced in this case, would you have

7   any reason to disagree with that?

8          A.  I wouldn't have any knowledge one

9   way or the other.

10         Q.  Was Jane McCallister an individual

11  that was subject to the litigation hold that

12  you distributed in December of 2019?

13         A.  I don't remember her name being on

14  the litigation hold, but I would have to

15  reference the document myself.

16         Q.  Are all of the individuals that

17  were included on the litigation hold listed

18  on the document itself?

19         A.  Can you ask that again?

20         Q.  Yes.  The document -- the

21  litigation hold that your office produced,

22  were all of the individuals who were subject

23  to that hold named within that document?

24         A.  No.  Because in the body of the
```

Page 44

1    document itself, it instructs the recipients

2    that if they supervise or work with others

3    that they know may have responsive

4    information, that they are to share the

5    litigation hold or let them know about this

6    effort to preserve.

7         Q.  Okay.  To the best of your

8    knowledge, were any of the individuals named

9    within the litigation hold followed up with

10   regarding whether or not they provided this

11   document to individuals that they supervise?

12        A.  I cannot answer that one way or

13   another.  I assume, based on the amount of

14   discovery that has gone on in this

15   particular case that I was not privy to,

16   that all of those kind of conversations

17   likely may have taken place.  But --

18        Q.  But you don't know?

19        A.  But I would not be the person with

20   firsthand knowledge of those conversations.

21        Q.  So to just clarify then.  You don't

22   know whether or not those sort of

23   conversations occurred?

24        A.  No.

Page 45

1          Q.   So is it your statement here today

2    that this litigation hold was intended to

3    apply to individuals other than just those

4    who are specifically named on it?

5          A.   Yes.

6          Q.   How would the West Virginia Office

7    of Technology know to preserve ESI for

8    individuals who were not listed on the

9    litigation hold that was provided to the

10   Office of Technology?

11         A.   Unless during discovery our counsel

12   working with the folks at OT who were doing

13   the searching -- based on the discovery

14   requests and the search terms and the named

15   individuals, they may have known through

16   that one-on-one work.

17         Q.   So is it your testimony then that

18   the Office of Technology would know about

19   other individuals subject to the hold if

20   they were told by someone other than your

21   office?

22         A.   It would come up organically during

23   the discovery process, the names of the

24   individuals whose accounts were being

Page 46

1    searched.

2         Q.  Was the Office of Technology at any

3    point in time instructed to preserve

4    electronically stored information for all

5    individuals for whom discovery was produced

6    in this matter?

7         A.  I don't know.

8         Q.  Other than this litigation hold,

9    did the Department of Health and Human

10   Resources send anything to the Office of

11   Technology to preserve electronically stored

12   information?

13        A.  Again, I am not involved in the

14   discovery process of this case or any other

15   case, so I can't say.

16        Q.  But you were involved in the

17   production and distribution of the

18   litigation hold from 2019; is that correct?

19        A.  Yes.

20        Q.  So did your office generate any

21   other documents regarding preservation of

22   electronically stored information that was

23   sent to the Office of Technology?

24        A.  My office did not, other than at

1    the time Associate General Counsel Cammie

2    Chapman was also in my office, and she was

3    working closely with outside counsel on the

4    defense of this case.

5        Q.  Do you know whether or not Cammie

6    Chapman provided a request or a directive to

7    the Office of Technology to preserve

8    electronically stored information for any

9    individual that is not listed on the 2019

10   litigation hold?

11       A.  I don't believe that she did.

12       Q.  If an individual leaves the

13   employment of the Department of Health and

14   Human Resources but remains an employee of

15   the state government of West Virginia, to

16   the best of your knowledge, would that

17   individual's accounts still be authorized

18   for deprovisioning, the same deprovisioning

19   that we have been discussing throughout this

20   deposition?

21       A.  Their access to DHHR information

22   would be deprovisioned, but they might still

23   have a wv.gov email address.  And I don't

24   know behind the scenes how OT differentiates

Page 48

1  someone's access from one department to

2  another -- you know, when those transfers

3  occurred.  Sometimes the person's email

4  address is altered slightly.  I know of

5  particular cases where that has occurred.

6  OT assigns us our email addresses.  We don't

7  get to choose.

8      Q.  Okay.

9      A.  So from my -- for example, mine is

10  April.L.Robertson@wv.gov.  If I went to

11  another state agency, it might become just

12  April.Robertson@wv.gov with no middle

13  initial.  I know of particular people who

14  have joined our organization that that has

15  happened to.

16      Q.  Since discovering that information

17  was not preserved by the Office of

18  Technology in this case, have you had a

19  conversation with anyone within that office

20  regarding their 30-day deletion policy?

21      A.  Yes.  In recent months, yes.

22      Q.  Who specifically have you spoken to

23  at the Office of Technology regarding that

24  policy?

```
 1        A.  Heather Abbott, Danielle Cox,

 2   Jennelle Jones.  Those are the three main

 3   ones.

 4        Q.  Do you know, based upon your

 5   conversations with those individuals

 6   employed at the Office of Technology,

 7   whether or not the policy of deleting

 8   electronic information only applies to

 9   individuals who are leaving employment by

10   the state government?  Or does that policy

11   also apply to individuals who are simply

12   shifting to another position within state

13   government?

14             MR. BROWN:  Objection.  Outside

15   of the scope.

16        A.  I don't know how OT differentiates

17   in those transfer situations.

18        Q.  So then if the electronically

19   stored information of some of the

20   individuals listed within your litigation

21   hold still exists, despite them having left

22   employment by the department, you would not

23   know why it is that their information was

24   preserved?
```

Page 50

```
1           A.  I'm sorry.  Can you ask that again?
2           Q.  So do you know why the information
3   of some or an individual included in your
4   litigation hold would be preserved and
5   available despite them having left
6   employment by the DHHR?
7                MS. BROWN:  Objection.  Are you
8   inquiring about a specific person?
9           Q.  I am specifically -- do you have
10  any idea why the electronic information of
11  Jeremiah Samples continues to exist despite
12  the fact that he has departed employment by
13  the Department of Health and Human
14  Resources?
15          A.  I didn't know that it does.
16          Q.  Do you know whether or not the
17  electronically stored information of any of
18  the named individuals on your litigation
19  hold continues to exist following their
20  departure from the department?
21          A.  I believe it has been discovered
22  because of emails they sent to other people
23  who still work for the department.  Those
24  other people may have received information
```

Page 51

```
 1    or emails from those departed people.  So in

 2    the To field, the From field, the cc field,

 3    those email accounts can be recreated, if

 4    you will.

 5         Q.  So it's your testimony then, at

 6    least based upon your understanding of how

 7    this electronic information is preserved,

 8    that communications between X employees of

 9    the department with current employees of the

10    department, that those sort of emails still

11    exist?

12         A.  Sure.

13         Q.  Do you know whether or not the

14    Office of Technology is also in charge of

15    things like voicemail or voice memos or

16    other communication that takes place

17    interagency within the state government?

18         A.  On the telephone system?

19         Q.  Yes.

20         A.  I cannot answer that 100 percent.

21    I don't -- maybe.  I don't know.

22         Q.  Based upon the discussions that you

23    have had with the Office of Technology, do

24    you know whether or not they have performed
```

Page 52

```
 1   any search of either devices that were
 2   provided to personnel who were subject to
 3   the litigation hold or other means of
 4   electronic communication since determining
 5   that the emails in particular of these
 6   individuals was purged?
 7        A.  I don't know what devices have been
 8   searched.
 9        Q.  So then is it your testimony that
10   you have not had a conversation with the
11   Office of Technology regarding that
12   particular issue?
13        A.  I believe Heather Abbott
14   communicated to us that it would be cost
15   prohibitive to maintain everything that is
16   on every device that's ever issued to a
17   state employee and that that is not their
18   custom -- you know, their practice.
19        Q.  Is it your testimony today that
20   between December 4, 2019 -- and I will
21   represent to you that's the date on your
22   litigation hold -- and October of this year,
23   2023, you were not aware that anyone
24   followed up with the Office of Technology
```

Page 53

1    regarding a litigation hold for this pending

2    case?

3         A.  I believe there was some

4    communication between outside counsel and OT

5    in September regarding searching, you know,

6    through the discovery process.  And

7    litigation holds may have been mentioned in

8    some of those conversations.

9         Q.  Do you know whether any sort of

10   communication with the Office of Technology

11   regarding litigation holds has been had

12   between December of 2019 and September of

13   2023 -- so prior to September of 2023?

14        A.  I don't have that information.

15        Q.  Did anyone from the West Virginia

16   Attorney General's Office reach out to your

17   office or to you in particular between

18   December of 2019 and September of 2023

19   regarding these litigation holds?

20        A.  Not that I can recall.

21             MR. MEADE:  Let's take maybe

22   just a quick five minutes.

23             (Break in proceedings.)

24   BY MR. MEADE:

Page 54

```
1          Q.  Ms. Robertson, just continuing on.
2    I think I have only got a handful more
3    questions for you.  We can all get about our
4    day.
5               So you testified earlier that you
6    have created a list of the individuals who
7    provided a response to the litigation hold
8    that you sent out in 2019; in this correct?
9          A.  Yes.
10         Q.  Why did you create that list?
11         A.  To prepare for this deposition.
12         Q.  Do you have that list?
13         A.  Yes.
14         Q.  Are you able to produce that list?
15   Are you willing to provide a copy of it?
16         A.  Just the litigation hold with check
17   marks by their names, the ones who have
18   turned in -- yes.
19         Q.  So it would be the individuals
20   listed on the 2019 litigation hold with
21   check marks next to their names?
22         A.  Yes.
23         Q.  Do you recall which individuals
24   would be indicated to have returned a
```

Page 55

1    response?

2         A.  Not without looking at the

3    reference document.

4         Q.  Would you produce the list with the

5    check marks included on it?

6              MS. BROWN:  We can do that

7    after.

8              MR. MEADE:  Yes.  It doesn't

9    have to be right now.

10             MS. BROWN:  Yes.

11             MR. MEADE:  But just at some

12   point.  I just want to make sure that it is

13   still around.

14        Q.  Now, in your 2019 litigation hold,

15   would you agree with me that there is

16   nothing within the body of that document

17   itself which would indicate to the Office of

18   Technology who in particular they should be

19   preserving electronically stored information

20   for?

21        A.  I would not agree with that.

22        Q.  Why would you not agree with that?

23        A.  Because their names are on the

24   document.

Page 56

```
1            Q.  Does the document say that the
2     Office of Information -- or the Office of
3     Information Technology is supposed to
4     preserve the information of the individuals
5     included in the To line on this letter?
6            A.  As a recipient included in the To
7     line, that recipient should have read the
8     entire memo and realized that preservation
9     was at the heart of the memo.  And since OT
10    is in charge of our email accounts, I think
11    it's a reasonable inference.
12           Q.  So then is it your testimony that
13    you would assume the Office of Technology
14    would know just because these individuals
15    are included in the To line on the
16    litigation hold?
17           A.  Yes.
18           Q.  And again -- I know we have gone
19    over this a couple of times.  But you
20    personally have not had any follow-up
21    conversation prior to 2023 with the Office
22    of Technology regarding who should be
23    subject to this litigation hold?
24           A.  Correct.
```

Page 57

1        Q.  Now, your office has also generated

2   a more recent memorandum and litigation hold

3   regarding this case; is that correct?

4        A.  Yes.

5        Q.  And that was produced and

6   distributed in early October of this year?

7        A.  Yes.

8        Q.  Attached to that memorandum

9   regarding litigation hold, there is a list

10  of litigation -- it's called the October 10,

11  2023 Litigation Hold Distribution List.  Are

12  you familiar with that list?

13       A.  Yes.

14       Q.  Why did you include a list with all

15  of these different named individuals in your

16  2023 litigation hold but not with your 2019

17  litigation hold?

18       A.  Because the new list is two pages

19  long.  And it just made sense to do it this

20  way.

21       Q.  So then is it your statement today

22  that the intent of that list on the 2023

23  memorandum is the same as the To line in the

24  2019 --

Page 58

```
 1        A.  Yes.
 2        Q.  -- litigation hold?
 3             Why wasn't a litigation hold sent
 4    in this case prior to December of 2019?
 5        A.  As I stated before, litigation
 6    holds are not sent in every case.  It is at
 7    someone's request, either defense counsel,
 8    plaintiffs' counsel -- for various reasons.
 9    And we issued the litigation hold in
10    December of 2019 because we were asked to.
11        Q.  And would that hold have been sent
12    out relatively close in time to when the
13    request was issued?
14        A.  Yes.
15        Q.  Now, you provided some testimony
16    regarding Cammie Chapman's role in your
17    office at the time that this initial
18    litigation hold was sent out.  Do you know
19    whether or not Cammie Chapman returned an
20    acknowledgement of this litigation hold?
21        A.  She did.
22        Q.  Do you know whether or not Cammie
23    Chapman -- as I believe at that time
24    assistant general counsel -- had any
```

Page 59

```
 1    follow-up conversation with anyone either on
 2    the To line of the 2019 litigation hold or
 3    the Office of Technology in general?
 4         A.  As the associate general counsel
 5    assigned to the Bureau for Children and
 6    Families at that time, I am sure she had
 7    conversations with everybody in the To line
 8    with the exception perhaps of OT.  But that
 9    would be speculation on my part.
10         Q.  Would it have been Ms. Chapman's
11    responsibility as associate counsel to
12    ensure that this litigation hold was
13    discussed with the individuals who would be
14    subject to it?
15              MR. BROWN:  Objection.
16         A.  I think that -- you know, my role
17    is to send out the litigation holds at the
18    outset of litigation, or even prior to a
19    complaint being filed, you know, when we
20    receive in circuit court cases, for example,
21    notices of intent to sue.  And then
22    management and monitoring of those
23    individual cases then is transferred to the
24    Bureau attorneys for whichever Bureau is
```

Page 60

1    affected and our outside counsel.  Sometimes

2    it's private firms such as this case or the

3    Attorney General's Office.  It just depends.

4    And at that point, my role -- I step back

5    and let all of those people take over the

6    management and direction of the defense of

7    the case, including discovery.

8         Q.  So then it's your testimony - just

9    to make sure I am clear - that once your

10   office issued this litigation hold, that

11   Ms. Chapman, as associate counsel for the

12   Bureau for Children and Families, would have

13   had more involvement in the management of

14   this case and anything to do with this

15   litigation hold from that point forward?

16        A.  Yes.  Cammie was more hands on than

17   I was.

18        Q.  Okay.  We talked at length earlier

19   about deprovisioning.  And I understand

20   deprovisioning at this point essentially

21   just means cutting off access to individuals

22   who are leaving the employment of the

23   department in particular as it relates to

24   this case.

Page 61

```
 1                 And you have stated that you have
 2    had conversations with individuals from the
 3    Office of Technology regarding their at
 4    least prior policy of deleting outgoing
 5    staff's electronically stored information
 6    after 30 days.
 7                 Based upon your conversations with
 8    the Office of Technology, is it your
 9    understanding that upon receiving
10    authorization to deprovision exiting staff,
11    the policy that was in place to delete
12    electronically stored information was
13    triggered?  Meaning that 30 days after that
14    authorization to deprovision was received,
15    these deletions would occur?
16         A.   I have recently learned that that
17    is how OT was interpreting the deprovisions,
18    notwithstanding the previously issued
19    litigation holds for any particular
20    individuals.  It was my understanding since
21    2017 that litigation holds would supercede
22    and take the place of any automated document
23    or electronic destruction of records.
24         Q.   With regard to deprovisioning, when
```

Page 62

```
1   an individual is leaving their position with
2   the department, who is in charge of issuing
3   authorization for that deprovision?  Is that
4   always the cabinet secretary's office, the
5   administrative secretary as you previously
6   testified, or would it be someone else in a
7   supervisory role?
8        A.  As you know, DHHR is a very large
9   agency.  The secretary in the secretary's
10  office is not in charge of deprovisioning
11  any one of the 6500 plus or minus employees.
12  I don't know who are the other people
13  throughout the rest of the department who
14  may fill out that online fillable form that
15  OT asks state agencies to submit when an
16  employee leaves state employment.
17       Q.  Okay.  So you have previously
18  testified that your office is occasionally
19  involved with answering or reviewing the
20  questions filled out on the deprovisioning
21  form that is produced by the Office of
22  Technology; is that right?
23       A.  Yes.
24       Q.  But your office -- would it be true
```

Page 63

```
1    to say that your office is not involved in

2    the deprovisioning of all employees that

3    leave the Department of Health and Human

4    Resources?

5         A.  Correct.

6         Q.  If an individual were to leave

7    their position within one of the bureaus

8    underneath the big umbrella that is the

9    DHHR, would associate counsel for that

10   Bureau be involved in the filling out or

11   review of those deprovisioning forms?

12        A.  No, not necessarily.  It's a very

13   simple form, like three or four questions

14   max.

15        Q.  To the best of your knowledge,

16   given your over a decade of experience

17   working for the department, are associate

18   general counsel ever involved in discussions

19   of authorization for deprovisioning exiting

20   staff?

21        A.  No.  It's an HR function primarily.

22        Q.  Why is it that the general

23   counsel's office would be involved in some

24   situations but associate counsel would not
```

Page 64

```
 1    be involved with their relevant Bureaus?
 2         A.   I have been involved in the
 3    deprovisioning of employees who worked for
 4    me.   That's the distinction.   And the
 5    cabinet secretary's secretary who
 6    deprovisions those folks happens to be in
 7    the suite of offices where my office is.
 8    And I make sure that -- when I know one of
 9    my people are leaving, I make sure she knows
10    this is the date, cut them off.
11         Q.   So then your involvement with that
12    entire process is just limited to employees
13    of your office?
14         A.   Yes.
15         Q.   In your role as general counsel, do
16    you have any knowledge whatsoever of how
17    that process is carried out and other
18    offices within the department?
19         A.   No.
20         Q.   You previously testified that, to
21    the best of your knowledge, one laptop
22    belonging to Bill Crouch has been preserved
23    when we were discussing devices that are
24    issued to state employees; is that right?
```

Page 65

1           A.  I said it was a computer.

2           Q.  Okay.  A computer.

3               How many devices that were issued

4   to state employees that were subject to this

5   litigation hold have been wiped or otherwise

6   destroyed?

7           A.  I don't know.

8           Q.  Are you aware of any devices that

9   were issued to state employees that were

10  subject to the 2019 litigation hold that

11  were destroyed?

12          A.  I don't know.

13          Q.  You also stated that currently the

14  state uses a chat messaging system through

15  Google; is that right?

16          A.  Yes.

17          Q.  To the best of your knowledge, are

18  those chat messages being preserved as it

19  relates to individuals who are subject both

20  to the 2019 litigation hold and to the more

21  recent 2023 litigation hold produced by your

22  office?

23          A.  They should be right along with

24  emails.  When you open up your email

Page 66

```
1    function, the chat function also opens up.
2          Q.  Okay.  Have you had -- I apologize.
3          A.  It's just the executive branch
4    agencies who are in the Google domain now.
5    Not all state employees are using Google.
6          Q.  Have you had any conversations with
7    the Office of Technology about preservation
8    of those Google chat messages?
9          A.  No.
10         Q.  Ms. Robertson, I think I just have
11   one more question for you.  And it is really
12   just to clarify you and your office's
13   involvement with the preservation of
14   evidence in this case.  I guess it's
15   actually broken up into a couple of
16   questions.
17              So it's your testimony here today
18   that the sole involvement that you or your
19   office has had with regard to preservation
20   of ESI in this case was issuing the 2019
21   litigation hold that we have been discussing
22   and the now 2023 litigation hold that was
23   recently distributed; is that correct?
24         A.  And we have had some conversations
```

Page 67

1    with OT over October and November just about

2    process, our understanding versus their

3    understanding --

4         Q.  Okay.

5         A.  -- as it relates to litigation

6    holds in general.

7         Q.  Okay.  And now I believe it has

8    also been your testimony that neither

9    yourself nor to the best of your knowledge

10   anyone within your office had any sort of

11   follow-up conversations with the Office of

12   Technology regarding this litigation hold

13   between December of 2019 and September of

14   2023; is that correct?

15        A.  Our attorneys on our behalf have

16   worked a lot with people at OT to -- as part

17   of the discovery process.

18        Q.  I am asking whether or not any --

19   whether you yourself or anyone directly

20   within your office has had any sort of

21   follow-up communication within that time

22   period?

23        A.  No.

24             MR. MEADE:  Okay.  Let's take

Page 68

```
 1    one last quick break.  And I promise we will
 2    try to get this wrapped up.
 3                 (Break in proceedings.)
 4    BY MR. MEADE:
 5         Q.  Ms. Robertson -- so getting back
 6    into this -- you have just testified that at
 7    least to the best of your knowledge, no one
 8    from your office in particular, neither
 9    yourself or someone directly employed within
10    your office, has or had a communication with
11    the Office of Technology between December of
12    2019 and September of this year; is that
13    right?
14         A.  Not to my knowledge.
15         Q.  Okay.  And it's also your testimony
16    that you assumed when these litigation holds
17    were emailed, that they were received,
18    understood and implemented; is that correct?
19         A.  Yes.
20         Q.  When individuals have left the
21    employment of the department, individuals
22    specifically subject to the 2019 litigation
23    hold, was anyone responsible for following
24    up with the Office of Technology to ensure
```

Page 69

```
 1   that their electronic information would be
 2   preserved?
 3        A.  No.  Because the language of the
 4   litigation hold is clear.
 5        Q.  So it's your position that nobody
 6   had that responsibility?
 7        A.  It's my position that that was not
 8   necessary.  Because the language of the
 9   litigation hold is clear.
10        Q.  Would you agree with me that given
11   that large amounts of this electronically
12   stored information were not preserved, that
13   the letter itself may not have been
14   sufficiently clear?
15             MS. BROWN:  Objection.  Calls
16   for a legal conclusion.
17        A.  I can't speak for the
18   misunderstanding on OT's part.
19        Q.  Do you have any sense of -- if
20   there was someone who should have followed
21   up with the Office of Technology upon the
22   departure of staff subject to this hold, who
23   would have had that responsibility?
24             MS. BROWN:  Objection.  Calls
```

Page 70

```
1    for speculation.
2            A.  The word "responsibility," I am not
3    willing to place that on anyone because of
4    everything I have previously stated.  And I
5    should say -- just so that we are clear
6    about who you believe to be in my office
7    when you say did anyone reach out or discuss
8    with OT -- I have stated that I know outside
9    counsel did.  I don't know about anybody
10   like Cammie for instance.  But I believe
11   that Shawn Charles -- who is in DHHR, but
12   not necessarily in my office -- had multiple
13   conversations throughout the pendency of
14   this litigation with various individuals at
15   OT at various times.
16           Q.  Have you spoken with Mr. Charles
17   about this yourself?
18           A.  No, not -- when you say "this," can
19   you be more specific?
20           Q.  Have you spoken with Mr. Charles
21   regarding communications he would have had
22   with the Office of Technology following the
23   distribution of the 2019 litigation hold?
24           A.  No.  But I have seen emails.
```

1          Q.   Okay.  And again, just to be clear,

2     it's your testimony here today that the 2019

3     litigation hold that was distributed by your

4     office was intended to apply to individuals

5     other than those specifically named within

6     that document; is that correct?

7          A.   Yes.  There is a paragraph in there

8     that says, to the named individuals, if you

9     supervise or have any other people in your

10    office who may have subject matter documents

11    related to the subject matter of this case,

12    then you need to inform them of the need to

13    preserve.

14         Q.   So it's your position here today

15    then that it was the responsibility of these

16    individuals named within the document to

17    inform the Office of Technology about anyone

18    else under their supervision who should have

19    been subject to this hold?

20         A.   That's not what I said.  It was

21    their responsibility to talk to the people

22    that reported to them about their need to

23    preserve.

24         Q.   So would anyone have been

Page 72

1    responsible for informing the Office of

2    Technology about individuals who are not

3    named in this document?

4         A.  We have been working on our process

5    since this all came to light internally.

6    And I know OT has been working on their

7    process.  We have been working together to

8    have a better understanding of the steps

9    necessary to ensure preservation.  And

10   moving forward, we will be having additional

11   safeguards in place.

12        Q.  So then is it your testimony that

13   nobody was responsible for informing the

14   Office of Technology about individuals who

15   should be subject to this litigation hold

16   but are not named within it?

17        A.  It's my testimony that to my

18   knowledge no one -- say perhaps Shawn

19   Charles in some of his email communications

20   with OT -- discussed the ongoing litigation

21   hold that was in place.

22        Q.  So then to the best of your

23   knowledge, no one communicated to the Office

24   of Technology to preserve electronically

Page 73

1    stored information for anyone outside of the

2    individuals who are specifically named in

3    your 2019 litigation hold?

4         A.   That is fair to say.

5              MR. MEADE:   I don't believe I

6    have any more questions.   Thank you,

7    Ms. Robertson.   I appreciate you coming

8    down.

9              MR. WALTERS:   Hold on a second.

10   She may have some questions.

11             MR. MEADE:   I suppose that is

12   true.   I assumed no.

13             MS. BROWN:   No.   We have no

14   questions.   But we do reserve the right to

15   read and sign.

16             MR. MEADE:   I believe the only

17   additional thing here is, we would like to

18   reserve the right to re-depose this witness

19   following the potential deposition of a

20   member of the Office of Technology.

21        (Deposition concluded at 10:45 a.m.)

22             * * * * * * * *

23

24

Page 74

1                     CERTIFICATE

2

3        I, Tara Arthur, Certified Stenotype

4    Reporter and Notary Public, do hereby

5    certify that the foregoing deposition of the

6    above-named witness, was duly taken by me in

7    machine shorthand, and that the same were

8    accurately written out in full and reduced

9    to computer transcription.

10       I further certify that I am neither

11   attorney or counsel for, nor related to or

12   employed by any of the parties to the action

13   in which this deposition is taken; and

14   furthermore, that I am not a relative or

15   employee of any attorney or counsel employed

16   by the parties hereto or financially

17   interested in the action.

18       My commission expires April 16, 2027.

19

20   _____

     Tara Arthur
21   Certified Court Reporter/Notary Public

22

23

24

1

**1**

**10** 57:10

**100** 26:19
51:20

**10:45** 73:21

**12** 6:18

**17th** 10:8

**2**

**20** 7:18,20
26:10 41:4

**2017** 7:23 8:1,
21 26:10
30:15 61:21

**2019** 6:1,8
19:17 22:7
31:15 41:17
42:17 43:12
46:18 47:9
52:20 53:12,
18 54:8,20
55:14 57:16,
24 58:4,10
59:2 65:10,20
66:20 67:13
68:12,22
70:23 71:2
73:3

**2021** 32:14,18

**2023** 52:23
53:13,18
56:21 57:11,
16,22 65:21
66:22 67:14

**3**

**30** 18:14 61:6,
13

**30-day** 48:20

**3991** 23:20

**4**

**4** 52:20

**6**

**60** 30:1

**6500** 62:11

**A**

**a.m.** 73:21

**Abbott** 49:1
52:13

**access** 12:18,
19,21 14:23
17:6 21:2,9,
17,21 36:8
47:21 48:1
60:21

**accessing**
35:16

**account** 14:4

**accounts**
10:22 12:18
14:23 45:24
47:17 51:3
56:10

**acknowledge
ment** 23:22

24:2,10,14,20
25:2,9 26:12
29:2 58:20

**acknowledge
ments** 24:6
26:4,17 28:22

**acknowledgm
ent** 25:23

**act** 12:20

**action** 11:23
25:19 31:21
34:19

**additional**
41:20 42:2
72:10 73:17

**address**
47:23 48:4

**addresses**
17:13 48:6

**administratio
n** 38:12

**administrativ
e** 12:4 13:14
14:7 16:8
62:5

**administrator**
36:8

**admissibility**
5:13

**admission**
5:13

**affected** 8:13
60:1

**affecting**
25:13

**affidavit** 10:9,

13,19 18:6
19:12 23:19

**affiliated** 6:6

**affirmatively**
38:4

**agencies**
13:20 20:23
21:12 35:1
62:15 66:4

**agency** 30:24
31:23 48:11
62:9

**agree** 55:15,
21,22 69:10

**alter** 8:10

**altered** 48:4

**amount** 44:13

**amounts** 34:7
69:11

**and/or** 42:15

**answering**
17:2 62:19

**answers** 4:24
12:8 16:22

**apologize**
35:24 66:2

**apparent**
40:20

**applies** 49:8

**apply** 45:3
49:11 71:4

**approximatel
y** 41:4

**April** 4:1,10

April.l.
robertson@
wv.gov.
48:10

**April.
robertson@
wv.gov** 48:12

**asks** 62:15

**aspect** 6:16

**assigned**
59:5

**assigns** 48:6

**assistant**
6:13,21 9:12
58:24

**associate**
47:1 59:4,11
60:11 63:9,
17,24

**assume** 18:3
19:21 29:3
44:13 56:13

**assumed**
30:13 68:16
73:12

**Attached**
57:8

**attempted**
37:4

**attorney** 5:11
20:1,5,10
23:14 25:12,
17,18 53:16
60:3

**attorneys**
59:24 67:15

**audible** 5:1

**authorization** 14:4 15:2 61:10,14 62:3 63:19

**authorizations** 15:11

**authorized** 14:20 16:14 47:17

**authorizes** 10:21

**automated** 61:22

**aware** 9:8 15:9 16:16 18:12,17,21 19:5 32:14,18 34:3 52:23 65:8

**B**

**back** 8:20 30:16 60:4 68:5

**based** 37:10 44:13 45:13 49:4 51:6,22 61:7

**basic** 4:23

**begun** 8:20

**behalf** 67:15

**belonged** 37:17

**belonging** 64:22

**big** 63:8

**Bill** 37:18,19 64:22

**body** 43:24 55:16

**branch** 20:23 21:11 66:3

**break** 5:8,16 53:23 68:1,3

**breaks** 5:9

**broken** 66:15

**BROWN** 16:18 17:10 21:19 22:1 29:18 33:13 39:8 49:14 50:7 55:6,10 59:15 69:15, 24 73:13

**buildings** 12:19

**Bureau** 8:13 13:21 14:2,16 25:12,14,18 42:14 59:5,24 60:12 63:10

**bureaus** 63:7 64:1

**C**

**cabinet** 10:20 11:5,10 13:11,16 14:8 21:16,21,23 39:22,24 62:4 64:5

**call** 23:18

**called** 4:2 10:14 57:10

**Calls** 69:15, 24

**Cammie** 25:22,24 47:1,5 58:16, 19,22 60:16 70:10

**capable** 34:16

**capacity** 4:16 6:20

**cards** 12:19

**care** 5:18 14:17 27:5,8 35:18,20

**carried** 27:15 64:17

**case** 8:11 10:11 14:21 18:10 20:7 23:21 27:4 30:20 31:14 33:7 36:13 39:19 40:15 41:8 42:10 43:6 44:15 46:14,15 47:4 48:18 53:2 57:3 58:4,6 60:2,7,14,24 66:14,20 71:11

**cases** 25:14 30:21 41:6 48:5 59:20,23

**cell** 35:1,4,7 37:8,20,23

**change** 38:11

**Chapman** 25:22 26:1 47:2,6 58:19, 23 60:11

**Chapman's** 58:16 59:10

**charge** 29:6 34:24 51:14 56:10 62:2,10

**Charles** 36:19 70:11, 16,20 72:19

**chat** 20:20,24 22:3,4 65:14, 18 66:1,8

**check** 54:16, 21 55:5

**chief** 18:6 31:2

**Children** 14:2,16 42:14 59:5 60:12

**choose** 48:7

**circuit** 59:20

**clarify** 33:14 40:2 44:21 66:12

**clear** 60:9 69:4,9,14 70:5 71:1

**close** 58:12

**closely** 47:3

**Coben** 38:19,

23 39:11

**commissione r** 14:1

**commissione rs** 13:22

**communicate d** 52:14 72:23

**communicati on** 19:10 20:9,18 21:22 30:4 51:16 52:4 53:4,10 67:21 68:10

**communicati ons** 51:8 70:21 72:19

**complaint** 59:19

**completed** 16:2

**computer** 37:14 65:1,2

**computers** 27:20

**concluded** 73:21

**conclusion** 69:16

**conducted** 20:11

**conducting** 23:10

**confirm** 29:16

**confirmation** 29:8,12 30:4

contact 7:7
20:6

contention
27:9

Continue
5:14

continues
50:11,19

continuing
54:1

control 35:9,
12

conversation
5:16 48:19
52:10 56:21
59:1

conversation
s 25:7 37:10
44:16,20,23
49:5 53:8
59:7 61:2,7
66:6,24 67:11
70:13

copy 25:4
54:15

correct 8:2
9:4,5 10:11,
24 11:3 13:12
14:9 19:7
28:24 30:13
38:16 40:21
41:16 42:5
46:18 54:8
56:24 57:3
63:5 66:23
67:14 68:18
71:6

cost 52:14

counsel 4:18
5:22 6:3,12,
13,14,20,21,
22,23 7:9 8:3
9:11,13 11:17
19:5,24
23:15,16
34:4,8 41:10,
12 42:11
45:11 47:1,3
53:4 58:7,8,
24 59:4,11
60:1,11 63:9,
18,24 64:15
70:9

counsel's
10:2 11:13
17:21 28:11
63:23

couple 4:23
56:19 66:15

court 4:3 5:1
32:16,22
33:17,22
59:20

Cox 49:1

create 54:10

created 54:6

Crouch
37:18,20
38:13 64:22

current 5:19
27:4 51:9

custody 35:9,
12

custom 52:18

cut 12:18
64:10

cutting 17:5
60:21

---

**D**

Danielle 49:1

date 12:15
39:17 52:21
64:10

day 54:4

days 18:14
30:1 61:6,13

debrief 42:22

decade 7:20
18:15 63:16

December
19:17 43:12
52:20 53:12,
18 58:4,10
67:13 68:11

decision
21:10 41:1,8
42:6

decisions
11:20 12:2

defendants
11:22 14:19
17:17 31:20

Defendants'
18:9 19:14

defense
41:10 47:4
58:7 60:6

deficient
30:17

define 16:20
18:19 27:1

definition
17:8

delete 61:11

deleting
18:13 49:7
61:4

deletion
18:22 48:20

deletions
61:15

delivery 22:8

departed
17:20 31:22
32:2 50:12
51:1

departing
11:6,7 17:5

department
5:20 6:7,17,
24 7:22 8:12
9:20 13:6,20
15:14 16:3
17:20 21:16
26:21 27:13
31:18 32:5
33:4 34:24
35:5 42:3,20
46:9 47:13
48:1 49:22
50:13,20,23
51:9,10 60:23
62:2,13 63:3,
17 64:18
68:21

departure
12:16 37:15
39:17 41:18
50:20 69:22

depending
8:10

depends 60:3

deposed 4:11

deposition
4:14 23:10
47:20 54:11
73:19,21

deprovision
15:12 16:13
61:10,14 62:3

deprovisione
d 11:8 12:17
14:13 16:11
47:22

deprovisionin
g 10:14,21
11:14,17,21
12:10,20,24
13:6,10 14:5,
20 15:3 16:6,
10,14,20
17:3,12 47:18
60:19,20
61:24 62:10,
20 63:2,11,19
64:3

deprovisions
11:5 61:17
64:6

deputy 13:18,
21 38:13

designation
21:8

destroyed
65:6,11

destruction
61:23

**detail** 5:6,19 7:12

**details** 39:18

**determine** 8:13 24:20

**determined** 42:17

**determines** 11:7 21:8

**determining** 28:13 52:4

**device** 36:22 52:16

**devices** 35:19 36:5 37:7,12 52:1, 7 64:23 65:3, 8

**DHHR** 6:3 24:23 25:3 38:12 41:5 47:21 50:6 62:8 63:9 70:11

**differentiates** 47:24 49:16

**direction** 60:6

**directive** 47:6

**directly** 31:11 67:19 68:9

**directors** 13:19

**disagree** 43:7

**discoverable** 26:23 27:1

**discovered** 31:24 50:21

**discovering** 37:2 48:16

**discovery** 7:4 8:16 9:3 23:9 27:10 34:7 44:14 45:11, 13,23 46:5,14 53:6 60:7 67:17

**discuss** 8:11 10:13 33:20 70:7

**discussed** 59:13 72:20

**discussing** 47:19 64:23 66:21

**discussion** 41:9,14,21 42:10

**discussions** 11:20 12:2 19:21 20:3 34:11 51:22 63:18

**dismissal** 32:22 33:17, 21

**dismissed** 32:15

**distinction** 64:4

**distributed** 9:20 36:6 43:12 57:6 66:23 71:3

**distribution** 34:9 46:17 57:11 70:23

**District** 32:16,22 33:17,22

**docket** 23:20

**document** 23:19 43:15, 18,20,23 44:1,11 55:3, 16,24 56:1 61:22 71:6,16 72:3

**documentatio n** 8:17 26:23 27:2,3,6

**documents** 7:5 27:19,20 46:21 71:10

**domain** 66:4

**doubt** 21:20

**downloaded** 15:17

**duly** 4:2

---

**E**

---

**earlier** 41:3 54:5 60:18

**early** 57:6

**effort** 44:6

**efforts** 34:13

**electronic** 49:8 50:10 51:7 52:4 61:23 69:1

**electronically** 8:22 9:15,21 17:23 18:23 34:13,20 42:24 43:4 46:4,11,22 47:8 49:18 50:17 55:19 61:5,12 69:11 72:24

**email** 10:22 20:11,18 22:7,10,11, 12,16,18 27:21 29:5,6, 16 30:4 47:23 48:3,6 51:3 56:10 65:24 72:19

**emailed** 68:17

**emails** 18:13 22:12 23:7,14 32:2 37:3 50:22 51:1,10 52:5 65:24 70:24

**employed** 7:21 49:6 68:9

**employee** 36:22 37:16 47:14 52:17 62:16

**employee's** 12:15 17:5 37:15

**employees** 10:15 11:6,8, 12 13:15,17

21:4,5 32:4 34:2 36:6 41:22 42:3 51:8,9 62:11 63:2 64:3,12, 24 65:4,9 66:5

**employment** 17:20 19:1 47:13 49:9,22 50:6,12 60:22 62:16 68:21

**end** 33:23

**enforceability** 33:1

**enforced** 27:16

**ensure** 17:22 59:12 68:24 72:9

**ensuring** 26:23 27:14

**entire** 19:4 56:8 64:12

**entirety** 6:3

**entity** 36:1

**entries** 23:20

**equipment** 35:10,13,15, 17

**ESI** 9:9 10:11 40:18 45:7 66:20

**essentially** 60:20

**evidence** 66:14

5

**F**

**G**

**H**

evidenced
33:23

exact 31:4

EXAMINATIO
N 4:5

exception
59:8

excuse 16:10

executive
20:23 21:11
66:3

exhibit 18:8
19:13 23:18

exist 9:24
35:7 50:11,19
51:11

existed 10:5

existence
13:7

exists 49:21

exit 32:5
38:13

exited 13:5
14:3 42:19

exiting 61:10
63:19

expect 34:2

experience
8:19 63:16

explain 11:2
33:10

extent 12:1

extremely
39:19

fact 28:14
33:24 50:12

fair 73:4

fairly 7:19

familiar 10:17
11:9 20:19
57:12

Families
14:2,16 42:14
59:6 60:12

feature 20:24
22:3,4

federal 23:21

feel 5:4

field 42:15
51:2

fields 16:9

filed 59:19

fill 15:21 16:9
39:2 62:14

fillable 12:3,
12 15:12,20
16:6 17:11
62:14

filled 13:13
14:6 62:20

filling 63:10

fills 12:5

final 23:22

fine 5:9 17:8

firms 60:2

firsthand
44:20

folks 19:22
24:23 34:6
45:12 64:6

follow 8:8
17:21 31:19
33:11

follow-up
19:9 25:6
27:23 28:5,
12,18 56:20
59:1 67:11,21

form 12:3,12,
22,23 13:1,6,
10 15:20 16:2
17:11 26:13
62:14,21
63:13

forms 15:12
16:6 29:12
63:11

forward
60:15 72:10

foster 27:5,8

frame 33:14

frankly 39:20

free 5:4

frequent 7:19

full 4:8

function
63:21 66:1

functions
42:13

general 5:22
6:2,12,13,14,
20,21,23 7:9
8:3 9:11,13
10:1 11:13,16
12:10 17:21
19:5 28:10
34:8 47:1
58:24 59:3,4
63:18,22
64:15 67:6

General's
20:2,5,10
23:14 53:16
60:3

generate
46:20

generated
13:10 57:1

gestures 5:3

give 7:12
26:11

Google 20:24
21:6,9,13
65:15 66:4,5,
8

government
47:15 49:10,
13 51:17

granted 36:8

group 22:12,
14

guess 20:17
66:14

hand 5:2

handful 54:2

handle 5:16

hands 60:16

happened
48:15

head 30:24

heading
30:15

Health 5:20
6:7,17,24
21:17 26:21
31:18 33:4
42:3,20 46:9
47:13 50:13
63:3

heart 56:9

Heather 49:1
52:13

held 39:3

hey 30:17

highly 13:15,
17

hit 15:21

hold 7:16 8:1,
5,8,14,15
13:4 17:19
19:9,16 20:7
22:6,23 23:7,
17 24:4,7,16
25:2,8 27:11,
12,14,18
28:2,7,9,14
29:4,17 30:6

31:12,22
34:10,12,18
35:6 36:13,
17,23 38:16,
21 39:4,6,12
40:6,7,14
41:2,7,15,20,
21 42:8,17,19
43:11,14,17,
21,23 44:5,9
45:2,9,19
46:8,18 47:10
49:21 50:4,19
52:3,22 53:1
54:7,16,20
55:14 56:16,
23 57:2,9,11,
16,17 58:2,3,
9,11,18,20
59:2,12
60:10,15
65:5,10,20,21
66:21,22
67:12 68:23
69:4,9,22
70:23 71:3,19
72:15,21
73:3,9

**holds** 7:14
8:20 17:14
20:3 26:9,13
28:17 29:10
30:2,10,19
32:8,12 33:1,
6,20 39:21,23
40:17,23 42:2
53:7,11,19
58:6 59:17
61:19,21 67:6
68:16

**HR** 63:21

**Human** 5:20
6:7,17,24
21:17 26:22
31:18 33:4
42:4,21 46:9
47:14 50:13
63:3

---

**I**

**idea** 7:15
50:10

**implemented**
29:10 68:18

**implementing**
41:21

**In-person**
22:8

**inboxes**
24:18

**include** 57:14

**included**
22:13 26:12
39:4 40:1
43:17 50:3
55:5 56:5,6,
15

**including**
42:12 60:7

**incoming**
9:12 38:18,24
40:12,24
41:22 42:2

**independent**
34:19

**individual**
22:12 27:17
28:8 39:9

43:10 47:9,12
50:3 59:23
62:1 63:6

**individual's**
47:17

**individuals**
13:18 17:18
22:22 23:1
24:6 25:3,7
28:1 31:7
34:11,18,23
38:15 39:3
40:13 41:19
42:7,13,16,18
43:2,16,22
44:8,11 45:3,
8,15,19,24
46:5 49:5,9,
11,20 50:18
52:6 54:6,19,
23 56:4,14
57:15 59:13
60:21 61:2,20
65:19 68:20,
21 70:14
71:4,8,16
72:2,14 73:2

**inference**
56:11

**inform** 71:12,
17

**information**
8:23 9:16,22
10:22 17:23
18:7,23 31:3
34:14,20
35:18,24
36:2,4,12
37:5 38:3
42:24 43:5

44:4 46:4,12,
22 47:8,21
48:16 49:8,
19,23 50:2,
10,17,24 51:7
53:14 55:19
56:2,3,4 61:5,
12 69:1,12
73:1

**informing**
72:1,13

**inherited** 8:9

**initial** 48:13
58:17

**inquiring**
50:8

**Inspector**
6:14

**instance**
70:10

**instant** 21:1

**instructed**
46:3

**instructs**
44:1

**intended**
22:9,13 39:14
45:2 71:4

**intent** 57:22
59:21

**interagency**
51:17

**interim** 6:12,
21 39:22

**internally**
72:5

**interoffice**
20:18

**interpreting**
61:17

**involve** 11:12

**involved** 4:13
6:16,19 7:2,3
9:3 11:14,19
12:1 20:2
46:13,16
62:19 63:1,
10,18,23
64:1,2

**involvement**
7:13 8:16
10:10 39:18
60:13 64:11
66:13,18

**involves** 27:5

**involving**
11:21

**issue** 7:24
8:11 9:6 23:9
40:18 42:1
52:12

**issued** 8:15
27:12 35:1,5
36:22 41:2,3,
8 52:16 58:9,
13 60:10
61:18 64:24
65:3,9

**issues** 8:21
37:2

**issuing** 8:5,
20 62:2 66:20

**J**

**Jane** 43:5,10

**Jeff** 38:19,22
39:11

**Jennelle** 49:2

**Jeremiah**
38:14 50:11

**joined** 48:14

**Jones** 49:2

**judge** 33:18

**K**

**kind** 44:16

**knew** 29:19,
22

**knowledge**
9:1,18,23
14:18 29:3
31:17 32:6,9,
13 33:3 42:22
43:8 44:8,20
47:16 63:15
64:16,21
65:17 67:9
68:7,14
72:18,23

**L**

**language**
69:3,8

**laptop** 37:17
64:21

**laptops** 37:8

**large** 9:20
62:8 69:11

**lawsuit** 27:4
38:10

**leadership**
8:12 19:22
41:10 42:10

**learned** 61:16

**leave** 63:3,6

**leaves** 14:22
47:12 62:16

**leaving** 49:9
60:22 62:1
64:9

**left** 31:23
49:21 50:5
68:20

**legal** 69:16

**length** 60:18

**let all** 60:5

**letter** 56:5
69:13

**level** 9:7
33:22

**light** 72:5

**limited** 39:19
64:12

**Linda** 14:2

**list** 23:3,4
54:6,10,12,14
55:4 57:9,11,
12,14,18,22

**listed** 38:15
43:17 45:8
47:9 49:20
54:20

**litigation** 6:4,
23 7:14,16
8:1,5,8,14,20
13:4 17:14,19
19:9,16,23
20:3,7 22:6,
23 23:7,17
24:4,7 25:2,8,
13 26:9,13,24
27:11,12,14,
18 28:2,6,9,
14,17 29:4,9,
17 30:2,10,19
31:11,22
32:8,12,15
33:1,6,20,23
34:10,18 35:6
36:13,17,23
38:16,21
39:4,5,12,21,
23 40:5,6,14,
17,23 41:2,7,
15,20 42:2,8,
17,19 43:11,
14,17,21
44:5,9 45:2,9
46:8,18 47:10
49:20 50:4,18
52:3,22 53:1,
7,11,19 54:7,
16,20 55:14
56:16,23
57:2,9,10,11,
16,17 58:2,3,
5,9,18,20
59:2,12,17,18
60:10,15
61:19,21
65:5,10,20,21
66:21,22
67:5,12
68:16,22
69:4,9 70:14,

23 71:3
72:15,20 73:3

**log** 36:9

**long** 5:23
6:15 57:19

**looked** 16:7

**lost** 35:23

**lot** 67:16

**Lower** 13:22

**Lynn** 4:10

**M**

**made** 21:10
41:9 42:6
57:19

**mail** 22:8

**main** 49:2

**maintain** 36:5
52:15

**maintained**
37:14

**maintains**
35:12

**make** 24:3,23
55:12 60:9
64:8,9

**making** 24:24

**manage**
27:18

**management**
27:5,7 34:24
35:17,22,23
36:2,4,12
37:5 59:22
60:6,13

**manages**
27:21

**marks** 54:17,
21 55:5

**matter** 13:4
14:19 17:18
19:23 27:10
34:6 39:6,13
41:16 46:6
71:10,11

**matter's**
33:17

**max** 63:14

**Mccallister**
43:5,10

**MEADE** 4:6
16:23 29:21
53:21,24
55:8,11 67:24
68:4 73:5,11,
16

**Meaning**
61:13

**means** 12:17
20:12,13 52:3
60:21

**member** 73:20

**members**
13:7 32:4

**memo** 56:8,9

**memorandum**
57:2,8,23

**memos** 30:17
51:15

**mentioned**
26:8 53:7

message
  21:1
messages
  65:18 66:8
messaging
  65:14
Microsoft
  21:12
middle 48:12
mind 24:22
  35:24
mine 48:9
minus 62:11
minute 39:18
minutes
  53:22
misunderstan
ding 69:18
moment 9:2
  28:20
monitoring
  25:14,18,19
  59:22
monitors
  25:13
months 48:21
Motion 18:9
  19:15
moving 72:10
multiple
  70:12

N

named 11:22

14:19 17:17
  31:20 34:17
  43:23 44:8
  45:4,14 50:18
  57:15 71:5,8,
  16 72:3,16
  73:2
names 45:23
  54:17,21
  55:23
nature 18:14
necessarily
  33:22 63:12
  70:12
necessity
  41:14
needed 28:7
network
  20:22
nods 5:2
non-interim
  40:24
non-
temporary
  40:23
note 10:19
notices 59:21
notwithstandi
ng 61:18
November
  10:8 67:1
numbered
  23:20

O

objection
  16:19 21:19
  22:1 29:18
  33:13 49:14
  50:7 59:15
  69:15,24
objects 5:12
occasionally
  62:18
occur 39:20
  61:15
occurred
  14:5 32:19
  44:23 48:3,5
occurring
  16:17
October
  52:22 57:6,10
  67:1
office 6:14
  7:8,17 8:3,24
  10:2 11:4,10,
  12,13 12:5,13
  13:11,16
  14:7,9 15:1,7,
  15 16:12
  17:21,22
  18:7,12,21
  19:10 20:2,6,
  10 21:12
  23:14 24:11,
  15 27:23
  28:3,6,11,15,
  23 29:9,15
  30:3,5,11,22
  31:9,11,20
  32:7,10,11,23

33:5,11,18,19
  34:2 35:17,21
  36:2,4,5,11,
  16 37:3,4,6
  38:2,3 40:19,
  22 42:1 43:21
  45:6,10,18,21
  46:2,10,20,
  23,24 47:2,7
  48:17,19,23
  49:6 51:14,23
  52:11,24
  53:10,16,17
  55:17 56:2,
  6,13,21 57:1
  58:17 59:3
  60:3,10 61:3,
  8 62:4,10,18,
  21,24 63:1,23
  64:7,13 65:22
  66:7,19
  67:10,11,20
  68:8,10,11,24
  69:21 70:6,
  12,22 71:4,
  10,17 72:1,
  14,23 73:20
office's 66:12
officer 18:7
  31:3
offices 64:7,
  18
one-on-one
  45:16
ongoing 8:16
  32:24 72:20
online 12:3,
  12 20:20
  62:14

open 65:24
opens 66:1
operation
  27:7
operations
  42:16
Opposition
  19:14
order 36:9
organically
  45:22
organization
  48:14
OT 12:14
  13:8,15 15:8
  20:22 27:20
  28:17 29:11
  30:15 34:6
  35:14 36:8
  45:12 47:24
  48:6 49:16
  53:4 56:9
  59:8 61:17
  62:15 67:1,16
  70:8,15 72:6,
  20
OT's 13:2
  69:18
outgoing
  10:23 11:21
  17:14 61:4
outset 59:18

P

pages 57:18
paper 27:19

**paragraph** 71:7

**paralegal** 26:5,6

**part** 14:11 59:9 67:16 69:18

**participated** 15:22

**PDF** 16:1

**pendency** 6:4 26:24 34:5 70:13

**pending** 14:21 17:13 23:21 38:11 39:19 41:6 53:1

**people** 24:3 48:13 50:22, 24 51:1 60:5 62:12 64:9 67:16 71:9,21

**percent** 26:19 51:20

**performed** 51:24

**period** 67:22

**person** 20:16 22:13 35:8,11 44:19 50:8

**person's** 48:3

**personally** 56:20

**personnel** 10:23 52:2

**pertain** 27:7

**phone** 20:14, 15 37:20,23

**phones** 35:2, 4,7 37:8

**pieces** 35:16

**place** 18:15 19:4 28:14,17 29:4 30:11,14 41:3 44:17 51:16 61:11, 22 70:3 72:11,21

**plaintiffs'** 41:11 58:8

**point** 5:11,17 25:15,16 43:6 46:3 55:12 60:4,15,20

**pointing** 29:13

**policy** 8:7 9:19,24 10:5 18:13,18,22 19:3,22 48:20,24 49:7,10 61:4, 11

**policy-making** 42:13

**position** 15:6 27:22 31:9 40:4 49:12 62:1 63:7 69:5,7 71:14

**positions** 38:20 39:2 40:7,9,12

42:20

**possibility** 17:13

**possibly** 19:24

**potential** 73:19

**potentially** 27:10

**practice** 19:8 52:18

**pre-existing** 39:21

**predecessors** 8:10

**prepare** 54:11

**preservation** 9:15,21 10:10 27:21 37:7 40:19 42:23 46:21 56:8 66:7,13,19 72:9

**preserve** 34:13,19 44:6 45:7 46:3,11 47:7 56:4 71:13,23 72:24

**preserved** 16:2 17:24 26:24 36:24 37:12,23 38:5,8 48:17 49:24 50:4 51:7 64:22 65:18 69:2,12

**preserving** 55:19

**previously** 18:17,19 39:2 61:18 62:5,17 64:20 70:4

**primarily** 12:15 24:22 63:21

**printed** 15:17

**prior** 6:8,10, 23 7:13 8:1 18:20 30:9 40:10 53:13 56:21 58:4 59:18 61:4

**private** 60:2

**privy** 44:15

**problem** 18:4 32:1

**problems** 9:8

**procedure** 8:4 9:19

**proceedings** 53:23 68:3

**process** 7:4 8:17 9:4 10:17 11:10, 14 14:13 15:22 45:23 46:14 53:6 64:12,17 67:2,17 72:4, 7

**produce** 54:14 55:4

**produced**

23:8 43:6,21 46:5 57:5 62:21 65:21

**production** 7:5 8:17,22 9:8 34:9 46:17

**products** 21:13,14

**prohibitive** 52:15

**promise** 68:1

**provide** 25:9 29:12 54:15

**provided** 12:13 18:6 23:13,18 36:12,16 38:20 44:10 45:9 47:6 52:2 54:7 58:15

**province** 10:1

**Public** 4:3

**purged** 15:14 37:3 52:6

**purging** 18:23

**purpose** 24:1,19,22 27:11

**purposes** 5:13

**put** 29:4 30:11 39:20

**Q**

**question** 5:15
23:12 38:22
66:11

**questions**
4:24 12:7,9,
11 16:21 17:3
54:3 62:20
63:13 66:16
73:6,10,14

**quick** 53:22
68:1

**R**

**rate** 26:20

**re-depose**
73:18

**reach** 32:6,
11,23 33:5
37:5 53:16
70:7

**reached**
30:16 33:19

**read** 16:5,8
18:5 24:17,
18,21 56:7
73:15

**realized** 56:8

**reason** 10:4
18:3 21:20
28:16 33:9
43:7

**reasonable**
56:11

**reasons** 58:8

**recall** 10:15
23:1 42:9
53:20 54:23

**receipt** 29:17
30:6

**receive** 9:13
22:15,21
24:5,9,13
25:1 26:3
28:21 29:1
30:3 59:20

**received** 23:2
24:3 25:4
29:8,10 50:24
61:14 68:17

**receives** 15:2
30:23 31:3

**receiving**
27:18 61:9

**recent** 48:21
57:2 65:21

**recently**
61:16 66:23

**recipient**
31:10 56:6,7

**recipients**
22:9 44:1

**recollection**
23:5

**record** 4:9,22

**records**
61:23

**recreated**
51:3

**refer** 12:14
21:1 23:4

**reference**
43:15 55:3

**referring**
23:23

**refresh** 23:4

**refuse** 16:13

**regard** 13:3
17:14 18:24
20:6 39:12
41:15,22
61:24 66:19

**regular** 22:7

**related** 71:11

**relates** 60:23
65:19 67:5

**relevant** 64:1

**remains**
47:14

**remember**
19:20 20:8
42:12 43:13

**repeat** 5:5

**repeating**
36:1

**rephrase**
31:7

**replacement**
38:18 39:1
40:11

**reported**
71:22

**reporter** 5:1

**Reporter/
notary** 4:3

**represent**

52:21

**request** 41:11
47:6 58:7,13

**requesting**
16:11

**requests**
45:14

**required**
27:24

**reserve**
73:14,18

**Resources**
5:21 6:7,17
7:1 21:17
26:22 31:19
33:5 42:4,21
46:10 47:14
50:14 63:4

**respond**
29:16

**response**
18:9 19:14
22:21 23:2,7,
8,13 54:7
55:1

**responses**
22:15,19

**responsibility**
28:1,8,10
59:11 69:6,23
70:2 71:15,21

**responsible**
26:22 27:13
35:15 68:23
72:1,13

**responsive**
44:3

**rest** 62:13

**retains** 35:8

**return** 26:3,
19

**returned**
25:24 26:18
54:24 58:19

**review** 63:11

**reviewed**
24:15

**reviewing**
62:19

**road** 5:14

**Robertson**
4:1,7,10 18:5
54:1 66:10
68:5 73:7

**role** 5:24 6:10
7:9 11:16
14:3 25:15
34:8 58:16
59:16 60:4
62:7 64:15

**roles** 13:5
42:15

**rose** 9:7

**Ruby** 15:4

**rule** 12:10

**rules** 4:20

**S**

**safeguards**
72:11

**sake** 4:22
16:24

**Samples** 38:14 50:11

**Sanctions** 18:10 19:15

**saved** 15:17

**scenes** 47:24

**scope** 49:15

**search** 45:14 52:1

**searched** 46:1 52:8

**searching** 36:10 45:13 53:5

**secretaries** 13:19 21:21

**secretary** 10:20 11:5,11 12:4,5 13:11, 14,21 14:8 16:8 21:16,23 38:13,14 39:22,24 62:5,9 64:5

**secretary's** 13:16 14:8 62:4,9 64:5

**send** 15:21 26:14 40:22 46:10 59:17

**sending** 7:14 19:8 30:14

**sense** 57:19 69:19

**separated** 18:24

**September** 18:20 30:9 32:1 40:10 53:5,12,13,18 67:13 68:12

**served** 19:4

**Services** 35:18 36:3,5, 12 37:6 38:3

**settled** 41:6

**share** 44:4

**Shawn** 36:19 70:11 72:18

**shifting** 49:12

**shoulder** 16:7

**sign** 73:15

**signed** 10:9 24:5,9 25:1,9, 23 26:17 28:21

**significant** 9:7

**simple** 63:13

**simply** 49:11

**situations** 49:17 63:24

**Slack** 20:20

**slightly** 8:10 48:4

**sole** 66:18

**solely** 38:22

**someone's** 12:21 48:1 58:7

**sort** 5:15 16:18 20:17 25:13 42:22 44:22 51:10 53:9 67:10,20

**sparsed** 7:20, 23

**speak** 24:17 69:17

**specific** 9:14 15:6 21:7 31:8 50:8 70:19

**specifically** 7:4 9:12 22:4 23:19 33:16 36:11,16 38:12 39:9 45:4 48:22 50:9 68:22 71:5 73:2

**speculation** 14:10 59:9 70:1

**spoken** 48:22 70:16,20

**staff** 11:4,22 13:3 17:15 18:24 31:9,21 32:4 35:5 38:18 39:1 40:12,24 61:10 63:20 69:22

**staff's** 61:5

**stand** 10:4

**start** 4:7 43:3

**state** 4:8

14:23 17:6 19:1 20:23 21:4,5 35:2 36:6,22 37:11 47:15 48:11 49:10,12 51:17 52:17 62:15,16 64:24 65:4,9, 14 66:5

**state-issued** 35:7,9,15 37:20,23

**stated** 9:2 19:15 28:20 58:5 61:1 65:13 70:4,8

**statement** 18:18 45:1 57:21

**stating** 38:2

**step** 60:4

**steps** 72:8

**stored** 8:23 9:15,22 10:21 17:23 18:23 34:13,20 42:24 43:4 46:4,11,22 47:8 49:19 50:17 55:19 61:5,12 69:12 73:1

**subject** 13:4 17:19 19:23 24:7 27:9 28:2,9 31:22 34:12 35:6 36:23 39:3

40:5,13 41:19 42:7,18 43:11,22 45:19 52:2 56:23 59:14 65:4,10,19 68:22 69:22 71:10,11,19 72:15

**submit** 62:15

**submitted** 13:14 18:8 19:16 26:9

**sue** 59:21

**sufficiently** 69:14

**suit** 7:10

**suite** 21:12, 13 64:7

**supercede** 61:21

**supervise** 44:2,11 71:9

**supervises** 26:6

**supervision** 71:18

**supervisory** 42:15 62:7

**supplemental** 39:1 40:11

**supplementary** 40:17

**suppose** 73:11

**supposed**

56:3

**surrounding**
12:9

**sworn** 4:2

**system** 17:6
21:3,6,9,18,
24 27:6,8
51:18 65:14

---

**T**

**takes** 25:14
51:16

**taking** 12:20
17:4 40:7,8,
12

**talk** 39:10
71:21

**talked** 39:16
60:18

**talking** 12:22
22:2 33:14

**Technology**
7:8,17 8:24
12:14 14:7
15:1,7,15
16:12 17:22
18:8 19:10
24:11,15
27:24 28:6,
15,23 29:9,15
30:3,5,12,22
31:10,20
32:7,12,24
33:6,12,19
34:2 37:4,6
38:2 40:19
45:7,10,18
46:2,11,23

47:7 48:18,23
49:6 51:14,23
52:11,24
53:10 55:18
56:3,13,22
59:3 61:3,8
62:22 66:7
67:12 68:11,
24 69:21
70:22 71:17
72:2,14,24
73:20

**Technology's**
18:13,22

**telephone**
51:18

**template** 8:9

**temporarily**
39:15

**temporary**
39:15

**tenure** 39:14

**term** 16:20

**terminated**
14:24

**terms** 35:16
45:14

**testified** 4:4
54:5 62:6,18
64:20 68:6

**testifying**
34:16

**testimony**
13:9 29:14
30:8 40:3,16
41:13,24
45:17 51:5
52:9,19 56:12

58:15 60:8
66:17 67:8
68:15 71:2
72:12,17

**thing** 73:17

**things** 4:7,21,
23 5:3 18:14
51:15

**time** 14:17
19:4 29:19,22
30:1 31:1
32:3,5,21
33:14,16
39:22 42:11
46:3 47:1
58:12,17,23
59:6 67:21

**times** 7:16,
18,20 56:19
70:15

**title** 5:20 31:5

**today** 13:9
29:7,14 30:8
34:17 40:3,16
41:24 45:1
52:19 57:21
66:17 71:2,14

**told** 38:4,9
45:20

**totality** 6:15

**training** 9:14

**transfer**
49:17

**transferred**
59:23

**transfers**
48:2

**transition**
21:11

**triggered**
61:13

**true** 29:11
62:24 73:12

**turned** 54:18

**type** 9:14

**typical** 8:4
12:11

**typically** 12:8
20:10 26:17,
20 30:22

---

**U**

**umbrella** 63:8

**underneath**
63:8

**understand**
5:4 24:24
60:19

**understandin
g** 17:9 35:14
51:6 61:9,20
67:2,3 72:8

**understood**
68:18

**unknown**
39:17

**updated** 40:6

**ups** 38:11

---

**V**

**Vague** 21:19
22:1

**versus** 67:2

**Virginia** 7:8
8:23 12:13
20:1 24:11
28:22 31:19
35:2 45:6
47:15 53:15

**voice** 51:15

**voicemail**
51:15

**voluminous**
34:7

---

**W**

**WALTERS**
73:9

**Watts** 14:3

**week** 39:16

**West** 7:8 8:23
12:13 20:1
24:10 28:22
31:19 35:2
45:6 47:15
53:15

**whatsoever**
64:16

**whichever**
59:24

**wiped** 65:5

**wit** 4:4

**word** 17:4
32:17 70:2

**work** 4:21
13:16 14:14
44:2 45:16
50:23

**worked** 19:22
  64:3 67:16

**working** 31:5
  34:5 45:12
  47:3 63:17
  72:4,6,7

**wrapped** 68:2

**wv.gov** 20:22
  47:23

## Y

**year** 10:8
  18:21 30:9
  40:10 52:22
  57:6 68:12

**years** 6:18
  21:10 30:16
  41:5,7