IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

| | |
|---|---|
| JONATHAN R., *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Case No.: 3:19-cv-00710 |
| JIM JUSTICE, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

### AFFIDAVIT OF MICHAEL J. FOLIO

I, Michael J. Folio, being first duly sworn, state as follows:

1. I am the Legal Director of Disability Rights of West Virginia ("DRWV"). I have been DRWV's Legal Director since August 22, 2022. DRWV is the federally mandated protection and advocacy system for West Virginia.

2. I do not actively participate in the prosecution of the above-captioned litigation.

3. On or about August 19, 2019, I commenced employment with the West Virginia Department of Health and Human Resources ("DHHR") as Assistant General Counsel. Ms. April Robertson was my immediate supervisor and chief legal officer of DHHR. In June 2020, I was reassigned by Bill J. Crouch to serve as general counsel of DHHR's Office of Health Facilities ("OHF"). Ms. Robertson was my immediate supervisor on legal matters, and Ms. Robertson supervised and exercised oversight over DHHR attorneys. I served as OHF's general counsel until my resignation on August 15, 2022.

4. On October 12, 2022, Mr. Crouch and Ms. Robertson filed a complaint against me with the Office of Disciplinary Counsel ("ODC"). The matter was investigated by the ODC and reviewed by the Investigative Panel of the Lawyer Disciplinary Board ("ODC Panel"). A

copy of the ODC Panel's findings and conclusions of law dismissing the complaint are attached hereto and incorporated herein.

5. On or about November 16, 2022, I provided a verified response to the complaint filed by Mr. Crouch and Ms. Robertson with the ODC. The ODC Panel found that "[w]hen asked by Lawyer Disciplinary Counsel if she had a reply to [my] response, Complainant [Ms. Robertson] did not respond." I provided additional documents and information to the ODC, including a Verified Supplemental Response on November 29, 2023.

6. On December 5, 2023, roughly six days after filing my Verified Supplemental Response, the ODC Panel found no probable cause that I violated the Rules of Professional Conduct or violated any duty to DHHR. The ODC Panel dismissed the complaint. The ODC Panel found:

> beginning in the late Spring of 2021 [as OHF's general counsel], [I] started to identify substantial concerns and compliance issues with the former chief medical officer and statewide forensic medical director at Sharpe Hospital and provided multiple written and oral notices of these concerns to Bill Crouch, then the Cabinet Secretary of the DHHR, and his leadership team, which included Complainant [Ms. Robertson] and others. Respondent said his reports were ignored and/or failed to be redressed, leading him to eventually become despondent and upset. Respondent stated that this individual's misconduct was directly impacting patient care and facility operations. However, he said he was told by leadership to "back off."
>
> Respondent asserted that on March 14, 2022, less than 24 hours after being directed to "back off" reporting what he believed to be fraudulent activity and also being told to spoliate potential evidence to avoid the existence of documents that would require accountability, Respondent submitted his resignation to Mr. Crouch and advised that he would need to seek appropriate legal remedy. Respondent said that within one hour, Mr. Crouch contacted him and assured him that he would redress the situation and change the culture. In reliance on Mr. Crouch's assurance, Respondent said he reluctantly rescinded his resignation. Respondent claimed, however, that the culture remained the same and the individual's conducted continued unabated.

7. On December 5, 2022, shortly after Mr. Crouch and Ms. Robertson filed the ODC complaint against me, it was announced that DHHR was the subject of a federal investigation by the U.S. Department of Health and Human Resources Office for Civil Rights ("OCR") involving DHHR's discriminatory practices against persons with developmental disabilities that are prohibited by *Olmstead v. L. C.*, 527 U.S. 581 (1999).

8. On December 12, 2022, roughly one week after the OCR investigation was announced, the Governor of West Virginia advised that Mr. Crouch had "resigned."

9. On December 12, 2022, within hours after the announcement of Mr. Crouch's "resignation", I sent an email to Ms. April Robertson regarding "Electronic Data Preservation" and demanded that Ms. Robertson in her capacity as DHHR's chief legal counsel preserve the cell phones and data on the cell phones involving Mr. Crouch and select members of DHHR leadership. Upon information and belief, Ms. Robertson as DHHR's chief legal counsel failed to take the required action to preserve the cell phones and electronic data involving Mr. Crouch.

10. On December 20, 2022, I sent a letter to interim DHHR Secretary Coben, Ms. Robertson, and other members of DHHR's leadership team regarding "NOTICE TO PRESERVE DOCUMENTS & ELECTONRICALLY-STORED INFORMATION" in which DRWV outlined DHHR's and Ms. Robertson's duty to preserve electronically stored information. Upon information and belief, DHHR and Ms. Robertson as chief legal counsel failed to preserve the electronic data involving Mr. Crouch and Secretary Coben that I had requested her to preserve.

11. The December 20, 2022, letter to interim DHHR Secretary Coben and Ms. Robertson regarding "NOTICE TO PRESERVE DOCUMENTS & ELECTONRICALLY-STORED INFORMATION" was also sent to the email address DHHRSecretary@wv.gov. Ms.

Beth Jarrett, assistant to the DHHR cabinet secretary, was routinely responsible for monitoring and replying to emails addressed to DHHRSecretary@wv.gov.

12.  I sent the December 12, 2022, email and the December 20, 2022, letter promptly to ensure that Ms. Robertson as chief legal officer and DHHR leadership would have sufficient time to take the necessary and appropriate action to preserve emails and other electronically stored information to preclude the deprovisioning of applicable email accounts and cell phones. It is common knowledge that 30 days after state employees separate from a state agency the employee's emails and other electronic information are routinely destroyed or not preserved unless appropriate action is taken otherwise. As I have advised the ODC, Ms. Robertson and Mr. Crouch were both aware of this established practice and the deprovisioning of emails. I had a discussion of this practice with each of Mr. Robertson and Mr. Crouch upon learning that a DHHR employee's email account was deprovisioned and the apparent spoliation of evidence when I served as OHF's general counsel. Ms. Jarrett was also aware of this established practice based on my prior discussions with her.

13.  As I have advised the ODC, on February 16, 2023, I met with two investigators at their request to answer their inquiries regarding the preservation of cell phones, data, and electronically stored information by Mr. Crouch, Ms. Robertson, and other members of DHHR's leadership team and reported retaliatory actions by Mr. Crouch and members of his DHHR leadership team. Upon information and belief, one of the investigators is involved in the pending and ongoing investigation of reported misconduct and fraudulent billing by the former chief medical officer at William R. Sharpe, Jr., Hospital and others.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Michael J. Folio (WV Bar No: 6314)

Sworn to before and subscribed to in my presence this 13th day of December, 2023.

[SEAL]

_____
Notary Public

NOTARY PUBLIC OFFICIAL SEAL
Kaitlyn Ann Stowers
State of West Virginia
My Commission Expires
March 10, 2028
DISABILITY RIGHTS OF WEST VIRGINIA
5088 WASHINGTON ST. W. SUITE 300
CHARLESTON, WV 25313

## STATE OF WEST VIRGINIA
## OFFICE OF LAWYER DISCIPLINARY COUNSEL
### WEST VIRGINIA JUDICIAL TOWER
### SUITE 1200
### 4700 MacCORKLE AVENUE, SE
### CHARLESTON, WEST VIRGINIA 25304

Office: (304) 558-7999
Fax: (304) 558-4015
Website: www.wvodc.org

**Chief Lawyer Disciplinary Counsel**
Rachael L. Fletcher Cipoletti



**Senior Lawyer Disciplinary Counsel**
Andrea J. Hinerman
**Chief Investigator**
Lia M. Palmer, M.S.C.J.

**Lawyer Disciplinary Counsel**
Renée N. Frymyer
Kristin P. Halkias
Lauren M. Hall

December 5, 2023

Ms. April Robertson
One Davis Square, St 100 East
Charleston, WV 25301

    Re:   *Complaint against Michael J. Folio, Esquire*
           *I.D. No. 22-02-382*

Dear Ms. Robertson:

    Enclosed please find a copy of the Investigative Panel Findings and Conclusions with respect to your complaint against the above-referenced attorney. This matter has been investigated by this office and was reviewed by the Investigative Panel of the Lawyer Disciplinary Board at its December 5, 2023 meeting. The Panel determined that further action is not warranted, and your complaint has been dismissed.

    Thank you for bringing this matter to the attention of the Lawyer Disciplinary Board.

Sincerely,

Renee N. Frymyer
Lawyer Disciplinary Counsel

RNF/amw

Enclosure

cc:   Michael J. Folio, Esquire (w/enc.)

RECEIVED
DEC 0 6 2023
By_____

## LAWYER DISCIPLINARY BOARD
## INVESTIGATIVE PANEL CLOSING

**I.D. No.:** 22-02-382                                **Date Complaint Received:** October 12, 2022

**COMPLAINANT:**   April L. Robertson, Esquire
One Davis Square
Suite 100 East
Charleston, West Virginia 25301

**RESPONDENT:**   Michael J. Folio, Esquire                **Bar No.:** 6314
5088 Washington Street West
Suite 300
Charleston, West Virginia 25313

**THE INVESTIGATION OF THIS MATTER** having been completed and a report having been made to the Investigative Panel of the Lawyer Disciplinary Board, the Panel orders that this complaint be closed for the following reasons:

### STATEMENT OF FACTS

Complainant April L. Robertson, Esquire, filed this complaint against Respondent Michael J. Folio, Esquire, a licensed member of the West Virginia State Bar.

Complainant is the General Counsel for the West Virginia Department of Health and Human Resources ("DHHR"). In her complaint, Complainant stated that Respondent previously served as the General Counsel for the DHHR's Office of Health Facilities until his resignation on August 11, 2022. Complainant stated that during his tenure he had access to confidential government information concerning state-operated hospitals and other DHHR information.

~99290.mf

Following his resignation, Respondent became the Legal Director for Disability Rights of West Virginia ("DRWV"), which Complainant contended was a position in direct opposition to the position he held at the DHHR. Complainant stated that DRWV conducts investigations and on occasion files and/or participates in litigation against DHHR regarding occurrences at state-operated hospitals. Complainant believed Respondent's position at DRWV to be a clear conflict of interest with his prior position with DHHR. She further stated that the DHHR would not give written informed consent to Respondent's adversarial representation.

As evidence of Respondent's alleged conflict, Complainant cited to an "avalanche of accusations, allegations, and access requested DHHR has received from DRWV starting the day after [Respondent] began his new job and continuing through today." Complainant stated that while employed by DHHR, Respondent had drafted internal memorandums, policies, plans, legislative rules, and state code amendments, all of which at issue in DRWV's recent requests for information.

In his response, Respondent denied any violation of the Rules of Professional Conduct. He provided background regarding his thirty years of practice as a licensed attorney in West Virginia. Respondent stated that he was hired by the DHHR on or about August 19, 2019, as Assistant General Counsel, and was reassigned to the Office of Health Facilities in June 2020, where he served in that role until his resignation on August 15, 2022. He stated that beginning in the late Spring of 2021, he started to identify substantial concerns and compliance issues with the former chief medical officer and statewide forensic medical director at Sharpe Hospital and provided multiple written

2

~99290.mf

and oral notices of these concerns to Bill Crouch, then the Cabinet Secretary of the DHHR, and his leadership team, which included Complainant and others. Respondent said his reports were ignored and/or failed to be redressed, leading him to eventually become despondent and upset. Respondent stated that this individual's misconduct was directly impacting patient care and facility operations. However, he said he was told by leadership to "back off."

Respondent asserted that on March 14, 2022, less than 24 hours after being directed to "back off" reporting what he believed to be fraudulent activity and also being told to spoliate potential evidence to avoid the existence of documents that would require accountability, Respondent submitted his resignation to Mr. Crouch and advised that he would need to seek appropriate legal remedy. Respondent said that within one hour, Mr. Crouch contacted him and assured him that he would redress the situation and change the culture. In reliance on Mr. Crouch's assurance, Respondent said he reluctantly rescinded his resignation. Respondent claimed, however, that the culture remained the same and the individual's conducted continued unabated.

Respondent stated that on August 4, 2022, he discussed with Mr. Crouch his resignation from DHHR and, with his consent, recused himself from all future internal Office of Health Facilities meetings. He stated that also on that date he advised Mr. Crouch that he would screen himself as required by the West Virginia Ethics Act and the Rules of Professional Conduct. Respondent said that he consulted with Kimberly Weber, Executive Director of the West Virginia Ethics Commission, regarding his resignation from the DHHR and his hiring at DRWV and anticipated duties, to ensure compliance

3

~99290.mf

with his ethical obligations. He stated that he had continued to follow the guidance of Ms. Weber.

Respondent explained that DRWV is the Protection and Advocacy System mandated under federal law for persons with disabilities in the state of West Virginia. He stated that a "P & A" can be a state agency or a private non-profit entity, and that DRWV is a private non-profit entity that was designated in 1977. He further stated that protection and advocacy organizations are in all 50 states and act as a watchdog to protect persons with disabilities.

Respondent asserted that under both federal and state law, DRWV has broad access to records to investigate suspected patient abuse or neglect, including privileged and confidential peer review documents. Respondent said that the DHHR, under Mr. Crouch, had executed a memo in agreement memorializing DHHR's duty to disclose confidential and privileged peer review records to DRWV pursuant to a Peer Review Records Protective agreement. Respondent also said that the DHHR and Mr. Crouch had also entered into an agreement with DRWV memorializing the DHHR's duty to notify DRWV of allegations of patient abuse and neglect and complaint surveys and licensure reviews at state-operated psychiatric facilities. Respondent further stated that OHFLAC and others maintain a public portals whereby complaint surveys, infractions, and corrective actions of West Virginia's licensed health care facilities, including the state health care facilities, is accessible by anyone with an internet connection.

Respondent stated that the instant complaint was filed roughly 24 hours after DRWV provided notice to Mr. Crouch that Sharpe Hospital was maintaining a patient

4

~99290.mf

census that violated its maximum bed capacity as determined by OHFLAC. He asserted that DRWV's notice was based solely on DHHR's own patient census data that it discloses every business day to multiple entities. Respondent referred to Complainant's claim that he improperly disclosed confidential and privileged information unfounded. He asserted that the DHHR had a mandated duty to disclose this information, and it was not protected by the attorney-client privilege.

Respondent stated that at DRWV he has screened himself from any matters that he personally and substantially participated in. He further stated that he had not reviewed any preexisting DRWV client files involving care at the state health care facilities to ensure he was screened from information involving specific client matters in which he may have personally and substantially participated with specific DRWV clients. Respondent provided affidavits from four employees at DRWV who stated that Respondent had not shared with them or disclosed confidential government or otherwise privileged information about the state health care facilities owned or operated by the DHHR, or anything about DHHR's activities or operations. The affidavit from Susan Given, DRWV's Executive Director stated that since well before 2006, DRWV has done consistent monitoring of state hospitals, including Sharpe, including conducting confidential employee and patient interviews, and receiving confidential complaints from informants. Respondent said that much of this information is information he never knew at DHHR.

When asked by Lawyer Disciplinary Counsel if she had a reply to Respondent's response, Complainant did not respond.

5

~99290.mf

## REASONS CLOSED

Rule 1.11 of the Rules of Professional Conduct states, in part:

> (a) Except as law may otherwise expressly permit, a lawyer who has formerly served as public officer or employee of the government:
>   (1) is subject to Rule 1.9(c)[1]; and
>   (2) shall not otherwise represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation.
> (b) When a lawyer is disqualified from representation under paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:
>   (1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>   (2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.

Moreover, in Formal Opinion 97-409, the American Bar Association recognized that under Rule 1.11, a former government lawyer is disqualified from representing private clients where she "participated personally and substantially as a public officer or employee" in the same "particular matter" at issue in the subsequent representation, but she is not forbidden from representing private parties in matters in which she did not so participate, or in any matters not involving "a discrete and isolatable transaction or set of

---

[1] Rule 1.9. Duties to Former Clients.
(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

6

~99290.mf

transactions between identifiable parties," subject only to the constraints imposed by Rule 1.9(c) on her use or disclosure of information relating to her representation of the government that has not become generally known. In any case, the opinion goes on to state that in any case, if the lawyer herself is personally disqualified, members of her firm may undertake the representation if she is appropriately screened.[2]

After review of the evidence, the Investigative Panel finds no clear and convincing evidence that Respondent has represented a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee in a substantive way or used any specific information against the DHHR that constitutes confidential government information. Complainant cites to no specific investigation, litigation or matter in which Respondent previously substantially and personally participated in that would create a conflict. The reference in Complainant's complaint generally to Respondent's prior access to "confidential government information" is far too vague, and any allegation that Respondent may have improperly disclosed this type of information is not supported by the evidence.

In conclusion, the Investigative Panel determines that probable cause does not exist to charge Respondent with a violation of the Rules of Professional Conduct. Respondent is nonetheless reminded regarding his duties pursuant to the conflict of interest provisions of Rules of Professional Conduct. There being no further action to be taken, this matter is closed.

---

[2] This Opinion is also reiterated in a recent United States District Court case, *State of Texas v. Biden*, 570 F. Supp. 3d 398 (N. D. Tex. Fr. Worth 2021), in which the Court denied a Motion to Disqualify a former government attorney who developed an expertise while in government practice who then litigated against the government in that area of expertise because defendants failed to carry their burden that the lawyer should be disqualified under Model Rule 1.11.

7

~99290.mf

* * *

**CLOSING ORDERED** on the _5_ day of December, 2023, and **ENTERED** this the _5_ day of December, 2023.

_____
C. David Morrison, Chairperson, *Pro tem*
Investigative Panel
Lawyer Disciplinary Board