UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | | |
|---|---|---|
| **Jonathan R., minor, by Next Friend, Sarah DIXON, *et al.,*** | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Class Action |
| | ) | 3:19-cv-00710 |
| v. | ) | |
| | ) | |
| **Jim JUSTICE, in his official capacity as the Governor of West Virginia, *et al.,*** | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO COMPEL**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37.1(c), Plaintiffs move to compel discovery sought in Plaintiffs' Eleventh Request for Production ("RFP"). The parties have conferred pursuant to Local Rule 37.1(b) and are unable to come to an agreement on one of Plaintiffs' discovery requests.

Accordingly, Plaintiffs respectfully request that the Court compel Defendants to produce the outstanding discovery detailed below no later than January 24, 2024.

**BACKGROUND**

Plaintiffs served their Eleventh RFP on November 7, 2023. *See* Ex. 1.[1] Defendants responded on December 7, 2023, objecting to all requests and stating that they would not provide any responsive documents. *See* Ex. 2. The parties met and conferred on December 20, 2023. M. Lowry Decl. ¶ 4. Defendants offered to provide a compromise regarding some of the requests in the Eleventh RFP, but stood on their objections regarding RFP 11.4. *Id.* ¶ 5. RFP 11.4 requested

---

[1] Exhibits are attached to the Declaration of Marcia Lowry dated January 8, 2024 ("M. Lowry Decl.").

all documents and communications regarding the adoptive children of Donald Ray Lantz and Jeanne Kay Whitefeather discovered in Sissonville, West Virginia (the "Sissonville Case"), including any documents and communications regarding any investigation into allegations of abuse and neglect, and/or Defendants' failures to respond to reports of abuse and neglect regarding these children.  In this case, two teenagers were found locked in a room in a shed, from which they could not exit, while their adoptive parents were off the property.[2]  They were found in devastating conditions, including being deprived of food and running water, forced to use a pan on a tarp as a bathroom, and sleep in a sleeping bag on the concrete floor.[3]  Both children were wearing dirty clothes and it appeared that it had been several days since they had taken a bath.[4]  One of the children had sores on his feet.[5]  A younger child was also found locked inside the home in an unprotected loft about 15 feet high.[6]  One neighbor has stated that she sometimes witnessed them in the yard performing what appeared to be forced manual labor.[7]  While she and other neighbors

---

[2] *See* https://westvirginiawatch.com/2023/11/28/state-says-no-docs-exist-showing-cps-responded-to-calls-about-sissonville-kids-found-locked-in-shed/; https://westvirginiawatch.com/2023/10/12/attorney-public-entitled-to-know-if-cps-responded-to-calls-about-kids-found-locked-in-shed/#:~:text=On%20Oct.,found%20upset%20inside%20the%20home; https://wvmetronews.com/2023/10/03/couple-arrested-for-gross-child-neglect/;
https://wvmetronews.com/2023/10/12/sissonville-parent-appears-for-preliminary-hearing-in-gross-child-neglect-case/.
[3] *See* https://westvirginiawatch.com/2023/11/28/state-says-no-docs-exist-showing-cps-responded-to-calls-about-sissonville-kids-found-locked-in-shed/; https://westvirginiawatch.com/2023/10/12/attorney-public-entitled-to-know-if-cps-responded-to-calls-about-kids-found-locked-in-shed/#:~:text=On%20Oct.,found%20upset%20inside%20the%20home; https://wvmetronews.com/2023/10/03/couple-arrested-for-gross-child-neglect/;
https://wvmetronews.com/2023/10/12/sissonville-parent-appears-for-preliminary-hearing-in-gross-child-neglect-case/.
[4] https://wvmetronews.com/2023/10/12/sissonville-parent-appears-for-preliminary-hearing-in-gross-child-neglect-case/.
[5] *Id.*
[6] *Id.*
[7] https://westvirginiawatch.com/2023/11/28/state-says-no-docs-exist-showing-cps-responded-to-calls-about-sissonville-kids-found-locked-in-shed.

reported previously calling Child Protective Services on multiple occasions, the children were not removed from their adoptive parents.[8]

The parties held a meet-and-confer on December 20, 2023.  During this meet and confer, Defendants made clear that their primary ground for objecting is that they do not deem this information relevant to Plaintiffs' claims because the two children at issue were not members of the class at the time the initial reports were made and/or the investigation into the allegations of abuse and neglect took place.  M. Lowry Decl. ¶ 6.  Defendants admitted that they assumed, although did not know, that the children were now in State custody—which press reports have now confirmed.[9]  *Id.* ¶ 7.  Defendants did not argue during the parties' conferral that it would be a burden to produce this information.  *Id.* ¶ 8.  Plaintiffs responded that they believed the documents were relevant to their claims and therefore discoverable, and they intended to move to compel Defendants' response.  *Id.* ¶ 9.

## LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Relevancy under [Rule 26] has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party."  *Mays v. Cabell Cnty.*

---

[8] https://westvirginiawatch.com/2023/11/28/state-says-no-docs-exist-showing-cps-responded-to-calls-about-sissonville-kids-found-locked-in-shed/; https://westvirginiawatch.com/2023/10/12/attorney-public-entitled-to-know-if-cps-responded-to-calls-about-kids-found-locked-in-shed/#:~:text=On%20Oct.,found%20upset%20inside%20the%20home.

[9] *See* https://wvmetronews.com/2023/10/12/sissonville-parent-appears-for-preliminary-hearing-in-gross-child-neglect-case/.

*Bd. of Educ.*, No. 22-cv-85, 2023 U.S. Dist. LEXIS 51618, at *8 (S.D. W. Va. Mar. 27, 2023)

(quoting *Becton, Dickinson & Co. v. Biomedics, Inc.*, No. 5:20-cv-536, 2021 U.S. Dist. LEXIS

163471, at *3 (E.D.N.C. Aug. 30, 2023) (citations omitted)).  "A discovery request is relevant if

there is any possibility that the information sought might be relevant to the subject matter of [the]

action." *Hicks v. Hous. Baptist Univ.*, 2020 U.S. Dist. LEXIS 8382, at *5 (E.D.N.C. Jan. 17, 2020)

(internal quotations and citation omitted).  Relevance is not subject to a per se rule but rather "is

fact based and depends on many factors, including how closely related the evidence is to the

plaintiff's circumstances and theory of the case." *Sprint/United Management Co. v. Mendelsohn*,

552 U.S. 379, 388 (2008).

"A party dissatisfied with a discovery response or lack of response can move for an order

compelling disclosure or discovery after attempting to confer with the party that submitted the

response or failed to respond." *Mays*, 2023 U.S. Dist. LEXIS 51618 at *8.  The party opposing a

motion to compel "bears the burden of showing why it should not be granted." *Tucker v.

Momentive Performance Materials USA, Inc.*, No. 2:13-cv-4480, 2016 U.S. Dist. LEXIS 187413,

at *9 (S.D. W. Va. Nov. 23, 2016).

Pursuant to Local Rule 37.1(c), Plaintiffs set forth "verbatim each discovery request or

disclosure requirement and any response thereto to which an exception is taken."  S.D. W. Va.

Loc. R. 37.1(c).  Objections that have been resolved are omitted.

## ARGUMENT

Defendants refuse to produce highly relevant documents in response to Plaintiffs' request

for information concerning West Virginia children who were the subject of reports of allegations

of abuse and neglect and investigations or a lack thereof into those reports.  Indeed, these children

are now in the custody of Defendants.[10]  Defendants' objections on relevancy grounds are without

support and Plaintiffs respectfully request that the Court compel production of these documents.

Plaintiffs request that all discovery referenced in this letter be produced no later than January 24,

2024.  Plaintiffs set forth information regarding the specific RFP at issue below.

Request Number 11.4 seeks:

All Documents and Communications regarding the adoptive children of Donald
Ray Lantz and Jeanne Kay Whitefeather discovered in Sissonville, West Virginia,
including any Documents and Communications regarding any investigation into
allegations of abuse and neglect.

Ex. 1 at 5.

On December 7, 2023, Defendants objected to the request, stating:

Defendants object to this Request as not relevant to the subject matter of this case
and Plaintiffs' remaining class claims in light of the Court's Order dismissing
Plaintiffs' case planning, placement stability, and familial association claims, and
significantly narrowing Plaintiffs' Substantive Due Process claims, Doc. 300.
Documents related to investigations of allegations of abuse or neglect are not
relevant to Plaintiffs' remaining Substantive Due Process claims for which class
certification has been granted. See id. at 12-17; Doc. 351. Documents concerning
allegations or investigations of abuse and neglect of children who are not foster
children in DHHR custody (*i.e.*, children *not* in the class) are not relevant to
Plaintiffs' remaining claims.

Further, as class certification has been granted in this case, documents and
communications pertaining to a single specific investigation, child or family, is of
minimal relevance or value given that "Plaintiffs' claims focus on systemic
violations of all West Virginia foster children's substantive due process and federal
statutory rights." Doc. 396, at 1 (emphasis in original). Therefore, Defendants also
object to this Request as overbroad, unduly burdensome, and not proportional to
the need of this case Ie it would require Defendants to spend dozens of staff and/or
contractor hours to search servers, e-mails, and paper files to locate "all Documents
and Communications" related to the specific case referenced in Plaintiffs' Request.
. . . .

For the foregoing reasons, Defendants are not producing any documents in response
to this Request.

---

[10] *See* https://wvmetronews.com/2023/10/12/sissonville-parent-appears-for-preliminary-hearing-in-gross-child-neglect-case/.

Ex. 2 at 7-8.

Defendants' relevance arguments miss the mark.  Here, evidence regarding any investigations into allegations of abuse and neglect of the children described in RFP 11.4 is highly probative of several of Defendants' practices at issue in the case.  In the Sissonville Case, three children were discovered in horrifying conditions following numerous reports to CPS of abuse and neglect of these children that went unaddressed.  In this action, Plaintiffs allege that Defendants fail to adequately respond to allegations of abuse and neglect of children in DHHR custody and fail to make visits to foster children in their placements as necessary.  *See, e.g.*, Compl. ¶¶ 58, 106, 159, 313, ECF No. 1; Memorandum Opinion & Order ("Class Certification Order") at 23, ECF No. 351; Pl. Memorandum of Law in Support of Their Renewed Motion for Class Certification at 8, 13, 13 n.64, ECF No. 319.  Further, evidence that there is a backlog in addressing allegations of abuse and neglect of all children—or that Defendants continuously fail to address allegations at all—is probative of the dysfunction in the foster care system that is at the heart of Plaintiffs' claims.

It appears that the crux of Defendants' argument, which they reiterated during the December 20 meet-and-confer, is that "allegations or investigations of abuse and neglect of children who are not foster children in DHHR custody (*i.e.*, children *not* in the class) are not relevant to Plaintiffs' remaining claims."  Ex. 2, at 7.  But the standard for relevance is not so limited.  Relevance is not governed by per se rules.  Rather it "is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case."  *Sprint/United Management*, 552 U.S. at 388.  And, as stated above, the information regarding these children is relevant to Plaintiffs' claims.

Courts routinely allow broader discovery of information regarding non-class members when the information is sufficiently related to the claims and issues in the case.  *See, e.g.*, *Jackson*

*v. Los Lunas Ctr. for Persons with Developmental Disabilities*, No. 87-0839 JP/KBM, 2018 U.S. Dist. LEXIS 125508, at *9 (D.N.M. July 26, 2018) (granting motion to compel information regarding non-class members because it lead to admissible evidence showing that the State's system violated Section 504 of the ADA); *Hicks*, 2020 U.S. Dist. LEXIS 8382, at *3 (denying motion for reconsideration of order compelling production of information regarding students outside of plaintiff's proposed class because the information was relevant to the class claims in the case); *Hale v. CNX Gas Co., LLC*, No. 1:10-cv-00059, 2014 U.S. Dist. LEXIS 201782, at *7-9 (W.D. Va. Mar. 11, 2014) (granting motion to compel the production of information regarding non-class members where the information bore on an issue related to class members' claims); *Kaupelis v. Harbor Freight Tools USA, Inc.*, No. SA CV 19-01203-JVS (DFM), 2021 U.S. Dist. LEXIS 13545, at *3 (C.D. Cal. Jan. 22, 2021) (granting motion to compel interrogatory responses regarding non-class members because the individuals may have  information regarding defendant's knowledge of the product defect at issue).  In fact, "evidence of alleged constitutional violations committed against individuals other than a named plaintiff (or class member) is often relevant to a claim asserting a pattern, policy, or custom of unconstitutional conduct."  *Doe v. Shenandoah Valley Juvenile Ctr. Comm'n*, 2018 U.S. Dist. LEXIS 235755, at *3 (W.D. Va., Nov. 30, 2018) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987)) (granting motion to compel requests for admission regarding alleged instances of abusive treatment against unaccompanied immigrant children who were not in the defined class because such evidence may be probative of whether practices are so widespread and flagrant as to connote constructive knowledge).

Moreover, the children described in RFP 11.4 are now members of the General Class, according to press reports.[11]   As members of the class, Defendants' documents and

---

[11] *See* https://wvmetronews.com/2023/10/12/sissonville-parent-appears-for-preliminary-hearing-in-gross-child-neglect-case/.

communications regarding these children are well within the scope of discovery.  Defendants do not contend that any of this information is privileged or otherwise shielded from discovery. Therefore, Defendants must produce it.

With respect to their other relevance objections, *i.e.*, that the "Request is not relevant to the subject matter of this case and Plaintiffs' remaining class claims in light of the Court's Order dismissing Plaintiffs' case planning, placement stability, and familial association claims", Defendants misread the Court's Order on their Motion to Dismiss regarding Plaintiffs' claims concerning case planning and placement stability.  Not only did the Court not dismiss these claims, it certified Plaintiffs' class on the basis, among other things, of Plaintiffs' allegations concerning Defendants' inadequate case planning practices.  *See* Class Certification Order at 17-20.  In fact, the Court drew attention to Defendants' misunderstanding of the Order on Defendants' Motion to Dismiss in footnote 4 of its Class Certification Order.  The Court stated that although "foster children may not have a constitutional right to case planning per se, . . . Plaintiffs could prevail on their due process claim if the failure to case plan somehow places them at an unreasonable risk of harm." *Id.* at 13 & n.4.  As with case planning, so too are Defendants incorrect regarding the issue of placement stability.   The Court explicitly rejected Defendants' argument in its Class Certification Order, stating that "while foster children have no right to stability in itself, they do have a right to be free from an unreasonable risk of serious physical or psychological harm, and they are therefore entitled to services to ensure their safety." *Id.*  Accordingly, Plaintiffs "could succeed on their substantive due process claim by demonstrating that excessive placement moves subjects them to an unreasonable risk of severe psychological harm." *Id.*  Finally, Defendants' argument regarding Plaintiffs' familial association claims is misplaced.  None of the document

8

requests in Plaintiffs' 11th Request for Production pertain directly or uniquely to the familial association claims that the Court dismissed.

Defendants essentially concede that the information sought by RFP 11.4 has some relevance to Plaintiffs' claims because they argue that "documents and communications pertaining to a single specific investigation, child or family, is of *minimal relevance* or value given that 'Plaintiffs' claims focus on systemic violations of all West Virginia foster children's substantive due process and federal statutory rights.'" Ex. 2 at 7 (emphasis added).  And this information has more than marginal relevance to Plaintiffs' case.  Examples of Defendants' conduct respecting individual plaintiffs and their cases are helpful to illustrate Defendants' unconstitutional policies and practices and the deleterious impact they have on class members.  Courts have stated that although such evidence is not required to prove that individuals in state custody face an undue risk of harm, it is nonetheless helpful.  *See, e.g.*, *M.D. v. Perry*, 294 F.R.D. 7, 34, 45 (S.D. Tex. 2013) (stating that evidence that some members of the class have actually suffered physical or psychological harm provides some evidence that an undue risk of harm exists, although actual harm is not required to prove the legal injury at the heart of the plaintiffs' claims); *Lippert v. Baldwin*, No. 10 C 4603, 2017 U.S. Dist. LEXIS 64687, at *23 (N.D. Ill. Apr. 28, 2017) (noting that descriptions of the named plaintiffs' experiences were not submitted in support of individual claims but instead "as evidence of the defendants' unlawful policies and practices, and as examples of the serious harm to which all inmates . . . are allegedly exposed.").

Defendants' argument regarding the marginal relevance of information pertaining to these children is not an argument about relevance, but about burden.  But in the parties' meet-and-confer, Defendants did not argue that responding to the Request would be unduly burdensome.  M. Lowry Decl. ¶ 8.  Indeed, this is not surprising because the burden of producing information regarding

only a few specifically identified children in the class, whose case files are in Defendants' possession, is presumably minimal.[12]

Accordingly, Plaintiffs respectfully request that the Court compel Defendants to produce this discovery.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court compel Defendants to produce the outstanding discovery sought in Plaintiffs' Eleventh Request for Production, Request Number 4, and to produce it no later than January 24, 2024.

Respectfully submitted,

/s/ *Marcia Robinson Lowry*
Marcia R. Lowry, *admitted pro hac vice*
Julia Tebor, *admitted pro hac vice*
Jonathan Borle, *admitted pro hac vice*
Lindsay Gus, *admitted pro hac vice*
A Better Childhood
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel.: (646) 795-4456
Fax: (212) 692-0415
mlowry@abetterchildhood.org
jtebor@abetterchildhood.org
jborle@abetterchildhood.org
lgus@abetterchildhood.org

/s/ *Richard W. Walters*
Shaffer & Shaffer, PLLC
Richard W. Walters, WVSB #6809
rwalters@shafferlaw.net
J. Alexander Meade, WVSB #13021
ameade@shafferlaw.net

---

[12] Plaintiffs expect that Defendants will point to Plaintiffs' argument in connection with Defendants' motion to compel (ECF No. 380) that the Named Plaintiffs' medical records, educational records, and court records that are *not* contained in DHHR files are marginally relevant, if relevant at all, and the burden of collecting them is not proportionate to this relevance.  Notably, if Defendants had no knowledge of records that were not in their files, then the information is not probative of their deliberate indifference.  By contrast, the documents Plaintiffs request here are in DHHR's files and would not be overly burdensome to collect.

2116 Kanawha Boulevard, East
P.O. Box 3973
Charleston, WV 25339
Tel: (304) 244-8716
Fax: (304) 344-1481

/s/ *J. Marty Mazezka*
Disability Rights of West Virginia
J. Marty Mazezka, WVSB #4572
jmazezka@drofwv.org
5088 Washington St. W., Suite 300
Charleston, WV 25301
Tel: (304) 346-0847
Fax: (304) 346-0687

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

| | | |
|---|---|---|
| Jonathan R., minor by Next | ) | |
| Friend Sarah DIXON, *et al.,* | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| v. | ) | Case No. 3:19-cv-00710 |
| | ) | |
| Jim JUSTICE, in his official capacity as | ) | |
| the Governor of West Virginia, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

## CERTIFICATE OF SERVICE

I, J. Alexander Meade, counsel for Plaintiffs, hereby certify that I have this 8th day of January, 2024, electronically filed "**Plaintiffs' Motion to Compel**" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Philip J. Peisch, Esquire
Caroline M. Brown, Esquire
Julia Siegenberg, Esquire
Rebecca Wolfe, Esquire
Brown & Peisch PLLC
1233 20th Street NW, Suite 505
Washington, DC 20001

Steven R. Compton, Esquire
West Virginia Attorney General's Office
812 Quarrier Street, 2nd Floor
Charleston, WV 25301

*/s/ J. Alexander Meade*
J. Alexander Meade (WVSB #13021)