IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JONATHAN R.,** *et al.***,**

      **Plaintiffs,**

v.                                                          Case No.:  3:19-cv-00710

**JIM JUSTICE,** *et al.***,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Compel Production of Documents from Plaintiffs. (ECF No. 380). For the reasons that follow, the Court **GRANTS, in part,** and **DENIES, in part,** the motion.

**I.      Relevant Facts**

On September 30, 2019, twelve current and former West Virginia foster children filed a putative class action complaint against West Virginia's Department of Health and Human Resources ("DHHR") and the state officials responsible for administering West Virginia's foster care system. (ECF No. 1 at 6). Plaintiffs allege that Defendants' systemic failures in the foster care system violated their rights under the United States Constitution and federal laws, which directly caused them to suffer and continue to suffer emotional and psychological harm. (ECF No. 1 at 6, 18, 20, 23, 27, 31, 35, 38, 41, 45, 47). They seek declaratory and injunctive relief to reform the state's foster care policies and practices. (*Id*. at 6, 99-104).

The Court certified a General Class of all West Virginia foster children who are or

will be in the foster care custody of DHHR or its successor agency. (ECF No. 351 at 45-46). It also certified an ADA Subclass that includes all members of the General Class who have physical, intellectual, cognitive, or mental health disabilities as defined by federal law. (*Id*. at 46-47). The claims of one plaintiff were dismissed; the remaining eleven named Plaintiffs represent the General Class, and eight of them also represent the ADA Subclass. The instant motion involves discovery requests made to the eleven named Plaintiffs, which they have declined to fully answer.

## II. Applicable Law

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery in this action. It states, in relevant part:

> [U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Becton, Dickinson & Co. v. BioMedomics, Inc.*, No. 5:20-CV-536-FL, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). "Relevance is not, on its own, a high bar." *Ceresini v. Gonzales*, No. 3:21-CV-40 (GROH), 2022 WL 628520, at *3 (N.D.W. Va. Mar. 3, 2022) (citation omitted). As stated in the rule, information "need not be admissible in evidence to be discoverable." *Id*. (quoting Fed. R. Civ. P. 26(b)(1)). "Federal courts have long understood that relevancy for discovery purposes is defined

2

more broadly than relevancy for evidentiary purposes." *Id.*

Even if seeking relevant information, the discovery request must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "Although Rule 26(b)(1)'s relevance inquiry does not, itself, pose a 'high bar,' its proportionality requirement mandates consideration of multiple factors in determining whether to allow discovery of even relevant information." *Ceresini*, 2022 WL 628520, at *3. The factors include: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

A party dissatisfied with a discovery response or lack of response can move for an order compelling disclosure or discovery after attempting to confer with the party that submitted the response or failed to respond. Fed. R. Civ. P. 37(a). The party resisting discovery, not the party seeking discovery, bears the burden of persuasion. *Jonathan R. v. Just.*, No. 3:19-CV-00710, 2023 WL 8629147, at *2 (S.D.W. Va. Dec. 13, 2023); *McEvoy v. Diversified Energy Co. Plc*, No. 5:22CV171, 2023 WL 6192769, at *1 (N.D.W. Va. May 15, 2023); *Fine v. Bowl Am., Inc.*, No. CV SAG-21-1967, 2023 WL 8479250, at *2 (D. Md. Dec. 7, 2023); *Perez v. Huneycutt*, No. 5:22-CV-00120-MR, 2023 WL 8813553, at *2 (W.D.N.C. Dec. 20, 2023); *Doe v. Mast*, No. 3:22CV00049, 2023 WL 8481049, at *2 (W.D. Va. Dec. 7, 2023); *United States v. White*, No. 2:23-CV-00001-BO, 2023 WL 8451744, at *7 (E.D.N.C. Dec. 6, 2023). As such, conclusory and unsubstantiated allegations are simply insufficient to support discovery objections based on the grounds of annoyance, burdensomeness, oppression, or expense. *Id.*

### III. Discussion

Defendants seek an order compelling Plaintiffs to produce certain medical, educational, and court records as described in Request Nos. 1, 2, 4, 5, and 7 of Defendants' Third Request for Production of Documents. (ECF No. 380 at 1, 2). In response to the requests, Plaintiffs objected on the ground that they did not have possession, custody, or control of the responsive documents, and they would have to gather the documents from the medical providers, schools, and lawyers in order to produce them. (*Id.*). Plaintiffs did not object on the basis that the information sought was irrelevant or that it was unduly burdensome for them to collect the documents and respond. (*Id.*). Plaintiffs did provide limited records for one of the named plaintiffs, but they rejected Defendants' offers of compromise to resolve this discovery dispute. (*Id.* at 3-4).

#### A. *Defendants' Request for Production of Documents Nos. 1 and 2*

The first set of discovery requests at issue concern the named Plaintiffs' medical records.

> **Request for Production No. 1:** [For the period of July 1, 2019 to the present,] [a]ll communications between any of the Named Plaintiffs or their Next Friends and any provider of services (including, but not limited to, medical services, psychiatric services, behavioral health services, educational services, socially necessary services, foster care services, residential services or educational services) to any of the Named Plaintiffs.
>
> **Plaintiffs' Response:** Plaintiffs object to this request because it requests the production of documents which are in Defendants' possession or are readily obtainable by Defendants, and are not currently in Plaintiffs' possession, and, therefore, cannot be produced. *See, e.g., Bleecker*, 130 F. Supp. 2d at 738 ("Discovery is not required when documents are in the possession of or readily obtainable by the party seeking a motion to compel."); *see also Shaffer*, 2018 U.S. Dist. LEXIS 230858 at \*15 ("Court have long held that the rules of discovery, specifically Federal Rule of Civil Procedure 34, do not require parties to produce records that are accessible to all parties."); *Dushkin Pub. Grp., Inc.,* 136 F.R.D. at 335 (D.C.D.C. 1991) ("It is well established that discovery need not be required of documents of public record which are equally accessible to all parties.") (internal

4

quotation marks omitted).

Plaintiffs also object to the extent Defendants seek interview memoranda, notes, or written communications by Plaintiffs' *guardians ad litem* as such documents are protected from discovery by the work product doctrine. See Fed. R. Civ. P. 26(b)(3); *see also Hickman v. Taylor,* 329 U.S. 495, 511 (1947) (stating that the work product of a lawyer includes interviews, memoranda, correspondence, briefs, and mental impressions, among other materials).

Notwithstanding the foregoing objections, Plaintiffs produce the following documents:
• P00962 - P01228

**Request for Production No. 2:** [For the period of July 1, 2019 to the present,] [a]ll documents concerning any medical services, psychiatric services, behavioral health services or mental health services received by any of the Named Plaintiffs, including the Named Plaintiffs' medical records.

**Plaintiffs' Response:** Plaintiffs object to this request because it requests the production of documents which are in Defendants' possession or are readily obtainable by Defendants, and are not currently in Plaintiffs' possession, and, therefore, cannot be produced. *See supra,* Plaintiffs' Resp. No. 1. During all periods of time in which Named Plaintiffs were in the care and custody of the DHHR, these services would have been arranged by DHHR. Plaintiffs also object to the extent Defendants seek interview memoranda, notes, or written communications by Plaintiffs' *guardians ad litem* as such documents are protected from discovery by the work product doctrine. *See supra,* Plaintiffs' Resp. No.1.

Plaintiffs further object to the extent that this request seeks production of documents concerning services provided at times in which any of the Named Plaintiffs were not in the legal custody of DHHR on the grounds that discovery of this nature is overly broad, not proportional to the needs of the case, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.

Notwithstanding the foregoing objections, Plaintiffs produce the following documents:

• P00962 - P01228

(ECF Nos. 380-1 at 4-5, 380-4 at 4-5).

According to Defendants, request numbers one and two are likely to yield relevant

5

information for three reasons. (ECF No. 380 at 6). First, the documents may tend to corroborate or refute the physical and psychological harm that Plaintiffs allege in their complaint. (*Id.*). Second, the documents will show whether the services that Defendants provided addressed Plaintiffs' needs, which would rebut their allegations that Defendants were deliberately indifferent to their well-being. (*Id.*). Third, the requests are aimed at disproving the claim that the ADA Subclass was subjected to unjustified institutional isolation. (*Id.*). Defendants state that whether institutionalization was unjustified depends on each child's diagnoses, needs, and behaviors, all of which would be documented in their medical records. (*Id.*). Although Plaintiffs now argue that responding to the requests would be overly burdensome, Defendants emphasize that Plaintiffs never lodged such an objection in their response; they only raised that argument in a subsequent email. (ECF No. 380 at 7 n.3). Defendants argue that it would not be extremely burdensome for Plaintiffs to produce these records. (*Id.* at 7). They contend that Plaintiffs simply need to provide their counsel a list of the providers that they saw for approximately the past five years; sign a HIPAA release, which would be transmitted to the providers; and then produce the records as they are received. (*Id.*).

Defendants are correct that Plaintiffs did not object to the requests on the ground that they were "unduly burdensome, overbroad, and irrelevant." (ECF No. 380 at 7 n.3); *compare* (ECF No. 380-4 at 4-5) (stating, in response to the discovery requests, that the information is not within Plaintiffs' possession, custody, or control and the *guardians ad litems*' materials are privileged), *with* (ECF No. 396 at 8) (arguing that the Court should deny the motion to compel with respect to this request because the discovery sought is unduly burdensome, overbroad, and irrelevant). In a later email and in response to the motion to compel, Plaintiffs belatedly asserted that the requests are not described with

6

reasonable particularity and producing the information would impose a significant burden that substantially outweighs its importance in the litigation. (ECF No. 396 at 3-4).

They elaborate on this point in their brief in opposition to Defendants' Motion to Compel. Plaintiffs contend that they would have to list every service provider they saw since September 1, 2019, sign "tens if not hundreds of medical releases," and send them to "tens if not hundreds" of providers in order to respond to this discovery request. (*Id.* at 4-5). Plaintiffs state that they would then need to conduct a "privilege review" of the anticipated thousands of pages of records before producing them to Defendants. (*Id.* at 5). According to Plaintiffs, the above time, effort, and resources that would be required to comply with the discovery request are grossly disproportionate to the negligible value of the information in this case. (*Id.*). They assert that, although they oppose Defendants gathering this irrelevant information at all, Defendants can alternatively obtain the information through subpoenas and a court order, "which would be less burdensome and perhaps more reliable" than Plaintiffs providing the information. (*Id.* at n.3). Plaintiffs claim that they have been in so many settings over the past five years that any list of providers that they could submit would be incomplete, at best. (*Id.* at 4). Plaintiffs argue that courts are without the power to order individuals to execute medical release forms, and they reiterate that medical records that they do not possess are not considered in their custody or control for discovery purposes. (*Id.* at 4-5). Furthermore, Plaintiffs claim that their records after they left DHHR's custody have no relevance to this case because the litigation concerns whether Defendants' policies and practices place children who are in DHHR's custody at a substantial risk of harm. (*Id.* at 5-6). They argue that Defendants are attempting to justify their decision-making after the fact by conducting a fishing

7

expedition for information that was not in the children's case files and DHHR did not rely upon in making any decisions. (*Id.* at 8).

In reply to Plaintiffs' arguments, Defendants note that Plaintiffs allege they suffered and *continue to suffer* emotional and psychological harm due to Defendants' actions and they claim that their education was deficient in Defendants' custody. (ECF No. 398 at 1). Plaintiffs state that they suffered actual injuries for which other children in the class are also at risk. (*Id.*). Defendants find it ironic that Plaintiffs seek in discovery documents related to Plaintiffs, yet they argue that the information that Defendants seek is irrelevant. (*Id.* at 2 n.1). As to burden, Defendants argue that Plaintiffs describe ordinary discovery obligations that any party to a litigation must face. (*Id.* at 4). They contend that Plaintiffs have not offered any specific facts, affidavits, or evidence regarding the alleged burden, nor do they attempt to describe the type of privilege that might apply. (*Id.*). Finally, Defendants point out that they are not asking the Court to force the named Plaintiffs to sign medical releases. (*Id.* at 6). Indeed, HIPAA allows disclosure of this information pursuant to a court's protective order. (*Id.*).

Considering the above arguments and materials, Defendants have shown that this information is discoverable, and Plaintiffs have not satisfied their burden to resist discovery. As noted, Plaintiffs only raised a few objections in response to these discovery requests. Plaintiffs first argue that they do not have to produce their medical records because they are in Defendants' possession or readily obtainable by them. They indicate that, during the time periods that Plaintiffs were in DHHR's custody, DHHR arranged all of their medical, behavioral health, and other services; thus, Defendants should already have those records. However, Defendants indicated that they do not have responsive information because they do not routinely collect the medical records of children in

8

DHHR's care unless they are specifically needed for some child welfare purpose. (ECF No. 380 at 8). Therefore, this a baseless reason for Plaintiffs to refuse to produce their records.

Furthermore, Plaintiffs' assertion that the records are not in their possession, custody, or control is unfounded. Rule 34 of the Federal Rules of Civil Procedure authorizes a party to "serve on any other party a request within the scope of Rule 26(b) … to produce and permit the requesting party or its representative to inspect, copy, test, or sample" designated documents, electronically stored information ("ESI"), or tangible things that are "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Courts have routinely held that when a party places his or her medical condition at issue, relevant medical records are within the party's possession, custody, or control even if such records are currently held by third parties. *See, e.g., Alvarez v. Johns Hopkins Univ.*, No. CV TDC-15-950, 2019 WL 2210644, at *11 (D. Md. May 21, 2019); *Pannell v. Scruggs*, No. 1:18 CV 271, 2019 WL 5866155, at *2 (W.D.N.C. Nov. 8, 2019).

In this case, Plaintiffs placed their emotional and psychological conditions at issue, and they have claimed that their mental injuries stemmed from Defendants failing to investigate instances of physical and sexual abuse while in DHHR care, provide necessary services, and protect them from harm. The complaint includes very specific allegations relating to each named Plaintiff. (ECF No. 1 at 15-48). Plaintiffs unanimously claim that Defendants' actions and inactions directly caused them to suffer and continue to suffer emotional and psychological harm. (ECF No. 1 at 18, 20, 23, 27, 31, 35, 38, 41, 45, 47). They allege, *inter alia*, that DHHR fails to investigate reports of abuse, provide necessary support, or protect the children in its care, which ultimately directly caused them emotional and psychological harm. (*Id.* at 16-27, 31-48).

Plaintiffs argue that class certification obviated the need for this information

because the issue is whether the class as a whole is at a risk of harm, not the precise facts relating to each named Plaintiff. However, the named Plaintiffs' alleged experiences and injuries are very clearly exemplars of the class-wide claims. (ECF Nos. 1, 422-1 at 2). They admit that "[w]hether some members of the putative class have actually suffered physical or psychological harm provides some evidence that the risk [of harm to the class] exists." (ECF No. 423 at 3). There is no dispute that Plaintiffs do not have to prove that they suffered harm to prevail on their claims for prospective relief, and proof that the eleven Plaintiffs suffered actual harm likely is not, in and of itself, sufficient to show risk of harm to the entire class. (ECF Nos. 422 at 3, 423 at 3-6). Indeed, Plaintiffs point out that in similar cases plaintiffs have introduced agency documents and statements, national data and statistics, and expert testimony to show that the defendants' practices place a class of children in the state's care at an unreasonable risk of harm. (ECF No. 423 at 4-5). Nonetheless, that does not eliminate the relevancy of records documenting Plaintiffs' experiences as they aged through the foster care system, nor does it guarantee for Defendants that Plaintiffs will not offer evidence detailing their own personal stories to assist the Class in proving its claims. In fact, Plaintiffs clearly reserve the right to introduce such information in summary judgment and at trial.

The parties discussed possible stipulations to avoid this discovery dispute. Defendants stipulated to forgo a motion to compel if the parties agreed not to introduce information about the named Plaintiffs other than to the extent that class-wide or subclass-wide data includes information about them. (ECF No. 422-1 at 7). Plaintiffs refused to agree to that limitation and instead stated that they would only introduce evidence relating to information contained in the Complaint, introduced in connection with Plaintiffs' motion and renewed motion for class certification, and documents

produced by Defendants. (*Id.* at 6). In response, Defendants argued that Plaintiffs' counter proposal did not meaningfully limit the introduction of evidence relating to the named Plaintiffs. (*Id.* at 5). Rather, it only restricted Defendants from pursuing discovery and gathering facts on the evidence. (*Id.*). For instance, Defendants noted that the motions for class certification involved extensive expert opinions and testimony relating to the named Plaintiffs. (*Id.*). Under Plaintiffs' proposal, Plaintiffs would be permitted to offer that evidence without Defendants being able to investigate it. (*Id.*). Plaintiffs also wanted to reserve the right to introduce any facts mentioned in the Complaint, which contains detailed information about each Plaintiff, and the thousands of pages of case files of the named Plaintiffs.

The parties ultimately reached an impasse regarding these discovery requests. Plaintiffs refused to produce their records, yet they would not agree to refrain from using some of that information themselves. Plaintiffs' position is clear: the named Plaintiffs "are relevant to and exemplars of Plaintiffs' class-wide claims." (ECF No. 422-1 at 2, 3). In sum, Plaintiffs argue that evidence relating specifically to them is relevant and they reserve the right to offer it, but Defendants cannot perform any investigation or discovery of it to defend against those claims. Relevance is not a high bar in discovery. It is "broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Becton, Dickinson & Co. v. BioMedomics, Inc.*, No. 5:20-CV-536-FL, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). These discovery requests meet that definition. Defendants are certainly entitled to discover information to rebut Plaintiffs' claims that Defendants caused them mental injuries to which other foster children are at a similar risk of harm.

As to Request No. 2, Plaintiffs additionally objected to producing records of services provided at times in which any of the named Plaintiffs were not in the legal custody of DHHR. They claim that discovery of that nature is overly broad, not proportional to the needs of the case, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Yet, this discovery request is already narrowly limited to records dating back to July 1, 2019. The information in the records preceding or following when the named Plaintiffs were in DHHR's custody might be relevant to the issue of whether the named Plaintiffs suffered injuries that are attributable to Defendants and whether the class is exposed to that same risk of injury. As Defendants indicated, if the named Plaintiffs are thriving after being in DHHR's custody, it could dispel Plaintiffs' claims of continuing psychological injuries. Moreover, if the named Plaintiffs had the same psychological symptoms and conditions before entering DHHR's custody, it might rebut Plaintiffs' claims that the injuries were caused by Defendants.

Regarding the privilege concerns, Plaintiffs offer no authority to suggest that the fact that some responsive information might be privileged gives a party license not to produce the non-privileged information. Any claims of privilege or work product shall be asserted in the party's response and accompanied by a privilege log which complies with the Federal Rules of Civil Procedure and Local Rules of this Court. As a final matter, the Court finds that Plaintiffs have not identified any greater burden in producing this information than is normally involved in litigation, let alone a class action. It is routine for Plaintiffs to produce in discovery their medical records that are related to their claims and/or injuries. The fact that Defendants could potentially subpoena the information is of no consequence to Plaintiffs obligation to produce it. *Pannell*, 2019 WL 5866155, at *2.

Furthermore, Plaintiffs did not object that the request would impose undue burden, nor do they show good cause excusing their failure to object to justify why the Court should consider that objection now. *Moore v. Indian Harbor Ins. Co.*, No. 3:22-CV-00385, 2023 WL 2520582, at *12 (S.D.W. Va. Mar. 14, 2023) (stating that a party generally waives an objection to a request for production of documents that it did not timely assert in its initial discovery response unless good cause exists to excuse the failure to object). Plaintiffs have not offered sufficient facts or evidence, such as affidavits, regarding the alleged burdensomeness of this request. They estimate that it might involve hundreds, if not thousands, of providers, but they do not offer a scintilla of information to support that claim.

For all of the above reasons, Plaintiffs are **ORDERED** to respond to Requests for Production of Documents Nos. 1 and 2 within **thirty (30) days**.

### B. *Defendants' Request for Production of Documents Nos. 4 and 5*

The second set of discovery requests in dispute concern the named Plaintiffs' educational records.

> **Request for Production No. 4:** All documents concerning any of the educational services any of the Named Plaintiffs received while they have been in the legal custody of DHHR.
>
> **Plaintiffs' Response:** Plaintiffs object to this request because it requests the production of documents which are in Defendants' possession or are readily obtainable by Defendants, and are not currently in Plaintiffs' possession, and, therefore, cannot be produced. *See supra*, Plaintiffs' Resp. No. 1. Indeed, these services would have been arranged by DHHR, the legal custodian of the named Plaintiffs.
>
> Plaintiffs also object to the extent Defendants seek interview memoranda, notes, or written communications by Plaintiffs' *guardians ad litem* as such documents are protected from discovery by the work product doctrine. *See supra*, Plaintiffs' Resp. No.1.

13

Notwithstanding the foregoing objections, Plaintiffs produce the following documents:

- P00962 - P01228

**Request for Production No. 5:** [For the period of July 1, 2019 to the present,] [a]ll communications between and of the Named Plaintiffs or their Next Friends and any school attended by the Named Plaintiff.

**Plaintiffs' Response:** Plaintiffs object to this request because it requests the production of documents which are in Defendants' possession or are readily obtainable by Defendants, and are not currently in Plaintiffs' possession, and, therefore, cannot be produced. *See supra*, Plaintiffs' Resp. No. 1.

Plaintiffs also object to the extent Defendants seek interview memoranda, notes, or written communications by Plaintiffs' *guardians ad litem* as such documents are protected from discovery by the work product doctrine. *See supra*, Plaintiffs' Resp. No.1.

Plaintiffs further object to the extent that this request seeks production of documents concerning communications by Named Plaintiffs at times in which any of the Named Plaintiffs were not in the legal custody of DHHR on the grounds that discovery of this nature is overly broad, not proportional to the needs of the case, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding the foregoing objections, Plaintiffs produce the following documents:

- P00962 - P01228

(ECF Nos. 380-1 at 4-5, 380-4 at 5-6).

Defendants contend that documents concerning the educational services that the named Plaintiffs received while in DHHR custody and communications with their schools dating back to July 1, 2019 are relevant for similar reasons expressed regarding Request Nos. 1 and 2. (ECF No. 380 at 11). Defendants explain that, if Plaintiffs were or are thriving in school, it could rebut their allegations of harm. (*Id.*). Also, Defendants contend that, if the records showed a pattern of behavioral and disciplinary history, it could be probative of whether placement in residential treatment was justified. (*Id.*). According to

14

Defendants, Plaintiffs simply need to make a list of the schools that they attended in the last five years, sign authorizations for those records, and their attorneys can collect and produce that information. (*Id*.).

Although Plaintiffs argue that it would be unduly burdensome to produce this information, they did not assert a burdensomeness objection in response to these discovery requests, nor do they support such an argument now. (ECF Nos. 380 at 11 n.4, 396 at 9). Plaintiffs have not offered evidence that it would be unduly burdensome to produce the information. They did not submit affidavits or specific evidence of the alleged burden. Also, they have not identified any tasks outside of what is normally incurred in responding to discovery requests, such as conducting a privilege review or obtaining information from third parties that is readily obtainable. (ECF No. 396 at 9).

Plaintiffs further claim that the information is irrelevant. According to Plaintiffs, the issue of whether any given child was harmed or justifiably institutionalized has no bearing on this certified class action lawsuit in which Plaintiffs allege that all foster children are at risk of harm due to Defendants' policies and practices. (*Id*.). However, that statement in response to the motion to compel directly contradicts Plaintiffs' representations in the meet and confer communications with Defendants. Plaintiffs outright refused to stipulate that they would not use information pertaining to the named Plaintiffs in this case because specific information regarding the named Plaintiffs is "relevant to and exemplars of Plaintiffs' class-wide claims." (ECF No. 422-1 at 2, 3). At a minimum, documents concerning the educational services that the named Plaintiffs received while in DHHR custody and communications with their schools might contain information regarding Plaintiffs' well-being during the relevant period, which can reflect on the alleged psychological injuries that they attribute to Defendants. The Court agrees

15

that highly specific information regarding each individual Plaintiff is not necessarily the best or only evidence of the class-wide claims. However, in Plaintiffs' own words, the named Plaintiffs' specific experiences are exemplars of other foster children in the Class and Sub-Class. Plaintiffs might use this information to prove their claims. Thus, Defendants are entitled to conduct discovery to defend against it.

For those reasons, Plaintiffs are **ORDERED** to respond to Requests for Production of Documents Nos. 4 and 5 the discovery requests within **thirty (30) days**.

### C. *Defendants' Request for Production of Documents No. 7*

The final discovery request in dispute concerns the named Plaintiffs' court records.

**Request for Production No. 7:** [For the period of July 1, 2019 to the present,] [a]ll documents filed in any court concerning any of the Named Plaintiffs (excluding documents filed in this lawsuit).

**Plaintiffs' Response:** Plaintiffs object to this request because it requests the production of documents which are in Defendants' possession or are readily obtainable by Defendants, and are not currently in Plaintiffs' possession, and, therefore, cannot be produced. *See supra*, Plaintiffs' Resp. No. 1. Indeed, at all times in which Named Plaintiffs were in the legal custody of DHHR, DHHR would have either been a party to court proceedings or had access to documents filed in court proceedings as the legal custodian of Named Plaintiffs.

Plaintiffs further object to the extent that this request seeks production of documents concerning interaction with the judicial system at times in which any of the Named Plaintiffs were not in the legal custody of DHHR on the grounds that discovery of this nature is overly broad, not proportional to the needs of the case, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.

Notwithstanding the foregoing objections, Plaintiffs produce the following documents:

• P00962 - P01228

(ECF Nos. 380-1 at 4-5, 380-4 at 7).

Defendants argue that court records concerning the named Plaintiffs are relevant

to show their "life experiences, behaviors, and time in foster care, among other things." (ECF No. 380 at 14). For example, Defendants argue that a record that a plaintiff was charged with a crime as an adult could indicate that the plaintiff was justifiably placed in residential treatment as a juvenile in DHHR's custody. (*Id.* at 15). According to Defendants, while DHHR might have some abuse-and-neglect or juvenile justice records, it does not have all responsive documents. (*Id.*).

The Court is satisfied that records that concern the named Plaintiffs might contain information that is relevant to the parties' claims or defenses, such as evidence that Plaintiffs were (or were not) shuffled around to different placements, unjustifiably institutionalized, or overlooked while in DHHR care. Furthermore, records preceding or following when Plaintiffs were in the State's custody would reflect on whether the alleged injuries are attributable to Defendants or other causes. While the information might have limited probative value or might ultimately be deemed inadmissible, those concerns do not define whether the information in discoverable. As stated, relevancy for the purpose of discovery is broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party. *Becton, Dickinson & Co. v. BioMedomics, Inc.*, 2021 WL 3864476, at *3.

Plaintiffs fail to satisfy their obligation resisting discovery of this information for the same reasons previously expressed. They object that the records are not in their possession, and they cannot produce them. However, Rule 34 of the Federal Rules of Civil Procedure is not limited to documents in a party's possession. Fed. R. Civ. P. 34(a)(1) (stating that a party must also produce records in its custody or control). Plaintiffs adduced no argument that they are unable to obtain their own court records. Rather, they claim that it would be unduly burdensome for them to recall this information and, in some

17

cases, petition to unseal juvenile records. (ECF No. 396 at 10-11).

Plaintiffs never asserted a burdensomeness objection in response to this discovery request, and they do not properly support it now. They do not offer any specific information or affidavits concerning the supposed burden in producing this relevant information. From a proportionality standpoint, this request seeks court filings related to only eleven individuals for a period dating back less than five years. This is not an overly broad, disproportionate discovery request in this class action.

For those reasons, Plaintiffs are **ORDERED** to respond to the discovery request within **thirty (30) days**. However, upon balancing the relevance of the information and proportionality to the needs of the case, the Court limits Plaintiffs' production to cases in which the named Plaintiffs were a party given that the term "concerning" is ambiguous.

The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented party.

**ENTERED:** January 16, 2024

_____
Cheryl A. Eifert
United States Magistrate Judge