UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | |
|---|---|
| **Jonathan R., minor, by Next Friend, Sarah DIXON**, *et al.*, | )<br>)<br>)<br>) |
| Plaintiffs, | )  Class Action<br>)  3:19-cv-00710 |
| v. | )<br>) |
| **Jim JUSTICE, in his official capacity as the Governor of West Virginia**, *et al.*, | )<br>)<br>)<br>) |
| Defendants. | ) |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR MODIFICATION OF SCHEDULING ORDER DEADLINES

Pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure and Rule 16.1(f) of the Local Rules of Civil Procedure, Plaintiffs hereby request an extension of all discovery, motion, and conference Scheduling Order deadlines. Good cause exists for an extension of these deadlines because Defendants' discovery delays and misstatements have rendered Plaintiffs' compliance with the current deadlines impossible, despite Plaintiffs' diligent efforts to comply. Plaintiffs' proposed amended deadlines do not alter the Court's current deadlines for Plaintiffs' draft pre-trial order, the joint pre-trial order, or proposed findings of fact and would not delay trial. Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Modification of Scheduling Order Deadlines ("the Motion").

### BACKGROUND

Two motions for sanctions related to Defendants' discovery deficiencies and dilatory tactics are pending before this Court. *See* ECF No. 377 (seeking sanctions for Defendants'

1

spoliation of electronically-stored information); ECF No. 467 (seeking sanctions for Defendants' failure to timely supplement discovery necessary for Plaintiffs' experts' report). Despite Defendants' conduct, Plaintiffs have worked diligently and have compromised with Defendants where possible to meet all Court-ordered deadlines and to avoid requesting deadline extensions. Defendants' eleventh-hour production of thousands of unorganized documents that Plaintiffs' experts need for their expert report, however, has necessitated Plaintiffs' reluctant filing of this Motion.

By way of background, on August 17, 2023, Plaintiffs served their Tenth Request for Production ("RFP") requesting the case files of 105 randomly-selected foster children. *See* Ex. A to Lowry Decl. in Support of Pls. Motion for Sanctions ("Lowry Decl. Sanctions"), ECF No. 471-1. Defendants responded on September 15, 2023 and agreed to produce the case files with some caveats. *See* Ex. B to Lowry Decl. Sanctions, ECF No. 471-2. Plaintiffs requested the 105 case files to facilitate their experts' report, which would be based on an analysis of those files. Mar. 18, 2024 Declaration of Marcia Lowry ("Lowry Decl.") ¶ 2. The intention was that in reviewing the files, Plaintiffs' experts would gain insight into the lived experiences of children who have been in the Department of Human Services' ("DoHS") custody in the last several years and could provide their observations and conclusions about those experiences to the Court. *Id.*

Having not received any case files from Defendants, on October 13, 2023, Plaintiffs asked Defendants to produce the files by November 17, 2023. *See* Ex. C to Lowry Decl. Sanctions, ECF No. 471-3. On October 20, 2023, Defendants responded in a letter, stating that they were "working diligently and hope to have production complete by November 17, 2023." *See* Ex. D to Lowry Decl. Sanctions, ECF No. 471-4. Based in part on Defendants' representation, on October 25,

2023, Plaintiffs requested an extension of their expert disclosure deadline from December 14, 2023 to January 22, 2024. *See* ECF No. 379. The motion was granted unopposed. ECF No. 390.

Rather than completing production by November 17, however, Defendants *began* production on that date. On November 17, Defendants produced 36 of the 105 case files that Plaintiffs requested. *See* Ex. E to Lowry Decl. Sanctions at 2, ECF No. 471-5. On December 1 and December 7, 2023, Defendants produced several additional case files and many documents that Defendants later told Plaintiffs were produced by mistake. *See id.*; *see also* Exs. K & N to Lowry Decl. Sanctions, ECF Nos. 471-11, 471-14. On December 13, 2023, Defendants produced additional case files as well as documents that belonged in case files that had already been produced. *See* Ex. E to Lowry Decl. Sanctions at 2. On December 18, 2023, Defendants produced additional case files. *See id.* Across all Defendants' productions, the documents were not labeled in an organized or consistent manner, were not in chronological order, and were not grouped by category of document. Extensive resources were and are required, therefore, for Plaintiffs to organize and review these documents. Lowry Decl. Sanctions ¶¶ 2-3, ECF No. 471.

In a letter dated December 18, 2023, Plaintiffs informed Defendants that "[t]he piecemeal production of case files on different dates has made it impossible to review the case files and to understand deficiencies where the case files are separated and incomplete." Ex. E to Lowry Decl. Sanctions at 2. On December 19, 2023, Defendants wrote to "confirm that they have produced all responsive case file documents for all 105 foster children requested by Plaintiffs, subject to the limitations described in Defendants' Responses to Plaintiffs' 10th Set of Requests for Production." Ex. F to Lowry Decl. Sanctions at 2, ECF No. 471-6.

On December 20, 2023, Defendants informed Plaintiffs that there was a "batch of case file documents for 9 of the 105 sampled foster children that we thought had been produced on Monday,

3

but were inadvertently not processed. The last remaining batch will be produced today or tomorrow morning, at which point Defendants' case file production will be complete." Ex. G to Lowry Decl. Sanctions at 1, ECF No. 471-7.

At that point, Plaintiffs had one month until their experts' report was due and Defendants had yet to produce completed case files despite prior assurances that they had done so. As a result, Plaintiffs requested an extension of Plaintiffs' expert disclosure deadline from January 22, 2024 to March 22, 2024. *See* ECF No. 420. In the motion, filed on December 26, 2023, Plaintiffs informed the Court that the case files were necessary for Plaintiffs' experts' report: "Plaintiffs need to provide these case files to their expert with sufficient time to analyze them and issue a report. . . . Defendants' delays have left Plaintiffs with only one month (of which one week is the week of Christmas) between the completion of production and the exchange of expert reports." ECF No. 420. The Court granted Plaintiffs' motion unopposed and set March 22, 2024 as the deadline for Plaintiffs' experts' report. ECF No. 421.

On January 19, 2024, Plaintiffs emailed Defendants asking to understand how the case files were collected because "Plaintiffs discovered while reviewing the full case files produced that many of them still do not have [] basic documents, such as intake assessments, child abuse and neglect reports, information about placements, and case plans." Ex. H to Lowry Decl. Sanctions at 1, ECF No. 471-8.

On January 22, 2024, the parties conferred and Defendants again confirmed that case file production was complete. They assured Plaintiffs that subject to their prior caveats, all case file documents and information contained in the PATH and FACTS systems had been extracted and produced. Lowry Decl. Sanctions ¶ 4. Defendants also stated that although they were not collecting hard-copy documents from caseworkers or taking screenshots of information contained in PATH

4

or FACTS, they believed that any information contained in the hard-copy files and screenshots would be largely duplicative of what had been produced. Lowry Decl. Sanctions ¶ 4.

On January 26, 2024, Defendants sent Plaintiffs a letter stating that their production of case files was in fact incomplete and that "one of the many fields to be extracted from PATH was inadvertently excluded from the vendor's extraction." Ex. I to Lowry Decl. Sanctions at 4, ECF No. 471-9.

On February 2, 2024, Defendants sent Plaintiffs another email stating that "counsel became aware that several additional fields were also inadvertently excluded from the PATH extracts" and that "due to a technical bug in the launch of PATH, some case plans were not uploaded to PATH in 2023." Ex. J to Lowry Decl. Sanctions at 1, ECF No. 471-10. Defendants wrote:

> As we mentioned in our letter dated January 26, last week Defendants discovered that one of the many fields to be extracted from PATH was inadvertently excluded from the vendor's extraction; Defendants are producing that missing field today. This week, Defendants' counsel became aware that several additional fields were also inadvertently excluded from the PATH extracts; we will supplement our production next week to include these additional fields. Defendants' counsel also became aware this week that, due to a technical bug in the launch of PATH, some case plans were not uploaded to PATH in 2023, and therefore some of the sampled case files produced are missing case plans. Defendants are working on gathering hard copies of those case plans from the caseworkers, and Defendants expect to supplement their productions to add these case plans by February 15.

*Id.*

On February 5, 2024, the parties conferred again and Plaintiffs informed Defendants that they believed that the case files produced thus far were deficient—notwithstanding the documents that Defendants had yet to produce—and did not contain all the documents that Defendants agreed to produce. Lowry Decl. Sanctions ¶ 5. Defendants stated that other than the information noted in their February 2 email, the case files were complete. *Id.*

5

As a follow up to the conferral, on February 6, 2024, Plaintiffs sent Defendants the names of three children whose case files Plaintiffs believed were deficient. Lowry Decl. Sanctions ¶¶ 6-7. Defendants responded on February 9 and stated that they reviewed the three files and confirmed that two of them contained the "full set of documents from FACTS and PATH" but that one case file should not have been included as a sample file as it was not responsive to the RFP. *See* Ex. K to Lowry Decl. Sanctions at 1, ECF No. 471-11. Defendants stated: "Based on our preliminary investigation, it appears that [the child's] inclusion in the sample was caused by a data entry error (his exit date was not entered into the system, so it looks like he was still in custody)." *Id.*

At this juncture, Plaintiffs had already spent many hours organizing the files that Defendants had produced and providing them to their experts. *See* Lowry Decl. Sanctions ¶¶ 2-3, 8. Plaintiffs' experts, in turn, had spent many hours analyzing the files only to be repeatedly informed that the files were incomplete or in some cases, irrelevant because they were incorrectly included in the production. *See id.*

One week later, on February 14, 2024, Defendants sent Plaintiffs an email stating that the files were in fact not complete, and that additional information had been excluded:

> On further review of the case file productions in response to questions from Plaintiffs' counsel, Defendants have discovered missing information from the case file productions that we believe was in PATH but was not extracted. For example, it appears that the electronic pull missed the family functioning assessments and safety plans for many cases. Given this, Defendants will be collecting and producing additional case file documents through a manual process over the coming weeks. We are devoting significant resources to do this quickly, and therefore expect to largely complete this supplemental production by February 29, but it is hard to predict the exact end date and it is likely that some documents may come in after February 29.

Ex. L to Lowry Decl. Sanctions at 1, ECF No. 471-12.

On February 16, 2024, Plaintiffs requested that Defendants produce all documents no later than February 26. *See* Ex. M to Lowry Decl. Sanctions at 3, ECF No. 471-13. On February 20,

6

Defendants denied Plaintiffs request and stated that they would agree to produce all documents by March 11 and would agree to a one-week extension of Plaintiffs' experts' report deadline from March 22 to March 29, 2024. *See id.* at 1. During a conferral that same day, Plaintiffs asked Defendants whether they could agree to produce 50% of the case files by February 26 and another 50% by March 11. Plaintiffs also asked whether the forthcoming productions would be de-duplicated to ensure that Plaintiffs were not being given records that they had already received. Lowry Decl. Sanctions ¶¶ 10, 12. Up until that point, Defendants had produced approximately 12,000 documents in response to the Tenth RFP, which were not labeled, categorized, or in chronological order, and Plaintiffs explained that it would be overly burdensome, and nearly impossible, for Plaintiffs to determine whether newly received documents were duplicates of documents already received. Lowry Decl. Sanctions ¶¶ 8, 12.

Defendants responded on February 21, 2024 that they would agree to produce 25% of the case files by March 4 and the remainder of the case files by March 11—less than two weeks before Plaintiffs' expert report deadline. *See* Ex. N to Lowry Decl. Sanctions at 4-5, ECF No. 471-14. With regard to de-duplication, Defendants stated that they believed that they could de-duplicate some documents, but that "the extent to which that de-duplication works will depend on the specific metadata in each document, so we cannot know how successful de-duplication will be until we actually run the productions." *Id.* at 5. Defendants also added that two case files had been incorrectly produced and needed to be replaced. *Id.*

Plaintiffs could not agree to Defendants' proposed production timeline as it would not give Plaintiffs and their experts nearly enough time to review the recently produced and forthcoming documents, the number of which Plaintiffs did not know at that time. *See id.* at 1, 3.

7

On February 2, 2024, Defendants produced 151 case file documents. Lowry Decl. ¶ 3. On February 9, Defendants produced 50 documents. *Id.* On February 13, Defendants produced 302 documents. *Id.* On February 16, Defendants produced 18 documents. *Id.* On February 23, Defendants produced 6,738 documents. *Id.*

Upon receiving those productions, Plaintiffs realized that neither Plaintiffs' counsel nor Plaintiffs' experts could review and organize the thousands of documents Defendants produced by the expert disclosure deadline of March 22. Moreover, even if organizing the documents was possible, Plaintiffs' experts could not review and analyze them by March 22. *See* Lowry Decl. ¶ 4. To address these deadline concerns, as well as concerns over fees and costs, and in an attempt to avoid requesting a deadline extension, Plaintiffs filed a motion for sanctions on February 28, requesting, among other things, that the Court preclude Defendants from using case file documents produced after February 23 as evidence to support a motion, at hearing, or at trial. *See* ECF No. 467.

Since February 23, Defendants have produced tens of thousands of case file documents to Plaintiffs. On February 26, Defendants produced 423 documents. Lowry Decl. ¶ 3. On February 27, Defendants produced 2,557 documents. *Id.* On March 1, Defendants produced 17,923 documents. *Id.* On March 4, Defendants produced 16,377 documents. *Id.* On March 11, Defendants produced 2,344 documents. *Id.*

Defendants informed Plaintiffs that at least 12,281 documents were duplicates and that they could not remove these duplicates from the productions, placing the burden of de-duplication on Plaintiffs. *See* Ex. A at 8-9[1]; Lowry Decl. ¶ 7.

---

[1] All exhibits are attached to the Lowry Decl.

The approximately 46,892 documents produced since February 2 were in no particular order and were not organized by document type or by child such that Plaintiffs had no way of determining which document belonged in which child's case file without manually reviewing each piece of paper. *See* Lowry. Decl. ¶ 5. As of March 13, Plaintiffs are able to reference a spreadsheet that Defendants produced on that date that shows document bates stamp numbers and the corresponding child's name. *Id.*

Amid these document productions, on February 28, 2024, Defendants informed Plaintiffs that three additional children were incorrectly included in the prior productions and that their case files had to be replaced. *See* Ex. B.

Defendants filed their opposition to Plaintiffs' motion for sanctions on March 13. *See* ECF No. 479. Given that Plaintiffs' motion for sanctions is pending and Defendants will not agree to the February 23 cut-off date requested therein, Plaintiffs are wary of filing an expert report on March 22 that does not consider all case files that have been produced. Moreover, Plaintiffs' experts are unable to produce a report by March 22 that considers even those files produced through February 23 given the disorganization and piecemeal nature of the February 2024 productions and Defendants' continued revelations that items are missing or incorrect. *See* Lowry. Decl. ¶ 6. To assist in the organization and transmission of these files to Plaintiffs' experts, Plaintiffs' counsel has hired six temporary employees who will each spend 80 hours over the next two weeks organizing and labeling these files. Despite these efforts, and those that have been ongoing, Plaintiffs' experts are unable to complete their analysis and report by March 22. *Id.*

Plaintiffs do not know exactly how long it will take Plaintiffs and their experts to review the case files. Such review and analysis depends, in large part, on whether documents produced after February 23 are included in the review. Plaintiffs, however, are cognizant of the current expert

9

disclosure deadline. To address these concerns, Plaintiffs file the present Motion for a modification of Scheduling Order deadlines.[2] Plaintiffs propose the following amended deadlines:

|  | Current Deadline | Proposed Deadline |
|---|---|---|
| Expert Disclosure for Party with Burden of Proof for all Experts other than Case Review Experts | March 22, 2024 | April 30, 2024 |
| Expert Disclosure for Party with Burden of Proof for Case Review Expert | March 22, 2024 | May 15, 2024 |
| Expert Disclosure by Opposing Party | April 22, 2024 | May 22, 2024 |
| Expert Disclosure for Rebuttal | May 8, 2024 | June 7, 2024 |
| Close of Discovery | May 15, 2024 | June 14, 2024 |
| Filing of Dispositive Motions | May 17, 2024 | June 17, 2024 |
| Response to Dispositive Motions | June 7, 2024 | July 8, 2024 |
| Reply to Dispositive Motions | June 14, 2024 | July 15, 2024 |
| Settlement meeting | July 5, 2024 | July 31, 2024 |
| Plaintiffs' Draft-Pretrial Order | August 12, 2024 | August 12, 2024 |
| Filing of Motions in Limine | August 16, 2024 | August 30, 2024 |
| Responses to Motions in Limine | August 20, 2024 | September 4, 2024 |
| Integrated Pre-trial Order by Defendants | August 19, 2024 | August 19, 2024 |
| Pretrial Conference | August 22, 2024 | September 6, 2024 |
| Proposed Finding of Fact | September 16, 2024 | September 16, 2024 |
| Trial | September 24, 2024 | September 24, 2024 |

In March 2024, the parties conferred over email regarding the above-requested modifications to the Scheduling Order. *See* Ex. A. Defendants proposed enlarging Plaintiffs' expert disclosure deadline to May 15, 2024 and extending all other deadlines such that the trial date would be changed from September 24, 2024 to November 4, 2024. *See id.* at 4-5. Because trial should not be further delayed, Plaintiffs could not agree to Defendants' proposed schedule, *see id.* at 1, 3, and instead request that the Court impose the above-requested amended deadlines.

---

[2] Notwithstanding, Plaintiffs' maintain that the Court should grant Plaintiffs' motion for sanctions for Defendants' failure to timely supplement case file productions. *See* ECF No. 467.

**LEGAL STANDARD**

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also* L. R. Civ. P. 16.1(f) ("Time limits in the scheduling order for the . . . filing of motions, and completion of discovery, and dates for conferences before trial, a final pretrial conference, and trial may be modified for good cause by order."). "'[T]he touchstone of that good cause requirement is diligence' in the plaintiff's efforts to comply with the Scheduling Order." *Doe v. Marshall Univ. Bd. of Governors*, 2023 U.S. Dist. LEXIS 124264, at *5 (S.D. W.V. July 19, 2023) (quoting *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 152 (4th Cir. 2020) (citations omitted)). "While other factors warrant consideration, including danger of prejudice to the non-moving party, the length of delay and its potential impact on the judicial proceedings, the reason for the delay, and whether the movant acted in good faith, diligence is the hallmark of the Rule 16(b)(4) good cause standard." *Hunt v. Brooks Run Mining Co., LLC*, 51 F. Supp. 3d 627, 636 (S.D. W.V. 2014) (citation omitted).

**ARGUMENT**

**I.    Plaintiffs Have Worked Diligently to Comply with the Scheduling Order**

Throughout this case, Plaintiffs have worked diligently to comply with the Court's Scheduling Order. When Plaintiffs served their Tenth RFP in August 2023, they believed that were Defendants to produce the requested documents in a timely and an organized manner, Plaintiffs' experts would have time to review them and write their report by December 15.

When, as of mid-October, Defendants had yet to produce a case file, Plaintiffs contacted Defendants to check on the status of production. Plaintiffs have made similar efforts over the past

five months, maintaining communication with Defendants, conferring on the case file production and deficiencies, and asking that Defendants produce documents by specific dates. *See W. Va. Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D. W.V. 2001) (finding good cause to modify scheduling order where "Plaintiff diligently sought documents which, for whatever reason, were not provided until" much later).

As soon as Defendants confirmed that they hoped to finish production by November 17, Plaintiffs timely requested a deadline extension to January 22, 2024 for their experts' report.

Defendants did not *begin* producing case files until November 17 and the next batch of case files was not produced until December. As Plaintiffs and their experts began to review and organize the files, they realized that the files were in utter disarray and that it would take longer than anticipated merely to determine which documents belonged in which child's file and organize them accordingly. Documents were not labeled, were produced in no particular order, and were not grouped by file type or document type. On December 18, Plaintiffs informed Defendants that "[t]he piecemeal production of case files on different dates has made it impossible to review the case files and to understand deficiencies where the case files are separated and incomplete." Ex. E to Lowry Decl. Sanctions at 2.

On December 19, Defendants stated that production was complete only to inform Plaintiffs the next day that nine case files were in fact incomplete. Given the unorganized state of the documents and that four months after Plaintiffs served their RFP, production remained unfinished, Plaintiffs timely requested a deadline extension to March 22, 2024 for their experts' report.

As Plaintiffs' experts continued to review the case files, it became apparent that important documents were missing from many of the files, such as intake assessments, child abuse and neglect reports, information about placements, and case plans. Plaintiffs were diligent in

communicating this concern to Defendants in writing on January 19, during a conferral on January 22, and again during a conferral on February 5. Moreover, Plaintiffs went so far as to provide Defendants with the names of three children whose files Plaintiffs believed were incomplete so that Defendants could better understand Plaintiffs' concerns.

Throughout this time, a pattern emerged. Plaintiffs would raise concerns about the case files, and Defendants would reassure Plaintiffs that they were complete. Later, Defendants would inform Plaintiffs that their production was in fact incomplete due to some particular deficiency and that production would be complete once that deficiency was cured. This pattern continued throughout the end of January and middle of February. Each time, Plaintiffs relied on Defendants' representation that production was or would soon be complete and believed that if that were the case, they could still meet the March 22 expert disclosure deadline.

On February 14, Defendants again revealed to Plaintiffs that information was missing from the case file productions. This time, however, Defendants stated that a large number of documents had been omitted and that they hoped to produce most of them by February 29, but may not be able to do so. Plaintiffs tried to reach an agreement with Defendants on the timeline for production and a cut-off date after which neither party would use documents produced such that Plaintiffs could still meet their expert disclosure deadline. Defendants would not agree to Plaintiffs' proposals.

Accordingly, instead of requesting another deadline extension, Plaintiffs filed a motion for sanctions on February 28. If the motion were granted, Defendants would be precluded from using documents produced after February 23 and Plaintiffs might still meet the March 22 deadline.

Since the filing of Plaintiffs' motion for sanctions, Defendants produced 39,624 additional documents. All these files are unorganized and in no particular order, chronological or otherwise.

It will take Plaintiffs substantial time and resources to organize the files so that their experts can review them. Plaintiffs' counsel has hired six temporary employees who will each spend 80 hours over the next two weeks organizing and labeling these files. Given the massive eleventh-hour production, however, and that Plaintiffs' motion for sanctions remained pending, Plaintiffs knew that a deadline extension would be necessary. Plaintiffs tried to negotiate proposed amended deadlines with Defendants in March, but the parties were unable to agree. Plaintiffs, therefore, timely filed this Motion on March 18, 2024, requesting an extension of Plaintiffs' expert disclosure deadline as well as other deadlines that would be affected. Plaintiffs have thus acted diligently in trying to comply with the Court's Scheduling Order and file this Motion because despite their diligence, Plaintiffs are unable to meet the current deadline.

## II.    All Other Factors Weigh in Favor of Granting Plaintiffs' Motion

Pursuant to the parties' discussions, Defendants agreed that Plaintiffs' expert disclosure deadline should be extended to May 15, 2024. Defendants, therefore, cannot be prejudiced by the imposition of a deadline that they have agreed to. Moreover, Plaintiffs are requesting an even shorter deadline—April 30, 2024—for expert disclosures that are not based on the case files.[3]

While Defendants agree with modifying certain deadlines, including those pertaining to expert discovery, Defendants wish to amend all deadlines, including the trial date. Defendants' new proposed trial date would be over four months from the date originally scheduled by the Court. ECF No. 329. Given that this case has been pending since 2019 and the need to obtain relief for

---

[3] Plaintiffs are requesting a deadline extension to April 30, 2024 for Plaintiffs' other expert disclosures. Plaintiffs have another expert witness whose report will be based on visits to multiple West Virginia facilities where DoHS places foster children. Lowry Decl. ¶ 8. The parties have been working together to coordinate these visits on dates that are convenient for both counsel and the expert, and the visits will take place this week. *Id.* Plaintiffs' expert will require time to incorporate any relevant information into their report. *Id.* Defendants have not agreed to a visit to one facility, the West Virginia Children's Home, and Plaintiffs will move to compel an inspection of this site if the parties cannot reach an agreement. *Id.*

14

children who continue to suffer in foster care, Plaintiffs do not wish to prolong the resolution of this matter. Moreover, Defendants' proposed trial date would push the trial

Moreover, Defendants have been aware since the beginning that the manner in which they were producing documents and the disorganized nature of those documents would likely require an extension of Plaintiffs' expert disclosure deadline. And in fact, Plaintiffs requested two such extensions prior to filing this Motion. Defendants, therefore, can be neither surprised nor prejudiced by Plaintiffs' request for a deadline extension. *See, e.g.*, *Doe*, 2023 U.S. Dist. LEXIS 124264, at *5 (finding good cause existed to modify scheduling order where plaintiff acted diligently and there would be no "undue hardship or unfair prejudice" to defendants). Defendants conduct has precipitated the filing of this Motion, despite Plaintiffs' good faith effort to comply with the Scheduling Order and to reach an agreement with Defendants that would have allowed for the parties to file this Motion jointly.

In proposing the above-requested deadlines, Plaintiffs have considered all future deadlines that may be affected by an extension of the deadline for Plaintiffs' expert disclosures and have requested enlargement of those deadlines as well. Plaintiffs believe that the requested amended deadlines are manageable and will allow the parties to proceed to trial as previously scheduled. Accordingly, Defendants will suffer no prejudice were the Court to grant Plaintiffs' Motion and the proceedings in this matter will not be unnecessarily delayed. Moreover, Plaintiffs file this Motion timely, before the expiration of the deadlines that Plaintiffs seek to have amended.

## CONCLUSION

Pursuant to the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Modification of Scheduling Order Deadlines.

Dated: March 18, 2024

Respectfully submitted,

/s/ *Marcia Robinson Lowry*_____
Marcia R. Lowry, *admitted pro hac vice*
Julia K. Tebor, *admitted pro hac vice*
Lindsay Gus, *admitted pro hac vice*
Laura Welikson, *admitted pro hac vice*
A Better Childhood
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel.: (646) 795-4456
Fax: (212) 692-0415
mlowry@abetterchildhood.org
jtebor@abetterchildhood.org
lgus@abetterchildhood.org
lwelikson@abetterchildhood.org

*/s/ Richard W. Walters*_____
Shaffer & Shaffer, PLLC
Richard W. Walters, WVSB #6809
rwalters@shafferlaw.net
J. Alexander Meade, WVSB #13021
ameade@shafferlaw.net
2116 Kanawha Boulevard, East
P.O. Box 3973
Charleston, WV 25339
Tel: (304) 244-8716
Fax: (304) 344-1481

/s/ *J. Marty Mazezka*_____
Disability Rights of West Virginia
J. Marty Mazezka, WVSB #4572
jmazezka@drofwv.org
5088 Washington St. W., Suite 300
Charleston, WV 25301
Tel: (304) 346-0847
Fax: (304) 346-0687

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA
# HUNTINGTON DIVISION

| | | |
|---|---|---|
| **Jonathan R., minor, by Next Friend, Sarah DIXON, *et al.*,** | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Class Action 3:19-cv-00710 |
| v. | ) ) | |
| **Jim JUSTICE, in his official capacity as the Governor of West Virginia, *et al.*,** | ) ) ) ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I, J. Alexander Meade, counsel for Plaintiffs, hereby certify that I have this 18th day of March, 2024, served a true copy of the foregoing, "**Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Modification of Scheduling Order Deadlines**" by via electronic filing with the Clerk of the Court using the CM/ECF system or via electronic transmission, addressed follows:

Philip J. Peisch, Esquire
Caroline M. Brown, Esquire
Julia Siegenberg, Esquire
Rebecca Wolfe, Esquire
Brown & Peisch PLLC
1233 20th Street NW, Suite 505
Washington, DC 20001

Steven R. Compton, Esquire
West Virginia Attorney General's Office
812 Quarrier Street, 2nd Floor
Charleston, WV 25301

*/s/ J. Alexander Meade*
J. Alexander Meade, WVSB #13021