IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JONATHAN R., *et al.*,

      **Plaintiffs,**

v.                                                                          Case No.:  3:19-cv-00710

JIM JUSTICE, *et al.*,

      **Defendants.**


**MEMORANDUM OPINION AND ORDER[1]**

Pending before the court is Plaintiffs' Motion for Sanctions. (ECF No. 377). For the reasons that follow, the court **GRANTS, in part,** and **DENIES, in part,** the motion.

## I.  <u>Relevant Facts and Procedural History</u>

### *A. Complaint*

On September 30, 2019, twelve current and former West Virginia foster children filed a putative class action complaint against Jim Justice, in his official capacity as Governor of West Virginia; West Virginia Department of Health and Human Resources ("DHHR"); and other state officials in their official capacities, who were responsible for administering West Virginia's foster care system, including, as relevant to this

---

[1] An order disposing of a Rule 37 motion for sanctions is "undoubtedly a nondispositive matter." *Kebe ex rel. K.J. v. Brown*, 91 Fed. Appx. 823, 827 (4th Cir. 2004). As Plaintiffs have not requested, nor were granted a dispositive sanction, the undersigned is authorized to rule on the motion under 28 U.S.C. § 636 and the Standing Order of this Court. *Gov't Emps. Health Ass'n v. Actelion Pharms. Ltd.*, 343 F.R.D. 474, 476, n. 1 (D. Md. 2023); also *Packrite, LLC v. Graphic Packaging Int'l, LLC*, No. 1:17CV1019, 2020 WL 7133806, at *1, n. 1 (M.D.N.C. Dec. 4, 2020), *report and recommendation adopted,* No. 1:17CV1019, 2021 WL 9681472 (M.D.N.C. Jan. 6, 2021).

motion: (1) Bill Crouch, Cabinet Secretary of DHHR ("Crouch") and (2) Linda Watts, Commissioner of the Bureau for Children and Families[2] ("Watts"). (ECF No. 1 at 1, 6).

Plaintiffs allege that Defendants' system-wide foster care policies and practices expose them to a substantial risk of harm in violation of their substantive due process rights under the Fourteenth Amendment to the United States Constitution. (ECF No. 351 at 10). They seek injunctive and declaratory relief, but no monetary damages, in this lawsuit. (*Id.* at 39).

### B. Class Certification

The Court certified a General Class consisting of all foster children who are or will be in the custody of DHHR or its successor agency. (*Id.* at 45). The Court also certified an ADA Subclass, which includes all members of the General Class who have physical, intellectual, cognitive, or mental health disabilities, as defined by federal law. (*Id.* at 46). In certifying the class action, the Court narrowed the lawsuit to three common claims relating to the General Class and one common claim of the ADA Subclass. The General Class alleges that Defendants' inadequate array of appropriate placements, lack of appropriate case planning, and high caseloads and chronic understaffing expose them to a substantial risk of harm. (*Id.* at 10). The common claim of the ADA Subclass focuses on the provision of community-based treatment.

### C. Litigation Hold

On December 4, 2019, DHHR's General Counsel, April Robertson ("Robertson"), sent a "Litigation Hold" letter in a group email that included eight DHHR employees, including, as relevant to this motion: (1) Crouch; (2) Tanny

---

[2] The West Virginia Bureau for Children and Families is the subdivision of DHHR that oversees the foster care and adoption processes. (ECF No. 377-6 at 2).

O'Connell, Deputy Commissioner of the Bureau for Children and Families ("O'Connell"); and (3) Watts. (ECF No. 399-1 at 9; ECF No. 402-2 at 23). The group email was also sent to Shaun Charles, DHHR's Chief Information Officer ("Charles"), and Chris Avis, Cyber Security Operations Analyst, West Virginia Office of Technology ("OT"). (*Id.*).

In the letter, Robertson stated:

DHHR faces a broad legal challenge to how it manages West Virginia's foster care program, in a case before the U.S. District Court for the Southern District of West Virginia called *Jonathan R. v. Justice, et al.* Plaintiffs currently represent the interests of 12 foster children, and counsel seeks to certify a class of all current and future children in DHHR custody.

As a result of this litigation, DHHR has a legal duty to preserve, and you and the DHHR employees and contractors under your supervision should preserve and maintain, all documents regarding DHHR's management of the foster care program, including documents related to: the kinship program; residential placements; transition planning for individuals aging out of foster care; services for children with serious mental or behavioral disorders; foster home recruitment and certification; the development of case plans and permanency plans; the appointment of counsel and other representatives; case worker training and case load levels; and case files of, and any other information relating to, individual children in DHHR custody.

The duty to preserve includes all paper information, electronically stored information, audio recordings, video recordings, tangible items (written, audio, video, photographs, or other), and other potential information that is or may be relevant to the lawsuit. This includes preservation of items, including, but not limited to the following: (1) e-mail and attachments; (2) text messages and attachments; (3) social media postings; (4) any items maintained on a computer hard drive; (5) any tangible items maintained using any resources provided by DHHR; (6) any tangible items maintained on your personal computer, personal cellular phone, personal e-mail, personal notes, or otherwise stored on non-business sources that may be relevant to this lawsuit; (7) word processing documents; (8) notes; (9) electronic and non-electronic calendars, diaries, or tasks; (10) databases; (11) time cards and payroll items; (12) voicemail messages; (13) personnel folders, leave information, benefits information, and other employment-related information; (14) policies and procedures; and (15) any computer

equipment used by any current or former employee that is in your possession, which may contain information that may be relevant to the lawsuit.

Please note that the above-noted lists **ARE NOT ALL-INCLUSIVE** and err on the side of preservation regarding ANY information that may be relevant to the present lawsuit.

You are to **IMMEDIATELY** preserve and retain all potentially relevant evidence. You are further directed to ensure that any and all persons who you believe may have information regarding this matter maintain that information in its current form to preserve and retain all potentially relevant evidence.

Any person subject to this litigation hold **MUST NOT** alter, delete, destroy, or otherwise modify any tangible items (written, audio, video, computer information, photographs, or otherwise) that may be relevant to the lawsuit until this litigation has concluded. Your obligation to preserve extends to all potentially relevant items in your personal possession, control, or custody, ***including items in possession or custody of employees who report to you or those in custody of third parties.***

Please also ensure that should items be maintained on your computer desktop, cellular phone, or other medium wherein there is a potential that the medium containing these items could be damaged, which could potentially result in the destruction of relevant evidence, that you are directed to ensure that an exact copy of the information is maintained and preserved by a separate source.

The Department takes this preservation directive very seriously. The litigation hold overrides any routine retention or destruction policies that you currently follow.

**This litigation hold SUPERSEDES any and all other formal or informal record retention policies, destruction policies, and business practices regarding destruction of information until this litigation has concluded. If there is a formal or informal document retention policy, destruction policy, or other business practice regarding the destruction of information, you are directed to SUSPEND any and all policies until litigation has concluded.**

Upon receipt and review of the attached letter, please sign the attached Acknowledgement and return to me promptly via e-mail. **<u>If you know of employees who have information and they are not specifically named in this memorandum, please discuss this</u>**

4

**litigation hold with them and have them execute the attached acknowledgement.**

If you have any questions regarding this litigation hold, you may call me at 304.558.9149.

(ECF No. 399-1 at 17-18).

On July 8, 2021, Cammie L. Chapman, Associate General Counsel of the Bureau for Children & Families ("Chapman"), sent a memorandum to Crouch, O'Connell, Watts, four other DHHR employees, and Charles. (ECF No. 407-1). In the memorandum, Chapman reminded Crouch, O'Connell, Watts, and the other recipients of the memorandum to preserve and maintain all documents listed in the Litigation Hold. (*Id.*). Chapman asked the recipients of the memorandum to review the Litigation Hold letter previously sent by Robertson and "ensure that you and the DHHR employees and contractors under your supervision follow its guidance." (*Id.*).

### D. Discovery

#### 1. First and Second Requests for Production

On January 14, 2020, after being served with Plaintiffs' first request for production of documents, Defendants proposed search terms and custodians of information to be searched, including, as relevant to this motion: (1) Crouch; (2) Kevin Henson, Assistant Commissioner to the Office of Planning, Research, & Evaluation for the Bureau for Children and Families ("Henson"); (3) O'Connell; and (4) Watts. (ECF No. 377-2 at 3; ECF No. 377-6 at 2).

On September 17, 2020, in response to Plaintiffs' second set of document requests, Defendants again identified proposed search terms and custodians, including (1) Laura Barno, Director of Family First within the Bureau for Children and Families ("Barno"); (2) Crouch; (3) Henson; (4) O'Connell; and (5) Watts. (ECF No. 377-3 at 2:

ECF No. 377-6 at 2).

### 2. Production of Emails and Relevant History

In 2020, Defendants produced emails from the accounts of Crouch, Watts, O'Connell, Henson, and Barno. (ECF No. 378 at 3; ECF No. 399 at 3). After these productions, the case was briefly stayed; discovery continued when the stay was lifted; and the case was ultimately dismissed on July 28, 2021. (ECF No. 258). Plaintiffs appealed the dismissal to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"), which remanded the case on July 20, 2022. (ECF Nos. 260, 265, 266). A Scheduling Order was entered on June 12, 2023, (ECF No. 329), discovery continued, and class certification was granted, in part, on August 17, 2023. (ECF No. 351).

### 3. Seventh, Eighth, and Ninth Requests for Production

On September 5 and 6, 2023, in response to additional discovery requests by Plaintiffs, Defendants identified proposed search terms and custodians of information, including: (1) Barno; (2) Jeff Coben, Interim Cabinet Secretary of DHHR ("Coben"); (3) Crouch; (4) Henson; (5) Jane McCallister, Director of Planning & Quality Improvement for the Bureau for Children and Families ("McCallister"); (6) O'Connell; and (7) Watts. (ECF Nos. 377-4, 377-5).

### E. Spoliation Letter

On October 6, 2023, Defendants sent Plaintiffs a letter notifying them that Defendants had discovered a problem with some of the DHHR's electronically stored information ("ESI"). (ECF No. 377-7 at 3). Defendants explained that, despite the Litigation Hold, OT had deleted the email files of several custodians thirty days after their termination of employment with DHHR, per OT's standard and automated

practice when individuals leave state employment. (*Id*.). As indicated, some emails were produced in response to prior discovery requests. However, according to Defendants, the following custodians' emails for the following time periods were not preserved:

- Barno – September 24, 2020 to April 1, 2022

- Coben – December 31, 2022 to July 4, 2023

- Crouch – September 6, 2020 to December 30, 2022

- Henson – September 23, 2020 to October 23, 2020

- McCallister – unspecified date in 2020 to August 28, 2021

- O'Connell – September 2, 2020 to July 15, 2021

- Watts – September 23, 2020 to July 15, 2021

(ECF No. 377-7 at 3). Defendants advised, however, that they still possessed all emails sent to/from these individuals to/from other individuals still employed by DHHR. (*Id*.). In an effort to mitigate any prejudice that Plaintiffs believed was caused by the non-preservation of emails in the custodians' accounts, Defendants offered to expand the search and produce all responsive, non-privileged documents for January 1, 2019 through November 30, 2023 for 27 custodians and all search terms identified by Plaintiffs to which Defendants had previously objected. (*Id*. at 4-5).

### F. *Motion for Sanctions*

Plaintiffs responded to Defendants' proposal indicating that they intended to seek sanctions for spoliation of evidence. (ECF No. 377-8). On October 25, 2023, Plaintiffs filed the instant motion for sanctions under Rule 37(e) of the Federal Rules of Civil Procedure due to Defendants' failure to preserve the ESI from the email

accounts of Barno, Coben, Crouch, Henson, McCallister, O'Connell, and Watts. (ECF No. 377; ECF No. 378 at 7).

### G. Hearing

The parties requested a hearing on the Motion for Sanctions and were given the option of conducting an evidentiary hearing. However, they declined that option and chose to proceed on their briefs and oral argument. The hearing was held on January 17, 2024. (ECF No. 437). Defendants explained that they were able to recover additional emails downloaded in September 2020 relating to four of five of the custodians at issue in the sanctions motion. (*Id*. at 8-9). Defendants agreed that emails which should have been preserved were lost, but they maintained that they took reasonable steps to preserve the information and that it was substantially replaced through other means. (*Id*. at 4-5). Plaintiffs disagreed with Defendants' position, pointing out that (1) *three years* of ESI, which should have been preserved pursuant to the Litigation Hold, was nonetheless destroyed, and (2) the email accounts of seven high-ranking DHHR individuals—including Crouch, Coban, and Watts—were deleted. In Plaintiffs' view, a substantial amount of highly relevant ESI was lost, resulting in significant prejudice to them; particularly, in their ability to prove Defendants' deliberate indifference.

## II.   <u>Discussion</u>

In their motion, Plaintiffs argue that Defendants spoliated evidence that severely prejudiced their ability to prove the deliberate indifference element of their substantive due process claim. (ECF No. 378 at 1). Spoliation of evidence refers to "the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Pratt v.*

*Robbins*, No. 5:20-CV-170-GCM, 2024 WL 234730, at *1 (W.D.N.C. Jan. 22, 2024).

Spoliation of ESI, such as the emails at issue, is governed by Rule 37(e) of the Federal

Rules of Civil Procedure which states:

> If electronically stored information ["ESI"] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> > (A) presume that the lost information was unfavorable to the party;
> >
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> >
> > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). "The movant has the burden of proving all elements of Rule 37(e)."

*Pratt*, 2024 WL 234730, at *2. District courts within the Fourth Circuit generally apply

a "clear and convincing evidence standard" if the movant seeks the more extreme

sanctions under Rule 37(e)(2). *Id.*

In this case, Plaintiffs argue that the spoliation hinders their ability to prove

deliberate indifference. When "a state involuntarily removes a child from her home,

thereby taking the child into its custody and care, the state has taken an affirmative act

to restrain the child's liberty, triggering the protections of the Due Process Clause and

imposing some responsibility for the child's safety and general well-being." *Doe ex rel.*

*Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 175 (4th Cir. 2010) (citation and

markings omitted). In order to succeed on their substantive due process claim,

Plaintiffs must show that Defendants were deliberately indifferent to the welfare of the

members of the class. *Id.* Negligence, or even carelessness, does not establish

deliberate indifference. *Id.* Rather, Plaintiffs must show that Defendants were (1) plainly placed on notice of a danger and (2) chose to ignore the danger notwithstanding the notice. *Id.*

### A. Threshold Spoilation Factors

As indicated in Rule 37(e), four preliminary requirements must be established to prove spoliation of ESI: "(1) the information should have been preserved, (2) the information was lost, (3) the loss occurred because a party failed to take reasonable steps to preserve it, and (4) the information cannot be restored or recovered through additional discovery." *In re: Ethicon, Inc.*, No. 2:12-CV-00497, 2016 WL 5869448, at *3 (S.D.W. Va. Oct. 6, 2016).

### 1. Information should have been preserved

"A party seeking sanctions based on the spoliation of evidence must first establish that "the alleged spoliator had a duty to preserve material evidence, which arises not only during litigation but also extends to the period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Mod. Remodeling, Inc. v. Tripod Holdings, LLC*, No. CV CCB-19-1397, 2021 WL 3852323, at *6 (D. Md. Aug. 27, 2021). This requirement is uncontested. Defendants admit that the email accounts of the custodians identified in Plaintiffs' motion should have been preserved. (ECF No. 399 at 7). Therefore, the Court's analysis proceeds to the next requirement.

### 2. Information was lost

"Information is lost for purposes of Rule 37(e) only if it is irretrievable from another source, including other custodians." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 107 (E.D. Va. 2018). "Ordinarily, if one person's deleted emails were

sent to or from other people, those emails are not permanently lost or unrecoverable because they can be replaced in discovery by obtaining them from those other people." *Packrite, LLC v. Graphic Packaging Int'l, LLC*, No. 1:17CV1019, 2020 WL 7133806, at *7 (M.D.N.C. Dec. 4, 2020), *report and recommendation adopted,* 2021 WL 9681472 (M.D.N.C. Jan. 6, 2021).

Here, Defendants could only recover emails which were addressed to, from, or copied the seven custodians whose ESI was deleted. (ECF No. 377-7). As Plaintiffs emphasize, emails from current employees would not include communications that were exclusively between Crouch and Watts, who are named Defendants and whom Plaintiffs argue are particularly instrumental to their claims. (ECF No. 402 at 3). In addition, emails exclusively between Coben and anyone else that left the DHHR, or between Coben and third parties not in the state's employ, would not have been preserved and cannot be obtained from the accounts of current DHHR employees. Similarly, the accounts of current DHHR employees would not include emails between any of the other affected custodians and external parties, or other former DHHR employees. (*Id.*). Defendants initially disputed that the ESI at issue was lost because they were able to recover "much of the information" from the emails of current DHHR employees. (*Id.*). However, Defendants conceded during the motion hearing that some ESI was lost, satisfying this element. (ECF No. 437 at 4).

### 3. Reasonable steps were not taken to preserve the information

"The duty to preserve is not meant to impose an unreasonable burden on parties anticipating litigation; they need not preserve every shred of paper, every e-mail or electronic document, and every backup tape." *Steves & Sons, Inc.*, 327 F.R.D. at 108

(cleaned up). "However, a party generally must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents." *Id.* Courts generally find that a "party breaches its duty to preserve relevant evidence if it fails to act reasonably by taking positive action to preserve material evidence." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 525 (D. Md. 2010), *aff'd in part, modified in part,* 2010 WL 11747756 (D. Md. Nov. 1, 2010) (cleaned up). "The action must be reasonably calculated to ensure that relevant materials will be preserved, such as giving out specific criteria on what should or should not be saved for litigation." *Id.*

This is the first threshold requirement of Rule 37(e) that is in dispute. Defendants argue that they took reasonable steps to preserve Crouch, O'Connell, and Watts's emails by including them in the "to" field of the Litigation Hold letter that was sent to OT in December 2019 and the reminder memorandum sent in July 2021. (ECF No. 399 at 8; ECF No. 407 at 2). They blame OT's "apparent misunderstanding" of the scope of the Litigation Hold request, which they claim, "should not be ascribed to DHHR." (ECF No. 399 at 8). However, the Litigation Hold letter did not direct OT to preserve any specific email accounts. OT was expected to intuit that it should preserve the accounts of Crouch, O'Connell, and Watts simply because Crouch, O'Connell, and Watts were among the ten recipients of the litigation hold letter. Not everyone whose account needed to be preserved was included as an addressee, and later-employed individuals, such as Coben, were not added to the Litigation Hold. Although Chapman sent the reminder of the Litigation Hold in July 2021, the reminder likewise did not specify which accounts needed to be preserved. (ECF No. 407-1 at 3-7). Well before the reminder was sent, the parties had agreed on a set of custodians whose emails needed

to be searched for relevant information. (ECF Nos. 377-2, 377-3, 377-4). Nevertheless, not all of these individuals were sent the original Litigation Hold or the reminder memorandum. The undersigned cannot conclude in this circumstance that sending the Litigation Hold in a group email and expecting the recipients and OT to know what to do with it constituted "reasonable steps to preserve" the information.

There is little case law in this circuit interpreting what qualifies as "reasonable steps" to preserve ESI under amended Rule 37(e). However, it is apparent that a party's obligations do not end with the issuance of a litigation hold. *Equal Emp. Opportunity Comm'n v. Performance Food Grp., Inc.*, No. CV CCB-13-1712, 2019 WL 1057385, at *6 (D. Md. Mar. 6, 2019). Also, a party's sophistication with regard to litigation, control of the information, and resources should be considered. *See* Fed. R. Civ. P. 37(e) advisory committee's notes to the 2015 amendment. Defendants are a government agency and its officials who have lawyers and OT at their disposal. This is clearly not DHHR's first lawsuit. Defendants should be well-versed in their obligations to preserve relevant evidence, and it is clear they had the ability to do so.

Other than sending the Litigation Hold and reminder to a group of recipients, Defendants took no actions to educate, monitor, or ensure compliance with the Litigation Hold by OT or their employees. Any number of actions would have preserved these emails. For instance, Defendants could have downloaded the entire contents of Crouch, O'Connell, and Watts's mailboxes and stored them electronically when the employees separated from employment. (ECF No. 399-2). Defendants also could have communicated with OT to make sure that relevant ESI was being preserved. They did neither of these things. *See, e.g., Butler v. Kroger Ltd. P'ship I*, No. 2:19CV673, 2020 WL 7483447, at *7 (E.D. Va. Nov. 30, 2020), *report and recommendation adopted,*

13

2020 WL 7482186 (E.D. Va. Dec. 18, 2020) (discussing how a party must reasonably follow up with requests to preserve ESI). Defendants' lack of follow up was especially unreasonable given the fact that Crouch and Watts were top-ranking officials of the agency being sued and were themselves named Defendants in the action.

Aside from the Litigation Hold and subsequent memorandum, Defendants argue that their efforts on document production constituted reasonable efforts to preserve the ESI. They note that they worked with OT to retrieve, preserve, and produce "tens of thousands" of documents other than emails since 2019 and, in early 2020, they retrieved and preserved "tens of thousands of e-mails and attachments from the files of the custodians named in the 2019 Litigation Hold." (ECF No. 407 at 2). However, none of those efforts associated with document production evidently included ceasing the normal deprovisioning process related to the custodians at issue. The argument that Defendants produced many documents in discovery does not change the fact that they did not take reasonable actions to preserve the email accounts of the affected custodians.

Defendants also attempt to argue that they should not be held responsible for the actions of OT, which is not a party to this action. (ECF No. 399 at 8). This defense is unavailing. Plaintiffs sued Jim Justice, the Governor of West Virginia, in his official capacity; DHHR; and other DHHR officials. (ECF No. 1). The "Office of Technology is created within the Department of Administration, to be led by a Chief Information Officer, who shall be appointed by and serve at the will and pleasure of the Governor." W.Va. Code § 5A-6-3(a). OT is the information technology service provider for all West Virginia executive branch agencies. (ECF No. 399-2 at 2). OT is not a distinct unrelated third party. Rather, it is part of the state executive branch that operates under the

14

Governor, who is a Defendant in this case. Even under Defendants' theory of blame for the spoilation, the responsibility ultimately fell on Defendants to preserve this information. As stated in *GMS Indus. Supply, Inc.*:

> A party may be held responsible for the spoilation of relevant evidence done by its agents. *Goodman v. Praxair Services, Inc.,* 632 F. Supp.2d 494, 522 n.16 (D. Md. 2009) (citing *New Jersey Mfrs. Ins. Co. v. Hearth & Home Techs., Inc.,* No. 3:06–CV–2234, 2008 WL 2571227, at *7 (M.D. Pa. June 25, 2008) ("A party to a law suit, and its agents, have an affirmative responsibility to preserve relevant evidence. A [party]... is not relieved of this responsibility merely because the [party] did not itself act in bad faith and a third party to whom [the party] entrusted the evidence was the one who discarded or lost it.").

2022 WL 853626, at *8.

Turning to Defendants' remaining arguments, Defendants offer no argument that they took reasonable steps to preserve Coben's emails. (ECF No. 399 at 8). They agree that Coben should have been added to the Litigation Hold for the six months in which he serve as Interim Secretary of DHHR. (*Id.*). As to Barno, Henson, and McCallister, Defendants dispute that they needed to preserve these custodians' emails because none of them were in policy-making positions or overseeing field operations, and the lawsuit concerned DHHR's policies and practices. (*Id.*). This claim cannot be reconciled with Defendants' concession that the ESI at issue in the spoilation motion should have been preserved. (*Id.* at 7). Defendants did not take any steps to preserve the emails of Barno, Coben, Henson, or McCallister. Therefore, their actions cannot be considered reasonable.

### 4. Information cannot be restored or replaced

Defendants argue that much of the lost ESI can and has been restored by searching accounts of current employees, and Plaintiffs have not shown that the deleted emails could not be replaced through other discovery, such as audits, reports,

15

depositions, written discovery, or even stipulations. (ECF No. 399 at 9). In reply, Plaintiffs argue that even if the discovery schedule allowed them to depose all of the former employees whose ESI was destroyed, it is absurd to suggest that their recollection about thousands of emails that they wrote or received years ago would be sufficient to replace the emails themselves. (ECF No. 402 at 8). Plaintiffs contend that, unlike deposition testimony, emails are not impacted by waning memory, ongoing litigation, or looming liability. (*Id.*). Plaintiffs note that the Fourth Circuit has recognized that physical evidence often is the most eloquent impartial witness to what really occurred. (*Id.*).

Plaintiffs have not offered compelling evidence that they tried to obtain the deleted ESI through other means and have been unable to restore or replace it. *See, e.g., Neighborhood Networks Publ'g, Inc. v. Lyles*, No. 7:19-CV-89-BO, 2021 WL 328844, at *3 (E.D.N.C. Feb. 1, 2021) (holding that the party seeking sanctions for spoliation did not establish that the information could not be restored or replaced because it did not attempt other methods of discovery, such as depositions or discovery requests about the missing emails); *see also Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 2483800, at *5 (E.D.N.C. June 7, 2017). However, as Plaintiffs argued, it would also be unreasonable to expect the custodians at issue to recall all the details of all of the emails that they sent or received in their former employment in 2020, 2021, or 2022. Even if they did recall some details, their memory of the emails could never be considered as accurate as the emails themselves. For the purpose of dispensing with Plaintiffs' motion, the court will presume that the fourth element is satisfied here because Plaintiffs have sufficiently demonstrated that *all* of the records have not been restored or recovered by other means. *In re: Ethicon, Inc.*,

No. 2:12-CV-00497, 2016 WL 5869448, at *3 (S.D.W. Va. Oct. 6, 2016); *see also Gov't Emps. Health Ass'n v. Actelion Pharms. Ltd.*, 343 F.R.D. 474, 486 (D. Md. 2023) ("While some of the lost data was partially replaced as noted above, there is little doubt given just the amount of lost data from the two at-issue custodians for whom such information is known, that a meaningful amount of relevant information was destroyed, and those custodians were not peripheral to the central issues in the case, even if not uniquely integral to them.").

### B. Rule 37(e)(1) and (2)

Once all four criteria are met, Rule 37(e) offers two alternatives:

> The first avenue, Rule 37(e)(1), requires a court to make a finding of prejudice before sanctions may be warranted. The second avenue, Rule 37(e)(2), requires a court to make a finding that a party acted with the intent to deprive the opposing party of the ESI prior to imposing sanctions. ... The kind of prejudice sufficient to trigger Rule 37(e)(1) occurs when, as a result of the spoliation, the party claiming spoliation cannot present evidence essential to its underlying claim. ... To justify the more severe sanctions of Rule 37(e)(2), ... the moving party must demonstrate that the failure to preserve was motivated by an intent to deprive the moving party of the use of the information in the litigation. ... Negligent or even grossly negligent behavior will not suffice. ... The burden of proof is on the party seeking sanctions, and the standard of proof in the Fourth Circuit appears to be clear and convincing evidence where, as here, relatively harsh sanctions are sought.

*Fowler v. Tenth Planet, Inc.*, 673 F. Supp.3d 763, 767 (D. Md. 2023) (citation and markings omitted). Because Rule 37(e)(2) contains the most draconian sanctions, the Court considers that avenue first.

The Court notes that Plaintiffs argue that sanctions are warranted under Rule 37(e)(2) of the Federal Rules of Civil Procedure. (ECF No. 402 at 15). Under this subsection of the rule, Plaintiffs must show that Defendants engaged in willful or intentional conduct, regardless of whether the spoliation prejudiced Plaintiffs. *Boshea*

*v. Compass Mktg., Inc.*, No. CV ELH-21-00309, 2024 WL 811468, at *6 (D. Md. Feb. 27, 2024). Plaintiffs have the burden of proving by clear and convincing evidence that Defendants' failure to preserve the ESI at issue was motivated by an intent to deprive Plaintiffs of using that information in the litigation. *Id.* "Willfulness is equivalent to intentional, purposeful, or deliberate conduct." *Id.* (citation omitted). "Negligent or even grossly negligent behavior" does not suffice. *Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*, No. SAG-18-3403, 2020 WL 1809191, at *4 (D. Md. Apr. 9, 2020) (citing Fed. R. Civ. P. 37(e)(2) Comm. Note to 2015 Amendment). The court "has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives … and other factors." *Fowler*, 673 F. Supp.3d at 768 (citation omitted).

Plaintiffs contend that Defendants' failure to preserve the emails of Crouch and other high-ranking custodians was so derelict and egregious that it demonstrates intentionality. The undersigned disagrees with Plaintiffs' conclusion. At the hearing, Defendants explained that Robertson sent the initial Litigation Hold letter at the outset of the proceedings in December 2019, but after that, she did not play a major role in the litigation. (ECF No. 437 at 32-33; ECF No. 402-2 at 9-10, 47). As Robertson was no longer intimately involved in the litigation, she relied on retained counsel to defend the case with Chapman as their contact in General Counsel's office. (ECF No. 402-2 at 47-48, 60-61). Retained counsel assumed control of the document review and production with help from technology specialists in both the DHHR and the OT. (ECF No. 437 at 32-33). Considering her limited role, Robertson did not check on the status of the Litigation Hold, or the continued preservation of ESI. (ECF No. 402-2 at 18-19, 26). On July 8, 2021, Chapman sent a memorandum reminding supervisory personnel of

the Litigation Hold, (ECF No. 407-1 at 3-7), but did nothing further. In fairness to Chapman, however, retained counsel continued to work closely with the technology specialists and maintained primary responsibility for document review and production. By all accounts, Robertson and Chapman were relying on retained counsel to oversee the preservation of documents, while retained counsel were relying on the Litigation Hold and reminder memorandum to ensure that ESI would not be lost.

Initial productions of ESI were made in 2020. After these productions, responsive ESI was destroyed in late 2020 through 2023 as employees left the agency. Retained counsel were unaware that the Litigation Hold was not effectively protecting the relevant ESI until October 2023, and nothing in the record suggests that they knew of OT's longstanding policy to destroy an employee's email account thirty days after employment terminated. No one from OT thought to question retained counsel, Robertson, or Chapman about the need to retain the accounts of high-ranking employees, such Crouch, Coben, and Watts. This fact scenario indicates that Robertson, Chapman, retained counsel, and OT simply were not operating in the same orbit; a classic example of the right hand not knowing what the left hand was doing. Plaintiffs make a point that Robertson knew about OT's destruction policy. However, even if she did, Robertson believed that retained counsel was overseeing the document preservation and production. Moreover, she believed the Litigation Hold was clear when it stated that it superseded any document destruction policies in effect until the litigation was concluded. (ECF No. 399-1 at 3). Thus, the individuals involved with or managing the ESI were not consciously aware of a dereliction of duty. Certainly, their communication failures were negligent, perhaps even grossly negligent, but they do not support a finding by clear and convincing evidence that Defendants intended to

deprive Plaintiffs of information. *GMS Indus. Supply, Inc.,* 2022 WL 853626, at \*7 ("[A] party's conscious dereliction of a known duty to preserve electronic data—whether passive or active—is both necessary and sufficient to find that the party acted with the intent to deprive another party of the information's use under Rule 37(e)(2).") (citations and internal markings omitted). What occurred in this case is a far cry from the intentional spoliation seen in a case like *GMS Indus. Supply, Inc.* where the accused spoliator purchased a desktop application called "File Shredder" and proceeded to destroy beyond recovery all of the documentation on his laptop. *GMS Indus. Supply, Inc.,* 2022 WL 853626, at \*7.

Moreover, when Defendants became aware of the ESI destruction, they promptly alerted Plaintiffs that emails had been deleted. Awareness of the issue was undoubtedly delayed by the ebb and flow of the litigation, which was stayed, dismissed, appealed, remanded, stayed, and reactivated as a class action. Defendants have since invested significant effort and expense in attempting to recover as many of the lost emails as possible. Those actions are inconsistent with an intent to deprive Plaintiffs of information.

Therefore, as Plaintiffs fail to carry the burden of proof required by Fed. R. Civ. P. 37(e)(2), the Court **DENIES** their request for sanctions under that rule.

The next issue before the Court is whether the spoliation prejudiced Plaintiffs in order to warrant sanctions and, if so, what measure would cure the prejudice. Fed. R. Civ. P. 37(e)(1). Rule 37(e) itself "does not define prejudice; nor does it place the burden of proving or disproving prejudice on one party or the other." *Wall v. Rasnick*, No. 7:17CV00385, 2023 WL 7490862, at \*37 (W.D. Va. Nov. 13, 2023) (citing Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). "[R]esolving the issue of

prejudice 'necessarily includes an evaluation of the information's importance in the litigation.'" *Carter v. Ely*, No. 7:20-CV-00713, 2023 WL 6216721, at *3 (W.D. Va. Sept. 22, 2023) (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). In general, "courts find prejudice when spoliation compromises a party's ability to present its case." *Id.* (citing *Knight v. Boehringer Ingelheim Pharms., Inc.*, 323 F. Supp. 3d 837, 845 (S.D.W. Va. 2018)). "The moving party cannot be expected to demonstrate with certainty the content of the lost evidence, but the moving party must demonstrate a likelihood that the lost evidence would have been favorable to the moving party's case." *Wall*, 2023 WL 7490862, at *37 (citation and markings omitted). The degree of prejudice that a party suffered from spoliation of evidence "ranges along a continuum from an inability to prove claims or defenses to little or no impact on the presentation of proof." *Steves & Sons, Inc.*, 327 F.R.D. at 110 (citation and markings omitted).

"When imposing sanctions under Rule 37(e)(1), the range of curative measures is quite broad and much is entrusted to the court's decision." *Jenkins v. Woody*, No. 3:15CV355, 2017 WL 362475, at *18 (E.D. Va. Jan. 21, 2017) (cleaned up) (citing Fed. R. Civ. P. 37(e) advisory committee's note). Overall, the sanctions available for spoliation under Rule 37(e) may include assessing attorneys' fees and costs, allowing the parties to present evidence and argument to the jury regarding the loss of evidence, precluding evidence, striking documents from the record, adverse instructions, or imposing the harsh, case-dispositive sanctions of dismissal or judgment by default permitted under Rule 37(e)(2). *Id.*; *Nat'l Fair Hous. All. v. Bank of Am., N.A.*, No. CV SAG-18-1919, 2023 WL 4669560, at *7 (D. Md. Jan. 23, 2023) (citations and markings omitted). "Courts should select the least harsh sanction that can provide an adequate

remedy." *Nat'l Fair Hous. All.*, 2023 WL 4669560, at *7. In order to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine, the sanction should be designed to: "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he or she would have been in absent the wrongful destruction of evidence by the opposing party." *Jenkins*, 2017 WL 362475, at *18.

Plaintiffs argue that the emails are relevant to show that Defendants subjectively recognized a substantial risk of harm and that their actions were inappropriate in light of that risk. (ECF No. 378 at 1, 14).  Plaintiffs contend that the primary way for them to prove deliberate indifference is through emails of high-ranking DHHR officials, including two named Defendants, which were destroyed. (*Id*. at 14). They contend that Defendants spoliated the "best evidence" to show that Defendants were subjectively aware of the risk and disregarded it. (ECF No. 402 at 9). Upon further briefing, Plaintiffs acknowledge that they can establish deliberate indifference under an objective standard by showing that the risk of harm was so obvious that Defendants should have appreciated it. (ECF No. 474 at 3). However, they note that subjective knowledge of the risk of harm is still sufficient to satisfy the deliberate indifference standard, and Defendants deprived them of offering that compelling evidence. (*Id*. at 3, 6).

Plaintiffs further argue that the emails are highly probative of the actions that Defendants did or did not take in response to the risk of harm because they could show the internal processes behind the actions, reasons for the actions, what materials Defendants relied on in making their decisions, and what guidance senior officials

provided after the decisions were made. (ECF No. 474 at 7). They note that most business is conducted through email, and decision makers often confer on how to address problems. (*Id*. at 9). If steps were not taken, Plaintiffs argue that email may be the only evidence that the organization considered an action and decided against it. (*Id*.). Alternatively, if changes were made, the emails show the context and whether the actions resolved the underlying issues. (*Id*.).

In response to Plaintiffs' arguments, Defendants note that Plaintiffs do not need the emails to prove that Defendants were aware of the caseworker staffing and caseload issues because Defendants publicly acknowledged the problems and sought funding to address the issues. (ECF No. 399 at 12). Defendants argue that there are numerous public documents, external documents, and self-audits reviewing foster care placements, case planning, and caseworker staffing issues, most of which is cited in Plaintiffs' complaint. (*Id*. at 10). To the extent that Plaintiffs believe that the emails are necessary to establish that DHHR officials were aware of the reports and other information, Defendants assert that the information could be obtained by deposition, written discovery requests, or even stipulation. (*Id*. at 11).

Furthermore, Defendants stress that Plaintiffs do not seek damages for past conduct, but rather seek prospective relief to forestall future violations. (*Id*. at 13). According to Defendants, their current attitudes and conduct are paramount because Plaintiffs must show that when they filed suit and at the time of summary judgment, Defendants are knowingly and unreasonably disregarding an objectively intolerable risk of harm and will continue to do so. (*Id*.). The "archeology" of emails to or from former officials would only have minimal relevance to DHHR's current conduct. (*Id*.). In addition, Defendants point out that Plaintiffs only argue that the emails are relevant

and potentially helpful, but not essential, to prove deliberate indifference. (ECF No. 453 at 3-4). According to Defendants, this concession defeats any claimed prejudice that would justify sanctions under Rule 37(e)(1). (*Id*. at 4). Defendants further argue that deliberate indifference focuses on their ultimate actions, meaning what actions they took or did not take in response to the risk of harm, not what actions they contemplated over email. (*Id*. at 5). They additionally argue that the deliberative process privilege shields DHHR's internal deliberations from discovery. (*Id*. at 5-6).

Ultimately, the undersigned concludes that, while Plaintiffs suffered some prejudice, they were not *exceptionally* prejudiced by the spoliation. Stated another way, on the continuum of prejudice, the spoliation only slightly compromised Plaintiffs' ability to present their case. Plaintiffs presume that the emails would contain evidence of Defendants' actual knowledge that foster children were at risk, as well as their reasons for taking or not taking certain actions to solve the problems in the foster care system. They have shown a likelihood that some of the emails would contain evidence that is favorable to their claims. On the other hand, there is also a significant likelihood that some of the lost emails would have supported Defendants' position that they were actively trying to improve the foster care system in West Virginia. Defendants' knowledge of the risk of harm is apparent in numerous public documents and evidence that Plaintiffs already have, as cited in their complaint. Furthermore, Defendants appear to concede that they knew of the significant issues plaguing the foster care system and have indicated that they might stipulate to that point. To the extent that Defendants argue they were unaware of any of the risks of harm, Plaintiffs can use an objective standard to establish that Defendants should have known the risk of harm. While Plaintiffs might prefer to offer a candid email between former officials

about the problems in the foster care system, the absence of this evidence certainly does not preclude Plaintiffs from proving deliberate indifference.

Regarding the actions that Defendants took or did not take to address the harm, Plaintiffs fail to show why the reasoning for the actions is so instrumental to their claims for prospective relief. Plaintiffs are not attempting to hold any public official personally liable, nor are they seeking money damages. Plaintiffs argue that while DHHR has produced publicly available information that paints its efforts to improve the child welfare system in a positive light, information necessary to combat that portrayal is much less likely to have been made public. (ECF No. 402 at 13). They contend that to gain that type of information they need access to Defendants' private communications, which have been destroyed. (*Id.*). Plaintiffs cited some examples of "relevant ESI in this case," but none of it showed why the spoliated evidence is critical to their case. (ECF No. 474 at 10-13). Moreover, as Defendants cited, "[t]he deliberative process privilege, sometimes called the executive privilege, is an evidentiary privilege sometimes accorded to the government to protect documents from discovery that are involved in the government's deliberative decision-making functions." *Rose v. Sandy*, No. 5:22-CV-00405, 2023 WL 7125253, at *4 (S.D.W. Va. Oct. 30, 2023) (citations omitted). The action, or lack of action, taken by the Defendants to correct failures in the foster care system can be established through other types of evidence; the lost emails do not prevent Plaintiffs from making their case.

All of these factors mitigate the prejudice that Plaintiffs suffered from the spoliation of evidence. Plaintiffs ask for significant sanctions, such as declaring that Plaintiffs established their deliberate indifference claims against the DHHR defendants and the DHHR defendants cannot move for summary judgment on the

deliberate indifference element of their substantive due process claims. (ECF No. 378 at 1-2). As Plaintiffs recognize, the crux of this litigation is not whether Defendants knew or should have known about the risk of harm, but whether the measures that Defendants are taking to address the failures in the state child welfare system are sufficient. (ECF No. 474 at 14). The lost emails would potentially reveal some insight into DHHR's reasoning for whatever measures that it instituted, but they are by no means dispositive of that issue as compared to other evidence of what DHHR actually did or is doing to address the problems. To hold that Defendants were deliberately indifferent and preclude them for moving for summary judgment on the issue of deliberate indifference would effectively rule that Defendants chose to ignore the danger to foster children notwithstanding any documented actions they have taken to correct the system. Those measures exceed what is necessary to cure the prejudice from the spoilation of evidence.

Plaintiffs also ask for the Court to preclude Defendants from arguing that the deleted ESI would have shown that the DHHR defendants did not act with deliberate indifference, which seems far more proportionate to the prejudice imposed from the spoilation. (ECF No. 378 at 2). To accomplish the prophylactic, punitive, and remedial purposes of Rule 37(e)(1), the undersigned agrees that it would be patently unfair for Defendants to use the spoilation of evidence to their advantage. Defendants should also reimburse Plaintiffs for the fees and costs associated with the motion for sanctions. As noted, the Court has broad discretion to choose a spoilation sanction, but it must impose the least harsh sanction available to provide an adequate remedy. *McCoy v. Transdev Servs., Inc.*, No. DKC-19-2137, 2021 WL 1215770, at *2 (D. Md. Mar. 31, 2021). The undersigned concludes that the above sanctions accomplish this objective.

For the reasons stated above, the Court **GRANTS** the motion for sanctions under Rule 37(e)(1) and **ORDERS** that Defendants (1) are precluded from arguing that the deleted ESI would have shown that Defendants did not act with deliberate indifference and (2) must reimburse Plaintiffs for their reasonable attorneys' fees and costs associated with the motion for sanctions. Plaintiffs shall have through and including **April 16, 2024** in which to file an affidavit of reasonable fees and expenses incurred in making the motion for sanctions, as well as any supportive documentation or argument to justify the amount of fees and expenses requested. *See Robinson v. Equifax Information Services, LLC,* 560 F.3d 235, 243-44 (4th Cir. 2009). Failure to timely file the affidavit and supporting documentation shall result in a denial of fees and costs. Defendants shall have through and including **April 30, 2024** in which to respond to Plaintiffs' submissions. The response shall include any justification that would obviate against an award of expenses. Failure to file a response shall be deemed an admission of or agreement with the representations and arguments of Plaintiffs. Plaintiffs shall have through and including **May 3, 2024** in which to file a reply memorandum. At the conclusion of the period allowed for briefing, the Court shall either schedule a hearing, or simply rule on the request for reasonable fees and costs.

The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented party.

**ENTERED:** March 28, 2024

Cheryl A. Eifert
United States Magistrate Judge