IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JONATHAN R.**, *et al.*,

    **Plaintiffs**,

v.                    Case No.:  3:19-cv-00710

**JIM JUSTICE**, *et al.*,

    **Defendants.**

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Plaintiffs' Motion for Sanctions. (ECF No. 467). For the reasons that follow, the Court **DENIES** the motion.

**I.   Relevant Facts and Procedural History**

*A. Complaint*

On September 30, 2019, twelve current and former West Virginia foster children filed a putative class action complaint against the state officials responsible for administering the West Virginia foster care system. (ECF No. 1). Plaintiffs allege that Defendants' system-wide foster care policies and practices expose them to a substantial risk of harm in violation of their substantive due process rights under the Fourteenth Amendment to the United States Constitution. (ECF No. 351 at 10). They seek injunctive and declaratory relief, but no monetary damages. (*Id*. at 39).

*B. Class Certification*

The Court certified a General Class consisting of all foster children who are or will be in the custody of DHHR or its successor agency. (*Id*. at 45). The Court also certified an

1

ADA Subclass, which includes all members of the General Class who have physical, intellectual, cognitive, or mental health disabilities, as defined by federal law. (*Id*. at 46). In certifying the class action, the Court narrowed the lawsuit to three common claims relating to the General Class and one common claim of the ADA Subclass. The General Class alleges that Defendants' inadequate array of appropriate placements, lack of appropriate case planning, and high caseloads and chronic understaffing expose them to a substantial risk of harm. (*Id*. at 10). The common claim of the ADA Subclass focuses on the provision of community-based treatment.

### C. *Discovery Requests at Issue*

On August 17, 2023, Plaintiffs served their Tenth Request for Production of Documents to Defendants. (ECF No. 471-1). They asked Defendants to produce 15 randomly selected case files for 7 specified groups of foster children, totaling 105 files. (*Id*.). "Case file" was defined in the requests as "any documentation or record of DHHR's activities relating to specific children, including any child abuse and neglect reports, intake assessments, information on placements, services, healthcare, education, family visitations, and court appearances." (*Id*. at 2). Plaintiffs intended to provide the case files to their experts to generate a report concerning the impact of Defendants' policies and practices on the class and sub-class of foster children. (ECF No. 469 at 16). When Plaintiffs served the request, their expert deadline was December 14, 2023, and trial was scheduled for June 25, 2024. (ECF No. 329). The timeframe allotted Plaintiffs almost three months to generate a report once receiving the information.

On September 15, 2023, Defendants objected to the requests, but they agreed to produce some information. (ECF No. 471-2). The parties communicated back and forth about how long production was taking and whether it was complete. (ECF Nos. 471-3,

471-4, 471-5). Ultimately, Plaintiffs demanded that Defendants substantially complete production by November 17, 2023 to keep pace with the Court's deadlines. (ECF No. 471-3 at 4). Defendants responded that they were working diligently, but they could not guarantee that they would meet that deadline due to the amount of work involved to identify, extract, and review the data. (ECF No. 471-4). On October 25, 2023, Plaintiffs moved the Court to extend the expert deadline due to the fact that Defendants still had not produced the bulk of the sampled case files. (ECF No. 379). Plaintiffs' expert deadline was extended to January 22, 2024. (ECF No. 390). Other deadlines were extended as well, but the trial date remained June 25, 2024. (*Id.*).

Beginning on November 17, 2023, Defendants produced case files on a rolling basis. (ECF Nos. 469 at 3, 479-2 at 6). On December 19, 2023, Defendants confirmed that their production of all 105 case files was complete subject to the limitations described in their initial objections stated in September. (ECF No. 471-6 at 3). However, the next day, Defendants advised Plaintiffs that there were nine files that Defendants inadvertently omitted from the production, and they would produce them that day or the next morning. (ECF No. 471-7 at 2). They produced those files within 24 hours of learning that they were missing from the production. (ECF No. 479-2 at 8). At this point, Defendants had invested 380 hours, not including time spent by Defendants' counsel, to identify and gather 10,378 case file documents comprising 64,768 pages for the 105 requested sample children. (ECF No. 479-2 at 8).

On December 26, 2023, Plaintiffs moved to extend their expert deadline because they believed that they still did not have all of the information for their experts to produce their reports. (ECF No. 420). Their expert deadline was extended to March 22, 2024, with trial occurring on September 24, 2024. (ECF No. 421). On January 19, 2024, Plaintiffs

3

pointed out to Defendants that many of the case files that Defendants produced did not have documents such as intake assessments, child abuse and neglect reports, information about placements, and case plans. (ECF No. 471-8 at 2). The parties discussed Plaintiffs' concerns during a meet and confer session on January 22, 2024. (ECF No. 479-2 at 9). In response to the issues that Plaintiffs raised, Defendants consulted with their vendor and learned on January 25, 2024 that some documents were missing. (ECF No. 479-2 at 9). On January 26, 2024, Defendants sent a detailed response to Plaintiffs regarding exactly how the information was extracted for production. (ECF No. 471-9). In that letter, Defendant noted that, while reconfirming with the vendor that all of the requested information was extracted and produced for all 105 sample cases, Defendants discovered that one of the fields was unintentionally excluded from the extraction. (*Id.* at 5).

On February 2, 2024, Defendants produced that missing field information. (ECF No. 471-10 at 2). However, Defendants noted that they just became aware that several additional fields were accidentally excluded from the extraction, and they would provide that information. (*Id.*). Further, Defendants became aware that week that some case plans were not uploaded during the launch of the electronic platform PATH in 2023; thus, some of the sampled case files did not include the case plans. (*Id.*). Defendants were working on obtaining hard copies of those case plans from case workers, although they previously only agreed to search their electronic systems. (*Id.*).

On February 9, 2024, Defendants confirmed that the three case files that Plaintiffs flagged were complete, but Defendants needed to replace one of the case files produced with another sample because the child's exit date had not been entered into the system, making it appear that he was still in custody, when he was not. (ECF No. 471-11 at 2). Defendants advised that they performed quality checks to ensure that the samples fit

4

within the criteria requested by Plaintiffs, but the samples relied on correct data entry, and this data point was incorrectly entered. (*Id.*).

On February 14, 2024, Defendants explained to Plaintiffs why the production took longer than expected and various issues arose. Defendants noted that West Virginia transitioned from the FACTS system to PATH the prior year, and the process for extracting case files from those two systems is significantly different. (ECF No. 471-12 at 2). The instant request for production of documents was the first time that Defendants' PATH contractor was asked to undertake such a project. (*Id.*). Defendants believed that all responsive information had been produced, but further reviewed the case files in response to questions from Plaintiffs and learned that certain information was not extracted, such as family functioning assessments and safety plans for many cases. (*Id.*). Thus, Defendants noted that they devoted significant resources to manually review and produce the documents and hoped to largely complete the supplemental production by the end of the month. (*Id.*). Defendants stated that they were amenable to submitting a declaration or stipulation to assure Plaintiffs that they would not challenge Plaintiffs' expert analysis on the ground that the experts did not have all relevant case file documents. (*Id.*). Plaintiffs submitted a proposed stipulation. (ECF No. 471-12 at 4).

On February 16, 2024, Plaintiffs stated in a letter that they could not continue to receive documents on a rolling basis because it made it impossible for their experts to finalize their reports. (ECF No. 471-13 at 4). Given that the expert deadline was March 22, Plaintiffs asked that any additional responsive documents be produced no later than February 26, 2024. (*Id.*). Defendants explained that they shared Plaintiffs' frustration and would not have agreed to produce the 105 case files if they had better understood the complexities of trying to extract the data and documents from the new PATH system.

5

(ECF No. 471-13 at 2). Defendants offered to stipulate that they could not use any case file documents produced after March 11, 2024 to rebut Plaintiffs' experts. (*Id.*). Defendants also offered to extend the expert, discovery, and dispositive motion deadlines by one week while keeping the trial date the same. (*Id.*). Plaintiffs stated that the proposed timeframe would not give their experts enough time to review the additional data and was unworkable for various reasons. (ECF No. 471-14 at 2). The parties were unable to resolve the dispute. (ECF No. 417-14). Plaintiffs were concerned that their experts would not have sufficient time to review the supplemental productions and complete their reports, especially without any assurance that the information would not be duplicates of case files already produced. (*Id.*).

On February 21, 2024, Defendants said that two additional case files were incorrectly submitted because the children left custody prior to December 31, 2022, and they would replace those files with two other samples. (ECF No. 471-14 at 6). On February 28, 2024, Defendants stated that three additional children were incorrectly included in the random sample despite not being in custody on December 30, 2022, and those files would be replaced with other samples. (ECF No. 471-15 at 2).

### *D. Motion for Sanctions*

On that date, February 28, 2024, Plaintiffs moved for sanctions under Rule 37(c) of the Federal Rules of Civil Procedure and the court's inherent authority to sanction a party for litigation abuses. (ECF Nos. 467, 469). Plaintiffs stated that, given the breadth of case file documents that Defendants intended to dump on them at the eleventh hour, they would need another extension of the expert deadline. (ECF No. 469 at 9). They were opposed to any such extension in light of how long the action was pending and the importance of expeditiously obtaining relief for West Virginia's foster children. (*Id.*).

6

Plaintiffs asked the Court to prohibit Defendants from using any documents that they produced after February 23, 2024 to support any motion, during a hearing, or at trial. (ECF No. 469 at 2). Plaintiffs also seek their reasonable attorneys' fees and costs incurred in preparing briefs on this issue and reviewing, organizing, and analyzing responsive documents produced after Defendants' initial production on November 17, 2023. (*Id.* at 2-3, 18-19).

On March 11, 2024, Defendants' response to Plaintiffs' Tenth Request for Production of Documents was complete. (ECF Nos. 479 at 7, 485 at 6). On March 13, 2024, Defendants responded to the motion for sanctions. They explained that their electronic systems do not generate individual "case files." (ECF No. 479 at 1). Thus, gathering each case file required hours of manual work and generally yielded hundreds of documents. (*Id.*). In an effort of compromise, Defendants agreed to produce case file documents, but it ended up being more burdensome than they expected, taking 1,000 hours to retrieve and produce 210,586 pages. (*Id.*). Defendants note that Rule 37(c)(1) does not authorize sanctions for delays in production, but only for failures to timely supplement, which they argue is not what happened in this case. (*Id.* at 2).

### E. *Motion for Modification of the Scheduling Order*

On March 18, 2024, Plaintiffs moved to extend their expert disclosure deadline. (ECF No. 483). They noted that Defendants produced 48,892 documents in response to Plaintiffs' Tenth Request for Production of Documents since February 2, 2024, which were in no particular order and required them to manually review each page to determine which child it concerned. (ECF No. 483-1 at 2). On March 7, 2024, Defendants advised Plaintiffs that approximately 12,281 documents that they produced were duplicates. (*Id.* at 3). Finally, on March 13, 2024, Defendants provided a spreadsheet that showed which

7

bates numbers corresponded to each child. (*Id.* at 2). Plaintiffs explained that, even though they hired six additional temporary employees to help organize and label the files, the experts could not complete their analysis and report concerning that volume of documents by the deadline of March 22, 2024. (*Id.* at 2-3). The Court extended Plaintiffs' expert disclosure deadline to May 15, 2024. (ECF No. 491 at 1). The bench trial in this case will be on November 5, 2024. (*Id.* at 2).

## II.    Discussion

As noted, Plaintiffs seek sanctions under Rule 37(c) and the Court's inherent authority regarding Defendants' response to Plaintiffs' Tenth Request for Production of Documents.

### *A. Rules 26 and 37*

Plaintiffs' motion is based, in part, on the interplay between Rules 26(e)(1) and 37 of the Federal Rules of Civil Procedure. Under Rule 26(e)(1), a party who has responded to a request for production must supplement or correct its response: (A) in a timely manner if the party learns that in some material respect the response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court. Fed. R. Civ. P. 26(e)(1). Rule 37(c) provides that, if a party fails to supplement an earlier discovery response, the party cannot use that information to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c). "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any

8

of the orders listed in Rule 37(b)(2)(A)(i)—(vi)." *Id.*

Plaintiffs argue that, if Defendants had properly reviewed the documents that they initially produced in November 2023, or when they realized that nine case files were missing in December 2023, they would have known that thousands of documents were missing. (ECF No. 485 at 3-4, 4 n.3). In Plaintiffs' view, Defendants chose not to diligently review their production of documents and instead assured Plaintiffs that the production was complete, leading to untimely production of tens of thousands of documents. (*Id.* at 5 n.4). As an initial matter, the Court disagrees with Plaintiffs' contention that supplementation was untimely. Defendants promptly notified Plaintiffs' counsel and supplemented upon learning of deficiencies in their production in accordance with Rule 26(e)(1) for the following reasons.

On December 20, 2023, Defendants realized that nine case files were missing, and they supplemented them within 24 hours. (ECF No. 479-2 at 8). On January 19, 2024, Plaintiffs raised concerns that other documents were missing, and Defendants quickly conferred with Plaintiffs on January 22, 2024. (*Id.* at 9). Defendants looked into the issues and learned on January 25, 2024 that some information was not captured in the extraction from the database. (*Id.*). They advised Plaintiffs of the error the following day and supplemented the missing information on February 2, 2024. (*Id.*). On January 31, 2024, Defendants identified two additional areas that required supplementation; they advised Plaintiffs of the issue on February 2, 2024, and completed supplementation between February 9 and 16, 2024. (*Id.* at 9-10). Finally, on February 13, 2024, Defendants realized that the case files did not have certain documents that they would expect to be completed for most foster children. (*Id.* at 10). Thus, on February 14, 2024, Defendants informed Plaintiffs that they were going to supplement their production with documents

9

manually downloaded from their databases and seek electronic and paper files from individual caseworkers. (*Id.* at 11). They produced the final supplemental information on a rolling basis between February 17, 2024 and March 11, 2024 to get it to Plaintiffs as quickly as possible. (*Id.* at 12).

The Court appreciates Plaintiffs' argument that, if Defendants had more carefully reviewed their production, they would have realized a couple of months earlier that some documents were missing or incorrect. However, Defendants' actions in spot-checking the documents must be considered in light of the complexity, volume, and time constraints of production. Defendants had to utilize an e-vendor and statistician to identify the samples and extract the information. (ECF No. 479-2 at 3). The process for pulling data sets and creating the samples alone took two months and hundreds of hours of work. (*Id.* at 4). By December 20, 2023, Defendants had invested 380 hours, not including time spent by Defendants' counsel, to produce 10,378 case file documents totaling 64,768 pages. (*Id.* at 8). Defendants then spent 818 hours manually identifying and collecting supplemental documents. (*Id.* at 12). Overall, the response to Plaintiffs' Tenth Request for Production of Documents comprised 44,611 documents, totaling 210,586 pages for 105 different foster children. (*Id.* at 12). The Court is not persuaded by Plaintiffs argument that Defendants should have realized the deficiencies earlier, which triggered the duty to supplement under Rule 26.

More importantly, even if Defendants should have recognized the deficiencies in November or December 2023, the Court does not find that their supplementation was untimely. The facts show that Defendants, both on their own initiative and in response to Plaintiffs' concerns, promptly notified Plaintiffs and supplemented in a timely manner any documents which they learned were incomplete or incorrect. As frustrating as the

10

delays and incorrect assurances were to Plaintiffs, there is no indication that Defendants failed to timely supplement material deficiencies under Rule 26.

Furthermore, assuming *arguendo* that Defendants did not timely supplement their discovery response, the error would be justified or harmless under Rule 37(c). District courts have broad discretion in determining whether the failure to supplement was justified or harmless, and in doing so, should consider the following "Southern States" factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of the party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *S. States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). The first four factors primarily concern the harmlessness analysis, while the fifth factor goes mainly to the substantial justification analysis.

Plaintiffs argue that they need the discovery at issue for their experts to complete their reports. In fact, they note that their experts' report is based almost entirely on the sample case files. (ECF No. 469 at 16). Defendants cured the surprise by providing the documents; Plaintiffs have now received the information with enough time to analyze and apply it. They originally served the discovery requests on August 17, 2023, budgeting approximately three months for their experts to review what they anticipated to be voluminous information and produce their reports by Plaintiffs' expert deadline of December 14, 2023. (ECF Nos. 329, 471-1, 485 at 5). Plaintiffs ultimately received all supplementation by March 11, 2024, and the expert deadline has been extended to May 15, 2024, giving Plaintiffs' experts two months to review the information and produce their reports. (ECF Nos. 479 at 7, 485 at 6, 491). Even if Plaintiffs experts have to start at

"square one," Plaintiffs have not shown that difference of one month severely disrupts the trial or their ability to prosecute their case. The Court understands that Plaintiffs did not want to extend their expert deadline and Defendants' actions forced them to do so, but there have been various reasons outside of Defendants' control that this complex class action has taken so long to resolve. Defendants are by no means solely, or even primarily, responsible for all of the delays in this case.

For all of the above reasons, Plaintiffs have not shown that sanctions are warranted under Rule 37.

### B. Inherent Authority

Plaintiffs also argue that the Court should sanction Defendants pursuant to its inherent authority to sanction a party for abusing the judicial process. However, this would require a finding that Defendants acted in bad faith or similar conduct. *See, e.g., Hartnett v. Hardenbergh*, No. 3:23-CV-17-HEH, 2024 WL 310193, at *3 (E.D. Va. Jan. 26, 2024); *Zaklady Farmaceutyczne Polpharma S.A. v. Kartha Pharms., Inc.*, No. 3:21-CV-133-MOC-DCK, 2024 WL 203238, at *1 (W.D.N.C. Jan. 18, 2024); (ECF Nos. 469 at 19, 485 at 10) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (stating that a court may assess attorneys' fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons). Bad faith is not evident in this case. While Defendants very clearly made mistakes in omitting information and representing that production was complete before it actually was, the factual circumstances as a whole do not warrant the imposition of sanctions.

For instance, Plaintiffs rely on *Mey v. Phillips* to support their argument that the Court should sanction Defendants for concealing discoverable material and falsely swearing that discovery responses were complete. (ECF Nos. 469 at 19, 485 at 9).

12

However, *Mey* is factually distinct from this case. In *Mey*, the Fourth Circuit affirmed a district court's entry of default judgment after the district court granted multiple motions to compel and warned the defendants to provide the requested discovery, but the defendants did not do so. *Mey v. Phillips*, 71 F.4th 203, 208, 213-16, 220-21 (4th Cir. 2023). There was evidence of a continued pattern of discovery abuses that could not be chalked up to inadvertence or mistake; the district court, after specifically warning the defendants about the discovery abuses, was left with little choice but to enter default judgment because the defendants were preventing the plaintiff from proving her allegations. *Id.* at 215-16, 220, 221. There is no evidence of similar extreme discovery abuses here. Namely, there is no indication that Defendants intentionally concealed information. Also, this is not a situation in which Defendants were specifically warned by the Court to comply, yet they continued to fail to disclose information. While Defendants could have, or should have, done a better job checking their production, they were exceedingly cooperative in identifying and correcting any deficiencies. They maintained an active role in getting the information to Plaintiffs, as opposed to "hiding the ball" like the defendants in *Mey*.

The other case cited by Plaintiffs, *Philips N. Am. LLC v. Probo Med., LLC*, also concerned a party's noncompliance with discovery orders, far more extreme conduct, and the imposition of default judgment. (ECF Nos. 469 at 19-20, 485 at 9-10); *see Philips N. Am. LLC v. Probo Med., LLC*, No. 2:21-CV-00298, 2024 WL 707391, at *19, 20, 28, 29 (S.D.W. Va. Feb. 20, 2024). Plaintiffs liken *Philips* to the instant matter because the defendant in *Philips* knew that the plaintiff needed discovery responses prior to expert disclosures and made inaccurate representations regarding the status of production that, at a minimum, evidenced reckless disregard of the truth. (ECF No. 485 at 10). According

13

to Plaintiffs, like the plaintiff in *Philips*, they agreed to multiple extensions of time based on Defendants' inaccurate representations that production was nearly complete, and Plaintiffs believe that Defendants did not make diligent efforts to timely produce the information. (*Id*.).

However, there are significant differences between Defendants' actions in this case and the defendant's discovery failures in *Philips*. For instance, when the *Philips* defendant represented to the plaintiff *and the court* that "its review process was nearly complete," it had actually only completed eight percent of production. *Philips N. Am. LLC*, 2024 WL 707391, at *20. "Only after the court required daily reports and threatened default" did the *Philips* defendant finally complete "its search for, and collection of, responsive information and the subsequent document-review process by defense counsel, turning over a whopping 121,365 documents." *Id*. In that case, the defendant's production of ninety-two percent of the responsive documents after the plaintiff's expert report deadline, and only after a threat of default by the court, clearly demonstrated that the defendant "sat on its hands" and did not even attempt to comply with this court's orders. *Id*. (cleaned up). The defendant in *Philips* "*knowingly disobeyed*" a discovery order, thereby requiring the court to issue a second order and expressly threaten default judgment. This was not the case here.

Overall, the Court recognizes Plaintiffs' frustration in dedicating more effort than they believe should have been necessary to obtain and review these documents. (ECF No. 471). In addition, Defendants have a history of being sanctioned for spoilation of emails in this case. (ECF No. 487). Yet, the record has only shown that Defendants made mistakes in preserving and producing information, not that they have acted in bad faith or disregarded the Court's orders. Defendants have shown good reasons for the mistakes

14

and delays in producing the sample case files, and all information has been provided at this juncture with ample time for Plaintiffs and their experts to review it. Therefore, the Court concludes that sanctions are not warranted in this instance.

The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented party.

**ENTERED:** April 22, 2024

_____
Cheryl A. Eifert
United States Magistrate Judge