### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF WEST VIRGINIA
### HUNTINGTON DIVISION

| | | |
|---|---|---|
| **Jonathan R., minor, by Next Friend, Sarah DIXON, *et al.,*** | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Class Action |
| | ) | 3:19-cv-00710 |
| v. | ) | |
| | ) | |
| **Jim JUSTICE, in his official capacity as the Governor of West Virginia, *et al.,*** | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFFS' MOTION TO COMPEL

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37.1(c), Plaintiffs move to compel certain discovery which Defendants claim is protected under the deliberative process privilege.

During a deposition of Jeremiah Samples, former Deputy Secretary of the Department of Health and Human Resources ("DHHR," now the Department of Human Services or "DoHS"), Defendants objected repeatedly to Plaintiffs questioning Samples about conversations he had with Bill Crouch, former DHHR Secretary, about issues in West Virginia's child welfare system. In addition, Plaintiffs have recently received privilege logs for documents withheld that are to or from DoHS employees or to or from members of the Governor's staff, based on the deliberative process privilege.

Defendants should not be allowed to use the deliberative process privilege as a shield against all discovery into their internal discussions regarding child welfare issues. First, the deliberative process privilege should not apply in this case where the government's intent is

1

integral to the constitutional law claims at issue. Second, even where the deliberative process privilege applies, courts view the privilege narrowly and perform a balancing test on the documents or testimony sought. Courts regularly deny usage of the deliberative process privilege where the public interest outweighs the government's interest in privacy. Here, all of those factors weigh in favor of disclosure. Third, Defendants' application of the deliberative process privilege is overly broad. Defendants appear to be objecting to the use of *any* internal discussions regarding child welfare issues at DoHS that may or may not have led to policy decisions, despite the fact that the vast majority of discussions were among high-level employees like former Secretary Bill Crouch and former Deputy Secretary Samples which can, in one way or another, be categorized as involving policy. That was their job.

Defendants have withheld over 2,000 documents on this basis. This type of overbroad application should not be countenanced.

Accordingly, Plaintiffs respectfully request that the Court compel Defendants to allow and/or produce this discovery by no later than June 21, 2024.

## BACKGROUND

Plaintiffs noticed and took the deposition of Jeremiah Samples on April 18, 2024. *See* Ex. 1.[1] (transcript of deposition of Jeremiah Samples).[2] During the deposition, Defendants objected on at least nine occasions to certain testimony being provided on the basis of deliberative process privilege as stated below:

- Tr. 62:23-65:16: "Q. You said you were having policy disagreements with Secretary Crouch with respect to child welfare…with respect to child welfare, what were those policy disagreements?" "A . . . We had disagreements over budgetary priorities as it related to child welfare. Specifically, I contended that money should

---

[1] All Exhibits are to the Declaration of Marcia Lowry dated May 23, 2024 ("Lowry Decl.").

[2] The errata of Jeremiah Samples is outstanding and is due to be signed by May 28, 2024.

be shifted to that –.” MR. PEISCH [counsel for DoHS]: “I'm going to object to that answer and ask you not to answer on the grounds of deliberative process privilege. Any advice that you provided to Secretary Crouch, pre-decision on a policy decision of the department, we object on the deliberative process privilege grounds.”

- Tr. 71:23-72:11: “Q. And so with regard to the CPS, you know, not doing their duties, did you have conversations with Mr. Crouch about that issue? A. Yes, ma'am. Q. And what was his position on CPS not doing their duties? MR. PEISCH: I am going to object and instruct the witness not to—only and to the extent these were discussions about specific policy decisions, and they were deliberative conversations about policy decisions.”

- Tr. 80:19- 82:11: “Q. And in terms of the wraparound services, was that something you felt Mr. Crouch could have done more to help that to progress? A. I believed at the time and still believe that we could have all done more to advance those policies more aggressively. . . . And I was very vocal about stating that I did not think we were making enough progress in this area and the others listed in this statement. Q. When you say you were very vocal, who were you talking to that you were very vocal about the amount of progress not being made?” MR. PEISCH: Objection. Deliberative process privilege. MR. WALTERS: You're going to assert the privilege over the individuals he spoke with? MR. PEISCH: I will not assert the privilege over –yes. Actually, I will assert the privilege over that because he has just testified to what he has been saying and what his position is. And I think she is asking him to say who did you convey that specific message to. Q. Did you talk to Bill Crouch about that progress was not made in those specific areas? MR. PEISCH: Deliberative process privilege.”

- Tr. 85:1-86:16: “A similar issue materialized over the workforce crisis. And I contended that vacancy rates throughout the department—you know, DHHR at the time—you had child support enforcement, behavior health, Medicaid, CHIP, family assistance, you know, Office of Drug Control Policy, Social Services, and enormous central bureaucracy. All of those areas had – and the health facilities – and the health facilities. All of those areas had varying degrees – varying degrees of vacancy rates. Some of those positions, substantial amounts, were – positions were vacant for over a year. And while some of those bureaus and programs continued to advocate for those positions, I felt like they should be shifted within our budget and personal service lines to CPS specifically. And that conversations continued through my time at the department in 2022 through the session. Q. Did anything happen as a result of those conversations? A. It did. Q. What happened? A. I worked with the governor's office and Chairman Tarr to have the governor dictate to the department, contrary to the secretary's position, that— MR. PEISCH: Objection. Deliberative process privilege. You can keep going What I think is covered by the deliberative process privilege, you've already said. The Witness: Oh, okay. I'm sorry. A. Contrary to the secretary's position, the department— MR. PEISCH: Same objection.

- Tr. 94:24-95:12: Q. And in terms of child welfare, what were the differences in views on what the problems were? A. I am happy to respond to that but I don't know that my response is not going to be considered. Q. Well, let him – let counsel object. MR. PEISCH: Well, to the extent you are about to disclose information you disclosed to Secretary Crouch in pre-decisional conversations, we object on deliberative process privilege."

- Tr. 137:2-21: Q. But with regard to the problems that you just listed, you thought that Mr. Crouch was aware of the problems but was not taking action and children were being harmed; is that right? A. Yes. Q. I am going to go through and – I understand you might object, but I want to ask this for our record . . .  With regard to the problems that you we were discussing before, what were your conversations with Mr. Crouch? MR. PEISCH: Objection Deliberative process privilege. MR. WALTERS: I'm sorry. Just to make sure. When you make the objection, you are also instructing him not to answer? MR. PEISCH: Yes.

- Tr. 146:14-147:7: "Q. And you had mentioned that he did not -- Mr. Crouch did not want Jeff Pack appointed. Why did he not want Jeff Pack appointed? MR. PEISCH: Objection. Deliberative process privilege. MR. PEISCH: Objection. Deliberative process privilege. MS. TEBOR: This—I mean, this is not a policy decision or a discussion beforehand. He was appointed. MR. PEISCH: The decision to – first, the decision to appoint the BSS –who to appoint the BSS commissioner is a decision of the agency that we think is covered by deliberative process privilege. If he is talking about, you know, how he and Secretary Crouch discussed who to hire for BSS commissioner, we contend that's covered by deliberative process privilege."

- Tr. 150:10-17: Q. Did you have concerns with appointing Ms. Chapman as the commissioner? A. I did. Long term, I did, yes. Q. And what were those concerns? A. I stated to the secretary that I was concerned – MR. PEISCH: Objection. Deliberative process privilege."

- Tr. 184:12-20: Q. Did you have any conversations with Mr. Crouch about preventing DHHR employees from speaking with the legislature? A. I would have, yes, ma'am. Q. Do you recall what those conversations were? A. Just vaguely. MR. PEISCH: Objection. Deliberative process privilege.

The parties were unable to resolve any disagreement regarding the deliberative process privilege at the deposition, instead agreeing that they would need to seek the Court's assistance.

Defendants' discovery objections on the basis of deliberative process privilege also expand to documents. Defendants initially attempted to claw back one document introduced at Samples'

deposition, on the basis of deliberative process privilege. Ex. 2.  This email reflects conversations between Crouch and Samples about ongoing issues at DHHR, including retaliatory practices and a lack of communication/training on the part of caseworkers. *Id.* Defendants ultimately agreed not to claw back this document if Plaintiffs would agree that this did not constitute a waiver of any privilege. Exs. 3, 4 and 5 (emails between Defendants and Plaintiffs).

Moreover, while Defendants only reviewed a subset of documents, Defendants are withholding nearly 2,000 documents on the basis of the deliberative process privilege. On May 9, 2024, Defendants produced a privilege log to Plaintiffs. Ex. 6. This first privilege log covers only emails of the Governor's staff (Brian Abraham and Ann Urling) withheld on the basis of privilege. *Id.*; Lowry Decl. ¶10.  For these two individuals alone, Defendants have withheld 1,495 documents on the basis of deliberative process privilege. Ex. 6. On May 10, 2024, Defendants produced a second privilege log covering emails withheld on the basis of deliberative due process to/from employees of DoHS. Lowry Decl. ¶11; Ex. 7. For these individuals, Defendants have withheld 467 documents. Ex. 7. Neither privilege log attached an affidavit from an agency head attesting to the deliberative process in the withheld documents. Exs. 6 and 7.

Defendants have not reviewed all of the documents they produced and there may well be other documents in their productions that Defendants will argue are covered by deliberative process privilege. Lowry Decl. ¶2. Plaintiffs may only learn of these objections when Plaintiffs attempt to use these documents in connection with depositions or in connection with dispositive motion practice and trial.

The parties met and conferred on May 23, 2024 to ascertain whether they could narrow the issues in dispute with respect to this Motion. Lowry Decl. ¶4. It was determined that no compromise could be reached on narrowing the issues prior to Plaintiffs filing this Motion. *Id.*

The deliberative process privilege is inapplicable in this case and, even if it were, Defendants have not satisfied their burden of proving that it should be applied to the documents at issue. Therefore, all of the foregoing withheld discovery should be produced/provided immediately and by no later than June 21.

### LEGAL STANDARD

Deliberative process privilege generally attaches to material that is "predecisional and deliberative," *City of Va. Beach v. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993), and "bear[s] on the formulation or exercise of agency policy-oriented *judgment*." *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1248 (4th Cir. 1994) (emphasis in original). Courts narrowly construe this privilege and "simple statements of law or evaluations of existing policies . . . do not enjoy the aspects of the give-and-take process necessary to render them deliberative." *Crosby v. U.S.*, No. 07-cv-3668, 2009 U.S. Dist. LEXIS 137650, at *5, 7-8 (D.S.C. Mar. 24, 2009). The agency may lose the privilege "when material is formally or informally adopted as the agency's position or used by the agency in its dealings with the public." *City of Va. Beach*, 995 F.2d at 1253 (internal citations and quotation marks omitted).

Moreover, the privilege does not apply in cases where "the plaintiff's cause of action is directed at the government's intent." *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998); *Est. of LeRoux v. Montgomery Cty.*, No. 22-cv-00856, 2024 U.S. Dist. LEXIS 71544, at *12 (D. Md. Apr. 19, 2024) (collecting cases); *Lawrence v. Suffolk Cnty.*, No. 22-cv-2887, 2022 U.S. Dist. LEXIS 52733, *36-38 (E.D.N.Y. Mar. 23, 2022) (collecting cases); *Children First Found., Inc. v. Martinez*, No. 04-cv-00927, 2008 U.S. Dist. LEXIS 120828, at *8-9 (N.D.N.Y. June 20, 2008) (collecting cases). As courts have noted, "[i]f the plaintiff's cause of action is directed at the government's intent,

however, it makes no sense to permit the government to use the privilege as a shield . . . . [such as] in a Title VII action or constitutional claim for discrimination." *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d at 1424.

Moreover, even if the privilege attaches to the requested information, the party seeking disclosure may overcome the claim of privilege by showing a sufficient need for the material in the context of the facts or the nature of the case. *See, e.g., Cipollone v. Liggett Group, Inc.*, 812 F.2d 1400 (4th Cir. 1987); *see also In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 n.16 (1975)); *see also Redland Soccer Club v. Dep't of the Army*, 55 F.3d 827, 854 (3d Cir. 1995) ("The privilege, once determined to be applicable, is not absolute."). "These limitations reflect the careful tailoring of the privilege to achieve its purpose of protecting confidentiality without unduly inhibiting the truth-finding process of litigation." *In re Grand Jury*, 821 F.2d at 959.

When balancing the parties' interests, the court should consider, "including (1) the relevance of the evidence sought, (2) the availability of other evidence, (3) the role of the government in the litigation, and (4) the potential consequences of disclosure of the information." *Murray Energy Corp. v. McCarthy*, No. 14-cv-39, 2015 U.S. Dist. LEXIS 152914, at *7-8 (N.D.W. Va. Nov. 12, 2015) (collecting cases); *see Cipollone, Inc.*, 812 F.2d 1400.

Courts in this Circuit also find that the agency head, not merely their counsel, must personally have considered whether a document is covered by deliberative process privilege. *See, e.g.*, *Est. of LeRoux*, 2024 U.S. Dist. LEXIS 71544, at *13-14 ("To assert the deliberative process privilege, the government usually must: a) Invoke it through an agency head or her subordinate who is personally knowledgeable about the information sought to be protected; b) Identify the specific information that is protected by the privileged; c) Give reasons for maintaining the

confidentiality of the information; d) Demonstrate that the privileged information is both pre-decisional and deliberative."); *U.S. v. Berkeley Heartlab, Inc.*, No. 14-cv-00230, 2017 U.S. Dist. LEXIS 93582, at *11 (D.S.C. June 19, 2017) (same); *Hugler v. BAT Masonry Co.*, No. 15-cv-28, 2017 U.S. Dist. LEXIS 49027, at *9 (W.D. Va. Mar. 31, 2017) (same).

## ARGUMENT

### A.    The Deliberative Process Privilege Does Not Apply Because Plaintiffs' Suit is Directed at the Government's Intent

To establish a violation of substantive due process, Plaintiffs must show that Defendants were deliberately indifferent to a substantial risk of harm to foster children. *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 175 (4th Cir. 2010). "Courts have made clear that . . . the deliberative process privilege does not apply where the plaintiff's cause of action is directed at the government's intent." *See, e.g., Est. of LeRoux*, 2024 U.S. Dist. LEXIS 71544, at *12  (collecting cases); *In re Stone v. Trump*, 356 F. Supp. 3d 505, 515 (D. Md. 2018); *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d at 1424; *Children First Found., Inc.*, 2008 U.S. Dist. LEXIS 120828, at *8-9 (collecting cases); *Jones v. City of College Park*, 237 F.R.D. 517, 521 (N.D. Ga. 2006); *U.S. v. Lake Cnty. Bd. of Comm'rs*, 233 F.R.D. 523, 527 (N.D. Ind. 2005). Here, Plaintiffs' claims are directed at the government's intent and whether it knew or should have known of the substantial risk of harm that to which the Plaintiff children were exposed and failed to take sufficient action to mitigate this risk. Therefore, Defendants cannot use the deliberative process privilege to shield relevant evidence of their intent. The privilege simply does not apply to this kind of action.

Indeed, as illustrated by their objections throughout the deposition of Jeremiah Samples, Defendants are claiming privilege over almost all documents and communications that pertain to any conversations between high level DoHS officials about child welfare issues, including high

caseloads, a lack of placements and a failure to provide services to foster children and their families—*i.e.* seminal issues in Plaintiffs' case.

Jeremiah Samples was the Deputy Secretary of DHHR from 2013-2022 and worked directly with then-Secretary of DHHR Bill Crouch on issues related to child welfare. Ex. 1 (Tr. 13:14-14:1). During the Samples deposition, defense counsel objected to almost every instance in which Plaintiffs' counsel asked about conversations between Samples and Crouch regarding issues at DHHR because those issues may have led to certain policy actions (or inaction). For example, Samples testified that with respect to various issues at DoHS "Mr. Crouch was aware of the problems but was not taking action and children were being harmed." Ex. 1 (Tr. 137:2-21). Defense counsel, however, blocked Plaintiffs from asking about the conversations between Crouch and Samples so as to understand what exactly Crouch was aware of when he failed to act. Where a key official's knowledge is at issue in the lawsuit's claim, the deliberative process privilege is inapplicable. Nor were there any policy issues on which there was deliberation except for Crouch's potential refusal to take action. This is not a legitimate exercise of the deliberative privilege even if the privilege applies at all in this case.

Plaintiffs have scheduled the depositions of numerous former and current employees at DoHS, including former Secretary Bill Crouch and current Secretary Cynthia Persily, for June and early July. Lowry Decl. at ¶3. Plaintiffs fully expect that defense counsel will object to any questions pertaining to discussions regarding child welfare issues and that this will significantly hamper the depositions. Thus, Plaintiffs respectfully request that the Court require Defendants to allow their witnesses to answer questions similar to those asked of Samples.

Moreover, Defendants are withholding nearly 2,000 documents on the grounds of deliberative process privilege. While Plaintiffs have no way of knowing exactly what is in those

emails, it is clear from the one document that Defendants initially tried to claw back that the information is likely to be highly relevant to Plaintiffs' claim and to the government's knowledge of ongoing harm to children.  In the email that Plaintiffs identified as an exhibit during Jeremiah Samples' deposition, Sample and Crouch discuss a report that was issued by the foster care ombudsman and what should be done about the report. Ex. 2; Ex. 8 (Ombudsman Report). As Samples states in his email to Crouch dated May 19, 2021, "the report reflects badly on child welfare and reenforces what we hear from multiple stakeholders." Ex. 2. Crouch responds that "we will not own the Ombudsman Report." Samples then responds that:

> Progress has been made in some areas but ***overall results are still poor***. This report is a starting place but after some conversations with the Ombudsman it could have hit a lot harder. We have mostly good people that do their best but there are critical breakdowns occurring. On the lower end of the bell curve of our workforce, some of these breakdowns have resulted in terrible outcomes for kids and those cannot be defended. ***There is a lack of policy integrity, and thus practice, across the front lines. Our workers are inundated with paperwork and our management structure has too many levels with too many balls to juggle at critical junction points to assist and hold accountable bad practice/actors*** . . . ***Our vacancy rates are above 20% and those workers remaining have caseloads that are entirely too high to effectively manage.  This is in some ways shielded because we use a ratio based on case vs child and that doesn't account for large families of very troubled children that have diverse needs.*** This has translated into shortcuts and triage practices that leaves our critical partners in the Courts, prosecutor offices, provider community and amongst foster parents going without information or even returned phone calls in crisis. ***We have seen a relative increase in the number of kids going out of state and a breakdown in provider infrastructure, part but not all of which is COVID related, that inhibits timely placements. We still have way too many workers staying in hotels and county offices with kids. We still have too many kids that get stuck in placements because we have no where else to send them but out of state.*** Our progress on restructuring the placement system has been slow and, while we are closers than we were, the hardest part of the road is still ahead. Ex. 1.

Samples ultimately lays out what steps he thinks DoHS needs to undertake and states that:

> My biggest concern with the Ombudsman report is that it ***validated concerns we already had and added context to them. It also reenforced what legislators hear***

10

> *from their constituents.* Ultimately, we have very serious structural and management issues on top of unprecedented need in the state. I believe our response publicly but also internally has to own this or we risk continued terrible outcomes. Ex. 2.

These emails show how important information regarding the discussion of child welfare issues at DoHS is to this action and to Plaintiffs' claims. Thus, deliberative process privilege should not apply in this action.

**B. Defendants' Theory of "Predecisional" is Overly Broad and Defendants Have not Made the Detailed Showing Necessary to Withhold Documents or Block Deposition Testimony Under the Deliberative Process Privilege**

Even if the deliberative process privilege applies to this case, and it should not, Defendants' view of deliberative process privilege is overly broad and neither their privilege logs nor their objections during the deposition of Jeremiah Samples meet the detailed showing necessary to withhold documents based on the deliberative process privilege. "While the government need not anchor documents to a single discrete decision amidst ongoing deliberative processes, the Fourth Circuit has warned that an overly lax construction of the term 'predecisional' submerges the rule of disclosure under the exemption." *Crosby*, 2009 U.S. Dist. LEXIS 137650, at *6 (citing *City of Va. Beach*, 995 F.2d at 1255); *see also Coastal States Gas Corp. v. Dep't. of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) ("[C]haracterizing these documents as 'predecisional' simply because they play into an ongoing audit process would be a serious warping of the meaning of the word."). The privilege "does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment." *Solers, Inc. v. IRS*, 827 F.3d 323, 329-30 (4th Cir. 2016) (quoting *Ethyl Corp.*, 25 F.3d at 1248). Furthermore, "purely factual material does not fall within the exemption unless it is inextricably intertwined with policymaking processes such that revelation of the factual material would simultaneously expose protected deliberation." *Id.* at 330 (quoting *City of Va. Beach*, 995 F.2d at 1253).

For these reasons, the Defendants must make a specific and detailed showing that the information sought to be withheld does indeed fall within the privilege. *Keeper of the Mts. Found. v. DOJ*, 514 F. Supp. 2d 837, 852 (S.D. W. Va. 2007) (government must provide supporting affidavits, which "must be relatively detailed and nonconclusional"). Defendants have failed to do so.

From their objections during the Samples Deposition and from their privilege log, Defendants appear to be withholding any and all documents and preventing any discovery into discussions of the substantial problems in the child welfare system among key officials that may or may not have been directly involved in formulating agency policy. Defendants' privilege log contains descriptions such as the following:

- "Internal, pre-decisional deliberations related to use of virtual visits to foster children."

- "Internal, pre-decisional deliberations regarding potential steps to improve contact times with foster children."

- "Internal, pre-decisional deliberations regarding handling of educational neglect referrals."

- "Internal, pre-decisional deliberation related to QRTP policy."

- "Internal, pre-decisional deliberation related to therapeutic foster care program."

- "Internal, pre-decisional deliberations regarding five-year prevention plan."

- "Internal, pre-decisional deliberation related to safety assessment policy."

*See* Ex. 7.

There are numerous similar examples. These relatively vague and generic entries lack the sufficient level of detail and specificity to meet Defendants' burden of showing that the information withheld was "a ***direct*** part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Keeper of the Mts. Found.*, 514 F. Supp. 2d at 851 (emphasis added) (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C.

Cir. 1975)); *see also Coastal States Gas Corp.*, 617 F.2d at 867 ([T]he deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process."); *Solers, Inc.*, 827 F.3d at 329; *City of Va. Beach*, 995 F.2d at 1253; *Est. of LeRoux*, 2024 U.S. Dist. LEXIS 71544, at *13-14.

Lastly, there is no evidence that the head of DoHS reviewed the documents and is asserting deliberative process privilege as is required. *See, e.g., Berkeley Heartlab, Inc.*, 2017 U.S. Dist. LEXIS 93582, at *11; *Hugler,* 2017 U.S. Dist. LEXIS 49027, at *9.

Ultimately, the sheer volume of documents—nearly 2,000—that Defendants seek to withhold on the basis of this privilege is itself indicative of the overbreadth of their claim. Cases addressing application of this privilege typically involve only a handful of documents, where the facts and circumstances concerning them are fully explored and evaluated to determine whether the privilege applies to the information within them. *See, e.g.*, *Keeper of the Mts. Found.*, 514 F. Supp. 2d at 851 (reviewing application of privilege to four email exchanges); *Est. of LeRoux*, 2024 U.S. Dist. LEXIS 71544, at *17-18 (two memoranda); *City of Va. Beach*, 995 F.2d at 1253 (30 documents). Surely, Defendants' assertion of the privilege over this many documents is inconsistent with courts' admonition that the privilege should be applied "as narrowly as consistent with efficient Government operation." *Coastal States Gas Corp.*, 617 F.2d at 868; *accord Crosby* 2009 U.S. Dist. LEXIS 137650, at *5 (quoting *Wolfe v. Dep't of Health and Human Servs.*, 839 F.2d 768, 773-774 (D.C. Cir. 1988)).

## C.     The Equities Weigh in Favor of Disclosure

"Even if the Court determines that the privilege applies, the privilege is not absolute; rather, courts must balance the public interest in nondisclosure with the need for the information as evidence." *Est. of LeRoux*, 2024 U.S. Dist. LEXIS 71544, at *16. "Applying this balancing, courts

have routinely found that interest in disclosure outweighs the interest in privacy in civil rights cases." *Id.* Thus, even if the privilege applies in this case, and even if the privilege attaches to the discovery requested, this Court should nevertheless compel disclosure because the need for the information in this case outweighs the government's interest in confidentiality." *See, e.g., Harrison v. Shanahan*, No. 18-cv-641, 2019 U.S. Dist. LEXIS 86589, at *19 (E.D. Va. May 22, 2019); *Stone*, 356 F. Supp. 3d at 515; *In re Grand Jury*, 821 F.2d at 959; *NLRB*, 421 U.S. at 149 n.16. Specifically, the government's deliberate indifference is at issue, the evidence is highly relevant, other evidence is not available, and the potential consequence of the disclosure of this information is minimal and outweighed where the information is central to the issues in the case. *Murray Energy Corp*, 2015 U.S. Dist. LEXIS 152914, at *7 (collecting cases); *see Burbar v. Inc. Vill. Of Garden City*, 303 F.R.D. 9, at 15 (E.D.N.Y. 2014).

Indeed, numerous courts have found that the deliberative process privilege is inappropriate in civil rights actions. *Est. of LeRoux*, 2024 U.S. Dist. LEXIS 71544, at *17 (collecting cases). "The interest of justice in full and open discovery of these matters, as well as the public interest in ensuring that the government functions properly and effectively, outweigh any governmental interest in this case in encouraging a frank internal discussion." *Crosby*, 2009 U.S. Dist. LEXIS 137650, at *8. The urgency and the stakes of this litigation could not be higher. Thus, all factors weigh in favor of disclosure.

First, the requested discovery is highly relevant to establishing deliberate indifference. The deposition testimony sought is particularly instructive. Defendants objected to Plaintiffs asking essentially any questions regarding conversations between former Deputy-Secretary Samples and former Secretary Crouch or anyone else about the issues that existed in West Virginia's child welfare system. Plaintiffs expect that Defendants will likewise object to questions regarding

similar discussions between high-ranking agency officials in upcoming depositions. Moreover, between the documents of DoHS executives and the Governor's staff, DHHR is thus far withholding nearly 2,000 documents on the basis of deliberative process privilege. This information could not be more relevant, especially where Plaintiffs must show that Defendants acted with deliberate indifference.

The document discussed above that was marked as an exhibit during the Samples deposition and that Defendants initially attempted to clawback is also telling. In this email exchange between former Deputy Secretary Samples and former Secretary Crouch, Crouch tells Samples that DoHS will "not own" a report from the ombudsman that reflects poorly on the West Virginia child welfare system and that, as Samples states, "validated concerns we already had and added context to them." Ex. 1 (Tr. 183:1-2). While Plaintiffs expect that Defendants will argue that Plaintiffs could use circumstantial or indirect evidence to prove Defendants' deliberate indifference (e.g. that the number of children sent out of state is still high), evidence such as the email between Samples and Crouch is far more telling. Moreover, this evidence does not otherwise exist due to Defendants' spoliation as well as their continuing pattern and practice of hiding relevant information from the public and from the legislature as discussed below.

The descriptions of the documents withheld are telling and illustrate that they are highly relevant to Plaintiffs' claims. For example, in Defendants privilege log listing emails of the DoHS employees withheld on the basis of privilege, there are numerous examples of emails that are highly relevant to Plaintiffs' claims, including with regard to caseworker caseloads, inadequate placement array and failure to provide necessary services to children. *See, e.g.,* Ex. 7 CTRL0000704847.0002 ("Report presentation reflecting and created for purpose of aiding internal, pre-decisional deliberations related to CQI [continuous quality improvement] compliance

for children's mental health services."); D002780899 (one of numerous emails listed as "Internal, pre-decisional deliberation related to [DoHS's Qualified Residential Treatment Program, or their program to address the needs of a juvenile with serious emotional or behavioral disorders]" from Laura Barno, Coordinator-Community Based Options)[3]; D002780485 (one of numerous emails listed as "Internal, pre-decisional deliberation related to therapeutic foster care program" from Carla Harper, program manager; D002781229 (one of numerous emails listed as "Internal, pre-decisional deliberation related to [psychiatric residential treatment facility]" from Laura Barno to Jeffrey Wiseman, Assistant to the Deputy Secretary); D002781242 (Email from Laura Barno to Cammie Chapman and others listed as "Internal pre-decisional deliberation related to [Department of Justice Memorandum of Understanding"); D002782000 (one of numerous emails listed as "Internal, pre-decisional deliberation related to placement process" from Heidi Staats, Office Director, to Cammie Chapman and others); D002785555 (Email listed as "Internal, pre-decisional deliberation related to strategies for improving staffing turnover and vacancies" from Tara Buckner, Chief Financial Officer, to Bill Crouch and others); CTRL0000409221 (email from Amy Hymes, Deputy Commissioner of Operations, to Jeffrey Pack, Commissioner of the Bureau of Social Services and others, entitled "Time to First Contact" which is listed as "Internal, pre-decisional deliberation regarding potential steps to improve contact times with foster children."). These emails would directly support Plaintiffs claims and common questions as certified by the Court. *Jonathan R. v. Justice*, 344 F.R.D. 294, 305 (S.D. W.Va. Aug. 17, 2023) ("Plaintiffs have demonstrated that DHHR maintains an inadequate array of placements to meet the needs of foster children."); *Id.* at 309 ("The court concludes that Plaintiffs have presented sufficient evidence to demonstrate that high caseloads and chronic understaffing are Defendants' policy or practice.")

---

[3] Laura Barno was another individual whose emails Defendants deleted. ECF No. 377-7 at 2.

*Id.* at 313 ("The court finds sufficient evidence of systemic deficiencies in the availability of community-based services for children with disabilities.").

The Governor staff's emails are also highly relevant. For example, CTRL0001537737 is an email to Ann Urling, Deputy Chief of Staff for Governor Justice, a named Defendant, and the description is "internal, pre-decisional deliberation related to abuse and neglect staff."[4] Ex. 6 at 95. As discussed above, caseworker turnover and attendant overly high caseloads are integral to Plaintiffs' claims. *Jonathan R.*, 344 F.R.D. 294 at 309.

The information sought by Plaintiffs cannot be obtained from other sources. First, this type of direct evidence of awareness  of issues in the child welfare system is especially important given Samples' testimony that DoHS withheld and continues to withhold and hide evidence of the egregious issues at DoHS from the public and from the legislature. For example, DoHS under former Secretary Bill Crouch and during the current administration has threatened the foster care ombudsman, who is responsible for monitoring the children welfare system, and told her to withhold information from the legislature and the public. Samples stated during his deposition:

> It was stated to me that Secretary Crouch at one point had met with the ombudsman and applied pressure about discussions that she may or may not want to have with the legislature. And it had been indicated that my name had been brought up, to be very careful about conversations that she had with me, specifically in my work at the legislature. There were concerns presented about discussions with Ms. Chapman not wanting information released from the ombudsman. And so as we began to reorganize or plan for the reorganization of DHHR, that specific issue became a top priority and continued to be a priority even through this past year. Ex. 1 at Tr.32:12-33:3.

Samples stated that he was made aware of this issue in 2022 and that the Ombudsman told Samples that "she was called in to Secretary Crouch's office. And I don't recall specifically how

---

[4] Defendants previously informed Plaintiffs that Governor Justice does not use email. Ex. 377-7 at 4. Thus, Plaintiffs requested that Defendants produce the emails of Governor Justice's Chief of Staff, Brian Abraham, and Deputy Chief of Staff, Ann Urling.

she worded it. But the tone of the conversation was that it was a threat, to be very careful about conversations that she had with the legislature and documents that she would release. Q. Did you understand that Secretary Crouch was telling her that he did not want her to be forthcoming and fully disclose her findings? A. That was my analysis of the situation, yes. " Ex. 1 (Tr. 34:3-16).

Samples stated that he was also informed that the Ombudsman continued to have problems with DoHS not wanting information made public even after Crouch's departure. Specifically, the foster care ombudsman told Samples that "she was continuing to have issues with [Deputy Secretary Cammie Chapman] as it related to gaining access to information, to meetings and disagreements. My understanding, disagreements over the ombudsman's report to the legislature." Ex. 1 (Tr. 35:8-38:5); *see also* Tr. 39:7-14 (Q. So in your role at the legislature, you had conversations with the ombudsman where she specifically mentioned Ms. Chapman as not willing to provide access or being difficult to get access to certain information due to Ms. Chapman's interference? A. That's correct.").

Samples also testified that Crouch had sent an email to employees at DHHR requesting that they not release information to the legislature so that Crouch could "keep our staff from telling the legislature information that may ultimately result in some political embarrassment" for Crouch. Ex. 1 (Tr. 184: 1-3). To the extent that Defendants are arguing that there are other sources for this information, Defendants have strategically undertaken to hide evidence of their failings from the public eye.

Moreover, Plaintiffs cannot obtain this evidence from another source due in large part to Defendants' failure to preserve numerous agency heads' emails, including the emails of Bill Crouch and Linda Watts. Had Defendants preserved the evidence and produced it to Plaintiffs, the evidence of subjective awareness may have been contained in those emails. Defendants argued

extensively in connection with Plaintiffs' motion for sanctions that "Plaintiffs have not shown that the deleted emails could not be replaced through other discovery, such as audits, reports, depositions, written discovery, or even stipulations." *Jonathan R.*, 2024 U.S. Dist. LEXIS 56489, at *24.[5]  Defendants also argued repeatedly throughout their briefing on the motion for sanctions that other emails that they had not deleted could replace the emails that they spoliated. ECF No. 399 at 7 ("DHHR, working together with WVOT, has retrieved documents from, to, or copying six of the seven custodians at issue from the accounts of current DHHR employees."); ECF No. 437 at 50:13-25 (January 17, 2024 Hearing Transcript: "THE COURT. So you – what you have done is you've gone back and you've run searches of other people's e-mails that were not originally named as custodians, but that you think might have – MS. BROWN: I believe it was every employee of the Bureau of Social Services. THE COURT: Okay. And you've done – you've looked for CC's and BCC's and run the names of these seven people and gotten all of those – all of that information? MS. BROWN: Yes, Your Honor. THE COURT: And where is that information now? MS. BROWN: I believe that some, but not all of the responsive e-mails have been produced."). Defendants now seek to hide that same evidence from Plaintiffs by claiming that it all is protected by the deliberative process privilege. This should not be countenanced. Plaintiffs have "demonstrated a compelling need for the materials in its litigation" and "one that could not be satisfied in other ways." *See Cipollone v. Liggett Group*, No. 86-cv-1198, 1987 U.S. App. LEXIS 19775, at *7 (4th Cir. Feb. 13, 1987).

---

[5] While Plaintiffs acknowledge that the Court ruled that Plaintiffs could also use objective evidence to show deliberate indifference, the Court did not find that subjective evidence was irrelevant or that Plaintiffs should not have access to evidence of subjective intent. *Id.* at *38. Plaintiffs also expect that Defendants will rely on the Court's language in its March 28, 2024 order citing to the deliberative process privilege. *See Jonathan R. v. Justice,* 2024 U.S. Dist. LEXIS 56489, at *38 (S.D. W.Va. Mar. 28, 2024). However, the issue of whether deliberative process privilege applies in this case was not before the Court.

Third, the government's deliberative process is not incidental to this case. Just the opposite: this entire case centers around the policies, practices, actions, and inactions of the government. The government is the Defendant, and this suit targets the government's actions and inactions. Accordingly, this factor weighs in favor of disclosure.

Moreover, the consequences of disclosure must be weighed against the stakes of the litigation. This civil rights class action alleges that West Virginia is deliberately indifferent to the substantial risk of harm posed to its foster children, and as a result of Defendants' deliberate indifference, thousands of foster children in West Virginia are subject to ongoing and irreversible harm. Thus, the balance of the equities is significantly in favor of the production of withheld discovery. *See Est. of LeRoux*, 2024 U.S. Dist. LEXIS 71544, at *17 (collecting cases).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court compel Defendants to allow the requested discovery from Jeremiah Samples and to produce any documents withheld on the basis of deliberative process privilege by no later than June 21, 2024.

Dated: May 23, 2024

Respectfully submitted,

/s/ *Marcia Robinson Lowry*_____
Marcia R. Lowry, *admitted pro hac vice*
Julia Tebor, *admitted pro hac vice*
Laura Welikson, *admitted pro hac vice*
A Better Childhood
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel.: (646) 795-4456
Fax: (212) 692-0415
mlowry@abetterchildhood.org
jtebor@abetterchildhood.org
lwelikson@abetterchildhood.org

/s/ Richard W. Walters
Shaffer & Shaffer, PLLC
Richard W. Walters, WVSB #6809
rwalters@shafferlaw.net
J. Alexander Meade, WVSB #13021
ameade@shafferlaw.net
2116 Kanawha Boulevard, East
P.O. Box 3973
Charleston, WV 25339
Tel: (304) 244-8716
Fax: (304) 344-1481

/s/ J. Marty Mazezka
Disability Rights of West Virginia
J. Marty Mazezka, WVSB #4572
jmazezka@drofwv.org
5088 Washington St. W., Suite 300
Charleston, WV 25301
Tel: (304) 346-0847
Fax: (304) 346-0687