**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

| | | |
|---|---|---|
| Jonathan R., minor, by Next | ) | |
| Friend Sarah DIXON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:19-cv-00710-JRG |
| | ) | |
| Jim JUSTICE, in his official capacity | ) | |
| as the Governor of West Virginia, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFFS' MOTION TO COMPEL**

Defendants have provided Plaintiffs with nearly 700,000 documents in response to Plaintiffs' document requests, including tens of thousands of emails of public servants at high levels of the West Virginia Department of Human Services ("DoHS") and the Governor's office, many of whom have key roles in policy development. Of these hundreds of thousands of documents, Defendants withheld only 2,610 documents on claims of deliberative process privilege, based on the individual review of each document. Defendants similarly maintained properly narrow deliberative process privilege objections during Plaintiffs' deposition of third-party witness Jeremiah Samples, raising the objection only 17 times throughout a deposition lasting over 4 hours. *See* ECF No. 501-2.  Nevertheless, Plaintiffs now move to compel the production of *all* information Defendants have withheld on deliberative process privilege grounds and seek to prohibit Defendants from objecting to deposition questions that solicit information protected by the privilege.

Plaintiffs' motion to compel should be denied because it is untimely, and because Plaintiffs' argument that deliberative process privilege does not apply in this case is not supported by the law.

## ARGUMENT

I. **Plaintiffs' Motion to Compel is Untimely and Threatens Dates and Deadlines Set Forth in the Scheduling Order.**

"Motions to compel or other motions in aid of discovery not filed within 30 days after the discovery response or disclosure requirement was due are waived, and in no event provide an excuse, good cause or reason to delay trial or modify the scheduling order."  L.R. Civ. P. 37.1(c). "The 30-day deadline may be extended by court order for good cause shown, or by stipulation of the parties, so long as the extension does not interfere with the scheduling order." L. R. Civ. P. 37.1(c).

For example, in *Ricketts v. NV5, LLC*, the court denied an untimely motion to compel when discovery was set to close soon after the untimely motion and the plaintiffs had ample opportunity to seek the discovery at issue "prior to this late date," but "failed to move for, or indeed, even address, extending the thirty-day timeframe to file a motion to compel."  *Ricketts v. NV5, LLC*, No. 2:21-CV-00056, 2022 WL 1164733, at *3 (S.D.W. Va. Mar. 17, 2022), *report and recommendation adopted,* No. 2:21-CV-00056, 2022 WL 949947 (S.D.W. Va. Mar. 29, 2022).

a. **Plaintiffs' Motion to Compel Privileged Testimony of Jeremiah Samples is Untimely.**

Plaintiffs deposed Jeremiah Samples, former deputy secretary of DHHR (reorganized this year as DoHS), on April 18, 2024.  *See* ECF No. 501-2.  During the deposition, Defendants objected to questions likely to elicit responses by Mr. Samples that would reveal information protected by deliberative process privilege.  Plaintiffs waited until May 20, 2024, which was 32 days after the deposition, to reach out to Defendants' counsel to see if Defendants would oppose this motion to compel, Ex. 1, and they did not file the motion until May 23, 2024—35 days after the deposition.  *See* ECF No. 501.

The parties did not stipulate to an extension of time for Plaintiffs to file their motion to compel, and Plaintiffs have made no attempt to show good cause for their delay, thus waiving any such argument. *Sanitary Bd. of City of Charleston, W. Virginia v. Colonial Sur. Co.*, No. 2:18-CV-01100, 2020 WL 2044622, at *2 (S.D.W. Va. Apr. 28, 2020) (finding that a party waived its right to file a motion to compel by failing to timely file it, stipulate to an extension, or demonstrate good cause for an extension).   In fact, as Plaintiffs state, the Parties conferred on the date of the deposition (April 18) as to their respective stances on the deliberative process privilege, at which point Plaintiffs knew the Court's intervention would be necessary to resolve the issue, but Plaintiffs did not follow-up with Defendants on the subject for another 32 days. *See* Ex. 1.

Further, granting Plaintiffs' motion to compel would "interfere with the scheduling order." L. R. Civ. P. 37.1(c).  Plaintiffs are asking this Court to prohibit Defendants from objecting to Mr. Samples providing testimony based on deliberative process privilege, and Plaintiffs presumably want to re-depose Mr. Samples after such an order is issued.  However, Plaintiffs' motion to compel does not become ripe until June 13 and, under the Amended Scheduling Order, the deposition deadline and close of discovery is July 5, 2024, and the deadline to file dispositive motions is July 8. ECF No. 491.  In total, 17 depositions are either scheduled or proposed to occur in the 21 business days from the date of this filing to the dispositive motion deadline. Ex. 2 ¶ 2.  As the deposition cutoff and dispositive motion dates approach, Plaintiffs still have not contacted Defendants to schedule any date to resume the deposition of Mr. Samples, and Defendants are not aware of any attempt by Plaintiffs' counsel to coordinate with Mr. Samples or his counsel either. Ex. 2 ¶ 3.  Therefore, even if this Court issues a decision on Plaintiffs' motion to compel before the July 5 deposition deadline, it seems highly unlikely that Plaintiffs could re-depose Mr. Samples prior to July 5.

3

Further, although not entirely clear, Plaintiffs' motion suggests that they may seek to delay currently scheduled depositions of current DHHS employees until this Court rules on their motion to compel, or seek to re-depose those witnesses after this Court issues a decision, if that decision limits Defendants' ability to object on deliberative process privilege grounds.[1]  This too would interfere with the scheduling order by delaying the end of depositions beyond July 5.

Plaintiffs' delay in filing their motion to compel with respect to Mr. Samples's testimony "calls into question the diligence of Plaintiffs in pursuing this line of discovery, as well as the estimated time frame for completion of the deposition." *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, No. 5:13-CV-00527-F, 2016 WL 3135732, at *2 (E.D.N.C. June 1, 2016) (finding good cause did not exist to extend the deposition deadline when the extension would surpass the dispositive motion deadline and there was question as to the timeframe for completion of the outstanding deposition and the diligence of proponents of the extension).

> **b. To the Extent Plaintiffs Move to Compel Privileged Documents Listed in Privileged Logs Provided to Plaintiffs Before April 23, 2024, the Motion is Untimely.**

Defendants first produced a privilege log listing ESI withheld based on Deliberative Process Privilege four years ago, in April of 2020.  Ex. 2 ¶ 4.  In January 2024, Defendants produced an additional privilege log describing documents that Defendants withheld based on deliberative process privilege. Ex. 2 ¶ 5.  Documents in the January 2024 privilege log were withheld based on deliberative process privilege and fell into two categories: (1) documents that

---

[1] ECF No. 501 at 9 ("Plaintiffs have scheduled the depositions of numerous former and current employees at DoHS, including former Secretary Bill Crouch and current Secretary Cynthia Persily, for June and early July. Lowry Decl. at ¶3.  Plaintiffs fully expect that defense counsel will object to any questions pertaining to discussions regarding child welfare issues and that this will significantly hamper the depositions. Thus, Plaintiffs respectfully request that the Court require Defendants to allow their witnesses to answer questions similar to those asked of Samples.").

Defendants' counsel manually reviewed and concluded were protected by deliberative process privilege; and (2) documents that Defendants withheld solely because a technology assisted review ("TAR") (also called "predictive coding") tool identified the document as likely protected by deliberative process privilege, without Defendants' counsel manually reviewing the documents. Ex. 2 ¶ 5.

After Defendants produced the January 2024 privilege log, Plaintiffs' counsel objected to Defendants using TAR to identify and withhold documents based on deliberative process privilege. In January 2024, the Parties held two meet-and-confers to discuss Defendants' use of TAR to identify and withhold deliberative process information specifically. *See* Ex. 2 ¶ 6. Through these discussions, at the request of Plaintiffs' counsel, Defendants agreed to forego the use of TAR for identifying and withholding documents based on deliberative process privilege. Ex. 2 ¶ 7. As a result, over the ensuing months, Defendants' counsel spent at least 47 hours manually reviewing documents for deliberative process privilege. Ex. 2 ¶ 8. On May 8, 2024, and then on May 10, 2024, after Defendants' counsel had completed this manual review, Defendants provided an updated privilege log listing documents withheld based on deliberative process privilege, which was limited to documents that Defendants had manually reviewed. Ex. 2 ¶ 9.

The appropriate time for Plaintiffs to move to compel based on their argument that deliberative process privilege does not apply in this case was <u>before</u> Plaintiffs insisted that Defendants complete this expensive, time-intensive manual review, not after.

In any event, the April 2020 and January 2024 privilege logs listed hundreds of documents Defendants had withheld on deliberative process privilege grounds, based on Defendants' manual review. Plaintiffs' motion to compel production of these documents was not filed within 30 days of receiving those privilege logs, and thus Plaintiffs' motion is untimely with respect to those

documents. Defendants acknowledge that Plaintiffs' motion to compel is timely with respect to documents listed in Defendants' May 2024 privilege logs that were not also listed on Defendants' prior privilege logs.

## II. Wholesale Rejection of the Deliberative Process Privilege is Inappropriate Even if Litigation Hinges on the Government's Intent.

The deliberative process privilege protects certain communication between government officials because of "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *In re Camp Lejeune Water Litig.*, No. 7:23-CV-897, 2023 WL 8791671, at *2 (E.D.N.C. Dec. 19, 2023) (quoting *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001)).

Plaintiffs argue that the deliberative process privilege is inapplicable in <u>any</u> litigation "where the plaintiff's cause of action is directed at the government's intent." ECF No. 501, at 8 (quoting *Est. of LeRoux v. Montgomery Cnty., Maryland*, No. 8:22-CV-00856-AAQ, 2024 WL 1703939, at *6 (D. Md. Apr. 19, 2024) (unpublished)).

This is not true. Deliberative process privilege generally continues to apply in cases in which the "government's intent" is at issue, unless Plaintiffs demonstrate "an overriding need for the information." *Heyer v. U.S. Bureau of Prisons*, No. 5:11-CT-03118, 2014 WL 4545946, at *3 (E.D.N.C. Sept. 12, 2014). Moreover, even when a complaint challenges a governmental decision-making process, an exception to the privilege would require "the sort of bad faith, improper motive, or fraud on the part of government officials that would warrant a blanket denial of the deliberative process privilege." *Id.* "From a practical standpoint, if an exception to the deliberative process privilege provided that any challenge to the process by which an agency reached a decision was

6

sufficient, the exception might swallow the rule." *Id.* at \*5 (quoting *Delaware Riverkeeper Network v. Delaware River Basin Comm'n*, 300 F.R.D. 207, 214 (D.N.J. 2014)).

In *Heyer*, the plaintiffs argued that deliberative process privilege did not apply in their case, in which they alleged that certain prison conditions gave rise to Substantive Due Process violations. *Id.* at \*1. The court in *Heyer* rejected the plaintiffs' argument that government intent created an exception to the deliberative process privilege, even when the plaintiffs' claims relied on deliberate indifference, because "[t]he integrity of the decision-making process . . . is not the gravamen of [the plaintiffs'] case." *Id.* at \*4 (collecting cases).

Plaintiffs' argument that deliberative process privilege does not apply in cases where governmental intent is at issue is not supported by the caselaw on which they rely. To the contrary, each in-circuit case that Plaintiffs cite in support of this position resulted either in preserving the deliberative process privilege or has been limited in relevant part on reconsideration.

In fact, Plaintiffs' cited cases illustrate that courts in the Fourth Circuit rarely, if ever, find that deliberative process privilege globally inapplicable to a case, or even to a full set of documents. *See Heyer*, 2014 WL 4545946, at \*4 ("The court is not persuaded by plaintiffs' argument, to the extent that the exceptions they invoke apply in the Fourth Circuit."). For example, in a decision on which Plaintiffs rely, the court in *LeRoux* acknowledged that the plaintiff's claims hinged on the intent of the government but did <u>not</u> throw out the deliberative process privilege; rather, it conducted a fact-specific analysis of the withheld documents, noting that "prior cases are of limited help . . . because the deliberative process privilege is so fact-specific." *Est. of LeRoux*, 2024 WL 1703939, at \*3 (quoting *NAACP v. Bureau of Census*, 401 F. Supp. 3d 608, 612 (D. Md. 2019)). The court ultimately concluded "that the privilege does not apply <u>to certain severable portions</u> of the February 20th Memorandum and the entirety of the February 28th Memorandum," thereby

maintaining the privilege over parts of the documents that were not purely factual and placing the burden on the plaintiffs to file a subsequent motion "explaining why their interest in these portions outweighs the government's interest in shielding them" if plaintiffs believed there was remaining need for the privileged portions of the documents. *Id.* at *6 (emphasis added).

In this case, Plaintiffs make no effort to explain why deliberative process privilege should not apply to any <u>specific</u> document(s) withheld by Defendants, and they do not explain why the balancing of the equities favors disclosure of any <u>specific</u> documents. Thus, they have not met their burden of "explaining why their interest in [the documents] outweighs the government's interest in shielding them." *See Est. of LeRoux*, 2024 WL 1703939, at *6.

Plaintiffs further rely on *Stone v. Trump*, 356 F. Supp. 3d 505 (D. Md. 2018), which was amended in relevant part on reconsideration, 402 F. Supp. 3d 153 (D. Md. 2019). As Plaintiffs explain, the *Stone* court initially held that the deliberative process privilege was inapplicable to the case as a whole—though Plaintiffs omit that the court based its reasoning on the balance of the *Cipollone* factors, discussed *infra*. *Stone*, 356 F. Supp. 514–15. Nonetheless, the court vacated that decision in part upon motion for reconsideration, finding that the application of the *Cipallone* factors to all withheld documents together was inappropriate and remanding to the Magistrate Judge "to apply the *Cipollone* factors to the categories of documents Plaintiffs seek in their Motion to Compel and permit Defendants to argue that Plaintiffs should more narrowly define the categories of documents." *Stone*, 402 F. Supp. at 158–159 (citing *Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019)).

Plaintiffs also cite the D.C. Circuit's decision *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998). However, that decision is outside of the Fourth Circuit, and the D.C. Circuit subsequently limited this decision,

clarifying that "our holding that the deliberative process privilege is unavailable is limited to those circumstances in which the cause of action is directed at the agency's subjective motivation." *Duces Tecum Served on Off. of Comptroller of Currency*, 156 F.3d 1279, 1280 (D.C. Cir. 1998).

### III.    The Equities Do Not Favor Disclosure Because Disclosure of Deliberative Materials Would Chill Candid Efforts to Improve the Child Welfare System.

In considering whether to qualify the deliberative process privilege, courts consider, *inter alia*, four factors: "(1) the relevance of the evidence to the lawsuit; (2) the availability of alternative evidence on the same matters; (3) the government's role (if any) in the litigation, and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *See In re Camp Lejeune Water Litig.*, No. 7:23-CV-897, 2023 WL 8791671, at *4 (E.D.N.C. Dec. 19, 2023). As noted above, "[t]he burden of showing an overriding need for the information rests with the party seeking it." *Heyer*, 2014 WL 4545946, at *3.

To begin with, Plaintiffs have not established that each and every one of the thousands of documents that they seek to compel are particularly relevant to their claims.  In arguing that the privileged documents are "highly relevant," Plaintiffs only even mention nine (9) documents that Defendants actually withheld, *see* ECF No. 501, at 15-17, but they move to compel the production of thousands of documents.  Plaintiffs have made no effort to explain why the remaining 2,601 documents are so relevant that Plaintiffs' interest in disclosure outweighs the purpose of the privilege.  Further, Plaintiffs concede that "this entire case centers around the policies, practices, actions, and inactions of the government," ECF No. 501 at 20, and Defendants have not withheld any "policies" or evidence showing "practices, actions, or inactions of the government." Defendants have only withheld information about deliberative, pre-decisional discussions about those policies, practices, and actions.

9

Even if the documents withheld on the basis of deliberative process privilege were highly relevant (which Plaintiffs have not established that they are), that relevance weighs minimally against the availability of alternative evidence on the same matters and the harmful effect that disclosure would have on the ability of public servants to discuss their thoughts candidly. *Cf. Heyer*, 2014 WL 4545946, at *5 (declining to compel disclosure even when "[t]he documents directly concern the very accommodations for plaintiffs' medical needs that are at issue in the litigation."). As to the former, this Court has already explained that "alternative evidence is available on the same matters": "[w]hile Plaintiffs might prefer to offer a candid email between former officials about the problems in the foster care system, the absence of this evidence certainly does not preclude Plaintiffs from proving deliberate indifference." ECF No. 487, at 24–25. In fact, Plaintiffs themselves have maintained the stance that emails of individual named Defendants are not necessary to their case, stating that "this kind of evidence" is "not necessary[] to establish deliberate indifference." ECF No. 449-4, at 6.

Finally, the West Virginia child welfare system, like all child welfare systems, is subject to intense media scrutiny,[2] and disclosing candid conversations (in e-mail or otherwise) about sensitive policy decisions "would hinder frank and independent discussion regarding contemplated policies and decisions," *see In re Camp Lejeune Water Litig.*, 2023 WL 8791671, at *4. *See* Ex. 3 ¶¶ 8–9; Ex. 4 ¶¶ 6–7. Indeed, the release of the deposition transcript of Mr. Samples has fueled an

---

[2] *See, e.g.*, Leslie Rubin, *West Virginia's First Foster Care Ombudsman Resigns Amid Agency Controversies,* WCHS (May 29, 2024), https://wchstv.com/news/local/west-virginias-first-foster-care-ombudsman-resigns-amid-agency-controversies; Daniel Burbank, *Disability Rights WV Demands Transparency in Kyneddi Miller Case, Sends Cease & Desist*, WCHS (May 24, 2024), https://wchstv.com/news/local/disability-rights-wv-demands-transparency-in-kyneddi-millers-case-sent-cease-desist; Amelia Ferrell Knisely, *State Denies Record Requests in High-Profile Death of Boone County Girl* (May 6, 2024), https://westvirginiawatch.com/2024/05/06/state-denies-record-requests-in-high-profile-death-of-boone-county-girl/.

entire news cycle.[3]  To best serve the thousands of vulnerable children in the child welfare system, it is critical that Department employees are able to propose, weigh, and discuss ideas freely without appearing in a news story that the employee may have no opportunity to refute or contextualize. *See* Ex. 3 ¶ 9; *see In re Camp Lejeune Water Litig.*, 2023 WL 8791671, at *5 (reasoning that a draft copy of a government study should remain privileged because publication would have a chilling effect adverse to the "scientific process and integrity" of the final study). Department employees and leaders are hardworking public servants with valuable perspectives; they deserve the opportunity to communicate their ideas—even the occasional bad idea, as these too can foster rich discussion and may prove important to learning and growth—without fear of celebrity or embarrassment.

## IV.      Defendants Applied the Deliberative Process Privilege Narrowly and Appropriately to Documents Requested by Plaintiffs.

Information protected by deliberative process privilege must be both predecisional and deliberative. *E.E.O.C. v. Freeman*, 288 F.R.D. 92, 100 (D. Md. 2012) (citing Va. Beach, 995 F.2d at 1253). "Predecisional means prepared in order to assist an agency decisionmaker in arriving at his decision." *Id*. (internal quotation marks omitted). Deliberative means that the materials "reflect the give and take of the consultative process and reveal the manner in which an agency weights potential policies or outcomes." *Id*. (internal quotation marks omitted). Privileged materials

---

[3] *See, e.g.*, Steven Allen Adams, *Samples Deposition on Foster Care, CPS Issues Rankles Gov. Justice*, Weirton Daily Times (June 1, 2024), https://www.weirtondailytimes.com/news/local-news/2024/06/samples-deposition-on-foster-care-cps-issues-rankles-gov-justice/; Erin Beck, *New Testimony From Top Official Describes Widespread Problems With West Virginia's Child Welfare System,* Mountain State Spotlight (May 24, 2024),

include proposals, suggestions, and subjective materials (*i.e.*, reflecting the position of an individual rather than the agency). *Coastal States Gas Corp.*, 617 F.2d at 867.

As noted above, Defendants have produced nearly 700,000 documents in response to Plaintiffs' hundreds of document requests, including emails of public servants at high levels of DoHS and the Governor's office. Of these hundreds of thousands of documents, Defendants withheld only 2,610 documents on claims of deliberative process privilege based on the individual review of each document.

Plaintiffs argue that the description column of their privilege logs are insufficient and reflect an "overly broad" "theory of 'predecisional.'" *See* ECF No. 501, at 11-13. However, Plaintiffs' brief identifies only a handful of the hundreds of privilege log descriptions as overly broad, and they only appear to actually be challenging a small number of entries. *See* ECF No. 501, at 11-13. To the extent Plaintiffs are challenging entries that they do not identify in their motion, those challenges are waived. *See, e.g.*, *Sellers v. Wesley Med. Ctr., L.L.C.*, No. 11-1340, 2012 WL 5362977, at *6 (D. Kan. Oct. 31, 2012) (holding that documents in the privilege log that Plaintiff failed to challenge in its motion to compel need not be produced). Further, Plaintiffs did not make similar objections to past privilege logs, at which point Defendants would have been able to consider any such concerns while developing their recent privilege logs.

In any event, the few descriptions in the privilege logs that Plaintiffs specifically identify are sufficient and do not reflect an "overly broad" "theory of 'predecisional,'" particularly when the entries are "evaluated not in a vacuum, but in light of" other information contained in the logs and information the Plaintiffs "can be presumed to possess" about the Department after five years of litigating this case, *see In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 898 F. Supp. 2d 584, 590 (S.D.N.Y. 2012). For example:

- The description of CTRL0000655526 reads: "Internal, pre-decisional deliberations related to use of virtual visits to foster children." Corresponding metadata shows that this is an email ("MSG" file) sent on November 24, 2020 by William Belcher to Tina Mitchell and Commissioner Linda Watts with the subject line "RE: Information need." This information clearly indicates that the e-mail contains pre-decisional advice or input from Mr. Belcher to Commissioner Watts regarding the Department's policy for virtual visits with foster children.

- The description of CTRL0000409221 reads: "Internal, pre-decisional deliberations regarding potential steps to improve contact times with foster children." The subject line of the email is "Re: Time to First Contact." This information clearly indicates that the communication relates to "potential steps"—that is, steps not yet decided upon (pre-decisional)—about policies relating to time-to-first-contact.

- The description of CTRL0000510339 reads: "Internal, pre-decisional deliberations regarding handling of educational neglect referrals." This entry on Defendants' privilege log shows that the entry is an email sent on October 7, 2020 by Michelle Dean to Melanie Urquhart, Carla Harper, and Rebecah Carson with the subject line "Re: Educational neglect referrals." Defendants have also produced the originating email of this thread, which was sent October 6, 2020 by Rebecah Carson with the subject line "Educational neglect referrals." *See* D463892–D463898. In that email, Ms. Carson poses a question of policy interpretation to inform how to handle educational neglect referrals during the COVID-19 pandemic. Given the context that Plaintiffs already have, including an email earlier in the chain of emails cited in Defendant's privilege log, Plaintiffs have ample context to determine that CTRL0000510339 is predecisional.

- The description of a number of documents reads: "Internal, pre-decisional deliberation related to QRTP policy." This description, in and of itself, indicates that the email contains a pre-decisional discussion about the Department's QRTP policies. In addition, the privilege logs for these emails include significant additional information that shed light on the pre-decisional, deliberative nature of the documents. For example:

  o Four emails with the subject line "RE: Draft SOP-Commissioner Approval for Extended QRTP Placements" sent between July 22, 2019 and July 23, 2019 by Laura Barno and Kendra Boley-Rogers. These emails obviously pertain to the exchange and discussion of a draft standard operating procedure, which is predecisional.

  o Four Microsoft Word documents named "QRTP Draft 8-15-19 with notes.docx" or "QRTP Draft 8-15-19 with notes (002).docx." The filenames of these documents clearly indicate that they are non-final, draft documents containing internal notes.

o Four Microsoft Word documents named "QRTP for FFPSA (policy with comments from LSB 6-7-19.docx." The filenames clearly indicate that they are non-final policy documents containing internal notes.

o Two emails with the subject line "RE: Draft Protocols for QRTP-For Your Review." The subject line of these emails clearly indicates that they relate to the exchange of draft protocols that are under review.

• The description of a number of documents reads: "Internal, pre-decisional deliberation related to therapeutic foster care program." This population includes, *inter alia*, a number of emails with the subject line "RE: [External] TFC TA Monday," primarily sent September 2, 2020 between DoHS personnel, *inter alia* Laura Barno and Carla Harper, and Berry Dunn member Brady Birdsong. Given the role of Berry Dunn as a consultant to assist with decision-making, *see* Ex. 3 ¶ 4, this entry provides enough information for Plaintiffs to ascertain that the correspondence is predecisional.

• The description of CTRL0001074760 reads: "Internal, pre-decisional deliberations regarding five-year prevention plan." This document is an email with the subject line "RE: [External] Prevention Plan Feedback." Given that the information is clearly intended to seek or provide feedback related to a non-final document, *i.e.*, the Five-Year Prevention Plan, this privilege log entry provides enough information for Plaintiffs to ascertain that the correspondence is predecisional.

• The description of several documents reads: "Internal, pre-decisional deliberation related to safety assessment policy." This clearly indicates that the document relates to pre-decisional deliberations about the Department's safety assessment policies.

Finally, Plaintiffs contend that Defendants must provide affidavits of agency officials in order to invoke the deliberative process privilege, ECF No. 501-2 (citing *Keeper of the Mts. Found. v. DOJ*, 514 F. Supp. 2d 837, 852 (S.D. W. Va. 2007)). However, Plaintiffs reliance on *Keepers*, a Freedom of Information Act case interpreting the requirements of 5 U.S.C.A. § 552 is of limited value, given that this statute relates specifically to FOIA claims disputes. *See Keeper of the Mts. Found. v. DOJ*, 514 F. Supp. 2d 837, 852 (S.D. W. Va. 2007) (citing *Simmons v. U.S. Dep't of Justice,* 796 F.2d 709 (4th Cir.1986)). Given that FOIA incorporates all privileges available in litigation, *United States Fish & Wildlife Service v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021), privilege disputes in the FOIA context may sometimes be useful to interpret the common law

deliberative process privilege; but the requirement in FOIA cases to provide affidavits in support of privilege claims arises from a statutory mandate that is inapplicable to civil litigants in other contexts. *See* 5 U.S.C.A. § 552(a)(4)(B). However, out of an abundance of caution, Defendants have provided affidavits, attached as Exhibits 3 and 4.

## V.       Defendants Applied the Deliberative Process Privilege Narrowly and Appropriately in the Deposition of Mr. Samples.

Defendants maintained properly narrow deliberative process privilege objections during Plaintiffs' deposition of third-party witness Jeremiah Samples, raising the objection only 17 times throughout a deposition lasting over 4 hours. *See* ECF No. 501-2. These objections included, as Plaintiffs cited, ECF No. 501 at 2, testimony about internal discussions that Mr. Samples had during his tenure at DoHS, such as discussions related to "disagreements over budgetary priorities," Tr. 62:23-65:16; discussions with then-Secretary Crouch about CPS performance to the extent the testimony would cover "deliberative conversations about policy decisions," TR. 71:23-72:11; and discussions about advancing wraparound services policies, TR. 80:19-82:11. These deliberative discussions go to the heart of the deliberative process privilege; Plaintiffs asked Mr. Samples to divulge the substance of conversations with Secretary Crouch and other individuals in leadership positions, as well as his recollection of any stances they may have taken in those discussions, which occurred for the purposes of developing policy and making decisions.

Plaintiffs' motion suggests that Defendants have objected or will object to the disclosure of any communications between Mr. Samples and then-Secretary Crouch. Not true. Defendants only objected to testimony that was internal, deliberative, and pre-decisional, "for example, any advice that [Mr. Samples] provided on a potential policy decision, if he provided that advice to make that policy decision before that policy decision was made." Tr. 64:16–21. Defendants would

not object, for example, to Mr. Samples answering questions about whether he shared any <u>factual</u> <u>information</u> with Mr. Crouch.

## CONCLUSION

Plaintiffs' motion should be denied.

Respectfully submitted,

June 6, 2024

*/s/* Philip J. Peisch
Philip J. Peisch (WVSB # 13731)
Caroline M. Brown, *pro hac vice*
Julia M. Siegenberg, *pro hac vice*
Rebecca L. Wolfe, *pro hac vice*
Brown & Peisch PLLC
1225 19th Street NW, Ste. 700
Washington, DC 20036


*/s/* Steven R. Compton
Steven R. Compton (WVSB #6562)
West Virginia Attorney General's Office
812 Quarrier Street, 6th Floor
Charleston, WV 25301

16

## CERTIFICATE OF SERVICE

I, Philip J. Peisch, hereby certify that I caused a true and correct copy of Defendants'

Opposition to Plaintiffs' Motion to Compel to be delivered to the following via electronic mail:

Marcia R. Lowry
Julia Tebor
Jonathan Borle
Lindsay Gus
Laura Welikson
A Better Childhood
355 Lexington Ave., Floor 16
New York, NY 10017

Richard W. Walters
J. Alexander Meade
Brian L. Ooten
Shaffer & Schaffer, PLLC
2116 Kanawha Blvd East
P.O. Box 3973
Charleston, WV 25304

J. Marty Mazezka
Disability Rights of West Virginia
5088 Washington St. W., Suite 300
Charleston, WV 25301

June 6, 2024

/s/ Philip J. Peisch
Philip J. Peisch (WVSB # 13731)
Caroline M. Brown, *pro hac vice*
Julia M. Siegenberg, *pro hac vice*
Rebecca L. Wolfe, *pro hac vice*
Brown & Peisch PLLC
1225 19th Street NW, Ste. 700
Washington, DC 20036

/s/ Steven R. Compton
Steven R. Compton (WVSB #6562)
West Virginia Attorney General's Office
812 Quarrier Street, 6th Floor
Charleston, WV 25301