# Exhibit 1

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA

JONATHAN R., *et al.*,

*Plaintiffs*,

v.

Case No. 3:19-cv-00710

JIM JUSTICE, *et al.*,

*Defendants*.

## DECLARATION OF CAMMIE CHAPMAN

1. My name is Cammie L. Chapman. I am the Deputy Secretary of Children and Adult Services for the West Virginia Department of Human Services ("DoHS"). I am submitting this declaration in support of the Defendants' motion for summary judgment.

2. The information contained in this declaration is based on my personal knowledge. If called as a witness, I would offer testimony as to those matters set forth in this declaration.

### Bureau for Social Services Offices and Personnel

3. The Bureau for Social Services ("BSS") within the Department of Human Services is responsible for the operation of a number of programs to support families and children in West Virginia, including child protective services, and foster care and adoption.

4. In 2021, DoHS split the Bureau of Child and Family Services into two separate bureaus, the Bureau for Social Services and the Bureau for Family Assistance, with all child welfare programs located under the newly created Bureau for Social Services.

   a. Creating the Bureau for Social Services allows DoHS to better meet the needs of children, youth and their families involved with the child welfare system by allowing

1

the bureau responsible for the services to focus solely on social service issues, initiatives and programming.

b. Prior to the reorganization, the same bureau was responsible for overseeing child welfare services, in addition to an array of other programs that were more tangentially related to social services, such as cash and food assistance programs.

c. The reorganization also allowed for a child welfare-focused leadership structure which ensured staff and personnel with deep experience in child welfare and social service work across all levels of oversight, from deputy commissioners to supervisors in the field. Ensuring child welfare experience and focus across the leadership structure in the Bureau for Social Service ensures consistency in policy and practice implementation, and improved support for caseworkers in the field.

5. Services provided by BSS include Child Protective Services ("CPS"), Youth Services ("YS"), Adoption, Foster Care, Specialized Family Care, as well as certain Home and Community Based Services such as socially necessary services and the Safe at Home program.

6. BSS administrative offices across the State are divided into two regions and 23 district offices. Each district office is overseen by a Social Services Manager, responsible for daily operations and report to their region's Deputy Commissioner. Each region is overseen by a Deputy Commissioner of Field Operations. In 2022, DoHS implemented monthly meetings between the Deputy Commissioners of Field Operations and their district Social Service Managers to discuss case planning and practice. In 2023, DoHS implemented weekly data meetings between the Deputy Commissioners of Field Operations and their district Social Service Managers to review data on outcomes and discuss challenges and areas for improvement.

7. Counties are grouped into districts, and every district has CPS caseworkers (including CPS Senior caseworkers), YS caseworkers, and supervisors for each type of caseworker. Homefinding Specialists and Adoption workers also sit in and serve local district offices, with organizational oversight managed statewide programs under the Deputy Commissioner of Field Support.

8. CPS caseworkers are responsible for investigating allegations of abuse and neglect, working with families in crisis, petitioning for removal of children from the home when necessary, overseeing and monitoring the safety and wellbeing of the children in foster care, and developing permanency plans for children who cannot be safely reunified with their families.

9. YS caseworkers provide similar services as CPS caseworkers, but generally work with foster children in DoHS custody as a result of a juvenile justice proceeding, as well as youth not in custody but who have juvenile justice involvement.

## Placement of Children in Foster Care

10. In West Virginia, each child in foster care has an Multidisciplinary Treatment Team, which consists of the child's custodian parent or guardian or their attorney, other immediate family members, the prosecuting attorney, the Guardian Ad Litem, the child if he or she is over the age of 12, a school official, the child or family's DoHS caseworker, the child's foster parent, and any other professional or service provider who may be helpful to the Team's work. The Multidisciplinary Treatment Team is responsible for developing and implementing a comprehensive and individualized service plan for children involved in a court proceeding.

11. In West Virginia, child placement recommendations are made by the child's Multidisciplinary Treatment Team, child placements are generally arranged by the child's

3

caseworker, and the circuit courts are required by state law to review, approve, and order the placements.

    12. There are a variety of placement types available for foster children in West Virginia:

    a. Adoptive home. This is a placement with a family that is working towards adopting the child whose parents' parental rights have been terminated.

    b. Certified kinship/relative placement. This is a placement with either a blood relative or another adult with a close connection to the child who is certified as meeting the standards for a licensed foster parent, including having a non-safety standard waiver if necessary.

    c. Emergency shelter care. This is a temporary placement option for older children removed from their home or placement on an emergency basis and is generally limited to 30 days.

    d. Emergency home. This includes "emergency foster family care" and "emergency resource home." Emergency foster family care is for children entering custody on an emergency basis or after hours and is generally limited to 48 hours. An emergency resource home is a temporary family placement for children whose living situation has been disrupted and is generally limited to seven days.

    e. Foster care or family foster home. This is a family placement that has been certified by DoHS or through a Child Placing Agency, to provide care in an out of home living.

    f. Therapeutic foster care. This is a foster family placement certified by Child Placing Agencies. These homes include Tier 2 and Tier 3 family placements designed for children with significant treatment needs due to emotional and/or physical needs, with

foster parents who are professionally trained and supported to meet the child's treatment needs.

g. Kinship/relative placement. This is a placement with either a blood relative or another adult with a close connection to the child who is generally in the process of becoming certified, but has not yet become certified.

h. Medical hospital. Admission to a hospital is typically for short-term hospitalization lasting 30 days or less to provide specialized medical care for the treatment of physical and/or mental illness.

i. Psychiatric hospital. Admission to a psychiatric hospital is typically for short-term acute inpatient hospitalization lasting 30 days or less to provide intensive, 24-hour psychiatric care, including crisis stabilization and diagnostic assessment.

j. Residential treatment programs. Residential treatment programs include Psychiatric Residential Treatment Programs ("PRTF") and other settings that provide highly structured care with formalized behavioral programs, therapeutic interventions, and mental or behavioral health treatment.

k. Specialized family care home ("Medley"). These are foster family homes specially trained to foster children with developmental disabilities.

l. Transitional living. This is a placement for older youth, above the age of 17, who may be living semi-independently in their own households in the community in a transitional living apartment, with supervision and services available to ensure their needs are being met.

  m. Transitional Living for Vulnerable Youth. This is a program for older youth, between the ages of 17 and 21, who need more structured support and supervision and have treatment needs that can be met in the community on an outpatient basis.

  13. In 2022, DoHS began the process of developing a new children's crisis center to provide a safe alternative from the use of hospital emergency departments and hotel rooms, to alleviate the burden on caseworkers of staffing hotel room stays, and to address the needs of foster children who may be experiencing a behavioral health crisis.

  14. DoHS contracts with ten Child Placing Agencies throughout the State to recruit, train, license or certify, and provide case management to foster family homes for children in foster care.

  15. For some foster children with a history of danger behaviors (*e.g.*, fire setting, sexual assaults, self-harm), the Multidisciplinary Treatment Team and DoHS caseworker are not able to find a foster family or kinship family willing to accept the child into their home. For many foster children placed in residential treatment, the child's parent or guardian supports such placement, often because of the child's challenging behaviors.

  16. Based on my 24 years working in the child welfare system in West Virginia, I believe that in many cases the foster child's parent or caretaker supports placement in residential treatment, often because of the child's challenging behaviors or serious behavioral health needs.

  17. DoHS will only recommend an out-of-state placement if there are no equivalent in-state options available.

### Community Based Placements and Services

  18. DoHS has long provided a wide array of community-based services for children with disabilities, with the goal of serving children in the least restrictive setting, preventing the

need for children to receive treatment in a residential setting, and reducing the time in which children must receive services in a residential setting.

19. DoHS serves foster children with a wide range of needs. While all children in foster care have experienced the trauma of abuse or neglect and of removal from their family, some foster children come into custody in good physical health and without serious behavioral health needs. Unfortunately, other children in custody have serious physical, behavioral health, and/or intellectual needs, including but not limited to neonatal abstinence syndrome; fetal alcohol syndrome; autism; oppositional defiant disorder; or bipolar disorder. In addition, at any given time, hundreds of foster children in custody have a history of dangerous behaviors, including self-harm, fire-setting, physical violence, and/or sexual violence.

20. In 2019, DoHS entered into a Memorandum of Understanding ("MOU") with the U.S. Department of Justice ("DOJ") that committed the State to further develop its children's mental health infrastructure and to reduce the number of children in residential treatment programs.

21. As part of the MOU, the State develops an annual Implementation Plan, which details the steps to be taken to develop and implement sustainable, statewide mental and behavioral health services to children in the target population (children under the age of 21 with a serious emotional or behavioral disorder who are in a residential treatment facility or at risk of such placement). DoHS has worked with DOJ to finalize a revised Plan on an annual basis every year since 2020.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 5th day of July 2024.

<u>/s/ Cammie L. Chapman</u>

Cammie L. Chapman