# Exhibit 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| JONATHAN R., *et al.*, | ) |
| *Plaintiffs*, | ) ) ) |
| v. | ) ) ) Case No. 3:19-cv-00710 |
| JIM JUSTICE, *et al.*, | ) ) ) |
| *Defendants*. | ) |

**DEFENDANTS' WRITTEN RESPONSE TO PLAINTIFFS' RULE 30(B)(6) DEPOSITION NOTICE (TOPIC 7)**

In response to Plaintiffs' Notice of Rule 30(b)(6) deposition dated February 2, 2024, and in accordance with the Stipulation of the parties dated June 3, 2024 (ECF No. 508), Defendants Cynthia Persily, in her official capacity as Secretary of the West Virginia Department of Human Services ("DoHS"), Cammie Chapman, in her official capacity as Deputy Secretary of the DoHS, Jeffrey Pack, in his official capacity as Commissioner of the Bureau for Social Services, and DoHS (collectively, the "Defendants"),[1] by and through their attorneys, hereby submit these written responses in lieu of producing a witness for oral examination with respect to the following topics:

> List and describe any and all actions taken to improve the quantity and quality of caseworker visitation with foster children and/or any and all planned actions to improve the quantity and quality of caseworker visitation with foster children, including the timing of the actions and any realized or expected results.

The time period covered by the request is January 1, 2019 to the present.

---

[1] As of January 1, 2024, DoHS became a successor agency to the Department of Health and Human Resources ("DHHR"), the original defendant in this action. For ease of reference, Defendants have used "DoHS" or "the Department" to include the time period when it was known as DHHR.

1

**DEFENDANTS' OBJECTIONS**

Defendants object to the Notice of Deposition as duplicative in that it asks Defendants to identify actions for each of 17 different topics, and many of the Department's actions have or are expected to have an impact in multiple areas of agency practice. Defendants consider any action identified or described in any written response or oral testimony to the February 2, 2024, Rule 30 Notice of Deposition to apply to any and all topics identified in that Notice, whether or not specifically identified in response to any other topic.

Defendants object to the requirement to identify the "timing of the actions" to the extent it requires identification of a specific date. Unless otherwise specified below, Defendants have identified the year in which an action was taken or an initiative began, or the approximate time period for which an initiative was undertaken.

Defendants object to the instruction to identify actions taken "for the period January 1, 2019 to the present" to the extent that it would require Defendants to list and describe actions pursuant to policies, practices, programs, or initiatives that were first implemented prior to January 1, 2019 and that continued past that date. To the extent the Notice of Deposition requests DoHS to testify about policies, practices, programs, or initiatives first implemented prior to 2019 that continue to present, Defendants object to the Notice of Deposition as overbroad, unduly burdensome, and not proportional to the needs of the case, because it would effectively require DoHS to list and describe hundreds of policies, practices, programs, or initiatives relating to case planning and permanency.

Defendants object to the instruction to "describe" an action to the extent it would require Defendants to repeat detailed information that is contained in one or more documents that have been provided to Plaintiffs in discovery. Defendants' responses reference documents that provide substantially more detail about some actions, comparable to how a witness might refer to a

2

document in oral testimony. However, Defendants have not identified any and all documents that may describe a particular action listed or described below.

Defendants object to the terms "describe," "planned," "realized," and "expected," all of which are undefined, as vague and ambiguous. For example, it is not clear how much detail is required to "describe" an action; it is not clear what degree of certainty there must be that a future action will occur, or when it will occur, for that action to be considered "planned"; and it is not clear what degree of certainty or causation is required for a result to be "realized" or "expected" from a particular action. Defendants have endeavored to provide complete answers applying their understanding of the common meaning and usage of these terms.

Defendants also object to the term "results" as vague and ambiguous. For example, for results of actions "to update or improve the case planning process," it is not clear if Plaintiffs are asking about outcome "results" for foster children or "results" of the actions "to update or improve the case planning process" itself. Defendants interpret it as meaning the latter.

Defendants object to the term "improve" as vague and overbroad. The term "improve" can be read to include any individual's subjective beliefs about the purpose of a change or adjustment, and any of the myriad changes Defendants make to policies and programs are ultimately for the purpose of improving the safety, permanency, and well-being of foster children served by DoHS.

The undefined term "caseworker visitation" is also vague and overbroad in that it is subject to more than one reasonable interpretation. For example, it is unclear whether "caseworker" refers to a CPS caseworker or a YS caseworker (or both), and it is unclear whether caseworker visitation refers to regular visits that DoHS caseworkers make to foster children, or whether it includes visits in addition to regular visits or visits by non-primary caseworkers or by caseworkers who are not

3

directly employed by DoHS.  Defendants interpret the term "caseworker" to mean the primary CPS or YS caseworker employed by DoHS.

Defendants object to the term "quality" because it is vague and undefined. To the extent that the term "quality" could mean any characteristic or attribute of caseworker visitation, Defendants object to the term as overly broad.

To the extent that Plaintiffs believe that Defendants have not provided responses in accordance with the topic posed, Plaintiffs had an obligation under Rule 30(b) to describe with "reasonable particularity" the matter for examination.

## **DEFENDANTS' RESPONSES**

Subject to the foregoing objections, Defendants respond as follows:

1. Since January 1, 2019, DoHS has taken substantial and numerous steps to increase the quantity and improve the quality of caseworker visits with foster children.  Many of these actions are covered by Topic 1 (Caseloads), Topic 2 (Hiring and Retention), Topic 4 (Training), Topic 6 (Case Planning), and Topic 13 (CFSR Improvements).  In addition, as set forth below, DoHS has taken action, among other things, to (1) strengthen policies for meaningful contacts with foster children, to (2) improve family contacts, and (3) strengthen data collection and review related to both the quantity and quality of caseworker visits.

2. In 2019, DoHS adopted the Family Advocacy Support Tool ("FAST") to assess needs of children and families involved in Youth Services ("YS") cases.  Developed by the Praed Foundation, the FAST is designed to maximize the communication between the YS caseworker, youth, and families, about the needs and strengths of families, which enhances the quality of caseworker visits.

4

3. In 2020, DoHS revised its Meaningful Contact Desk Guide to provide suggested questions and conversation topics to guide caseworker contacts with children and families and to improve the quality and documentation of those contacts. *See* D003106811–D003106814. Caseworkers are required to follow the guide even on non-regular visits, *e.g.*, if a caseworker visits in response to a crisis or for another specific reason. *Id.* In the memorandum accompanying the 2020 guide, Caseworkers were reminded that contacts should occur more often than each month under certain circumstances. D003105558–D003105559. DoHS originally implemented its Meaningful Contact Guide in 2016 to standardize operations and data related to the quality of contact with children and families.

4. In 2020, DoHS implemented the supervisory case review standard operating procedure, which implemented a uniform statewide process for supervisors to perform reviews of open cases of their assigned staff to improve practice, help identify strengths and deficiencies in casework, including caseworker visits, and determine what actions may be needed to increase knowledge and skills of staff. The review includes metrics for meaningful contacts. Additional details are available in the June 4, 2024 Supervisory Case Reviews and Log Standard Operating Procedure, D210410–D210414 and case review tool, D003097545.

5. In 2020, in response to the COVID-19 Public Health Emergency, DoHS implemented measures for COVID screening and virtual visits to ensure that children and their families continued to receive caseworker visits at least monthly without increasing the risk of infection and spread of the virus, which was of particular concern for individuals with disabilities.

6. In 2020, DoHS implemented a standard operating procedure for peer reviews, under which each Child Protective Service ("CPS") and YS Supervisor conducts peer reviews prior to their scheduled Regional Social Service Supervisor ("SSS") Meeting using provided tools to

5

address quality of contacts, sufficiency of safety plans, and case goals. Further details are available in Standard Operating Procedure on Peer Reviews, found in Appendix S to the CFSR Round 3 Program Improvement Plan Progress Report, D0222789–D2223091, at D223017–D223020.

7. In 2021, DoHS implemented a standard operating procedure to ensure meaningful and engaging visits with children placed in out-of-state residential treatment settings, including monthly conversation topics and monthly evaluations of documentation. Further detail is available in the Memorandum on Monthly Conversation Topics, D003096327–D003096328, and accompanying form, D003096477–D003096481. In 2022, DoHS expanded this procedure to apply to foster children placed in-state as well.

8. In 2022, DoHS contracted with Marshall University to improve and expedite discharge planning for foster children in out-of-state residential placements. As part of this work, Marshall University personnel engage in virtual visits with foster children, in addition to regular DoHS caseworker visits. These visits provide helpful information to the caseworker, who can use the information from discharge-planning visits to improve the focus of the caseworker's regular visit.

9. In 2022, DoHS updated the standard operating procedure and review tool for supervisory case reviews to improve practice related to child welfare, including case worker visits, and assist in identifying strengths and areas needing improvement. The supervisory reviews included a tab to evaluate whether contacts were meaningful (including whether clients were interviewed separately and whether the worker addressed safety and an array of other needs, *e.g.*, emotional needs) for all open cases. Further detail is available in the Memorandum on Case Reviews, D003096774, Standard Operating Procedure on Supervisory Case Reviews, D003096634–D003096637, and the Case Review Tool D003096367.

10. In 2023, DoHS again updated the Meaningful Contact Desk Guide to align with the Pathway to Children's Mental Health Services policy and the Residential Facility Monthly Caseworker Visit and Investigation Standard Operating Procedure. Under the new policy, regular caseworker visits should include questions to assess the child's mental health, among other things. More detail is available in the Meaningful Contact Desk Guide revised in August 2023, D002230518–D002230529.

11. The quantity and quality of caseworker visits are evaluated as part of DPQI Quality Assurance Reviews and mid-cycle reviews, both of which are described in response to Topic 13. The Meaningful Contact Guide is redistributed and reviewed each time DPQI conducts an exit-interview.

12. In 2022, DoHS began the Training & Technical Assistance ("T&TA") initiative, later changing the name to Technical Assistance and Practical Application ("TAPA"). TAPA teams, which consist of specialized personnel from DoHS's Quality Assurance, Policy, and Training divisions, provide targeted training to managers, supervisors, caseworkers, and other staff following DPQI reviews. TAPA teams discuss and refresh staff on meaningful contacts at all training sessions, whether or not weakness in that area has been identified. Districts may also request refresher training on meaningful contacts and meaningful contact documentation through TAPA as needed.

13. In 2023, DoHS implemented the ChildSTAT program, which is further described in response to Topic 13. Areas measured and evaluated by ChildSTAT include the quantity and quality of monthly caseworker visits with children and parents, as well as case planning. Districts may request refresher training from TAPA in conjunction with ChildSTAT meetings as well.

14. As of June 14, 2024, DoHS further updated the Meaningful Contact Desk Guide and related forms. Among other things, the updated guide imposes documentation, forms, and communication requirements for when a secondary caseworker sees a child in placement. If a child is seen by a secondary caseworker, the primary caseworker for that child has additional contact with the child to address any questions and ensure that the child's needs are met. More detail is available in the 2024 Meaningful Contact Guide, D003113073–D003113088 and accompanying Memorandum, D03113097–D03113098.

15. In the coming year, DoHS plans to partner with Aetna to implement focus groups for youth and biological caregivers to gather data from those with lived experience to improve practice, including in caseworker visits.

16. DoHS employs many other measures to ensure that numerous adults—not just caseworkers—have meaningful contacts with foster children and families, so that there are constant efforts to identify and address safety, mental and physical health, and other needs as they arise.

17. DoHS is always considering actions that will improve its programs. While other actions have not yet proceeded to the planning stage, DoHS will undertake additional actions to further develop and improve case planning and permanency planning as necessary and appropriate.

As a result of the above, and in conjunction with actions identified and described in response to other topics, DoHS has realized or expects the following results from its actions:

18. DoHS exceeded its Round 3 CFSR Program Improvement Plan ("PIP") measurement goal for Caseworker Visits with Child, which is established by ACF during the PIP performance period.

19. Using the measurement of monthly caseworker visits set forth in Section 624(f) of the Social Security Act, 42 U.S.C. § 422(f), the percentage of monthly caseworker visits was approximately 93% in 2019; 93% in 2020; 95% in 2021; 91% in 2022; and 83% in 2023. Reported caseworker visits for 2023 were affected by a change-over in the State's information management system, as discussed in the written response to Topic 17.

20. The percentage of monthly caseworker visits in the home was approximately 61% in 2019; 78% in 2020; 70% in 2021; 64% in 2022; and 80% in 2023.

21. As DoHS recruitment and retention of caseworker continues to improve, DoHS expects to see an increase in the frequency of caseworker visits with foster children.

22. DoHS expects to see an improvement in data reflecting the quality of caseworker visits with foster children.

23. DoHS expects to see an increase in the frequency of visits with parents and caregivers of foster children.

24. DoHS expects to see an increase in the consistency and timeliness of documentation of visits, due to sustained supervisory review of data to assess the frequency and meaningfulness of contacts and as caseworkers continue to adjust to the new PATH system.

Based on the reasonable inquiry of DoHS staff and the factual matters known or made known to me for purposes of providing these written responses to the Rule 30(b)(6) deposition notice, I am informed and believe, and based on such information and belief hereby declare under penalty of perjury, that the above responses are true and correct and represent the testimony of the Department of Human Services.

9

As to objections,

/s/ Philip J. Peisch
Philip J. Peisch (WVSB # 13731)
Caroline M. Brown
Julia M. Siegenberg
Rebecca L. Wolfe
Brown & Peisch PLLC
1225 19th Street NW, Suite 700
Washington, DC 20036

/s/ Steven R. Compton
Steven R. Compton (WVSB #6562)
W.V. Attorney General's Office
812 Quarrier Street, 6th Floor
Charleston, WV 2530

*Counsel for Defendants*

July 2, 2024

As to responses,

/s/ Travis D. McReynolds
Travis D. McReynolds
Department of Human Services
One Davis Square
Charleston, WV 25301

*Rule 30(b)(6) Witness, on behalf of the DoHS*

July 2, 2024