# Exhibit 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| JONATHAN R., *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | |
| ) | Case No. 3:19-cv-00710 |
| ) | |
| JIM JUSTICE, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

**DEFENDANTS' WRITTEN RESPONSE TO PLAINTIFFS' RULE 30(B)(6) DEPOSITION NOTICE (TOPICS 11 AND 14)**

In response to Plaintiffs' Notice of Rule 30(b)(6) deposition dated February 2, 2024, and in accordance with the Stipulation of the parties dated June 3, 2024 (ECF No. 508), Defendants Cynthia Persily, in her official capacity as Secretary of the West Virginia Department of Human Services ("DoHS"), Cammie Chapman, in her official capacity as Deputy Secretary of the DoHS, Jeffrey Pack, in his official capacity as Commissioner of the Bureau for Social Services, and DoHS (collectively, the "Defendants"),[1] by and through their attorneys, hereby submit these written responses in lieu of producing a witness for oral examination with respect to the following topic:

> List and describe any and all actions taken to increase the number, type and availability of community-based services that are not covered by Medicaid and/or any and all planned activities [to increase the] number, type, availability of community-based services that are not covered by Medicaid, including the timing of the actions, and any realized or expected results; [and]

---

[1] As of January 1, 2024, DoHS became a successor agency to the Department of Health and Human Resources ("DHHR"), the original defendant in this action. For ease of reference, Defendants have used "DoHS" or "the Department" to include the time period when it was known as DHHR.

1

> List and describe any and all action taken to increase the number, type, and availability of community-based services and/or any and all planned action [to increase the] number, type, and availability of community-based services that are not covered by Medicaid, including the timing of actions and any realized or expected results. This includes actions to facilitate the provision of Wraparound Facilitation, Children's Mobile Crisis Response, Therapeutic Foster Family Care, and Assertive Community Treatment.

The time period covered by the request is January 1, 2019 to the present. Written responses are limited to those not provided through the Medicaid program. Pursuant to the parties' stipulation, testimony regarding Medicaid-funded services will be provided by oral deposition.

## DEFENDANTS' OBJECTIONS

Defendants object to the Notice of Deposition as duplicative in that it asks Defendants to identify actions for each of 17 different topics, and many of the Department's actions have or are expected to have an impact in multiple areas of agency practice. Defendants consider any action identified or described in any written response or oral testimony to the February 2, 2024, Rule 30 Notice of Deposition to apply to any and all topics identified in that Notice, whether or not specifically identified in response to any other topic.

Defendants object to the requirement to identify the "timing of the actions" to the extent it requires identification of a specific date. Unless otherwise specified below, Defendants have identified the year in which an action was taken or an initiative began, or the approximate time period for which an initiative was undertaken.

Defendants object to the instruction to identify actions taken "for the period January 1, 2019 to the present" to the extent that it would require Defendants to list and describe actions pursuant to policies, practices, programs or initiatives that were first implemented prior to January 1, 2019 and that continued past that date. To the extent the Notice of Deposition requests DoHS to testify about policies, practices, programs or initiatives first implemented prior to 2019 that

2

continue to present, Defendants object to the Notice of Deposition as overbroad, unduly burdensome, and not proportional to the needs of the case, because it would effectively require DoHS to list and describe hundreds of policies, practices, programs, or initiatives relating to the number, type and availability of community-based services not covered through Medicaid.

Defendants object to the instruction to "describe" an action to the extent it would require Defendants to repeat detailed information that is contained in one or more documents that have been provided to Plaintiffs in discovery. Defendants' responses reference documents that provide substantially more detail about some actions, comparable to how a witness might refer to a document in oral testimony. However, Defendants have not identified any and all documents that may describe a particular action listed or described below.

Defendants object to the terms "describe," "planned," "realized" and "expected," all of which are undefined, as vague and ambiguous. For example, it is not clear how much detail is required to "describe" an action; it is not clear what degree of certainty there must be that a future action will occur, or when it will occur, for that action to be considered "planned"; and it is not clear what degree of certainty or causation is required for a result to be "realized" or "expected" from a particular action. Defendants have endeavored to provide complete answers applying their understanding of the common meaning and usage of these terms.

Defendants also object to the term "results" as vague and ambiguous. For example, for results of actions to "increase the number, type and availability" of services, it is not clear if Plaintiffs are asking about outcome "results" for foster children or "results" of the actions to "increase the number, type and availability" of services itself. Defendants interpret it as meaning the latter.

3

The undefined term "number" is also ambiguous and vague as it relates to community-based services, as it is not clear if Plaintiffs are referring to, for example, the number of different community services, the number of service providers, or something else. Defendants object to the term "availability" as vague and ambiguous because it is subject to more than one reasonable interpretation. Defendants construe this term to mean services for which DoHS will pay or otherwise support in non-extraordinary circumstances.

Defendants object to the inclusion of therapeutic foster family care in Topic 14 as it is cumulative and duplicative of Topic 3, which also solicits sworn testimony regarding "any and all actions take to recruit and retain an adequate number of … therapeutic foster homes." Accordingly, sworn testimony responsive to Plaintiffs' Notice of Deposition will be provided in response to Topic 3 and should be considered responsive to Topic 14 as it relates to therapeutic foster family care.

To the extent that Plaintiffs believe that Defendants have not provided responses in accordance with the topic posed, Plaintiffs had an obligation under Rule 30(b) to describe with "reasonable particularity" the matter for examination.

### **DEFENDANTS' RESPONSES**

Subject to the foregoing objections, Defendants respond as follows:

1.     Since January 1, 2019, DoHS has taken numerous actions to increase the number, type, and availability of community-based services, in addition to and in conjunction with those covered by Medicaid, with the goal of keeping children with their families or in community placements. As set forth below, among other things, these include actions to: (1) implement the Children's Crisis and Referral hotline statewide; (2) implement the Pathway to Children's Mental Health Services, also referred to as the "Assessment Pathway," to assess any child with suspected

behavioral health needs, including foster children; (3) make Children's Mobile Crisis Response and Stabilization ("CMCRS") services available on a statewide basis; (4) enhance and redesign the provision of Socially Necessary Services (such as transportation and educational supports) determined necessary to provide for a child's safety, permanency, and well-being, including foster children; (5) make interim wrap-around services available to children awaiting assessment for the Children's Serious Emotional Disorder Medicaid waiver; and (6) restructure the Safe at Home program to provide state-funded, individualized wrap-around services beyond those available through the channels described above when a child is at risk of residential placement. These and other actions are further described below.

2. In 2019, DoHS received approval of its Children and Family Services Review Round 3 Performance Improvement Plan ("PIP") from the federal government. Further detail regarding the approval and implementation of the PIP is provided in response to Topic 13. One of the overall goals agreed upon in the PIP was to increase family support services to meet the needs of children and families. One of the strategies to advance this goal was to identify and collaborate with agency partners, and courts, in the development of service availability and substance abuse services. Another strategy to advance the PIP goal was to improve staff's knowledge regarding available services. In support of these strategies, DoHS took the following steps during the PIP implementation period:

> a. In 2020, DoHS partnered with the Family Resource Networks ("FRN") to provide Service Directories of available services on the FRN website that can be accessed by BSS and stakeholders.

  b. In 2020, DoHS finalized a memorandum of understanding with community collaborative groups to identify and address substance use disorder services and standardize the communication process.

  c. In 2020, DoHS partnered with the Capacity Building Center to develop a Service Array map of available substance use disorder services throughout the State.

  d. In 2021, DoHS implemented a Service Array Workgroup to meet monthly and collect information to develop a map of substance use disorder service availability.

 3. In 2019, DoHS redesigned Safe at Home West Virginia to transition the program from a Title IV-E demonstration project to a state-funded wraparound program available statewide.

  a. Safe at Home provides trauma-informed assessments and planning, individualized and coordinated wraparound services, and additional community-based services and supports to reduce reliance on out-of-home care and ensure that children remain in, or return to, a community setting whenever safely possible. More detailed information is available in the Safe at Home Program Manual, D003098287 – D003098237, and Policy, D003097739 – D003097768.

  b. In 2020, DoHS established a Temporary Retainer Payment policy for Safe at Home service providers to maintain statewide staffing capacity during the public health emergency. More detailed information is available in the provider agreements, D003097422 - D003097440.

  c. In 2020, DoHS issued updated policies, procedures and manuals for the Safe at Home program to align with program redesign and implementing changes from IV-E demonstration to a state-funded program.

    d. In 2022, DoHS updated the payment rates and methodology for Safe at Home providers to change the retainer payment into a bonus that increased payment rates and flexibility for providers in how they chose to use the additional funds. More detailed information is available in the provider agreements, D003097385 - D003097399.

    e. In 2023, DoHS conducted outreach to Children with Serious Emotional Disorder ("CSED") waiver service providers to enroll them as wraparound facilitators in the Safe at Home program.

    f. In 2023, DoHS partnered with Marshall University to oversee assignment and coordination of Safe at Home referrals to providers.

4. In 2019, DoHS's Family First Prevention Services 5-year State Plan was approved by the federal government. More detailed information is available in the approved State Plan, D003106181 – D003106215, and the January 2022 memo regarding Family First Services available through Socially Necessary Services, D003096682 – D003096683.

    a. The approval enabled DoHS to claim IV-E matching funds for three evidence-based prevention services: Functional Family Therapy, Healthy Families America, and Parents as Teachers.

    b. Functional Family Therapy is a family intervention program available for 11 to 18-year-old youth who experience behavioral or emotional problems that bring them into contact with the juvenile justice system and meet the criteria for foster care candidacy.

    c. Healthy Families America is an intensive home visiting program available to families with increased risk of child maltreatment or who have already experienced abuse or neglect within the home.

    d.  Parents as Teachers is a home visiting and parent education program available to families expecting a new infant, who have increased risk of child maltreatment or have already experienced abuse or neglect in the home.

5.    In 2020, DoHS implemented the Children's Crisis and Referral Line, which is the centralized access point to connect children and families to mobile crisis response and stabilization teams. More detailed information is available in the Semi-Annual Reports published by DoHS's Office of Quality Assurance, D002232420 – D002232501, D002232521 – D002232635, D217301 – D217446, D002232254 – D002232419, D002232660 – D002232862, D003097101 – D003097124, and the Year Five Implementation Plan with the U.S. Department of Justice, D002141194 - D002141240.

6.    In 2020, DoHS contracted with the West Virginia University's Center for Excellence in Disabilities to coordinate the Positive Behavior Support ("PBS") program. More detailed information is available in the Semi-Annual Reports published by DoHS's Office of Quality Assurance, D002232420 – D002232501, D002232521 – D002232635, D217301 – D217446, D002232254 – D002232419, D002232660 – D002232862, D003097101 – D003097124.

    a.  The Positive Behavior Support program offers a range of individualized services to children and youth through ages 21 with serious emotional disturbances, including mental and behavioral health assessments, development and implementation of a positive behavioral support plan as part of treatment, modeling for caregivers on how to implement the behavioral support plan, and skill-building services.

b. In 2021, DoHS partnered with Concord University to develop a collaborative center for PBS education program to provide comprehensive workforce training and coaching in PBS approaches, and coordination of certification of providers.

7. In 2021, DoHS implemented the Pathway to Children's Mental Health Services, also referred to as the "Assessment Pathway," to ensure initial and ongoing screening of foster children for behavioral health needs. More detailed information is available in the Semi-Annual Reports published by DoHS's Office of Quality Assurance, D002232420 – D002232501, D002232521 – D002232635, D217301 – D217446, D002232254 – D002232419, D002232660 – D002232862, D003097101 – D003097124, the Year Five Implementation Plan with the U.S. Department of Justice, D002141194 - D002141240, and the Assessment Pathway Policy, D002230530 – D002230539.

a. In 2022, DoHS expanded its contract with Acentra to perform Qualified Independent Assessments for children who are at risk of residential placement or referred to residential placement as part of the Assessment Pathway.

b. In 2023, DoHS completed implementation of the Qualified Independent Assessments process, and training of caseworkers and providers on Qualified Independent Assessments.

8. In 2021, DoHS made Children's Mobile Crisis Response and Stabilization ("CMCRS") services available on a statewide basis to provide children and families experiencing a behavioral health crisis with on-site support, crisis planning and connection to appropriate community-based resources. More detailed information is available in the Semi-Annual Reports published by DoHS's Office of Quality Assurance, D002232420 – D002232501, D002232521 – D002232635, D217301 – D217446, D002232254 – D002232419, D002232660 – D002232862,

D003097101 – D003097124, and the Year Five Implementation Plan with the U.S. Department of Justice, D002141194 - D002141240.

9. In 2021, DoHS partnered with Marshall University to create the West Virginia Behavioral Health Workforce and Health Equity Training Center. More detailed information is available in the Year Five Implementation Plan with the U.S. Department of Justice, D002141194 - D002141240.

10. In 2022, DoHS created a process for requesting unlimited units of the following Socially Necessary Services: supervision, agency transportation, transportation time, supervised visitation, multidisciplinary team attendance, and intervention travel time.

    a. Socially Necessary Services are non-medical services provided to children and families which are necessary to provide for the child's safety, permanency, and well-being. More detailed information is available in the Socially Necessary Services Utilization Management guidelines, D003097775 – D00309826.

    b. In 2022, DoHS implemented Functional Family Therapy, Health Families America, and Parents as Teachers as Socially Necessary Services. More detailed information is available in the January 2022 memo regarding Family First Services available through Socially Necessary Services, D003096682 – D003096683.

    c. In 2023, DoHS increased reimbursement rates for Socially Necessary Services providers by 30%.

    d. In 2023, DoHS partnered with the Capacity Building Center within the Administration for Children & Families to redesign the Socially Necessary Service program, and conducted a survey of field staff to solicit input regarding the redesign of Socially Necessary Services.

11. In 2022, DoHS established the Office of Quality Assurance to align continuous quality improvement efforts and improve data quality. More detailed information is available in the Continuous Quality Improvement Plan for Children Programs, D002771339 - D002771363, and the Semi-Annual Reports published by DoHS's Office of Quality Assurance, D002232420 – D002232501, D002232521 – D002232635, D217301 – D217446, D002232254 – D002232419, D002232660 – D002232862, D003097101 – D003097124.

12. In 2022, DoHS implemented interim wraparound services to put services in place during the period of time children are being assessed for eligibility for the CSED waiver. More detailed information is available in the Semi-Annual Reports published by DoHS's Office of Quality Assurance, D002232420 – D002232501, D002232521 – D002232635, D217301 – D217446, D002232254 – D002232419, D002232660 – D002232862, D003097101 – D003097124.

    a. DoHS also implemented a plan of care document for use by all wraparound service providers to identify the needs of youth and their families, detail individualized goals and action steps, and monitor the progress of the child.

    b. Since 2022, DoHS has partnered with Marshall University to assess adherence to Wraparound practices and principles and fidelity to the National Wraparound Initiative ("NWI") model, as well as utilization of the Child and Adolescent Needs and Strengths ("CANS") assessments.

    c. Marshall University completed a baseline fidelity review in 2022; the Wraparound Fidelity Performance Improvement Plan ("PIP") Team was established as part of the recommendations of the Wraparound Facilitation Fidelity Report.

    d. Marshall University completed a second Wraparound Fidelity Report in 2024 and is working with the Wraparound Fidelity PIP Team to determine next steps needed to implement the recommendations.

    e. In 2024, DoHS partnered with the University of Connecticut to provide Wraparound facilitator training.

13. In 2023, DoHS was selected as one of the ten participants in the "Families Are Stronger Together: TANF & Child Welfare Partnering for Prevention learning Community" or "FAST-LC" initiative launched by the Federal Administration for Children and Families.

    a. FAST-LC centers on innovative prevention strategies to mitigate and reduce families' involvement with the child welfare system.

    b. Selected participants benefit from a robust suite of individualized training, technical assistance, and coaching support, as well as regular opportunities for collaborative learning and sharing with other FAST-LC participants.

    c. Among the project goals for DoHS's FAST-LC initiative is the enhancement of IV-E prevention service reimbursement to expand availability and use among Family Support Centers.

    d. Another goal of the FAST-LC initiative is to identify new prevention services to add to West Virginia's Family First Prevention Plan.

14. In 2024, DoHS joined the Link Center's Policy Academy for 988 Suicide & Crisis Response Lifeline to ensure inclusive crisis response systems for children and adults with intellectual and developmental disabilities, brain injury, and other cognitive disabilities.

15. In the coming year, DoHS plans to hire a dedicated Wraparound coordinator to oversee continuous quality improvement and fidelity to the NWI model on a statewide basis, and across bureaus.

16. In the coming year, DoHS plans to continue data analysis of Wraparound Facilitator capacity needs and efforts to expand the provider network, including for providers of Safe at Home and interim wraparound.

17. In the coming year, DoHS plans to work with Aetna to implement focus groups with youth in foster care and biological families to gather feedback and data from those with lived experiences to improve services.

18. In the coming year or years, DoHS intends to develop and implement performance-based contracting with Safe at Home providers.

19. In the coming year or years, DoHS plans to implement a comprehensive training explaining services and programs available through each of the Bureaus within DoHS developed by the Service Array workgroup. The training will be available to DoHS staff, the provider community, and other public stakeholders.

20. In the coming year, DoHS plans to implement the Socially Necessary Service redesign in partnership with the Capacity Building Center, Acentra, Aetna, and providers.

21. Through the Office of Quality Assurance, DoHS plans to continue its focus on data collection, analysis, and action based on the findings to identify process strengths and challenges in community-based services. Data initiatives DoHS plans to fully implement in the coming year include increasing the use of county level mapping to assist with understanding relationships between community-based services and system-involvement.

22. DoHS is always considering actions that will improve its programs. While other actions have not yet proceeded to the planning stage, DoHS will undertake additional actions to further develop community-based services and programs available to children, including Safe at Home, Socially Necessary Services, and the Assessment Pathway.

As a result of the above, and in conjunction with actions identified and described in response to other topics, DoHS has realized or expects the following results from its actions:

1. In the last ten years, DoHS has substantially increased the number of foster children receiving community-based services.

2. In the last ten years, DoHS has substantially increased the amount of community-based services received by foster children.

3. In the last five years, DoHS has devoted substantial efforts to develop and expand community-based services for all West Virginia children, including foster children, with the goal of serving children in the least restrictive setting.

4. The Children's Crisis Response Line and the Children's Mobile Crisis Response and Stabilization teams have provided important support to children and families experiencing emotional or behavioral crisis to ensure children can remain in a community-based setting whenever possible. CMCRS services also ensure families will be connected to longer-term services as needed. The availability of CMCRS services has contributed to a substantial increase in the number of children being referred for assessments and accessing home and community-based services, including CSED Waiver services, Safe at Home, and interim wraparound services.

5. DoHS expects that the Assessment Pathway will streamline access to home and community-based services for children and help connect children to appropriate services.

Establishment and development of the Assessment Pathway has contributed to a substantial increase in the number of children accessing home and community-based services, including CSED Waiver services, Safe at Home, and interim wraparound services.

6. DoHS intends for the Qualified Independent Assessment to help ensure that only children with the highest level of need will be referred for residential treatment. This will involve ongoing partnership and education of the Circuit Courts as to the use of the assessment.

7. DoHS expects that the redesign of Socially Necessary Services will help ensure a robust set of community-based services focused on supporting the permanency, safety and well-being of children in foster care. DoHS expects the redesign will modernize services and utilization management requirements to meet current needs, increase provider accountability, and establish procedures for continual reviews and modification to the service array, including payment rates. DoHS anticipates not only increasing service capacity throughout the State, but also increasing provider outcomes to serve children and their family's needs more intentionally.

8. Implementing Safe at Home as a state-funded wraparound program has ensured the sustainability and expansion of the service for children in foster care as an important community-based service focused on ensuring children remain in or return to community settings.

9. DoHS expects that partnering with Marshall University to oversee Safe at Home referrals will improve the timeliness within which children are assessed for and receive services.

10. DoHS expects that partnering with the University of Connecticut will increase Wraparound provider capacity statewide and ensure services meet NWI high fidelity standards.

11. DoHS expects that interim wraparound services will ensure the needs of children and families are met while eligibility for CSED Waiver services are being assessed.

12. DoHS expects that the provision of Socially Necessary Services, Safe at Home Services, and interim wraparound services will assist in further promoting the effectiveness of the behavioral health services provided to children and families through the Medicaid program.

13. Establishing the Office of Quality Assurance ensures that the future development and growth of community-based services is data driven, which will ensure the use of evidence-based practices and high-quality services that achieve improved outcomes in safety, permanency and well-being for children and their families.

14. DoHS expects that all of its activities to develop and expand community-based services will ensure children receive needed services in the community, including those in the custody of the Department.

Based on the reasonable inquiry of DoHS staff and the factual matters known or made known to me for purposes of providing these written responses to the Rule 30(b)(6) deposition notice, I am informed and believe, and based on such information and belief hereby declare under penalty of perjury, that the above responses are true and correct and represent the testimony of the Department of Human Services.

| As to objections, | As to responses, |
|---|---|
| /s/ Philip J. Peisch<br>Philip J. Peisch (WVSB # 13731)<br>Caroline M. Brown<br>Julia M. Siegenberg<br>Rebecca L. Wolfe<br>Brown & Peisch PLLC<br>1225 19th Street NW, Suite 700<br>Washington, DC 20036 | *Andrea Ramsey-Mitchell*<br>Andrea Ramsey-Mitchell<br>Department of Human Services<br>One Davis Square<br>Charleston, WV 25301<br><br>*Rule 30(b)(6) Witness, on behalf of the DoHS*<br><br>July 1, 2024 |

16

/s/ Steven R. Compton
Steven R. Compton (WVSB #6562)
W.V. Attorney General's Office
812 Quarrier Street, 6th Floor
Charleston, WV 2530

*Counsel for Defendants*

July 1, 2024