IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JONATHAN R.,** *et al.,*

    **Plaintiffs,**

v.                                             Case No.:  3:19-cv-00710

**JIM JUSTICE,** *et al.,*

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion to Compel. (ECF No. 501). For the reasons that follow, the Court **DENIES** the motion.

**I.**     **Relevant Facts**

    *A. Complaint*

On September 30, 2019, twelve current and former West Virginia foster children filed a putative class action complaint against the state officials responsible for administering West Virginia's foster care system. (ECF No. 1). Plaintiffs allege that Defendants' system-wide foster care policies and practices expose them to a substantial risk of harm in violation of their substantive due process rights under the Fourteenth Amendment to the United States Constitution. (ECF No. 351 at 10). They seek injunctive and declaratory relief in this lawsuit. (*Id.* at 39).

    *B. Class Certification*

The Court certified a General Class consisting of all foster children who are or will be in the custody of DHHR or its successor agency. (*Id.* at 45). The Court also certified

1

an ADA Subclass, which includes all members of the General Class who have physical, intellectual, cognitive, or mental health disabilities, as defined by federal law. (*Id.* at 46). In certifying the class action, the Court narrowed the lawsuit to three common claims relating to the General Class and one common claim of the ADA Subclass. The General Class alleges that Defendants' inadequate array of appropriate placements, lack of appropriate case planning, and high caseloads and chronic understaffing expose them to a substantial risk of harm. (*Id.* at 10). The common claim of the ADA Subclass focuses on the provision of community-based treatment.

### C. Discovery Dispute at Issue

On January 10, 2024, Defendants provided a privilege log, which included documents withheld from discovery on the basis of the deliberative process privilege. (ECF No. 519-2). Plaintiffs took issue with the fact that some of the allegedly privileged documents were not manually reviewed by counsel, but rather were identified and withheld using technology-assisted review ("TAR"). (ECF Nos. 517-2 at 3, 519-1 at 1). To appease Plaintiffs' concerns, Defendants agreed to forego the use of TAR and manually reviewed each document withheld on the basis of deliberative process privilege. (ECF No. 517-2 at 3). Defendants provided two updated privilege logs on May 8 and 10, 2024. (*Id.*).

In the midst of the above written discovery, on April 18, 2024, Plaintiffs took the deposition of Jeremiah Samples, who was the former Deputy Secretary of the West Virginia Department of Health and Human Resources ("DHHR") from late 2013 or early 2014 through 2022. (ECF No. 501-2 at 15). During the deposition, Defendants' counsel objected to multiple questions and instructed Samples not to answer, asserting the deliberative process privilege. (*Id.*).

On May 23, 2024, Plaintiffs filed the instant motion to compel, asking the Court to order Defendants to allow Samples to respond to the questions that counsel instructed him not to answer based on deliberative process privilege, as well as to produce all documents withheld on the basis of that privilege. (ECF No. 501 at 20). Defendants responded in opposition to the motion, and Plaintiffs have filed a reply. (ECF Nos. 517, 519).

II. **Discussion**

### A. *The Motion is Partially Untimely*

As an initial matter, the Court finds that Plaintiffs' motion to compel is time-barred with respect to (1) Samples' April 18, 2024 deposition and (2) documents that were identified as privileged before April 23, 2024. Local Rule of Civil Procedure 37.1(c) very clearly states that motions to compel disclosures or discovery "not filed within 30 days after the discovery request or disclosure requirement was due are waived." The thirty-day deadline may be extended by the Court for good cause shown, so long as the extension does not interfere with the scheduling order. L. R. Civ. P. 37.1(c).

Courts generally apply the "good cause" standard set forth in Fed. R. Civ. P. 6(b)(1) when considering motions to extend the time in which a party must comply with an act required to be done within a specified time. *See, e.g.*, *Levy v. Green*, No. 8:18-CV-01291-TDC, 2024 WL 3090367, at *4 (D. Md. June 21, 2024) (noting that Rule 6(b)(1) "generally governs motions to extend time after court deadlines have run."); *Pickens v. Hendricks*, No. 1:21-CV-00030-MR, 2024 WL 645328, at *4 (W.D.N.C. Feb. 14, 2024). Rule 6(b)(1) contains two alternatives, depending on whether the motion to extend is addressed before the deadline expires or after its expiration. Fed. R. Civ. P. 6(b)(1)(A) and (B).

3

In this case, Plaintiffs never filed a motion to extend the thirty-day deadline to file a motion to compel. Rather, they contend that their motion to compel is timely given the updated privilege logs. In other words, Plaintiffs argue that the thirty-day time frame in which to file a motion to compel did not begin until May 10, 2024. The undersigned disagrees.

Defendants produced a privilege log on **January 10, 2024**, repeatedly asserting the deliberative process privilege. (ECF No. 519-2). After a dispute concerning the use of TAR, Defendants supplied updated privilege logs on May 8 and 10, 2024—having completed a manual review of the documents identified as privileged. (ECF Nos. 501-7, 501-8). However, the updated privilege logs relied on the same deliberative process privilege for the relevant documents withheld. Plaintiffs' contention that they could not have brought a motion to compel until they received the updated privilege logs, (ECF No. 519), is not persuasive, because Plaintiffs lodge a blanket objection to the applicability of the deliberative process privilege; they contend that *no* assertion of the privilege is proper, not that it has been wrongly asserted for specific documents. Consequently, Plaintiffs should have brought the issue to the Court's attention no later than **February 12, 2024,** making their **May 23, 2024** motion approximately 100 days late.

Courts in this district have found that updated privilege logs may justify filing a motion to compel after the thirty-day deadline if, for example, the original privilege log was acknowledged to be inadequate, or a new privilege was asserted. *See, e.g., Fint v. Brayman Constr. Corp.*, No. 5:17-CV-04043, 2018 WL 3097328, at *3 (S.D.W. Va. June 21, 2018) (finding that a motion to compel was not untimely under the local rule, because the defendant conceded that the original privilege log was inadequate when it served an

4

amended privilege log while a motion to compel was pending; the defendant changed the basis of the privilege asserted; and the motion to compel was directed to the amended privilege log, not the original); *Foster v. United States Env't Prot. Agency*, No. CV 2:14-16744, 2016 WL 6561567, at *2 (S.D.W. Va. Nov. 3, 2016) (finding that a motion to compel was not untimely under Local Rule 37.1(c) because the defendants filed an amended privilege log while a motion to reopen discovery was pending; they had failed to disclose the existence of all of the documents claimed to be privileged; and, given the status of the case, defendants were not prejudiced by the motion to compel). As these decisions indicate, whether a discovery motion is untimely, and whether there is good cause to extend the thirty-day deadline is determined on a case-by-case basis.

Having found that the motion to compel is untimely with respect to any privilege log filed before April 23, 2024, the Court now considers whether there is good cause to extend the deadline. The Court applies Rule 6(b)(1)(B) to evaluate the existence of good cause. Rule 6(b)(1)(B) requires the party seeking an extension to show that it missed the deadline because of excusable neglect. Excusable neglect is determined using four factors: "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993). "No factor is dispositive, but inadvertence, ignorance of the rules, ... mistakes construing the rules, a lack of diligence, or failure to provide a plausible explanation for the delay, typically do not satisfy the excusable neglect standard." *Soc. Enter., LLC v. S. Belle Organics, LLC*, No. 7:20-CV-166-FL, 2022 WL 4084414, at *3 (E.D.N.C. Sept. 6, 2022) (internal markings and citations omitted). "'Excusable neglect' is not easily

5

demonstrated, nor was it intended to be." *Agnew v. United Leasing Corp.*, 680 F. App'x 149, 155 (4th Cir. 2017) (quoting *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996)).

Applying the four factors, the undersigned finds that good cause to extend the deadline does not exist. To begin, the January 10, 2024 privilege log is 118 pages long. To the extent that there are documents on this privilege log that are not present on the two May 2024 logs—for example, if the May logs contain additional documents discovered after January 10—compelling Defendants to review the logs, compare them, and address individual documents would be prejudicial to them at this stage of the litigation. Discovery has concluded and dispositive motions have been filed. Defendants asserted the deliberative process privilege as early as January 10, 2024.[1] There is no evidence in the record that Defendants agreed to abandon the privilege, or that the TAR process was so erroneous that the original privilege log was wholly inadequate. As such, Plaintiffs knew in January 2024 that the issue of the deliberative process privilege existed and would have to be addressed. This is not a small issue; particularly when considering the size of Defendants' document production. For reasons unknown, Plaintiffs chose to sit on this issue until there were only a few weeks left after briefing until the close of discovery—leaving little time for the undersigned to review and analyze the briefs and relevant law and write this opinion. Reopening the entire document production at this late date would certainly affect the deadlines in the scheduling order. While there is no reason to believe Plaintiffs delayed filing the motion in bad faith, they did delay bringing this issue to the Court, and that delay must be attributed to them.

---

[1] Technically, according to Defendants, the privilege was first asserted four years ago in April 2020. (ECF No. 517 at 4). However, it is not necessary for the Court to look back that far.

6

Fortunately for Plaintiffs, however, there is no dispute that the motion to compel is timely as it applies to any new documents contained in the privilege logs served on May 8 and 10, 2024.

Regarding the April 18, 2024 deposition of Samples, Plaintiffs argue that the thirty-day deadline provided in Local Rule 37.1(c) is inapplicable. (ECF No. 519 at 11). According to Plaintiffs, the rule only applies to a party's failure to fully respond to written discovery requests. (*Id.*). Plaintiffs do not cite to a single case in which a court in this district held that a motion to compel responses from a deponent is **not** governed by Rule 37.1. Indeed, Fed. R. Civ. P. 37(a)(3) expressly states that a motion to compel answers from a deponent falls under Rule 37. Local Rule 37.1 is a district addendum to Fed. R. Civ. P. 37, and the thirty-day deadline applies to all motions to compel or "other motions in aid of discovery." *See* L. R. Civ P. 37.1(c).

Plaintiffs were exceedingly aware on April 18, 2024 that Defendants refused to allow Samples to respond to certain questions based on the deliberative process privilege. As stated, the issue was raised in January 2024, and Plaintiffs explicitly disagreed with Defendants' position. They could and should have filed a motion at that point. Additionally, Plaintiffs advised Defendants on April 22, 2024 that they would move to compel discovery into those matters, but Plaintiffs still did not file a motion to compel until a month later. (ECF No. 501-4 at 5). Plaintiffs could have obtained a stipulation as they attempted to resolve the issue with Defendants or they could have filed the motion to compel within 30 days, but they did neither. Therefore, the motion concerning the deposition of Samples is likewise untimely.

Applying the good cause analysis to the deposition motion, the undersigned reaches the same conclusion as it did with the privilege log. Compelling Defendants to

make Samples available for another deposition—after the close of discovery and the filing of summary judgment motions—would be prejudicial to them. Moreover, the parties would have to obtain an extension of the discovery deadline from the presiding District Judge, which undoubtedly affects the posture of the case and the scheduling order. Discovery closed on July 5, 2024 and dispositive motions were due by July 8, 2024. (ECF No. 491 at 1). Plaintiffs simply waited too late in the litigation to raise a longstanding and complex discovery issue that could not reasonably be resolved before the close of discovery.

### B. The Deliberative Process Privilege Applies

Concerning the other documents at issue, which include any new documents identified in the May 2024 privilege logs, the deliberative process privilege protects from discovery "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001). "The privilege serves important interests: the privilege encourages free-ranging discussion of alternatives; prevents public confusion that might result from the premature release of such nonbinding deliberations; and insulates against the chilling effect likely were officials to be judged not on the basis of their final decisions, but for matters they considered before making up their minds." *Pulte Home Corp. v. Montgomery Cnty., Maryland*, No. GJH-14-3955, 2017 WL 2361167, at *12 (D. Md. May 31, 2017) (citation omitted). The "privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Id*. This information is shielded from the public to enhance the quality of agency decisions by protecting open and frank discussion among

those who make them within the government, as well as prevent public confusion that might result from the premature release of such nonbinding deliberations. *Klamath Water Users Protective Ass'n*, 532 U.S. at 8-9; *In re Camp Lejeune Water Litig.*, No. 7:23-CV-897, 2023 WL 8791671, at *2 (E.D.N.C. Dec. 19, 2023) (citing *City of Va. Beach v. U.S. Dept. of Com.*, 995 F.2d 1247, 1252–53 (4th Cir. 1993)).

To qualify as privileged, documents must be (1) "deliberative," meaning they are "prepared to help the agency formulate its position" and (2) "predecisional," or "prepared to assist in the arrival at a final decision." *In re Camp Lejeune Water Litig.*, 2023 WL 8791671, at *3 (citing *United States Fish & Wildlife Serv.*, 592 U.S. 261, 268 (2021)). "There is considerable overlap between these two prongs because a document cannot be deliberative unless it is predecisional." *Id.* "A document is 'deliberative' if it reflects the give-and-take of the consultative process by revealing the manner in which the agency evaluates possible alternative policies or outcomes." *Heyer v. U.S. Bureau of Prisons*, No. 5:11-CT-03118-D, 2014 WL 4545946, at *3 (E.D.N.C. Sept. 12, 2014) (markings and citations omitted). Documents such as drafts, proposals, recommendations, and opinions regarding the policy in question can fall under the deliberative umbrella. *Id.* "Predecisional," as the term implies, means that the document must have been prepared to assist in the arrival at a final decision, and any documents created after the decision is reached or policy is established do not qualify. *Id.*

The burden is on the government to demonstrate the applicability of the deliberative process privilege. *Id.* (citing *Rein v. U.S. Patent & Trademark Office,* 553 F.3d 353, 366 (4th Cir. 2009)). There is currently no binding legal authority on the application of deliberative process privilege in the United States Court of Appeals for the Fourth Circuit. *Est. of LeRoux v. Montgomery Cnty., Maryland*, No. 8:22-CV-00856-

9

AAQ, 2024 WL 1703939, at *3 (D. Md. Apr. 19, 2024). Moreover, other district court cases are of limited assistance because the deliberative process privilege is highly fact specific. *Id.*

In this case, Plaintiffs argue that, as a whole, the privilege does not apply to their substantive due process claims because the government's intent is a central issue in the case. (ECF No. 519 at 2, 4). Defendants respond that the deliberative process privilege applies even in cases in which the government's intent is at issue unless Plaintiffs show an overriding need for the information. (ECF No. 517 at 6-7) (citing *Heyer*, 2014 WL 4545946, at *3). Defendants maintain that they applied the deliberative process privilege narrowly and appropriately to 2,610 out of the 700,000 documents collected in discovery, and disclosure of the information would chill candid efforts to improve the child welfare system. (*Id.* at 9, 11, 12). Defendants attached declarations from Berkeley Bentley and Cammie Chapman, invoking the deliberative process privilege with respect to the documents identified in the May 8 and 10, 2024 privilege logs, respectively. (ECF Nos. 517-3, 517-4). Berkeley Bentley has served as General Counsel to Governor Jim Justice since July 2021 and previously served as his Deputy General Counsel since 2019. (ECF No. 517-4 at 2). Cammie Chapman was the Associate General Counsel for DHHR from 2018 to 2022 and is the current Deputy Secretary of Children and Adult Services for DHHR. (ECF No. 517-3 at 2).

As the Court discussed in previous discovery orders, Plaintiffs allege that West Virginia's system-wide foster care policies and practices expose them to a substantial risk of harm in violation of their rights under the United States Constitution. (ECF No. 351 at 10). They seek declaratory and prospective injunctive relief, but no money damages. (*Id.* at 39). In order to succeed on their substantive due process claim,

10

Plaintiffs must show that Defendants are deliberately indifferent to the welfare of the class members. *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 175 (4th Cir. 2010) (citation and markings omitted). *Id.* Negligence, or even carelessness, does not establish deliberate indifference. *Id.* Rather, Plaintiffs must show that Defendants were (1) plainly placed on notice of a danger and (2) chose to ignore the danger notwithstanding the notice. *Id.* Importantly, Plaintiffs are not required to establish the *motivation* or reason for Defendants' alleged indifference to the danger.

Plaintiffs acknowledge that they can establish deliberate indifference under an objective standard by showing that the risk of harm was so obvious that Defendants should have appreciated it. (ECF No. 474 at 3). Plaintiffs are not required to show that Defendants were subjectively aware of the risk of harm, although they can choose to use that evidence to show deliberate indifference. *Id.* As the Court noted when evaluating Plaintiffs' motion for sanctions, "[w]hile Plaintiffs might prefer to offer a candid email between former officials about the problems in the foster care system, the absence of this evidence certainly does not preclude Plaintiffs from proving deliberate indifference." *Jonathan R. v. Just.*, No. 3:19-CV-00710, 2024 WL 1339522, at *11 (S.D.W. Va. Mar. 28, 2024).

Contrary to Plaintiffs' view, the government's intent is not integral to this case, and the extent and scope of the decision-making process are secondary to the actual decisions that were made. This case can be distinguished from discrimination cases or claims for punitive damages in which the government's intent is paramount. *See, e.g., Doe 2 v. Esper*, No. CV 17-1597 (CKK), 2019 WL 4394842, at *6 (D.D.C. Sept. 13, 2019); *Elkins v. D.C.*, 250 F.R.D. 20, 27 (D.D.C. 2008). For example, in an employment discrimination case where the plaintiff complains that she was wrongfully denied a

promotion because of her sex, the plaintiff must show that the denial was the result of her employer's bias against women. In that example, the denial of the promotion is not the central issue, as there are legally-supported reasons for denying a promotion; rather, the key issue is what motivated the employer's denial of the promotion in the plaintiff's case. In contrast, the central issue in this case is Defendants' action or inaction in the face of what Plaintiffs claim is a plainly substandard foster care system—not *why* Defendants' failed to improve the system. Thus, the finer details of the decision-making process that resulted in the challenged action or inaction are peripheral. This case is far more analogous to *Heyer* in which the Court stated that "[t]he integrity of the decision-making process concerning the conditions at FCI Butner and the accommodations plaintiffs seek is not the gravamen of their case, but rather the actual conditions and accommodations themselves." *Heyer*, 2014 WL 4545946, at *4.

Similarly, the gravamen of this case is not the integrity of the predecisional deliberation process, but whether the policies and practices regarding the array of placements for foster children, case planning, caseloads and staffing, and provision of community-based treatment expose foster children to a substantial risk of harm. By way of example, one of Plaintiffs' claims is that caseworkers are overwhelmed with such high caseloads that they cannot maintain sufficient contact with each child under their supervision. To support that claim, Plaintiffs need not introduce emails and memorandums between agency officials discussing ways to fix (or, in Plaintiffs' view, ignore) the problem. Instead, the evidence is focused on whether Defendants were aware of the problem, failed to take action or took inadequate action, and how those actions or inaction affected foster children. While it might be sensational to show the innerworkings of Defendants' deliberations, it is certainly not necessary or central to

Plaintiffs' case. *Heyer*, 2014 WL 4545946, at *4 (citing *Convertino v. U.S. Dept. of Justice,* 674 F.Supp.2d 97, 103 (D.D.C. 2009) ("The privilege remains even if the motive of the government is relevant to some inquiry in the case, as long the government's subjective motivation is not the very essence of a claim.") (cleaned up).

Plaintiffs argue that Defendants have not made the detailed showing necessary to establish that the deliberative process privilege applies. (ECF No. 501 at 11). They correctly point out that the privilege does not protect documents which are merely peripheral to policy formation. *Id*. Although Defendants need not anchor each document to a discrete decision, the record must bear on the formulation of policy-oriented judgment. *Id*. Purely factual material is not protected unless it is intertwined with policymaking processes such that revelation of the factual material would simultaneously expose protected deliberation. *Id*. In reply, Plaintiffs identify further supposed deficiencies in the privilege log descriptions. (ECF No. 519).

Defendants asserted the privilege in relation to 2,610 documents out of 700,000 documents collected by them. While this does not conclusively establish that Defendants have narrowly asserted the privilege, the privilege was raised only 0.37% of the time. Nonetheless, considering Plaintiffs' arguments, the Court has carefully reviewed the privilege logs and does not find the assertions of deliberative process privilege to be vague or generic. (ECF Nos. 501-7, 501-8). Obviously, this process is constrained somewhat by Plaintiffs' request that **all** 2,610 documents withheld under the deliberative process privilege be produced. The Court is not a pig searching for truffles and can only rule on specific entries brought before it. In their motion, Plaintiffs did identify some entries concerning internal, predecisional deliberations regarding the use of virtual visits to foster children, potential steps to improve contact times with foster

13

children, handling of educational neglect referrals, qualified residential treatment policy, therapeutic foster care program, five-year prevention plan, and safety assessment policy. (ECF No. 501 at 12). These entries and the other entries in the privilege logs are sufficiently detailed to show that the documents concern policy deliberations. The descriptions are read in conjunction with the subject line and other information provided in the privilege logs, which show that documents were prepared to assist the agency in formulation of specific decisions. Moreover, Defendants provided, albeit in response to the motion to compel, declarations from agency officials invoking the deliberative process privilege and explaining why it applies to the documents in question. The Court concludes that the deliberative process privilege applies in this case.

### C. There is No Overriding Need for the Information

Now that Defendants have demonstrated the applicability of the privilege, the burden shifts to Plaintiffs to establish an overriding need for the information. The deliberative process privilege is qualified; therefore, Plaintiffs may overcome the privilege by "establishing the existence of a sufficient need for the information that outweighs any harm from its production." *In re Camp Lejeune Water Litig.*, 2023 WL 8791671, at *3 (cleaned up). In evaluating whether there is a sufficient need for the information to overcome the privilege, the court should consider four factors: (1) the relevance of the evidence to the lawsuit; (2) the availability of alternative evidence on the same matters; (3) the government's role, if any, in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *Id.*

Here, the information is relevant to the lawsuit, which weighs in favor of disclosure. However, as Defendants' policies, practices, and actions are the focus of the

14

lawsuit, not the predecisional deliberative discussions that may or may not have been adopted, the need for the information is not imperative. Plaintiffs contend that the documents at issue are highly relevant to establishing deliberate indifference, but again, they are not required to establish Defendants' subjective knowledge of the risk of harm to foster children, nor the reasons why Defendants failed to take more or different action.

As to the second factor, Plaintiffs point out that Defendants spoliated emails of some high-ranking DHHR officials. (ECF No. 519 at 6). In its defense, Defendants argued that Plaintiffs could obtain the evidence through alternative means. Plaintiffs contend that by asserting the deliberative process privilege, Defendants now seek to prevent them from doing so. (*Id.*). This argument is well-taken to an extent, but its weakness is that it presumes the spoliated emails would have been produced, rather than withheld under the deliberative process privilege or some other privilege. Certainly, the same privilege that protects predecisional deliberative reports, discussions, and recommendations would protect from disclosure emails providing predecisional deliberative reports, discussions, and recommendations. In any event, alternative evidence is available, weighing in favor of nondisclosure. Not only witness testimony, but also reports of public meetings, data collected by the agency, official public statements, and official publications. The testimony of Jeremiah Samples, alone, is strongly supportive of Plaintiffs' claims.

The third factor weighs in favor of disclosure because the action or inaction of a government agency is at issue. Nonetheless, while government officials are defendants in this case, no official has been sued in his or her personal capacity. They are not accused of individual misconduct, or alleged to have acted with malice.

"The fourth factor requires the Court apply a balancing test, 'while the last factor obviously requires a consideration of the policies underlying the privilege, it does so expressly in the context of *weighing* the public interest in nondisclosure of the particular materials at issue.'" *Stone v. Trump*, 453 F. Supp. 3d 758, 768 (D. Md. 2020) (citing *Cipollone v. Liggett Group Inc.*, 1987 WL 36515 at 2 (4th Cir. 1987) (emphasis in the original). This factor weighs in favor of nondisclosure. Disclosure of this type of information would have a ripple effect on policymaking. The documents involve deliberations and predecisional discussions about the DHHR, issues with child welfare programs, budget concerns, and the allocation of funds across the government. Government officials will hesitate to be frank and candid if they know that their preliminary thoughts, proposals, and concerns might be freely disseminated. The public is entitled to transparency regarding agency decisions and the reasons for them, but is not entitled to review all of the communications within an agency discussing thoughts, suggestions, plans, alternatives, and possible outcomes that were rejected in reaching those decisions. As other courts have pointed out, disclosure of nonbinding deliberations—such as, draft plans, recommendations that are not implemented, discussions that never result in a plan—is likely to confuse the public. This case has garnered significant media attention. It concerns the most vulnerable citizens of this State. The risk is real that if information regarding past deliberations and untaken actions become part of the public forum, confusion and apprehension will occur.

Having considered the four factors, the undersigned finds that, on balance, the equities weigh against compelling Defendants to disclose this information. For those reasons, Plaintiffs' Motion to Compel is **DENIED**. (ECF No. 501).

The Clerk is instructed to provide a copy of this Order to counsel of record and

any unrepresented party.

**ENTERED:** July 12, 2024

_____
Cheryl A. Eifert
United States Magistrate Judge