# EXHIBIT 19

**EXECUTIVE SUMMARY**
**Final Report: West Virginia Child and Family Services Review**
**May 2009**

## INTRODUCTION

This document presents the findings of the Child and Family Services Review (CFSR) for the State of West Virginia. The CFSR is the Federal Government's program for assessing the performance of State child welfare agencies with regard to achieving positive outcomes for children and families. It is authorized by the Social Security Amendments of 1994 requiring the U.S. Department of Health and Human Services (HHS) to promulgate regulations for reviews of State child and family services programs under titles IV-B and IV-E of the Social Security Act. The CFSR is implemented by the Children's Bureau (CB) of the Administration for Children and Families (ACF) within HHS.

The West Virginia CFSR was conducted the week of September 15, 2008. The period under review was from April 1, 2007, to September 19, 2008. The findings were derived from the following documents and data collection procedures:

- The Statewide Assessment, prepared by the West Virginia Department of Health and Human Resources, Bureau for Children and Families (BCF)
- The State Data Profile, prepared by CB, which provides State child welfare data for fiscal years 2006 and 2007, and the 12-month CFSR data period ending March 31, 2007
- Reviews of 65 cases (40 foster care cases and 25 in-home services cases) at three sites throughout the State: 17 cases in the Greenbrier, Monroe, Pocahontas, Summers District, 17 cases in Harrison County, and 31 cases in Kanawha County
- Interviews or focus groups (conducted at all three sites and at the State level) with stakeholders, including but not limited to children, parents, foster parents, all levels of child welfare agency personnel, collaborating agency personnel, service providers, court personnel, child advocates, Tribal representatives, and attorneys

**Background Information**

The CFSR assesses State performance on 23 items relevant to seven outcomes and 22 items pertaining to seven systemic factors.

In the Outcomes section of the report (Section A), an overall rating of Strength or Area Needing Improvement (ANI) is assigned to each of the 23 items incorporated in the seven outcomes depending on the percentage of cases that receive a Strength rating in the onsite case review. An item is assigned an overall rating of Strength if 90 percent of the applicable cases reviewed are rated as a Strength. Performance ratings for each of the seven outcomes are based on item ratings for each case. A State may be rated as having "substantially achieved," "partially achieved," or "not achieved" the outcome. The determination of whether a State is in substantial conformity with a particular outcome is based on the percentage of cases that were determined to have substantially achieved that

D003428

outcome. In order for a State to be in substantial conformity with a particular outcome, 95 percent of the cases reviewed must be rated as having substantially achieved the outcome.

In the Systemic Factors section of the report (Section B), each item incorporated in each systemic factor is rated as either a Strength or an ANI based on whether State performance on the item meets Federal policy requirements. Information relevant to each item comes from the Statewide Assessment and the stakeholder interviews conducted during the week of the onsite CFSR. The overall rating for each systemic factor is based on the ratings for the individual items incorporated in that systemic factor. For any given systemic factor, a State is rated as being either in substantial conformity with that factor (receiving a score of 3 or 4) or not in substantial conformity with that factor (receiving a score of 1 or 2).

A State that is not in substantial conformity with a particular outcome or systemic factor must develop and implement a Program Improvement Plan (PIP) to address the areas of concern associated with that outcome or systemic factor.

ACF has set very high standards of performance for the CFSR. The standards are based on the belief that because child welfare agencies work with our country's most vulnerable children and families, only the highest standards of performance should be acceptable. The focus of the CFSR process is on continuous quality improvement; standards are set high to ensure ongoing attention to the goal of achieving positive outcomes for children and families with regard to safety, permanency, and well-being.

It should be noted, however, that States are not required to attain the 95-percent standard established for the CFSR Onsite Review at the end of their PIP implementation periods. CB recognizes that the kinds of systemic and practice changes necessary to bring about improvement in particular outcome areas often are time-consuming to implement, and improvements are likely to be incremental rather than dramatic. Instead, States work with CB to establish a specified level of improvement or to implement specified activities for their PIP. That is, for each outcome or item addressed in its PIP, a State (working in conjunction with CB) specifies how much improvement the State will demonstrate and/or the activities that it will implement to address the ANIs and determines the procedures for demonstrating the achievement of these goals. Both the improvements specified and the procedures for demonstrating improvement vary across States. Therefore, a State can meet the requirements of its PIP and still not perform at the 95-percent (for outcomes) or 90-percent (for items) level required by the CFSR.

The second round of the CFSR assesses a State's current level of functioning in regard to achieving desired child and family outcomes by once more applying high standards and a consistent, comprehensive case review methodology. The second round of the CFSR is intended to serve as a basis for continued planning in areas in which the State still needs to improve. The goal of the second round of the CFSR is to ensure that program improvement is an ongoing process and does not end with the closing of its PIP.

Because many changes have been made in the onsite CFSR process based on lessons learned during the first round and in response to feedback from the child welfare field, a State's performance in the second round of the CFSR is not directly comparable to its

D003429

performance in the first round, particularly in regard to comparisons of percentages. Key changes in the CFSR process that make it difficult to compare performances across reviews are the following:

- An increase in the sample size from 50 to 65 cases
- Stratification of the sample to ensure a minimum number of cases in key program areas, resulting in variations in the number of cases relevant for specific outcomes and items
- Changes in criteria for specific items to increase consistency and to ensure an assessment of critical areas, such as child welfare agency efforts to involve noncustodial parents

The specific findings in the State's performance on the safety and permanency outcomes are presented in table 1 at the end of the Executive Summary. Findings regarding well-being outcomes are presented in table 2. Table 3 presents the State's performance in the seven systemic factors assessed through the CFSR.

**Key CFSR Findings Regarding Outcomes**

The 2008 CFSR identified several areas of high performance in West Virginia in achieving desired outcomes for children. Although West Virginia did not achieve substantial conformity with any of the outcomes, the State achieved overall ratings of Strength for three individual items: foster care reentry (item 5), placing children in close proximity to their parents (item 11), and placing children with siblings (item 12).

Despite these areas of strength, the CFSR also identified areas of concern in achieving outcomes for children and families. Permanency Outcome 1 (Children have permanency and stability in their living situations) was substantially achieved in only 27.5 percent of the cases reviewed. Within Permanency Outcome 1, West Virginia's lowest ratings were for item 9 (adoptions), which was rated as a Strength in only 31 percent of the cases reviewed; and item 8 (reunification, guardianship, and placement with relatives), which was rated as a Strength in 59 percent of the cases reviewed.

Concerns also were identified with regard to Well-Being Outcome 1 (Families have enhanced capacity to provide for children's needs), which was substantially achieved in only 36.9 percent of the cases; and Safety Outcome 2 (Children are safely maintained in their homes when possible and appropriate), which was substantially achieved in 56.9 percent of the cases.

For the CFSR 12-month data period ending March 31, 2007, West Virginia did not meet the national standards for the safety data indicators pertaining to the absence of maltreatment recurrence and the absence of maltreatment in foster care. The State also did not meet the national standards for the permanency data composites pertaining to the timeliness and permanency of reunification (Permanency Composite 1), timeliness of adoptions (Permanency Composite 2), permanency for children in foster care for extended periods of time (Permanency Composite 3), and placement stability (Permanency Composite 4).

D003430

Overall, West Virginia achieved some successful results due in part to the following initiatives:

- The State implemented a managed system of care, based on performance and outcomes, to provide services to children and families through an Administrative Services Organization (ASO).
- The Comprehensive Assessment and Planning System (CAPS) was developed to ensure that children and families receive a comprehensive assessment that results in the development of a thorough and appropriate treatment plan. Providers contracted through the ASO complete the assessment and provide a written report to the agency caseworker. Initially developed for all children in placement, this process is utilized with the Youth Services population.
- The State used the multidisciplinary treatment (MDT) team to create and monitor permanency plans and conduct case planning.

Despite the success of these initiatives, the State's low performance in regard to the CFSR outcomes may be attributed, at least in part, to the following key factors:

- The State experiences a high rate of turnover in the caseworker position, which accounts for inconsistency in practice throughout the child welfare system.
- The State continues to experience a high rate of delayed assessments and investigation backlogs, resulting in compromised safety for children and delays in service provision.
- The State does not consistently assess or engage parents in case planning, especially fathers.
- The State does not consistently provide for the well-being of families and children in in-home services cases, as evidenced by significantly lower outcomes for in-home services cases.
- One of the State's key tools for engaging families in case planning, MDT, is not consistently used across the State.
- The agency reports concerns that agency placement decisions and case plans sometimes are not accepted by the court, and courts have a practice of approving continuous improvement periods for parents, delaying permanency for children.
- The State does not consistently ensure that background checks are conducted in a timely manner to ensure safety and timely permanency.

**Key CFSR Findings Regarding Systemic Factors**

With regard to systemic factors, West Virginia is in substantial conformity with four of the seven systemic factors: Statewide Information System, Quality Assurance (QA) System, Training, and Agency Responsiveness to the Community. West Virginia is not in substantial conformity with the systemic factors of Case Review System; Service Array; and Foster and Adoptive Parent Licensing, Recruitment, and Retention.

D003431

# I. KEY FINDINGS RELATED TO OUTCOMES

**Safety Outcome 1: Children are, first and foremost, protected from abuse and neglect**

Safety Outcome 1 incorporates two indicators. One pertains to the timeliness of initiating a response to a child maltreatment report (item 1), and the other relates to the recurrence of substantiated or indicated maltreatment (item 2). Safety Outcome 1 also incorporates two national data indicators for which national standards have been established: the absence of maltreatment recurrence and the absence of maltreatment of children in foster care by foster parents or facility staff.

West Virginia is not in substantial conformity with Safety Outcome 1. The outcome was substantially achieved in only 33.3 percent of the applicable cases, which is less than the 95 percent required for a rating of substantial conformity. For the CFSR 12-month data period ending March 31, 2007, West Virginia did not meet the national standards for the two data indicators relevant for Safety Outcome 1 pertaining to the absence of maltreatment recurrence and the absence of maltreatment of children in foster care by foster parents or facility staff.

Key findings from the 2008 CFSR indicate the following:
- The State does not consistently meet State timeframes for initiating investigations of reports of abuse and neglect, particularly with respect to reports screened in as Priority 1 or Priority 2.
- The State does not consistently prevent repeat maltreatment for children in foster care.

Additional findings in 2008 for this outcome were the following:
- Item 1 (timeliness of initiating investigations) was rated as a Strength in 37.5 percent of the cases.
- Item 2 (repeat maltreatment) was rated as a Strength in 67 percent of the cases.

West Virginia was not in substantial conformity with this outcome in its 2002 CFSR and was required to address the outcome in its PIP. The key concerns identified at that time were the following:
- Reviewers found repeat maltreatment of children by their foster care providers.
- There were multiple maltreatment reports over the life of the case for the majority of the cases reviewed.

To address these concerns, West Virginia revised its child protective services (CPS) system and implemented a new assessment process, the Safety First protocol, to include two safety assessments and a distinct risk assessment. The new protocol addresses safety at the beginning of the case and throughout the life of the case.

The State met its target goals for this outcome by the end of its PIP implementation period.

D003432

**Safety Outcome 2: Children are safely maintained in their homes when possible and appropriate**

Performance on Safety Outcome 2 is assessed in two indicators. One indicator (item 3) addresses the issue of child welfare agency efforts to prevent children's removal from their homes by providing services to the families that ensure children's safety while they remain in their homes. The other indicator (item 4) pertains to the child welfare agency's efforts to reduce the risk of harm to the children.

West Virginia is not in substantial conformity with Safety Outcome 2. The outcome was substantially achieved in 56.9 percent of the cases reviewed, which is less than the 95 percent required for a rating of substantial conformity.

Key findings from the 2008 CFSR indicate that West Virginia is experiencing the following challenges:
- The State did not routinely provide services to families to protect children in their homes and prevent removal due to a lack of appropriate service provision.
- The State did not routinely assess the risk of harm to children and did not routinely provide appropriate services to address identified risks.

Additional findings in 2008 for this outcome were the following:
- Item 3 (services to prevent removal) was rated as a Strength in 77.5 percent of the cases.
- Item 4 (risk of harm) was rated as a Strength in 57 percent of the cases.

West Virginia was not in substantial conformity with this outcome for the 2002 CFSR and was required to address the outcome in its PIP. The key concerns identified at that time were the following:
- The State did not routinely provide services to families to protect children in their homes and prevent removal due to a lack of consistency among caseworkers in the appropriate assessment of service needs and provision of services.
- The State did not routinely assess the risk of harm to children due to a lack of consistency among caseworkers in capturing the underlying issues leading to abuse and neglect, particularly issues such as domestic violence and substance abuse.

To address these concerns, the State implemented the following strategies in its PIP:
- Trained staff to properly document client relationships and merge cases in the Family and Children Tracking System (FACTS)
- Initiated competency-based testing for all CPS supervisors; discontinued testing, however, due to anticipated implementation of CPS redesign
- Reissued CPS competencies for caseworkers and supervisors to emphasize the connection between the competencies and the agency's mission to protect the safety of children
- Developed a promotional presentation that can be used throughout BCF

D003433

- Coordinated and expanded existing collaborative and partnership initiatives to identify and address service needs on the local level
- Continued statewide implementation of the cross-disciplinary model for domestic violence to respond effectively to domestic violence
- Implemented a managed system of care, based on performance and outcomes, to provide services to children and families through an ASO
- Evaluated the impact of the ASO on outcomes for children and families
- Implemented supports for CPS caseworkers to improve the effectiveness of the Safety First risk and safety assessment protocol and ensure that caseworkers appropriately identify services to reduce risk

The State met its target goals for this outcome by the end of its PIP implementation period.

**Permanency Outcome 1: Children have permanency and stability in their living situations**

Six indicators are incorporated in the assessment of Permanency Outcome 1, although not all are relevant for all children. The indicators pertain to the child welfare agency's efforts to prevent foster care reentry (item 5), ensure placement stability for children in foster care (item 6), and establish appropriate permanency goals for children in foster care in a timely manner (item 7). Depending on the child's permanency goal, the remaining indicators focus on the child welfare agency's efforts to achieve permanency goals (such as reunification, guardianship, adoption, and permanent placement with relatives) in a timely manner (items 8 and 9) or to ensure that children who have other planned permanent living arrangements (OPPLA) as a case goal are in stable placements and adequately prepared for eventual independent living (item 10). Permanency Outcome 1 also incorporates four national data composites for which national standards have been established: Permanency Composite 1 (Timeliness and permanency of reunification), Permanency Composite 2 (Timeliness of adoptions), Permanency Composite 3 (Permanency for children in foster care for extended time periods), and Permanency Composite 4 (Placement stability).

West Virginia is not in substantial conformity with Permanency Outcome 1. This determination was based on the following findings:
- The outcome was substantially achieved in only 27.5 percent of the cases, which is less than the 95 percent required for an overall rating of substantial conformity.
- The State Data Profile indicates that for the CFSR 12-month target data period, the State did not meet the national standards for the four data composites.

Key findings from the 2008 CFSR indicate that the State consistently prevents foster care reentry (item 5). Despite this area of strength, the findings of the 2008 CFSR indicate that West Virginia is experiencing the following challenges:
- Placement stability continues to be a challenge for the State (item 6).

D003434

- The State was not consistent in establishing a child's permanency goal in a timely manner, particularly in establishing an appropriate permanency goal (item 7).
- The State did not make concerted efforts to achieve the goals of reunification, permanent placement with relatives, or guardianship in a timely manner (item 8).
- The State did not make concerted efforts to finalize adoptions in a timely manner (item 9).
- The State did not make concerted efforts to ensure a long-term stable placement for children with the goal of OPPLA and provide necessary services to prepare for independent living (item 10).

Additional findings in 2008 for this outcome were the following:
- Item 5 (foster care reentry) was rated as a Strength in 94 percent of the cases.
- Item 6 (stability of foster care placements) was rated as a Strength in 65 percent of the cases.
- Item 7 (permanency goal for child) was rated as a Strength in 62.5 percent of the cases.
- Item 8 (reunification, guardianship, and placement with relatives) was rated as a Strength in 59 percent of the cases.
- Item 9 (adoption) was rated as a Strength in 31 percent of the cases.
- Item 10 (OPPLA) was rated as a Strength in 75 percent of the cases.

West Virginia was not in substantial conformity with this outcome in its 2002 CFSR and was required to address the outcome in its PIP. The key concerns identified at that time were the following:
- The State did not appropriately capture data pertaining to foster care reentries, and national standards were not being met.
- The State did not appropriately capture data pertaining to placement changes and indicated that the stability of foster care placements was inconsistent due to a scarcity of specialized placements for children with behavioral problems and inappropriate matches of children and placement settings.
- The State did not consistently identify and engage noncustodial parents in services.
- The State did not consistently establish appropriate permanency goals in a timely manner due to extensive delays in revising permanency goals, a lack of clear documentation, the overuse of the goal of long-term foster care, and apparent confusion regarding the appropriate use of the goal of guardianship.
- The State did not consistently provide appropriate and timely adoption services due to caseworker inconsistencies in evaluating the appropriateness of adoption and the lack of concurrent planning.
- The State inappropriately assigned the goal of long-term foster care in a large number of cases and did not make diligent efforts to assist children in attaining more appropriate goals, such as guardianship or adoption.

To address these concerns, the State implemented the following strategies in its PIP:
- Established a baseline to reflect the number of foster care reentries accurately
- Increased the number of specialized foster and adoptive beds by 10 percent to meet the needs of children

D003435

- Engaged foster and adoptive parents and other providers in the casework process
- Increased support to foster and adoptive parents
- Implemented CAPS
- Improved caseworker consistency in the documentation of children's locations on FACTS
- Implemented training on adoption, permanency, concurrent planning, and MDTs for child welfare staff and direct management
- Increased stakeholder awareness of adoption, permanency, and concurrent planning
- Removed barriers to timely adoption
- Identified absent parents
- Provided FACTS refresher training to address the transition to adoption
- Corrected inappropriate permanency plans

West Virginia met its target goals for this outcome by the end of its PIP implementation period.

**Permanency Outcome 2: The continuity of family relationships and connections is preserved for children**

Permanency Outcome 2 incorporates six indicators that assess the child welfare agency's performance in placing children in foster care in close proximity to their parents and close relatives (item 11); placing siblings together (item 12); ensuring frequent visitation among children and their parents and siblings in foster care (item 13); preserving connections of children in foster care with extended family, community, cultural heritage, religion, and schools (item 14); seeking relatives as potential placement resources (item 15); and promoting the relationship between children and their parents while the children are in foster care (item 16).

West Virginia is not in substantial conformity with Permanency Outcome 2. The outcome was rated as substantially achieved in 77.5 percent of the cases, which is less than the 95 percent required for substantial conformity.

Key findings in 2008 indicate that children were routinely and consistently placed in close proximity to parents or potential permanent caregivers (item 11), and children were routinely and consistently placed with siblings in foster care (item 12).

Despite these areas of strength, the findings of the 2008 CFSR indicate that West Virginia is experiencing the following challenges:
- There was a lack of consistency in promoting visitation between or among siblings in foster care (item 13).
- The agency did not always make concerted efforts to maintain the child's connection with extended family, culture, and community (item 14).
- There was a lack of consistency in seeking and evaluating relatives as potential placement resources (item 15).
- There was a lack of consistency in efforts to maintain and strengthen parent-child relationships while children are in foster care (item 16).

D003436

Additional findings in 2008 for this outcome were the following:

- Item 11 (proximity of placement) was rated as a Strength in 100 percent of the cases.
- Item 12 (placement with siblings) was rated as a Strength in 90 percent of the cases.
- Item 13 (visiting with parents and siblings in foster care) was rated as a Strength in 82 percent of the cases.
- Item 14 (preserving connections) was rated as a Strength in 79 percent of the cases.
- Item 15 (relative placement) was rated as a Strength in 79 percent of the cases.
- Item 16 (relationship of child in care with parents) was rated as a Strength in 73 percent of the cases.

West Virginia was not in substantial conformity with this outcome in its 2002 CFSR and was required to address the outcome in its PIP. The key concerns identified at that time were the following:

- The State did not consistently facilitate visitation with parents and siblings in foster care.
- The State did not consistently make efforts to locate relatives, particularly paternal relatives, to support foster placement.
- The State did not consistently support the relationships of children in care with their parents, particularly fathers.

To address these concerns, West Virginia implemented the following strategies in its PIP:

- Implemented a process and requirement for caseworkers to identify absent parents during the CAPS assessment process
- Revised policy on locating and including absent fathers, paternal relatives, and siblings in visitation plans
- Revised policy on timeframes for relative home studies

West Virginia met its target goals for this outcome by the end of its PIP implementation period.

**Well-Being Outcome 1: Families have enhanced capacity to provide for their children's needs**

Well-Being Outcome 1 incorporates four indicators. One pertains to the child welfare agency's efforts to ensure that the service needs of children, parents, and foster parents are assessed and that the necessary services are provided to meet identified needs (item 17). A second indicator examines the child welfare agency's efforts to actively involve parents and children (when appropriate) in the case planning process (item 18). The two remaining indicators examine the frequency and quality of caseworkers' contacts with the children in their caseloads (item 19) and with the children's parents (item 20).

West Virginia is not in substantial conformity with Well-Being Outcome 1. The outcome was substantially achieved in 36.9 percent of the cases reviewed, which is less than the 95 percent required for a determination of substantial conformity.

D003437

The key findings in 2008 indicate that the State is experiencing the following challenges:

- There continues to be a lack of consistency in assessing and meeting the services needs of parents and families receiving in-home services. However, in the cases reviewed, the agency is consistently assessing and addressing the needs of children in foster care.
- There also continue to be inconsistencies in adequately involving families, particularly fathers, in case planning.
- Caseworkers were not consistently maintaining visitation with children in the foster care or in-home cases.
- The 2008 CFSR specifically differentiated between mothers and fathers in evaluating the frequency and quality of caseworker visits. In general, there were insufficient caseworker visits and challenges associated with the quality of visits with both parents. However, these findings were more pronounced for fathers, as evidenced by inconsistency in concerted efforts to visit or engage fathers in either case planning or services.

Additional findings in 2008 for this outcome were the following:

- Item 17 (needs and services of child, parents, and foster parents) was rated as a Strength in 48 percent of the cases.
- Item 18 (child and family involvement in case planning) was rated as a Strength in 53 percent of the cases.
- Item 19 (caseworker visits with child) was rated as a Strength in 55 percent of the cases.
- Item 20 (caseworker visits with parents) was rated as a Strength in 36 percent of the cases.

West Virginia did not achieve substantial conformity with this outcome during its 2002 CFSR and was required to address this outcome in its PIP. The key concerns identified at that time were the following:

- The agency did not consistently assess needs and provide services for children, parents, and foster parents due to factors such as the following:
  - A lack of appropriate follow-up in some cases to ensure that services were delivered and were effective
  - Inconsistency among caseworkers in assessing the needs of fathers
  - Insufficient Independent Living (IL) services
  - An inconsistency among caseworkers in addressing substance abuse and domestic violence
  - A lack of attention to the service needs of foster parents
- The agency did not consistently facilitate the involvement of children and families in case planning, contrary to State policy. The agency was not consistent in ensuring that the contact between caseworkers and children was of sufficient frequency and quality to ensure that the best interests of the children were being met. This finding was attributed in part to the high rate of staff turnover in the caseworker position.
- The agency was not consistent in ensuring that the contact between caseworkers and parents was of sufficient frequency and quality to ensure that the best interests of the child were being addressed.

D003438

To address these concerns, West Virginia implemented the following strategies in its PIP:

- Implemented a family-centered practice assessment, including competency-based contracts where performance and outcomes are monitored
- Fully implemented CAPS and included an assessment of needs related to substance abuse and domestic violence
- Used masters-level clinicians to identify and interpret assessments, identify service needs, make recommendations for placement, and participate as a consistent member of the MDT team throughout the life of the case
- Provided mandatory domestic violence and substance abuse training to all child welfare staff
- Ensured that ongoing assessments for children in foster homes monitored by both West Virginia Department of Health and Human Resources and private agencies are consistent
- Provided follow-up to families and children for ongoing service provision through the ASO
- Improved consistency among caseworkers in assessing the needs of fathers and involving them in services
- Strengthened the level of assessment of the needs of foster parents
- Strengthened foster parent involvement in the MDT process
- Increased the effectiveness and use of IL services
- Developed a measure for child and family involvement in the case planning process in FACTS
- Monitored caseworker compliance with child and family involvement policies through supervisor conferences
- Developed a minimum standard for the number of caseworker visits to families to ensure safety that is based on standards from the Council on Accreditation
- Increased the recruitment of appropriate and sufficient staff

West Virginia met its target goals for this outcome by the end of its PIP implementation period.

**Well-Being Outcome 2: Children receive appropriate services to meet their educational needs**

There is only one indicator for Well-Being Outcome 2; it pertains to the child welfare agency's efforts to address and meet the educational needs of children in both foster care and in-home services cases (item 21).

West Virginia is not in substantial conformity with Well-Being Outcome 2. The outcome was substantially achieved in 83.3 percent of the cases reviewed, which is less than the 95 percent required for substantial conformity. Key findings in the 2008 CFSR indicate that, in the cases reviewed, the State did not consistently ensure that children's educational needs were met.

West Virginia was not in substantial conformity with this outcome in the 2002 CFSR, and it was required to address this outcome in its PIP. The following key concerns were identified at that time in regard to meeting the educational needs of children:

- In some cases, necessary education-related services were not provided.

D003439

- In some cases, foster parents were not informed about the child's school history and did not receive school records at the time of placement.

To address these concerns, West Virginia implemented the following strategies in its PIP:
- Obtained school records during the CAPS process, and used school records to improve case planning and to share with placement providers
- Developed a formal process with Boards of Education for sharing educational records
- Provided interdisciplinary training sessions for caseworkers and educational agency staff
- Used handbooks to enhance the MDT process for the educational needs of children
- Implemented foster child Journey Placement Notebooks that include educational records

The State met its target goals for this outcome by the end of its PIP implementation period.

**Well-Being Outcome 3: Children receive adequate services to meet their physical and mental health needs**

This outcome incorporates two indicators that assess the child welfare agency's efforts to meet children's physical health needs (item 22) and children's mental health needs (item 23).

West Virginia is not in substantial conformity with Well-Being Outcome 3. The outcome was substantially achieved in 68.3 percent of the cases reviewed, which is less than the 95 percent required for substantial conformity.

Key findings of the 2008 CFSR indicate that there were inconsistencies in assessing and addressing the physical health, dental health, and mental health needs of children receiving both foster care and in-home services. Additional findings in 2008 for this outcome were the following:
- Item 22 (physical health of child) was rated as a Strength in 79 percent of the cases.
- Item 23 (mental health of child) was rated as a Strength in 73 percent of the cases.

West Virginia did not achieve substantial conformity with this outcome in its 2002 CFSR and was required to address the outcome in its PIP. The key concerns identified at that time were the following:
- The State did not consistently provide for the comprehensive physical health needs of children, in part due to poor documentation.
- The State did not consistently provide for the mental health needs of children due to the lack of behavioral health services, a lack of documentation, and a lack of follow-up to determine whether needed services were provided.

D003440

To address these concerns, West Virginia implemented the following strategies in its PIP:

- Developed a standard for documentation and ongoing supervisory conferences regarding the medical health needs and services provided to children
- Implemented foster child Journey Placement Notebooks that include documentation of physical, mental, and behavioral health
- Conducted a service array assessment to identify where and what children's mental and behavioral health resources are available or lacking

The State met its target goals for this outcome by the end of its PIP implementation period.


## II. KEY FINDINGS RELATED TO SYSTEMIC FACTORS

**Statewide Information System**

Substantial conformity with the systemic factor of Statewide Information System is determined by whether the State is operating a statewide information system that can identify the status, demographic characteristics, location, and goals for children in foster care.

West Virginia is in substantial conformity with the systemic factor of Statewide Information System. The 2008 CFSR found that West Virginia's FACTS can readily identify the legal status, demographic characteristics, location, and goals for the placement of every child who is in foster care. Stakeholders commented that all districts have the same access to the data system; workers enter data in real time; and critical information on children in foster care is readily accessible. Stakeholders reported that placement information for children in private facilities who are in the custody of the State also is captured in FACTS.

West Virginia was in substantial conformity with this systemic factor in the 2002 CFSR and was not required to address it in its PIP.

**Case Review System**

Five indicators are used to assess the State's performance in regard to the systemic factor of Case Review System. The indicators examine the development of case plans and parent involvement in that process (item 25), the consistency of 6-month case reviews (item 26) and 12-month permanency hearings (item 27), the implementation of procedures to seek termination of parental rights (TPR) in accordance with the timeframes established by the Adoption and Safe Families Act (ASFA) (item 28), and the notification and inclusion of foster and pre-adoptive parents and relative caregivers in case reviews and hearings (item 29).

West Virginia is not in substantial conformity with the systemic factor of Case Review System for 2008.

D003441

The 2008 CFSR noted the following strengths in the State's case review system:

- The State's process for the periodic review of the status of each child, the administrative foster care review hearing, is held every 3 months. In West Virginia, the administrative foster care review hearing is a permanency hearing. Although the State did not provide data regarding the frequency with which periodic reviews are conducted, the title IV-E Eligibility Review held in April 2008 found that many children achieve permanency on a timely basis due to frequent court hearings in which cases are thoroughly reviewed (item 26).
- The courts conduct permanency hearings no later than 12 months from the date the child entered foster care, and the hearings focus on achieving permanency for children. In West Virginia, the administrative foster care review hearing is a permanency hearing. Although the State did not provide data regarding the frequency with which permanency hearings are held, the title IV-E Eligibility Review held in April 2008 found that the administrative foster care review hearings were being held in court within required timeframes in 100 percent of the 80 cases sampled (item 27).
- The State has a process to file TPR petitions in accordance with the provisions of ASFA. Stakeholders reported that TPR petitions are filed in a timely manner and that compelling reasons are routinely examined in court for cases older than 15 months. There were no concerns about the State's process for TPR proceedings noted in the Statewide Assessment or in stakeholder interviews (item 28).

Despite these areas of strength, the following concerns were noted:

- Although the State has developed a process for engaging parents in case planning through the use of the MDT meeting, the process is not consistently implemented across all jurisdictions within the State. Therefore, the State cannot ensure that each child, including a child receiving Youth Services, has a written case plan that is developed jointly with the child's parents (item 25).
- The Statewide Assessment and stakeholders reported that the State does not consistently provide notice to foster parents or the opportunity to be heard in reviews and hearings held with respect to the child (item 29).

West Virginia also was not in substantial conformity with this systemic factor in its 2002 CFSR, and therefore, was required to address this factor in its PIP. The key concerns identified at that time were the following:

- The State did not have a process to document written case plans for each child in foster care jointly developed with the parents (item 25).
- The State did not provide timely periodic reviews of foster care cases (item 26).
- The State did not provide timely permanency hearings for children in foster care, especially for children with TPR (item 27).
- The State did not consistently provide notifications of hearings or opportunities to be heard for foster parents, preadoptive parents, and relative caregivers (item 29).

To address these concerns, West Virginia implemented the following strategies in its PIP:

- Implemented CAPS

D003442

- Implemented a review process to determine family, children, and foster parent involvement in the MDT process
- Assigned child, youth, and family consultants regionally to develop work plans to include ongoing identification of training to address requirements for case planning and the case review system
- Developed a process guide for periodic reviews of the status of each child

The State met its target goals for this outcome by the end of its PIP implementation period.

**Quality Assurance System**

Performance in regard to the systemic factor of QA System is based on whether the State has developed standards to ensure the safety and health of children in foster care (item 30) and whether the State is operating a statewide QA system that evaluates the quality and effectiveness of services and measures program strengths and ANIs (item 31).

West Virginia is in substantial conformity with the systemic factor of QA System.

The 2008 CFSR found that the State has implemented effective standards to protect the safety and health of children that are consistent with national standards and approved by the Council on Accreditation. The State's current regulations and policy in CPS, Youth Services, and foster care are current with changes in Federal law, regulations, and best practice standards (item 30).

In addition, the 2008 CFSR found that the State is operating an identifiable QA system modeled after the CFSR that evaluates the quality of services, identifies strengths and needs of the service delivery system, and is used in program improvement efforts. However, the Statewide Assessment and stakeholders noted that there are inconsistencies at the local level in ensuring that district-level PIP strategies lead to program improvement (item 31).

West Virginia was in substantial conformity with this systemic factor in its 2002 CFSR and was not required to address it in its PIP.

**Training**

The systemic factor of Training incorporates an assessment of the State's new caseworker training program (item 32), ongoing training for child welfare agency staff (item 33), and training for foster and adoptive parents (item 34).

West Virginia is in substantial conformity with the systemic factor of Training. The 2008 CFSR found the following strengths of the State's training program:

D003443

- West Virginia is operating an effective staff development and training program for all staff that supports the goals and objectives of the Child and Family Services Plan (CFSP), and addresses services provided under titles IV-B and IV-E. Caseworkers receive both classroom and field training and are fully trained prior to receiving a full caseload (item 32).
- The State requires caseworkers to be licensed social workers and requires that caseworkers maintain their social work licenses through 50 hours of continuing education every 2 years. In addition, the State provides ongoing training in collaboration with community partners on emerging issues (item 33).
- The State requires that all foster and adoptive parents complete mandatory training that addresses the skills and knowledge base needed to carry out their duties. Training is conducted using the PRIDE (Parent Resource for Information, Development, and Education) training program in all regions of the State (item 34).

West Virginia was in substantial conformity with this systemic factor in its 2002 CFSR and was not required to address it in its PIP.

**Service Array**

The systemic factor of Service Array incorporates an assessment of answers to three questions: Does the State have in place an array of services to meet the needs of children and families served by the child welfare agency (item 35)? Are these services accessible to families and children throughout the State (item 36)? Can services be individualized to meet the unique needs of the children and families served by the child welfare agency (item 37)?

West Virginia is not in substantial conformity with the systemic factor of Service Array for the 2008 CFSR. The 2008 CFSR found the following strength in the State's service array:

- The State has an array of services in place to support children and families. The State has worked successfully with the National Resource Center for Organizational Improvement to assess the service array. Since 2004, the State has significantly increased services through a strategic plan using managed care concepts (item 35).

Despite this area of strength, the 2008 CFSR noted the following concerns:

- Although services in the State have expanded, key services are still not accessible to families and children in all political jurisdictions (item 36).
- The Statewide Assessment and stakeholders noted that the State does not consistently individualize services to meet the unique needs of the children and families they serve. The Statewide Assessment indicates that services are provided based on what is available and not the family's needs (item 37).

West Virginia was in substantial conformity with this systemic factor in its 2002 CFSR and was not required to address it in its PIP.

D003444

**Agency Responsiveness to the Community**

Performance in regard to the systemic factor of Agency Responsiveness to the Community incorporates an assessment of the State's consultation with external stakeholders in developing the CFSP (items 38 and 39) and the extent to which the State coordinates child welfare services with services or benefits of other Federal or Federally-assisted programs serving the same population (item 40).

West Virginia is in substantial conformity with the systemic factor of Agency Responsiveness to the Community. The 2008 CFSR found the following strengths in the State agency's responsiveness to the community:

- The State engages in ongoing consultation with Tribal representatives, consumers, service providers, the juvenile court, and other public and private child and family serving agencies. The State addresses and includes major concerns of these representatives in the goals and objectives of the CFSP (item 38).
- The agency develops, in consultation with relevant representatives, an Annual Progress and Services Report (APSR) delivered pursuant to the CFSP. For example, the State collaborates closely with the Citizen Review Panel and submits an integrated plan in the APSR each year (item 39).
- The State's services under the CFSP are coordinated with services of other Federal programs including Temporary Assistance to Needy Families, child care, and child support (item 40).

West Virginia was in substantial conformity with this systemic factor in the 2002 CFSR and was not required to address it in its PIP.

**Foster and Adoptive Parent Licensing, Recruitment, and Retention**

The assessment of this systemic factor focuses on the State's standards for foster homes and child care institutions (items 41 and 42), the State's compliance with Federal requirements for criminal background checks for foster and adoptive parents (item 43), the State's efforts to recruit foster and adoptive parents that reflect the ethnic and racial diversity of foster children (item 44), and the State's activities in regard to using cross-jurisdictional resources to facilitate permanent placements for waiting children (item 45).

West Virginia is not in substantial conformity with the systemic factor of Foster and Adoptive Parent Licensing, Recruitment, and Retention. The 2008 CFSR found the following strengths in the State's policies regarding foster and adoptive parent licensing, recruitment, and retention:

- The State has implemented effective standards for foster family homes and child care institutions that are reasonably in accord with recommended national standards and approved by the Council on Accreditation (item 41).
- The State applies the same standards to all certified or approved homes and child care institutions receiving title IV-E or IV-B funds (item 42).

D003445

- The State has an effective process in place—building on community initiatives—for ensuring the diligent recruitment of potential foster and adoptive families that reflect the ethnic and racial diversity of children in the State for whom foster and adoptive homes are needed (item 44).

Despite these areas of strength, the 2008 CFSR noted the following concerns:

- The State does not comply with Federal requirements for criminal background clearances. The State's process is characterized by backlogs and long delays that significantly affect the stability and safety of foster care and adoptive placements for children and delay permanency (item 43).
- The Interstate Compact for the Placement of Children process is characterized by long delays. A statistical analysis conducted by the Court Improvement Program showed that a delay was indicated in 53 percent of cases reviewed. In 32 percent of the cases reviewed, that delay was due to a delay in processing either Federal or State background checks or both (item 45).

West Virginia was in substantial conformity with this factor during the 2002 CFSR and was not required to address it in its PIP.

D003446

**Table 1. West Virginia CFSR Ratings for Safety and Permanency Outcomes and Items**

| Outcomes and Indicators | Outcome Ratings | | | Item Ratings | |
|---|---|---|---|---|---|
| | In Substantial Conformity? | Percent Substantially Achieved* | Met National Standards? | Rating** | Percent Strength |
| **Safety Outcome 1:** Children are, first and foremost, protected from abuse and neglect | No | 33.3 | Met 0 of 2 | | |
| Item 1: Timeliness of investigations | | | | ANI | 37.5 |
| Item 2: Repeat maltreatment | | | | ANI | 67 |
| **Safety Outcome 2:** Children are safely maintained in their homes when possible and appropriate | No | 56.9 | | | |
| Item 3: Services to prevent removal | | | | ANI | 77.5 |
| Item 4: Risk of harm | | | | ANI | 57 |
| **Permanency Outcome 1:** Children have permanency and stability in their living situations | No | 27.5 | Met 0 of 4 | | |
| Item 5: Foster care reentry | | | | Strength | 94 |
| Item 6: Stability of foster care placements | | | | ANI | 65 |
| Item 7: Permanency goal for child | | | | ANI | 62.5 |
| Item 8: Reunification, guardianship, and placement with relatives | | | | ANI | 59 |
| Item 9: Adoption | | | | ANI | 31 |
| Item 10: Other planned living arrangement | | | | ANI | 75 |
| **Permanency Outcome 2:** The continuity of family relationships and connections is preserved | No | 77.5 | | | |
| Item 11: Proximity of placement | | | | Strength | 100 |
| Item 12: Placement with siblings | | | | Strength | 90 |
| Item 13: Visiting with parents and siblings in foster care | | | | ANI | 82 |
| Item 14: Preserving connections | | | | ANI | 79 |
| Item 15: Relative placement | | | | ANI | 79 |
| Item 16: Relationship of child in care with parents | | | | ANI | 73 |

*95 percent of the applicable cases reviewed must be rated as having substantially achieved the outcome for West Virginia to be in substantial conformity with the outcome.

**Items may be rated as a Strength or an ANI. For an overall rating of Strength, 90 percent of the cases must be rated as a Strength.

D003447

Table 2. West Virginia CFSR Ratings for Child and Family Well-Being Outcomes and Items

| Outcomes and Indicators | Outcome Ratings | | Item Ratings | |
|---|---|---|---|---|
| | In Substantial Conformity? | Percent Substantially Achieved | Rating** | Percent Strength |
| **Well-Being Outcome 1:** Families have enhanced capacity to provide for children's needs | No | 36.9 | | |
| Item 17: Needs/services of child, parents, and foster parents | | | ANI | 48 |
| Item 18: Child/family involvement in case planning | | | ANI | 53 |
| Item 19: Caseworker visits with child | | | ANI | 55 |
| Item 20: Caseworker visits with parents | | | ANI | 36 |
| **Well-Being Outcome 2:** Children receive services to meet their educational needs | No | 83.3 | | |
| Item 21: Educational needs of child | | | ANI | 83 |
| **Well-Being Outcome 3:** Children receive services to meet their physical and mental health needs | No | 68.3 | | |
| Item 22: Physical health of child | | | ANI | 79 |
| Item 23: Mental health of child | | | ANI | 73 |

*95 percent of the applicable cases reviewed must be rated as having substantially achieved the outcome for West Virginia to be in substantial conformity with the outcome.

**Items may be rated as a Strength or an ANI. For an overall rating of strength, 90 percent of the cases reviewed for the item (with the exception of item 21) must be rated as a Strength. Because item 21 is the only item for Well-Being Outcome 2, the requirement of a 95-percent strength rating applies.

D003448

**Table 3. West Virginia CFSR Ratings for Systemic Factors and Items**

| Systemic Factors and Items | In Substantial Conformity? | Score* | Item Rating** |
|---|---|---|---|
| **Statewide Information System** | Yes | 4 | |
| Item 24: The State is operating a statewide information system that, at a minimum, can readily identify the status, demographic characteristics, location, and goals for the placement of every child who is (or within the immediately preceding 12 months, has been) in foster care | | | Strength |
| **Case Review System** | No | 2 | |
| Item 25: The State provides a process that ensures that each child has a written case plan to be developed jointly with the child's parents that includes the required provisions | | | ANI |
| Item 26: The State provides a process for the periodic review of the status of each child, no less frequently than once every 6 months, either by a court or by administrative review | | | Strength |
| Item 27: The State provides a process that ensures that each child in foster care under the supervision of the State has a permanency hearing in a qualified court or administrative body no later than 12 months from the date the child entered foster care and no less frequently than every 12 months thereafter | | | Strength |
| Item 28: The State provides a process for termination of parental rights (TPR) proceedings in accordance with the provisions of the Adoption and Safe Families Act (ASFA) | | | Strength |
| Item 29: The State provides a process for foster parents, pre-adoptive parents, and relative caregivers of children in foster care to be notified of, and have an opportunity to be heard in, any review or hearing held with respect to the child | | | ANI |
| **Quality Assurance System** | Yes | 3 | |
| Item 30: The State has developed and implemented standards to ensure that children in foster care are provided quality services that protect the safety and health of children | | | Strength |

D003449

| Systemic Factors and Items | In Substantial Conformity? | Score* | Item Rating** |
|---|---|---|---|
| Item 31: The State is operating an identifiable quality assurance system that is in place in the jurisdictions where the services included in the Child and Family Services Plan (CFSP) are provided, evaluates the quality of services, identifies strengths and needs of the service delivery system, provides relevant reports, and evaluates program improvement measures implemented | | | Strength |
| **Training** | Yes | 4 | |
| Item 32: The State is operating a staff development and training program that supports the goals and objectives in the CFSP, addresses services provided under titles IV-B and IV-E, and provides initial training for all staff who deliver these services | | | Strength |
| Item 33: The State provides for ongoing training for staff that addresses the skills and knowledge base needed to carry out their duties with regard to the services included in the CFSP | | | Strength |
| Item 34: The State provides training for current or prospective foster parents, adoptive parents, and staff of State licensed or approved facilities that care for children receiving foster care or adoption assistance under title IV-E that addresses the skills and knowledge base needed to carry out their duties with regard to foster and adopted children | | | Strength |
| **Service Array** | No | 2 | |
| Item 35: The State has in place an array of services that assess the strengths and needs of children and families and determine other service needs, address the needs of families in addition to individual children in order to create a safe home environment, enable children to remain safely with their parents when reasonable, and help children in foster and adoptive placements achieve permanency | | | Strength |
| Item 36: The services in item 35 are accessible to families and children in all political jurisdictions covered in the State's CFSP | | | ANI |
| Item 37: The services in item 35 can be individualized to meet the unique needs of children and families served by the agency | | | ANI |
| **Agency Responsiveness to the Community** | Yes | 4 | |
| Item 38: In implementing the provisions of the CFSP, the State engages in ongoing consultation with Tribal representatives, consumers, service providers, foster care providers, the juvenile court, and other public and private child- and family-serving agencies and includes the major concerns of these representatives in the goals and objectives of the CFSP | | | Strength |

23

D003450

| Systemic Factors and Items | In Substantial Conformity? | Score* | Item Rating** |
|---|---|---|---|
| Item 39: The agency develops, in consultation with these representatives, annual reports of progress and services delivered pursuant to the CFSP | | | Strength |
| Item 40: The State's services under the CFSP are coordinated with services or benefits of other Federal or Federally assisted programs serving the same population | | | Strength |
| **Foster and Adoptive Parent Licensing, Recruitment, and Retention** | No | 2 | |
| Item 41: The State has implemented standards for foster family homes and child care institutions that are reasonably in accord with recommended national standards | | | Strength |
| Item 42: The standards are applied to all licensed or approved foster family homes or child care institutions receiving title IV-E or IV-B funds | | | Strength |
| Item 43: The State complies with Federal requirements for criminal background clearances as related to licensing or approving foster care and adoptive placements and has in place a case planning process that includes provisions for addressing the safety of foster care and adoptive placements for children | | | ANI |
| Item 44: The State has in place a process for ensuring the diligent recruitment of potential foster and adoptive families that reflect the ethnic and racial diversity of children in the State for whom adoptive homes are needed | | | Strength |
| Item 45: The State has in place a process for the effective use of cross-jurisdictional resources to facilitate timely adoptive or permanent placements for waiting children | | | ANI |

*Scores range from 1 to 4. A score of 1 or 2 means that the factor is not in substantial conformity. A score of 3 or 4 means that the factor is in substantial conformity.

**Items may be rated as a Strength or as an ANI.

D003451

**Final Report**
**West Virginia Child and Family Services Review**
**May 2009**

**U.S. Department of Health and Human Services**
**Administration for Children and Families**
**Administration on Children, Youth and Families**
**Children's Bureau**

**D003452**

# INTRODUCTION

This document presents the findings of the Child and Family Services Review (CFSR) for the State of West Virginia. The CFSR is the Federal Government's program for assessing the performance of State child welfare agencies with regard to achieving positive outcomes for children and families. It is authorized by the Social Security Amendments of 1994 requiring the U.S. Department of Health and Human Services (HHS) to promulgate regulations for reviews of State child and family services programs under titles IV-B and IV-E of the Social Security Act. The CFSR is implemented by the Children's Bureau (CB) of the Administration for Children and Families (ACF) within HHS.

The West Virginia CFSR was conducted the week of September 15, 2008. The period under review was from April 1, 2007, to September 19, 2008. The findings were derived from the following documents and data collection procedures:
- The Statewide Assessment, prepared by the West Virginia Department of Health and Human Resources (DHHR), Bureau for Children and Families (BCF)
- The State Data Profile, prepared by CB, which provides State child welfare data for fiscal year (FY) 2006, FY 2007, and the 12-month CFSR data period ending March 31, 2007
- Reviews of 65 cases (40 foster care cases and 25 in-home services cases) at three sites throughout the State: 17 cases in the Greenbrier, Monroe, Pocahontas, Summers (GMPS) District, 17 cases in Harrison County, and 31 cases in Kanawha County
- Interviews or focus groups (conducted at all three sites and at the State level) with stakeholders, including but not limited to children, parents, foster parents, all levels of child welfare agency personnel, collaborating agency personnel, service providers, court personnel, child advocates, Tribal representatives, and attorneys

All 65 cases reviewed onsite were open child welfare agency cases at some time during the period under review. The characteristics of the 65 cases reviewed are presented in the Table of Key Characteristics on the following page. Percentages in this table and in subsequent tables may not total to exactly 100 percent due to rounding.

West Virginia confirmed that 13 of the 65 cases reviewed onsite involved families receiving Youth Services. The Youth Services program is administered through DHHR and managed by a specialized unit within BCF. In this program, the department works in conjunction with the Division of Juvenile Services (DJS) in the provision of services to youth and their families.

The first section of the report (Section A: Outcomes) presents the CFSR findings relevant to the State's performance in achieving specified outcomes for children in the areas of safety, permanency, and well-being. For each outcome, there is a table presenting the data for the case review findings and national indicators (when relevant). The table is followed by a discussion of the State's status with regard to substantial conformity with the outcome at the time of the State's first CFSR review, the State's status relevant to the current review, and a presentation and discussion of each item (indicator) assessed under the outcome. Differences in findings across the sites included in the Onsite Review are described when noteworthy. Variations in outcome and item ratings as a function of type of

2

D003453

case (i.e., foster care or in-home services) also are identified when appropriate. The second section of the report (Section B: Systemic Factors) provides an assessment and discussion of the systemic factors relevant to the child welfare agency's ability to achieve positive outcomes for children.

D003454

**Table of Key Characteristics of Cases Reviewed**

| Case Characteristics | Foster Care Cases | In-Home Cases |
|---|---|---|
| | **40** | **25** |
| **When case was opened/child entered foster care** | | |
| Opened prior to the period under review | 31 (77.5%) | 18 (72%) |
| Opened during the period under review | 9 (22.5%) | 7 (28%) |
| **Child entered foster care during the period under review** | 17 (42.5%) | * |
| **Child's age at start of period under review** | | |
| Younger than age 10 | 18 (45%) | * |
| At least 10 but younger than 13 | 4 (10%) | * |
| At least 13 but younger than 16 | 10 (25%) | * |
| 16 and older | 8 (20%) | * |
| **Race/Ethnicity** | | |
| African-American (Non-Hispanic) | 4 (10%) | * |
| American Indian/Alaskan Native (Non-Hispanic) | 0 | * |
| Asian (Non-Hispanic) | 0 | * |
| Hawaiian/Pacific Islander (Non-Hispanic) | 0 | * |
| White (Non-Hispanic) | 31 (77.5%) | * |
| Hispanic (of any race) | 1 (2.5%) | * |
| Two or more races (Non-Hispanic) | 4 (10%) | * |
| **Primary reason for opening case** | | |
| Physical abuse | 6 (15%) | 4 (16%) |
| Sexual abuse | 1 (2.5%) | 1 (4%) |
| Emotional maltreatment | 2 (5%) | 1 (4%) |
| Neglect (not including medical neglect) | 8 (20%) | 6 (24%) |
| Medical neglect | 2 (5%) | 0 |
| Abandonment | 0 | 0 |
| Mental/physical health of the parent | 1 (2.5%) | 2 (8%) |
| Mental/physical health of the child | 0 | 0 |
| Substance abuse by parent(s) | 3 (7.5%) | 4 (16%) |
| Child's behavior | 7 (17.5%) | 2 (8%) |
| Domestic violence in the home | 1 (2.5%) | 2 (8%) |
| Child in juvenile justice system | 8 (20%) | 2 (8%) |
| Other | 1 (2.5%) | 1 (4%) |

*Information on these characteristics for in-home services cases is not provided because all children in the family are considered in these cases.

D003455

## SECTION A: OUTCOMES

In the Outcomes section of the CFSR Final Report, an overall rating of Strength or Area Needing Improvement (ANI) is assigned to each of the 23 indicators (items) reviewed. An item is assigned an overall rating of Strength if 90 percent of the applicable cases reviewed were rated as a Strength. In addition to the item ratings, States are evaluated with regard to performance on seven outcomes, each of which incorporates one or more of the individual items. The evaluation options for these outcomes are Substantially Achieved, Partially Achieved, and Not Achieved. In order for a State to be in substantial conformity with a particular outcome, 95 percent of the cases reviewed must be rated as having substantially achieved the outcome. Two outcomes—Safety Outcome 1 and Permanency Outcome 1—also are evaluated based on State performance on six national data indicators. In order for a State to be in substantial conformity with these outcomes, the national standards for each data indicator must be met as well as the case review requirements. A State that is not in substantial conformity with a particular outcome must develop and implement a Program Improvement Plan (PIP) to address the areas of concern identified for that outcome.

ACF has set very high standards of performance for the CFSR. The standards are based on the belief that, because child welfare agencies work with our country's most vulnerable children and families, only the highest standards of performance should be considered acceptable. The standards are set high to ensure ongoing attention to achieving positive outcomes for children and families with regard to safety, permanency, and well-being. The goal of the CFSR is to promote continuous improvement in performance on these outcomes.

It should be noted, however, that States are not required to attain the 95-percent standard established for the CFSR Onsite Review at the end of their PIP implementation period. CB recognizes that the kinds of systemic and practice changes necessary to bring about improvement in particular outcome areas often are time consuming to implement. Also, improvements are likely to be incremental rather than dramatic. Instead, States work with CB to establish a specified amount of improvement or implement specified activities for their PIP. That is, for each outcome or item that must be addressed in the PIP, a State (working in conjunction with CB) specifies how much improvement the State will demonstrate and/or the activities that it will implement to address the ANIs, and determines the procedures for demonstrating the achievement of these goals. Both the improvements specified and the procedures for demonstrating improvement vary across States. Therefore, a State can meet the requirements of its PIP and still not perform at the 95- or 90-percent level requirements of the CFSR.

The second round of the CFSR is intended to assess a State's current level of performance by once more applying the high standards and consistent, comprehensive case review methodology. The results of this effort are intended to serve as the basis for continued PIPs addressing areas in which a State still needs to improve, even though prior PIP requirements may have been achieved. The goal is to ensure that program improvement is an ongoing process and does not end with the closing of a PIP.

D003456

In the following sections, for each outcome assessed, there is a discussion of how the State performed on that outcome in the first round. If the outcome was not substantially achieved during the first round of the CFSR, there is a discussion of the key concerns identified at that time and the strategies implemented in the PIP to address those concerns.

Because many changes have been made in the onsite CFSR process based on lessons learned during the first round and in response to feedback from the child welfare field, a State's performance in the second round of the CFSR is not directly comparable to its performance in the first round, particularly with regard to comparisons of data indicators or percentages regarding Strength and ANI ratings. Key changes in the CFSR process that make it difficult to compare performance across reviews are the following:

- An increase in the sample size from 50 to 65 cases
- Stratification of the sample to ensure a minimum number of cases in key program areas, resulting in variations in the number of cases relevant for specific outcomes and items
- Changes in criteria for specific items to increase consistency and to ensure an assessment of critical areas, such as child welfare agency efforts to involve noncustodial parents

D003457

## I. SAFETY

**Safety Outcome 1**

| Outcome S1: Children are, first and foremost, protected from abuse and neglect | | | | | |
|---|---|---|---|---|---|
| Number of cases reviewed by the team according to degree of outcome achievement | | | | | |
|  | GMPS District | Harrison County | Kanawha County | Total | Percent |
| Substantially Achieved | 4 | 1 | 3 | 8 | **33.3** |
| Partially Achieved | 4 | 0 | 2 | 6 | **25.0** |
| Not Achieved or Addressed | 1 | 4 | 5 | 10 | **41.7** |
| **Total Applicable Cases** | **9** | **5** | **10** | **24** |  |
| Not Applicable Cases | 8 | 12 | 21 | 41 |  |
| **Total Cases** | **17** | **17** | **31** | **65** |  |

| Conformity of statewide data indicators with national standards | | | |
|---|---|---|---|
|  | National Standard (%) | State's Percent | Meets Standard |
| Absence of maltreatment recurrence | 94.6 + | 87.6 | No |
| Absence of maltreatment of children in foster care by foster parents or facility staff | 99.68 + | 99.32 | No |

**Status of Safety Outcome I**

West Virginia is not in substantial conformity with Safety Outcome 1. The outcome was determined to be substantially achieved in only 33.3 percent of applicable cases, which is less than the 95 percent required for a rating of substantial conformity. The outcome was substantially achieved in 44 percent of applicable GMPS District cases, 30 percent of applicable Kanawha County cases, and 20 percent of applicable Harrison County cases. The outcome was not achieved in the one applicable Youth Services case. In addition, for the CFSR 12-month data period ending March 31, 2007, West Virginia did not meet the national standards for the two data indicators relevant to Safety Outcome 1 pertaining to the absence of maltreatment recurrence and the absence of maltreatment of children in foster care by foster parents or facility staff.

D003458

**Key Concerns From the 2002 CFSR**

In the 2002 CFSR, the State was not in substantial conformity with Safety Outcome 1. Key concerns noted at the time were the following:

- Reviewers found repeat maltreatment of children by their foster care providers.
- There were multiple maltreatment reports over the life of the case for the majority of the cases reviewed.

To address these concerns in its PIP, West Virginia revised its child protective services (CPS) system and implemented a new assessment process, the Safety First protocol, which includes two safety assessments and a distinct risk assessment. The new protocol addresses safety at the beginning of the case and throughout the life of the case.

The State met its target goals for this outcome by the end of its PIP implementation period.

**Key Findings of the 2008 CFSR**

The findings of the onsite 2008 CFSR pertaining to the specific items assessed under Safety Outcome 1 are presented below.

**Item 1. Timeliness of initiating investigations of reports of child maltreatment**

_____ Strength     __X__ Area Needing Improvement

**Case Review Findings**

The assessment of item 1 was applicable for 24 (37 percent) of the 65 cases. Cases were not applicable when there were no reports of child maltreatment during the period under review. In assessing item 1, reviewers were to determine whether the response to a maltreatment report occurring during the period under review had been initiated in accordance with State child welfare agency policy requirements.

West Virginia's BCF policy for report investigation timeframes is as follows:

- Response time for initiation of an investigation for priority 1 reports must be within 0-2 hours.
- Response time for initiation of an investigation for priority 2 reports must be within 72 hours.
- Response time for initiation of an investigation for priority 3 reports must be within 14 days.

The case review findings for this item are presented below.

D003459

| Item 1 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 5 | 1 | 3 | 9 | **37.5** |
| Area Needing Improvement | 4 | 4 | 7 | 15 | **62.5** |
| **Total Applicable Cases** | **9** | **5** | **10** | **24** | |
| Not Applicable Cases | 8 | 12 | 21 | 41 | |
| **Total Cases** | **17** | **17** | **31** | **65** | |

Item 1 was rated as a Strength in 56 percent of applicable GMPS District cases, 30 percent of applicable Kanawha County cases, and 20 percent of applicable Harrison County cases. The item was rated as an ANI in the one applicable Youth Services Case.

Item 1 was rated as a Strength in nine cases when the investigation was initiated and face-to-face contact was established with the child within the timeframes required by State policy or law. Item 1 was rated as an ANI in 15 cases when face-to-face contact was not established within the required timeframes.

Additional case review findings regarding the 52 reports on the 24 applicable cases are as follows:
• One of two reports assigned priority 1 was investigated within 2 hours.
• 57.5 percent (23 reports) of the 40 reports assigned priority 2 were investigated within 72 hours.
• 80 percent (8 reports) of the 10 reports assigned priority 3 were investigated within 14 days.

**Rating Determination**
Item 1 was assigned an overall rating of ANI. In only 37.5 percent of the applicable cases, reviewers determined that the agency had initiated an investigation of a maltreatment report in accordance with the required timeframes. This percentage is less than the 90 percent required for an overall item rating of Strength. This item was rated as a Strength in the State's 2002 CFSR.

**Statewide Assessment Information**
According to the Statewide Assessment, supervisors determine the appropriate response times to reports of abuse or neglect based on several factors including imminent danger to a child; serious physical abuse to a child; serious injury to a child; whether a child needs medical attention; whether a child is unsupervised; whether a parent's behavior is bizarre, out of control, or dangerous; and whether a parent is under the influence of drugs or alcohol.

The Statewide Assessment reports that the Office of Planning and Quality Improvement (OPQI) conducts quality assurance reviews (QARs) modeled after the CFSR in every district annually. The Statewide Assessment reports that the OPQI QARs showed that

D003460

investigations were conducted timely in 50 percent of 120 cases reviewed during the 2007 review period, representing an improvement from 48 percent of 185 cases reviewed during the 2005-2006 review period.

The Statewide Assessment acknowledges that there is a chronic investigation backlog problem in the State and that investigations of reports on open cases are, in some instances, delayed due to the judgment of the caseworker regarding safety and risk. The Statewide Assessment notes that the Crisis Response Team was created to assist districts throughout the State with large intake backlogs. However, the beneficial effects of the team's work in a district do not endure when the team moves on to another district.

In addition, the Statewide Assessment notes that there are inconsistencies in the quality of hotline intake services resulting in referrals without sufficient information for caseworkers to conduct investigations. The Statewide Assessment reports that OPQI QARs indicate that the acceptance of referrals for investigation varies greatly across the State; some districts accept almost all referrals while others have a large rate of screened-out referrals. The Statewide Assessment notes that staff recruitment and retention account for inconsistency in practice throughout the child welfare system.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item across the sites and at the State level expressed the opinion that reports of abuse and neglect are generally investigated in a timely manner. Some stakeholders in Kanawha County and Harrison County indicated that caseworkers work with law enforcement to conduct investigations in certain situations, such as investigations at night and investigations of known drug production facilities. While many stakeholders reported that coordination between law enforcement and child welfare agencies has improved, some Kanawha County stakeholders expressed concerns regarding law enforcement agency coordination that may affect the timeliness of investigations.

**Item 2. Repeat maltreatment**

_____ Strength        __X__ Area Needing Improvement

**Case Review Findings**
The assessment of item 2 was applicable for 15 (23 percent) of the 65 cases. Cases were not applicable for this item if there were no substantiated or indicated maltreatment reports during the period under review. For all applicable cases, reviewers were to determine whether there had been a substantiated or indicated maltreatment report on the family during the period under review and, if so, whether another substantiated or indicated report involving similar circumstances had occurred within a 6-month period before or after that identified report. Information regarding the ratings is provided below.

D003461

| Item 2 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 5 | 1 | 4 | 10 | **67** |
| Area Needing Improvement | 2 | 1 | 2 | 5 | **33** |
| **Total Applicable Cases** | **7** | **2** | **6** | **15** | |
| Not Applicable Cases | 10 | 15 | 25 | 50 | |
| **Total Cases** | **17** | **17** | **31** | **65** | |

Item 2 was rated as a Strength in 71 percent of applicable GMPS District cases, 67 percent of applicable Kanawha County cases, and 50 percent of applicable Harrison County cases.

Item 2 was rated as a Strength in 10 cases when there was no indication of two or more substantiated or indicated maltreatment reports on the family within a 6-month period.

Item 2 was rated as an ANI in five cases where there were two or more substantiated maltreatment reports within 6 months. Additional findings regarding these cases follow:
- Repeat maltreatment involved neglect (two cases).
- Repeat maltreatment involved physical abuse (three cases).
- Repeat maltreatment involved multiple perpetrators (one case).
- Repeat maltreatment occurred while the child was on a trial home visit (one case).
- There were four substantiated reports during the period under review (one case).

In addition to the recurrence of substantiated maltreatment reports, reviewers expressed concern about the cases involving multiple reports on the family during the life of the case. The "life of the case" refers to the time span from the date of the first allegation of abuse or neglect to the time of the Onsite Review. The following are key findings with regard to this concern:
- In 13 cases there were at least 5 reports during the life of the case but fewer than 10 reports.
- In 12 cases there were between 10 and 14 reports during the life of the case.
- In 6 cases there were 15 or more maltreatment reports during the life of the case; one case had 22 reports and another had 31 reports.

**Rating Determination**
Item 2 was assigned an overall rating of ANI. In 67 percent of the cases reviewed, reviewers determined that there was no recurrence of maltreatment within a 6-month period. This percentage is less than the 90 percent required for a rating of Strength. This item also was rated as an ANI in the State's 2002 CFSR.

D003462

**Statewide Assessment Information**

According to the Statewide Assessment, a report may be screened out if it is received within 45 days of the receipt of a prior report that contains the exact same allegations that were assessed for the prior report.

The Statewide Assessment reports that the OPQI QAR showed that there was no recurrence of maltreatment in 55 percent of 120 cases reviewed during the 2007 review period, representing an improvement from 44 percent of 185 cases reviewed during the 2005-2006 review period. The Statewide Assessment notes that multiple referrals from multiple sources on the same incident may account for the high numbers of repeat maltreatment shown in the data. The Statewide Assessment reports that OPQI conducted an in-depth assessment of 52 investigations in seven districts, associating duplicate referrals on a case, and found an absence of repeat maltreatment in 88.7 percent of the cases.

The Statewide Assessment reports that West Virginia is implementing the new Safety First assessment process, designed to assess, address, and strengthen safety for a family, scheduled for full implementation in January 2009. The Statewide Assessment notes, however, that the focus on safety highlighted in the implementation of the new Safety First assessment protocol has, contrary to intentions, negatively affected repeat maltreatment because the protocol requires caseworkers to devote large amounts of time in completing assessments, thus leading to backlogs in other areas. For example, the Statewide Assessment notes that backlogs in the investigation of cases at the time of intake contribute to increased instances of repeat maltreatment. The Statewide Assessment also notes that a lack of available services in some areas of the State may result in an increase in repeat maltreatment.

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item indicated that a lack of appropriate or sufficient service provision in the areas of substance abuse and domestic violence can, in some cases, lead to repeat maltreatment.

D003463

**Safety Outcome 2**

| Safety Outcome S2: Children are safely maintained in their homes whenever possible and appropriate | | | | |
|---|---|---|---|---|
| Number of cases reviewed by the team according to degree of outcome achievement | | | | |
| | GMPS District | Harrison County | Kanawha County | Total | Percent |
| Substantially Achieved | 13 | 11 | 13 | 37 | **56.9** |
| Partially Achieved | 1 | 4 | 6 | 11 | **16.9** |
| Not Achieved | 3 | 2 | 12 | 17 | **26.2** |
| **Total Cases** | **17** | **17** | **31** | **65** | |

**Status of Safety Outcome 2**

West Virginia is not in substantial conformity with Safety Outcome 2. The outcome was determined to be substantially achieved in 56.9 percent of cases reviewed, which is less than the 95 percent required for a rating of substantial conformity. The outcome was substantially achieved in 76 percent of GMPS District cases, 65 percent of Harrison County cases, and 42 percent of Kanawha County cases. The outcome was substantially achieved in 62 percent (8 cases) of the 13 Youth Services cases.

**Key Concerns From the 2002 CFSR**

The State was not in substantial conformity with Safety Outcome 2 in the 2002 CFSR. The following key concerns were identified at that time:
- The State did not routinely provide services to families to protect children in their homes and prevent removal due to a lack of consistency among caseworkers in the appropriate assessment of service needs and provision of services.
- The State did not routinely assess the risk of harm to children due to a lack of consistency among caseworkers in capturing the underlying issues leading to abuse and neglect, particularly issues such as domestic violence and substance abuse.

To address these concerns, West Virginia implemented the following strategies in its PIP:
- Trained staff to properly document client relationships and merge cases in the Families and Children Tracking System (FACTS)
- Implemented a competency-based system for certification and classification of CPS caseworkers and direct management
- Reissued CPS competencies for caseworkers and supervisors to emphasize the connection between the competencies and the agency's mission to protect the safety of children
- Developed a promotional presentation that can be used throughout BCF
- Coordinated and expanded existing collaborative and partnership initiatives to identify and address service needs on the local level

D003464

- Continued statewide implementation of the cross-disciplinary model for domestic violence to effectively respond to domestic violence
- Implemented a managed System of Care (SOC) based on performance and outcomes to provide services to children and families through an Administrative Services Organization (ASO)
- Evaluated the impact of the ASO on outcomes for children and families
- Implemented supports for CPS caseworkers to improve the effectiveness of the Safety First risk and assessment protocol, and ensured caseworkers appropriately identify services to reduce risk

The State met its target goals for this outcome by the end of its PIP implementation period.

**Key Findings of the 2008 CFSR**

The findings of the 2008 CFSR pertaining to the specific items assessed under Safety Outcome 2 are presented below.

**Item 3. Services to family to protect child(ren) in home and prevent removal**

\_\_\_\_\_ Strength          __X__ Area Needing Improvement

**Case Review Findings**

An assessment of item 3 was applicable in 40 (62 percent) of the 65 cases. Cases were excluded from this assessment if the children entered foster care prior to the period under review and there were no other children in the home, or if there was no substantiated or indicated maltreatment report or an identified risk of harm to the children (including children reunified from foster care) in the home during the period under review. For this item, reviewers assessed whether, in responding to a substantiated maltreatment report or risk of harm, the agency made diligent efforts to provide services to families to prevent placement of children in foster care while ensuring their safety. The results of this assessment are shown in the table below.

| Item 3 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 9 | 10 | 12 | 31 | **77.5** |
| Area Needing Improvement | 3 | 1 | 5 | 9 | **22.5** |
| **Total Applicable Cases** | **12** | **11** | **17** | **40** | |
| Not Applicable Cases | 5 | 6 | 14 | 25 | |
| **Total Cases** | **17** | **17** | **31** | **65** | |

14

D003465

Item 3 was rated as a Strength in 91 percent of applicable Harrison County cases, 75 percent of applicable GMPS District cases, and 71 percent of applicable Kanawha County cases. The item was rated as a Strength in 87.5 percent (seven cases) of eight applicable Youth Services cases.

Item 3 was rated as a Strength when reviewers determined one or more of the following:
- Services were provided to parents and children to prevent removal (14 cases).
- The family received post-reunification services to prevent the children's reentry into foster care (eight cases).
- The children were removed from the home without service provision to ensure their safety (12 cases).

Case review information indicates that a range of services was offered or provided to families. These included but were not limited to family counseling, individual therapy, parenting support, homemaking services, substance abuse treatment, supervised visitation, housing assistance, anger management, domestic violence services, psychiatric evaluation, and transportation.

Item 3 was rated as an ANI in when reviewers determined one or more of the following:
- Some services were provided but they did not adequately address the safety issues in the family, and the children remained at risk in the home (six cases). In three of these cases, the critical, unmet service need was for domestic violence services.
- No services were provided and the children remained at risk in the home (three cases).
- No services were provided after reunification to ensure the child's ongoing safety and prevent reentry (one Youth Services case).
- The child was placed into foster care without efforts to provide services to prevent entry into foster care (one case).

**Rating Determination**
Item 3 was assigned an overall rating of ANI. In 77.5 percent of the cases, reviewers determined that CPS had made concerted efforts to maintain children safely in their own homes. This percentage is less than the 90 percent required for a rating of Strength. This item also was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**
According to the Statewide Assessment, caseworkers must determine whether there are services that would alleviate or eliminate the risk to the child before removing the child from the home. The Statewide Assessment notes that the Safety First initiative supports caseworkers in determining the services necessary to maintain safety in the home and prevent removal. In addition, the Statewide Assessment reports that the Comprehensive Assessment and Planning System (CAPS) was developed to improve the quality of assessments by CPS caseworkers, particularly for the youth services population, and to develop a thorough and appropriate treatment plan. The department contracted with an ASO, APS Healthcare, Inc., in 2003 to provide socially necessary services to children and families receiving CPS, services for youth, and foster care.

D003466

The Statewide Assessment reports that the OPQI QAR showed that services were put in place, if appropriate, to protect children in their homes and prevent removal or reentry into foster care in 67 percent of 120 cases reviewed during the 2007 review period, representing an improvement from 62 percent of 185 cases reviewed during the 2005-2006 review period.

The Statewide Assessment indicates that caseworkers do not consistently complete the Safety First or CAPS assessments on a timely basis; therefore, service delivery is delayed and the subsequent removal of children may be necessary to ensure their safety. In addition, the Statewide Assessment notes that the lack of services, particularly domestic violence and substance abuse treatment services, in many areas of the State may affect the ability of CPS to provide services to prevent the removal of children.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item indicated that a set of services known as the "safety bundle" provided by the ASO is designed to address service needs for families at home and includes services such as parenting, visitation, mentoring, and tutoring. However, some stakeholders noted that sufficient services to address substance abuse are lacking. Some stakeholders in Kanawha County expressed the opinion that some families of youth who are returned home do not receive follow-up stabilizing services to prevent the youth's reentry into placement, and some stakeholders in Harrison County noted that some families of children receiving Youth Services do not consistently receive needed services.

**Item 4. Risk of harm to child**

\_\_\_\_\_ Strength        \_\_X\_\_ Area Needing Improvement

**Case Review Findings**
An assessment of item 4 was applicable for all 65 cases. In assessing item 4, reviewers were to determine whether the agency had made, or was making, diligent efforts to address the risk of harm to the children involved in each case. The results of this assessment are shown in the table below.

| Item 4 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 13 | 11 | 13 | 37 | **57** |
| Area Needing Improvement | 4 | 6 | 18 | 28 | **43** |
| **Total Cases** | **17** | **17** | **31** | **65** | |

Item 4 was rated as a Strength in 76 percent of GMPS District cases, 65 percent of Harrison County cases, and 42 percent of Kanawha County cases. The item was rated as a Strength in 62 percent (8 cases) of the 13 Youth Services cases.

D003467

Item 4 was rated as a Strength when reviewers determined that the risk of harm to children was appropriately addressed by the agency through conducting initial and ongoing assessments of risk and safety either in the children's home or in the children's foster home and addressing all safety concerns identified through the assessment.

Item 4 was rated as an ANI when reviewers determined the following:

- Adequate safety and risk assessments were not conducted either initially or on an ongoing basis (10 cases).
- An initial assessment of safety and risk was conducted but ongoing safety and risk assessments were not conducted (eight cases).
- The identified risk of harm concerns were not addressed with appropriate services (seven cases).
- The case was closed and the services necessary to reduce risk were not provided (three cases).

**Rating Determination**

Item 4 was assigned an overall rating of ANI. In 57 percent of the applicable cases, reviewers determined that CPS had appropriately addressed the risk of harm to the children. This percentage is less than the 90 percent required for an overall rating of Strength. This item also was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**

According to the Statewide Assessment, the Safety First protocol, including two safety assessments and a risk assessment, is to be completed within 30 days of referral. The Statewide Assessment reports that, if a present or impending danger is identified, the case is opened for CPS ongoing services and CPS collaborates with the family in developing a treatment plan to address the risk and safety concerns identified. In addition, the Statewide Assessment reports that safety is evaluated quarterly through case closure.

The Statewide Assessment reports that the OPQI QAR showed that risk and safety assessments were completed initially and on an ongoing basis in 48 percent of 120 cases reviewed during the 2007 review period, representing a decline in performance from 66 percent of 185 cases reviewed during the 2005-2006 review period.

The Statewide Assessment indicates that caseworkers do not consistently complete the Safety First or CAPS assessments on a timely basis; therefore, service delivery is delayed and risk may increase. In addition, the Statewide Assessment notes that in some cases inexperienced caseworkers are charged with complex decision-making responsibilities, which may lead to inappropriate determinations regarding risk and safety. The Statewide Assessment also notes that the lack of services, particularly domestic violence and substance abuse treatment services, in many areas of the State may affect the ability of CPS to adequately address risk when it is identified.

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item across the sites and at the State level indicated that caseworkers use the Safety First assessment to identify safety issues for families and the Youth Behavior Evaluation (YBE) to evaluate risk for children

D003468

receiving Youth Services. Some stakeholders noted that caseworkers do not have consistent access to case history, including background checks, leading to incomplete safety assessments.


## II. PERMANENCY

**Permanency Outcome 1**

| Outcome P1: Children have permanency and stability in their living situations | | | | | |
|---|---|---|---|---|---|
| Number of cases reviewed by the team according to degree of outcome achievement | | | | | |
| | **GMPS District** | **Harrison County** | **Kanawha County** | **Total** | **Percent** |
| Substantially Achieved | 2 | 4 | 5 | 11 | **27.5** |
| Partially Achieved | 7 | 6 | 14 | 27 | **67.5** |
| Not Achieved or Addressed | 1 | 0 | 1 | 2 | **5.0** |
| **Total Foster Care Cases** | **10** | **10** | **20** | **40** | |

| Conformity of statewide data indicators with national standards | | | |
|---|---|---|---|
| | **National Standard (Scaled Score)** | **State's Composite Score** | **Meets Standard?** |
| Composite 1: Timeliness and permanency of reunification | 122.6 + | 106.6 | No |
| Composite 2: Timeliness of adoptions | 106.4 + | 97.8 | No |
| Composite 3: Permanency for children in foster care for extended time periods | 121.7 + | 120.2 | No |
| Composite 4:  Placement stability | 101.5 + | 97.1 | No |

**Status of Permanency Outcome 1**

West Virginia is not in substantial conformity with Permanency Outcome 1. This determination was based on the following findings:
- The outcome was determined to be substantially achieved in only 27.5 percent of cases, which is less than the 95 percent required for an overall rating of substantial conformity.
- The State Data Profile indicates that for the CFSR 12-month data period ending March 31, 2007, the State did not meet the national standards for any of the four data indicators for which national standards have been established, as listed in the table above.

D003469

Permanency Outcome 1 was substantially achieved in 40 percent of Harrison County cases, 25 percent of Kanawha County cases, and 20 percent of GMPS District cases. The outcome was substantially achieved in 30 percent (3 cases) of the 10 applicable Youth Services cases.

Performance on the individual measures included in all composites is presented in the discussion of the items related to each measure.

**Key Concerns From the 2002 CFSR**

The State was not in substantial conformity with Permanency Outcome 1 during the 2002 CFSR. The following key concerns were identified at that time with regard to achieving permanency for children in foster care:
- The State did not appropriately capture data pertaining to foster care reentries and national standards were not being met.
- The State did not appropriately capture data pertaining to placement changes and indicated that the stability of foster care placements was inconsistent due to a scarcity of specialized placements for children with behavioral problems and inappropriate matching of children with placement settings.
- The State did not consistently identify and engage noncustodial parents in services.
- The State did not consistently establish appropriate permanency goals in a timely manner due to extensive delays in revising permanency goals, a lack of clear documentation, the overuse of the goal of long-term foster care, and apparent confusion regarding the appropriate use of the goal of guardianship.
- The State did not consistently provide appropriate and timely adoption services due to caseworker inconsistencies in evaluating the appropriateness of adoption and the lack of concurrent planning.
- The State inappropriately assigned the goal of long-term foster care in a large number of cases and did not make diligent efforts to assist children in attaining more appropriate goals, such as guardianship or adoption.

To address these concerns, West Virginia implemented the following strategies in its PIP:
- Established a baseline to accurately reflect the number of foster care reentries
- Increased the number of specialized foster and adoptive beds by 10 percent to meet the needs of children
- Engaged foster and adoptive parents and other providers in the casework process
- Increased the support to foster and adoptive parents
- Implemented CAPS
- Improved caseworker consistency in the documentation of children's location on FACTS
- Implemented training on adoption, permanency, concurrent planning, and multidisciplinary treatment teams (MDTs) for child welfare staff and direct management
- Increased stakeholder awareness of adoption, permanency, and concurrent planning
- Removed barriers to timely adoption
- Identified absent parents

19

D003470

- Provided FACTS refresher training to address the transition to adoption
- Corrected inappropriate permanency plans

The State met its target goals for this outcome by the end of its PIP implementation period.

**Key Findings of the 2008 CFSR**

Findings of the onsite 2008 CFSR pertaining to the specific items assessed under Permanency Outcome 1 are presented below.

**Item 5. Foster care reentries**

__X__ Strength          _____ Area Needing Improvement

**Case Review Findings**
An assessment of item 5 was applicable for 17 (42.5 percent) of the 40 foster care cases. Cases were not applicable for assessment if the child did not enter foster care during the period under review. In assessing this item, reviewers determined whether or not the entry into foster care during the period under review occurred within 12 months of discharge from a prior foster care episode. The results of this assessment are presented in the table below.

| Item 5 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 4 | 5 | 7 | 16 | 94 |
| Area Needing Improvement | 0 | 0 | 1 | 1 | 6 |
| **Total Applicable Foster Care Cases** | **4** | **5** | **8** | **17** | |
| Not Applicable Foster Care Cases | 6 | 5 | 12 | 23 | |
| **Total Foster Care Cases** | **10** | **10** | **20** | **40** | |

Item 5 was rated as a Strength in 100 percent of applicable GMPS District and Harrison County cases and 87.5 percent of applicable Kanawha County cases. The item was rated as a Strength in 75 percent (three cases) of the four applicable Youth Services cases.

Item 5 was rated as a Strength in 16 cases when the entry into foster care during the period under review did not take place within 12 months of discharge from a prior episode.

Item 5 was rated as an ANI in one Youth Services case when the child's entry into foster care occurred within 12 months of the child's discharge from a prior foster care episode.

20

D003471

**Rating Determination**
Item 5 was assigned an overall rating of Strength. The item was rated as a Strength in 94 percent of the applicable cases. This percentage is more than the 90 percent required for a rating of Strength. This item was rated as an ANI in the State's 2002 CFSR.

**Performance on the Composite 1 Measure Relevant to the Permanency of Reunification**
State performance for the CFSR 12-month data period ending March 31, 2007, on the individual measure of foster care reentry (C1.4) included in Composite 1: Timeliness and permanency of reunification was as follows: 19.2 percent of the children discharged from foster care to reunification reentered foster care in less than 12 months from the date of discharge. This percentage is greater than the national median of 15 percent. For this measure, lower percentages are associated with higher levels of performance. These data are presented to provide additional information about foster care reentry. There is no national standard for this measure. National standards have been established only for the scaled composite scores.

**Statewide Assessment Information**
According to the Statewide Assessment, caseworkers must ensure that families have met specific criteria prior to reunification including: resolution of the initial problem necessitating placement, written agreement to a service plan to return the child, and continuation of ongoing supportive services necessary to the stability of the family. The Statewide Assessment notes that post-reunification services are provided, if necessary, for up to 6 months.

The Statewide Assessment reports that the OPQI QAR showed that there were no foster care reentries in 92 percent of 78 cases reviewed during the 2007 review period, representing a marked improvement from 53 percent of 101 cases reviewed during the 2005-2006 review period.

The Statewide Assessment notes that caseworkers use the CAPS evaluation to plan service delivery for youth and that the ASO provides socially necessary services to youth to assist with reunification. However, the Statewide Assessment also notes that judges in some jurisdictions return youth home prematurely, without supportive services, leading to foster care reentries for this population.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item in Harrison County and Kanawha County expressed the opinion that some families of youth who are returned home do not receive follow-up services, in some cases resulting in reentry. Some stakeholders in Harrison County further noted that some families of children receiving Youth Services do not consistently receive needed services. Some stakeholders across the sites noted that children are sometimes ordered to be returned home by the court despite a recommendation from the caseworker that the home/parents are not ready.

D003472

**Item 6. Stability of foster care placement**

\_\_\_\_\_ Strength      \_\_X\_\_ Area Needing Improvement

**Case Review Findings**

All 40 foster care cases were applicable for an assessment of item 6. In assessing this item, reviewers were to determine whether the child experienced multiple placement settings during the period under review and, if so, whether the changes in placement settings were necessary to achieve the child's permanency goal or meet the child's service needs. Reviewers also assessed the stability of the child's current placement setting. The findings of this assessment are presented in the table below.

| Item 6 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 8 | 5 | 13 | 26 | **65** |
| Area Needing Improvement | 2 | 5 | 7 | 14 | **35** |
| **Total Foster Care Cases** | **10** | **10** | **20** | **40** | |

Item 6 was rated as a Strength in 80 percent of GMPS District cases, 65 percent of Kanawha County cases, and 50 percent of Harrison County cases. The item was rated as a Strength in 50 percent (5 cases) of the 10 applicable Youth Services cases.

Item 6 was rated as a Strength when reviewers determined the following:
- The child did not experience a placement change during the period under review, and that the current placement was stable, the child was discharged from foster care, or the child was adopted during the period under review (20 cases).
- The placement changes experienced were in the child's best interests and were intended either to promote achieving the child's permanency goal or to provide specialized services to the child (six cases).

Item 6 was rated as an ANI when reviewers determined one or more of the following:
- The child's behavioral treatment needs were not met and, therefore, the child experienced more than one placement (10 cases).
- The child experienced multiple placements, and at least one placement change was not planned in the child's best interests (10 cases). For example, in three cases the child was placed temporarily in a shelter placement because a more appropriate setting was not available.
- The child's current placement was not stable (three cases).

Additional findings of the case review were the following:
- Children in 23 cases experienced only one placement during the period under review.
- Children in 12 cases experienced two placements during the period under review.

D003473

- Children in five cases experienced three or more placements during the period under review: three children experienced four placements, one child experienced six placements, and one child experienced seven placements.

**Rating Determination**

Item 6 was assigned an overall rating of ANI. In 65 percent of the cases, reviewers determined that children experienced placement stability or that changes in placements were in the best interests of the child. This percentage is less than the 90 percent required for a rating of Strength. This item also was rated as an ANI in the State's 2002 CFSR.

**Performance on the Individual Measures Included in Composite 4: Placement Stability**

West Virginia's performance for CFSR 12-month data period ending March 31, 2007, on the individual measures included in Composite 4: Placement stability is presented below:

- C4.1: 86.6 percent of the children in foster care for less than 12 months experienced two or fewer placement settings. This percentage is greater than the national 75th percentile of 86.0 percent.
- C4.2: 64.7 percent of the children in foster care for at least 12 months but less than 24 months experienced two or fewer placement settings. This percentage is greater than the national median of 59.9 percent, but not as high as the national 75th percentile of 65.4 percent.
- C4.3: 31.6 percent of the children in foster care for at least 24 months experienced two or fewer placement settings. This percentage is less than the national median of 33.9 percent.

These data are presented to provide additional information about placement stability. There are no national standards for performance on these measures individually. National standards have been established only for the scaled composite scores.

**Statewide Assessment Information**

According to the Statewide Assessment, MDT meetings are required for all cases at entry into State custody. The Statewide Assessment reports that CAPS family assessments inform the MDT so that it may select an appropriate placement for the child. The Statewide Assessment notes that caseworkers and private child-placing agencies must consider the needs of the child and capacity of the foster home prior to placement matching. The Statewide Assessment notes that a statewide foster and adoptive home recruitment plan was developed to increase the variety and distribution of placement resources in the State.

The Statewide Assessment reports that the OPQI QAR showed that foster care placements were stable in 62 percent of 78 cases reviewed during the 2007 review period, representing a decline in performance from 76 percent of 101 cases reviewed during the 2005-2006 review period.

D003474

The Statewide Assessment indicates that caseworkers do not consistently complete the Safety First or CAPS assessments in a timely manner. Therefore, an initial foster care placement may not take into consideration all of a child's needs. The Statewide Assessment also indicates that there is a lack of communication between the agency and foster parents regarding the children in their care.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item indicated that placement stability is related to the behavior of the child. Some stakeholders noted that, in cases in which a child's needs are not adequately assessed, that child's placement subsequently must be changed to accommodate the actual needs of the child.

**Item 7. Permanency goal for child**

_____ Strength        __X__ Area Needing Improvement

**Case Review Findings**
All of the 40 foster care cases were applicable for an assessment of item 7. In assessing this item, reviewers determined whether the agency had established a permanency goal for the child in a timely manner and whether the most current permanency goal was appropriate. In addition, reviewers determined whether termination of parental rights (TPR) was sought in accordance with Adoption and Safe Families Act (ASFA) requirements. The results of this assessment are shown below.

| Item 7 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 5 | 8 | 12 | 25 | **62.5** |
| Area Needing Improvement | 5 | 2 | 8 | 15 | **37.5** |
| **Total Foster Care Cases** | **10** | **10** | **20** | **40** | |

Item 7 was rated as a Strength in 80 percent of Harrison County cases, 60 percent of Kanawha County cases, and 50 percent of GMPS District cases. The item was rated as a Strength in 30 percent (3 cases) of the 10 applicable Youth Services cases.

Item 7 was rated as a Strength in 25 cases when reviewers determined that the child's permanency goal was appropriate, had been established in a timely manner and that the agency had adhered to the ASFA requirements with regard to filing for TPR.

The case was rated as an ANI when reviewers determined one or more of the following:
- The child's permanency goal was not established in a timely manner (seven cases).
- The child's permanency goal of adoption was not appropriate to the needs of the child (five cases).
- TPR was not sought in accordance with ASFA timelines and compelling reasons were not noted in the case file (nine cases).

D003475

Case review findings pertaining to case plan goals were as follows:
- 18 children had a single goal of reunification (including living with other relatives).
- Two children had concurrent goals of guardianship and reunification.
- 10 children had a single goal of adoption.
- One child had a single goal of other planned permanent living arrangement (OPPLA).
- Four children had concurrent goals of reunification (including reunification with relatives) and adoption.
- Two children had concurrent goals of guardianship and adoption.
- Two children had concurrent goals of reunification and OPPLA.
- One child had concurrent goals of guardianship and OPPLA.

Case review findings show that, at the time of the Onsite Review, there were 22 cases in which children had been in foster care for 15 of the most recent 22 months. ASFA requirements were applicable for 19 of these cases. ASFA requirements were not applicable for two cases because the child was in placement with a relative and in one case due to other circumstances. ASFA requirements (with regard to both filing for TPR and documenting compelling reasons for not filing) were met in 53 percent (10 cases) of the 19 applicable cases.

**Rating Determination**
Item 7 was assigned an overall rating of ANI. Case reviewers determined that, in 62.5 percent of the applicable cases, the agency had established an appropriate permanency goal for the child in a timely manner and had met ASFA requirements with regard to TPR. This percentage is less than the 90 percent required for a rating of Strength. This item also was rated as an ANI in the State's 2002 CFSR.

**Performance on the Individual Measures Included in Composite 3: Permanency for children in foster care for extended time periods**
West Virginia's performance for CFSR 12-month data period ending March 31, 2007, on the individual measures incorporated in Permanency Composite 3: Permanency for children in foster care for extended time periods is presented below:
- C3.1: 25.0 percent of the children in foster care for 24 months or longer at the start of the target year were discharged from foster care to a permanent home (i.e., adoption, reunification with parents or other relatives, or guardianship) by the end of the target year. This percentage is at the national median of 25.0 percent.
- C3.2: 91.7 percent of the children exiting foster care who were legally free for adoption at the time of exit were discharged to a permanent home. This percentage is less than the national median of 96.8 percent.
- C3.3: 35.4 percent of the children who were discharged from foster care with a discharge reason of emancipation had been in foster care for 3 years or longer at the time of discharge. This percentage is below the national 25th percentile of 37.5 percent. For this measure, lower scores indicate more positive performance.

D003476

These data are presented to provide additional information about permanency for children in foster care for extended time periods. There are no national standards for performance on these measures individually. National standards have been established only for the scaled composite scores.

**Statewide Assessment Information**

According to the Statewide Assessment, caseworkers are required to develop a primary permanency plan for each child in collaboration with the MDT. In addition, the Statewide Assessment notes that the caseworker must develop a concurrent permanency plan for every child with a plan of reunification in the event the primary permanency plan becomes inappropriate. The Statewide Assessment reports that permanency options for a child include: reunification, permanent placement with relatives, guardianship, adoption, independent living, or OPPLA. The Statewide Assessment also reports that the MDT must meet to establish a permanency plan within 30 days of the child entering foster care if a permanency plan has not already been established.

The Statewide Assessment notes that West Virginia requires that a petition to terminate parental rights must be filed when a child has been in State custody for 15 of the most recent 22 months. The Statewide Assessment notes that there are circumstances, such as abandonment, that allow for a TPR petition to be filed earlier; and that there are circumstances (compelling reasons), such as the non-provision of services by the agency, that allow for a delay in filing a TPR petition.

The Statewide Assessment reports that the OPQI QAR showed that an appropriate permanency goal was established in a timely manner in 67 percent of 78 cases reviewed during the 2007 review period, representing a decline in performance from 85 percent of 101 cases reviewed during the 2005-2006 review period. The 2007 review is the only review in which more than one permanency goal was rated for a case if there were concurrent goals for the child.

The Statewide Assessment indicates that there is a lack of communication between the agency and the courts in some districts, resulting in court actions that are in direct conflict with agency recommendations. In addition, the Statewide Assessment indicates that concurrent plans are not pursued concurrently in many districts and that caseworkers view concurrent plans as contingency plans.

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item expressed the opinion that a primary case plan goal is established for children in a timely manner. Some stakeholders indicated that concurrent goals also are developed for children and pursued sequentially in the event the primary goal is not achieved. Some stakeholders indicated that MDTs provide opportunities to develop and monitor appropriate goals for children.

**Item 8. Reunification, guardianship, or permanent placement with relatives**

_____ Strength        __X__ Area Needing Improvement

D003477

**Case Review Findings**

Item 8 was applicable for 29 (72.5 percent) of the 40 foster care cases. In assessing this item, reviewers were to determine whether the agency had achieved the permanency goals of reunification, guardianship, or permanent placement with relatives in a timely manner, or, if the goals had not been achieved, whether the agency had made, or was in the process of making, diligent efforts to achieve the goals. The results of this assessment are shown in the table below.

| Item 8 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 2 | 7 | 8 | 17 | **59** |
| Area Needing Improvement | 4 | 1 | 7 | 12 | **41** |
| **Total Applicable Foster Care Cases** | **6** | **8** | **15** | **29** | |
| Not Applicable Foster Care Cases | 4 | 2 | 5 | 11 | |
| **Total Foster Care Cases** | **10** | **10** | **20** | **40** | |

Item 8 was rated as a Strength in 87.5 percent of applicable Harrison County cases, 53 percent of applicable Kanawha County cases, and 33 percent of applicable GMPS District cases. The item was rated as a Strength in 70 percent (7 cases) of the 10 applicable Youth Services cases.

Item 8 was rated as a Strength in 17 cases when reviewers determined that the goal of reunification, guardianship, or placement with relatives had been achieved in a timely manner or that the agency was making concerted efforts to achieve the goal in a timely manner.

Item 8 was rated as an ANI in 12 cases when reviewers determined that the agency had not made concerted efforts to achieve the goal in a timely manner due in part to inadequate service provision and follow-up.

**Rating Determination**

Item 8 was assigned an overall rating of ANI. Case reviewers determined that, in 59 percent of the applicable cases, the agency had made diligent efforts to attain the goals of reunification, guardianship, or permanent placement with relatives in a timely manner. This percentage is less than the 90 percent required for a rating of Strength. This item was rated as a Strength in the State's 2002 CFSR.

**Performance on the Individual Measures Pertaining to Timeliness Included in Composite 1: Timeliness and permanency of reunification**

West Virginia's performance in CFSR 12-month data period ending March 31, 2007, for timeliness of reunification measures included in Composite 1: Timeliness and permanency of reunification is as follows:

D003478

- C1.1: 71.1 percent of the reunifications occurred in at least 8 days but less than 12 months after the child's entry into foster care. This percentage is higher than the national median of 69.9 percent but less than the national 75th percentile of 75.2 percent.
- C1.2: The median length of stay in foster care for children who were in foster care for at least 8 days and who were discharged to reunification was 7.9 months. This length of stay is longer than the national median of 6.5 months. For this measure, a lower number of months indicates higher performance.
- C1.3: 40.5 percent of children entering foster care in the last 6 months who were in foster care for at least 8 days were discharged from foster care to reunification in less than 12 months of entry into foster care. This percentage is above the national median of 39.4 percent but less than the national 75th percentile of 48.4 percent.

These data are presented to provide additional information about West Virginia's performance with regard to the timeliness of reunification. There are no national standards for performance on these measures individually. National standards have been established only for the scaled composite scores.

**Statewide Assessment Information**
According to the Statewide Assessment, reunification is considered to be the primary permanency plan for children who enter foster care and who are younger than 16 years of age. The Statewide Assessment reports that relative caregivers can complete requirements to be approved as foster care providers or receive subsidized guardianship in West Virginia. The Statewide Assessment indicates that the State has made concerted efforts to identify and utilize appropriate kinship and relative placements.

The Statewide Assessment reports that the OPQI QAR showed that reunification was achieved in a timely manner or the agency was making diligent efforts to achieve that goal in 57 percent of 63 cases reviewed during the 2007 review period, representing a decline in performance from 65 percent of 67 cases reviewed during the 2005-2006 review period.

The Statewide Assessment notes that there is a lack of treatment options in the State for children who have severe behavioral issues and that reunification is delayed for these children due to barriers associated with maintaining the relationship among family members.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item indicated that reunification is the default primary goal for children who enter foster care. Some stakeholders indicated that reunification may be delayed in some cases if the agency has not provided services to the family due to court continuances and the practice of courts granting additional improvement periods beyond 12 months.

**Item 9. Adoption**

_____ Strength        __X___ Area Needing Improvement

D003479

**Case Review Findings**

Item 9 was applicable for 16 (40 percent) of the 40 foster care cases. In assessing this item, reviewers were to determine whether diligent efforts had been made or were being made to achieve finalized adoptions in a timely manner. The results are shown in the table below.

| Item 9 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 2 | 1 | 2 | 5 | **31** |
| Area Needing Improvement | 1 | 5 | 5 | 11 | **69** |
| **Total Applicable Foster Care Cases** | **3** | **6** | **7** | **16** | |
| Not Applicable Foster Care Cases | 7 | 4 | 13 | 24 | |
| **Total Foster Care Cases** | **10** | **10** | **20** | **40** | |

Item 9 was rated as a Strength in 67 percent of applicable GMPS District cases, 29 percent of applicable Kanawha County cases, and 17 percent of applicable Harrison County cases. The item was rated as a Strength in one of the two applicable Youth Services cases.

Item 9 was rated as a Strength in five cases when reviewers determined that the State had made diligent efforts to achieve finalized adoptions in a timely manner. Item 9 was rated as an ANI when reviewers determined that the State had not made diligent efforts to achieve a finalized adoption in a timely manner due to the following circumstances:
- Delays on the part of the agency in filing for TPR (two cases)
- Lack of concerted efforts on the part of the agency in locating an adoptive family and completing home studies (nine cases)

Case review findings pertaining to the goal of adoption were as follows:
- There were 16 cases with a goal of adoption, including 6 cases with concurrent goals of adoption and reunification or guardianship.
- Adoption was finalized in 4 of the 16 cases, 1 within 24 months of the child's entry into foster care.
- Of the remaining cases, three children were placed in pre-adoptive homes.

**Rating Determination**

Item 9 was assigned an overall rating of ANI. Case reviewers determined that CPS had made diligent efforts to achieve adoptions in a timely manner in only 31 percent of the applicable cases. This percentage is less than the 90 percent required for a rating of Strength. This item also was rated as an ANI in the State's 2002 CFSR.

D003480

**Performance on the Individual Measures Included in Composite 2: Timeliness of Adoptions**

The following information describes West Virginia's performance on the individual measures included in the CFSR 12-month data period ending March 31, 2007, for Composite 2: Timeliness of adoptions:

- C2.1: 47.4 percent of the children exiting foster care to adoption were discharged in less than 24 months from the time of entry into foster care. This percentage is higher than the national 75th percentile of 36.6 percent.
- C2.2: The median length of stay in foster care for children adopted was 25.2 months. This median length of stay is less than the national 25th percentile of 27.3 months. For this measure, a lower number of months indicates a higher level of performance.
- C2.3: 20.1 percent of children in foster care for 17 months or longer on the first day of the target period were discharged to a final adoption by the last day of the target period. This percentage is below the national median of 20.2 percent.
- C2.4: 9.2 percent of children in foster care for 17 months or longer on the first day of the target period became legally free for adoption (i.e., there was a TPR for both mother and father) within the first 6 months of the target period. This percentage is higher than the national median of 8.8 percent but less than the national 75th percentile of 10.9 percent.
- C2.5: 31.7 percent of children who were legally free for adoption were adopted within 12 months of becoming legally free. This percentage is less than the national median of 45.8 percent.

These data are presented to provide additional information about West Virginia's performance regarding the timeliness of adoption. There are no national standards for performance on these measures individually. National standards have been established only for the scaled composite scores.

**Statewide Assessment Information**

According to the Statewide Assessment, the MDT must agree to pursue the permanency goal of adoption for a child with the goal of adoption. The Statewide Assessment notes that the child must be referred to the Adoption Resource Network within 30 days of TPR for listing in the adoption photo listing book and on the State's adoption website. The Statewide Assessment also notes that a post-termination placement plan must be submitted to the court within 90 days of TPR. The Statewide Assessment reports that adoption subsidies are available to adoptive parents to provide medical and financial assistance for adoptive children. The Statewide Assessment also notes that State law requires a 6-month trial adoptive period prior to adoption finalization.

The Statewide Assessment reports that all home studies are now foster/adoptive home studies, which increase the number of adoptive resources available as well as stability for children. The Statewide Assessment notes that to expedite some adoption finalizations, the department has entered into an agreement with four private, licensed foster care and adoption agencies to follow cases through to adoption instead of transferring them back to department adoption caseworkers.

The Statewide Assessment reports that the OPQI QAR showed that adoption was achieved in a timely manner or the agency was making diligent efforts to achieve that goal in 38 percent of 32 cases reviewed during the 2007 review period, representing a decline in performance from 42 percent of 39 cases reviewed during the 2005-2006 review period.

D003481

The Statewide Assessment indicates that adoption is delayed in some cases due to the following concerns:

- Inconsistencies in caseworker visitation and support to adoptive placements
- The lack of early consideration of absent parents' rights and consideration of absent parents' relatives as placement options
- The lack of timely court orders in some jurisdictions
- The separation of siblings
- The lack of post-adoption resources for adoptive families
- The lengthy process for conducting criminal background checks
- The lack of continuity of case transfer and subsidy approval protocols across districts
- The inaccuracy of information contained in FACTS regarding discharge to adoption

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item in the GMPS District indicated that adoption caseworkers participate on the MDT at an early stage in the case, while some stakeholders from Kanawha County indicated that there is often a delay in the transfer of a case from the reunification caseworker to the adoption caseworker. Some stakeholders in Harrison County noted that adoption can be delayed due to extensive appeals and a lengthy internal grievance procedure.

Additional information on stakeholder perceptions of the adoption process is provided under items 27 and 28 in the Systemic Factors section of the report.

**Item 10. Permanency goal of other planned permanent living arrangement**

_____ Strength        __X__ Area Needing Improvement

**Case Review Findings**
Item 10 was applicable for 4 (10 percent) of the 40 foster care cases. In assessing these cases, reviewers were to determine if the agency had made, or was making, diligent efforts to assist children in attaining their goals related to OPPLA. The results are presented in the table below.

| Item 10 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 1 | 1 | 1 | 3 | **75** |
| Area Needing Improvement | 1 | 0 | 0 | 1 | **25** |
| **Total Applicable Foster Care Cases** | **2** | **1** | **1** | **4** | |
| Not Applicable Foster Care Cases | 8 | 9 | 19 | 36 | |
| **Total Foster Care Cases** | **10** | **10** | **20** | **40** | |

31

**D003482**

Item 10 was rated as a Strength in both of the applicable Harrison County and Kanawha County cases, and one of two applicable GMPS District cases. There were no applicable Youth Services cases for this item.

Item 10 was rated as a Strength in three cases when reviewers determined that the child was in a long-term, stable placement and was receiving the necessary services and supports to promote a successful transition from foster care to independent living once the child reaches the age of emancipation.

Item 10 was rated as an ANI in one case when reviewers determined that there was a delay in providing the child with sufficient services to assist in transitioning to independent living.

Case reviewers determined that the goal of OPPLA was established appropriately for all four children with the goal of OPPLA. All of these children with the goal of OPPLA were age 16 or older at the time the goal was established.

**Rating Determination**

Item 10 was assigned an overall rating of ANI. In 75 percent of the cases, reviewers determined that the goal of OPPLA was being addressed in an appropriate way. This percentage is less than the 90 percent required for a rating of Strength. This item also was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**

According to the Statewide Assessment, the MDT has the option to agree that a permanency goal of OPPLA be assigned for youth older than 16 years of age who are working toward emancipation; and for children 12 years of age or older for whom a stable, long-term foster care placement is the most appropriate plan. The Statewide Assessment notes that children with a goal of OPPLA must receive the same rights and protections as children in shorter-term foster care including periodic reviews, dispositional hearings, life skills instruction, medical and mental health care, and educational support.

The Statewide Assessment reports that caseworkers must complete the YBE for all referrals to Youth Services. The Statewide Assessment notes that the Chafee Program provides services to youth aging out of foster care; and the Community Reentry Program for Youth provides services to support the transition to independent living.

The Statewide Assessment reports that the OPQI QAR showed that the goal of OPPLA was being pursued appropriately in 86 percent of 11 cases reviewed during the 2007 review period, representing an improvement from 47 percent of 20 cases reviewed during the 2005-2006 review period.

The Statewide Assessment indicates that there is a lack of Independent Living services (ILS) and other supportive services for youth across the State. In addition, the Statewide Assessment indicates that caseworkers use the CAPS evaluation to plan service delivery for youth, and the ASO provides socially necessary services to youth to assist with independent living. However, the Statewide

D003483

Assessment also notes that caseworkers do not consistently complete the CAPS evaluation on a timely basis, severely affecting the ability of youth to access critical services at emancipation.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item indicated that the MDT process identifies services for children with the goal of OPPLA.

**Permanency Outcome 2**

| Outcome P2: The continuity of family relationships and connections is preserved for children | | | | | |
|---|---|---|---|---|---|
| Number of cases reviewed by the team according to degree of outcome achievement | | | | | |
| | GMPS District | Harrison County | Kanawha County | Total | Percent |
| Substantially Achieved | 8 | 10 | 13 | 31 | **77.5** |
| Partially Achieved | 2 | 0 | 7 | 9 | **22.5** |
| Not Achieved | 0 | 0 | 0 | 0 | **0** |
| **Total Foster Care Cases** | **10** | **10** | **20** | **40** | |

**Status of Permanency Outcome 2**

West Virginia is not in substantial conformity with Permanency Outcome 2. The outcome was determined to be substantially achieved in 77.5 percent of cases, which is less than the 95 percent required for substantial conformity. The outcome was substantially achieved in 100 percent of Harrison County cases, 80 percent of GMPS District cases, and 65 percent of Kanawha County cases. The outcome was substantially achieved in 62 percent (8 cases) of the 13 Youth Services cases.

**Key Concerns From the 2002 CFSR**

The State was not in substantial conformity with Permanency Outcome 2 in the 2002 CFSR. The following key concerns were identified at that time:
- The State did not consistently facilitate visitation with parents and siblings in foster care.
- The State did not consistently make efforts to locate relatives, particularly paternal relatives, to support foster placement.
- The State did not consistently support the relationship of children in care with their parents, particularly fathers.

To address these concerns, West Virginia implemented the following strategies in its PIP:
- Implemented a process and requirement for caseworkers to identify absent parents during the CAPS assessment process

D003484

- Revised policy on locating and including absent fathers, paternal relatives, and siblings in visitation plans
- Revised policy on timeframes for relative home studies

The State met its target goals for this outcome by the end of its PIP implementation period.

**Key Findings of the 2008 CFSR**

The findings of the onsite 2008 CFSR pertaining to the specific items assessed under Permanency Outcome 2 are presented below.

**Item 11. Proximity of foster care placement**

__X__ Strength          _____ Area Needing Improvement

**Case Review Findings**

Item 11 was applicable for 31 (77.5 percent) of the 40 foster care cases. Cases determined to be not applicable were those in which TPR had been attained prior to the period under review, contact with parents was not considered to be in the child's best interests, and/or parents were deceased or their whereabouts were unknown. In assessing item 11, reviewers were to determine whether the child's most current foster care setting was in close proximity to the child's parents or close relatives. The results of this assessment are presented in the table below.

| Item 11 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 8 | 7 | 16 | 31 | **100** |
| Area Needing Improvement | 0 | 0 | 0 | 0 | **0** |
| **Total Applicable Foster Care Cases** | **8** | **7** | **16** | **31** | |
| Not Applicable Foster Care Cases | 2 | 3 | 4 | 9 | |
| **Total Foster Care Cases** | **10** | **10** | **20** | **40** | |

Item 11 was rated as a Strength in 100 percent of applicable cases reviewed in all three sites.

This item was rated as a Strength when reviewers determined the following:

- The child was placed in the same community or county as his or her parents, or the child's placement was not in the same community or county but was still in close proximity (24 cases).
- The child's placement was not in close proximity to his or her parents, but the placement was necessary to meet the child's needs (seven cases).

34

D003485

**Rating Determination**

Item 11 was assigned an overall rating of Strength. In 100 percent of the cases, reviewers determined that the agency placed children in foster care placements that were in close proximity to their parents' or relatives' homes or that met their special needs. This percentage exceeds the 90 percent required for a rating of Strength. This item also was rated as a Strength in the State's 2002 CFSR.

**Statewide Assessment Information**

According to the Statewide Assessment, caseworkers use CAPS family assessments and MDTs to gather information and select an appropriate placement for the child, as well as to identify service needs for the child and the family. The Statewide Assessment notes that caseworkers are required to place a child in close proximity to the family and that relative placements that maintain connections for families have increased over the last several years. The Statewide Assessment acknowledges that there is a lack of specialized placements in the State to accommodate the number of children who need specialized placements.

The Statewide Assessment reports that the OPQI QAR showed that children were placed in close proximity to their families, if appropriate, in 93 percent of 78 cases reviewed during the 2007 review period, representing no change in performance from 93 percent of 101 cases reviewed during the 2005-2006 review period.

The Statewide Assessment indicates that the courts do not consistently respect the recommendations of the agency in placement decisions.

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item indicated that a child is placed far from his or her family only in cases in which the child has special needs that can be met only in a specialized placement or facility that is not available locally.

**Item 12. Placement with siblings**

__X__ Strength          ____Area Needing Improvement

**Case Review Findings**

Item 12 was applicable for 20 (50 percent) of the 40 foster care cases. Cases were not applicable if the child did not have a sibling in foster care at any time during the period under review. In assessing item 12, reviewers were to determine whether siblings were, or had been, placed together and, if not, whether the separation was necessary to meet the service or safety needs of one or more of the children. The results of this assessment are presented in the table below.

35

| Item 12 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 5 | 4 | 9 | 18 | **90** |
| Area Needing Improvement | 0 | 1 | 1 | 2 | **10** |
| **Total Applicable Foster Care Cases** | **5** | **5** | **10** | **20** | |
| Not Applicable Foster Care Cases | 5 | 5 | 10 | 20 | |
| **Total Foster Care Cases** | **10** | **10** | **20** | **40** | |

Item 12 was rated as a Strength in 100 percent of applicable GMPS District cases, 90 percent of applicable Kanawha County cases, and 80 percent of applicable Harrison County cases. The item was rated as a Strength in all three applicable Youth Services cases.

Item 12 was rated as a Strength when reviewers determined the following:
- The child was placed with all siblings (eight cases).
- The child was not placed with all siblings due to the special needs of one or more of the siblings (10 cases).

Item 12 was rated as an ANI when reviewers determined the following:
- In one case, the child was separated from siblings when his or her behavioral issues were not adequately addressed by the agency.
- In one case, the child was separated from an infant sibling with no rationale.

**Rating Determination**
Item 12 was assigned an overall rating of Strength. In 90 percent of the applicable cases, reviewers determined that the agency placed siblings together in foster care whenever possible and appropriate. This percentage equals the 90 percent required for a rating of Strength. This item also was rated as a Strength in the State's 2002 CFSR.

**Statewide Assessment Information**
According to the Statewide Assessment, caseworkers are required to place siblings together whenever possible. The Statewide Assessment notes that court approval is required if siblings are to be placed separately. The Statewide Assessment also notes that caseworker training in PRIDE (Parent Resources for Information, Development, and Education) emphasizes the importance of keeping siblings together.

The Statewide Assessment reports that the OPQI QAR showed that children were placed with their siblings, if appropriate, in 89 percent of 78 cases reviewed during the 2007 review period, representing a decline in performance from 93 percent of 101 cases reviewed during the 2005-2006 review period.

D003487

The Statewide Assessment notes that waivers of foster home certification requirements are available for relatives and foster parents to accommodate large sibling groups. However, the Statewide Assessment acknowledges that there are insufficient foster placements for large sibling groups. In addition, the Statewide Assessment indicates that the courts do not consistently respect the recommendations of the agency in placement decisions.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item expressed the opinion that siblings are kept together in foster and adoptive placements.

**Item 13. Visiting with parents and siblings in foster care**

\_\_\_\_\_ Strength         \_\_X\_\_ Area Needing Improvement

**Case Review Findings**
Item 13 was applicable for 34 (85 percent) of the 40 foster care cases. Cases were not applicable for an assessment of this item if the child had no siblings in foster care and if one of the following conditions was met with regard to the parents: (1) TPR was established prior to the period under review and parents were no longer involved in the child's life (or parents were deceased), or (2) visitation with a parent was considered to be not in the best interests of the child. In assessing this item, reviewers were to determine (1) whether the agency had made, or was making, diligent efforts to facilitate visitation between children in foster care and their parents and siblings in foster care, and (2) whether these visits occurred with sufficient frequency to meet the needs of children and families. The findings of this assessment are presented in the table below.

| Item 13 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 7 | 8 | 13 | 28 | **82** |
| Area Needing Improvement | 1 | 0 | 5 | 6 | **18** |
| **Total Applicable Foster Care Cases** | **8** | **8** | **18** | **34** | |
| Not Applicable Foster Care Cases | 2 | 2 | 2 | 6 | |
| **Total Foster Care Cases** | **10** | **10** | **20** | **40** | |

Item 13 was rated as a Strength in 100 percent of applicable Harrison County cases, 87.5 percent of applicable GMPS District cases, and 72 percent of applicable Kanawha County cases. The item was rated as a Strength in 89 percent (eight cases) of the nine applicable Youth Services cases.

37

Item 13 was rated as a Strength when reviewers determined that the frequency and quality of visitation with parents and siblings met the needs of the children, or that the agency made concerted efforts to promote more frequent visitation, if appropriate.

Item 13 was rated as an ANI when reviewers determined one or more of the following:
- The agency did not make concerted efforts to promote visitation with the mother (one case).
- The agency did not make concerted efforts to promote visitation with the father (four cases).
- The agency did not make concerted efforts to promote visitation with siblings (three cases).

Specific information from the case reviews is presented in the table below.

| Typical Frequency of Visitation | Mother | Father | Siblings in Foster Care |
|---|---|---|---|
| Visits occurred on at least a weekly basis | 12 (44%) | 6 (29%) | 3 (27%) |
| Visits occurred less than weekly but at least twice a month | 5 (19%) | 3 (14%) | 1 (9%) |
| Visits occurred less than twice a month but at least once a month | 7 (26%) | 5 (24%) | 4 (36%) |
| Visits occurred less than once a month | 3 (11%) | 3 (14%) | 1 (9%) |
| Visits never occurred | 0 | 4 (19%) | 2 (18%) |
| **Total Applicable Cases** | **27** | **21** | **11** |

**Rating Determination**
Item 13 was assigned an overall rating of ANI. In 82 percent of the applicable cases, reviewers determined that the agency had made concerted efforts to ensure that visitation was of sufficient frequency to meet the needs of the family. This percentage is less than the 90 percent required for a rating of Strength. This item also was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**
According to the Statewide Assessment, the CAPS process identifies family members, including noncustodial parents, appropriate for visitation and the MDT is required to develop a visitation plan for family members as soon as possible after placement. The Statewide Assessment notes that the visitation plan must include visitations no less than monthly among separated family members and that the visitation plan must include a site, time, date, and transportation arrangements.

The Statewide Assessment notes that the ASO provides supervised visitation services as a part of its array of socially necessary services. The Statewide Assessment also notes that caseworker training in the PRIDE curriculum emphasizes the importance of visitation.

D003489

The Statewide Assessment reports that the OPQI QAR showed that children visited with their parents and siblings with sufficient frequency, if appropriate, in 66 percent of 78 cases reviewed during the 2007 review period, representing a decline in performance from 77 percent of 101 cases reviewed during the 2005-2006 review period.

The Statewide Assessment notes that, although visitation centers and the ASO provide supervised visitation services in some areas of the State, these services are not available throughout the State. The Statewide Assessment acknowledges that caseworkers do not consistently identify and pursue noncustodial parents, particularly in cases involving youth who have entered foster care due to behavioral concerns. The Statewide Assessment notes that, although visitation planning is required and transportation is a required element of visitation planning, visitation can be inconsistent and transportation continues to be a barrier to effective visitation throughout the State.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item indicated that children in foster care visit regularly with siblings and parents and that transportation assistance for such visitation is available.

**Item 14. Preserving connections**

\_\_\_\_\_ Strength        \_\_X\_\_ Area Needing Improvement

**Case Review Findings**
Item 14 was applicable for 39 (97.5 percent) of the 40 foster care cases. One case was not applicable for this item because the child was in foster care for only 13 days during the period under review. In assessing item 14, reviewers were to determine whether the agency had made, or was making, diligent efforts to preserve the child's connections to neighborhood, community, cultural heritage, extended family, faith, and friends while the child was in foster care. This item is not rated on the basis of visits or contacts with parents or siblings in foster care. The results of the assessment are provided in the table below.

| Item 14 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 8 | 10 | 13 | 31 | **79** |
| Area Needing Improvement | 1 | 0 | 7 | 8 | **21** |
| **Total Applicable Foster Care Cases** | **9** | **10** | **20** | **39** | |
| Not Applicable Foster Care Cases | 1 | 0 | 0 | 1 | |
| **Total Foster Care Cases** | **10** | **10** | **20** | **40** | |

D003490

Item 14 was rated as a Strength in 100 percent of Harrison County cases, 89 percent of applicable GMPS District cases, and 65 percent of Kanawha County cases. The item was rated as a Strength in 67 percent (six cases) of the nine applicable Youth Services cases.

Item 14 was rated as a Strength when reviewers determined one or more of the following:
- The agency made concerted efforts to preserve the child's connections with extended family members and siblings not in foster care (29 cases).
- The agency made concerted efforts to preserve the child's connections with the school, friends, and community (17 cases).
- The agency made concerted efforts to preserve the child's connections with the child's religious or cultural heritage (three cases).

Item 14 was rated as an ANI in eight cases when reviewers determined that the agency did not make diligent efforts to preserve the child's important connections.

**Rating Determination**

Item 14 was assigned an overall rating of ANI. Reviewers determined that, in 79 percent of the applicable cases, CPS made concerted efforts to ensure that children in foster care maintained their connections to extended family, communities, schools, and cultural heritage. This percentage is less than the 90 percent required for a rating of Strength. This item also was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**

According to the Statewide Assessment, when a child is placed in foster care, caseworkers are required to consider not only the proximity of a placement to the child's family, but also to the child's school and with attention to maintaining religious and family connections. The Statewide Assessment reports that the State complies with the Indian Child Welfare Act (ICWA) in searching for Native American ancestry and maintaining Tribal connections. The Statewide Assessment also notes that caseworker training in the PRIDE curriculum emphasizes the importance of preserving community and extended family connections for children in foster care.

The Statewide Assessment reports that the OPQI QAR showed that the agency maintained important connections for children in 83 percent of 78 cases reviewed during the 2007 review period, representing no change in performance from 83 percent of 101 cases reviewed during the 2005-2006 review period.

The Statewide Assessment acknowledges that caseworkers do not consistently identify and pursue noncustodial parents in order to maintain connections with extended family members. In addition, the Statewide Assessment notes that there is a lack of documentation of family member contact information in addition to a lack of documentation of activities to maintain important connections for children.

D003491

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item indicated that community connections are maintained for children placed in family foster homes and that, for children with a goal of OPPLA, connections are maintained with assistance from the ILS program.

**Item 15. Relative placement**

_____ Strength          __X__ Area Needing Improvement

**Case Review Findings**

Item 15 was applicable for 24 (60 percent) of the 40 foster care cases. Cases were not applicable if relative placement was not an option during the period under review because the child was in an adoptive placement at the start of the time period, or the child entered foster care needing specialized services that could not be provided in a relative placement. In assessing this item, reviewers were to determine whether the agency had made diligent efforts to locate and assess both maternal and paternal relatives as potential placement resources for children in foster care. The results of this assessment are presented in the table below.

| Item 15 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 4 | 6 | 9 | 19 | **79** |
| Area Needing Improvement | 3 | 0 | 2 | 5 | **21** |
| **Total Applicable Foster Care Cases** | **7** | **6** | **11** | **24** | |
| Not Applicable Foster Care Cases | 3 | 4 | 9 | 16 | |
| **Total Foster Care Cases** | **10** | **10** | **20** | **40** | |

Item 15 was rated as a Strength in 100 percent of applicable Harrison County cases, 82 percent of applicable Kanawha County cases, and 57 percent of applicable GMPS District cases. The item was rated as a Strength in both of the applicable Youth Services cases.

Item 15 was rated as a Strength when reviewers determined the following:
- The child was placed with relatives (11 cases). In addition, reviewers noted that genograms were completed in three cases.
- Despite diligent efforts made by the agency, the child was not placed with relatives (eight cases).

Item 15 was rated as an ANI when reviewers determined the following:
- The agency did not make diligent efforts to search for the child's maternal and paternal relatives (four cases).
- The agency made efforts to search for maternal relatives but did not make efforts to search for paternal relatives (one case).

41

D003492

**Rating Determination**

Item 15 was assigned an overall rating of ANI. In 79 percent of the cases, reviewers determined that the agency had made diligent efforts to locate and assess relatives as potential placement resources. This percentage is less than the 90 percent required for a rating of Strength. This item also was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**

According to the Statewide Assessment, caseworkers are required to search for and consider relatives as placement resources for children who must be removed from their homes. The Statewide Assessment notes that relative foster care providers comprise approximately 57 percent of the approved foster care providers in the State. The Statewide Assessment indicates that the CAPS tool is designed to capture information regarding extended family members and that this information is used by the MDT to designate the most appropriate placement for each child.

The Statewide Assessment indicates that the State has made concerted efforts to identify and utilize appropriate kinship and relative placements. The Statewide Assessment notes that caseworkers must make a determination that a relative can meet the certification requirements for becoming a foster family before the relative can become the child's caregiver. The Statewide Assessment notes that relative caregivers in West Virginia have the option to complete requirements to be approved as foster care providers or receive subsidized guardianship.

The Statewide Assessment reports that the OPQI QAR showed that the agency identified relatives for placement, if appropriate, in 77 percent of 78 cases reviewed during the 2007 review period, representing a slight decrease in performance from 78 percent of 101 cases reviewed during the 2005-2006 review period.

The Statewide Assessment acknowledges that, despite policy and practice requirements, caseworkers do not consistently identify and pursue noncustodial parents or the identification of relatives for placement. In addition, the Statewide Assessment indicates that the courts do not consistently respect the recommendations of the agency in placement decisions.

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item indicated that there has been a significant increase in relative placements across the State. Some stakeholders in Harrison County noted that the use of relative caregivers has increased positive outcomes for children.

**Item 16. Relationship of child in care with parents**

_____ Strength    __X__ Area Needing Improvement

**Case Review Findings**

Item 16 was applicable for 30 (75 percent) of the 40 foster care cases. A case was not applicable if (1) parental rights had been terminated prior to the period under review and parents were no longer involved with the child or (2) a relationship with the parents was considered to be not in the child's best interests throughout the period under review. In assessing this item, reviewers were to determine whether the agency had made diligent efforts to support or maintain the bond between children in foster care and their mothers and fathers through efforts other than arranging visitation. The results of this assessment are provided in the table below.

| Item 16 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 6 | 7 | 9 | 22 | **73** |
| Area Needing Improvement | 1 | 0 | 7 | 8 | **27** |
| **Total Applicable Foster Care Cases** | **7** | **7** | **16** | **30** | |
| Not Applicable Foster Care Cases | 3 | 3 | 4 | 10 | |
| **Total Foster Care Cases** | **10** | **10** | **20** | **40** | |

Item 16 was rated as a Strength in 100 percent of applicable Harrison County cases, 86 percent of applicable GMPS District cases, and 56 percent of applicable Kanawha County cases. The item was rated as a Strength in 75 percent (six cases) of the eight applicable Youth Services cases.

Item 16 was rated as a Strength when reviewers determined that the agency made concerted efforts to support and/or strengthen the bond between parents and children. Examples of CPS efforts to promote bonding between the child and parents included the following: MDT facilitation, promoting family therapy, supporting visitation with supervision and suggested activities, encouraging the parents' participation in school activities and extracurricular activities, encouraging and facilitating the parents' participation in the child's medical care, and providing or arranging for transportation to facilitate visitation.

Item 16 was rated as an ANI when reviewers determined the following:

- The agency did not make concerted efforts to support positive relationships with the child's mother and father (five cases).
- The agency did not make concerted efforts to support the relationship with the child's father but did make efforts with the child's mother, or the child's mother was not applicable for this item (two cases).
- The agency did not make concerted efforts to support the relationship with the child's mother but did make efforts with the child's father (one case).

D003494

**Rating Determination**

Item 16 was assigned an overall rating of ANI. In 73 percent of the cases, reviewers determined that the agency had made concerted efforts to support the parent-child relationships of children in foster care. This percentage is less than the 90 percent required for a rating of Strength. This item also was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**

According to the Statewide Assessment, the department promotes a positive relationship between children and parents with a focus on child-centered, family-focused practice that involves families in their own casework and decision-making. The Statewide Assessment notes that foster care providers are expected to participate in the MDT along with biological parents, caseworkers, and service providers.

The Statewide Assessment notes that caseworkers creatively engage community resources to support the relationship between children and parents: for example, visits take place in parks and with the involvement of churches. Life books are prepared for children to maintain a record from the child's perspective.

The Statewide Assessment reports that the OPQI QAR showed that the agency promoted the parent-child relationship, if appropriate, in 56 percent of 78 cases reviewed during the 2007 review period, representing a decline in performance from 78 percent of 101 cases reviewed during the 2005-2006 review period.

The Statewide Assessment acknowledges that caseworkers do not consistently identify and pursue noncustodial parents for the promotion of family bonds. The Statewide Assessment notes that there is a lack of family counselors to support families in the child welfare system.

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item indicated that the agency routinely assists families with transportation assistance in order to facilitate visitation.

D003495

## III. CHILD AND FAMILY WELL-BEING

### Well-Being Outcome 1

| Outcome WB1: Families have enhanced capacity to provide for their children's needs | | | | |
|---|---|---|---|---|
| Number of cases reviewed by the team according to degree of outcome achievement | | | | |
| | GMPS District | Harrison County | Kanawha County | Total | Percent |
| Substantially Achieved | 7 | 10 | 7 | 24 | **36.9** |
| Partially Achieved | 7 | 5 | 10 | 22 | **33.8** |
| Not Achieved or Addressed | 3 | 2 | 14 | 19 | **29.2** |
| **Total Cases** | **17** | **17** | **31** | **65** | |

### Status of Well-Being Outcome 1

West Virginia is not in substantial conformity with Well-Being Outcome 1. The outcome was determined to be substantially achieved in only 36.9 percent of cases reviewed, which is less than the 95 percent required for a determination of substantial conformity. The outcome was substantially achieved in 59 percent of Harrison County cases, 41 percent of GMPS District cases, and 23 percent of Kanawha County cases. The outcome was substantially achieved in 50 percent (20 cases) of 40 foster care cases and 16 percent (4 cases) of 25 in-home services cases. The outcome was substantially achieved in 31 percent (4 cases) of the 13 Youth Services cases.

### Key Concerns From the 2002 CFSR

The State was not in substantial conformity with Well-Being Outcome 1 in the 2002 CFSR. The following key concerns were identified at that time with regard to the enhanced capacity of families to provide for their children's needs:
- The agency did not consistently assess needs and provide services for children, parents, and foster parents due to the lack of appropriate follow-up in some cases to ensure that services were delivered and were effective, an inconsistency among caseworkers in assessing the needs of fathers, insufficient ILS, an inconsistency among caseworkers in addressing substance abuse and domestic violence, and a lack of attention to the service needs of foster parents.
- The agency did not consistently facilitate the involvement of children and families in case planning, contrary to State policy. The agency was not consistent in ensuring that the contact between caseworkers and children was of sufficient frequency and quality to ensure that the best interests of the children were being met. This finding was attributed in part to the high rate of staff turnover in the caseworker position.
- The agency was not consistent in ensuring that the contact between caseworkers and parents was of sufficient frequency and quality to ensure that the best interests of the child were being addressed.

45

To address these concerns, West Virginia implemented the following strategies in its PIP:

- Implemented a family-centered practice assessment, including competency-based contracts where performance and outcomes are monitored
- Fully implemented CAPS, including an assessment of needs related to substance abuse and domestic violence
- Utilized masters-level clinicians to identify and interpret assessments, identify service needs, make recommendations for placement, and participate as consistent members of the MDT throughout the life of the case
- Provided mandatory domestic violence and substance abuse training to all child welfare staff
- Ensured that ongoing assessments for children in foster homes monitored by both DHHS and private agencies are consistent
- Provided follow-up to families and children for ongoing service provision through the ASO
- Improved consistency among caseworkers in assessing the needs of fathers and involving them in services
- Strengthened the level of assessment of the needs of foster parents
- Strengthened foster parent involvement in the MDT process
- Increased the effectiveness and utilization of ILS
- Developed a measure for child and family involvement in the case planning process in FACTS
- Monitored caseworker compliance with child and family involvement policies through supervisor conferences
- To ensure safety, developed a minimum standard for the number of caseworker visits to families to ensure safety that is based on standards from the Council on Accreditation
- Increased the recruitment of appropriate and sufficient staff

The State met its target goals for this outcome by the end of its PIP implementation period.

### Key Findings of the 2008 CFSR

The findings of the 2008 CFSR pertaining to the specific items assessed under Well-Being Outcome 1 are presented below.

### Item 17. Needs and services of child, parents, foster parents

_____ Strength          __X__ Area Needing Improvement

### Case Review Findings

Item 17 was applicable for all 65 cases. In assessing this item, reviewers were to determine whether the agency had adequately assessed the needs of children, parents, and foster parents and provided the services necessary to meet those needs. This item excludes the assessment of children's (but not parents') needs pertaining to education, physical health, and mental health. These issues are addressed in later items. The results of this assessment are provided in the table below.

D003497

| Item 17 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 9 | 12 | 10 | 31 | **48** |
| Area Needing Improvement | 8 | 5 | 21 | 34 | **52** |
| **Total Cases** | **17** | **17** | **31** | **65** | |

Item 17 was rated as a Strength in 71 percent of Harrison County cases, 53 percent of GMPS District cases, and 32 percent of Kanawha County cases. The item was rated as a Strength in 60 percent (24 cases) of the 40 foster care cases and 28 percent (7 cases) of the 25 in-home services cases. The item was rated as a Strength in 54 percent (7 cases) of the 13 Youth Services cases.

Item 17 was rated as a Strength when reviewers determined that the needs of children, parents, and foster parents had been adequately assessed and that identified service needs had been met.

Item 17 was rated as an ANI when reviewers determined that there was either inadequate assessment of needs or there were inadequate services provided to meet identified needs. This item was rated as an ANI when reviewers determined one or more of the following:

- There was a lack of assessment of children (12 cases).
- There was a lack of assessment of mothers (17 cases).
- There was a lack of assessment of fathers (25 cases).
- There was a lack of assessment of foster parents (three cases).
- There was a lack of appropriate services provided to children (10 cases).
- There was a lack of appropriate services provided to mothers (17 cases).
- There was a lack of appropriate services provided to fathers (30 cases).
- There was a lack of appropriate services provided to foster parents (three cases).

Specific information from the case reviews is presented in the table below.

| Assessment of Needs and Services | Foster Care Cases | | In-Home Cases | | Youth Services Cases | |
|---|---|---|---|---|---|---|
| | Yes | Total | Yes | Total | Yes | Total |
| Mother's needs assessed and met | 19 (68%) | **28** | 13 (54%) | **24** | 8 (67%) | **12** |
| Father's needs assessed and met | 9 (41%) | **22** | 5 (22%) | **23** | 0 | **13** |
| Child's needs assessed and met | 36 (90%) | **40** | 14 (56%) | **25** | 10 (77%) | **13** |
| Foster parents' needs assessed and met | 22 (85%) | **26** | | | | |

47

**Rating Determination**

Item 17 was assigned an overall rating of ANI. In only 48 percent of the cases, reviewers determined that the State had adequately assessed and addressed the service needs of children and parents. This percentage is less than the 90 percent required for a rating of Strength. This item also was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**

According to the Statewide Assessment, caseworkers are required to complete an initial assessment on all referrals to CPS. If service needs are identified, caseworkers also are required to conduct safety planning, family assessment, and treatment planning. The Statewide Assessment notes that caseworker training emphasizes the needs assessment protocols and documentation requirements. The Statewide Assessment reports that CAPS family assessments are used to gather information to identify service needs for the child and the family. The Statewide Assessment notes that the MDT subsequently conducts comprehensive assessment, planning, service implementation, and monitoring of cases.

The Statewide Assessment reports that the OPQI QAR showed that the agency appropriately assessed the needs of children and parents in 53 percent of 120 cases reviewed during the 2007 review period, representing a decrease in performance from 57 percent of 185 cases reviewed during the 2005-2006 review period.

The Statewide Assessment indicates that caseworkers do not consistently complete the Safety First or CAPS assessments on a timely basis, which delays service delivery. In addition, the Statewide Assessment indicates that family assessments may be incomplete due, in part, to the low level of experience of the caseworker; for example, when problems such as domestic violence and substance abuse are not identified, service assessments do not match the needs of the family. The Statewide Assessment acknowledges that caseworkers do not consistently identify and pursue noncustodial parents to ensure that the needs of all family members are considered.

The Statewide Assessment indicates that the following services are not sufficiently available statewide: substance abuse treatment, mental health treatment, batterer intervention and domestic victim supportive services, sexual abuse treatment, ILS, post-adoption services, and in-home services.

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item indicated that family needs are assessed in the CAPS assessment and reassessed during MDT meetings on a regular basis. However, some stakeholders noted that necessary services are not always available to families. Some stakeholders in Harrison County expressed the opinion that some families of children receiving Youth Services do not consistently receive needed services. Some stakeholders in Kanawha County indicated that MDT meetings are held routinely at the court, but judges do not consistently accept the case plan resulting from those meetings. Some stakeholders in Kanawha County noted that the MDT is not used for in-home services cases and that the team is consistently used for children receiving Youth Services.

D003499

**Item 18. Child and family involvement in case planning**

\_\_\_\_\_ Strength        \_\_X\_\_ Area Needing Improvement

**Case Review Findings**

Item 18 was applicable for 62 (95 percent) of the 65 cases. A case was not applicable if parental rights had been terminated prior to the period under review and parents were not involved with the child in any way and the child was too young or had cognitive delays or other conditions that were barriers to participation in case planning. In assessing this item, reviewers were to determine whether parents and children (if age appropriate) had been involved in case planning and, if not, whether their involvement was contrary to the child's best interests. A determination of involvement in case planning required that a parent or child had actively participated in identifying the services and goals included in the case plan. Findings from this assessment are presented in the table below.

| Item 18 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 12 | 9 | 12 | 33 | **53** |
| Area Needing Improvement | 5 | 7 | 17 | 29 | **47** |
| **Total Applicable Cases** | **17** | **16** | **29** | **62** | |
| Not Applicable Cases | 0 | 1 | 2 | 3 | |
| **Total Cases** | **17** | **17** | **31** | **65** | |

Item 18 was rated as a Strength in 71 percent of GMPS District cases, 56 percent of applicable Harrison County cases, and 41 percent of applicable Kanawha County cases. The item was rated as a Strength in 68 percent (25 cases) of 37 applicable foster care cases and 32 percent (8 cases) of 25 in-home services cases. The item was rated as a Strength in 69 percent (9 cases) of the 13 Youth Services cases.

Item 18 was rated as a Strength when reviewers determined that all appropriate parties had actively participated in case planning or that the agency had made concerted efforts to involve them in case planning.

The item was rated as an ANI when reviewers determined that the agency had not made concerted efforts to involve the mother, father, and/or child (when age appropriate) in the case planning process.

Specific information from the case reviews is presented in the table below.

D003500

| Case Planning Involvement | | |
| Family Member | Involved | Total Applicable |
| Mother | 38 (70%) | **54** |
| Father | 21 (47%) | **45** |
| Child | 30 (67%) | **45** |

## Rating Determination

Item 18 was assigned an overall rating of ANI. In 53 percent of the applicable cases, reviewers determined that the agency had made diligent efforts to involve parents and/or children, when appropriate, in the case planning process. This percentage is less than the 90 percent required for a rating of Strength. This item also was rated as an ANI in the State's 2002 CFSR.

## Statewide Assessment Information

According to the Statewide Assessment, CPS and Youth Services require that the child (if age appropriate) and all family members be included in the initial assessment and safety evaluation or in the YBE, and on the MDT. The Statewide Assessment notes that foster care policy requires that the child should be involved in developing the permanency plan. The Statewide Assessment also notes that treatment plans must be developed within 45 days and updated every 90 days.

The Statewide Assessment notes that the department adheres to a family-centered practice philosophy that involves families in planning for the child's stable future. According to the Statewide Assessment, caseworkers distribute a copy of a brochure entitled "A Parent's Guide to Working with Child Protective Services." However, some caseworkers are not consistent in their explanation of the case planning process, especially with regard to the family's involvement, due to an emphasis on ensuring safety and a failure to provide detail regarding parents' rights and responsibilities.

The Statewide Assessment reports that the OPQI QAR showed that the agency appropriately involved children and parents in case planning in 69 percent of 120 cases reviewed during the 2007 review period, representing a decrease in performance from 76 percent of 185 cases reviewed during the 2005-2006 review period.

The Statewide Assessment indicates that the quality of the MDT varies throughout the State and that some districts do not use the process effectively. The Statewide Assessment acknowledges that caseworkers do not consistently identify and pursue noncustodial parents to ensure that the needs of all family members are considered.

## Stakeholder Interview Information

During the onsite CFSR, stakeholders commenting on this item indicated that family involvement in case planning is inconsistent across the State. Some stakeholders noted that engaging parents in case planning is challenging for caseworkers.

D003501

Additional information on stakeholder perceptions of the case planning process is provided under item 25 in the Systemic Factors section of the report.

**Item 19. Caseworker visits with child**

_____ Strength          __X__ Area Needing Improvement

**Case Review Findings**
Item 19 was applicable for all 65 cases. In conducting the assessment of this item, reviewers were to determine whether the frequency of visits between the caseworkers and children was sufficient to ensure adequate monitoring of the child's safety and well-being and whether visits focused on issues pertinent to case planning, service delivery, and goal attainment. The results of the assessment are presented in the table below.

| Item 19 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 12 | 12 | 12 | 36 | **55** |
| Area Needing Improvement | 5 | 5 | 19 | 29 | **45** |
| **Total Cases** | **17** | **17** | **31** | **65** | |

Item 19 was rated as a Strength in 71 percent of Harrison County cases and GMPS District cases, and 39 percent of Kanawha County cases. The item was rated as a Strength in 70 percent (28 cases) of 40 foster care cases and 32 percent (8 cases) of 25 in-home services cases. The item was rated as a Strength in 62 percent (8 cases) of the 13 Youth Services cases.

Item 19 was rated as a Strength when reviewers determined that the frequency and quality of visits between caseworkers and children were sufficient to ensure adequate monitoring of the child's safety and well-being and to promote attainment of case goals.

Item 19 was rated as an ANI when reviewers determined one or more of the following:
- The frequency of caseworker visits was not sufficient to meet the needs of the child (28 cases).
- The visits did not focus on issues pertinent to case planning, service delivery, and goal attainment (25 cases: this number includes four cases in which visits never occurred during the period under review).

Specific information from the case reviews is presented in the table below.

51

D003502

| Typical Frequency of Caseworker Visits With Child | Foster Care Cases | In-Home Services Cases |
|---|---|---|
| Visits occurred on at least a weekly basis | 1 (2.5%) | 1 (4%) |
| Visits occurred less than weekly but at least twice a month | 2 (5%) | 2 (8%) |
| Visits occurred less than twice a month but at least once a month | 22 (55%) | 6 (24%) |
| Visits occurred less frequently than once a month | 14 (35%) | 13 (52%) |
| Visits never occurred | 1 (2.5%) | 3 (12%) |
| **Total Cases** | **40** | **25** |

**Rating Determination**

Item 19 was assigned an overall rating of ANI. In 55 percent of the cases, reviewers determined that caseworker visits with children were of sufficient frequency and quality. This percentage is less than the 90 percent required for a rating of Strength. This item also was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**

According to the Statewide Assessment, caseworkers are required to visit face-to-face with children at least once per month. The Statewide Assessment notes that caseworker training emphasizes strategies to ensure the quality of caseworker visits.

The Statewide Assessment reports that the OPQI QAR showed that caseworkers visit regularly with children in 37 percent of 120 cases reviewed during the 2007 review period, representing an improvement from 35 percent of 185 cases reviewed during the 2005-2006 review period.

The Statewide Assessment acknowledges that there is an insufficient number of experienced staff to meet visitation requirements. The Statewide Assessment indicates that some children are removed from their homes because of caseworkers' lack of contact and inability to ensure the children's safety.

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item indicated that caseworkers do not consistently visit monthly with children in foster care or in-home services cases due in part to high caseloads.

**Item 20. Caseworker visits with parents**

_____ Strength        __X__ Area Needing Improvement

D003503

**Case Review Findings**

Item 20 was applicable for 55 (85 percent) of the 65 cases. Cases were not applicable for an assessment of this item if parental rights had been terminated prior to the period under review and parents were no longer involved in the lives of the children. All cases that were not applicable were foster care cases. Reviewers were to assess whether caseworkers' face-to-face contacts with mothers and fathers was of sufficient frequency and quality to promote attainment of case goals and/or ensure the children's safety and well-being. The results of this assessment are presented in the table below.

| Item 20 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 6 | 8 | 6 | 20 | **36** |
| Area Needing Improvement | 9 | 6 | 20 | 35 | **64** |
| **Total Applicable Cases** | **15** | **14** | **26** | **55** | |
| Not Applicable Cases | 2 | 3 | 5 | 10 | |
| **Total Cases** | **17** | **17** | **31** | **65** | |

Item 20 was rated as a Strength in 57 percent of applicable Harrison County cases, 40 percent of applicable GMPS District cases, and 23 percent of applicable Kanawha County cases. The item was rated as a Strength in 47 percent (14 cases) of 30 applicable foster care cases and 24 percent (6 cases) of 25 in-home cases. The item was rated as a Strength in 33 percent (4 cases) of the 12 applicable Youth Services cases.

Item 20 was rated as a Strength when reviewers determined that visits occurred with sufficient frequency to meet the needs of parents and children and that visits focused on issues pertinent to case planning, service delivery, and goal attainment.

Item 20 was rated as an ANI when reviewers determined one or more of the following:
- Visits with the mother were not of sufficient frequency (24 cases).
- Visits with the mother were not of sufficient quality (14 cases).
- Visits with the father were not of sufficient frequency (28 cases).
- Visits with the father were not of sufficient quality (17 cases).

For the 12 applicable Youth Services cases, reviewers determined one or more of the following:
- Visits with the mother were not of sufficient frequency (6 of 11 applicable cases).
- Visits with the mother were not of sufficient quality (two of eight applicable cases).
- Visits with the father were not of sufficient frequency (four of five applicable cases).
- Visits with the father were not of sufficient quality (three of four applicable cases).

D003504

Specific information from the case reviews is presented in the table below.

| Typical Frequency of Caseworker Visits With Parents | Foster Care Cases | | In-Home Services Cases | |
|---|---|---|---|---|
| | Mother | Father | Mother | Father |
| Visits occurred on at least a weekly basis | 0 | 1(5%) | 0 | 0 |
| Visits occurred less than weekly but at least twice a month | 3 (11%) | 1 (5%) | 2 (8%) | 1 (4%) |
| Visits occurred less than twice a month but at least once a month | 13 (46%) | 5 (24%) | 10 (40%) | 5 (22%) |
| Visits occurred less frequently than once a month | 8 (29%) | 10 (48%) | 9 (36%) | 10 (43%) |
| There were no visits during the period under review | 4 (14%) | 4 (19%) | 4 (16%) | 7 (30%) |
| **Total Applicable Cases** | **28** | **21** | **25** | **23** |

**Rating Determination**
Item 20 was assigned an overall rating of ANI. In only 36 percent of the applicable cases, reviewers determined that the frequency and quality of caseworker visits with parents were sufficient to monitor the safety and well-being of the child or promote attainment of case goals. This percentage is less than the 90 percent required for a rating of Strength. This item also was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**
According to the Statewide Assessment, caseworkers are required to visit with parents at least monthly in the parents' homes. The Statewide Assessment notes that the monthly visitation requirement applies to parents of children in the Youth Services programs in addition to parents of children in the CPS program. The Statewide Assessment indicates that meeting with parents during the MDT does not satisfy the requirement to meet with parents in their homes.

The Statewide Assessment notes that caseworker training emphasizes strategies to ensure quality visits with parents. The Statewide Assessment also notes that the department adheres to a family-centered practice philosophy that involves families in planning for a stable future.

The Statewide Assessment reports that the OPQI QAR showed that caseworkers visited with parents with sufficient frequency in 23 percent of 120 cases reviewed during the 2007 review period, representing a decline in performance from 35 percent of 185 cases reviewed during the 2005-2006 review period.

The Statewide Assessment indicates that caseworkers do not consistently provide visitation to parents of children in the Youth Services program.

D003505

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item indicated that caseworkers do not consistently visit monthly with parents in foster care or in-home services cases due in part to high caseloads. Some stakeholders noted that engaging parents is challenging for caseworkers.

**Well-Being Outcome 2**

| Outcome WB2: Children receive appropriate services to meet their educational needs | | | | |
|---|---|---|---|---|
| Number of cases reviewed by the team according to degree of outcome achievement | | | | |
| | **GMPS District** | **Harrison County** | **Kanawha County** | **Total** | **Percent** |
| Substantially Achieved | 11 | 11 | 13 | 35 | **83.3** |
| Partially Achieved | 0 | 0 | 1 | 1 | **2.4** |
| Not Achieved | 0 | 1 | 5 | 6 | **14.3** |
| **Total Applicable Cases** | **11** | **12** | **19** | **42** | |
| Not Applicable Cases | 6 | 5 | 12 | 23 | |
| **Total Cases** | **17** | **17** | **31** | **65** | |

**Status of Well-Being Outcome 2**

West Virginia is not in substantial conformity with Well-Being Outcome 2. The outcome was determined to be substantially achieved in 83.3 percent of applicable cases, which is less than the 95 percent required for substantial conformity. The outcome was substantially achieved in 100 percent of applicable GMPS District cases, 92 percent of applicable Harrison County cases, and 68 percent of applicable Kanawha County cases. The outcome was substantially achieved in 85 percent (29 cases) of 34 applicable foster care cases and 75 percent (6 cases) of 8 applicable in-home services cases. The outcome was substantially achieved in 82 percent (9 cases) of the 11 applicable Youth Services cases.

**Key Concerns From the 2002 CFSR**

The State was not in substantial conformity with Well-Being Outcome 2 in the 2002 CFSR. The following key concerns were identified at that time with regard to meeting the educational needs of children:

- In some cases, necessary education-related services were not provided.
- In some cases, foster parents were not informed about the child's school history and did not receive school records at the time of placement.

D003506

To address these concerns, West Virginia implemented the following strategies in its PIP:

- Obtained school records during the CAPS process, and used school records to improve case planning and to share with placement providers
- Developed a formalized process with Boards of Education for sharing educational records
- Provided interdisciplinary training sessions for caseworkers and educational agency staff
- Utilized handbooks to enhance the MDT process regarding the educational needs of children
- Implemented foster child Journey Placement Notebooks that include educational records

The State met its target goals for this outcome by the end of its PIP implementation period.

**Key Findings of the 2008 CFSR**

The findings of the 2008 CFSR pertaining to the specific item assessed under Well-Being Outcome 2 are presented below.

**Item 21. Educational needs of the child**

_____ Strength        __X__ Area Needing Improvement

**Case Review Findings**
Item 21 was applicable for 42 (65 percent) of the 65 cases reviewed. Cases were not applicable if either of the following applied: children were not of school age, or children in in-home cases did not have service needs pertaining to education-related issues. In assessing this item, reviewers were to determine whether children's educational needs were appropriately assessed and whether services were provided to meet those needs. The results of this assessment are provided below.

| Item 21 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 11 | 11 | 13 | 35 | **83** |
| Area Needing Improvement | 0 | 1 | 6 | 7 | **17** |
| **Total Applicable Cases** | **11** | **12** | **19** | **42** | |
| Not Applicable Cases | 6 | 5 | 12 | 23 | |
| **Total Cases** | **17** | **17** | **31** | **65** | |

Item was rated as a Strength in 100 percent of applicable GMPS District cases, 92 percent of applicable Harrison County cases, and 68 percent of applicable Kanawha County cases. The item was rated as a Strength in 85 percent (29 cases) of 34 applicable foster care

D003507

cases and 75 percent (6 cases) of 8 applicable in-home services cases. The item was rated as a Strength in 82 percent (9 cases) of the 11 applicable Youth Services cases.

Item 21 was rated as a Strength when reviewers found that the agency appropriately assessed and addressed the educational needs of children. Examples of ways in which CPS ensured that children's educational needs were met include one or more of the following:
- The agency assessed the child's educational needs and maintained contact with the child's school in order to monitor the child's school performance (12 cases).
- The agency assessed the child's educational needs and ensured that an Individual Educational Plan was in place (12 cases).
- The agency assessed the child's educational needs and ensured that truancy issues were effectively addressed (six cases).
- The agency assessed the child's educational needs and ensured that the child had access to a General Education Degree program (six cases).
- The agency assessed the child's educational needs and ensured that the child had access to a Head Start or Birth-to-Three program (six cases).

Item 21 was rated as an ANI when reviewers determined one or more of the following:
- Educational needs were identified and noted in the case record, but the agency did not follow up to ensure that recommended treatment was in place (five cases).
- The agency did not sufficiently assess or address the child's educational needs (six cases).

**Rating Determination**
Item 21 was assigned an overall rating of ANI. In 83 percent of the applicable cases, reviewers determined that the agency had made diligent efforts to meet the educational needs of children. This percentage is less than the 95 percent required for a rating of Strength for this item. A 95-percent standard is set for this item because it is the only item assessed for the outcome. This item also was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**
According to the Statewide Assessment, Department policy requires that educational issues be discussed during the MDT. The Statewide Assessment notes that the department may support youth who are continuing their education up to age 21 through the foster care program and that Chafee Foster Care Independence Program funds are available to support higher education.

The Statewide Assessment reports that caseworkers use the CAPS protocol and Journey Placement Notebooks to assess and track the educational progress for children and youth. The Statewide Assessment notes that the GMPS District developed a program of "courtesy MDT" with the school district to address truancy issues among youth.

D003508

The Statewide Assessment reports that the OPQI QAR showed that the agency appropriately considered and addressed children's educational needs in 69 percent of 120 cases reviewed during the 2007 review period, representing a decline in performance from 76 percent of 185 cases reviewed during the 2005-2006 review period.

The Statewide Assessment indicates that the use of CAPS and the Journey Placement Notebooks is inconsistent throughout the State. The Statewide Assessment notes that some schools will not permit CPS caseworkers to have access to children during school hours, and other schools insist on having a faculty member present during the interview.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item at the State level indicated that the State's Out-of-Home Task Force found that 50 percent of the population of foster children changed schools, compared to only 2 percent of the general population. The Task Force has arranged for web-based training to be provided to DHHR staff regarding the McKinney-Vento Act to clarify caseworkers' understanding of the rights of the child related to education. The Task Force also is providing training to all teachers regarding identifying the unique needs of children in foster care. State-level stakeholders reported that there is a Memorandum of Understanding between BCF and DOE that is helping to ensure that children receive appropriate special education services.

Some stakeholders in the GMPS District noted that education representatives participate on the MDT.

**Well-Being Outcome 3**

| Outcome WB3: Children receive adequate services to meet their physical and mental health needs | | | | | |
|---|---|---|---|---|---|
| Number of cases reviewed by the team according to degree of outcome achievement | | | | | |
| | GMPS District | Harrison County | Kanawha County | Total | Percent |
| Substantially Achieved | 13 | 13 | 15 | 41 | **68.3** |
| Partially Achieved | 0 | 3 | 2 | 5 | **8.3** |
| Not Achieved or Addressed | 2 | 1 | 11 | 14 | **23.3** |
| **Total Applicable Cases** | **15** | **17** | **28** | **60** | |
| Not Applicable Cases | 2 | 0 | 3 | 5 | |
| **Total Cases** | **17** | **17** | **31** | **65** | |

**Status of Well-Being Outcome 3**

West Virginia is not in substantial conformity with Well-Being Outcome 3. The outcome was determined to be substantially achieved in 68.3 percent of applicable cases, which is less than the 95 percent required for substantial conformity. The outcome was

D003509

substantially achieved in 87 percent of applicable GMPS District cases, 76 percent of the Harrison County cases, and 54 percent of applicable Kanawha County cases. The outcome was substantially achieved in 82.5 percent (33 cases) of 40 foster care cases and 40 percent (8 cases) of 20 applicable in-home services cases. The outcome was substantially achieved in 77 percent (10 cases) of the 13 Youth Services cases.

## Key Concerns From the 2002 CFSR

The State was not in substantial conformity with Well-Being Outcome 3 during the 2002 CFSR. The following key concerns were identified at that time with respect to the State's ability to meet the physical and mental health needs of children:

- The State did not consistently provide for comprehensive physical health needs of children, in part due to poor documentation.
- The State did not consistently provide for mental health needs of children due to the lack of behavioral health services, a lack of documentation, and a lack of follow-up to determine whether needed services were provided.

To address these concerns, West Virginia implemented the following strategies in its PIP:

- Developed a standard for documentation and ongoing supervisory conferences regarding the medical health needs and services provided to children
- Implemented foster child Journey Placement Notebooks that include documentation of physical, mental, and behavioral health
- Conducted a service array assessment to identify where and what children's mental and behavioral health resources are available or lacking

The State met its target goals for this outcome by the end of its PIP implementation period.

## Key Findings of the 2008 CFSR

Findings of the 2008 CFSR pertaining to the items assessed under Well-Being Outcome 3 are presented below.

## Item 22. Physical health of the child

_____ Strength     __X__ Area Needing Improvement

## Case Review Findings

Item 22 was applicable for 47 (72 percent) of the 65 cases reviewed. Cases that were not applicable were in-home services cases in which physical health concerns were not an issue. In assessing this item, reviewers were to determine whether children's physical and dental health needs had been appropriately assessed, and the services designed to meet those needs had been, or were being, provided. The findings of this assessment are presented in the table below.

59

D003510

| Item 22 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 12 | 12 | 13 | 37 | **79** |
| Area Needing Improvement | 1 | 1 | 8 | 10 | **21** |
| **Total Applicable Cases** | **13** | **13** | **21** | **47** | |
| Not Applicable Cases | 4 | 4 | 10 | 18 | |
| **Total Cases** | **17** | **17** | **31** | **65** | |

Item 22 was rated as a Strength in 92 percent of applicable GMPS District and Harrison County cases, and 62 percent of applicable Kanawha County cases. The item was rated as a Strength in 82 percent (32 cases) of 39 applicable foster care cases and 62.5 percent (5 cases) of 8 applicable in-home services cases. The item was rated as a Strength in 80 percent (8 cases) of the 10 applicable Youth Services cases.

Item 22 was rated as a Strength in 37 cases when reviewers determined that children's medical and dental health needs were routinely assessed, and services were provided as needed. Item 22 was rated as an ANI when reviewers determined one or both of the following:
- The agency did not assess and/or address the child's medical health needs (seven cases).
- The agency did not assess and/or address the child's dental health needs (seven cases).

**Rating Determination**
Item 22 was assigned an overall rating of ANI. In 79 percent of the applicable cases, reviewers determined that the agency was adequately addressing the health needs of children. This percentage is less than the 90 percent required for a rating of Strength. This item also was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**
According to the Statewide Assessment, every child in foster care is required to be examined within 72 hours of entering foster care through HealthCheck, the Early Periodic Screening Diagnosis and Treatment Program. The Statewide Assessment notes that HealthCheck includes a dental assessment and that caseworkers are responsible for ensuring that necessary follow-up medical or dental care is provided.

The Statewide Assessment reports that the OPQI QAR showed that children's medical and dental health needs were addressed in 81 percent of 120 cases reviewed during the 2007 review period, representing a decline in performance from 91 percent of 185 cases reviewed during the 2005-2006 review period.

D003511

The Statewide Assessment indicates that although medical and dental care is tracked in the Journey Placement Notebooks, the use of the Journey Placement Notebooks is inconsistent throughout the State, particularly when a child is in a relative placement.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item in Harrison County indicated that medical and dental needs are routinely met for children. Some stakeholders interviewed in the GMPS District indicated that there is an insufficient number of dental service providers. Stakeholders at the State level reported concerns that it is very difficult for youth who are transitioning out of care to receive medical coverage after age 19 due to Medicaid restrictions.

**Item 23. Mental health of the child**

\_\_\_\_\_ Strength        \_\_X\_\_ Area Needing Improvement

**Case Review Findings**
Item 23 was applicable for 48 (74 percent) of the 65 cases reviewed. Cases were not applicable if the child was too young for an assessment of mental health needs or if there were no mental health concerns. In assessing this item, reviewers were to determine whether mental health needs had been appropriately assessed and whether appropriate services to address those needs had been offered or provided. The findings of this assessment are presented in the table below.

| Item 23 | GMPS District | Harrison County | Kanawha County | Total | Percent |
|---|---|---|---|---|---|
| Strength | 10 | 11 | 14 | 35 | **73** |
| Area Needing Improvement | 1 | 3 | 9 | 13 | **27** |
| **Total Applicable Cases** | **11** | **14** | **23** | **48** | |
| Not Applicable Cases | 6 | 3 | 8 | 17 | |
| **Total Cases** | **17** | **17** | **31** | **65** | |

Item 23 was rated as a Strength in 91 percent of applicable GMPS District cases, 79 percent of applicable Harrison County cases, and 61 percent of applicable Kanawha County cases. The item was rated as a Strength in 88 percent (29 cases) of 33 applicable foster care cases and 40 percent (6 cases) of 15 applicable in-home services cases. The item was rated as a Strength in 85 percent (11 cases) of the 13 Youth Services cases.

Item 23 was rated as a Strength when reviewers determined that children's mental health needs were appropriately assessed and the identified mental health needs were addressed. Item 23 was rated as an ANI when reviewers determined the following:

D003512

- Mental health needs were neither assessed nor addressed (nine cases).
- Mental health needs were assessed but not properly addressed (three cases).
- Mental health needs were not appropriately assessed; however, the agency provided some services to address mental health concerns (one case).

Reviewers noted that unmet service needs included sexual abuse treatment, grief counseling, individual therapy, family therapy, domestic violence treatment, and mental health assessments for children with developmental disabilities.

**Ratings Determination**

Item 23 was assigned an overall rating of ANI. In 73 percent of the applicable cases, reviewers determined that the agency had made concerted efforts to address the mental health needs of children. This percentage is less than the 90 percent required for a rating of Strength. This item also was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**

According to the Statewide Assessment, children's mental health needs may be identified at the point of referral, during the HealthCheck screen, during the CAPS assessment, or during the MDT. The Statewide Assessment notes that mental health issues are addressed using contractor agencies and local Community Behavioral Health Centers.

The Statewide Assessment reports that the OPQI QAR showed that children's mental health needs were appropriately addressed in 63 percent of 120 cases reviewed during the 2007 review period, representing a decline in performance from 72 percent of 185 cases reviewed during the 2005-2006 review period.

The Statewide Assessment indicates that although mental health care is tracked in the Journey Placement Notebooks, the use of the Journey Placement Notebooks is inconsistent throughout the State, particularly when a child is in a relative placement. The Statewide Assessment also indicates that caseworkers do not follow up appropriately with placement providers to ensure that needed mental health services are being provided.

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item indicated that a SOC model is used throughout the State to deliver coordinated mental health services. Some stakeholders indicated that there are children with mental health needs who are not receiving services due in part to a lack of adequate assessment and a lack of available services. Some stakeholders in the GMPS District noted that mental health service providers participate on the MDT.

D003513

## SECTION B: SYSTEMIC FACTORS

This section of the CFSR Final Report provides information regarding the State's substantial conformity with the seven systemic factors examined during the CFSR. Information on the items included under each systemic factor comes from the Statewide Assessment and from interviews with stakeholders held during the onsite CFSR. It should be noted that ratings for the systemic factors are not based on single comments from an individual stakeholder. However, these comments are included in the report when they provide important insight or clarification regarding the State's performance on a particular systemic factor.

A score for substantial conformity is established for each systemic factor. Scores of 3 and 4 represent substantial conformity. Score of 1 and 2 mean that the State is not in substantial conformity with the requirements of that systemic factor. Specifically, a score of 4 is given when all of the Child and Family Services Plan (CFSP) or program requirements are in place and functioning as described in each requirement. A score of 3 is given when all of the CFSP or program requirements are in place and no more than one of the requirements fails to function as described in each requirement. A score of 2 indicates that some or all of the CFSP or program requirements are in place but more than one of the requirements fail to function as described in each requirement. A score of 1 indicates that none of the CFSP or program requirements are in place.

| Rating the Systemic Factor | | | |
|---|---|---|---|
| Not in Substantial Conformity | | Substantial Conformity | |
| 1 | 2 | 3 | 4 |
| None of the CFSP or program requirements are in place. | Some or all of the CFSP or program requirements are in place, but more than one of the requirements fail to function as described in each requirement. | All of the CFSP or program requirements are in place, and no more than one of the requirements fails to function as described in each requirement. | All of the CFSP or program requirements are in place and functioning as described in each requirement. |

Information also is provided regarding the State's performance on each systemic factor for the State's first CFSR. If the systemic factor was part of the State's PIP, the key concerns addressed in the PIP and the strategies for addressing those concerns are noted.

D003514

## I. STATEWIDE INFORMATION SYSTEM

| Rating of Review Team Regarding Substantial Conformity | | | | |
|---|---|---|---|---|
| | Not in Substantial Conformity | | Substantial Conformity | |
| **Rating** | 1 | 2 | 3 | **4X** |

### Status of Statewide Information System

West Virginia is in substantial conformity with the systemic factor of Statewide Information System. The West Virginia statewide automated child welfare information system is called FACTS. West Virginia also was in substantial conformity with this systemic factor in the 2002 CFSR and, therefore, the State was not required to address this factor in its PIP.

### Key Findings of the 2008 CFSR

Findings of the 2008 CFSR for the specific item assessed for this factor are presented below.

### Item 24. The State is operating a Statewide Information System that, at a minimum, can readily identify the status, demographic characteristics, location, and goals for the placement of every child who is (or, within the immediately preceding 12 months, has been) in foster care

__X__ Strength            _____ Area Needing Improvement

Item 24 is rated as a Strength. The West Virginia FACTS can readily identify the legal status, demographic characteristics, location, and goals for the placement of every child who is in foster care. Stakeholders commented that all districts have the same access to the data system, caseworkers enter data in real time, and critical information on children in foster care is readily accessible. Stakeholders reported that placement information for children in private facilities who are in the custody of the State also is captured in FACTS. This item also was rated as a Strength in the State's 2002 CFSR.

### Statewide Assessment Information

According to the Statewide Assessment, FACTS is a comprehensive case management system for social workers to strengthen the documentation of case activity for the families and children served by BCF. The Statewide Assessment notes that FACTS tracks the status, demographic characteristics, location, and goals for children in foster care. The Statewide Assessment reports that FACTS training is incorporated into policy training for new caseworkers and supervisors on an ongoing basis.

D003515

The Statewide Assessment acknowledges that data quality, completeness, and integrity continue to be a challenge for the State and that Adoption and Foster Care Reporting and Analysis System reports continue to contain errors. The Statewide Assessment notes that the State is addressing this problem with the implementation of a web-based application and FACTS to Go, a pair of wireless data-input devices. The Statewide Assessment notes that the online application provides greater access to information and that FACTS to Go features the use of tablet PCs and digital pens to provide access to FACTS from the field. In addition, the Statewide Assessment notes that speech recognition software is being implemented in some districts of the State for caseworkers in the field to ease and speed documentation requirements.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item reported that FACTS provides information such as legal status, demographic characteristics, location, and goals for the placement of every child in foster care. Stakeholders commented that all districts have the same access to FACTS, caseworkers enter data in real time, and critical information on children in foster care is readily accessible. Stakeholders reported that placement information for children in private facilities who are in the custody of the State also is captured in FACTS.

Stakeholders across the sites expressed concerns with timely and accurate data entry; however, these concerns did not pertain to the identification of critical information regarding children. Some stakeholders attributed the data challenges to large caseloads carried by caseworkers as well as difficulties in navigating the current information system. It was reported that caseworkers do not always know where to enter certain case information in the system. Another concern noted by stakeholders related to merging and association of cases.

## II. CASE REVIEW SYSTEM

| Rating of Review Team Regarding Substantial Conformity | | | | |
|---|---|---|---|---|
| | **Not in Substantial Conformity** | | **Substantial Conformity** | |
| **Rating** | 1 | **2X** | 3 | 4 |

**Status of Case Review System**

West Virginia is not in substantial conformity with the systemic factor of Case Review System.

D003516

**Key Concerns From the 2002 CFSR**

West Virginia was not in substantial conformity with this systemic factor in its 2002 CFSR and, therefore, was required to address this factor in its PIP. The following key concerns were identified at that time with regard to the State's case review system:

- The State did not have a process to document written case plans for each child in foster care jointly developed with the parents (item 25).
- The State did not provide timely periodic reviews of foster care cases (item 26).
- The State did not provide timely permanency hearings for children in foster care, especially for children with TPR (item 27).
- The State did not consistently provide notifications of hearings or opportunities to be heard for foster parents, pre-adoptive parents, and relative caregivers (item 29).

To address these concerns, West Virginia executed the following strategies in its PIP:

- Implemented CAPS
- Implemented a review process to determine family, children, and foster parent involvement in the MDT process
- Assigned child, youth, and family consultants regionally to develop work plans, including ongoing identification of training, to address all requirements within case planning and case review systems
- Developed a process guide for periodic reviews of the status of each child

The State met its target goals for this outcome by the end of its PIP implementation period.

**Key Findings of the 2008 CFSR**

Findings of the 2008 CFSR with regard to the specific items assessed for this factor are presented below.

**Item 25. The State provides a process that ensures that each child has a written case plan to be developed jointly with the child's parent(s) that includes the required provisions**

_____ Strength          __X__ Area Needing Improvement

Item 25 is rated as an ANI. While the State has developed a process for engaging parents in case planning through the use of the MDT meeting, it is not consistently implemented across all jurisdictions within the State. Therefore, the State cannot ensure that each child, including a child receiving Youth Services, has a written case plan that is developed jointly with the child's parents. This item also was rated as an ANI in the State's 2002 CFSR.

D003517

The findings of the Onsite Review in regard to child and family involvement in case planning (item 18) show that this item was rated as a Strength in 53 percent of the applicable cases. Item 18 was rated as an ANI in 47 percent of the applicable cases reviewed. Out of 62 applicable cases, the rating was due to the lack of involvement of one or both of the following: 53 percent (24 cases) of fathers and 30 percent (16 cases) of mothers.

**Statewide Assessment Information**

According to the Statewide Assessment, West Virginia law and department policy require that the family case plan must be filed within 30 days of the filing of a child abuse/neglect petition and that the case plan must be created by the MDT. The MDT meets every 90 days until permanency is achieved. Members of the MDT must include the child's custodial parent(s) and/or guardian(s) in addition to other key stakeholders and service providers. The Statewide Assessment also notes that for in-home cases, the treatment plan must be developed within 45 days of the completion of the initial assessment and must be updated every 90 days or in the event of a significant change in circumstances.

According to the Statewide Assessment, the OPQI QAR showed that the agency appropriately involved children and parents in case planning in 69 percent of 120 cases reviewed during the 2007 review period, representing a decrease in performance from 76 percent of 185 cases reviewed during the 2005-2006 review period. According to the Statewide Assessment, OPQI QARs document inconsistencies in the inclusion of parents in the MDT case planning process. OPQI QARs also noted that the lack of effective involvement of parents is particularly evident in some Youth Services cases. The Statewide Assessment reports that a Court Improvement Program (CIP) study of MDT statewide showed the following consistent problems in the nine counties:
- A lack of unanimity or consensus in MDT outcomes
- Difficulties in maximizing participation of all contributors
- Varying practices in facilitation

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item reported that MDT meetings are held regularly for children in foster care, that case plans are developed in a timely manner, and that parents are invited to the MDT meetings. Some stakeholders in the GMPS District and Harrison County indicated that MDT meetings are held monthly for court cases and that they are meaningful in the development and monitoring of individualized case plans.

Despite these positive comments, stakeholders at the State level and in Harrison County and Kanawha County reported that engagement of parents in case planning through MDT meetings is not consistent. Stakeholders in Kanawha County and Harrison County reported that case plans for in-home cases are not always developed in a timely manner due to the focus on court cases. Some stakeholders in Kanawha County indicated that the MDT is routinely held at the court and that this practice can negatively affect the quality and effectiveness of the case planning process in terms of parental involvement.

D003518

**Item 26. The State provides a process for the periodic review of the status of each child, no less frequently than once every 6 months, either by a court or by administrative review**

__X__ Strength        _____ Area Needing Improvement

Item 26 is rated as a Strength. The State's process for the periodic review of the status of each child, the administrative foster care review hearing, is held every 3 months. In West Virginia, the administrative foster care review hearing is a permanency hearing. Although the State did not provide data regarding the frequency with which periodic reviews are conducted, the title IV-E Eligibility Review held in April 2008 found that many children achieve permanency on a timely basis due to frequent court hearings in which cases are thoroughly reviewed. This item was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**
According to the Statewide Assessment, State law requires that a status conference must be held within 60 days of the granting of a pre- or post-adjudicatory improvement period or within 90 days if the court requires the department to file a progress report. The Statewide Assessment reports that, if the court finds that the department is not required to make reasonable efforts to preserve the family, then a permanency hearing must be held within 30 days and every 3 calendar months thereafter until a permanent placement is achieved. In addition, the Statewide Assessment reports that administrative foster care reviews must take place at least every 3 months and may be combined with the permanent placement review conferences.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item across the State and at the State level reported that cases are reviewed in court every 90 days in order to review progress on the case and the case plan. Some stakeholders in Kanawha County noted that hearings do not consistently focus on achieving timely permanency for children.

**Item 27. The State provides a process that ensures that each child in foster care under the supervision of the State has a permanency hearing in a qualified court or administrative body no later than 12 months from the date the child entered foster care and no less frequently than every 12 months thereafter**

__X__ Strength        _____ Area Needing Improvement

Item 27 is rated as a Strength because the courts conduct permanency hearings no later than 12 months from the date the child entered foster care and the hearings focus on achieving permanency for children. In West Virginia, the administrative foster care review hearing, held every 3 months, is a permanency hearing. Although the State did not provide data regarding the frequency with which permanency hearings are held, the title IV-E Eligibility Review held in April 2008 found that the administrative foster care review hearings were being held in court within required timeframes in 100 percent of the 80 cases sampled. This item was rated as an ANI in the State's 2002 CFSR.

D003519

**Statewide Assessment Information**

According to the Statewide Assessment, if the court finds that the department is not required to make reasonable efforts to preserve the family, then a permanency hearing must be held within 30 days and every 3 calendar months thereafter until a permanent placement is achieved. The Statewide Assessment reports that, if the court finds that reasonable efforts must be made by the department to preserve the family, then a permanency hearing must be conducted within 1 year from the date the child entered foster care.

The Statewide Assessment notes that the department is required to place a child in a permanent placement within 90 days of the entry of a final termination order for both parents.

The Statewide Assessment also notes that district managers and regional attorneys are required to meet quarterly with circuit court judges to address issues pertaining to the review process.

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item indicated that the court reviews permanency and the appropriateness of permanency goals at every review hearing (held every 90 days). Some stakeholders in the GMPS District noted that permanency hearings continue to be held every 90 days for children for whom parental rights have been terminated. Some stakeholders in Harrison County noted that 90-day hearings focus on achieving permanency for children. However, some stakeholders in Kanawha County noted that hearings do not consistently focus on achieving timely permanency for children.

State-level stakeholders described the CIP development of two statewide systems: the Juvenile Abuse and Neglect Information System, which facilitates and expedites the handling of child abuse and neglect cases by standardizing court orders and motions; and the Juvenile Delinquent Information System, which facilitates and expedites the drafting of court orders in juvenile delinquency cases in which the agency has custody. Data from the systems will be used to monitor the status of cases and timeliness of hearings.

**Item 28. The State provides a process for termination of parental rights proceedings in accordance with the provisions of the Adoption and Safe Families Act**

__X__ Strength          _____ Area Needing Improvement

Item 28 is rated as a Strength because the State has a process to file TPR petitions in accordance with the provisions of ASFA. Stakeholders reported that TPR petitions are filed timely and that compelling reasons are routinely examined in court for cases older than 15 months. There were no concerns about the State's process for TPR proceedings noted in the Statewide Assessment or in stakeholder interviews. This item also was rated as a Strength in the State's 2002 CFSR.

D003520

**Statewide Assessment Information**

According to the Statewide Assessment, the State is required to file a petition for TPR if a child has been in foster care for 15 of the most recent 22 months, if the child is abandoned, or if the parent has committed specific violent crimes. The Statewide Assessment reports that the department may determine that it is not in the best interests of the child to file a TPR petition if one of the following compelling reasons is documented: the child is placed with a relative, the child expresses a preference regarding custody, or if the department has not provided the services necessary to the child's family for the safe return of the child to the home.

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item across the sites reported that TPR petitions are filed timely and that compelling reasons are routinely examined in court for cases older than 15 months. Some stakeholders noted that TPR is not generally considered to be appropriate for youth and that, for youth, caseworkers focus on independent living.

Some stakeholders in Harrison County noted that families generally reunify within 1 year and that, in cases that go beyond 1 year, a TPR petition is generally filed. Some stakeholders in the GMPS District noted that permanency hearings continue to be held every 90 days for children for whom parental rights have been terminated.

**Item 29. The State provides a process for foster parents, pre-adoptive parents, and relative caregivers of children in foster care to be notified of, and have an opportunity to be heard in, any review or hearing held with respect to the child**

_____Strength            __X__ Area Needing Improvement

Item 29 is rated as an ANI because the Statewide Assessment and stakeholders reported that the State does not consistently provide notice to foster parents or the opportunity to be heard in reviews and hearings held with respect to the child. This item also was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**

According to the Statewide Assessment, Department policy requires that foster parents, pre-adoptive parents, and relative caregivers shall be included in the definition of "persons entitled to notice and the opportunity to be heard." The Statewide Assessment notes that staff are required to provide prosecuting attorneys with necessary notification information and caseworkers are required to follow up on notification with all parties to ensure that the opportunity to participate is extended.

According to the Statewide Assessment, OPQI QARs and stakeholders indicate that foster parents and relative caregivers do not consistently receive notice to attend court hearings and MDT meetings.

D003521

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item reported that the agency does not consistently provide notice of court hearings to foster parents or provide an opportunity for foster parents to be heard in court hearings. Some stakeholders in Kanawha County noted that foster parents are not always permitted to participate in court hearings when they do attend.


## III. QUALITY ASSURANCE SYSTEM

| Rating of Review Team Regarding Substantial Conformity | | | | |
|---|---|---|---|---|
| | **Not in Substantial Conformity** | | **Substantial Conformity** | |
| **Rating** | 1 | 2 | **3X** | 4 |

**Status of Quality Assurance System**

West Virginia is in substantial conformity with the systemic factor of Quality Assurance (QA) System. The State also was in substantial conformity with this systemic factor in the State's 2002 CFSR and, therefore, was not required to address this factor in its PIP.

**Key Findings of the 2008 CFSR**

Findings of the 2008 CFSR with regard to the specific items assessed for this factor are presented below.

**Item 30. The State has developed and implemented standards to ensure that children in foster care are provided quality services that protect the safety and health of the children**

__X__ Strength          _____ Area Needing Improvement

Item 30 is rated as a Strength because the State has implemented effective standards to protect the safety and health of children that are consistent with national standards and approved by the Council on Accreditation. The State's current regulations and policy in CPS, Youth Services, and foster care are current with changes in Federal law, regulations, and best practice standards. This item also was rated as a Strength in the State's 2002 CFSR.

D003522

**Statewide Assessment Information**

According to the Statewide Assessment, BCF standards for foster and adoptive homes are consistent with recommended national standards approved by the Council on Accreditation. The Statewide Assessment notes that specialized foster care homes and residential facilities are licensed by two sets of regulations—one set regulates State foster and adoptive placements, and the second regulates private-sector agencies. The Statewide Assessment notes that, in addition to a license, a placement must be reviewed and relicensed every 2 years and that provisional licenses are available only for a 6-month period.

Complaints regarding the treatment and care of children in out-of-home placements come through a centralized hotline and are first reviewed to determine if they meet the legal mandates of abuse and neglect. If the allegations rise to the level of child abuse or neglect, the referral is sent to the Institutional Investigation Unit (IIU) for full investigation. If the allegations speak of compliance or quality of life issues, the referral is directed to the licensing specialist for a follow-up. If maltreatment is substantiated against a foster parent or an employee of a specialized foster care agency, that individual must be relieved of his or her duties immediately. Any service deficiencies found as a result of either an IIU investigation or a licensing visit will be corrected by the agency using a Corrective Action Plan, which is due within no more than 30 days of identification of the deficiency.

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item across the sites expressed the opinion that face-to-face contact with children in foster care protects their safety. Some stakeholders in Harrison County reported that allegations of abuse or neglect of children in out-of-home care are investigated jointly with licensing staff. Some stakeholders in Kanawha County indicated that, in addition to visitation with the child, the MDT provides caseworkers with the opportunity to regularly monitor foster families. However, other stakeholders in Kanawha County noted that caseworkers are not provided with clear expectations regarding visitation.

**Item 31. The State is operating an identifiable quality assurance system that is in place in the jurisdictions where the services included in the Child and Family Services Plan (CFSP) are provided, evaluates the quality of services, identifies strengths and needs of the service delivery system, provides relevant reports, and evaluates program improvement measures implemented**

\_\_X\_\_ Strength          \_\_\_\_\_ Area Needing Improvement

Item 31 is rated as a Strength. The State is operating an identifiable QA system modeled after the CFSR that evaluates the quality of services, identifies strengths and needs of the service delivery system, and is being used in program improvement efforts. However, the Statewide Assessment and stakeholders noted that there are inconsistencies at the local level in ensuring that district-level PIP strategies lead to program improvement. This item also was rated as a Strength in the State's 2002 CFSR.

**Statewide Assessment Information**

According to the Statewide Assessment, the OPQI develops outcomes, monitoring, and local PIPs. OPQI conducts QARs modeled after the CFSR in every district statewide on an annual basis. The Statewide Assessment notes that the OPQI QAR includes surveys,

D003523

case-level interviews, and stakeholder focus groups. The Statewide Assessment reports that PIPs are formulated and implemented based on the individual results of each district's review and they are reviewed quarterly by OPQI staff for compliance. However, the Statewide Assessment notes that the implementation of the district-level PIPs is a learning process and that staff are not consistently involved in program monitoring and improvement beyond the development of the PIP. According to the Statewide Assessment, quality councils are in operation but are not used consistently to promote improvements in practice across the State.

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item across the sites and at the State level reported that the OPQI QARs occur annually and are generally a good process for gathering information to evaluate the child welfare system. However, some stakeholders noted concerns with the lack of follow-through after PIP strategies are developed to ensure resulting improvements are occurring. Some stakeholders in Kanawha County indicated that FACTS reports are not useful for conducting ongoing QA due to the format of the reports and a lack of instruction on how to use them. Stakeholders also indicated that caseworkers are not always informed about how various management reports are being used although they are required to complete them. Some stakeholders in Kanawha County and Harrison County expressed a desire to see more peer reviews included as a part of ongoing QA efforts.

Several stakeholders across the sites reported that the child welfare consultant provides direction regarding practice and policy. Some stakeholders in the GMPS District and Kanawha County noted that supervisors conduct regular staffings of all cases to track timelines and progress.

## IV. TRAINING

| Rating of Review Team Regarding Substantial Conformity | | | | |
|---|---|---|---|---|
| | **Not in Substantial Conformity** | | **Substantial Conformity** | |
| **Rating** | 1 | 2 | 3 | **4X** |

**Status of Training**

West Virginia is in substantial conformity with the systemic factor of Training. The State also was in substantial conformity with this factor in the 2002 CFSR and, therefore, was not required to address this factor in its PIP.

**Key Findings of the 2008 CFSR**

Findings of the 2008 CFSR with regard to the specific items assessed for this factor are presented below.

D003524

**Item 32. The State is operating a staff development and training program that supports the goals and objectives in the CFSP, addresses services provided under titles IV-B and IV-E, and provides initial training for all staff who deliver these services**

__X__ Strength          _____ Area Needing Improvement

Item 32 is rated as a Strength because West Virginia is operating an effective staff development and training program for all staff that supports the goals and objectives of the CFSP, and addresses services provided under titles IV-B and IV-E. Caseworkers receive both classroom and field training and are fully trained prior to receiving a full caseload. This item also was rated as a Strength in the State's 2002 CFSR.

**Statewide Assessment Information**

According to the Statewide Assessment, the BCF Division of Training (DOT) provides oversight, coordination, and delivery of training for caseworkers, supervisors, and foster and adoptive parents. The Statewide Assessment reports that DOT contracts with external training providers including: the Social Work Education Consortium, the West Virginia University Curriculum Education Division, and the West Virginia Coalition Against Domestic Violence. The Statewide Assessment notes that BCF received accreditation from the Council on Accreditation.

The Statewide Assessment reports that adoption, Youth Services, and homefinding caseworkers are required to complete 11 weeks and CPS caseworkers are required to complete 13 weeks of initial training that is a combination of classroom and on-the-job training activities. The Statewide Assessment notes that caseworkers receive a limited caseload after initial training and that in-service training continues throughout the first year. The Statewide Assessment also notes that New Worker Training includes mandatory domestic violence and substance abuse training.

The Statewide Assessment notes that staff recruitment and retention account for inconsistency in practice throughout the child welfare system. The Statewide Assessment reports that the vacancy rate in 2007 for the position of CPS Worker was 29 percent and the vacancy rate in 2007 for the position of Social Services Worker was 36 percent. The Statewide Assessment indicates that high turnover rates present challenges in meeting the ongoing need for new staff training. The Statewide Assessment notes that staffing has increased by 200 people since the last CFSR and that recruitment of new staff includes competitive salary scales to address retention problems.

In addition, the Statewide Assessment reports that OPQI QAR findings document a lack of consistent supervisory skills required to mentor and develop caseworker skills. Although the State provides supervisory training, the Statewide Assessment attributes the lack of supervisory competencies to a disproportionate number of supervisors with little tenure.

D003525

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item across the sites and at the State level reported that 13 weeks of training must be completed for new caseworkers before they receive caseloads. Some stakeholders noted that new caseworkers shadow mentor caseworkers and participate in field training in addition to classroom training. Some stakeholders noted that training is tracked in FACTS and that caseworkers must complete a post-training test prior to accepting a caseload. Stakeholders reported that last year 80.9 percent of caseworkers completed pre-service training prior to receiving a caseload.

Some stakeholders across the sites and at the State level noted that supervisors receive generic supervisory training but do not receive child welfare-focused training. Some stakeholders in Harrison County and Kanawha County noted that caseworkers do not receive adequate training on court issues and some stakeholders in Kanawha County noted that caseworkers do not receive specialized training in youth issues or adoption.

**Item 33. The State provides for ongoing training for staff that addresses the skills and knowledge base needed to carry out their duties with regard to the services included in the CFSP**

___X___ Strength        _____ Area Needing Improvement

Item 33 is rated as a Strength because the State requires caseworkers to be licensed social workers and requires that caseworkers maintain their social work license through 50 hours of continuing education every 2 years. In addition, the State provides ongoing training in collaboration with community partners on emerging issues. This item was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**

According to the Statewide Assessment, all child welfare staff are required to complete in-service training related to: program, policy, and systems changes; new initiatives; and corrective action training identified through QARs. The Statewide Assessment notes that all child welfare caseworkers are required to be licensed social workers and that, to maintain a license, caseworkers are required to receive 50 hours of continuing education each 2-year licensing period.

The Statewide Assessment reports that ongoing training is provided by BCF and DOT in conferences and through web-based training applications. In addition, the Statewide Assessment notes that training on policy and emerging issues is provided through a statewide training initiative involving community providers. For example, the Statewide Assessment notes that the CIP developed and provides cross-training for legal professionals and caseworkers in a 2-day seminar at three sites each year. The Statewide Assessment indicates that there is a need for additional opportunities for ongoing staff training.

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item across the sites and at the State level reported that the State requires caseworkers to maintain an active license to practice social work. Some stakeholders reported that 25 hours of ongoing training per

D003526

year is required to maintain an active license. Stakeholders noted that DOT is responsive to requests for training and provides training on topical issues.

Some stakeholders reported that there is infrequent training for supervisors and in substance abuse issues.

**Item 34. The State provides training for current or prospective foster parents, adoptive parents, and staff of State licensed or approved facilities that care for children receiving foster care or adoption assistance under title IV-E that addresses the skills and knowledge base needed to carry out their duties with regard to foster and adopted children**

__X__ Strength          _____ Area Needing Improvement

Item 34 is rated as a Strength because the State requires that all foster and adoptive parents complete mandatory training that addresses the skills and knowledge base needed to carry out their duties. Training is conducted using the PRIDE curriculum in all regions of the State. This item also was rated as a Strength in the State's 2002 CFSR.

**Statewide Assessment Information**
According to the Statewide Assessment, the State requires all prospective foster and adoptive parents, including kinship care relatives, to complete 27 hours of pre-service training using the PRIDE model. The Statewide Assessment notes that training is provided by the Social Work Education Consortium several times per year depending upon the needs identified in each region. In addition, the Statewide Assessment notes that all foster and adoptive parents must complete at least 12 hours of in-service training annually, based on the specific needs of the family.

The Statewide Assessment notes that PRIDE training became available to foster and adoptive parents throughout the State in the last year and that the PRIDE training has been received positively.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item across the sites and at the State level reported that 27 hours of pre-service training is required for foster families prior to placement and that 12 hours of annual training is required for re-certification. Some stakeholders reported that schools of social work provide the training using the PRIDE curriculum and that training is frequently made available in all regions. Some stakeholders noted that relative foster families are required to complete training; however, children may be placed with relatives prior to the completion of training. Some stakeholders noted that foster parents participate in support groups in various regions throughout the State.

D003527

## V. SERVICE ARRAY

| Rating of Review Team Regarding Substantial Conformity | | | | |
|---|---|---|---|---|
| | **Not in Substantial Conformity** | | **Substantial Conformity** | |
| **Rating** | 1 | **2X** | 3 | 4 |

**Status of Service Array**

West Virginia is not in substantial conformity with the systemic factor of Service Array. The State was in substantial conformity with this factor in the 2002 CFSR and was not required to address this factor in its PIP.

**Key Findings of the 2008 CFSR**

Findings of the 2008 CFSR with regard to the specific items assessed for this factor are presented below.

**Item 35. The State has in place an array of services that assess the strengths and needs of children and families and determine other service needs, address the needs of families in addition to individual children in order to create a safe home environment, enable children to remain safely with their parents when reasonable, and help children in foster and adoptive placements achieve permanency**

__X__ Strength          _____ Area Needing Improvement

Item 35 is rated as a Strength. The State has an array of services in place to support children and families. The State has worked successfully with the National Resource Center for Organizational Improvement to assess the service array. Since 2004, the State has significantly increased services through a strategic plan utilizing managed care concepts. This item also was rated as a Strength in the State's 2002 CFSR.

**Statewide Assessment Information**

According to the Statewide Assessment, CPS policy requires the provision of services based on the specific risk influences identified during the family assessment and the MDT. The Statewide Assessment notes that the MDT process monitors and evaluates service delivery and effectiveness on an individual case basis.

D003528

The department contracted with an ASO, APS Healthcare, Inc., in 2003 to provide socially necessary services to children and families receiving CPS, services for youth, and foster care. The Statewide Assessment reports that 2006-2007 utilization management data from the contractor show that services provided by the ASO (including parenting, respite, visitation, crisis response, family preservation, homemaker services, and services for youth) are the second most used set of services after transportation.

The Statewide Assessment notes that BCF partners with Child Placement Alternatives Corporation (CPAC), which includes 13 community collaborative groups, to identify service needs and gaps on a multicounty level. The Statewide Assessment notes that West Virginia has embarked on an ambitious evaluation of the service array statewide, the Resource and Capacity Development Plan, which is modeled on the CFSR outcomes.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item across the sites and at the State level reported that the ASO is active in all regions and that basic services and transportation are available. Some stakeholders noted that residential services are available and that child advocacy centers and the SOC model to coordinate mental health services provide comprehensive services to the child welfare population. Some stakeholders in the GMPS District and Harrison County noted that youth services are strong. Some stakeholders noted that the State conducts ongoing service array assessment to improve services continuously throughout the State.

**Item 36. The services in item 35 are accessible to families and children in all political jurisdictions covered in the State's CFSP**

_____ Strength          __X__ Area Needing Improvement

Item 36 is rated as an ANI because, although services in the State have expanded, key services are still not accessible to families and children in all political jurisdictions. This item was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**
According to the Statewide Assessment, there are not enough services in rural areas of the State and rural areas lack the capacity to provide effective services. The Statewide Assessment indicates that the following services are not available statewide: drug treatment, mental health treatment, batterer intervention and domestic victim supportive services, sexual abuse treatment, ILS, post-adoption services, in-home services, and transportation. In addition, The Statewide Assessment indicates that OPQI reviews reveal that ASO services are not available in all areas of the State.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item indicated that there are gaps in service availability in rural areas; however, service providers are offered incentives for services delivered in remote areas. Some stakeholders in Kanawha County noted that waiting lists are common for psychiatric evaluation and mental health treatment, substance abuse treatment, and dental care. Some

D003529

stakeholders in Kanawha County indicated that caseworkers have trouble accessing services through ASO due to a lack of understanding about ASO.

In addition, several stakeholders across the sites identified the following areas of insufficient services: experienced caseworkers conducting quality assessments, safety assessment, truancy coordination with education agencies, substance abuse treatment, mental health services, domestic violence treatment, sex offender treatment, ILS, post-adoption services, and post-reunification services.

**Item 37. The services in item 35 can be individualized to meet the unique needs of children and families served by the agency**

\_\_\_\_\_ Strength    \_\_X\_\_ Area Needing Improvement

Item 37 is rated as an ANI. The Statewide Assessment and stakeholders noted that the State does not consistently individualize services to meet the unique needs of the children and families they serve. The Statewide Assessment indicates that services are provided based upon what is available, not the needs of the family. This item was rated as a Strength in the State's 2002 CFSR.

**Statewide Assessment Information**
According to the Statewide Assessment, the family assessment and the MDT process provide caseworkers an opportunity to identify needs and design an individualized service plan. However, the Statewide Assessment indicates that the MDT process is not utilized effectively throughout the State. In addition, the Statewide Assessment indicates that services are provided based on what is available, not the family's needs: for example, caseworkers use parenting services when treatment services for domestic violence and substance abuse are necessary. The Statewide Assessment also indicates that family assessments may be incomplete: for example, problems such as domestic violence and substance abuse are not identified and then services do not match the needs of the family.

**Stakeholder Interview Information**
During the onsite CFSR, there were mixed opinions expressed by stakeholders. Stakeholders commenting on this item in all three sites indicated that services are developed during the MDT process and that they are tailored to the specific needs of the family. Some stakeholders in Harrison County specifically noted that individualized parenting services are available. Some stakeholders in Kanawha County noted that, while the ASO standard bundle of safety services can be tailored based on the needs of a family, families are often provided with a standard set of services. In addition, several stakeholders at the State level and in all three sites indicated that services are not consistently tailored to the needs of families.

D003530

## VI. AGENCY RESPONSIVENESS TO THE COMMUNITY

| Rating of Review Team Regarding Substantial Conformity | | | | |
|---|---|---|---|---|
| | Not in Substantial Conformity | | Substantial Conformity | |
| **Rating** | 1 | 2 | 3 | **4X** |

**Status of Agency Responsiveness to the Community**

West Virginia is in substantial conformity with the systemic factor of Agency Responsiveness to the Community. In the 2002 CFSR, West Virginia also was in substantial conformity with this factor and, therefore, was not required to address this factor in its PIP.

**Key Findings of the 2008 CFSR**

Findings of the 2008 CFSR with regard to the specific items assessed for this factor are presented below.

**Item 38. In implementing the provisions of the CFSP, the State engages in ongoing consultation with Tribal representatives, consumers, service providers, foster care providers, the juvenile court, and other public and private child- and family-serving agencies, and includes the major concerns of these representatives in the goals and objectives of the CFSP**

__X__ Strength          _____ Area Needing Improvement

Item 38 is rated as a Strength because the State engages in ongoing consultation with Tribal representatives, consumers, service providers, the juvenile court, and other public and private child- and family-serving agencies. The State addresses and includes major concerns of these representatives in the goals and objectives of the CFSP. This item also was rated as a Strength in the State's 2002 CFSR.

**Statewide Assessment Information**
According to the Statewide Assessment, the department partners with the West Virginia Supreme Court of Appeals to accomplish the goals and objectives of the CFSP and the CIP. The Statewide Assessment reports that BCF has a staff position to oversee the community collaborative and 47 Family Resource Networks (FRN) in an effort to improve effectiveness. The Statewide Assessment notes that BCF partners with CPAC, which includes 13 community collaborative groups, to identify service needs and gaps on a multicounty level. The Statewide Assessment also notes that the department established a Strategic Plan Committee to increase placement resources and the quality of service providers in the State.

D003531

According to the Statewide Assessment, the department created the West Virginia SOC, a public-private-consumer partnership to build a foundation for an effective continuum of care empowering children at risk of out-of-home care and their families. The SOC includes representatives from BCF, the Department of Education, the Bureau of Behavioral Health and Health Facilities, the Bureau of Medical Services, Military Affairs and Public Safety's DJS, the West Virginia Supreme Court of Appeals' Probation Services, providers, and FRNs.

The Statewide Assessment notes that BCF works with the National American Indian Federation, which represents several non-Federally recognized Tribes in West Virginia, to ensure that the policies and goals of the department comply with ICWA.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item across the sites and at the State level reported that participation in the FRNs in each region is meaningful and that the FRN includes community partners providing services to the child welfare population. Stakeholders indicated that local FRN collaboratives send information regarding the State plan annually to the State for inclusion in the CFSP. In addition, some stakeholders noted that the SOC partnership and the MDT process provide opportunities for the agency to collaborate regularly with community partners and the courts. Some stakeholders in Kanawha County noted that a monthly regional summit among service providers in the community offers the agency the opportunity to conduct ongoing service collaboration and coordination.

**Item 39. The agency develops, in consultation with these representatives, Annual Progress and Service Reports delivered pursuant to the CFSP**

___X___ Strength            _____ Area Needing Improvement

Item 39 is rated as a Strength because the agency develops, in consultation with relevant representatives, an annual progress and services report (APSR) delivered pursuant to the CFSP. For example, the State collaborates closely with the Citizen Review Panel and submits an integrated plan in the APSR each year. This item also was rated as a Strength in the State's 2002 CFSR.

**Statewide Assessment Information**
Item 38 above describes the process of ongoing consultation with partners and stakeholders in West Virginia.

**Stakeholder Interview Information**
Item 38 above describes the process of ongoing consultation with partners and stakeholders in West Virginia.

81

**D003532**

**Item 40. The State's services under the CFSP are coordinated with services or benefits of other Federal or Federally-assisted programs serving the same population**

__X__ Strength            _____ Area Needing Improvement

Item 40 is rated as a Strength because the State's services under the CFSP are coordinated with services of other Federal programs including Temporary Assistance to Needy Families (TANF), child care, and child support. This item also was rated as a Strength in the State's 2002 CFSR.

**Statewide Assessment Information**
According to the Statewide Assessment, the bureaus within the department work together to coordinate and cooperate in planning and delivering social welfare, medical, and public health services. The department includes the following programs, child welfare, TANF, child care, child support, adult services, supplemental assistance program, early care, and education. In addition, the Statewide Assessment notes that the department works closely with the Medicaid program, Maternal and Child Health program, and title XX programs.

The Statewide Assessment reports that the model Regional Resource Network funded by United Way is being used in Berkeley, Morgan, and Jefferson districts to provide a one-stop clearinghouse for all locally available services.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item indicated that BCF is co-located with child support and the TANF program. Some stakeholders noted that FACTS has an interface with the TANF information system to facilitate service delivery. Some stakeholders reported that SOC partnership is active in all regions and, with ASO, provides coordinated service delivery among child welfare agencies and Medicaid-funded agencies.

D003533

## VII. FOSTER AND ADOPTIVE PARENT LICENSING, RECRUITMENT, AND RETENTION

| Rating of Review Team Regarding Substantial Conformity | | | | |
|---|---|---|---|---|
| | Not in Substantial Conformity | | Substantial Conformity | |
| **Rating** | 1 | **2X** | 3 | 4 |

### Status of Foster and Adoptive Parent Licensing, Recruitment, and Retention

West Virginia is not in substantial conformity with the systemic factor of Foster and Adoptive Parent Licensing, Recruitment, and Retention. In the 2002 CFSR, West Virginia was in substantial conformity with this factor and was not required to address this factor in its PIP.

### Key Findings of the 2008 CFSR

Findings of the 2008 CFSR with regard to the items assessed for this factor are presented below.

### Item 41. The State has implemented standards for foster family homes and child care institutions that are reasonably in accord with recommended national standards

__X__ Strength         _____ Area Needing Improvement

Item 41 is rated as a Strength because the State has implemented effective standards for foster family homes and child care institutions that are reasonably in accord with recommended national standards and approved by the Council on Accreditation. This item also was rated as a Strength in the State's 2002 CFSR.

### Statewide Assessment Information

According to the Statewide Assessment, foster and adoptive homes are certified by BCF or by a licensed child-placing agency. The Statewide Assessment reports that BCF standards for foster and adoptive homes are consistent with recommended national standards approved by the Council on Accreditation. The Statewide Assessment notes that specialized foster care homes and residential facilities are licensed by two sets of regulations: one set regulating all State foster and adoptive placements, and the second set specifically for private sector agencies. The Statewide Assessment notes that policy requires all homes to be approved as foster/adoptive providers with the intent to minimize the number of moves a child must go through to obtain permanency.

D003534

The Statewide Assessment notes that private child-placing agencies are required to complete PRIDE pre-service training and are monitored for compliance. The Statewide Assessment notes that certification is granted for 1 year and that a placement must be reviewed and relicensed every year.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item indicated that child-placing agencies are licensed to provide certificates to foster homes, group homes, shelters, and child care facilities. Some stakeholders reported that children are not placed in a home prior to the certification of that home. Some stakeholders noted that licensing standards meet the requirements for the Council on Accreditation and the Child Welfare League of America. Some stakeholders noted that standards are in place regarding routine medical examination and treatment and regarding the prohibition of physical restraint. Some stakeholders reported that substantiated cases of abuse in foster homes or child care institutions result in the closure of those homes or facilities.

**Item 42. The standards are applied to all licensed or approved foster family homes or child care institutions receiving title IV-E or IV-B funds**

   X    Strength         _____ Area Needing Improvement

Item 42 is rated as a Strength because the State applies the same standards to all certified or approved homes and child care institutions receiving title IV-E or IV-B funds. This item was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**
According to the Statewide Assessment, all relative caregivers must meet the same certification standards as all foster and adoptive parents. The Statewide Assessment notes that relatives who appear to be appropriate for placement following an initial home visit and safety check are referred to the home finding unit and that a home study is to be completed within 45 days. Following approval of the home, the family may receive foster care payments for 6 months to give it sufficient time to complete required PRIDE training and be certified as a relative foster care provider.

The Statewide Assessment notes that provisional licenses are not granted and that placement families and facilities are given 6 months to complete corrective action plans, while funding is suspended, before they must re-apply for a new license. The Statewide Assessment also notes that waivers may be granted for requirements that do not negatively affect the safety of a child. The Statewide Assessment notes that waivers of approval requirements are available for relatives and foster parents to accommodate large sibling groups. The Statewide Assessment does not present data regarding the types and numbers of waivers issued to family foster homes and relative homes.

D003535

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item indicated that relative foster care providers must meet the same certification standards as non-relative homes. Some stakeholders noted that certain standards, not including safety standards, may be waived for relatives. Some stakeholders noted that relative foster families are required to complete training; however, children may be placed with relatives prior to the completion of training.

**Item 43. The State complies with Federal requirements for criminal background clearances as related to licensing or approving foster care and adoptive placements and has in place a case planning process that includes provisions for addressing the safety of foster care and adoptive placements for children**

\_\_\_\_\_ Strength        \_\_X\_\_ Area Needing Improvement

Item 43 is rated as an ANI because the State does not comply with Federal requirements for criminal background clearances. The State's process is characterized by backlogs and long delays that significantly affect the stability and safety of foster care and adoptive placements for children and delaying permanency. This item was rated as a Strength in the State's 2002 CFSR.

According to the Federal title IV-E eligibility review conducted in April 2008, delays were found in obtaining criminal history background checks due in part to systemic inefficiencies on the part of the State Police and a communication from the State Police that, despite an arrangement to provide background checks, no further criminal history background check requests are to be submitted. In one case, DHHS waived its policy to approve a relative foster parent without ensuring that the prospective foster parent had not been convicted within the last five years of a felony involving physical assault, battery, or a drug-related offense, as required by the Code of Federal Regulations, section 1356.30.

**Statewide Assessment Information**

According to the Statewide Assessment, all prospective foster parents, employees of specialized foster care agencies, and employees of residential group facilities undergo a State criminal background check and a Federal National Crime Information Center check before the placement of a child.

The Statewide Assessment reports that for relative caregivers, criminal background checks are required as soon as possible. However, children may be placed in a relative's home prior to the background check, after an environmental assessment of the home. The Statewide Assessment indicates that a lengthy process for conducting criminal background checks delays adoption finalization, in some cases.

**Stakeholder Interview Information**

During the onsite CFSR, some stakeholders commenting on this item reported that criminal background checks are required for all adult foster care providers and staff of child care facilities, shelters, and group homes. However, most stakeholders indicated that the

D003536

lengthy processing of fingerprints causes delays in licensing and certification. In addition, some stakeholders noted that there are cases in which children are placed in foster and kinship homes prior to the completion of the criminal background check process. Stakeholders reported that the State allows providers in child care institutions to begin employment without having completed a criminal background check.

Some stakeholders in Kanawha County reported that fingerprints for relatives are processed within 48 hours to expedite placement.

**Item 44. The State has in place a process for ensuring the diligent recruitment of potential foster and adoptive families that reflect the ethnic and racial diversity of children in the State for whom foster and adoptive homes are needed**

__X__ Strength          _____ Area Needing Improvement

Item 44 is rated as a Strength because the State has an effective process in place, building on community initiatives, for ensuring the diligent recruitment of potential foster and adoptive families that reflect the ethnic and racial diversity of children in the State for whom foster and adoptive homes are needed. This item was rated as an ANI in the State's 2002 CFSR.

**Statewide Assessment Information**
According to the Statewide Assessment, each region is required to conduct two foster and adoptive recruiting activities each month including radio, newspaper, newsletters, and other printed material distributed at fairs, festivals, and other community events. The Statewide Assessment notes that child-specific recruitment is required for every child who has at least one parent's rights terminated and for whom adoption is the permanency plan.

The Statewide Assessment notes that a statewide foster and adoptive home recruitment plan was developed by Tonkin Management Group to increase the variety and distribution of placement resources in the State. The Mission West Virginia initiative is a nonprofit organization collaborating with faith communities to use existing resources to increase placement resources partnering with the following organizations: One Church, One Child; Wendy's Wonderful Kids; Kinship Care Support; Heart Gallery; and the Foster and Adoptive Family Support Group.

The Statewide Assessment reports that OPQI QARs indicate a need for community-based placement options for youth, large sibling groups, children of various racial and ethnic backgrounds, bilingual children in certain regions, children with dual diagnoses and developmental disabilities, and sexual offenders. Specifically, the Statewide Assessment reports that, while 11 percent of the children awaiting adoption are African-American and 9 percent of the children in foster care are African-American, only 3.3 percent of West Virginia's population is African-American and 5.8 percent of foster care providers are African-American.

D003537

The Statewide Assessment notes that Region IV, including the GMPS District, had a 10-percent increase in the number of foster homes in 2007 due to an increase in caseworker recruitment efforts and the efforts of a contractor to conduct home studies of relative homes.

**Stakeholder Interview Information**
During the onsite CFSR, stakeholders commenting on this item indicated that the population needing specific recruitment includes older children, sibling groups, medically fragile children, and children with developmental disabilities. Some stakeholders at the State level reported that Wendy's Wonderful Kids and the Heart Gallery feature children waiting for adoption. Some State-level stakeholders reported that the One Church, One Child program targets African-American families to provide placement resources for African-American children in foster care.

Some stakeholders across the sites reported that foster and adoptive families are recruited by word of mouth. Some stakeholders across the sites noted that recruitment activities include newspaper ads, radio, pamphlets, and events. Some stakeholders noted that relative placements have increased, reducing the need for large-scale recruitment activities.

**Item 45. The State has in place a process for the effective use of cross-jurisdictional resources to facilitate timely adoptive or permanent placements for waiting children**

_____ Strength          __X__ Area Needing Improvement

Item 45 is rated as an ANI because the Interstate Compact on the Placement of Children (ICPC) process is characterized by long delays. A statistical analysis conducted by the CIP showed that a delay was indicated in 53 percent of cases reviewed. In 32 percent of the cases reviewed that delay was due to a delay in processing either Federal or State background checks or both. This item was rated as a Strength in the State's 2002 CFSR.

The CIP commissioned a statistical analysis of the State's ICPC case processing procedures, an in-depth case file review, focus groups with DHHR personnel who facilitate ICPC placements, and a statewide survey of circuit court judges. As part of the statistical analysis of administrative data, 323 case records were reviewed for children coming into the State over a 19-month period between August 7, 2006, and March 7, 2008. Over that period, there were 383 cases where West Virginia was the sending State. The results of this review showed that the State's ICPC office is prompt in processing requests from other States; the median time to complete a home study was 73 days. The delays in approving ICPC requests were found to be primarily in the completion of home studies due in part to a significant delay in the processing of both Federal and State background checks. In 53 percent of the cases reviewed, a delay was indicated. In 32 percent of the cases reviewed that delay was due to a delay in processing either Federal or State background checks or both.

D003538

**Statewide Assessment Information**

According to the Statewide Assessment, West Virginia is a member of ICPC. The Statewide Assessment notes that the ICPC process is very efficient; however, the process delays the finalization of permanent out-of-State placements.

The Statewide Assessment reports that between October 2007 and April 2008 four out-of-State adoptions were completed; in only one of these cases the adoption was completed within 12 months. The Statewide Assessment reports that the department uses the AdoptUsKids listing to find placements for waiting children.

**Stakeholder Interview Information**

During the onsite CFSR, stakeholders commenting on this item indicated that West Virginia participates in the AdoptUsKids listing program. Some stakeholders indicated that the ICPC and the Interstate Compact on Adoption and Medical Assistance primarily support relative placements in other States.

Stakeholders reported that the CIP statistical analysis showed that the three main reasons for delays in ICPC cases are delays in criminal history checks and FBI checks, and noncompliance from receiving families.

88

D003539