UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| Jonathan R., minor by Next Friend Sarah DIXON, *et al.*, | ) ) ) |
| *Plaintiffs*, | ) |
| v. | )  Case No. 3:19-cv-00710 |
| Jim JUSTICE, in his official capacity as the Governor of West Virginia, *et al.*, | ) ) ) ) |
| *Defendants.* | ) |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF UMA AHLUWALIA**

**I.    Introduction.**

Despite Defendants' contention that the opinions of Uma Ahluwalia were rendered through reliable methodology and based upon sufficient facts and data, it cannot be refuted that she based her opinions on cherry-picked data and information provided by Defendants' counsel and did not perform an independent review and analysis of West Virginia's foster care system. Ms. Ahluwalia merely reviewed Defendants' policies in her report, but did not verify whether those policies were effective or even implemented at all. *See* ECF 589-3, at 55:13-15 *and* ECF 589-4, at 39-45. Defendants' response to these criticisms is little more than a regurgitation of the contents of Ms. Ahluwalia's report. *See generally*, ECF 603, at 12-16.

In analyzing the reliability of Ms. Ahluwalia's methodology, this Court should pay particular attention to her own sworn deposition testimony. Ultimately, Ms. Ahluwalia opines that Defendants' purported efforts to improve the quality and array of services provided to children in foster care are "reasonable" despite testifying at her deposition no less than thirteen times that the scope of her analysis was confined to Defendants' written policies and that she did not examine

1

the realities of children's experiences in West Virginia's foster care system. ECF 589-3 at 11:13-15; 12:9:19; 14:17-22; 19:4-8; 20:7-9; 21:15-23; 22:8-18; 29:9-16; 46:7-10 47:4-9; 81:4-9; 84:24-85:3; 86:18-87:1.

Ms. Ahluwalia's opinions are inadmissible not only because of the unreliable methodology through which they are derived, but also because the "reasonableness" of Defendants actions or inactions is a legal conclusion which "does little more than tell the jury what result to reach." *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002). While Federal Rule of Evidence 704 does not issue a blanket prohibition against expert testimony just because it embraces an ultimate issue, neither is it a blanket permission. The inquiry into whether such testimony is admissible is conducted on a case-by-case basis, and Defendants' own case law demonstrates that Ms. Ahluwalia's opinions regarding "reasonable efforts" are inadmissible legal conclusions. *See United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006); *Barile*, 286 F.3d at 761-62 (4th Cir. 2002); *Kopf v. Skyrm*, 993 F.2d 374, 379 (4th Cir. 1993).

**II.     Argument.**

   **A. Ms. Ahluwalia's Opinion is not Based on Sufficient Facts or Data and is not the Product of Reliable Principles and Methodology.**

Plaintiffs will spare the Court a recitation of the numerous issues raised within their Memorandum in Support of their Motion to Exclude the Testimony of Uma Ahluwalia. ECF No. 590, at 8-13. Briefly, Ms. Ahluwalia's expert opinion is unreliable because her opinions are not supported by sufficient data; the data on which her opinions are based was hand-picked by Defendants' counsel; and because she ignores contrary information within that data that does not support her opinion. Defendants' Opposition, while claiming to refute Plaintiffs' arguments, instead bolsters them.

2

Ultimately, Ms. Ahluwalia's testimony is inherently unreliable because she made no effort to determine whether Defendants' practices conformed to their written policies. During her deposition on July 5, 2024, Plaintiffs' counsel asked Ms. Ahluwalia about whether she examined not only the policies, but also various aspects of implementation and their actual results in the field, drawing several "asked and answered" objections from Defendants' counsel. ECF No. 589-3, at 12:18-23; 13:6-8; 13:16-18; 14:17-21; 19:9-12; 29:12-13 (Q: So that's what you were really looking at was the policy? MR. PEISCH: Objection, asked and answered. We've gone through this a bunch of times now. THE WITNESS: Correct.). And thirteen separate times when questioned about whether she looked at implementation and real-world practice or only policies, Ms. Ahluwalia responded that she conducted a policy analysis, that her task was to look at policies, or that various aspects of implementation or practice were not the charge that was given to her. ECF No. 589-3 at 11:13-15 (Q: Were you—did you start out to do an analysis of the system or of the policies? A: It was always policy focused.); 12:9:19 (A:…Our test was always to examine policies for reasonableness. That's what we did. Q: You didn't look at case practice at all? A: That was not our charge.); 14:17-22 (Q: But your focus was always on the policies; is that right? A: Correct. Q: And not how they were implemented? MR. PEISCH: Objection, asked and answered. THE WITNESS: Correct.); 19:4-8; 20:7-9; 21:15-23 (Q: In conducting your assessment, was it important to know what was actually happening to the children in the system? A: That was not the charge that was given to me.); 22:8-18; 29:9-16; 46:7-10 47:4-9; 81:4-9; 84:24-85:3 (A:…The risk exists that those policies may not be implemented in the field with fidelity, but since we were not doing a field audit, I couldn't tell you…what the percentage of failure to comply with the policy is.); 86:18-87:1 (Q: And a good percentage of the children in the foster care system in West Virginia are on kinship placements; isn't that true? A: Which is a

strength to the system is how I see it. Q: If the policies are being implemented? A: If the policies are being implemented. Q: And you don't know that? A: I don't know whether they are or are not).

This deposition transcript makes clear that Ms. Ahluwalia only did a superficial examination of the West Virginia foster care system. To review policies without examining whether they are practiced says nothing about Defendants' reasonable efforts to reduce the substantial risk of harm to which the Plaintiff children are exposed.

Ms. Ahluwalia makes multiple assertions about Defendants' practices, but they are unsupported assumptions. In attempting to defend the assumptions within Ms. Ahluwalia's report, Defendants simply reiterate them while claiming that they are not, in fact, assumptions. First, Defendants defend Ms. Ahluwalia's assumption that the training policies were implemented by pointing again to the policy itself, which states that implementation is required. ECF No. 603, at 14-15. This is circular reasoning. Second, Defendants bolster Ms. Ahluwalia's excusing West Virginia's inordinately high use of congregate care by proclaiming, *ipse dixit*, that West Virginia is the only state which counts juvenile justice-involved youth in their count of foster children. *Id*. But Defendants, like Ms. Ahluwalia, provide no evidence that the other 49 states do not do this. Contrary to Defendants' assertion, Plaintiffs do not misunderstand Ms. Ahuwalia's claim; Plaintiffs simply refuse to accept this baseless claim as a reliable opinion based on reliable methodology.

Defendants' claim that Ms. Ahluwalia employed sound methodology by studying implementation data is also misplaced; Defendants merely list a selection of the cherry-picked information which Defendants created, maintained, and which their counsel provided to Ms. Ahluwalia, ECF 603 No., at 13-14. ECF No. 589-4, at 39-45. This supports Plaintiffs' argument

that Ms. Ahluwalia's opinion is biased because she only reviewed handpicked data without independently verifying it or comparing it to data from other child welfare systems. *See Generally* ECF No. 589-4. Her exclusive reliance on documents provided by counsel without independent verification is patently unreliable. *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-cv-1283, 2015 U.S. Dist. LEXIS 90429, at *26-27 (W.D. Pa. July 13, 2015) (holding proffered expert testimony unreliable where expert merely reviewed documents "selected and supplied to him by counsel for Plaintiffs" and did not "perform any independent, objective analysis"); *Obrycka v. City of Chi.*, 792 F. Supp. 2d 1013, 1024-25 (N.D. Ill. 2011) (excluding expert testimony where expert "did not conduct any independent research on the Chicago Police Department to prepare his report, and there is no evidence that [he] investigated the veracity of the materials Plaintiff's counsel provided to him, or requested additional materials from Plaintiff's counsel to further inform his opinion.").

Lastly, Defendants' attempt to minimize Ms. Ahluwalia's rejection of data contradicting her opinion only shows the flaws in both her reasoning and theirs. Defendants state that the 2024 Annual Progress and Services Review ("APSR") reflects the Division of Planning and Quality Improvement ("DPQI") review of "just 125 cases," ECF. No. 603, at 15, but fail to explain why the sample size renders these findings less valid than those of Ms. Ahluwalia, who examined zero cases. Defendants then state that DPQI measured performance using "very high standards," ECF No. 603, at 16, as if high standards were a reason not to use these findings, but this is exactly the reason why the DPQI review should be used.

### B. Ms. Ahluwalia's Opinions Do Not Satisfy the Relevancy Standard Under Rule 702

Ms. Ahluwalia's testimony cannot satisfy even the basic relevance requirements for admissibility under Federal Rule of Evidence 702. Her claimed specialized knowledge of child

welfare agency policies, practices, and procedures will not help this Court to understand the evidence or to determine a fact in issue where she merely recites written policies and claimed efforts without any examination of the effect of those practices. Ms. Ahluwalia's testimony is a mere restatement of Defendants' policies, facts more appropriately presented directly to the trier of fact. And application of Ms. Ahluwalia's methodology to the facts of this case shed no light on the issues upon which Plaintiffs' Substantive Due Process claims are based, namely, whether Defendants have substantially departed from accepted professional judgment, practice, or standards[1] by failing to <u>practice</u> their policies and <u>effectuate</u> adequate protections for children in foster care, minimize time in care, maximize placement stability, provide appropriate case management services, and maximize the array of placements available.

### C. Testimony Regarding the Reasonableness of a Defendant's Efforts Constitutes a Legal Conclusion Within the Context of Substantive Due Process Claims.

Defendants acknowledge that the reasonableness of a governmental agency's response is a legal term referring to a defense against claims of constitutional violations; in fact, some courts phrase this defense in the exact same terms used by Ahluwalia— "reasonable efforts." *M.D. v. Abbott*, 907 F.3d 237, 261 (5th Cir. 2018) (*"Stukenberg I"*). However, while Federal Rule of Evidence 704 does not bar all opinions that "embrace[] an ultimate issue," neither does it confer a blanket permission. "An expert generally is not permitted to apply law to facts to reach a legal conclusion, as such testimony is not considered helpful to the [factfinder]." *United States v.*

---

[1] Although Defendants continue to assert that the applicable standard is "deliberate indifference", the Fourth Circuit has embraced departure from professional judgment as the applicable standard for substantive due process claims such as those Plaintiffs bring here. *See Doe v. Shenandoah Valley Juvenile Ctr. Cmm'n*, 985 F. 3d 327, 342 (4th Cir. 2021) (citing *Youngberg v. Romero*, 457 U. S. 307, 320-23 (1982)).

*Melvin*, 508 Fed. App'x 209, 211 (4th Cir. 2013); *accord Sellman v. Safeco Ins. Co. of Am.*, No. 22-2145, 2024 U.S. App. LEXIS 13616, at *14-15 (4th Cir. June 5, 2024).

Among the cases cited in their Opposition, Defendants rely heavily on three Fourth Circuit cases, all of which are distinguishable: *United States v. McIver*, 470 F.3d 550 (2006); *United States v. Barile*, 286 F.3d 749, 761-62 (4th Cir. 2002); and *Kopf v. Skyrm*, 993 F.2d 374, 379 (4th Cir. 1993). *McIver* stated first that inadmissible legal conclusions can be identified by "determining whether the terms used by the witness shave a separate, distinct and specialized meaning in the law." 470 F.3d at 562. It ultimately held that the expert witness's testimony was admissible because the language used by the expert was "similar" and fell "within the limited vernacular available." *Id.* Ms. Ahluwalia, by contrast, uses the exact same phrase as that used by courts to express the legal issue at hand. *See Stukenberg I*, 907 F.3d at 261 ("reasonable efforts"). Similarly, *Barile* held that an expert witness should have been allowed to testify as to whether data was "reasonable" because "reasonable" was not the legal standard. *See* 286 F.3d at 761. The applicable standard there was whether the data contained "materially misleading statements." *Id.* This is not the case here, where "reasonable efforts" is the legal standard that Defendants must satisfy.

And Defendants simply misconstrue *Knopf*. In *Knopf*, the Fourth Circuit held that the expert witness should have been allowed to testify about "how to train and use a police dog" because they are "obscure skills," and expert testimony might assist the jury in understanding the standard of conduct. 993 F.2d at 379. However, the Fourth Circuit clarified that the expert could testify about the "prevailing standard of conduct" but was properly "precluded from giving an opinion on the ultimate issue of whether the use [of a slapjack] in this case was reasonable." *Id. Knopf*'s "standard of conduct" is analogous to Defendants' policies; Plaintiffs do not argue that

7

an explanation of Defendants' policies are inadmissible conclusions[2]; Plaintiffs contend that testimony regarding whether the existence of these policies constitutes "reasonable efforts" should be precluded as inadmissible legal conclusions.

Ms. Ahluwalia's conclusions that Defendants efforts have been "reasonable" cannot be seen as anything more than a legal defense to Plaintiffs' Substantive Due Process claims. Thus, Ms. Ahluwalia's testimony should be excluded as an impermissible legal conclusion.

### III.     Conclusion.

For the foregoing reasons and those discussed in Plaintiffs' initial Memorandum of Law, this Court should grant Plaintiffs' Motion to Exclude the opinions of Defendants' proposed expert witness, Uma Ahluwalia.

Respectfully submitted,

*/s/ Marcia Robinson Lowry*
Marcia Lowry, *admitted pro hac vice*
mlowry@abetterchildhood.org
Julia K. Tebor, *admitted pro hac vice*
jtebor@abetterchildhood.org
Laura Welikson, *admitted pro hac vice*
lwelikson@abetterchildhood.org
Robyn Goldberg, *admitted pro hac vice*
rgoldberg@abetterchildhood.org
A Better Childhood
355 Lexington Avenue, Floor 16
New York, NY 10017
Tel.: (646) 795-4456
Fax: (212) 692-0415

*/s/ J. Alexander Meade*
Shaffer & Shaffer, PLLC
Richard W. Walters, WVSB #6809

---

[2] Plaintiffs maintain, however, that a mere description of existing documents is not a proper subject for expert testimony. *See City of Huntington v. Amerisourcebergen Drug Corp.*, No. 3:17-01362, 2021 U.S. Dist. LEXIS 68506, at *10 (S.D.W. Va. Apr. 8, 2021).

rwalters@shafferlaw.net
J. Alexander Meade, WVSB #13021
ameade@shafferlaw.net
2116 Kanawha Boulevard, East
P.O. Box 3973
Charleston, WV 25339
Tel: (304) 344-8716
Fax: (304) 344-1481


/s/ *Andrew Castillo*
Disability Rights of West Virginia
Andrew Castillo, WVSB #14358
acastillo@drofwv.org
1207 Quarrier Street, Suite 400
Charleston, WV 25301
Tel: (304) 346-0847
Fax: (304) 346-0687

***Attorneys for Plaintiffs***