**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

JONATHAN R., *et al.*,                     )
                                           )
*Plaintiffs*,                              )
                                           )
                    v.                     )
                                           )
JIM JUSTICE, in his official capacity as   )     Case No. 3:19-cv-00710
Governor of West Virginia, *et al.*,       )
                                           )
*Defendants*.                              )

**DEFENDANTS' MOTION IN LIMINE TO**
**COMPEL PLAINTIFFS TO ACCEPT DEFENDANTS' PROPOSED STIPULATIONS,**
**EXCLUDE EVIDENCE NOT DISCLOSED IN INTERROGATORY RESPONSES, AND**
**ORDER PLAINTIFFS TO CULL THEIR RULE 26(a)(3) EXHIBIT LIST**

Despite Defendants' best efforts, this case is headed toward an unwieldy and inefficient trial, because Plaintiffs have repeatedly declined to make necessary decisions about their evidentiary presentation. First, Plaintiffs have not timely and reasonably engaged with Defendants in negotiating pre-trial fact and exhibit stipulations. Defendants sent Plaintiffs proposed fact stipulations on August 23, 2024, and proposed stipulations regarding the authenticity and admissibility of exhibits on August 29, 2024. Plaintiffs took nearly six weeks to provide comments on the proposed fact stipulations and, when they finally responded (two days ago), they refused to stipulate to dozens and dozens of undisputed facts. And Plaintiffs still have not provided any comments on Defendants' proposed stipulations regarding the admissibility of exhibits. Second, hundreds of the exhibits Plaintiffs seek to introduce were not timely disclosed to Defendants in response to Defendants' Interrogatories 5 through 16 (hereafter "Interrogatories 5–16"), which were served by Defendants nearly a year ago. Third, Plaintiffs have failed to provide Defendants with a Rule 26(a)(3) exhibit list that includes a reasonable number of exhibits that can be introduced during a six-day trial presentation. Specifically, Plaintiffs' Rule 26(a)(3) pre-trial

1

disclosures indicate that Plaintiffs "expect to offer at trial" 452 "categories" of exhibits (683 total documents).

To ensure a manageable and efficient trial that does not waste this Court's time, Defendants hereby move for this Court to:

1) Compel Plaintiffs to accept Defendants' proposed stipulations on the authenticity and admissibility of exhibits (attached as Exhibit A, hereafter "Defendants' Proposed Exhibit Stipulations") or, in the alternative, admit the documents listed therein.

2) Compel Plaintiffs to either (A) accept Defendants' proposed fact stipulations (attached as Exhibit B, hereafter, "Defendants' Proposed Fact Stipulations") or (B) provide citations that would establish a genuine dispute for every proposed stipulation that Plaintiffs refuse to stipulate to;

3) Exclude any documents not listed in Plaintiffs' responses to Interrogatories 5–16;

4) Exclude testimony from witnesses not listed in Plaintiffs' responses to Interrogatories 5–16, <u>except</u> for Plaintiffs' experts (if they survive Defendants' motion to exclude their testimony) and currently or recently departed Department of Human Services ("DoHS") leaders on Plaintiffs' Rule 26(a)(3) witness list; and

5) Order Plaintiffs to amend their Rule 26(a)(3) disclosures to cut their exhibit list to a reasonable number of exhibits that is realistic for a six-day trial presentation.

## BACKGROUND

### A.  Duration of Trial Presentation.

In August 2024, Plaintiffs informed Defendants that they estimated they would need five (5) days for their case-in-chief, and Defendants similarly estimated that it would take five (5) days for Defendants' presentation.  Ex. C, ¶ 2.  Plaintiffs have now provided a draft pre-trial order providing that Plaintiffs estimate that their case-in-chief will last approximately six (6) days.  *Id.*

### B.  Interrogatories 5–16 and Plaintiffs' Rule 26(a)(3) Disclosures.

On October 19, 2023, Defendants served Plaintiffs with Interrogatories 5–16, which sought "all material facts and evidence that support" Plaintiffs' key factual allegations in this case, *i.e.*, "all material facts and evidence that support Plaintiffs' allegation[s] that":

No. 5: "DHHR maintains 'an inadequate array of appropriate placements' for members of the General Class, *see* Doc. 351, at 10."

No. 6: "'DHHR's placement array rises to the level of an unreasonable risk' for members of the General Class, *see* Doc. 351, at 17."

No. 7: "'Defendants are deliberately indifferent to' the alleged 'unreasonable risk' to members of the General Class allegedly caused by 'DHHR's placement array,' *see* Doc. 351, at 17."

No. 8: "DHHR provides "a lack of appropriate case planning" for members of the General Class, *see* Doc. 351, at 10."

No. 9: "'deficiencies in case planning subject the proposed General Class to an unreasonable risk of harm and' that 'Defendants are deliberately indifferent to that known risk,' *see* Doc. 351, at 20."

No. 10: "DHHR has 'high caseloads and chronic understaffing,' *see* Doc. 351, at 10."

No. 11: "'Defendants' caseload practice prevents DHHR from providing adequate care to Plaintiffs' and that 'Plaintiffs are resultantly exposed to a substantial risk of harm,' *see* Doc. 351."

No. 12: "Defendants are deliberately indifferent to the issue of alleged 'high caseloads and chronic understaffing' and the risks associated with such caseloads and 'understaffing.'"

No. 13: "'Defendants' failure to provide community-based treatment leaves courts with no choice but to institutionalize' members of the ADA Subclass, *see* Doc. 351, at 28."

No. 14: "the 'deficient' provision of services and 'the lack of community-based services result in, or create a risk of, institutionalization' for ADA Subclass members, *see* Doc. 351, at 28, 33."

No. 15: "'the lack of community-based services results in, or creates a risk of, institutionalization' for ADA Subclass members with an Intellectual Disability who do not have a Mental Health Disability, *see* Doc. 351, at 28."

No. 16: "'the lack of community-based services results in, or creates a risk of, institutionalization' for ADA Subclass members with a Physical Disability who do not have a Mental Health Disability, *see* Doc. 351, at 28."

Ex. D, at 5–6.

Eight months later, on June 14, 2024, after much prodding from Defendants, Plaintiffs provided substantive responses to Interrogatories 5–16, in Plaintiffs' Third Amended Responses to Defendants' First Set of Interrogatories, Contention Interrogatories 5–16 (hereafter, "Plaintiffs'

Third Amended Responses"). ECF No. 521. Plaintiffs' Third Amended Responses provided lists of between 1,600 and 5,550 documents responsive to each interrogatory (approximately 10,000 documents in total), but did not list <u>any</u> witnesses. Ex. C, ¶ 3.

On July 5, discovery closed. On September 4, 2024, Plaintiffs served Defendants with Plaintiffs' Supplemental Rule 26(a)(3) Disclosures, which listed 514 categories of exhibits (744 total documents) that Plaintiffs plan to introduce at trial and 27 witnesses they plan to call. Ex. C, ¶ 4. Hundreds of documents listed in Plaintiffs' Supplemental Rule 26(a)(3) Disclosures had not been included in Plaintiffs' Third Amended Responses to Interrogatories 5–16, and none of the witnesses in Plaintiffs' disclosures had been listed in Plaintiffs' Third Amended Responses.

On September 11, 2024, Defendants informed Plaintiffs about several deficiencies with Plaintiffs' pretrial disclosures, including that they included witnesses and exhibits not listed in Plaintiffs' Third Amended Response and that the number of exhibits was too voluminous to realistically introduce in a five-day case-in-chief. Ex. E. Defendants asked Plaintiffs to, among other things, supplement their interrogatory responses and cull their exhibit list "to a realistic number that Plaintiffs could introduce in a 5-day case-in-chief." *Id.* Defendants also warned that they would seek relief from this Court "[i]f Plaintiffs submit revised disclosures that continue to be so over-inclusive as to obscure from Defendants the evidence that Plaintiffs intend to present at trial." *Id.*

On September 24, 2024, Plaintiffs served Defendants with Plaintiffs' Fourth Amended Responses to Defendants' First Set of Interrogatories, Contention Interrogatories 5–16 (hereafter, "Plaintiffs' Fourth Amended Responses"). ECF No. 611. Plaintiffs added many documents in their Fourth Amended Responses, but they did not add any witnesses. Ex. C, ¶ 5.

On October 1, 2024, Plaintiffs served Defendants with Plaintiffs' Third Amended Supplemental Rule 26(a)(3) disclosures.  ECF No. 624.  Plaintiffs' Third Amended Supplemental Rule 26(a)(3) Disclosures list 28 total witnesses who Plaintiffs "expect" to or "may" call.  Ex. F, at 1–4; *see also*, Ex. G.  Of these 28 witnesses, three are Plaintiffs' experts who Defendants deposed during discovery, and another five (5) are current or recently departed DoHS leaders (Melanie Urquhart, Cammie Chapman, Kim Ricketts, Jeffrey Pack, and Cynthia Persily).  Ex. C, ¶ 6; *see* Ex. F.  The remaining 20 witnesses are not DoHS leaders and have never been deposed by Defendants.  Ex. C, ¶ 6.

Plaintiffs' Third Amended Supplemental Rule 26(a)(3) Disclosures also listed <u>452 categories of exhibits</u> (<u>683 documents</u>) that Plaintiffs "expect" to introduce at trial and 57 documents that Plaintiffs "may" use (<u>740 total document</u>).  Ex. F, at 5–34; Ex. C, ¶ 6.  In addition, Plaintiffs listed broad categories of documents that they "may" use at trial: "Any exhibit used in any deposition conducted in this matter"; "[t]he transcript of any deposition in this matter"; "Defendants' discovery responses and supplements"; and "[a]ny document not specifically referenced above but otherwise produced by either party in discovery."  *Id.* at 34.

None of Plaintiffs' 28 total witnesses were listed in any of their responses to Interrogatories 5–16.  Of the 740 documents that Plaintiffs "expect" to or "may" introduce at trial, 292 were <u>not</u> listed in Plaintiffs' Third Amended Responses, and 99 were <u>not</u> even listed in Plaintiffs' Fourth Amended Responses.  Ex. C, ¶ 11; Ex. H.

### C.  Defendants' Proposed Stipulations.

On August 23, 2024, Defendants sent Defendants' Proposed Fact Stipulations (Exhibit B) to Plaintiffs.  Ex. I.  The stipulations were similar to Defendants' Statement of Undisputed Material Facts ("SUF"), ECF No. 534, which Plaintiffs did not dispute in briefing on Defendants' Motion

for Summary Judgment, *see generally* ECF Nos. 548, 549.  Defendants asked Plaintiffs to send back comments and edits to Defendants within "the next week or two."  Ex. I.

On August 29, 2024, Defendants sent Defendants' Proposed Exhibit Stipulations (Exhibit A) to Plaintiffs, regarding the authenticity and admissibility of the exhibits that Defendants planned to use or may use at trial.  Ex. J.  Defendants asked Plaintiffs to "review the attached and (1) make any redlines to the stipulations . . . if Plaintiffs are not going to stipulate to the authenticity or admissibility of any Defendants' exhibits and (2) add any additional stipulation Plaintiffs may be seeking for their own exhibits."  *Id.*  Defendants also asked Plaintiffs to send back "redlines in the next week or so."  *Id.*

Throughout September, Defendants repeatedly e-mailed Plaintiffs to request feedback on the proposed stipulations.  Ex. K; Ex. L.  Finally, after the close of business on October 2, 2024, six weeks after Defendants sent Defendants' Proposed Fact Stipulations, Plaintiffs returned a counter-proposal to Defendants.  Ex. C, ¶ 8.  Plaintiffs' counter-proposal cut pages and pages of uncontroversial facts – without any comments or explanation for the deletions – that Plaintiffs had <u>not</u> disputed in summary judgment briefing, *see generally* ECF Nos. 548, 549.  For example:

- Plaintiffs refused to stipulate to basic facts about the number of foster children in different types of placements.  Ex. M, ¶¶ 11–20.

- Plaintiffs refused to stipulate to the fact that each BSS district has caseworkers and supervisors.  *Id.* ¶ 4.

- Plaintiffs refused to stipulate that the federal government reported certain data in the annual Child and Family Services Reviews ("CFSR") data profile.  *Id.* ¶¶ 24–40.

- Plaintiffs refused to stipulate to the compensation amounts that DoHS pays caseworkers.  *Id.* ¶ 150.

- Plaintiffs refused to stipulate to the vacancy and turnover rates for CPS and YS positions in 2022 and 2024 (but requested a stipulation on the vacancy and turnover information for 2019).  *Id.* ¶¶ 151–55, 117, 118, 120.

- Plaintiffs refused to stipulate to the average statewide caseload numbers for 2018 through 2024. *Id.* ¶¶ 159–65.

- Plaintiffs refused to stipulate to the percent of caseworker visits completed in 2021, 2022, and 2023. *Id.* ¶ 166.

- Plaintiffs refused to stipulate to basic facts about West Virginia (*e.g.*, West Virginia has the lowest percent of college graduates of any state, West Virginia has the highest drug overdose mortality rate in the country). *Id.* ¶¶ 171, 173.

- Plaintiffs refused to stipulate to any stipulations about the role of circuit courts in West Virginia's child welfare system. *Id.* ¶¶ 200–15.

- Plaintiffs refused to stipulate to basic facts about the placement process for foster children. *Id.* ¶¶ 218–29, 231.

- Plaintiffs refused to stipulate to basic facts about actions Defendants have taken, including, for example, with respect to expansion of community-based services to foster children; payment increases to foster care placements; and initiatives to recruit additional foster families. *See, e.g.*, *id.* ¶¶ 238, 265, 273–75, 311, 313, 318, 319, 320.

- Plaintiffs refused to stipulate that DoHS has implemented the Section 1915(c) Children with Serious Emotional Disorder Waiver ("CSEDW") program or to stipulate anything about what that program provides to children. *See id.* ¶ 313.

- Plaintiffs refused to stipulate to the numbers of foster children receiving community-based services and the amount DoHS has spent on those services (and declined to provide any alternative numbers). *See id.* ¶¶ 313(f)–(j), 315(d), 318(d), 319(f)–(h), 339.

Plaintiffs even refused to stipulate to facts that they admitted in response to Requests for Admission or Interrogatories. For example, Plaintiffs have admitted that: "Plaintiffs are not currently aware of any health care service that Defendants are required to provide to the General Class under federal law and that is not paid for by Medicaid"; "Plaintiffs are not currently aware of any instance in which Medicaid has declined to cover a service for any foster child that has been determined by [DoHS] to be medically necessary for that child"; "Plaintiffs are not currently aware of any foster child who has been excluded from Medicaid on the basis of their disability"; "Plaintiffs are not currently aware of any foster child who is not enrolled in Medicaid"; and

"Plaintiffs . . . are not currently aware of any written policies found in the BMS Policy Manual pertaining to the treatment of foster children that as stated violate federal statutory and constitutional law."  ECF No. 533-19, at 8–9; ECF No. 533-17, at 2, 3; ECF No. 533-21, at 3.  Yet, inexplicably and without explanation, Plaintiffs refused to stipulate that: "The West Virginia Medicaid program covers all services that it is required to cover under federal statutory and constitutional law"; "DoHS does not deny coverage for any Medicaid service for any foster child that has been determined by DoHS to be medically necessary for that child"; "DoHS does not exclude foster children from participation in the Medicaid program on the basis of disability, and DoHS does not deny any Medicaid services to foster children on the basis of disability"; "All foster children in West Virginia are . . . enrolled in Medicaid"; and "None of the written policies in the BMS Policy Manual pertaining to the treatment of foster children violate federal statutory or constitutional law."  Ex. M, at 30–32, ¶¶ 234, 239–40, 244.

As of the date of this filing, Defendants have never received any redlines, comments, or alternative proposals from Plaintiffs in response to Defendants' Proposed Exhibit Stipulations.  Ex. C, ¶ 9.

As a result of Plaintiffs' delays, Defendants' counsel has spent significant time over the last several weeks, at significant financial cost to Defendants, preparing to prove facts to which the parties should stipulate and drafting motions *in limine* to admit exhibits the admissibility of which the parties should stipulate.   Ex. C, ¶ 10.  Further, if Defendants are required to prove basic facts and the admissibility of documents, all of which are appropriate for stipulations, Defendants cannot realistically present their defense in the five days previously contemplated.

## ARGUMENT

**I.    This Court Should Compel Plaintiffs to Accept Defendants' Proposed Stipulations.**

8

In Defendants' Proposed Exhibit Stipulations, Defendants ask Plaintiffs to stipulate to authenticity and admissibility of reports, policies, and data maintained by Defendants, all of which has been produced to Plaintiffs in discovery, and the authenticity and admissibility of data collected and maintained by the federal government or trusted third parties using government data. *See* Ex. A.

In Defendants' Proposed Fact Stipulations, Defendants ask Plaintiffs to stipulate to an uncontroversial summary of basic information about how the child welfare system operates; the role of state circuit courts in that system; Defendants' written policies; actions Defendants have taken in the last several years with respect to caseworker workloads, case planning, placement array, and community-based services; and data about placements and services delivered to General Class members. *See generally* Ex. B.  In fact, Defendants' Proposed Fact Stipulations largely reflect Defendants' SUF – all of which included citations to documents, declarations, or depositions – that accompanied Defendants' Motion for Summary Judgment, *compare* Ex. B, *with* ECF No. 534, and Plaintiffs did not dispute any of the facts in Defendants' SUF in summary judgment briefing, *see generally* ECF Nos. 548, 549, indicating that Plaintiffs did not believe there was a "genuine dispute" about any of them, *see* Fed. R. Civ. P. 56(c), (e).

In the interest of an orderly and efficient trial that can reasonably be completed within the 11 days that the parties contemplate, the Court should compel Plaintiffs to accept Defendants' Proposed Exhibit Stipulations and Defendants' Proposed Fact Stipulations.

A court may compel a party to accept evidentiary stipulations pursuant to the court's authority to "take appropriate action" on "simplifying the issues," "obtaining admissions and stipulations about facts and documents to avoid unnecessary proof," and "avoiding unnecessary proof and cumulative evidence," Fed. R. Civ. P. 16(c), and pursuant to its authority to "decide any

preliminary question about whether . . . evidence is admissible," Fed. R. Evid. 104(a), which

"should be construed so as to," among other things, "eliminate unjustifiable expense and delay,"

Fed. R. Evid. 102.  *See United States v. Am. Tel. & Tel. Co.*, 83 F.R.D. 323, 332 n.18 (D.D.C. 1979)

("In this vein, Rule 16 contemplates that the Court may compel parties to stipulate as to all matters

concerning which there can be no real issue.  The spirit of a pre-trial procedure is not only to call

the parties together and ask them to stipulate as to all matters concerning which there can be no

dispute, but to compel them to stipulate." (cleaned up)).  *But see J.F. Edwards Constr. Co. v.*

*Anderson Safeway Guard Rail Corp.*, 542 F.2d 1318, 1325 (7th Cir. 1976).[1]

Compelling a party to accept a stipulation

> should not be done without carefully considering the following
> factors: (1) the importance of the facts in question to the case of the
> party opposing the stipulation (for example, is the fact of modest
> relevance, or central to the case); (2) the nature of the stipulation,
> and whether it is qualified or conditional; (3) the scope of the
> proposed stipulation (stipulation to a specific fact or item of
> evidence as opposed to a stipulation to one or more elements of a
> claim or defense); and (4) the impact of the stipulation, if ordered,
> on the burden of persuasion borne by the party resisting the
> stipulation.

*Briggs v. Dalkon Shield*, 174 F.R.D. 369, 373 (D. Md. 1997).

Defendants' Proposed Exhibit Stipulations.  In this case, this Court should compel Plaintiffs

to accept Defendants' Proposed Exhibit Stipulations or, in the alternative, admit the exhibits listed

therein, to avoid wasting unnecessary trial time on the rigamarole of authenticating and admitting

dozens of exhibits and to avoid wasting pre-trial resources preparing witnesses to authenticate and

---

[1] Rule 16 "does not specifically state that the court may compel a party to stipulate to facts which his or her opponent offers to stipulate to, and, as might be imagined, there is authority for both sides of this proposition." *Briggs*, 174 F.R.D. at 372.

lay the foundation for uncontroversial evidence.[2]  Unfortunately, Defendants' counsel has already spent significant time drafting motions *in limine* to admit exhibits the admissibility of which the parties should have stipulated to weeks ago.  Ex. C, ¶ 10.

In addition, Defendants' Proposed Exhibit Stipulations are "narrow," as they only concern the admissibility of documentary evidence and do not require Plaintiffs to admit to any material facts.  Accordingly, the stipulation would have no impact "on the burden of persuasion borne by" Plaintiffs.  It is not even clear that Plaintiffs will oppose the admission of these exhibits. Defendants have tried for over a month to obtain Plaintiffs' input about these exhibit stipulations to determine which, if any, of the exhibits Plaintiffs may object to, but Plaintiffs have declined to engage.  *See* Background, *supra*.

Defendants' Proposed Fact Stipulations.  This Court should also compel Plaintiffs to accept Defendants' Proposed Fact Stipulations (Exhibit B).  This would be an unusual step, and Defendants are not aware of any case in which a district court has compelled fact stipulations in analogous circumstances.  But Plaintiffs' conduct with respect to negotiating stipulations is a highly unusual circumstance, and it threatens to force the parties to waste this Court's time proving facts at trial that are not actually in dispute (and preparing witnesses to testify about those facts). As explained above, Plaintiffs waited six weeks to provide comments on Defendants' Proposed Fact Stipulations.  When they finally did respond, Plaintiffs cut pages and pages of proposed stipulations about basic facts that Plaintiffs did not dispute at summary judgment and even, in some cases, admitted in response to discovery requests.  *See* Background, *supra*.  For example,  Plaintiffs refused to stipulate to basic facts about: the number of foster children in different types of

---

[2] In a separate motion *in limine*, Defendants ask this Court to admit Defendants' Rule 1006 summaries, which are also subject to proposed stipulations to which Plaintiffs have yet to respond.

placements as reported in Defendants' Legislative Foster Care Reports, which have never been disputed in the course of this five-year litigation, Ex. M, at 3–4, ¶¶ 11–20; the data reported by the federal government in the annual CFSR data profile, Ex. M, at 5–7, ¶¶ 24–40; and the number of foster children receiving community-based services and the amount DoHS has spent on those services, Ex. M, at 42, 44, 45, 46, 48–49, ¶¶ 313(f)-(j), 315(d), 318(d), 319(f)–(h), 339.

While the facts in Defendants' Proposed Fact Stipulations may be "important[]" to Plaintiffs' case and/or Defendants' defenses, they are also uncontroversial: they are largely similar to Defendants' SUF filed in support of Defendants' Motion for Summary Judgment, *compare* Ex. B, *with* ECF No. 534, and Plaintiffs did not dispute any of the facts set forth in that SUF, *see generally* ECF Nos. 548, 549, which they were required to do under Rule 56 if they disputed any of those facts.  Further, "the scope of the proposed stipulation[s]" weighs in favor of compelling Plaintiffs to accept them: they do <u>not</u> include any "stipulation to one or more elements of a claim or defense," but rather include basic information about how the child welfare system operates; Defendants' written policies; actions Defendants have taken in the last several years; and data about placements and services delivered to foster children.  *See generally* Ex. B.  These basic and undisputed facts are important, and it would waste limited trial time to introduce evidence to prove them up.  For example, introducing the summary data about services to and placements of foster children would potentially require Defendants to call multiple authentication witnesses to verify the reams of underlying data on which the summary data is based.  In short, the adoption of Defendants' Proposed Fact Stipulations would avoid wasting this Court's time proving facts that

are not in dispute, while still allowing Plaintiffs to introduce evidence to attempt to prove their claims.[3]

## II.    This Court Should Exclude Evidence Plaintiffs Failed to Disclose in Response to Defendants' Interrogatories 5–16.

Litigation is not a game of hide the ball.  Federal Rule of Civil Procedure 26(e) requires parties to supplement interrogatory responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect."  Fed. R. Civ. P. 26(e)(1). Rule 37(c)(1) provides that when a party fails to so supplement, "the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The non-disclosing party has the burden of proving that the non-disclosure was "substantially justified" or "harmless."  *See, e.g.*, *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2012 WL 1596722, at *6 (E.D.N.C. May 7, 2012) (unpublished) (citing *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596–98 (4th Cir. 2003)).

### A.  Plaintiffs Failed to Timely Supplement Their Interrogatory Responses.

Plaintiffs' Witnesses.  Interrogatories 5–16 requested Plaintiffs to "[i]dentify and describe" all "material facts and evidence" supporting each of the key allegations underlying their claims. Ex. D, at 5–6.  The Interrogatories specifically defined "identify" to mean, "when used in reference to a natural person . . . to state the person's full legal name; present or last known address and telephone number, business and residential; present or last known occupation, job title, business affiliation, and nature of business."  *Id*. at 3.  And the Interrogatories defined "describe" to make

---

[3] Despite Plaintiffs' delays, Defendants will continue to work with Plaintiffs in good faith to prepare fact stipulations in advance of trial.

clear that "[t]he description shall particularize as to . . . [the] identity of any or all person(s) involved." *Id*. at 2.

Accordingly, Interrogatories 5–16 required Plaintiffs to list any individuals with "material" information relevant to the allegations described in Interrogatories 5–16. However, Plaintiffs never supplemented their responses to Interrogatories 5–16 to include <u>any</u> of the witnesses who Plaintiffs "expect" to or "may" call at trial. Ex. C, ¶¶ 3, 5.

Nor can Plaintiffs show that their failure to timely disclose these witnesses in response to Interrogatories 5–16 was "substantially justified" or "harmless." *See* Fed. R. Civ. P. 37(c)(1). As for the former, there is no reason why Plaintiffs could not have learned about and disclosed their witnesses to Defendants prior to the close of discovery on July 5, 2024, which was nearly five years after this case was filed.

As for the latter, the non-disclosure was not harmless because, if Plaintiffs had timely disclosed their witnesses in response to Interrogatories 5–16, Defendants would have had any opportunity to depose those witnesses before the July 5 close of discovery, which would have allowed Defendants to learn about and probe whatever allegations those witnesses may advance at trial. Plaintiffs' non-disclosures prevented Defendants from doing so. In contrast to most of the witnesses listed in Plaintiffs' pretrial disclosures, Defendants had an opportunity to depose Plaintiffs' three expert witnesses and Defendants have an opportunity to meet with four current DoHS leaders (plus former Commissioner Pack) on Plaintiffs' witness list after the close of discovery, and therefore Defendants do not seek to exclude those eight witnesses. For the remaining 20 witnesses,[4] Defendants did not know that Plaintiffs believed they possessed "material

---

[4] These 20 witnesses are: Bill Crouch, Carrie Jackson, Debora Pigman, Elizabeth Layne Diehl, Esq., Gordon Simmons, Heather Dalton, Jennifer Taylor, Jeremiah Samples, Jessica Combs,

evidence and facts that support" Plaintiffs' key allegations, and therefore Defendants did not depose them before the close of discovery.[5]  Defendants could theoretically have moved for leave to depose these 20 witnesses when they learned about them between August 26 and September 27, 2024, but it was not possible for Defendants' counsel to both prepare for an orderly and efficient trial presentation <u>and</u> depose 20 individuals in September and October.  Ex. C, ¶ 7.

Because Plaintiffs failed to timely disclose these witnesses in response to Interrogatories 5–16, and Plaintiffs cannot prove that non-disclosure was "substantially justified" or "harmless" for 20 of Plaintiffs' 28 witnesses, this Court should exclude testimony from those 20 witnesses. *See* Fed. R. Civ. P. 37(c)(1).

<u>Plaintiffs' Exhibits</u>.  Of the 740 documents disclosed in Plaintiffs' Third Amended Supplemental Rule 26(a)(3) Disclosures, 292 were <u>not</u> listed Plaintiffs' Third Amended Responses to Interrogatories 5–16, and 99 were <u>not</u> even listed in Plaintiffs' Fourth Amended Responses.  Ex. C, ¶ 11.  Plaintiffs' failure to list these documents violated Rule 26(e)'s timely supplementation requirement.  Fed. R. Civ. P. 26(e)(1).

Plaintiffs cannot show that their failure to timely add these documents to their interrogatory responses was "substantially justified" or "harmless."  *See* Fed. R. Civ. P. 37(c)(1).  As to the former, the overwhelming majority of the 292 documents not listed in Plaintiffs' Third Amended Responses, and the overwhelming majority of the 99 documents listed in Plaintiffs' Fourth Amended Responses, were produced by Defendants to Plaintiffs on or before June 19, 2024.  Ex.

---

Kathie Giboney, Marissa Sanders, Sarah Cody, Stacy Jacques, Stephanie Williams, Olivia Frausto, Araina Moore, Brittany Payne, Charla Cody, Erin Suh, and Timothy Reynolds.

[5] Defendants were aware that Plaintiffs believed that two of those 20 witnesses (Bill Crouch and Jeremiah Samples) had relevant information, but Plaintiffs' responses to Interrogatories 5–16 suggested that Plaintiffs believed that Mr. Crouch and Mr. Samples did <u>not</u> have "material facts and evidence that support" Plaintiffs' key allegations in the case.

C, ¶ 11.  Accordingly, Plaintiffs had many months (or years) to review these documents and supplement their interrogatory responses.  They just chose not to.

As to the latter, Plaintiffs cannot prove that their failure to disclose hundreds of documents was harmless.  Plaintiffs propounded hundreds of broad requests for production and demanded extraordinarily broad electronically stored information search terms that required Defendants to produce over 710,000 documents, totaling over 3.1 million pages.  To allow Defendants to promptly produce (and avoid exorbitant costs in producing) such voluminous information, the parties agreed that Defendants would not manually review documents before producing to Plaintiffs, and Defendants did not manually review most of these documents.  Accordingly, to understand which of these 710,000 documents that Plaintiffs might use and believed contained relevant evidence, Defendants served Plaintiffs with Interrogatories 5–16 in October 2023.  Ex. D.  Plaintiffs refused to provide a substantive response to these interrogatories for almost eight months, and when Plaintiffs finally responded on June 14, 2024, Plaintiffs listed 10,000 non-duplicative documents, significantly limiting Defendants' ability to understand which documents Plaintiffs believed support their claims before the July 5 close of discovery.  Even then, Plaintiffs failed to list hundreds of documents in their responses to Interrogatories 5–16 that they would eventually attempt to use at trial.  Plaintiffs' tactics deprived Defendants of the ability to learn what evidence Plaintiffs believed support their claims and then conduct discovery based on that evidence, such as by deposing third party providers or foster parents about whom the documents relate.  Accordingly, this Court should preclude Plaintiffs from using any of the exhibits not disclosed in Plaintiffs' Third Amended Responses or Plaintiffs' Fourth Amended Responses.  *See* Fed. R. Civ. P. 37(c)(1).

### B. Witnesses and Exhibits Not Responsive to Interrogatories 5–16 Should Be Excluded Under Federal Rules of Evidence 401, 402, and/or 403.

To the extent Plaintiffs argue that the witnesses or documents that Plaintiffs did not list in response to Interrogatories 5–16 are not responsive to those interrogatories, then they should be excluded pursuant to Rules of Evidence 401, 402 and/or 403.

Interrogatories 5–16 asked about "material facts and evidence" supporting all key factual allegations underlying Plaintiffs' class claims (except for facts and evidence relating to the relief Plaintiffs seek), *i.e.*, all "material facts and evidence that support Plaintiffs' allegation[s] that": "D[oHS] maintains an inadequate array of appropriate placements for members of the General Class"; "D[oHS]'s placement array rises to the level of an unreasonable risk for members of the General Class"; "Defendants are deliberately indifferent to the alleged unreasonable risk to members of the General Class allegedly caused by D[oHS]'s placement array"; "D[oHS] provides a lack of appropriate case planning for members of the General Class"; "deficiencies in case planning subject the proposed General Class to an unreasonable risk of harm and that Defendants are deliberately indifferent to that known risk"; "D[oHS] has high caseloads and chronic understaffing"; "Defendants' caseload practice prevents D[oHS] from providing adequate care to Plaintiffs' and that 'Plaintiffs are resultantly exposed to a substantial risk of harm"; "Defendants are deliberately indifferent to the issue of alleged high caseloads and chronic understaffing and the risks associated with such caseloads and understaffing"; "Defendants' failure to provide community-based treatment leaves courts with no choice but to institutionalize members of the ADA Subclass"; "deficient provision of services and the lack of community-based services result in, or create a risk of, institutionalization for ADA Subclass members"; "the lack of community-based services results in, or creates a risk of, institutionalization for ADA Subclass members with an Intellectual Disability who do not have a Mental Health Disability"; and "the lack of community-based services results in, or creates a risk of, institutionalization for ADA Subclass

members with a Physical Disability who do not have a Mental Health Disability." Ex. D, at 5–6 (cleaned up).

Accordingly, any witness or exhibit not responsive to these interrogatories is not relevant to Plaintiffs' claims—and thus is inadmissible, *see* Fed. R. Evid. 402—because it does <u>not</u> have "any tendency to make a fact" that is "of consequence in determining the action" "more or less probable," Fed. R. Evid. 401.  At the very least, any "probative value" of witnesses and exhibits that are not responsive to Interrogatories 5–16 "is substantially outweighed by a danger of . . . confusing the issues, . . . undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.  Particularly in a six-day case-in-chief, where Plaintiffs purport to "expect" to call at least 20 witnesses and "expect" to introduce at least <u>453 categories of exhibits</u> (<u>683 documents</u>), any witness or exhibit that Plaintiffs acknowledge is not responsive to Interrogatories 5–16 would be cumulative, confuse the issues, waste time, and result in undue delay.

### III.  This Court Should Order Plaintiffs to Amend Their Rule 26(a)(3) Disclosures to Limit Their Exhibit List to a Reasonable Number That Is Realistic for a Six-Day Case-in-Chief.

"Pretrial disclosures pursuant to Fed. R. Civ. P. 26(a)(3) are intended to prevent prejudice at trial by putting the parties on notice of what evidence the opposing party plans to offer and to enable the Court to conduct trial proceedings efficiently." *U.S. Equal Emp. Opportunity Comm'n v. Ohio State Univ.*, No. 2:20-CV-04624, 2023 WL 1070245, at *1 (S.D. Ohio Jan. 27, 2023) (unpublished).  Accordingly, a court may order a party to cull its Rule 26(a)(3) exhibit list, where

the list is so voluminous as to either obscure the documents that the disclosing party intends to introduce or to make it unlikely that the documentary evidence can be presented efficiently at trial.[6]

That is the case here with respect to Plaintiffs' exhibit list, and therefore this Court should order Plaintiffs to cut their Rule 26(a)(3) exhibit list to a reasonable number of exhibits that is realistic for a six-day trial presentation. As explained above, Plaintiffs estimate a six-day case-in-chief, but Plaintiffs' Third Amended Supplemental Rule 26(a)(3) Disclosures list 452 categories of exhibits (683 documents) that Plaintiffs "expect" to introduce and 57 documents that Plaintiffs "may" use (740 total document). Ex. F. That is, Plaintiffs' pretrial disclosures suggest that Plaintiffs plan to introduce over 110 documents per day (683 documents, divided by six trial days). This is impossible to do in an orderly manner, particularly since Plaintiffs still have not sent Defendants any stipulations about the admissibility of exhibits and Plaintiffs' pretrial disclosures reveal that Plaintiffs do not plan to introduce any of the 452 categories of exhibits (683 documents) through Rule 1006 summaries or other more efficient means. Moreover, Plaintiffs' pretrial disclosures state that Plaintiffs also "may" use any number of thousands of documents in any of several broad categories, such as "[t]he transcript of any deposition in this matter" and "[a]ny document . . . otherwise produced by either party in discovery." Ex. F, at 34. And these catch-all categories do not comply with Rule 26(a)(3)'s requirement for "'a separate listing of each such

---

[6] *See, e.g.*, *S.E.C. v. Badian*, 822 F. Supp. 2d 352, 367 (S.D.N.Y. 2011), *amended on reconsideration in part on other grounds*, No. 06 CIV. 2621 LTS, 2012 WL 2354458 (S.D.N.Y. June 20, 2012) (requiring plaintiff to "cull, revise, redesignate and re-disclose" its exhibit list because it "unreasonably hinders Defendants' ability to prepare for trial and makes it unlikely, as well, that the documentary evidence can be presented to the jury in an appropriately clear and efficient manner"); *Ader v. Simonmed Imaging Inc.*, No. 17-cv-02085, 2020 WL 13442907, *2 (D. Ariz. Sept. 22, 2020) (unpublished) (ordering defendant to "cull" and "revise" the exhibit list, with "due regard to considerations of relevance, avoidance of accumulation, clarity of presentation of issues at trial, and whether the volume of material proposed to be presented is consistent with a [factfinder's] likely ability to comprehend its content and significance" (cleaned up)).

exhibit,'" except for "'voluminous items of a similar or standardized character'" that may "'be described by meaningful categories.'" *See Badian*, 822 F. Supp. 2d at 367 (quoting Fed. R. Civ. P. 26(a)(3)(A) (Advisory Committee Note to 1993 Amendment)).

Plaintiffs are either obscuring from Defendants the documents they intend to use, or they are planning for a chaotic and unnecessarily lengthy trial in which nearly all the time will be spent introducing exhibits, or some combination of both.

In contrast, Defendants' Rule 26(a)(3) disclosures list 80 categories of exhibits that Defendants "expect" to introduce at trial. Ex. C, ¶ 12. These 80 categories include 104 total documents: 28 one-page Rule 1006 summaries and 76 other documents (several of which are grouped and will be introduced together). Ex. C, ¶ 12. Defendants have also listed 142 categories of documents that they "may" introduce at trial, with 435 total documents, but 221 of those documents are just the data underlying the Rule 1006 summaries and thus will be cut from Defendants' Rule 26(a)(3) disclosures (and not introduced at trial) once Plaintiffs stipulate to the admissibility of the Rule 1006 summaries (which Defendants sent to Plaintiffs on September 20) or this Court rules on their admissibility pursuant to a concurrently filed motion in limine. Further, dozens more documents on Defendants' Rule 26(a)(3) "may" introduce list will be cut if and when Plaintiffs agree to Defendants' proposed fact stipulations.

## CONCLUSION

For the foregoing reasons, Defendants' motion should be granted.

October 4, 2024                               Respectfully submitted,

                                              */s/* Philip J. Peisch
                                              Philip J. Peisch (WVSB # 13731)
                                              Caroline M. Brown, *pro hac vice*
                                              Julia M. Siegenberg, *pro hac vice*
                                              Rebecca L. Wolfe, *pro hac vice*
                                              Trevor J. Rhodes, *pro hac vice*
                                              Brown & Peisch PLLC
                                              1225 19th Street NW, Ste. 700
                                              Washington, DC 20036


                                              */s/* Steven R. Compton
                                              Steven R. Compton (WVSB #6562)
                                              West Virginia Attorney General's Office
                                              812 Quarrier Street, 6th Floor
                                              Charleston, WV 25301

21

## CERTIFICATE OF SERVICE

I, Philip J. Peisch, hereby certify that I caused a true and correct copy of the foregoing to

be delivered to the following via ECF notification:

Marcia R. Lowry
Julia Tebor
Laura Welikson
Robyn Goldberg
A Better Childhood
355 Lexington Ave., Floor 16
New York, NY 10017

Richard W. Walters
J. Alexander Meade
Shaffer & Schaffer, PLLC
2116 Kanawha Blvd East
P.O. Box 3973
Charleston, WV 25304

J. Marty Mazezka
Andrew Castillo
Disability Rights of West Virginia
5088 Washington St. W., Suite 300
Charleston, WV 25301

October 4, 2024                              /s/ Philip J. Peisch
                                            Philip J. Peisch (WVSB # 13731)
                                            Caroline M. Brown, *pro hac vice*
                                            Julia M. Siegenberg, *pro hac vice*
                                            Rebecca L. Wolfe, *pro hac vice*
                                            Trevor J. Rhodes, *pro hac vice*
                                            Brown & Peisch PLLC
                                            1225 19th Street NW, Ste. 700
                                            Washington, DC 20036


                                             /s/ Steven R. Compton
                                            Steven R. Compton (WVSB #6562)
                                            West Virginia Attorney General's Office
                                            812 Quarrier Street, 6th Floor
                                            Charleston, WV 25301