**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| JONATHAN R., *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| v. | ) | |
| | ) | |
| PATRICK MORRISEY, in his official | ) | Case No. 3:19-cv-00710 |
| capacity as Governor of West Virginia, | ) | |
| *et al.*, *Defendants*. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION**
**TO STAY PROCEEDINGS PENDING RESOLUTION OF**
**PETITION FOR WRIT OF CERTIORARI**

Defendants, the Governor of West Virginia and officials of the West Virginia Department

of Human Services named in their official capacity, move for a stay of proceedings in this case—

or, in the alternative, a stay of any additional discovery and trial in this case—pending resolution

by the United States Supreme Court of a petition for a writ of certiorari that Defendants intend to

file seeking review of the decision that the United States Court of Appeals for the Fourth Circuit

issued on June 4, 2026.  *Jonathan R. v. Morrisey*, No. 25-1239, 2026 U.S. App. Lexis 16669 (4th

Cir. June 4, 2026).  In that decision, the Fourth Circuit reversed this court's dismissal of Plaintiffs'

claims for lack of jurisdiction and declined to consider Defendants' conditional cross-appeal

challenging the grant of class certification.  Defendants will be petitioning for certiorari on both of

these issues, either one of which would substantially impact further proceedings should the petition

be granted.[1]

---

[1] Defendants consulted with Plaintiffs' counsel before filing this motion, and Plaintiffs oppose
this motion.

1

This Court has authority to stay proceedings pending resolution of a petition for writ of certiorari and, for the reasons given below, it should exercise that discretion here.

## BACKGROUND

On September 30, 2019, Named Plaintiffs, on behalf of themselves and a putative class and three subclasses of foster children, sued the West Virginia Department of Health and Human Services[2] and several state officials, claiming constitutional and statutory injuries and seeking broad, systemic remedies on behalf of a general class and three subclasses. On November 26, 2019, Defendants moved to dismiss. ECF No. 17. While the motion to dismiss was pending, the parties conducted nearly 18 months of discovery. On July 28, 2021, this Court granted Defendants' motion to dismiss. ECF No. 258.

Plaintiffs appealed the initial dismissal, and the Fourth Circuit eventually reversed and remanded, after which the parties engaged in an additional year of discovery. In total, from 2020 through 2024, Defendants produced over 3 million pages of documents, and the parties took 45 depositions.

In August 2023, this Court certified the general class and one subclass. ECF No. 351.

The case was set for trial on May 6, 2025. ECF 657. At the time, Defendants' motion for summary judgment had been pending for several months, ECF No. 533, as were 16 additional motions *in limine* and other motions filed by the parties in anticipation of trial, *see* ECF 647.

On February 28, 2025, before it addressed the pending motions, this Court dismissed the action, holding that "[t]he constitutional doctrine of standing requires that an injury be redressable by a judicial order" and that Plaintiffs' claims for relief were not redressable because the

_____

[2] The West Virginia Department of Human Services (DHS) now administers West Virginia's foster care system.

Constitution "does not allow judges to develop public policy, write budgets, hire caseworkers, or administer state agencies." ECF No. 665, at 1. Plaintiffs appealed, and Defendants filed a conditional cross-appeal challenging the class certification order.

On June 4, 2026, the Fourth Circuit reversed in a divided opinion. App. Doc. 92 (attached as Ex. 1). The Court of Appeals held that "Plaintiffs' requests fall well within the boundaries of lawful injunctive relief," and that the issues raised by this Court were "perhaps valid public policy concerns" but not a "legal bar for redressability." *Id.* at 11, 24. "[A]ccept[ing] as true all material allegations of the complaint and constru[ing] the complaint in favor of the complaining party," the court also rejected Defendants' argument that Plaintiffs did not suffer an injury in fact, finding that Plaintiffs had sufficiently alleged "ongoing" constitutional and statutory rights deprivations in their Complaint. *Id.* at 30. The Fourth Circuit then rejected Plaintiffs' request to reassign the case to a new district judge, finding "no indication" that this Court would be "unable to adjust its legal views in accordance with this Court's mandate" and that "reassignment is also not necessary to preserve the appearance of justice." *Id.* at 38. Finally, the Fourth Circuit found that West Virginia's conditional cross-appeal seeking class decertification was "effectively interlocutory," in light of the court's reversal on the merits, "and thus unreviewable." *Id.* at 39.

Judge Rushing concurred in the judgment in part and dissented in part. In Judge Rushing's view, this Court had "raised legitimate concerns about the limits of federal judicial power and the effectiveness of institutional decrees," but concluded that "precedent establishes that the court could order at least some of the relief Plaintiffs seek." *Id.* at 42–43. Judge Rushing dissented on the panel majority's refusal to consider the class certification cross-appeal, noting that the majority had created a circuit split with the Seventh Circuit as to whether such review should be considered interlocutory. *Id.* at 51. Because the "certified classes define the shape of the case," Judge Rushing

3

believed there was no "meaningful benefit to leaving this question for another day," "highlight[ing]" what she saw as two problems in the certification order. *Id.* at 52–53.

Defendants intend to file a petition for writ of certiorari on both the issue of Plaintiffs' standing to seek "systemic" reform—amounting to complete federal control of the state foster care system—and the separate but related question of whether the panel erred in not reviewing the class certification. Defendants' petition is due September 2, 2026, which in the normal course would result in disposition of the petition sometime in November 2026. *See* Sup. Ct. R. 13, 15–16.

## ARGUMENT

This Court has broad discretion to stay proceedings pending resolution by the Supreme Court of a petition for a writ of certiorari. It is well settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("[T]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *B.P.J. v. W. Va. State Bd. of Educ.*, No. 2:21-cv-00316, 2024 U.S. Dist. LEXIS 101845, at *6-7 (S.D. W. Va. June 7, 2024) (Goodwin, J.) (unpublished) ("A district court has inherent authority to manage its docket, including the authority to stay litigation pending the resolution by another court on an issue which would affect or control the outcome in that litigation.").

Evaluating a motion to stay requires "an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, No. 3:15-14887, 2018 U.S. Dist. LEXIS 247183, at *3 (S.D. W. Va. Apr. 30, 2018) (unpublished) (citing *United States v. Georgia Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977)). Courts generally consider three factors

when evaluating a motion to stay proceedings: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *White v. Ally Fin. Inc.*, 969 F. Supp. 2d 451, 462 (S.D. W. Va. 2013) (Goodwin, J.) (quoting *Tolley v. Monsanto Co.*, 591 F. Supp. 2d 837, 844 (S.D. W. Va. 2008); *Meyers v. Bayer AG,*143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001)).

This Court has repeatedly recognized that judicial economy favors a stay "when a higher court will issue a decision that may affect the outcome of the pending case." *PDR Network, LLC*, 2018 U.S. Dist. LEXIS 247183, at *4 (quoting *White*, 969 F. Supp. 2d at 461–62).  This is true even when a party seeks to stay district court proceedings to petition for Supreme Court review of an appellate court's ruling.  *See id.* ("In the event that the Supreme Court grants PDR Network's Petition for Writ of Certiorari and overturns the Fourth Circuit's interpretation of relevant laws, the original judgment of this Court dismissing this case may be reinstated," in which case "any time spent by the Court or by the parties before that decision is issued would be wasted time and resources."); *see also Promega Corp. v. Life Techs. Corp.*, No. 10-cv-281, Dkt. No. 811 (W.D. Wis. July 15, 2015) (granting a stay motion while defendants' petition for a writ of certiorari was pending before the Supreme Court even though "the chances are slim that the Supreme Court will accept review of any particular case, including this one").

First, interests of judicial economy clearly favor a stay in this case.  In the absence of a stay, this Court will need to decide Defendants' motion for summary judgment filed in 2024, as well as the other 16 pre-trial motions, and set a new trial date.  In addition, if Plaintiffs seek and the Court grants Plaintiffs additional limited discovery in advance of trial, Defendants will be subject to a *third* burdensome discovery period in this case.  However, all of this additional work by the Court and the parties could prove unnecessary if the Supreme Court grants Defendants'

5

petition for certiorari, because a decision on either question presented could fundamentally alter the scope of any additional proceedings.

For example, if the Supreme Court were to grant the petition and agree with this Court that Plaintiffs' claims for "systemic relief" exceed the court's Article III equitable powers, this case would be dismissed in its entirety. As for review of class certification, as Judge Rushing aptly recognized in her dissent, "the certified classes define the shape of this case," and "the range of injunctions available to Plaintiffs and the potential cost of compliance for Defendants is substantially impacted by which and how many classes or subclasses are certified and the sizes and parameters of those classes." App. Doc. 92, at 52–53. Proceeding to summary judgment, trial, or re-opening discovery when the Supreme Court might weigh in on one or both of these issues is precisely the type of "wasted time and resources" that this Court has recognized warrants a stay. *See PDR Network, LLC*, 2018 U.S. Dist. LEXIS 247183, at \*4. "A temporary stay will prevent unnecessary litigation and, as a result, is in the interest of judicial economy." *Mullis v. Mt. State Univ., Inc.*, No. 5:12-03158, 2014 U.S. Dist. LEXIS 151831, at \*4 (S.D. W. Va. Oct. 28, 2014) (unpublished).

Second, not staying the action imposes hardship on the state officials, state employees, and the taxpayers of West Virginia, as Defendants will need to prepare for trial and/or take on the potential burdens of renewed discovery in a case that has already been crushingly resource intensive. In either case, state officials and staff will need to devote substantial time, attention, and financial resources to the litigation rather than the important day-to-day management and operations of the child welfare system. As this Court has previously explained in granting a similar stay, denial of Defendants' motion would "compel the taxpayers of the State to fund district court litigation that could ultimately prove moot and force counsel to divide their attention between two

6

forums," which "would [] injure Defendants" as they "would be forced to continue litigating this action, depleting time and resources, while also making arguments to the Supreme Court, who could ultimately render the actions of this court moot." *B.P.J.*, 2024 U.S. Dist. LEXIS 101845, at *10 (Goodwin, J.).[3]  Similarly, "it is in the public interest to prevent taxpayers from funding litigation that may be rendered moot by pending appeal." *Id.* at *10-11.

Third, Plaintiffs would not be substantially injured if these proceedings are stayed pending the Supreme Court's review of Defendants' petition for certiorari.  This case has already involved over six years of litigation, and a brief stay— likely less than six months if certiorari is denied and less than one year if certiorari is granted—will not materially prejudice Plaintiffs' interests.  As is clear on the face of the Complaint, Plaintiffs are not seeking immediate relief but long-term systemic changes that, in similar cases in other States, have taken decades to impose.  *See* Casey Family Programs, *Summary of Child Welfare Class Action Litigation* (April 2026), https://www.casey.org/class-action-summaries-2026update/ (listing 19 States with child welfare systems operating under settlement agreements or consent decrees, several of which have remained under court oversight for decades).  A delay of six to 12 months will not materially alter that timeframe; nor will it stop ongoing state efforts, including through the State's Memorandum of Understanding with the U.S. Department of Justice, to implement changes designed to improve the state child welfare system.  *See, e.g.*, ECF No. 535.

In cases seeking a stay of judgment pending appeal under Rule 62, which Defendants do *not* seek here, a court should also consider whether the applicant for a stay has established a "strong

---

[3] *See also PDR Network, LLC*, 2018 U.S. Dist. LEXIS 247183 at *6 ("Requiring PDR to litigate its case simultaneously through discovery at the district court level and through an appeal at the Supreme Court level would place an undue hardship on it outside the ordinary scope of the routine hardships of litigation.").

likelihood of success on appeal or . . . failing that, it can nonetheless demonstrate a substantial case on the merits." *See, e.g., Hilton v. Braunskill,* 481 U.S. 770, 778 (1987).  To the extent this Court considers an evaluation of the merits of the appeal to be a relevant factor in determining whether to issue a stay, the split decision from the Fourth Circuit confirms that Defendants have at least a substantial case on the merits on both questions they intend to present for certiorari review.  On the issue of justiciability, as Judge Rushing noted, "two different district court judges in this case now have expressed concerns about their authority to interfere with state institutions as radically as Plaintiffs demand" and "the judge's sense that they were being asked to stray beyond their purview was legitimate."  App. Doc. 92, at 45.  While the Fourth Circuit concluded that Supreme Court precedent required reversal, it relied heavily on decades-old precedent, whereas this Court's opinion to the contrary relied on ample more recent cases casting doubt on the equitable powers of this Court to grant the wide-ranging, long-lasting "institutional reform" that Plaintiffs seek.  *See, e.g.*, ECF No. 665 (citing *Whole Women's Health v. Jackson*, 595 U.S. 30, 40 (2021); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *Horne v. Flores*, 557 U.S. 433, 448 (2009); *National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 538 (2012)).  These varying interpretations of Supreme Court case law on the power and reach of the federal courts raise "an important question of federal law" suitable for certiorari review.  *See* Sup. Ct. R. 10(c); *see also Arizona v. Gant*, 556 U.S. 332, 342 (2009) (granting certiorari to resolve lower court disagreement on interpretation of the Court's precedents); *Hughes v. United States*, 584 U.S. 675, 679 (2018) (same).

Likewise, on the class certification issue, Judge Rushing correctly noted that the Fourth Circuit's refusal to consider the State's cross-appeal has created a split with the Seventh Circuit,

App. Doc. 92 at 51.  A split among the Circuits is one of the "compelling reasons" for which the Supreme Court will grant a petition for certiorari.  *See* Sup. Ct. R. 10(a).

## CONCLUSION

For the foregoing reasons, Defendants request that the Court grant their motion to stay any further proceedings in this Court pending resolution of the petition for writ of certiorari by the United States Supreme Court.  In the alternative, Defendants request that the Court stay any additional discovery and trial in this case pending resolution of the writ of certiorari.

Respectfully submitted,

June 26, 2026

*/s/* Philip J. Peisch
Philip J. Peisch (WVSB #24403)
Caroline M. Brown
Julia M. Siegenberg
Kendra Doty
Brown & Peisch PLLC
1220 19th Street NW, Suite 210
Washington, DC 20036

*/s/* Steven R. Compton
Steven R. Compton (WVSB #6562)
West Virginia Attorney General's Office
812 Quarrier Street, 6th Floor
Charleston, WV 25301

9

**CERTIFICATE OF SERVICE**

I, Philip J. Peisch, hereby certify that I caused a true and correct copy of Defendants'

Memorandum in Support of Defendants' Motion to Stay Proceedings Pending Resolution of

Defendants' Petition for Writ of Certiorari to be delivered to the following via ECF notification:

Marcia Robinson Lowry
A Better Childhood
355 Lexington Ave. Floor 16
New York, NY 10017

Richard W. Walters
J. Alexander Meade
Shaffer & Schaffer, PLLC
2116 Kanawha Blvd East
P.O. Box 3973
Charleston, WV 25304

Lori Waller
Disability Rights of West Virginia
1207 Quarrier Street, Suite 400
Charleston, WV 25301


June 26, 2026

/s/ Philip J. Peisch
Philip J. Peisch (WVSB #24403)
Caroline M. Brown
Julia M. Siegenberg
Kendra Doty
Brown & Peisch PLLC
1220 19th Street NW, Suite 210
Washington, DC 20036

/s/ Steven R. Compton
Steven R. Compton (WVSB #6562)
West Virginia Attorney General's Office
812 Quarrier Street, 6th Floor
Charleston, WV 25301

10