**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

JONATHAN R., et al.,

          Plaintiffs,

v.                                                                          CIVIL ACTION NO.   3:19-cv-00710

PATRICK MORRISEY, et al.,

          Defendants.

**ORDER**

In 2019, Plaintiffs, a class of children in West Virginia state foster care custody, filed their class action complaint. [ECF No. 1]. They allege that Defendants, state executives, violated constitutional and statutory rights by the state's policies and practices regarding foster care. *Id*. The Plaintiffs' depiction of the foster care system is bleak, dysfunctional, underfunded, and in violation of the United States Constitution and West Virginia law. *Id*.

But that was nearly seven years ago. Only a glance at the public docket would show that the litigation of this case has been zealous, the discovery voluminous, and the motion practice constant. In the same way, this case has presented numerous legal questions for two different district judges, two appeals to the Fourth Circuit, two reversals, and already one petition for certiorari denied. And because the court will not decide a challenge to a living system on a stale record, the parties will need to engage in additional discovery since the Defendants' Motion for Summary Judgment was filed nearly two years ago. [ECF No. 533].

For the reasons that follow, the Defendants' Motion to Stay, **[ECF No. 685]**, is **DENIED**; limited discovery is **REOPENED**; and the court **ORDERS** this case proceed under an amended schedule.

### I.      Motion to Stay

On June 26, 2026, the Fourth Circuit's mandate was filed on the docket and this court regained jurisdiction over this case. That same day Defendants filed a Motion to Stay, [ECF No. 685], because they intend on filing a petition for certiorari with the United States Supreme Court. Defendants represent that Plaintiffs oppose the motion, but no response has yet been filed.

A district court has inherent authority to manage its docket, including the authority to stay litigation pending the resolution by another court on an issue which would affect or control the outcome in that litigation. *See generally Ryan v. Gonzales*, 568 U.S. 57, 74, 133 S. Ct. 696, 184 L. Ed. 2d 528 (2013); *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). "The determination by a district judge in granting or denying a motion to stay proceedings calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977). Although a district court has broad discretion, the party seeking the stay must, nonetheless, "justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). There are four factors that a district court generally considers with respect to a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the

applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987). *See also B.P.J. v. W. Va. State Bd. of Educ.*, No. 2:21-cv-00316, 2024 U.S. Dist. LEXIS 101845, at *6–7 (S.D. W. Va. June 7, 2024) (Goodwin, J.) (granting a motion to stay because the transgender Plaintiff was permitted to play high school sports while the State sought Supreme Court review).

Defendants assert that a stay (1) promotes judicial economy, (2) relieves state officials from litigation hardship, and (3) would not "substantially" injure the Plaintiffs. [ECF No. 686, at 5–7]. I disagree.

As already observed, this case began seven years ago and has been mired with delay. And while Defendants are certainly entitled to seek further review of important constitutional questions, they cannot continue to stall this litigation. *See United States v. Bell*, 5 F.3d 64, 66–67 (4th Cir. 1993) (When the Fourth Circuit "remands for further proceedings, a district court must, except in rare circumstances, 'implement both the letter and spirit of the … mandate, taking into account [its] opinion and the circumstances it embraces.'" (quoting *United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993))).[1] Defendants' speculation about the time necessary to review the petition and the likelihood of the Court granting the petition is guess-work at best and insufficient to justify a stay.

Defendants' assertion that Plaintiffs will not be harmed by a stay is similarly baseless. The allegations of constitutional violations, institutional failure, and harm to children in State custody

---

[1] Defendants themselves make the point for urgency: "Plaintiffs are not seeking immediate relief but long-term systemic changes that, in similar cases in other States, have taken decades to impose." [ECF No. 686, at 7]. Of course, the court must first consider liability, if, in fact, there have been constitutional violations. But the point is that the foster care system is complex and all parties, as well as the court, will benefit from evaluating reform sooner rather than later.

are serious, in some cases extreme, and another delay in these proceedings risks further abuses before this court has had an opportunity to consider the claims presented.

For the foregoing reasons, Defendants' Motion to Stay, **[ECF No. 685]**, is **DENIED**.

## II.      Provisional Constitutional Standard

The parties disagree on much in this case, including the applicable standard. As the court observed in the parties previously filed motions, Plaintiffs assert that the "professional judgment" standard applies and Defendants assert that the "deliberate indifference" standard applies. *Compare* [ECF No. 548, at 3–5] *with* [ECF No. 535, at 3–4]. For the reasons that follow, I believe neither apply.

Begin with the United States Constitution. The Substantive Due Process Clause of the Fourteenth Amendment acts "only as a negative prohibition on state action." *Pinder v. Johnson*, 53 F.3d 1169, 1174 (4th Cir. 1995). The purpose of Substantive Due Process is "to protect the people from the State," not to ensure that the State protects them from private persons. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). An exception, however, to the general no-duty-to-act rule was articulated in *Estelle* (the State is obligated "to provide medical care for those whom it is punishing by incarceration") and *Youngberg* (the State has "a duty to provide certain services and care" to institutionalized persons). *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (applied in the Eighth Amendment context); *Youngberg v. Romeo*, 457 U.S. 307, 317 (1982) (extending the application to the Due Process Clause).

In *DeShaney*, the Supreme Court affirmed that exception. 489 U.S. at 197. The State has a "duty to assume some responsibility for [the] safety and general well-being" of persons taken and held in its custody. *Id.* at 199–200. When the State restrains an individual's liberty and simultaneously "fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical

4

care, and reasonable safety," Substantive Due Process is violated. *Id.* at 200. This, as I address later, is the bedrock of the appropriate standard.

The Fourth Circuit has applied these principles in the foster care context. *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 175 (4th Cir. 2010) ("*Johnson*"). In *Johnson*, the minor plaintiff alleged under § 1983 that the defendant, an adoption specialist employed by South Carolina's Department of Social Services, violated her substantive due process rights by knowingly placing her in dangerous foster care settings with another sexually abusive minor. *Id.* at 168. The court held that when the State affirmatively acts to restrain a child's liberty, substantive due process protections are triggered, "imposing 'some responsibility for [the child's] safety and general well-being.'" *Id.* at 175 (alteration in original) (quoting *DeShaney*, 489 U.S. at 200). That duty includes "a duty not to make a foster care placement that is deliberately indifferent to the child's right to personal safety and security." *Id.*

Of course, substantive due process responsibilities of the State are not so broad to encompass every state action. Social workers are not constitutionally bound to protect children from unknown dangers, nor is the State liable for "incidental injuries or infrequent acts of abuse." *Id.* (citing *Taylor ex rel. Walker v. Ledbetter*, 818 F.2d 791, 797 (11th Cir. 1987)). Carelessness and negligence of state officials cannot support a claim. *Id.* Instead, deliberate indifference, "implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice." *Id.* (citing *White by White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997)).

In a different context, the Fourth Circuit has also rejected the "deliberate indifference" standard in favor of a "lower standard of culpability"—the "substantial departure from accepted professional judgment, practice, or standards." *Doe 4 ex rel. Lopez v. Shenandoah Valley Juv. Ctr.*

*Comm'n*, 985 F.3d 327, 342–43 (4th Cir. 2021) ("*Shenandoah Valley*") (citing *Youngberg*, 457 U.S. at 323). In *Shenandoah Valley*, a class of unaccompanied immigrant children, under § 1983, sued the defendant juvenile center for failing to provide constitutionally adequate mental health care. *Id.* at 329. The district court granted the defendant's motion for summary judgment on that claim, applying the "deliberate indifference" standard and noting that courts have applied that standard to civil detainees and immigrant detainees as well. *Id.* at 335.

The Fourth Circuit reversed, relying on the Supreme Court's *Youngberg*, which held that— in the context of an involuntarily committed adult mental health patient—"'liability may be imposed only when the decision by the professional' represents a 'substantial departure from accepted professional judgment.'" *Id.* at 339 (quoting *Youngberg*, 457 U.S. at 323). The Fourth Circuit considered the difference between a pre-trial detainee, who is taken into custody "because the state believes [he] has committed a crime," and an involuntarily committed psychiatric patient, who is confined for treatment. *Id.* at 339 (citing *Patten v. Nichols*, 274 F.3d 829, 840–41 (4th Cir. 2001)). A pre-trial detainee succeeds on his claim only when the State is deliberately indifferent, while the patient succeeds when the State substantially departs from accepted professional judgment. *Id.* The court also considered the "constitutionally different" status of children, who may be particularly vulnerable to "influence and psychological damage." *Id.* at 342 (citing *Eddings v. Oklahoma*, 455 U.S. 104, 115–16 (1982)).

The court held that "a facility caring for an unaccompanied child fails to provide a constitutionally adequate level *of mental health care* if it substantially departs from accepted professional standards." *Id.* (emphasis added). According to the court, that standard requires more than negligence or mere departures, and courts are instructed not to "determine the 'correct' or 'most appropriate' medical decision." *Id.* at 342–43. Instead, the question is whether "the decision

6

was so completely out of professional bounds as to make it explicable only as an arbitrary, nonprofessional one." *Id.* at 343 (citing *Patten*, 274 F.3d at 845). The subjective components of decisions made by an institutional medical professional earn deference, but only if those decisions reflect "an actual exercise of medical judgment." *Id.* (citing *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).

So those are the two standards and their application. The problem is that neither fit this case. Deliberate indifference is a harsh standard, derived from the prison context where individuals are detained in the custody of the State because of their unlawful conduct. The professional judgment standard is less severe but nonetheless applied in a specific context where certain medical decisions may be appropriately challenged against some industry standard.

Institutional reform of a foster care system is different. First, and most obvious, children committed into the custody of and under the *care* of the State are distinguishable from prisoners. Indeed, "children are constitutionally different," at least in criminal sentencing. *Miller v. Alabama*, 567 U.S. 460, 471–72 (2012) (relying on "common sense," "what 'any parent knows,'" and "science and social science as well"). "It is the interest of youth itself, and of the whole community, that children be both safeguarded from abuses and given opportunities for growth into free and independent well-developed" persons. *Prince v. Massachusetts*, 321 U.S. 158, 165 (1944).

Deliberate indifference is a standard built to cabin the punishment of those convicted of crime. A child in foster care, however, is not held to be punished. The State took him, displacing his own protectors, on the representation that it would keep him safe.

A punishment gauge like that used in deliberate indifference analysis is the wrong instrument for a protective relationship like foster care.

But the professional judgment standard likewise fails to adequately address the system-

7

wide plight of foster children or Plaintiffs' claims and requested relief. Its application, and the Fourth Circuit's explanation of the standard, necessarily limit the use of the professional judgment standard.

Regardless, the court cannot abdicate a constitutional floor of treatment to the ever-flexible and unagreed upon professional standards of an entire foster care system.

Start with *Youngberg*. There the developmentally impaired plaintiff asserted a substantive due process right to training and habilitation while involuntarily committed. *Youngberg*, 457 U.S. at 316. Habilitation referred to the "training and development of needed skills," to which the plaintiff asserted he was entitled to a minimal level of, that would be decided on a "case-by-case basis." *Id.* at 317. The Court held that "minimally adequate or reasonable training" was required under the plaintiff's substantive due process liberty interests. *Id.* at 319. What "reasonable training" constitutes is decided by a qualified professional, the decision is presumptively valid, and the courts owe deference to it. *Id.* at 322–23 ("Moreover, there certainly is no reason to think judges or juries are better qualified than appropriate professionals in making such decisions."). Liability attaches only when that decision "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323.

The facts of the case and the Court's narrow holding distinguish it from *Jonathan R.* First, the due process right that established the standard was a right to training and habilitation for a developmentally impaired institutionalized plaintiff. *Id.* at 316. Here, the General Class asserts six broader rights generally concerning protection, emotional well-being, duration, and conditions of foster care. [ECF No. 1, ¶ 373]. Second, *Youngberg* essentially concerned one decision by one medical professional concerning one patient. *Id.* at 323. In the case of West Virginia's foster care

system, many decisions make up an entire structure that governs the outcome for thousands of children and families. To identify specific decisions, confirm their causal links, identify decisionmakers, determine an accepted professional standard, analyze the decisions against the standard, and conclude the level of departure—for the many decisions made—appears to reach much farther than the Court intended in *Youngberg*. Finally, the Court emphasized that federal judicial intervention in the "internal operations" of similar institutions "should be minimized." *Youngberg*, 457 U.S. at 322. Conversely, the General Class asks for large-scale intervention, relief far beyond scrutinizing a decision by a medical professional to habilitate an individual—and this federal intervention has been authorized by the Fourth Circuit. *See Jonathan R. v. Morrisey*, 178 F.4th 139 (4th Cir. 2026).

The facts and holding of the Fourth Circuit's *Shenandoah Valley* are similarly distinguishable. The court only considered the standard appropriate to analyze the "right to adequate mental health care . . . provided to a detained immigrant child." *Shenandoah Valley*, 985 F.3d at 339. From there, the court's analysis was necessarily rooted in the medical treatment aspects of the case. *Id.* at 340–41 ("Indeed, the aims of treatment and safety are intertwined in this case."). The court emphasized the closeness to *Youngberg* by noting that placement decisions were made on the basis on a "child's health and treatment needs" as well as the recommendation of a "licensed mental health professional." *Id.* at 341 (defendant intended to treat children "[b]y explicitly accounting for the mental health needs of the children it accepts"). Ultimately, the court held narrowly: for "a claim of inadequate medical care, then, a court . . . must determine whether the treatment provided is adequate to address a person's needs under a relevant standard of professional judgment." *Id.* at 344.

The facts, the single scrutinized claim for adequate mental health care, and the narrow

9

holding make it clear that *Shenandoah Valley*'s "substantial departure" standard does not extend to *Jonathan R.* As mentioned, the General Class alleges a number of violated rights that concern maltreatment, emotional well-being, conditions, and duration of foster care custody. The alleged rights go beyond the single claim for adequate mental health care found in *Shenandoah Valley*. It makes sense, then, that the Fourth Circuit cabined its holding to "claim[s] of inadequate medical care." *Id.* at 344. Like *Youngberg*, *Shenandoah Valley* does not stretch so far to encompass the General Class's claims.[2]

With that in mind, I return to *Deshaney*. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199–200. And the rationale is simple:

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*Id.* at 200. Accordingly, I find that the appropriate standard is as follows:

> When the State takes a child from his family into its own custody, it assumes a duty to keep him reasonably safe from serious harm. The State violates that duty, and the child's right to substantive due process, when it places or keeps the child in conditions that subject him to a substantial risk of the serious harm its custody exists to prevent, and the risk is one the State created or, knowing of it, failed to abate.

---

[2] In dissent, Judge Wilkinson predicted the drastic and burdensome measures district courts would have to take to apply the "professional judgment" standard. *Shenandoah Valley*, 985 F.3d at 357. He plainly said

> Judges are not psychiatrists. Mental health, while highly desirable for all, is a complex and evolving field. For good reasons, mental health professionals must go through a rigorous course of education and licensure before entering their important practice. This is no place for judicial amateurs whose far wanderings from our founding document spell only confusion. By wading into this complex field without textual support, judges will find themselves adrift in a sea of vast debate on a subject whose depths we cannot plumb and do not comprehend. Because the majority's decision is legally unmoored and practically unworkable, I respectfully dissent.

*Id.*

I note that this standard, as explained, is provisional. The court will not finalize a constitutional line of this consequence in the abstract, divorced from a developed factual record and untested by adversary argument. The utmost care our law demands before settling such a question is better served by drawing the line, stating the reasoning, and then subjecting both to the parties' best efforts against a current record than by announcing a holding and inviting the parties to work around it.

The parties should not mistake provisional for tentative. This is the standard by which the court presently expects to decide the case. The parties are directed to treat it as outcome-determinative and to brief and prove to it with the seriousness they would give a settled holding. They are also invited to contest it. A party who believes the court has drawn the line wrongly should say so, and say why, on this record. But a party who ignores the standard, or who briefs only to the standards this Order sets aside, does so at its peril.

## III.   Scheduling Order

Plaintiffs seek prospective injunctive relief. Such relief is measured against present conditions, not historical ones. The age of this record—discovery closed July 5, 2024—makes it inappropriate for the court to consider Plaintiffs' challenge on facts that are two years old. [ECF No. 491]. This is especially important as those facts bear on class composition, liability, and the permissible scope of any remedy. The parties' arguments over summary judgment and other pretrial motions are similarly stale, having been made nearly two years ago without the benefit of this court's formulation of the constitutional standard or the Fourth Circuit's recent opinion in this case.

Accordingly, the court **ORDERS** that limited discovery be reopened. The parties are **DIRECTED** to only supplement the evidentiary record with changes to the class composition and

state foster care system after July 5, 2024. The parties are further **DIRECTED** to supplement the record with evidence that supports or rebuts the alleged violations in accordance with the constitutional standard the court intends to use, as already described. Lastly, the parties are **DIRECTED** to file a joint proposed order setting the supplemental discovery plan **no later than August 10, 2026**, defining the scope and procedure of discovery in accordance with this Order. Counsel, capable and diligent attorneys, shall make every effort to agree on a plan without the court's intervention.

All pending motions, unresolved before the court granted summary judgment and dismissed the case, are **DENIED without prejudice**, as the parties will have an opportunity to file amended motions on an updated record. The court **ORDERS** that this case will proceed as follows:

| | |
|---|---|
| Parties file joint proposed order defining supplemental discovery plan. | 8/10/2026 |
| Deposition deadline and close of discovery. | 11/2/2026 |
| Filing of dispositive motions. | 11/23/2026 |
| Responses to dispositive motions. | 12/7/2026 |
| Reply to response to dispositive motion | 12/14/2026 |
| Settlement meeting deadline. | 1/25/2027 |
| Filing of motions in limine. | 2/1/2027 |
| Responses to motions in limine. | 2/8/2027 |
| Plaintiffs draft of pretrial order to defendants. | 1/27/2027 |
| Integrated pretrial order filed by defendants. | 2/3/2027 |
| **Pretrial conference.** | **2/18/2027 at 10:00 AM in Charleston, WV** |
| Proposed findings of fact and conclusions of law. | 3/1/2027 |
| **Bench Trial** | **3/16/2027 at 9:00 AM in Charleston, WV** |

The parties are advised that the schedule in this case will not be modified absent extreme circumstances and a showing of exceptional need.

12

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

The court further **DIRECTS** the Clerk to post a copy of this published order on the court's website, www.wvsd.uscourts.gov.

ENTER:      July 9, 2026

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

13